# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LUCAS CALIXTO, *et al.*, | ) ) ) ) | |
| PLAINTIFFS, | ) ) | **Case No. 1:18-cv-01551-ESH** |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF THE ARMY, *et al.*, | ) ) ) | |
| DEFENDANTS. | ) ) ) ) ) ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT STAY

Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*

## I.    __INTRODUCTION__

This case challenges Defendants' unlawful failure to provide the requisite pre-discharge process to hundreds of enlisted MAVNI soldiers who were discharged by the Army without any notice or opportunity to respond to the supposed discharge grounds.  The Army's extraordinary and sweeping discharge action is shocking, both because it was so contrary to military regulations and because of the Army's callous disregard for the consequences to its soldiers of throwing them out of the military with full knowledge that nearly all of the soldiers would face imminent immigration peril as a result.  *See* Martha Mendoza and Garance Burke, *APNewsBreak: Army Expelled 500 Immigrant Recruits in 1 Year*, AP NEWS, Oct. 11, 2018, *available at* https://www.apnews.com/1ecc474ca5ac4833aa736f76bb572c7f.

With their unlawful discharge conduct exposed by this litigation, the Army beat a strategic and decidedly partial retreat.  The Army revoked the summary discharge of Plaintiff Calixto and later revoked or suspended the discharge actions of all but one of the Plaintiffs named in the Amended Complaint.  Defendants simultaneously announced that the Army would be suspending further discharge actions with respect to MAVNIs pending a policy review which remains ongoing.  For present purposes, however, the most important fact is that the Army's retreat still left hundreds of summarily discharged soldiers exposed.  In other words, while the suspension policy and reinstatement of discharged soldiers provides temporary and partial relief to some individuals, it does nothing and means nothing to those whose discharges remain in effect and those who have been or will be discharged – without requisite process – on grounds not covered by the new policy.  The claims of these soldiers should now proceed on the merits.

This state of affairs brings us to the question of the pending stay.  The Court directed Defendants to explain why this case should not proceed in the normal course, which would mean Defendants responding to the Amended Complaint and filing any opposition to the pending motions.  Dkt. 39 at 1-2.  Defendants' response (Dkt. 41) fails to provide any adequate justification for maintaining a stay on these matters.  Instead, it confirms key facts that warrant lifting the stay, including that:

(1)     the Army has not revoked the discharges of over 500 summarily-discharged MAVNI soldiers;

(2)     discharges are on-going because the Army is not applying its July 20, 2018 Memorandum (Dkt. 22-1 Ex. A) (the "July 20 Memo") to soldiers whose summary discharge ground is listed as something other than an unfavorable MSSD; and

(3)     even with respect to the hundreds of additional MAVNI soldiers whose discharges have been "suspended" pursuant to the "policy review" described in the July 20 Memo, Defendants have made no representations, beyond the named Plaintiffs, that those soldiers have been reinstated in the Army.

Instead of confronting these facts, Defendants offer conclusory assertions.  For instance, Defendants proclaim that this Court should not decide the pending motions with respect to the hundreds of soldiers with *unrevoked* discharges because the Army is reviewing its policy and determining what to do with those discharged soldiers.  Dkt. 41 at 4.  But Defendants cite nothing to support that assertion.  And it is directly contrary to what the July 20 Memo itself states and what Defendants told this Court – namely, that the July 20 Memo and the policy review apply only to new or suspended discharge actions.  Dkt. 22-1, Ex. A at 7 ("Effective immediately, you will suspend processing of all involuntary separation actions pertaining to members of the DEP and the DTP who were recruited through the MAVNI Pilot Program."); Dkt. 28 ¶ 1 (Defendants' Notice of Filing of list of "DTP or DEP MAVNI members [] whose discharge order(s) are not expected to be revoked").  Defendants furnish no evidence whatsoever

that any new Army policy that emerges will apply to the hundreds of MAVNIs (*i.e.*, proposed class members) whose summary discharges have *not* been revoked.  And, even if the new policy were to apply to this large group of soldiers, the fact remains that they are *currently* discharged due to the unlawful actions alleged in the complaint.

Similarly, Defendants proclaim that "[t]he Army has reinstated *all MAVNIs* whose discharges have been revoked."  Dkt. 41 at 7 (emphasis added).  But, here again, Defendants provide no evidence to back it up.  Instead, Defendants attempt to account only for the reinstatement of seven named Plaintiffs, without addressing the approximately 150 additional soldiers with suspended discharges.

