UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LUCAS CALIXTO, *et al.*, | ) ) ) ) ) | |
| PLAINTIFFS, | ) ) | Case No. 1:18-cv-01551-ESH |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF THE ARMY, *et al.*, | ) ) ) ) | |
| DEFENDANTS. | ) ) ) ) ) ) | |

### PLAINTIFFS' MOTION FOR CLARIFICATION CONCERNING DEFENDANTS' DISCHARGE POLICY (DKT. 50)

Pursuant to the Court's authorization, Plaintiffs respectfully submit this Motion seeking clarification with respect to certain aspects of the Army's discharge policy as set forth in the October 26, 2018 Memorandum from Marshall Williams (Dkt. 50) ("Oct. 26 Memo"). The grounds for this Motion are as follows:

### BACKGROUND

1. In this action, Plaintiffs are challenging the lawfulness of certain summary discharge actions pertaining to MAVNI soldiers, primarily in the Delayed Training Program ("DTP") and the Delayed Entry Program ("DEP"). The gravamen and common element of the claims are that the Army summarily discharged these soldiers (and those similarly situated), in violation of military regulations and the law, by not providing them with the requisite process –

including advance notice and an opportunity to be heard and rebut or mitigate the alleged grounds for discharge – before the discharges became final.

2. After Plaintiff Calixto filed the initial complaint, Defendants revoked his discharge and agreed to reinstate him in the Army. However, Defendants would not disclose whether the same type of relief would be provided to other similarly-situated soldiers.

3. Thereafter, in an amended complaint, several additional MAVNI soldiers challenged Defendants' failure to provide them with the requisite process prior to their summary discharges. Plaintiffs also moved for certification of a class comprised of summarily discharged MAVNI soldiers.

4. In response, Defendants then represented that they suspended or revoked the discharge actions for all but one of these additional Plaintiffs and stated that each of the soldiers with suspended/revoked discharges would be reinstated in the Army (to the extent they had been discharged). Defendants also stated that the Army was suspending in-process discharges for MAVNIs as it reviewed its discharge process for MAVNI soldiers.

5. The Court ordered Defendants to provide bi-weekly reports and to provide a listing of the MAVNI soldiers who had been discharged and the reasons for those discharges.

6. On October 17, 2018, Defendants informed the Court that the Army would be issuing its new discharge policy within two weeks. However, Defendants, for the first time, stated that the prior suspension and new discharge policy apply only to MAVNI soldiers who are being discharged on the basis of unfavorable MSSDs.

7. The Court has ordered Defendants to provide a listing of MAVNI soldiers discharged since July 20, 2018 (the start of the discharge suspension) and to unredact for Plaintiffs' counsel the names of *Nio* and *Kirwa* class members from their discharge listings.

8. The Court issued an Order directing Defendants to provide an update regarding the new discharge policy in their October 31, 2018 status report. The Court also set a November 13, 2018 deadline for Plaintiffs to file an amended complaint and updated class certification motion, taking into account the discharge information unredacted by Defendants as well as the new discharge policy.

9. On October 31, 2018, Defendants filed the Oct. 26 Memo.

10. On November 5, 2018, following the Court's request, Defendants provided the Court and Plaintiffs' counsel with two of the documents referenced in the Oct. 26 Memo.

11. On November 7 and November 8, 2018, Plaintiffs sought clarification from Defendants regarding certain aspects of the Oct. 26 Memo and notified Defendants (again) that their unredacted reporting was incomplete and appeared to be inaccurate. On November 8 and November 9, Defendants declined to provide the requested clarification.

## CLARIFICATIONS SOUGHT BY PLAINTIFFS

Plaintiffs are preparing their amended complaint and class certification motion. The amended complaint will include additional named plaintiffs/class representatives and claims. However, as Plaintiffs seek to identify appropriate class representatives and develop their amended claims, the contours of the October 26 Memo are unclear, making it difficult to assess whether and how it applies to certain soldiers and prospective plaintiffs/class representatives. Without clarification, a discharged soldier seeking to be added as a class representative believing that her unlawful discharge is not affected by the Oct. 26 Memo may later learn that the Army did intend for her (and others like her) to be covered by the new procedure.

For instance, the Oct. 26 Memo states that limited "reinstatement" will apply to "former members of the DEP and DTP who were separated before 20 July 2018 on the basis of an

Unfavorable MSSD resulting from a documented Counterintelligence concern." Dkt. 50 at 3. Yet, as the Court is aware, many soldiers who were discharged never received any discharge papers and, thus, do not know whether the Army considers their discharge to have been on the basis of an unfavorable MSSD, let alone an unfavorable MSSD resulting from a "documented counterintelligence concern" (whatever that means). Even for soldiers who received discharge orders, "unfavorable MSSD" is not a discharge reason listed on those orders. Instead, the orders cite "Refuse to Enlist" or "Entry Level Performance or Conduct" or "Personnel Security" (or three-letter codes that mean these and other supposed reasons, but none that mean "Unfavorable MSSD Discharge") as the discharge reasons even when the underlying "reason" for the discharge is an unfavorable MSSD.

And, Defendants' reporting to date does not answer these questions for a few reasons, including the following: (a) the unredacted reporting as provided to Plaintiffs' counsel is incomplete and inaccurate (for example, soldiers identified as discharged by the defendants in the *Nio* and *Kirwa* cases are not identified on the *Calixto* report and vice versa); (b) the "other reasons" discharges cannot be accurate (for example, many soldiers identified as "refused to enlist" discharges wanted to continue serving in the military and were told by their recruiters or other Army personnel that they were being discharged due to an unfavorable MSSD or CI interview); and (c) as discussed above, even those few soldiers revealed to Plaintiffs' counsel as "unfavorable MSSD" discharges are not sure if the Oct. 26 Memo applies to them, particularly given the "documented counterintelligence concern" language in the Memo.

