IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUCAS CALIXTO, et al. *Plaintiffs*, v. UNITED STATES DEPARTMENT OF THE ARMY, et al., *Defendant*s. | Civil Action No.18-1551 (ESH) |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CLARIFICATION

Plaintiffs aver in their Motion for Clarification that they seek "clarification" with regard to Defendants' MAVNI discharge policy. ECF No. 51. Relative to Plaintiffs' Motion, Court intervention is not necessary or warranted as set forth below. Likewise, any extension of time for Plaintiffs to file an amended complaint is not warranted. Defendants respectfully request that the Court deny Plaintiffs' Motion for Clarification and order Plaintiffs to file their amended complaint (if any) without further delay.

Plaintiffs' Motion for Clarification provides no legal basis upon which Plaintiffs would be entitled to clarification. Plaintiffs improperly seek court intervention to compel Defendants to reply to Plaintiffs' de facto discovery request despite there being no actionable complaint before the Court. Plaintiffs are wrongly attempting to reverse the Federal Rules for Civil Procedure by seeking discovery before offering their amended complaint, relying only on a vague notion of judicial efficiency without providing any legal authority. Regardless of Plaintiffs' stated concern for judicial efficiency, their actions in this case render that argument ineffectual.

At the outset, Plaintiffs' Motion for Clarification is itself unclear. On November 7, 2018 Plaintiffs' counsel sent an email to Defendants' counsel seeking answers to no fewer than 26 inquiries. Exhibit 1. One day later, after Defendants told Plaintiffs that they failed to offer any basis for the clarification Plaintiffs sought, Plaintiffs' counsel replied that they were actually only seeking "basic information" such as who the policy applies to and how, when, and what type of reinstatement and "notice" will be provided. Exhibit 1. In the instant Motion, Plaintiffs seek to compel Defendants to answer no fewer than 13 inquiries (see ECF No. 51 at 5-6). Yet, in Footnote 1, Plaintiffs claim "the focus is on obtaining clarification as to who is covered by the Memo and who is not and what kind of relief/process those covered by the Memo will receive and when that relief/process will be received (particularly for soldiers vulnerable to removal/deportation proceedings who are in need of immediate reinstatement)." ECF No. 51 at 5, FN 1. Even that claim does not apply to the Plaintiffs in this case. To the extent Defendants can decipher Plaintiffs' multiple disparate requests, Defendants respectfully offer the following response.

## FACTS

1. The amended complaint, as originally filed, concerns eight named Plaintiffs. ECF No. 19 at 15-22. The eight named Plaintiffs are challenging their discharge actions. See ECF No. 19.

2. On October 17, 2018, the Court denied without prejudice Plaintiffs' motion for class certification and appointment of class counsel and Plaintiffs' motion for preliminary injunction and provisional class certification. ECF No. 46.

3. At the hearing before the Court on October 17, 2018, Plaintiffs requested that the

Court grant them two weeks to further amend their complaint following Defendants' filing of its MAVNI discharge policy on October 31, 2018.  The Court granted Plaintiffs' request and ordered Plaintiffs to file their second amended complaint no later than Tuesday, November 13, 2018 at 12 p.m.  ECF No. 46 at 3.

4. Two weeks ago, in accordance with the Court's order, Defendants timely filed their policy on October 31, 2018.  ECF No. 50.

5. On its face, the policy applies to 7 of the 8 named plaintiffs.  ECF No. 50-1.  The policy does not apply to Plaintiff Zeyuan Li because he never received an MSSD.  ECF No. 22-1 at 3-4.

6. A full week after Defendants filed their policy, and just 2 working days before their second amended complaint was due, Plaintiffs submitted to Defendants a de facto discovery request on November 7, 2018, raising numerous issues and seeking to compel Defendants to provide information.  Plaintiffs' request included no fewer than 26 questions, many of which were unrelated to the issues in this case or the named plaintiffs.  See Exhibit 1.

7. Defendants informed Plaintiffs that they failed to provide any basis for their request and that Defendants opposed any motion for extension.  Exhibit 1.

