# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LUCAS CALIXTO, *et al.*,<br><br>                    PLAINTIFFS,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE ARMY, *et al.*,<br><br>                    DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case No. 1:18-cv-01551-ESH**

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER SUBMISSION OF THEIR OPPOSITION ON THE MERITS TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*

Plaintiffs Lucas Calixto, Tounde Djohi, Wanjing Li, Zeyuan Li, Fang Lu, Jingquan Qu, Hembashima Sambe, Emeka Udeigwe, Xing Lu, Yisheng Dai, and Bright Izudike (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Opposition to Defendants' Motion to Defer Submission of Their Opposition on the Merits to Plaintiffs' Renewed Motion for Class Certification and Appointment of Class Counsel (Dkt. 67).

## I.    Introduction

On January 23, 2019, just before the negotiated and ordered filing deadline for their opposition to Plaintiffs' Renewed Motion for Class Certification, Defendants moved to defer the filing of their brief on the grounds that they would be making a Rule 12(b)(1) motion to dismiss the Second Amended Class Action Complaint.  For the reasons set forth below, Defendants' motion should be denied.

As an initial matter, Defendants already have filed an opposition to the class certification motion, and the deadline for filing such an opposition has passed.  This Court should not allow Defendants to further delay this action by granting them yet another opportunity to respond.

Further, even if Defendants' deadline had not come and gone, Rule 6(b) requires "good cause" before a court may grant an extension of time to act.  Defendants have identified no such good cause here.  First, Defendants have been fully aware of Plaintiffs' intent to seek class certification for several months, and certainly no later than the filing of the amended complaint on August 3, 2018 (Dkt. 19).  Indeed, when the Court ordered Plaintiffs to file their second amended complaint and motion for class certification on the same schedule, Defendants raised no objection. Nor did they suggest deferring the class certification motion briefing when they sought an extension of their deadline to respond to the Second Amended Class Action Complaint and class certification motion.  In fact, the Court entered the agreed schedule proposed by the parties, which

afforded Defendants even more time (until January 25, 2019 at noon) to respond to both. Defendants always indicated that they would be filing a motion to dismiss (rather than an answer), and thus, the fact that they have elected to pursue dismissal on Rule 12(b)(1) grounds rather than Rule 12(b)(6) does not provide any good cause for deferring class certification briefing.[1]

Second, even if Defendants' Rule 12(b)(1) argument had merit (which it does not), the argument is limited to the Administrative Procedure Act ("APA") allegations in the complaint. The Second Amended Class Action Complaint, of course, also seeks class action status for distinct Constitutional claims, which are unaffected by Defendants' "sovereign immunity" defense.  Thus, Defendants' piecemeal approach to briefing would introduce the very inefficiencies and delays this Court sought to avoid by ordering simultaneous briefing.

Third, and perhaps most importantly here, deferral of class certification consideration would prejudice the absent putative class members.  Plaintiffs have reason to believe that many hundreds of soldiers were subjected and are being subjected to the same unlawful summary discharge actions experienced and challenged by the named Plaintiffs.

For all of these reasons, Defendants' motion should be denied (as moot because Defendants already have filed an opposition to the class certification motion and/or for lack of good cause). Or, if the Court is inclined to allow Defendants to file another opposition, Defendants should be ordered to further respond to Plaintiffs' Motion for Renewed Class Certification without additional delay.

---

[1]   Notably, Defendants do not contend that they need additional time to investigate the class allegations, nor do they contend that their ability to respond on time was impaired by the recent federal shutdown.  In other words, Defendants are not claiming that they cannot respond on time. They simply do not want to do so while their motion to dismiss is pending.

## II.   Argument

### A.   Defendants Already Have Filed an Opposition, and the Deadline Has Passed

Through a December 4, 2018 Minute Order, this Court ordered Defendants to file "any response to the second amended complaint and any response to the renewed class certification motion" on or before January 25, 2019 at noon.  At no time prior to the January 25, 2019 deadline did this Court adjust that order or Defendants' deadline.

On January 25, 2019, Defendants filed a document (Dkt. 69) with the following docket entry:   "Memorandum in opposition to re [62] MOTION to Certify Class and Appoint Class Counsel MOTION to Appoint Lead Counsel (Duplicate Filing) filed by MARK T. ESPER, UNITED STATES DEPARTMENT OF THE ARMY. (Martens, Roberto)."

