# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LUCAS CALIXTO, *et al.*, | ) ) ) ) | |
| PLAINTIFFS, | ) | **Case No. 1:18-cv-01551-ESH** |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF THE ARMY, *et al.*, | ) ) ) | |
| DEFENDANTS. | ) ) ) ) ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .......................................................................................................1

BACKGROUND ........................................................................................................4

ARGUMENT ............................................................................................................7

    I.       Defendants Ignore the Actual Allegations in the Complaint and
            Improperly Rely on "Facts" Not Found in the Complaint .......................................8

    II.      This Court Has Jurisdiction over Plaintiffs' APA Claim (Count
            III) Because Plaintiffs Have Alleged a "Discrete" Agency Action ......................12

    III.    With Respect to Plaintiffs' Remaining Claims, Waiver of Sovereign
            Immunity Is Not Dependent on Final Agency Action ...........................................17

CONCLUSION .........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner,*
 387 U.S. 136 (1967)....................................................................................................8

*Chamber of Commerce of the U.S. v. Reich,*
 74 F.3d 1322 (D.C. Cir. 1996).....................................................................................17

*City of New York v. Dep't of Def.,*
 No. 18-1699, 2019 U.S. App. LEXIS 1422 (4th Cir. Jan. 16, 2019)............................. *passim*

*Damus v. Nielsen,*
 313 F. Supp. 3d 317 (D.D.C. 2018)..............................................................................16

*Dart v. United States,*
 848 F.2d 217 (D.C. Cir. 1988)......................................................................................18

*Dugan v. Rank,*
 372 U.S. 609 (1963).....................................................................................................18

*El Paso Nat. Gas Co. v. United States,*
 750 F.3d 863 (D.C. Cir. 2014)......................................................................................17

*Emami v. Nielsen,*
 No. 18-cv-01587-JD, 2019 U.S. Dist. LEXIS 17741 (N.D. Cal. Feb. 4, 2019) ......................8

*Jafarzadeh v. Nielsen,*
 321 F. Supp. 3d 19 (D.D.C. 2018)................................................................................13

*Kirwa v. United States DOD,*
 285 F. Supp. 3d 21 (D.D.C. 2017)................................................................................7, 16

*Kuang v. Dep't of Def.,*
 340 F. Supp. 3d 873 (N.D. Cal. 2018)..........................................................................8

*Lujan v. National Wildlife Federation,*
 497 U.S. 871 (1990)............................................................................................. *passim*

*NetCoalition & Sec. Indus. & Fin. Mkts. Ass'n v. SEC,*
 715 F.3d 342 (D.C. Cir. 2013)......................................................................................8

*Nio v. United States Dep't of Homeland Sec.,*
 323 F.R.D. 28 (D.D.C. 2017).......................................................................................7, 12

*Norton v. South Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ...................................................................................................... *passim*

*Perry Capital LLC ex rel. Inv. Funds v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ................................................................................... 18

*Pollack v. Hogan*,
  703 F.3d 117 (D.C. Cir. 2012) ................................................................................... 18

*Ramirez v. United States Immigration & Customs Enf't*,
  310 F. Supp. 3d 7 (D.D.C. 2018) ............................................................................... 13

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) .................................................................................... 8

*Superior Fibre Prods. v. United States Dep't of the Treasury*,
  156 F. Supp. 3d 54 (D.D.C. 2016) ............................................................................. 18

*Thorpe v. D.C.*,
  916 F. Supp. 2d 65 (D.D.C. 2013) ............................................................................. 12

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) ........................................................................... 4, 5, 17

**Statutes**

5 U.S.C. § 702 ............................................................................................................ 13, 17

Plaintiffs Lucas Calixto, Tounde Djohi, Wanjing Li, Zeyuan Li, Fang Lu, Jingquan Qu, Hembashima Sambe, Emeka Udeigwe, Xing Lu, Yisheng Dai, and Bright Izudike (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Opposition to Defendants' Motion to Dismiss (Dkt. 68).

## **INTRODUCTION**

In a recent filing, Defendants repeatedly refer to this litigation as involving "highly complex matters." *See, e.g.*, Dkt. 72 at 1.  In actuality, this litigation is very simple.  Acting in direct contravention of clear and longstanding military regulations and the law, Defendants have taken summary discharge actions against Plaintiffs and hundreds of similarly-situated Army soldiers.  The Second Amended Class Action Complaint identifies the applicable regulations and clearly describes how the Army is failing to follow those regulations for each Plaintiff (and others) who are victims of these discharge actions.  The common themes with respect to Defendants' discharge actions – all of which are, by definition, negative national security position eligibility decisions – are that the soldiers enlisted in the Army through the Military Accessions Vital to the National Interest ("MAVNI") program and that the soldiers have not been afforded the requisite process, including a meaningful opportunity to contest the supposed bases for the discharge actions.