Accordingly, while the July 20 Memo temporarily countermands the unlawful discharges of some MAVNIs, it leaves hundreds of MAVNI soldiers – and proposed class members here – unaccounted for and with urgent and ripe challenges to their summary discharges.  Defendants offer no justification whatsoever as to why the claims of these soldiers cannot be litigated now. As such, the case should move forward and a briefing schedule should be set.

## II.    ARGUMENT

This action, commenced in late June 2018, challenges the lawfulness of the U.S. Army's summary discharge policy, by which hundreds of MAVNI soldiers were summarily discharged from the military without being afforded any of the process due to them under Army and Department of Defense ("DoD") regulations and the Constitution.  The core allegation – and the common theme among Plaintiffs and the proposed class – is that these soldiers are being discharged without advance notice and opportunity to respond to the supposed discharge grounds.  While the Army appears to have discharged many of the soldiers due to incomplete or "unfavorable" MSSDs – or a proxy description that means the same thing but disguises the true

reason for the discharge (such as "refusal to enlist" or "entry level performance and conduct") – the actual "ground" for discharge is not a critical factor in this litigation. *Instead, the common element that binds the claims of Plaintiffs and the proposed class is that they are the victims of uncharacterized discharges – regardless of the purported discharge grounds – that became effective without any of the process mandated by military regulations and the law.*

As the Court is aware, Defendants were forced to provide relief to the original Plaintiff, PV2 Calixto – revoking his discharge and agreeing to reinstate him in the Army – but Defendants refused to take similar action with respect to other similarly-situated soldiers. Consequently, through an Amended Complaint, seven additional soldiers – each of whom had received summary discharge orders from the Army (either USAREC, USAR, or both) – alleged on behalf of themselves and a proposed class the same essential cause of action, namely that they had been summarily discharged in violation of the law. Dkt. 19.

Defendants again acknowledged that the discharges violated the law,[1] and Defendants were forced to suspend or revoke the discharge actions for all but one of the named Plaintiffs in the Amended Complaint. Defendants further agreed to reinstate in the Army each of the Plaintiffs whose discharges were suspended or revoked. As a result of those actions by Defendants, and because it was then unclear to the Court how many MAVNIs (beyond the one

---

[1]  *See* Dkt. 34-1, Ex. 1 at 2 (August 15, 2018 Army Memorandum: "[T]here are approximately 65 additional individuals who . . . *did not receive the appropriate notice prior to separation*." (emphasis added)). The Court should give no credence to Defendants' belated attempt to hide this document (Dkt. 41 at 5 n.2). Apart from the fact that Defendants themselves affirmatively referenced the document in an earlier submission to the Court (Dkt. 24-1 ¶ 3), and the fact that the "privilege" claimed by Defendants is qualified/conditional, Defendants did not object to the use of the document in open Court on October 3, 2018, nor did Defendants take any action during a week-long period to remove the document from the public record.

named Plaintiff (Z. Li)) remained with unrevoked summary discharges, the Court stayed further briefing on the pending motions.

We now know that substantial numbers of proposed class members – *i.e.*, MAVNI soldiers who were summarily discharged by the Army without requisite process – remain in a discharge status and unaffected by the July 20 Memo and the Army's internal policy review. We also know that Defendants are construing their discharge "suspension" policy as applicable only to soldiers who have (or will receive) an unfavorable MSSD. This means that the proposed class of summarily discharged MAVNI soldiers – which currently is well over 500 soldiers (when one considers the 500-plus DTP/DEP discharges within just a one year period plus the other proposed class members) – has grown since July 20, 2018, and likely will continue to grow.

**A.      The Stay Should Be Lifted Because the July 20 Discharge Suspension Action Does Not Reach a Substantial Number of MAVNIs**

Defendants' sole justification for opposing a lift of the stay is that the Army is conducting a policy review of its MAVNI discharge policy. This justification does not stand up to scrutiny.

**1.      The July 20 Memo Does Not Apply to Soldiers Whose Discharges Were Effective Prior to July 20, 2018**

The July 20 Memo is prospective only. By its terms, it directs Army personnel to "suspend" discharge actions. However, for discharge orders with past effective dates (*i.e.*, pre-July 20, 2018 dates), those orders would need to be revoked, since there is no ongoing activity or future event that could be "suspended," as acknowledged by the fact that the Army had to "revoke" the discharges for at least two of the named Plaintiffs. Moreover, Defendants have drawn a clear distinction between pre- and post-July 20, 2018, including through a chart identifying the soldiers whose discharges were effective in the year prior to July 20 (and thus are not "suspended") and whose discharges are not being revoked. *See* Dkt. 27.