This ambiguity (and others) in the Oct. 26 Memo make it difficult for soldiers (and prospective plaintiffs) to discern whether their discharges fall within the parameters of the new policy. This information obviously is critical, particularly since some discharged soldiers are

4

facing current or future removal proceedings, in which their military status (*i.e.*, whether they remain in the military) could be key to avoiding those proceedings. On the other hand, Defendants obviously must know who will be covered by the Oct. 26 Memo and who will not, particularly since the Memo specifies that "affected" soldiers will receive "written notice" that they received an "adverse MSSR" and that certain "former" soldiers "will be offered reinstatement." Dkt. 50, ¶¶ 3(a), 5.

Accordingly, for purposes of filing their amended complaint and updated class certification motion (as well as a potential preliminary injunction motion), Plaintiffs seek an order directing Defendants to clarify the following with respect to the Oct. 26 Memo:[1]

1. In Paragraph 5, what does it mean that former members of the DEP and DTP with pre-July 20 separations on the basis of an unfavorable MSSD "resulting from a documented Counterintelligence concern" will be offered reinstatement in the DEP/DTP "for purposes of receiving the administrative due process described in this memorandum"?

    a. How and when will reinstatement be offered to these soldiers?

    b. What does "reinstatement" in this context practically mean for these soldiers? Will the DTP soldiers be allowed to attend drills, have CAC cards, sign up for TriCare, etc.?

    c. Will the Army be notifying other agencies, including DHS/USCIS/ICE, of the reinstatement? For soldiers who have fallen out of status or who are in removal proceedings, does the Army understand that this "reinstatement" will protect those soldiers from the removal proceedings and deportation?

---

[1] The Oct. 26 Memo raises a substantial number of additional questions and has several additional ambiguities which Plaintiffs will raise and address later as necessary. For present purposes, however, the focus is on obtaining clarification as to who is covered by the Memo and who is not and what kind of relief/process those covered by the Memo will receive and when that relief/process will be received (particularly for soldiers vulnerable to removal/deportation proceedings who are in need of immediate reinstatement). This is the key information that Plaintiffs asked Defendants to provide.

5

        d.        Is the Army drawing a distinction with the words "resulting from a documented Counterintelligence concern"? Will this Memo apply to all of the "unfavorable MSSD" MAVNI discharges listed in Defendants' reporting?

        e.        Will this Memo apply to any discharged MAVNI soldiers beyond those listed as "unfavorable MSSD" discharges by Defendants? As noted above, Plaintiffs' counsel has good reason to believe that a number of MAVNI discharges included on the "other reasons" list were in fact for unfavorable MSSDs or CI interviews.

2.        How is a soldier, particularly a soldier already discharged from the Army, supposed to know that the Memo will apply to him/her?

3.        Will Defendants clarify who among the DTP soldiers (*i.e.*, *Kirwa* and *Nio* class members) are subject to the Memo?

4.        If Plaintiffs' counsel provided Defendants with the names of DEP soldiers who are seeking clarification as to whether they have been discharged, the reason for discharge, and whether they will be subject to the new Memo, would Defendants share that information with Plaintiffs' counsel (and agree that these soldiers will not be retaliated against)?

5.        When will the military begin providing the Notice described in Paragraph 3(a) of the Memo?

Plaintiffs submit that the answers to these questions will help to clarify which soldiers are covered by the Oct. 26 Memo and which ones are not, and what kind of relief is being provided under the Memo and when that relief will be provided. Further, Plaintiffs submit that such clarification could avoid unnecessary litigation.

It does not make sense for Plaintiffs to add named plaintiffs/class representatives to a complaint and class certification motion, and to seek preliminary injunctive relief, if Defendants simply are going to provide clarification at that point that the added plaintiffs/class representatives are indeed covered by the Oct. 26 Memo and that, under that Memo, are being promptly reinstated and in a meaningful way that potentially alleviates the injury these soldiers are facing. Plaintiffs submit that it would not be efficient to burden the Court with such

unnecessary briefing and proceedings, which would then require further complaint amendments and revised class certification motions.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that their Motion be granted.

Dated:  November 10, 2018              Respectfully submitted,

                                         */s/ Douglas W. Baruch*
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUCAS CALIXTO, *et al.*,<br><br>PLAINTIFFS,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE ARMY, *et al.*,<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)  **Case No. 1:18-cv-01551-ESH**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## [PROPOSED] ORDER

**THIS MATTER**, having come before the Court on a motion for clarification by Plaintiffs; the Court having reviewed the arguments on the motion; and good cause appearing,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion For Clarification Concerning Defendants' Discharge Policy (Dkt. 50), dated November 10, 2018, is **GRANTED**.

Dated: _____                    _____

                                                                        U.S.D.J. Ellen Segal Huvelle

**NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDER UPON ENTRY**

In accordance with LCvR 7(k), listed below are the names and addresses of the attorneys and parties entitled to be notified of the order's entry:

*Counsel for Defendants*

**Jeremy A. Haugh**
U.S. ATTORNEY'S OFFICE,
CIVIL DIVISION
555 4th Street, N.W.
Washington, DC 20530
(202) 252-2574
Email: Jeremy.haugh@usdoj.gov

*Counsel for Plaintiffs*

**Douglas W. Baruch**
**Jennifer M. Wollenberg**
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com