8. Plaintiffs filed their Motion to Clarify Concerning Defendants' Discharge Policy on November 10, 2018.

### A. Plaintiffs Provide No Legal Basis for Their Request for Clarification

Plaintiffs sent to the Court their request for extension and "clarification," without any legal or other authority in support and with little notice to Defendants before Veterans' Day Weekend.  Plaintiffs' request was submitted just 8 business hours before their second amended complaint was due.  What's more, Plaintiffs sent Defendants a de facto discovery request,

including no fewer than 26 questions, just 2 business days before their second amended complaint was due.  Exhibit 1.

Plaintiffs apparently realized the impropriety of their original extensive, de facto discovery request and instead have retreated to requesting what they now call "basic information."  ECF No. 51 at 5, FN 1.  Plaintiffs offer no controlling legal authority or other satisfactory basis for their request for "clarification," be it for all 26 inquiries, the request for 13 inquiries in their Motion, or for the pared-down request in Footnote 1 of Plaintiffs' Motion.

Plaintiffs' scaled-down request now seeks to compel Defendants to provide Plaintiffs with information regarding: (1) who is covered by the Memo and who is not; and (2) what kind of relief/process those covered by the Memo will receive; and (3) when that relief/process will be received.  ECF No. 51 at 5, Footnote 1.  Plaintiffs could have ascertained this information through reading the policy and by applying some reason and due diligence.  Instead, Plaintiffs improperly seek to place the burden of drafting their amended complaint on Defendants.

First, the policy clearly identifies to whom the policy applies in 4 paragraphs of a 3 page policy.  ECF No. 50-1 at 1 (paragraphs 2 and 3); and 2 (paragraphs 4 and 5).

Second, the policy identifies that, should the Army initiate separation, it will be initiated and carried out in accordance with Army Regulation (AR) 135-178.  The policy specifies the date of the regulation (7 November 2017), the specific chapter that applies to DEP soldiers (Chapter 14-5(c)), and the specific chapter that applies to members of the DTP (chapter 13).  Further, the policy specifies the notification to be used, "written notification will be provided under the provisions of chapter 3 [of AR 135-178]".  *Id*.  The policy even identifies the timeline

for processing actions. ECF No. 50-1 at 2, paragraph 3b ("Such determinations should be made, and appropriate action initiated, within 90 days from the date of the DODCAF MSSR.")[1]

With this incredibly specific trail of bread crumbs, Plaintiffs could have easily perused AR 135-178 and, with a minimal amount of due diligence, identified how soldiers will be notified (and even what the notification will look like) (See AR 135-178, Chapter 3), the timeline the Army intends to use for initiating separation actions (if any), and to whom the policy applies.

Of note, Plaintiffs appear to be requesting that the Court order Defendants to provide them with information regarding what will be contained in the *MSSR* notice. In their Motion, Plaintiffs inquire, "[w]hen will the military begin providing the Notice described in Paragraph 3(a) of the Memo?" ECF No. 51 at 6. Paragraph 3 of the policy refers to the process for adverse security recommendations, and subparagraph (a) refers to the notice to be provided to soldiers regarding the adverse security recommendation. These provisions and procedures are not the subject of this case. Plaintiffs assert in their Motion, "[i]n this action, Plaintiffs are challenging the lawfulness of certain summary discharge actions pertaining to MAVNI soldiers, primarily in the Delayed Training Program ("DTP") and the Delayed Entry Program ("DEP")." ECF No. 51 at 1. Obviously, Plaintiffs are not challenging how the Army processes adverse security recommendations. As a result, Plaintiffs' request for information relative to notifications of adverse security recommendations is misplaced and improper.

For these reasons, Plaintiffs' request for "basic information" is improper. Court intervention is not necessary or warranted.

---

[1] This policy was not in place until October 26, 2018 of course, so a reasonable reading of the policy would include that any determinations and actions would be within 90 days of October 26, 2018 for those MSSRs completed prior to October 26, 2018, notwithstanding previous timelines provided to the court. See ECF No. 24-1.