Thus, not only have Defendants filed an opposition to the class certification motion already, but the deadline for filing such an opposition has passed.  This Court should not allow Defendants to delay this action by granting them yet another bite at this apple.  *See Koch v. White*, 251 F. Supp. 3d 162, 179-81 (D.D.C. 2017) (denying plaintiff's timely filed motions for extensions of time to file an opposition to defendant's summary judgment motion, due *inter alia* to prejudice to the defendant, and granting summary judgment in defendant's favor).[2]

### B.   This Court Is Not Required to Defer All Briefing Once a Jurisdictional Question Is Raised

Defendants argue that their request to defer briefing on class certification should be granted because "[s]ubject matter jurisdiction is a threshold inquiry that must be addressed before class certification."  Dkt. 67, at 4.  But there is no requirement that subject matter jurisdiction must be

---

[2]   The Court already has, through the information provided by Plaintiffs and Defendants throughout this action, the information necessary to assess (and certify) the proposed class.

addressed before ***briefing*** on class certification can proceed.  The case cited by Defendants demonstrates this exact point.  In *In re Navy Chaplaincy*, the class certification issue was fully briefed at the time the court addressed jurisdiction.  Thus, the court was able to dismiss one claim out of several where jurisdiction was lacking (due to mootness) and then immediately rule on class certification for the remaining claims in the same decision.  *See In re Navy Chaplaincy*, 306 F.R.D. 33, 46 (D.D.C. 2014).

A similarly efficient briefing schedule should be followed here, allowing this Court to hear Defendants' jurisdictional challenge and consider class certification at the same hearing and then issue an order as to both.  Indeed, the Court necessarily will need to reach the question of class certification because, as explained briefly below, Defendants' jurisdictional arguments (1) have no merit and (2) do not extend to all claims raised in the Second Amended Class Action Complaint. Thus, judicial economy counsels against granting Defendants' deferral request.

In addition, prior to any deferral, this Court should consider not only "whether a stay [of consideration on a motion for class certification] pending a ruling on defendant's motion to dismiss would serve the need for judicial economy," which it does not, but also whether it would do so "without prejudicing the rights of absent [putative] class members."  *Bay View, Inc. v. United States*, 46 Fed. Cl. 494, 495 n.3 (2000).  As explained further below, any stay would prejudice the rights of absent putative class members.

### C. Deferral of Briefing on Class Certification Would Not Be More Efficient Because Defendants' Subject Matter Jurisdiction Argument Is Without Merit and Does Not Address All of Plaintiffs' Claims

As Plaintiffs will explain more fully in their forthcoming opposition to Defendants' Motion to Dismiss, Defendants' argument that this Court lacks subject matter jurisdiction is without merit. Defendants' entire argument is directed at Plaintiffs' APA claims, and it is mispremised.  Contrary

to Defendants' self-serving characterizations of the claims alleged in the Second Amended Class
Action Complaint, Plaintiffs have challenged discrete final agency action.

Indeed, Defendants admit that named Plaintiff Lucas Calixto "properly invoked" the APA
with respect to a final agency action when he initially filed the complaint but then argue that the
Second Amended Class Action Complaint – in which PFC Calixto remains a named Plaintiff –
does not challenge a "discrete" agency action simply because it adds additional named plaintiffs.
Dkt. 68-1, at 3, 27.  The presence of multiple plaintiffs and class action allegations do not transform
challenges to discrete final agency action into some improper broad programmatic attack.

In considering (and rejecting) a similar jurisdictional defense offered by the Government
against a proposed class action claiming that a federal agency had not followed a statutory mandate
to consider less restrictive placements for unaccompanied minors, Judge Contreras explained:

> Plaintiffs in this case have not lodged a generalized attack, as
> Defendants assert.  Plaintiffs are not seeking wholesale change to an
> entire federal program like the plaintiffs were in *Lujan*.  Nor are they
> requesting that this Court inject itself into the day-to-day agency
> management, as the plaintiffs were in *SUWA*. Rather, Plaintiffs in
> this case seek to compel an agency to take the discrete and concrete
> action of considering statutorily specified factors in determining
> where and how to place them—and similarly situated others—now
> that they have aged out of HHS's care and custody.  **Defendants
> confuse aggregation of similar, discrete purported injuries—
> claims that many people were injured in similar ways by the
> same type of agency action—for a broad programmatic attack**.