In fact, since Day One of this litigation, the challenged conduct and legal framework has been consistent and decidedly uncomplicated.  Defendants acknowledged as much when they quickly admitted that they had failed to provide the requisite process to PFC Lucas Calixto when he commenced this lawsuit last summer.  Yet, Defendants stubbornly refused to take any corrective action (beyond "reinstating" PFC Calixto).  This resulted in an Amended Complaint naming additional Plaintiffs as victims of the same type of unlawful discharge actions.  Shortly thereafter,

Defendants sought to avoid judicial reckoning by enacting a new discharge policy on October 26, 2018 (Dkt. 50-1, the "October 26 Memo"), which purports to – but does not – undo the harm already done or prevent further harm.  Thus, while Defendants may now wish to characterize the claims as "highly complex" for strategic reasons, there is no mystery or complicated story-line here.  The Second Amended Class Action Complaint presents a clear record of Defendants' flagrant disregard of their legal obligations to provide process to MAVNI soldiers facing discharge actions and clearly presents the causes of action arising from Defendants' conduct.

Rather than address the merits of the complaint that is actually on file, Defendants mold the allegations to suit their own purposes, creating a straw man that they then seek to defeat.  Mischaracterizing Plaintiffs' claims as a "broad programmatic attack" on Pentagon operations, Defendants argue that the causes of action must be dismissed for lack of subject matter jurisdiction because there has been no waiver of sovereign immunity as to them.  *See, e.g.,* Dkt. 68-1 at 1 (asserting that the complaint amounts to a "broad programmatic attack" against Defendants' "statutory duty … to recruit individuals for service in the U.S. Army and Army Reserve").  Defendants double-down on this red herring argument with their claim that:

> COUNT III AND THEREFORE THE ENTIRE COMPLAINT MUST BE DISMISSED BECAUSE IT IS NOT AN APA CLAIM. IT IS A "BPA" CLAIM: AN IMPERMISSIBLE BROAD PROGRAMMATIC ATTACK ON THE MANNER IN WHICH THE SECRETARY AND THE DEPARTMENT EXECUTE THEIR STATUTORY DUTY TO "RECRUIT THE FORCE."

Dkt. 68-1 at 12.

But these arguments crumble upon scrutiny.  Defendants point to no allegation in the complaint – because there is none – that supports in the slightest the notion that Plaintiffs are somehow challenging the manner in which the Army recruits personnel.  This should be obvious from the fact that each named Plaintiff and putative class member was recruited and enlisted in the

Army no later than 2016.  *See* Dkt. 61, Second Amended Class Action Complaint ("SAC") ¶ 3.

Thus, the actual complaint here has nothing to do with the Army's MAVNI recruitment efforts or

whether the Army made misrepresentations to MAVNI recruits about their post-enlistment

military service and careers.  Instead, the question here – ignored by Defendants – is whether the

Army's discharge actions against these already-recruited and enlisted MAVNI soldiers are

prohibited by law.  The answer to that question is "yes."  And notwithstanding Defendants' protests

to the contrary, these claims – both APA and Constitutional – are reviewable and justiciable and

in no way violate principles of sovereign immunity.

Defendants' attempts to support their so-called "BPA" argument miss the mark as well.

First, while asserting that they are making a "facial challenge to the Second Amended Class Action

Complaint," Dkt. 68-1 at 10, they nevertheless ignore or seek to dispute the facts as pled.  In so

doing, Defendants overlook the very standard they cite – *i.e.*, that "the district court must accept

the well-pleaded allegations contained in the complaint as true and consider the factual allegations

in the light most favorable to the non-moving party," *id*.  They also mischaracterize and misstate

Plaintiffs' allegations.

Second, Defendants devote thirteen pages of their brief to recounting three decisions in

order to "set the stage" for their assertion that there is no "discrete" agency action at issue here

(and, thus, as their argument incorrectly goes, no sovereign immunity waiver).  These lengthy case

recitations do not advance the ball, as Defendants provide no relevant analysis and fail to connect

the dots between these decisions and Plaintiffs' allegations.  Instead, they substitute their

conclusory prediction that a "final analysis" based on "the face of the Complaint" will show that

there is not a reviewable APA claim.  Dkt. 68-1 at 27-28.  Defendants apparently believe that

agency action cannot be reviewed unless it affects only one individual because any action that

affects several individuals is impermissibly "collective" and "varied."  However, consistent with the well-established legal presumption of reviewability of agency action, Defendants' position cannot be squared with the fact that courts regularly review and adjudicate government actions in multiple plaintiff or class action cases.