Against this record, there is no credence to Defendants' assertion that their review is going to "address the individuals who already have been discharged from the MAVNI program based on unfavorable MSSDs." Dkt. 41 at 4.[2]   Defendants certainly have provided no evidence that supports the notion that any new separation policy is going to apply retroactively to any pre-July 20, 2018 discharges.

This fact alone warrants lifting the stay.  Defendants have identified over 500 soldiers with discharges that are not going to be revoked absent a court order.  Those soldiers are members of the proposed class.  Moreover, even if Defendants change their minds and the policy review results in discharge revocations for some[3] of these soldiers at some point in the future, the fact remains that they are discharged right now.  That means, among other things, that they lack military status, are subject to potential removal by DHS because they lack protected status as a military member, and have lost benefits including Tricare eligibility.  These MAVNIs are entitled to pursue their claims now.  No stay is warranted as to them.

Finally, while the issue can be litigated fully in the context of the class certification motion once the stay is lifted, Plaintiffs are compelled to respond to a misconception advanced

---

[2]   The August 15 Army recommendation memo (Dkt. 34-1) in no manner suggests that past discharges will be revoked.  At best, it mentions that discharged soldiers may be notified that they can "seek adjudication" through an Army Board.  Beyond the fact that this applies only to soldiers discharged for unfavorable MSSDs, this is a hollow recommendation that does not cure the lack of pre-discharge notice or reverse the discharge decision.

[3]   It also is worth noting that Defendants' assertion on this topic – even if one were to accept it without any evidence or support – has an important built-in limitation.  In particular, Defendants claim that the new policy is limited to *unfavorable MSSD* discharges.  Dkt. 41 at 4.  The allegations in this case are not so limited.  The core allegation here arises from the summary nature of the discharges, not the supposed discharge grounds.  Plaintiffs' position is and has been that, regardless of the discharge ground, the Army was obliged by law and regulation to provide the soldier with process.

by Defendants.  Defendants suggest that a class action may not be warranted here.  Dkt. 41 at 4.

But, as already explained, there currently is a "live" claim for Plaintiff Z. Li (who continues to be

unfairly disparaged by Defendants in their briefing but who has yet to receive a copy of his

discharge order, if one exists, much less any of the process that was required to happen before he

was discharged), who is similarly situated to the hundreds of other MAVNI soldiers with

unrevoked summary discharges.  And, even if Plaintiff Z. Li's claim did not exist and the named

Plaintiffs consisted only of MAVNIs with now suspended or revoked summary discharges, the

law is clear that a party may not evade review by mooting a class representative's claim before

class certification.  *See, e.g.*, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("A

district court's ruling on the certification issue is often the most significant decision rendered in

these class-action proceedings.  To deny the right to appeal simply because the defendant has

sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to

sound judicial administration."); *Basel v. Knebel*, 551 F.2d 395, 397 n.1 (D.C. Cir. 1977) (per

curiam) ("There may be cases in which the controversy involving the named plaintiffs is such

that it becomes moot as to them before the district court can reasonably be expected to rule on a

certification motion.  In such instances, whether the certification can be said to 'relate back' to

the filing of the complaint may depend upon the circumstances of the particular case and

especially the reality of the claim that otherwise the issue would evade review." (quoting *Sosna v.

Iowa*, 419 U.S. 393, 402 n.11 (1925) (internal quotation marks omitted)); *see also In re

Thornburgh*, 869 F.2d 1503, 1509 (D.C. Cir. 1989) ("[A] court may respond to the pre-

certification mooting of a class representative's claims by permitting substitution of a new class

representative.  Such action is especially appropriate where the events causing mootness have

only individual rather than classwide impact." (citations omitted)); *Plunkett v. Castro*, 67 F.

Supp. 3d 1, 12 n.6 (D.D.C. 2014) (J. Huvelle) ("Additionally, plaintiffs allege that HUD's selective application of the TID is an attempt to 'pick off' the named plaintiffs in order to render their claim non justiciable.  Insofar as HUD contends that plaintiffs do not have standing to certify a class, this argument is also compelling." (citations omitted)).[4]

Here, where the Amended Complaint identifies eight proposed class representatives, each of whom was victimized by the same summary discharge process that is at the core of the allegations, Defendants have provided no justification for a stay.