B. **Plaintiffs' "Request for Clarification" is a De Facto Discovery Request and Improper Because There is No Actionable Complaint Before the Court**

There is no actionable complaint before the Court and discovery is not appropriate at this time. In addition, Plaintiffs' counsel only represent the eight named plaintiffs. A number of Plaintiffs' inquiries relate to soldiers in the DEP (all of the named Plaintiffs are or were DTP members). For example, in one inquiry in their Motion for Clarification, Plaintiffs appear to request that Defendants provide them with information about soldiers who are not a part of this case and who Plaintiffs' counsel do not represent. Plaintiffs requested, "[i]f Plaintiffs' counsel provided Defendants with the names of DEP soldiers who are seeking clarification as to if they have been discharged, the reason for discharge, and whether they will be subject to the new memo, would Defendants share that information with Plaintiffs' counsel (and agree that these soldiers will not be retaliated against)?"[2] Plaintiffs' counsel provided no evidence that they represent these individuals, these individuals are not plaintiffs in this case, and they are not a part of a class, because no class has been certified in this case. Therefore, it would be highly improper and possibly unethical for Defendants to share any information about these soldiers with Plaintiffs' counsel.

Based on the foregoing, Plaintiffs' request for "clarification" is an impermissible discovery request about individuals they do not represent and who are not parties to this case. Plaintiffs' request is premature and should be denied.

C. **Plaintiffs' Request to Compel Defendants to Provide Further Information is Premature and Improper**

---

[2] Plaintiffs offer nothing more regarding "retaliation." This language appears to be an attempt to disparage Defendants.

Although it is unclear exactly what information Plaintiffs are seeking, Plaintiffs also appear to request that the Court compel Defendants to provide information beyond the "basic information" identified in Footnote 1. Plaintiffs appear to be seeking additional information, including information about individuals Plaintiffs' counsel do not represent and who are not parties in this case. In that regard, Defendants offer the following.

First, this case concerns the eight named plaintiffs and (in the Plaintiffs' own words) "the lawfulness of certain summary discharge actions pertaining to MAVNI soldiers, primarily in the Delayed Training Program ("DTP") and the Delayed Entry Program ("DEP")." ECF No. 19 at 15-22 and ECF No. 51. Only one named Plaintiff (Plaintiff Zeyuan Li) is still discharged from the Army.

Second, the policy in question went into effect on October 26, 2018. The policy was forwarded to the Deputy Chief of Staff (G-1) for implementation. ECF No. 50 at 1. As noted in Defendants' prior filings, the implementation process can take 30 to 60 days before notification packets can be built and separation proceedings can be initiated. ECF No. 24-1 at 3.

Third, Plaintiffs already know what reinstatement means for soldiers because the parties have already extensively discussed these issues with regard to the eight named Plaintiffs. The Army will provide notification regarding reinstatement and, insomuch as it affects individual soldiers, the soldiers will be directed to address reinstatement issues with their respective chains of command.

Fourth, the Army will adhere to its regulations, policies, and the Court's orders with regard to notification to other federal agencies. Further, the Army's understanding whether reinstatement "will protect those soldiers from removal proceedings and deportation" is frankly

irrelevant. ECF No. 51 at 5. The Army does not control removal or deportation proceedings. For these purposes, Plaintiffs may need to redirect their efforts toward appropriate defendants.

Fifth, Plaintiffs inquire "[w]ill this Memo apply to all of the "unfavorable MSSD" MAVNI discharges listed in Defendants' reporting?" ECF No. 51 at 6. By a quick review of the policy, the Plaintiffs can easily determine that the policy applies to seven of the eight named Plaintiffs. Plaintiff Zeyuan Li did not receive an unfavorable MSSD and therefore the policy does not apply to him.

For these reasons, Plaintiffs' request to compel Defendants to provide further information about its policy is both premature and improper.