*Ramirez v. United States Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 20-21 (D.D.C. 2018)
(internal citations omitted) (emphasis added).  Or, as the Fourth Circuit clarified in one of the cases
featured by Defendants:  "Government deficiencies do not become non-reviewable simply because
they are pervasive."  *City of New York v. Department of Defense*, No. 18-1699, 2019 U.S. App.
LEXIS 1422, at *20 (4th Cir. Jan. 16, 2019).

Thus, the fact that the challenged summary discharge actions were widespread – aimed at hundreds or more MAVNIs – does not insulate Defendants' actions from judicial review. Likewise, the October 26 Memo is a reviewable discrete final agency action. *See Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 43 n.14 (D.D.C. 2018) (noting that a memorandum instituting a program is a "discrete agency action" rather than a "'broad programmatic attack[]' on the administration of a program").

Moreover, regardless of this Court's assessment of whether "discrete" final agency action exists here, class certification still would need to be addressed with respect to the Constitutional claims raised in the Second Amended Class Action Complaint (Count IV – Procedural and Substantive Due Process, Count V – Equal Protection, Count VI – First Amendment Retaliation), even if the Court did not have jurisdiction with respect to Plaintiffs' APA claims. While Defendants argue in their Motion to Dismiss that a finding that Defendants acted "in violation of the Constitution … must also be made under the APA," Dkt. 68-1, at 28, the D.C. Circuit has made clear that Defendants are mistaken to suggest that these Constitutional claims require a discrete final agency action. *See Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006) (holding that the APA's waiver of sovereign immunity permits "nonstatutory and First Amendment actions as well … regardless of whether the [challenged action] constitutes 'final agency action'").[3] Thus,

---

[3] In addition, without any need to look to the APA's waiver of sovereign immunity, the Supreme Court has recognized that sovereign immunity does not bar suits against government officials where the challenged actions are "beyond their statutory powers" or "the powers themselves or the manner in which they are exercised are constitutionally void." *Dugan v. Rank*, 372 U.S. 609, 622 (1963); *see also Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 690 (1949) (describing exceptions where the officer acts beyond his statutory authority); *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (explaining *Larson-Dugan* exceptions to the sovereign immunity bar).

Defendants' argument that the Motion for Class Certification "will be rendered moot" by a finding that there is no final agency action, Dkt. 67, at 5, is simply wrong.

  **D.**  **Deferral of Briefing on Class Certification Would Prejudice the Members of the Putative Class**

  A stay of briefing on the Motion for Class Certification pending a ruling on Defendants' Motion to Dismiss – which will necessarily delay class certification itself – will prejudice seriously the rights of absent putative class members.  A prompt decision on class certification is necessary here.

    **1.**  **Class-wide Reinstatement and Discharge Problems Are Not Being Addressed by Defendants**

  Defendants' January 22, 2019 Status Report states that "[i]n December, the Army began notifying" former MAVNI soldiers who were separated prior to July 20, 2018 of their right to be reinstated for the purpose of receiving the procedures set forth in the October 26 Memo.  Dkt. 65 ¶ 4.  But Plaintiffs' counsel is aware of several putative class members who should have received this reinstatement notice but have not and many others who are unsure if they will ever receive this notice.  Yet, when Plaintiffs' counsel raised these issues with Defendants' counsel, Defendants declined to elaborate.

  Further, according to Defendants' reporting in this case, there are more than 450 putative class members who are not being offered reinstatement under the October 26 Memo because, according to the Army, they were summarily discharged for reasons *other* than an adverse MSSD.  These soldiers, too, are prejudiced by any delay in class certification.  If Defendants were forced to acknowledge these discharged soldiers as class members, it is highly likely that Defendants would be offering reinstatement to them as well.