Finally, Defendants argue that "Plaintiffs have not presented this Court with a discrete final agency action to have invoked the APA's limited waiver of sovereign immunity …." Dkt. 68-1 at 28-29.  Yet, Defendants fail to acknowledge that the APA's sovereign immunity waiver provision does not require a showing of final agency action.  In fact, it is well established that the APA's waiver of sovereign immunity permits non-statutory and Constitutional actions "regardless of whether the [challenged government activity] constitutes 'final agency action.'" *See Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006).

For these reasons, Defendants' Motion to Dismiss should be denied.

## **BACKGROUND**

On June 28, 2018, Lucas Calixto commenced this action and moved for a preliminary injunction, alleging APA and Constitutional claims after the Army summarily discharged him – after over two years of service during which the Army regularly praised and promoted him – without any notice or process.  SAC ¶¶ 11, 51-54; *see also* Dkt. 1.  Rather than oppose the preliminary injunction or answer the complaint, Defendants voluntarily revoked PFC Calixto's discharge and indicated their intent to thereafter comply with applicable law and regulations.  SAC ¶ 54; *see also* Dkt. 15.

On August 3, 2018, after Defendants refused to address the plight of other MAVNI soldiers facing summary discharge actions, seven additional plaintiffs joined PFC Calixto in filing the Amended Complaint.  Dkt. 19.  This time, rather than oppose the preliminary injunction or answer

the Amended Complaint, Defendants represented that they had suspended involuntary separation actions for "MAVNIs,"[1] had revoked or suspended discharge actions for all but one of the named Plaintiffs, and were reviewing and developing a new policy to address MAVNI separation procedures.   SAC ¶¶ 12, 159; *see also* Dkts. 22-1, 24-1.   Defendants initially led the Court to believe that the number of MAVNI soldiers that had been discharged was not numerous, but, when Plaintiffs disputed that claim and the Court ordered Defendants to provide more information, Plaintiffs and the Court learned for the first time that over 500 MAVNI soldiers had been subjected to these behind-the-scenes summary discharges.   SAC ¶ 176.   The Court thereafter ordered Defendants to submit bi-weekly reports detailing, among other things, Defendants' progress in developing a new policy that might comply with applicable law and regulations.   SAC ¶ 17; *see also* Dkt. 23.

The Army issued its new policy governing the involuntary separation of MAVNIs with adverse MSSDs on October 26, 2018.   SAC ¶ 18.   By issuing the October 26 Memo, which referenced the very Army and DoD regulations Plaintiffs had alleged were violated, Defendants once again tacitly admitted that the summary MAVNI discharges that had been carried out were inappropriate and unlawful.[2]   SAC ¶ 21.   Yet, the October 26 Memo does not cover all MAVNI "uncharacterized" discharges, but only soldiers who have adverse MSSRs/MSSDs.   *Id.*   Further, the October 26 Memo does not on its face resolve whether the procedures set forth in the Memo

---

[1]   Defendants did not disclose that some MAVNI discharges were, in fact, ongoing, even after Defendants assured the Court that such discharge actions had been suspended.   Only several weeks later did Defendants reveal that the suspension and Defendants' "review" of its discharge policy was applicable only to MAVNI soldiers with adverse MSSDs, not to MAVNI soldiers discharged or being discharged purportedly for "other reasons," of which there are hundreds and counting. SAC ¶¶ 13, 19-21.

[2]   The October 26 Memo does not mention or have anything to do with Army recruiting of MAVNI soldiers.

will suffice to give covered MAVNIs (those with adverse MSSRs/MSSDs) the process they are due under Army and DoD regulations and the Constitution.  SAC ¶ 25.  And Plaintiffs now know that MAVNI soldiers are not receiving a meaningful opportunity to respond under the October 26 Memo.[3]  *See* Dkt. 70 at 10-11 (describing deficient notice letters).

On January 2, 2019, Plaintiffs filed the Second Amended Class Action Complaint, adding three additional named Plaintiffs and seeking to certify a class (with two subclasses based on whether or not the October 26 Memo applies to the putative class members).  The Second Amended Class Action Complaint alleges, *inter alia*:

- "All Plaintiffs and proposed class members in this action were the subjects of involuntary administrative discharge actions by Defendants."  SAC ¶ 137.

- "Defendants unlawfully and improperly made the final discharge decisions with respect to Plaintiffs and the Class without complying with applicable law."  *Id.* ¶ 191.

- Defendants violated "applicable law" by  "making discharge decisions with respect to Plaintiffs without affording them the formal notice, response, and other applicable rights set forth in Army Regulations" and the "rights and procedures mandated by DoD Regulations."  *Id.* ¶¶ 148, 156.

- "Defendants violated the fundamental requirements of due process under the Fifth Amendment of the U.S. Constitution by purporting to discharge Plaintiffs from the U.S. Army, prior to the expiration of their enlistment contracts, without providing them with an adequate explanation for the discharge, without providing them with any meaningful opportunity to be heard and respond to the grounds, if any, for the discharge action, and without following applicable military guidance and regulations."  *Id.* ¶ 157.