## 2.   Defendants Admit That the July 20 Memo Does Not Apply to All Post-July 20, 2018 MAVNI Discharges

In addition to the hundreds of soldiers who are unaffected by the July 20 Memo because their discharges pre-dated the suspension, Defendants now are admitting that the July 20 Memo only applies to those soldiers whose post-July 20, 2018 discharges are based on "unfavorable MSSDs." Dkt. 41 at 6 (stating that it may take months "to review and develop a policy regarding discharge procedures for MAVNI soldiers *who received unfavorable MSSDs*." (emphasis added)).  Moreover, Defendants proclaim in their filing that the Army's July 20 Memo does not apply to post-July 20, 2018 discharges for reasons other than an unfavorable MSSD.  Dkt. 41 at 9.  Taken at face value, Defendants' position means that even the July 20 Memo is not being applied to soldiers whose discharges are labeled with some ground other than "unfavorable

---

[4]   Moreover, the voluntary cessation doctrine would apply.  This "exception exists where a party has extinguished the controversy by voluntarily changing its allegedly unlawful conduct after the commencement of a lawsuit."  *DL v. D.C.*, 187 F. Supp. 3d 1, 5 (D.D.C. 2016); *see also County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Plunkett*, 67 F. Supp. 3d at 12 ("[The agency's litigation position] does not deprive a federal court of its power to determine the legality of the practice[.]" (internal quotation marks omitted)).  Thus, the fact that the Army continues to make final discharge decisions and is telling soldiers that they will be discharged shows that, in spite of any voluntary suspension for litigation purposes, the Army does not intend to provide soldiers with meaningful process (*i.e.*, the Army plans to return to its old ways).

MSSD."[5]   As the allegations in this case show, including the allegations of some of the named Plaintiffs in the Amended Complaint, the Army often uses different discharge labels – including "refusal to enlist" – as a proxy for unfavorable MSSDs or other involuntary discharges.  *See, e.g.*, Dkt. 26 at 10.  Thus, proposed class members are not "covered" by the suspension action, even if their discharges were or will be effective after July 20, 2018.[6]

Once again, the central issue in this case is whether the summary discharges violated the law.  The commonality among Plaintiffs and the proposed class is that they all were victims of an unlawful summary process.  Each Plaintiff and class member was entitled to process *regardless* of the purported ground for discharge.  No Plaintiff or class member received it.  While the Army has suspended the discharges for some MAVNI soldiers, many more remain uncovered by the July 20 Memo.  The stay should be lifted to let them proceed with their claims.

**B.     Defendants' "Reinstatement" Assertions Miss the Mark**

The relief sought here – for each improperly discharged soldier – is full reinstatement in the Army to pre-discharge status.  Dkt. 20 at 3.  Defendants repeatedly have represented to the Court – and they do so again in their filing here – that all of the named Plaintiffs (other than Z. Li) have been fully reinstated into the Army.  Dkt. 41 at 6-7.  At the same time, Defendants argue that this Court should stay out of the Army's affairs in this regard and leave it to the individual soldier and his/her chain of command to sort out any reinstatement difficulties.  *Id.*

---

[5]   As previously noted (*see* Dkt. 26 at 10-11), Defendants' labeling of MAVNI discharges are not reliable indicators of the actual bases for discharges.  As another example, while Defendants claim that a soldier discharged on September 17, 2018, received a medical discharge (Dkt. 41 at 9), the discharge order itself (Dkt. 33-4) provides the coding "ZBD," which stands for "refusal to enlist" (*see* Dkt. 26-6 at 3).

[6]   Plaintiffs understand that the post-July 20, 2018 discharge identified at Dkt. 33-4 is not an isolated incident.

Plaintiffs have two responses to this assertion.  First, Defendants have been making the same representation for the past two months and, while progress has been made (mostly because Plaintiffs have pressed the issue repeatedly), full reinstatement still has not been accomplished for the named Plaintiffs.  Hence, an order directing that reinstatement be complete by a date certain is warranted.  Second, and more importantly for present purposes, Defendants' reinstatement representations are limited to the named Plaintiffs.  Defendants have provided no evidence that they have taken the actions necessary to reinstate any of the other proposed class members whose discharges have been revoked or suspended.  Defendants' refusal to even respond to Plaintiffs' inquiries in this regard, and their avoidance of that issue in their response, are strong indicators that the Army has not fully reinstated such proposed class members.  This matter, too, is pressing and can be addressed once the briefing stay is lifted.

### III.   <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that this case move forward and that a briefing schedule be set.

Dated:  October 12, 2018                    Respectfully submitted,

 */s/ Douglas W. Baruch*
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*