### D. **Plaintiffs' Judicial Efficiency Argument Fails**

The sole basis Plaintiffs offer for their Motion for Clarification is judicial efficiency. ECF No. 51 at 6. If they are genuinely concerned about judicial efficiency, Plaintiffs are new converts to the cause. Based on their prior actions in this case, Plaintiffs argument now rings hollow. From the beginning of this litigation, Plaintiffs have filed approximately 10 motions and at least two other "requests." Yet, at no time prior to filing any of their motions, have they consulted with Defendants' counsel in a good faith effort to determine if Defendants opposed their motions and to narrow areas of disagreement in accordance with LCvR 7(m). Prior to each filing, including this one, Plaintiffs have made extensive requests for information accompanied by an ultimatum that the information be supplied within an unreasonably short period of time established by Plaintiffs, or they will seek court intervention. In this case, Plaintiffs requested Defendants provide the information "now" and gave Defendants—at best—one or two business days (due to the Veterans Day federal holiday) to provide responses to their 26 inquiries. Exhibit 1.

Relative to Plaintiffs' current motion for clarification, Plaintiffs made no good faith effort to narrow the issues. Exhibit 1. Further, at no time did Plaintiffs' counsel request Defendants' counsel's concurrence or non-concurrence with their proposed motion for clarification. Defendants' counsel voluntarily offered that Defendants would oppose any request for extension. Exhibit 1.

In short, if Plaintiffs claim that judicial efficiency is the basis for their requests for information, Plaintiffs provided no basis.

## CONCLUSION

For all of these reasons, the Court should deny Plaintiffs' Motion for Clarification and order that Plaintiffs file their amended complaint without delay.


Dated: November 13, 2018                Respectfully submitted,

                                        JESSIE K. LIU
                                        D.C. Bar # 472845
                                        United States Attorney

                                        DANIEL F. VAN HORN
                                        D.C. Bar # 924092
                                        Chief, Civil Division


                                By:     /s/
                                        JEREMY A. HAUGH
                                        Special Assistant United States Attorney
                                        555 4th Street, N.W.
                                        Washington, D.C. 20530
                                        (202) 252-2574
                                        Jeremy.Haugh@usdoj.gov


                                        *Attorneys for Defendant*

**Haugh, Jeremy A MAJ USARMY HQDA OTJAG (US)**

| | |
|---|---|
| **From:** | Haugh, Jeremy (USADC) <Jeremy.Haugh@usdoj.gov> |
| **Sent:** | Tuesday, November 13, 2018 1:55 PM |
| **To:** | Haugh, Jeremy A MAJ USARMY HQDA OTJAG (US) |
| **Subject:** | [Non-DoD Source] Fwd: Calixto v. Army |

Sent from my iPhone

Begin forwarded message:

From: "Baruch, Douglas W." <Douglas.Baruch@friedfrank.com<mailto:Douglas.Baruch@friedfrank.com>>
Date: November 8, 2018 at 6:33:22 PM EST
To: "Haugh, Jeremy (USADC)" <Jeremy.Haugh@usdoj.gov<mailto:Jeremy.Haugh@usdoj.gov>>, "jeremy.a.haugh.mil@mail.mil<mailto:jeremy.a.haugh.mil@mail.mil>" <jeremy.a.haugh.mil@mail.mil<mailto:jeremy.a.haugh.mil@mail.mil>>
Cc: "Wollenberg, Jennifer" <Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com>>
Subject: RE: Calixto v. Army

Jeremy --

We expressed the "basis" for the clarification as specified below.  If there is confusion about our request, we should get on the phone and clear it up.

On its face, the October 26, 2018 Memo leaves several critical questions unclear, including who it applies to (and who it does not apply to) as well as how, when, and what type of reinstatement and "notice" will be afforded to soldiers.  As Plaintiffs prepare their amended complaint, the answers to these open questions should avoid unnecessary litigation expense and will help ensure that the Court need only address live issues.

If your clients are unwilling to provide this basic information, we intend to contact the Court to request a conference to address these questions and to seek an extension of the November 13 amended complaint filing date set in advance of the October 26 Memo.  Again, we prefer to obtain this information without engaging the Court, but you leave us no alternative.