  One recent example illustrates what would happen:  In November 2018, Defendants confirmed that MAVNI soldier SPC Xing Lu would not be offered reinstatement under the October

26 Memo (because she had been discharged for a reason other than an adverse MSSD).  However,

on January 22, 2019, only after SPC Lu was added as a named Plaintiff in the Second Amended

Class Action Complaint, an Army official contacted her to offer reinstatement in the Army (which

she accepted).  SPC Lu also was told in a follow up message on January 23, 2019, that her "MSSD

is also now favorable," making her eligible to ship to basic training.  Effectively, the Army now

admits that SPC Lu's summary discharge was a mistake – and one, SPC Lu alleges, that easily

would have been avoided had the Army provided her the discharge process mandated by military

regulations and the law.  While SPC Lu's situation now appears to be on a path to resolution, the

belated action by the Army – only in response to this litigation – deprived SPC Lu of a critical

year in which her military career and her path to naturalization were placed on hold.[4]  In contrast,

putative class members, who are not yet recognized as members of this lawsuit but who also were

subject to the improper summary discharges of MAVNIs, are not being offered reinstatement.  For

example, MAVNI enlistee Seongmin Kim, who went through nearly the exact same discharge

debacle as SPC Lu, still is waiting for reinstatement (and naturalization).

As such, there are ample grounds to believe that soldiers similarly situated to SPC Lu and

the other named Plaintiffs are facing ongoing harm in the absence of class certification.

---

[4]    It cannot be happenstance that, in the very short period following the filing of the Second
Amended Class Action Complaint on January 2, 2019, which first identified her as an individual
Plaintiff and proposed class representative, the Army admitted its mistake, offered SPC Lu
reinstatement, and then within one week also issued her a favorable MSSD.  *See* Dkt. 68-1, at 7
n.3.  Regardless, Defendants' remedial actions with respect to SPC Lu do not preclude her from
serving as a class representative or the class from being certified.  *See Nio v. United States Dep't
of Homeland Sec.*, 323 F.R.D. 28, 30 n.1 (D.D.C. 2017) ("Two of the named plaintiffs have been
naturalized, but that does not render the claims of the class moot." (citing *Thorpe v. D.C.*, 916 F.
Supp. 2d 65, 66 (D.D.C. 2013)).

**2.     Class-Wide Notice Failures Not Being Addressed by Defendants**

The Army's October 26 Memo mandates that each affected soldier receive written notice of both the "specific adjudicative guidelines, and information (as applicable), that formed the basis of the MSSR." Dkt. 50-1 ¶ 3.a.  This information is critical since the notice is supposed to provide the soldier with the opportunity to "submit matters which may refute, correct, explain, extenuate, mitigate, or update the unfavorable information."  *Id.*  Indeed, applicable military regulations (including AR 135-178, AR 380-67, and DoD Manual 5200.02, among others cited in the Second Amended Class Action Complaint), compel comparable notice in order to provide a meaningful opportunity to respond, rebut, and/or mitigate the finding.  While some MAVNI soldiers recently have received "adverse MSSR" notification letters from the Army, dated after the October 26 Memo,[5]  those letters are woefully deficient and do not comply with the applicable regulations, fundamental due process, or even the authorizing Army memos they purport to follow.

Attached as Exhibit 1 is an example of such a notice, dated December 31, 2018.[6]  The notice states that "the DoD CAF made an adverse MSSR" and directs the MAVNI soldier to provide a response "clearly addressing" the "unfavorable information detailed in" the notice within thirty days of receipt or else "forfeit" his or her right to refute the finding.  However, the notice letter omits any specification of the supposed "unfavorable information" pertaining to the soldier.  Instead, the notification letter merely identifies and recites the "adjudicative guideline" that

---

[5]     While the October 26 Memo was issued over twelve weeks ago, an Army official represented on January 14, 2019, in response to an individual MAVNI soldier's inquiry, that "only 32 of the 1,000 [notices contemplated by the October 26 Memo] have been sent."  At this rate, and given that many reinstatement notices still have not been sent (and that the MSSR notices are deficient), final MSSDs for many hundreds of MAVNI soldiers are not forthcoming.

[6]     In its most recent status report, Defendants assert that the first notices were sent out by mail on January 3, 2019.  Dkt. 65, at 2.  Soldiers would have received them some time later.

purportedly serves as the basis for the unfavorable MSSR, such as "Guideline B: Foreign Influence."[7]

Of course, soldiers cannot fully respond to the supposed grounds for the unfavorable MSSR without being notified of the specific information on which that assessment is based.  As such, these notification letters fail to comply with the October 26 Memo and military regulations, such as DoD Manual 5200.02's direction to provide "a comprehensive and detailed written explanation" prior to an unfavorable national security eligibility determination.