- "Defendants' actions unconstitutionally discriminate against Plaintiffs based on their national origin in violation of Plaintiffs' equal protection rights as guaranteed by the Fifth Amendment of the U.S. Constitution" because these summary discharge practices are aimed at MAVNIs in particular.  *Id.* ¶ 158.

---

[3]   The Court anticipated that, once the October 26 Memo was developed, "we'll have a debate about whether [the Army's new discharge procedure for MAVNIs with adverse MSSRs/MSSDs is] adequate and whether due process applies and whether it complies with the regulations." 10/17/18 Tr. at 64:7-10.

The Second Amended Class Action Complaint thus states claims under the APA and under the Constitution based on Defendants' summary discharge actions against Plaintiffs and the proposed Class and in implementing the October 26 Memo in a way that allows summary discharge activity to continue.  And Defendants, in their conduct and filings in this case to date, have admitted that this case is about those discharge actions, have admitted which Army and DoD regulations apply to MAVNIs and what they require, and, in doing so, have admitted their violation of the law.  However, despite reinstating some of the discharged MAVNIs, Plaintiffs have not offered reinstatement or process to all of the discharged MAVNIs, nor are they complying with the law as they move forward with national security eligibility decisions and related "uncharacterized" discharge actions pursuant to the October 26 Memo or otherwise.

## ARGUMENT

If adopted, Defendants' arguments would vastly alter the face of judicial review of government agency action.  Defendants are asking this Court to hold that APA and Constitutional claims against federal agencies can be brought only by a single individual and only to challenge one very specific type of agency action, such as an individual Army discharge order decision. Defendants mistakenly equate challenges to agency policies or rules that impact more than one individual with unallowable "broad programmatic attacks."

Defendants' vision of judicial review of agency actions is not correct.  If it were so, this Court would not be reviewing the related *Nio* class action, where the Government argued the case was not reviewable because final naturalization decisions were pending and no N-426s had been revoked, or the related *Kirwa* class action, where the Army had not yet denied any individual soldier an N-426 based on an October 2017 policy before this Court issued an injunction.  If Defendants' arguments were correct, the Army's accession policy for LPR soldiers would be

unreviewable, but that policy was in fact reviewed and enjoined. *See Kuang v. Dep't of Def.*, 340 F. Supp. 3d 873 (N.D. Cal. 2018) (issuing injunction against DoD in action brought by LPRs subjected to MSSD process). Nor would any court have reviewed the Government's "travel ban," but, in fact, such reviews are happening and are appropriate. *See, e.g., Emami v. Nielsen*, No. 18-cv-01587-JD, 2019 U.S. Dist. LEXIS 17741 (N.D. Cal. Feb. 4, 2019). Agency action that impacts more than one individual can be "discrete." Agency action can be "final" even if other, reviewable agency actions could follow.

Defendants also fail to recognize that there is a general presumption of reviewability of agency action. *NetCoalition & Sec. Indus. & Fin. Mkts. Ass'n v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013) (noting the "presumption favoring judicial review of agency action" and stating "we assume that the Congress has not [precluded judicial review] absent … 'contrary legislative intent'" (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967))).

Further, Defendants' attempt to extend their limited vision of judicial review of agency actions to Plaintiffs' Constitutional claims fails for an independent reason. The sovereign immunity waiver provision of the APA permits non-monetary claims against the Government, such as Constitutional claims, regardless of whether there is a discrete final agency action.

I.    **Defendants Ignore the Actual Allegations in the Complaint and Improperly Rely on "Facts" Not Found in the Complaint**

Defendants state that their opposition to Plaintiffs' complaint is a facial, and not factual, challenge. Dkt. 68-1 at 10 ("A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be presented as a facial or factual challenge. This is a facial challenge to the Second Amended Class Action Complaint."). Under such challenges, courts accept as true the factual allegations in the complaint and give plaintiffs the benefit of all reasonable inferences drawn from the allegations in the complaint. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000).

Defendants admit this standard as well.  Dkt. 68-1 at 10 (citing *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)).

Yet, even as they acknowledge this standard, Defendants bypass the actual complaint allegations in favor of their own conclusory assertions that this case is about Defendants' recruiting efforts, "varied" allegations, and "collective" claims.  *See, e.g.*, Dkt. 68-1 at 2, 5, 12, 27.  Indeed, Defendants cite only once to the complaint in their "Argument" section and then only to repeat Plaintiffs' jurisdictional assertion.  *See* Dkt. 68-1 at 12 (quoting SAC ¶ 27).  Thus, their "facial" challenge is nothing of the sort.  And, if they had adhered to the allegations in the Second Amended Class Action Complaint, Defendants would not have had to venture very far in the complaint to understand that (1) discharge (not recruiting) actions are being challenged and (2) Plaintiffs are not each challenging the bases for his or her individual discharge through this action but instead are challenging Defendants' summary discharge policy applicable to MAVNIs, which does not afford MAVNI soldiers due process:

- "Plaintiffs believe that the Army aimed these summary discharge actions at them due to their status as soldiers who enlisted through the [MAVNI] program, …."  SAC ¶ 2.