Regards,

Doug



Douglas W. Baruch
Partner
Douglas.Baruch@friedfrank.com<mailto:Douglas.Baruch@friedfrank.com> | Tel: +1 202 639 7052 | Fax: 202 639 7003

Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW Washington, DC 20006 friedfrank.com<http://friedfrank.com>

-----Original Message-----

1

From: Haugh, Jeremy (USADC) <Jeremy.Haugh@usdoj.gov<mailto:Jeremy.Haugh@usdoj.gov>>
Sent: Thursday, November 8, 2018 10:50 AM
To: Wollenberg, Jennifer <Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com>>
Cc: jeremy.a.haugh.mil@mail.mil<mailto:jeremy.a.haugh.mil@mail.mil>; Baruch, Douglas W. <Douglas.Baruch@friedfrank.com<mailto:Douglas.Baruch@friedfrank.com>>
Subject: Re: Calixto v. Army

Jennifer:

I will forward your concerns to the Army and ask them to review the reporting.

With regard to your other inquiries, we see no basis for the clarification you seek.  Any further response at this time would be improper.

Jeremy

Sent from my iPhone

On Nov 7, 2018, at 2:00 PM, Wollenberg, Jennifer <Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com>>> wrote:

Counsel,

We have a number of concerns with and questions regarding the information Defendants have filed recently.  We therefore are seeking (a) clarification of Defendants' position and policy and (b) updated and accurate information as specified below, in order to better inform Plaintiffs and the Court as to the disputes and issues that remain, avoid unnecessary litigation expense, and promote judicial efficiency.  We ask for Defendants' cooperation in providing this information now, without requiring Plaintiffs to seek an order from the Court requiring Defendants to provide it.


1.     On October 5, the Court ordered Defendants to unredact all Nio and Kirwa class member names from Defendants' list of discharged soldiers.  In addition, the Court then ordered Defendants to identify post-July 20 discharges.  As you know, we already identified multiple problems with Defendants' reporting, including material inconsistencies between Army's/DoD's reporting in Nio and Kirwa and Defendants' reporting in this case.  But Defendants have not made the corrections necessary to fully comply with the Court's order.  These problems must be addressed and corrected.  We repeat our offer to guide Defendants through the problems and the likely solutions.

The following examples illustrate inaccuracies and omissions from Defendants' reporting:


·      Defendants have not provided all DTP names, even though defendants in the Kirwa case have taken the position that they cannot specifically identify soldiers without N-426s, which has resulted in all DTP members being included as Kirwa class members for Notice and reporting purposes in that case.  (If the Army/DoD has developed a way to specifically identify MAVNI soldiers, including discharged MAVNI soldiers, without N-426s, please let us know immediately as that will call for adjustments in the Kirwa case.  If not, Defendants here must provide all the DTP names to Plaintiffs' counsel.)

·      The Kirwa list of discharged soldiers identifies, by name, soldiers with discharge dates within the reporting period identified by the Court in this case.  Yet, those same soldiers do not appear on Defendants' unredacted list.

·      In Nio, the defendants have provided discharge information for class members with discharge dates within the reporting period identified by the Court in this case, including the post-July 20, 2018 period.  Yet, those same soldiers do not appear on Defendants' unredacted list.

·      Similarly, in the Nio case, Nio class members are not reported as discharged, even though the Calixto list includes their names.

·      Named Plaintiff Z. Li's name does not appear on Defendants' unredacted report.  (Plaintiffs need to know how Defendants describe his "reason for discharge" as compared to the other discharged MAVNI soldiers.)

2.     The Court ordered that Defendants provide the reason for each soldier's discharge.  We have reason to question the accuracy of the discharge "reasons" supplied by Defendants for many of these soldiers, including as follows:

·      Many soldiers on the "other reasons" list were told by their recruiters and other Army personnel that their discharges were due to an unfavorable MSSD.

·      Many soldiers who are identified as having "refused to enlist" never "refused" to enlist and wanted to continue serving.

·      Many soldiers listed as "refused to enlist" were effectively timed out under the rule when it was a two-year rule, including because Army personnel did not properly handle the opt-in/opt-out procedures meant for DEP soldiers or recognize that the rule had been extended to three years.  (Defendants failed to report to the Court these issues when the Court asked about time-out discharges that occurred within the last year.)

·      OCAR has a list of MAVNI soldiers with unfavorable MSSDs who are/were slated for discharge for that reason.  At least 9 of those soldiers are on the Calixto list as "refused to enlist" or "entry level performance and conduct" discharges rather than unfavorable MSSD discharges.