Upon learning of these deficient notices, Plaintiffs' counsel communicated their concerns to Defendants' counsel.  In response, Defendants acknowledged that the notice letters lacked substance (*i.e.,* that the operative language was "vague" and "unhelpful" to the soldiers tasked with responding) and that the lack of specificity was due, in part, to the fact that notices had to be sent to hundreds of soldiers.[8]

Yet, notwithstanding these admissions, Defendants have refused to commit to changing their "notice" practice or providing any other relief.  And Defendants have declined to provide Plaintiffs' counsel with the names of soldiers (putative class members) who have been offered

---

[7]    The notification letters provide no further, particularized information about the source of the purported "foreign influence" (*i.e.*, foreign contact or business, financial, or property interest) nor do they state whether the DoD CAF determined that (a) the supposed foreign influences "result in divided allegiance," (b) the foreign ties "create circumstances in which the individual may be manipulated or induced," (c) the individual is "otherwise made vulnerable to pressure or coercion by any foreign interest," or (d) some combination of the above.

[8]    This acknowledgement clearly supports the "numerosity" condition for class certification.  But even if Defendants were to contest the presence of numerosity or other class action elements, discovery would be the appropriate means to establish the facts relevant to the class motion.  This is yet another reason why it is inappropriate to delay briefing and consideration of the class certification motion.

reinstatement or received notices pursuant to the October 26 Memo (or who are slated to receive either) so that Plaintiffs' counsel can effectively communicate with those soldiers.[9]

***

The record of this case – beginning with Plaintiff Calixto and most recently with Plaintiff X. Lu – makes clear that Defendants will not provide relief to soldiers unless they are named Plaintiffs or otherwise within the scope of this case as class members.  The related cases tell the same story.  That is why it is crucial to adjudicate Plaintiffs' class certification motion as quickly as possible.

### III.     Conclusion

For all the foregoing reasons, Plaintiffs request that Defendants' Motion to Defer Submission of Their Opposition on the issue of class certification be denied.

Dated: January 29, 2019                          Respectfully submitted,

*/s/ Douglas W. Baruch*
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*

---

[9]     Defendants cite Privacy Act concerns for any soldier beyond the named Plaintiffs, even though this Court already has ordered the provision of information in this case for *Nio* and *Kirwa* class members and has issued a Protective Order covering the provision of such information.

**<u>EXHIBIT 1</u>**



*For Official Use Only*

**DEPARTMENT OF THE ARMY**
OFFICE OF THE DEPUTY CHIEF OF STAFF G-1
300 ARMY PENTAGON
WASHINGTON DC 20310-0300

DAPE-MPA                                            ████████████████

MEMORANDUM THRU Commander, U.S. Army Reserve Command, 4710 Knox Street, Fort Bragg, NC, 28310

FOR ████████████████████████████

SUBJECT: Notification of Adverse Military Service Suitability Recommendation (MSSR) for ████████████████████

1. References:

   a. Department of Defense Instruction 1304.26 (Qualification Standards for Enlistment, Appointment, and Induction) 23 March 2015, Change 2, 11 April 2017.

   b. Department of Defense Manual 5200.02, Procedures for the DoD Personnel Security Program (PSP), April 3, 2016.

   c. Army Regulation (AR) 135–178, (Army National Guard and Reserve) Enlisted Administrative Separations, 7 November 2017.

   d. Memorandum, Acting Assistant Secretary of the Army, (Manpower and Reserve Affairs), 27 October 2017, subject: Military Accessions Vital to the National Interest (MAVNI) Pilot Program Military Service Suitability Review and Determination (MSSD).

   e. Memorandum, Deputy Chief of Staff, G-1, 2 November 2017, subject: Delegation of Authority to Make a Military Service Suitability Review and Determination (MSSD).

   f. Memorandum, Acting Assistant Secretary of the Army (Manpower and Reserve Affairs), 26 October 2018, subject: Resume Separation Actions Pertaining to Members of the Delayed Entry Program (DEP) and Delayed Training Program (DTP) Recruited Through the Military Accessions Vital to National Interest (MAVNI) Pilot Program.

2. The Personnel Security Investigation process that you completed was returned with unfavorable results. Information identified during the security screening investigation by the DoD Consolidated Adjudication Facility (DoD CAF) indicates you received an adverse Military Service Suitability Recommendation (MSSR). The DoD CAF found that you did not satisfy the National Adjudicative Guidelines listed below.