- "This complaint arises from additional mistreatment and unlawful conduct directed at MAVNIs.  In particular, Plaintiffs are the victims of involuntary and summary administrative discharge decisions that were effected by the Army in contravention of military regulations specifically designed to afford soldiers due process with respect to discharge decisions and in violation of the soldiers' constitutional due process and equal protection rights."  *Id*. ¶ 5.

- "These summary discharges therefore failed in virtually every respect to follow the mandatory procedures established by military regulations."  *Id*. ¶ 8.

- "This discharge misconduct continued even following the commencement of this action …."  *Id*. ¶ 11.

To compound their "facial" challenge error, Defendants inject and rely on superfluous, irrelevant, and inaccurate "facts."  For example, while the Second Amended Class Action Complaint makes no mention of and alleges no claim based on 10 U.S.C § 3013(b)(1) or

Defendants' recruiting efforts, Defendants contend that the entire complaint is deficient because it is an attack "on the manner in which the Secretary and the Department have executed and will execute their first statutory duty, which is to recruit individuals for service in the U.S. Army and Army Reserve." Dkt. 68-1 at 1 (citing 10 U.S.C. § 3013(b)(1)); *see also* Dkt. 68-1 at 12. But, as noted in the Second Amended Class Action Complaint, these soldiers were recruited into the Army more than two years ago, and have been enlisted servicemen and servicewomen ever since. SAC ¶¶ 3, 150. In fact, had they not been enlisted, they could not have been given military rankings and, obviously, they could not have been subjected to discharge actions. Defendants' attempt to recast this complaint into a legal challenge to recruitment efforts is further belied by the fact that Defendants already have admitted that DoD and Army regulations applicable to enlisted soldiers apply to these soldiers. SAC ¶¶ 8, 21, 138.

Beyond the mischaracterization of the fundamental legal challenges actually alleged in the complaint, Defendants misstate facts pertaining to individual Plaintiffs, again going beyond the four corners of the complaint to advance their purported "facial" challenge. The following examples pertaining to the three new named Plaintiffs illustrate the point:

- Purporting to describe the complaint allegations, Defendants state that "Plaintiff **Yisheng Dai**'s separation was a result of his refusal to reschedule his counterintelligence interview." Dkt. 68-1 at 7-8 (citing SAC ¶ 119). Defendants are wrong to suggest that PFC Dai is claiming that he refused to reschedule his CI interview. The complaint certainly does not say that; rather, it alleges that the Army may have discharged PFC Dai after ***the Army*** refused to reschedule his CI interview. SAC ¶ 119. The complaint further alleges that PFC Dai sought, many times, to have his CI interview rescheduled, and never refused to do so. *Id.* ¶¶ 119, 122. Moreover,

on the core due process issue, the complaint alleges that PFC Dai does not know why he was discharged from the Army and that the Army's post-discharge explanations are inconsistent and make no sense.  *Id.* ¶¶ 120, 122, 123.

- Defendants claim that Plaintiff **Bright Izudike** "remains in the USAR" and only received an order that "cancelled his reservation for initial entry training."  Dkt. 68-1 at 8 (citing SAC ¶ 126).  With respect to the second proposition, Defendants purport to cite to the complaint, but here again the complaint says no such thing.  The complaint includes description of a conversation that SPC Izudike had with Army personnel about a discharge order (on Format 500) that includes the following lines:

  > Authority:  AR 135-178
  > Effective date:  1 October 2017 (VOCO Confirmed)
  > Component:  United States Army Reserve
  > Type of Discharge:  Uncharacterized
  > Additional Instructions:  No Travel Required/Unit Request, ZBD

  SAC ¶ 126.  Further, the complaint states that SPC Izudike has received invoices from DFAS demanding that SPC Izudike reimburse the Army for service pay he received for drilling with his unit after his ***discharge*** date.  *Id.* ¶¶ 129, 134.  Nothing in these documents or the complaint allegations concerning them reference a mere cancellation of his reservation for initial entry training.  And, with respect to Defendants' contention that he "remains in the USAR," the actual complaint allegations instead detail Defendants' summary discharge actions against SPC Izudike.[4]

- Regarding Plaintiff **Xing Lu**, Defendants admit that the allegations in the complaint are accurate, and they admit that SPC Lu's discharge was the result of an Army mistake.