3.     The October 26, 2018 Memo filed by Defendants at Dkt. 50-1 ("Memo") raises a number of questions:

·      The Memo authorizes the Army to "resume making MSSDs."  This suggests that the MSSD determinations were suspended for some period prior to the Memo.  Please identify when that suspension was in effect and the authority and agency direction implementing that suspension.

·      Is the process described in the Memo available to MAVNI soldiers who do not have an MSSR from CAF but where the Army independently has made an unfavorable MSSD determination?

·      Are soldiers being provided any notice and opportunity to respond at any other stages of the military adjudication – other than following a negative MSSR and after a discharge decision?

·      How will soldiers receive the Notice described in Paragraph 3(a) of the Memo?  What does "receipt" mean, which triggers the soldier's 30-day response time?  When will the military begin providing such Notices?

·      What level of detail/kind of "information" about the basis of the MSSR will be provided in that Notice?

·      Paragraph 3(b) of the Memo requires Army action "within 90 days from the date of the DODCAF MSSR."  However, we understand that the DODCAF MSSR is complete for many soldiers and has in many instances been complete for more than 90 days.  For example, the MSSR for one of the named Plaintiffs in the Nio action was completed 14 months ago.  Is

3

the "90 days" reference a typographical error or are MSSR adjudication decisions being reconsidered/reissued now as well?

·       Defendants' cover filing for this Memo (Dkt. 50) provides that an implementation plan is being developed.  What does that mean?  When will soldiers began receiving unfavorable MSSR Notices under this Memo?  When will final MSSDs be decided?  And, what is the Government's estimation as to when any discharges under the Memo may begin?

·       What does it mean in Paragraph 4(b) that the discharge notice will cite an "unfavorable MSSD or NSD" as the basis for the proposed separation – where in the Army regs are either of those reasons listed as an appropriate basis for separation?

·       In Paragraph 5, what does it mean that the pre-July 20 separations on the basis of an unfavorable MSSD "resulting from a documented Counterintelligence concern" will be offered reinstatement in the DEP/DTP "for purposes of receiving the administrative due process described in this memorandum."

o   How and when will reinstatement be offered to these soldiers?

o   What does "reinstatement" in this context practically mean for these soldiers?  Will the DTP soldiers be allowed to attend drills, have CAC cards, sign up for TriCare, etc.?

o   Will DoD be notifying other agencies, including DHS/USCIS/ICE, of the reinstatement?  For soldiers who have fallen out of status or who are in removal proceedings, does Army/DoD understand that this "reinstatement" will protect those soldiers from the removal proceedings and deportation?

o   Is the Army drawing a distinction with the words "resulting from a documented Counterintelligence concern"?  Will this Memo apply to all of the "unfavorable MSSD" MAVNI discharges listed in Defendants' reporting?

·       Will this Memo apply to any discharged MAVNI soldiers beyond those listed as "unfavorable MSSD" discharges? As noted above, Plaintiffs' counsel has good reason to believe that a number of MAVNI discharges included on the "other reasons" list were in fact for unfavorable MSSDs or CI interviews.

·       How is a soldier, particularly a soldier already discharged from the Army, supposed to know that the Memo will apply to him/her?

·       Will Defendants clarify who among the DTP soldiers (i.e., Kirwa and Nio class members) are subject to the Memo?

·       If Plaintiffs' counsel provided Defendants with the names of DEP soldiers who are seeking clarification as to if they have been discharged, the reason for discharge, and whether they will be subject to the new Memo, would Defendants share that information with Plaintiffs' counsel (and agree that these soldiers will not be retaliated against for having contacted Plaintiffs' counsel)?

If it is easier to go through these inquiries by telephone, please let us know your availability for tomorrow or Friday.

Regards,

Jennifer M. Wollenberg

Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com<mailto:Jennifer.Wollenberg@friedfrank.com>> |  Tel:  +1 202 639 7278

Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW Washington, DC 20006 friedfrank.com<http://friedfrank.com><http://www.friedfrank.com/>

_____
Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.




_____
Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.