*For Official Use Only*
*Privacy Act Sensitive –Any misuse or unauthorized disclosure may result in civil or criminal penalties*

For Official Use Only
Privacy Act Sensitive – Any misuse or unauthorized disclosure may result in civil or criminal penalties

DAPE-MPA
SUBJECT:  Notification of Adverse Military Service Suitability Recommendation (MSSR)
for ███████████████████

3.  The principal objective of the DoD personnel security adjudicative function is to
ensure individuals who are granted national security eligibility are reliable, loyal, and
trustworthy.  The DoD CAF adjudicates all military investigations using the national
security adjudicative guidelines.  National Security Adjudicative Guidelines are
established as the single common criteria for all U.S. Government civilian and military
personnel who require initial or continued national security eligibility screening.  These
guidelines are used by all Executive Branch Agencies when rendering any final national
security eligibility determination.

4.  Disqualifying conditions for ███████████ as per National Security Adjudicative
Guidelines:

    GUIDELINE B: Foreign Influence: Available information shows issues of Foreign
Influence on the part of the Subject. Foreign contacts and interests, including, but not
limited to, business, financial, and property interests, are a national security concern if they
result in divided allegiance. They may also be a national security concern if they create
circumstances in which the individual may be manipulated or induced to help a foreign
person, group, organization, or government in a way inconsistent with U.S. interests or
otherwise made vulnerable to pressure or coercion by any foreign interest.

5.  Pursuant to procedures specified in reference 1.f., you are hereby notified that the DoD
CAF made an adverse MSSR.  **You have 30 days from receipt of this notification to
submit matters which may refute, correct, explain, extenuate, mitigate, or update the
unfavorable information detailed in paragraph 4 above.**  Your response should be
provided directly to the DCS G-1 MAVNI inbox at **usarmy.pentagon.hqda-dcs-g-
1.mbx.dmpm-mavni-ops@mail.mil**.  You response should clearly addressing EACH of
the disqualifying conditions listed above.  You may provide supporting documentation.

6.  Pursuant to procedures specified in reference 1.f., the Department of the Army DCS,
G-1 will review any matters that are submitted in a timely manner and then render a Military
Service Suitability Determination (MSSD).  If the MSSD is unfavorable, Department of the
Army will initiate administrative separation pursuant to reference 1.c.  If the MSSD is
favorable and/or a waiver to MSSD standards is granted, your case and any mitigating
information will be forwarded to DoD CAF in order for DoD CAF to render a National
Security Determination (NSD).

7.  A copy of this memorandum will be placed in the individual's Army Military Human
Resource Record.

2

For Official Use Only
Privacy Act Sensitive –Any misuse or unauthorized disclosure may result in civil or criminal penalties

*For Official Use Only*
*Privacy Act Sensitive – Any misuse or unauthorized disclosure may result in civil or criminal penalties*

DAPE-MPA
SUBJECT:  Notification of Adverse Military Service Suitability Recommendation (MSSR) for █████████

8.  The point of contact for this action is DCS G-1 MAVNI inbox at <u>usarmy.pentagon.hqda-dcs-g-1.mbx.dmpm-mavni-ops@mail.mil</u>.

FOR THE DEPUTY CHIEF OF STAFF, G-1:

PAUL L. ASWELL
Chief, Accessions Division

*For Official Use Only*
*Privacy Act Sensitive –Any misuse or unauthorized disclosure may result in civil or criminal penalties*

*For Official Use Only*
*Privacy Act Sensitive – Any misuse or unauthorized disclosure may result in civil or criminal penalties*

DAPE-MPA
SUBJECT:  Notification of Adverse Military Service Suitability Recommendation (MSSR) for ███████████████████

### **Acknowledgement of Notice and Election**

On _____ I received notification of the adverse Military Service Suitability Recommendation (MSSR) issued during my Military Service Suitability Screening.

Initial one of the following:

_____ I elect to submit written matters to refute, correct, explain, extenuate, mitigate, or update the unfavorable information within 30 days from today.  I understand that if I do not submit matters within 30 days, I forfeit the opportunity to submit matters.

_____ I elect NOT to submit matters.

_____
**Name (Print)**

_____
**Signature**

_____
**Date**

4

*For Official Use Only*
*Privacy Act Sensitive – Any misuse or unauthorized disclosure may result in civil or criminal penalties*