---

[4]   Indeed, it was news to SPC Izudike when he learned from Defendants' Motion to Dismiss that he supposedly "remains in the USAR."  And, according to various Army representatives that he has contacted since Defendants' filing, Defendants' representation – while welcome if true – was

Dkt. 68-1 at 7.  That admission only serves to reinforce the complaint as a whole –

Defendants' failure to provide mandatory process to MAVNI soldiers subject to

adverse national security eligibility decisions and related "uncharacterized" discharge

actions results in mistakes that harm the Army and, even more so, the soldiers.  The

fact that the Army, following filing of the complaint and only in response to this

litigation, apparently is on the path to correcting its mistake is irrelevant to the present

Motion to Dismiss.[5]

## II.     This Court Has Jurisdiction over Plaintiffs' APA Claim (Count III) Because Plaintiffs Have Alleged a "Discrete" Agency Action

Defendants contend that Plaintiffs' claims are not reviewable because they assert a "broad

programmatic attack" on Defendants' policies rather than a challenge to "discrete" agency action,

resulting in a lack of a sovereign immunity waiver and therefore a lack of subject matter

jurisdiction. Dkt. 68-1 at 1-2.  This argument fails because it is based on a fundamental misreading

of Plaintiffs' actual claims.   Plaintiffs are not asserting a "broad programmatic attack" on

Defendants' policies or programs.  Rather, as detailed in the complaint, Plaintiffs challenge the

---

a surprise to them as well.  In fact, contrary to Defendants' representation, SPC Izudike still is
being pursued by DFAS, the CAC card that the Army confiscated from him has not been returned,
and he has been told that his name does not appear on any Army roster or within any Army system
where he would be recognized as a currently-serving soldier.

[5]   In the very short period following the filing of the Second Amended Complaint on January 2,
2019, which first identified her as an individual Plaintiff and proposed class representative, the
Army admitted its mistake, offered SPC Lu reinstatement, and then within one week also issued
her a favorable MSSD.  *See* Dkt. 68-1 at 7 n.3.  This appears to be an effort by the Army to "moot"
SPC Lu from the action.  However, activity with respect to SPC Lu following the filing of the
complaint should not be addressed in this "facial" challenge.  Further, Defendants' remedial
actions with respect to SPC Lu do not preclude this case from continuing or from being certified
as a class action. *See Nio v. United States Dep't of Homeland Sec.*, 323 F.R.D. 28, 30 n.1 (D.D.C.
2017) ("Two of the named plaintiffs have been naturalized, but that does not render the claims of
the class moot." (citing *Thorpe v. D.C.*, 916 F. Supp. 2d 65, 66 (D.D.C. 2013))).

Army's policy and related practice of not providing MAVNI soldiers with mandatory process in connection with adverse national security eligibility decisions and "uncharacterized" discharge actions. *See, e.g.*, SAC ¶¶ 149-156, 189, 191, 196, 201.

In advancing their theory, Defendants misconstrue "discrete" to mean "singular." *See, e.g.*, Dkt. 68-1 at 6. Defendants concede that the original complaint in this case, filed by PFC Calixto, was "a proper invocation of APA section 702." *Id.* But Defendants then suggest that because the later complaints contain more plaintiffs and are not limited to one discharge order, the claims are "collective" and "varied," "transform[ing]" the claims into a "broad programmatic attack." *Id.* at 5, 6, 13. But this argument has no basis in the law. In fact, Judge Contreras recently dispensed with a similar challenge, holding that "aggregation of similar, discrete purported injuries" does not create a "broad programmatic attack." *Ramirez v. United States Immigration & Customs Enf't,* 310 F. Supp. 3d 7, 20-21 (D.D.C. 2018). Further, in a case Defendants rely upon heavily in their Motion to Dismiss, the Fourth Circuit held that "Government deficiencies do not become non-reviewable simply because they are pervasive." *City of New York v. Dep't of Def.*, No. 18-1699, 2019 U.S. App. LEXIS 1422, at *20 (4th Cir. Jan. 16, 2019). Thus, Defendants have no legal basis to contend now that the claims are not "discrete" merely because multiple named Plaintiffs and similarly-situated MAVNI soldiers also were victimized by the same unlawful policy and practice. It is perfectly appropriate for Plaintiffs to challenge Defendants' summary discharge policy, including the October 26 Memo. *See Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 43 n.14 (D.D.C. 2018) (noting that a memorandum instituting a program is a "discrete agency action" rather than a "'broad programmatic attack[]' on the administration of a program").

To support their argument, Defendants devote almost half of their brief to a recitation of three decisions: *Lujan v. National Wildlife Federation*, *Norton v. South Utah Wilderness Alliance*,

and *City of New York v. Department of Defense*.  *See* Dkt. 68-1 at 14-27.  None of these cases

supports Defendants' arguments.  *Lujan v. National Wildlife Federation* involves a challenge to

the Department of the Interior Bureau of Land Management's ("BLM") implementation and

management of its land withdrawal review program.  497 U.S. 871, 891 (1990).  In that case, the

plaintiffs did not challenge an order, regulation, or policy set forth by BLM, but rather the

"continuing … operations of the BLM" in carrying out the program.  *Id.* at 890.  The Court in

*Lujan* held that the plaintiffs' claims were not reviewable because the claims generally challenged

"the entirety" of the BLM program.  *Id.* at 890-91.  The Court's reasoning was predicated on the

fact that the plaintiffs in *Lujan* were not challenging one government action but rather seeking

"*wholesale* improvement of [a federal] program by court decree."  *Id.* at 891 (emphasis in original).

The *Lujan* challenge clearly is distinct from the claims at issue here, where Plaintiffs seek to

compel the Army's compliance with existing, mandatory regulations and due process with respect

to specific discharge actions already taken or contemplated.  SAC ¶¶ 136-169.  Far different from

the broad programmatic attack in *Lujan*, Plaintiffs' APA claims here identify discrete actions by

Defendants – a policy and practice of summary discharge actions against MAVNIs – and seek

appropriate relief for those violations of law.  *Id.*

Defendants' reliance on *Norton v. South Utah Wilderness Alliance* is even further afield.

In *Norton*, the plaintiffs challenged the BLM's management of federal lands, claiming that BLM

did not comply with several federal land-protection statutes.  542 U.S. 55, 56 (2004).  The Supreme

Court dismissed the *Norton* plaintiffs' sweeping challenge, holding that the plaintiffs' claims did

not name a discrete action, nor did they articulate actions that the BLM was required by law to

perform.  *Id.*  The Supreme Court held that APA claims must articulate and challenge a "discrete"

agency action that is "demanded by law."  *Id.* at 65-66.  Thus, the Supreme Court's holding in

*Norton* has no bearing on Defendants' motion here, where the complaint does not seek to force the Army generally to comply with a broad statutory scheme under which the Army has discretion to determine how best to proceed.  Rather, the complaint alleges that Defendants' discharge actions are directly contrary to mandatory processes demanded by Army and DoD regulations and the Constitution, and that Defendants have no discretion to deny soldiers due process under the law. SAC ¶¶ 136-169.

In fact, *Norton* actually confirms that Plaintiffs here are, in fact, challenging discrete agency action.  As the *Norton* Court explained, "an action called for in a plan [that may otherwise be viewed as preliminary or discretionary] may be compelled when the plan merely reiterates duties the agency is ***already obligated*** to perform, or perhaps when language in the plan itself creates a commitment binding on the agency."  542 U.S. at 71 (emphasis added).  Here, the complaint states that Defendants should be ordered to perform a duty they are ***already obligated*** to perform – that is, providing soldiers with mandatory process with respect to discharge actions.

Finally, Defendants' discussion of *City of New York v. Department of Defense* is misguided.  In *City of New York*, several cities sued DoD for an alleged failure to fully, accurately, and timely comply with a federal law requiring agencies to continually report disqualifying information on gun ownership.  2019 U.S. App. LEXIS 1422, at *2 (4th Cir. Jan. 16, 2019).  The Fourth Circuit held that the cities' claims were non-reviewable because courts are ill-equipped to "adjudicate generalized grievances asking [courts] to improve an agency's performance or operations," whereas courts "are well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials."  *Id.* at *13.  Much like *Lujan* and *Norton*, *City of New York* involves a sweeping challenge to the manner in which a government agency was implementing an agency program.  In invoking *City of New York* in the Motion to Dismiss, Defendants again

misconstrue the complaint allegations, wherein Plaintiffs do not seek to challenge the general manner in which the Army recruits and retains soldiers, but instead challenge Defendants' specific failure to provide mandatory legal process in connection with MAVNI discharge actions.

Notably, Defendants offer no analysis and instead simply summarize *Lujan*, *Norton*, and *City of New York* before asserting in conclusory fashion that, in light of these cases, the Second Amended Class Action Complaint is "not an APA claim," but a so-called "BPA claim."  Dkt. 68-1 at 28.  Defendants never explain how Plaintiffs' specific claims are analogous to the broad, generalized claims at issue in *Lujan*, *Norton*, and *City of New York* or how one could leap to the conclusion that "discrete" equates to singular.

The question at issue here – whether the Army's failure to provide MAVNI soldiers with meaningful process in advance of adverse national security eligibility decisions and related "uncharacterized" discharge actions is unlawful – is "discrete," regardless of whether the failure applies to one MAVNI soldier, eight MAVNI soldiers, or 800 MAVNI soldiers.  Indeed, following Defendants' logic, no APA case could be certified as a class action.  This Court, like many others, has held otherwise.  *See, e.g.*, *Kirwa v. United States DOD*, 285 F. Supp. 3d 21, 44 (D.D.C. 2017) (granting class status to plaintiff-soldiers challenging agency actions under 5 U.S.C. § 706(1) and (2)); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 335, 343 (D.D.C. 2018) (granting class status to plaintiffs challenging agency action under 5 U.S.C. § 706(2)).  And even the Fourth Circuit in *City of New York* recognized that "Government deficiencies do not become non-reviewable simply because they are pervasive."  2019 U.S. App. LEXIS 1422, at *20.

The fact that Defendants' actions are pervasive and affect many individuals does not shield them from judicial review under the APA.  The Second Amended Class Action Complaint alleges and challenges "discrete" agency action, which is subject to judicial review under APA § 706(2).

### III.   With Respect to Plaintiffs' Remaining Claims, Waiver of Sovereign Immunity Is Not Dependent on Final Agency Action

In an attempt to extend their sovereign immunity argument beyond the APA claim in the complaint, Defendants contend that Plaintiffs' Constitutional claims are subject to the same APA "discrete" final agency action analysis.  Defendants are wrong here as well.  The language of the APA sovereign immunity waiver provision makes the point:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  **An action in a court of the United States seeking relief other than money damages and stating a claim that an agency** or an officer or employee thereof **acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States** or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: ....

5 U.S.C. § 702 (emphasis added).  Indeed, the D.C. Circuit has made clear that "the second sentence of § 702 of the APA waives sovereign immunity not just for APA claims but also, more broadly, for claims 'seeking relief other than money damages.'"  *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 892 (D.C. Cir. 2014) (quoting 5 U.S.C. § 702); *see also Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not.").

Moreover, the § 702 waiver of sovereign immunity does not also require a discrete and final agency action as that requirement is tied to § 704, which underlies only an APA cause of action.  *See Trudeau*, 456 F.3d at 187 (holding that the APA's waiver of sovereign immunity permits "nonstatutory and First Amendment actions as well ... regardless of whether the [challenged action] constitutes 'final agency action'").  Consequently, there simply is no merit to Defendants' contention that the complaint must "present[ ] this Court with a discrete final agency

action to have invoked the APA's limited waiver of sovereign immunity" in order for this Court to have jurisdiction over the Constitutional claims. *See* Dkt. 68-1 at 28-29. Defendants cite no support for this assertion, because there is none. The law is exactly the opposite. *See, e.g.*, *Perry Capital LLC ex rel. Inv. Funds v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017) ("Reading § 704 to limit only the cause of action that may be brought under the APA and not the grant of immunity in § 702 is in line with our new understanding of § 704 as narrowly focused upon the requirements for the APA cause of action."); *Superior Fibre Prods. v. United States Dep't of the Treasury*, 156 F. Supp. 3d 54, 59-60 & n.2 (D.D.C. 2016) (Huvelle, J.). Accordingly, Plaintiffs' claims (beyond the APA claim in Count III of the Second Amended Class Action Complaint) are not dependent on "discrete" final agency action in order to be reviewable by this Court.

Moreover, sovereign immunity does not bar suits against government officials where the challenged actions are "beyond their statutory powers" or "the powers themselves or the manner in which they are exercised are constitutionally void." *Dugan v. Rank*, 372 U.S. 609, 621-22 (1963); *see also Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (explaining exceptions to the sovereign immunity bar); *Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988). Here, the Second Amended Class action Complaint alleges Constitutional violations by ***both*** Defendants. SAC ¶¶ 194-213.

Thus, independent of having subject matter jurisdiction over Plaintiffs' APA claim, the Court also has subject matter jurisdiction over Plaintiffs' remaining claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied in its entirety.

Dated: February 8, 2019                    Respectfully submitted,

                                           _____/s/ Douglas W. Baruch_____
                                           Douglas W. Baruch (D.C. Bar No. 414354)
                                           Jennifer M. Wollenberg (D.C. Bar No. 494895)
                                           Kayla Stachniak Kaplan (D.C. Bar No. 996635)
                                           Neaha P. Raol (D.C. Bar No. 1005816)
                                           Katherine L. St. Romain (D.C. Bar No. 1035008)
                                           Fried, Frank, Harris, Shriver & Jacobson LLP
                                           801 17th Street, NW
                                           Washington, D.C. 20006
                                           Telephone:  (202) 639-7000
                                           Facsimile:  (202) 639-7003
                                           Email: douglas.baruch@friedfrank.com
                                           Email: jennifer.wollenberg@friedfrank.com

                                           *Counsel for Plaintiffs*