**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LUCAS CALIXTO, *et al.*,

          Plaintiffs,

     vs.                                                    Civil Action No. 18-1551 (ESH)

DEPARTMENT OF THE ARMY, *et al.*,

          Defendants.

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants the Secretary of the Army Dr. Mark T. Esper (the "Secretary") and the

Department of the Army ("Army") (collectively, "Defendants), by and through undersigned

counsel, respectfully submit this reply memorandum in further support of their motion to dismiss

the Second Amended Class Action Complaint.

## I. INTRODUCTION

To survive this Rule 12(b)(1) motion to dismiss, Plaintiffs have the burden of showing

that they have properly invoked a statutory waiver of sovereign immunity to assert at least one of

the six counts that comprise the Second Amended Class Action Complaint (ECF No. 61).

Plaintiffs rely on section 702 of the Administrative Procedures Act, 5 U.S.C. § 702, which

provides a waiver of sovereign immunity to assert causes of action against a federal department

or agency based on "agency action."  The Supreme Court has held that "agency action" means

one of the discrete types of actions listed in 5 U.S.C. § 551(13), i.e., an agency "rule," "order,"

"license," "sanction," or "relief," or the equivalent thereof.  *Norton v. S. Utah Wilderness

Alliance*, 542 U.S. 55, 62 (2004).  In their opposition memorandum (ECF No. 74), Plaintiffs

failed to identify a discrete agency action that serves as the basis for their reliance on section

702's limited waiver of sovereign immunity.  Plaintiffs have therefore failed to invoke this court's jurisdiction, and accordingly, the Second Amended Class Action Complaint must be dismissed.

Plaintiffs argue that Defendants misapply the Supreme Court's "discrete" agency action precedent to mean that only a single individual can challenge an agency action.  Pls' Opp. Mem. (ECF No. 74) at 11.  That is not true.  Defendants acknowledge that a discrete agency action can aggrieve many individuals and that a class action lawsuit to obtain judicial review of that discrete agency action may be appropriate in certain cases.

But Plaintiffs in this case have not alleged a discrete agency action.  Plaintiffs do not allege that the Army has issued an *order* or other identifiable agency action to summarily discharge all MAVNI recruits.  Such an order would likely be considered a discrete agency action subject to section 702's waiver of sovereign immunity.  Instead, it appears (although there is confusion on this point) that Plaintiffs seek to aggregate numerous discharge actions – each one a discrete agency action – and collectively characterize them as "Defendants' summary discharge policy applicable to MAVNIs."  Pls' Mem. Opp. (ECF No. 74) at 13; *see also* 2d Am. Compl. (ECF No. 61) (challenging, among other things, all discharge decisions made regarding Plaintiffs and the putative class members).

Based on that characterization, Plaintiffs ask this Court to take the extraordinary measure to set aside all MAVNI discharge decisions *without reviewing each individual one on its merits* and to order the Army to "offer" reinstatement to all discharged MAVNIs *regardless of the reason why* each individual was discharged.  2d Am. Compl. (ECF No. 61) ¶¶ 1, 14, 26, 189, 193, 197.  Plaintiffs also seek to have this Court issue declarations and an injunction to require the Army to apply inapplicable regulations and to take other actions not required by law, such as

changing how the Army characterizes discharges for entry level recruits.  *Id*. ¶ 204.  Simply

stated, this is a broad programmatic attack on the Army's MAVNI program, and APA section

702 does not waive the United States' sovereign immunity for this type of lawsuit.

## II. PLAINTIFF'S ARGUMENTS AND FACTUAL ASSERTIONS

Despite nearly seven months of litigation and multiple filings and hearings explaining

and clarifying issues, Plaintiffs' most recent filings indicate a fundamental misunderstanding of

some of the foundational aspects in this case.  The Second Amended Class Action Complaint

(ECF No. 61) and Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 74)

indicate that they do not fully appreciate the background and origin of the MAVNI program or

the nature of the "discharges" they claim Plaintiffs received.  These issues have been clarified in

earlier proceedings and filings in this case or in the related cases.[1]

### A.   PLAINTIFFS AND THE PUTATIVE CLASS ARE "MAVNI RECRUITS"

Plaintiffs misconstrue, then spend an inordinate amount of time addressing, the phrase

"recruit the force" that appears in Defendants' Motion to Dismiss.  *See* Pls' Opp. Mem. (ECF

No. 74) at 2, 3, 5, 9, 10, 16.  Interestingly, Plaintiffs' argument that Defendants' use of the phrase

"recruit the force" is a "red herring" is itself a red herring.  Defendants argued in the Motion to

Dismiss that Plaintiffs are making an impermissible broad programmatic attack on the manner in

which the Secretary and the Department execute their statutory duty to "recruit the force."  Mem.

Mot. Dismiss (ECF No. 68-1) at 12.  Even though Plaintiffs' claims in this case remain unclear

(as discussed *infra* Section III.A), Defendants acknowledge that it is obvious they are not

challenging the manner in which the Army recruits personnel.

---

[1] Plaintiffs' counsel in this case are also counsel for the Plaintiffs in *Nio v. Department of Homeland Security, et al*. Civ. A. No. 17-0998 (D.D.C.) and *Kirwa et al, v. Department of Defense, et al*, Civ. A. No. 17-1793 (D.D.C.).

Individuals in the MAVNI program are "recruits" until the time they attend Initial Entry

Training ("IET") (commonly known as Basic Training).  *See, e.g.* Declaration of Stephanie P.

Miller, ECF No. 19-7 ¶ 4 (declaring that, as of July 7, 2017 the military services has recruited

more than 10,000 noncitizens under the MAVNI Pilot Program) and ¶¶ 8 and 9 (referring to

"MAVNI recruits"), *Nio v. Department of Homeland Security, et al*., Civ. A. No. 17-0998

(D.D.C.).  Because each of the named plaintiffs in this case have yet to attend IET, they are all

"MAVNI recruits."  Even though Plaintiffs are not challenging the manner in which the Army

*initially* recruited MAVNIs, the aspects of the MAVNI program that Plaintiffs challenge are part

of the process of *integrating* MAVNI *recruits* into the service.

In any event, the Secretary of the Army is responsible for all aspects of the Department.

10 U.S.C. § 3013(b)(1).  This statute provides that the "Secretary of the Army is responsible for,

and has the authority necessary to conduct, *all affairs of the Department of the Army*, [which

would include MAVNI discharges from the Army] including the following functions:  recruiting,

organizing, supplying, equipping, trainings, servicing, mobilizing, demobilizing, administering,

maintaining," *etc*.  *Id*.  Thus, this case is indeed an attack on the manner in which the Secretary

and the Department have executed and will execute their statutory duties, including their duty to

"recruit the force."  10 U.S.C. § 3013(b)(1).

## B. USAREC "DISCHARGE" ORDERS DO NOT DISCHARGE AN INDIVIDUAL FROM THE UNITED STATES ARMY RESERVE

"Discharge" orders from the United States Army Recruiting Command ("USAREC")

cancel training reservations for the individual soldier.  They do not discharge the individual from

the Army.  Discharge orders from the United States Army Reserve Command ("USARC")

actually discharge someone from the Army.  This difference has been clear since at least August

13, 2018, when Defendants filed a status report and declaration clearly explaining the difference.

*See* St. Clair Dec. (ECF No. 22-1).  Defendants again offered this explanation in their Response

to Plaintiffs' Motion to Lift Stay and For Briefing Schedule.  ECF No. 41 ¶¶ 4-6 (citing ECF No.

22-1).  Numerous other times in hearings and discussions with Plaintiffs' counsel, Defendants

have articulated the difference.

Nonetheless, Plaintiffs indicate their misunderstanding by citing USAREC "discharge"

orders as if they actually separated an individual from the Army Reserve.  *See* 2d Am. Compl.

(ECF No. 61) ¶¶ 17-31 (allegations regarding named Plaintiffs Wanjing Li, Fang Lu, Jingquan

Qu, Hembashima Sambe, Emeka Udeigwe, and Bright Izudike).  In Bright Izudike's case,

Plaintiffs allege that Izudike received a "discharge order, dated September 15, 2017" that "was

issued by the recruiting battalion."  *Id.* ¶ 126.  Plaintiffs go on to claim that Izudike received

"conflicting and confusing information about his discharge," including that he continued to drill

and receive pay, *id.* ¶ 129, that he attended a counterintelligence interview after his discharge

was effective, *id.* ¶ 130, and that the *Nio* reporting does not identify a discharge date for Izudike

and that an Army colonel completed and signed an N-426 form after the effective date of the

"discharge" that did not identify Izudike as separated, *id.* ¶¶ 132, 133.  Unsurprisingly, Izudike

remained in the Army after USAREC cancelled his training reservation.  *See* St. Clair Dec. (ECF

No. 22-1) ¶ 4.

Izudike may have been confused upon receiving the "discharge" order from the recruiting

battalion, but it should have been clear to counsel in this litigation, since at least August 2018,

that a "discharge" order from the recruiting command does not discharge the individual from the

Army.  *See* St. Clair Dec. (ECF No. 22-1) ¶ 4.  Nonetheless, Plaintiffs' recent filings indicate

their failure to grasp this issue.

Plaintiffs' misunderstanding continues in their Opposition to Defendants' Motion to Dismiss (ECF No. 74).  There, Plaintiffs' counsel expresses astonishment that Izudike remains in the United States Army Reserve ("USAR").  ECF No. 74 at 11.  Defendants' assertion should not have elicited any surprise.  Plaintiffs themselves alleged Izudike only received a USAREC discharge order, 2d Am. Compl. (ECF No. 61) ¶ 126, and he therefore continued as a MAVNI recruit in the USAR.  *See* St. Clair Dec. (ECF No. 22-1) ¶ 4.

This case involves a complex Army program and multiple, nuanced Army policies. While it is understandable that Plaintiffs may not grasp the complexities involved in the MAVNI program and the nuances of Army personnel policies, Defendants cannot allow Plaintiffs' misunderstanding to lead this Court astray.

### III. ARGUMENT

### A. **PLAINTIFFS' OPPOSITION MEMORANDUM PROVIDES NO CLARITY ON WHAT IS THE DISCRETE AGENCY ACTION THAT ALLEGEDLY PROVIDES PLAINTIFFS WITH A WAIVER OF SOVEREIGN IMMUNITY**

In their Opposition to Defendants' Motion to Dismiss (ECF No. 74), Plaintiffs present a confusing picture of what they are actually challenging in this action and what question is properly before the Court.  On January 2, 2019, Plaintiffs filed the Second Amended Class Action Complaint ("Second Amended Complaint") (ECF No. 61).  In the Second Amended Complaint, Plaintiffs claimed they were challenging "summary discharge actions," "summary administrative discharge decisions" or simply "discharge actions."  *See id.* ¶¶ 1, 2, 5, 6, 8, 9, 185, 196, 197, and 199.  In their Opposition, Plaintiffs claim "[s]ince Day One of this litigation, the challenged conduct and legal framework has been consistent and decidedly uncomplicated."  Pls' Opp. Mem. (ECF No. 74) at 1.  If only that were true.  The only consistency is what Plaintiffs are

*not* challenging: "Plaintiffs are not each challenging the bases for his or her individual discharge through this action…." *Id*. at 9.

Plaintiffs' claims are a moving target and it is unclear if Plaintiffs themselves know what they are challenging in the Second Amended Complaint.  In fact, the conduct Plaintiffs challenge is inconsistent within their Opposition to Defendants' Motion to Dismiss.  For example, Plaintiffs claim on page 3 of their Opposition that "the question here . . . is whether the Army's discharge actions against these already-recruited and enlisted MAVNI soldiers are prohibited by law."

On page 7, Plaintiffs head off in a different direction: "[t]he Second Amended Class Action Complaint thus states claims under the APA and under the Constitution based on Defendants' summary discharge actions against Plaintiffs and the proposed class *and in implementing the October 26 memo in a way that allows summary discharge activity to continue*."  ECF No. 74 at 7 (emphasis added).  Here, we see that Plaintiffs seek to add the October 26 policy memorandum to its list of grievances.  But the Second Amended Complaint does not include a claim challenging the October 26 policy memorandum.

Then, on Page 9, Plaintiffs claim they are challenging a "summary discharge *policy* applicable to MAVNIs."  Pages 12 and 13 muddy the waters further when the Plaintiffs claim they are challenging "the Army's policy and *related practice* of not providing MAVNIs with mandatory process in connection with adverse national security eligibility decisions and 'uncharacterized' discharge actions."  The paragraphs plaintiffs cite to in the Second Amended Complaint (¶¶ 149-156, 189, 191, 196, and 201) do not mention a "policy" or "practice."

On page 16 of the same Opposition, Plaintiffs claim they "challenge Defendants' specific failure to provide mandatory legal process in connection with MAVNI discharge actions," but

make no mention of a "policy," "practice," or adverse national security eligibility decisions.

Finally, on the same page, Defendants present their final question: "[t]he question at issue here—

whether the Army's failure to provide MAVNI soldiers with meaningful process in advance of

adverse national security eligibility decisions and related 'uncharacterized' discharge action is

unlawful . . .," ECF No. 74 at 1, but make no mention of a *policy*, *practice*, or the October 26,

2018 memorandum.  Plaintiffs do not challenge a *policy*, or a *practice*, or the October 26, 2018

policy in the Second Amended Complaint.[2]

Plaintiffs' state that the "question at issue here" is "whether the Army's failure to provide

MAVNI soldiers with meaningful process in advance of adverse national security eligibility

decisions and related 'uncharacterized' discharge action is unlawful."  If that is truly the basis of

Plaintiffs' case, then the October 26, 2018 policy moots Plaintiffs' case because it offers

reinstatement to all MAVNIs who were discharged on the basis of an unfavorable Military

Service Suitability Determination ("MSSD").  As a result, the Court should dismiss the Second

Amended Class Action Complaint.

## B.  PLAINTIFFS FAIL TO ALLEGE A DISCRETE AGENCY ACTION

In the Second Amended Complaint, Plaintiffs fail to allege a discrete agency action.

First, Plaintiffs' "question at issue" is not based on a discrete agency action and instead is a

"broad programmatic attack" seeking wholesale changes to the way the Army initiates,

processes, and characterizes MAVNI discharges and its asks the Court to insert itself into day-to-

day Army operations.  Second, Plaintiffs fail to challenge either the alleged Army "policy" or the

October 26, 2018 policy in their Second Amended Complaint.  Third, the October 26, 2018

_____

[2] To the extent Plaintiffs claim they do challenge the October 26, 2018 policy, this claim is, at best, premature and the policy is not reviewable.

policy is not reviewable.  Fourth, Plaintiffs fail to identify a waiver of sovereign immunity for purposes of allowing this Court to hear their constitutional claims.  Therefore, Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Class Action Complaint.

### 1.   Plaintiffs' "Question at Issue" is Not Based on a Discrete Agency Action

In their Opposition, Plaintiffs argue that "[t]he question at issue here—whether the Army's failure to provide MAVNI soldiers with meaningful process in advance of adverse national security eligibility decisions and related 'uncharacterized' discharge actions is unlawful—is 'discrete,' regardless of whether the failure applies to one MAVNI soldier, eight MAVNI soldiers, or 800 MAVNI soldiers."  ECF No. 74 at 16.  The issue, of course, is not whether the question Plaintiffs crafted is "discrete," but whether the *agency action* they are challenging is discrete.  Here, the alleged agency action underlying Plaintiffs' "question at issue" is not discrete.

The APA defines "agency action" as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13); 5 U.S.C. § 701(b)(2) (explaining that "agency action" for purposes of the judicial review provisions of the APA carries the same meaning given by 5 U.S.C. §551).  The Supreme Court has made it clear that these are *discrete* actions.  *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 64 (2004). The discrete agency action condition precludes attacks that seek broad programmatic improvements of agency behavior and also precludes judicial review of "even discrete agency action that is not demanded by law."  *Id*. at 65.

In *Ramirez v. United States Immigration & Customs Enf't*, 310 F. Supp. 3d 7 (D.D.C. 2018), a case cited by Plaintiffs in their Opposition brief, Judge Contreras reviewed a challenge to an agency's failure to consider a specific statutory requirement.  Defendants in that case

argued that Plaintiffs failed to identify a discrete agency action subject to judicial review under the APA.  *Id.* at 20.  There, Judge Contreras found that the *Ramirez* Plaintiffs had not lodged a generalized attack because they were "not seeking wholesale change to an entire federal program like the Plaintiffs were in *Lujan*." *Ramirez*, 310 F. Supp. 3d at 20-21.  Nor were they "requesting that this Court interject itself into the day-to-day agency management . . .." *Id.*  Rather, Judge Contreras found,

> Plaintiffs in this case seek to compel an agency to take the discrete and concrete action of considering statutorily specified factors in determining where and how to place them—and similarly situated others—now that they have aged out of HHS's care and custody.

*Id.*

To the contrary, Plaintiffs in this case are asking the Court to make wholesale changes to how the Army initiates, processes, and characterizes MAVNI discharges; to reinstate each individual MAVNI who was discharged from the Army; and to take over day-to-day Army operations relative to reinstating MAVNIs.

### a.   Plaintiffs Seek a Wholesale Change to the Army Program for Initiating, Processing, and Characterizing MAVNI Discharges

Plaintiffs seek a wholesale change to the way the Army initiates, processes, and characterizes MAVNI discharges.  In the Second Amended Complaint, and echoed by arguments in their Opposition to Defendants' Motion to Dismiss, Plaintiffs seek to have the Court compel the Army to follow Army Regulation ("AR") 380-67 and Department of Defense Instruction ("DoDI") 5200.02.  2nd Am. Compl. (ECF No. 61) ¶¶ 142-144, 149-154.  Plaintiffs further seek to have the Court constrain Defendants from issuing uncharacterized discharges to MAVNI recruits, *id.* ¶ 6, even though every recruit who is discharged while in an entry-level status receives an uncharacterized discharge.

Plaintiffs erroneously claim in the Second Amended Complaint and Opposition to Defendants' Motion to Dismiss that individuals who receive unfavorable MSSDs are to be processed in accordance with AR 380-67 and DoDI 5200.02.  ECF No. 61 ¶¶ 142-144 and ECF No. 74 at 5.  But these regulations do not apply to Military Service Suitability Recommendations or Determinations ("MSSR" / "MSSD"), which are used by the Army to verify the suitability of a MAVNI recruit to ship to basic training.  This is clearly reflected in the October 26, 2018 policy memorandum titled "Resume Separation Actions Pertaining to Members of the Delayed Entry Program (DEP) and Delayed Training Program (DTP) Recruited Through the Military Accessions Vital to National Interest (MAVNI) Pilot Program."[3]  *See* ECF 50-1.

This policy memorandum provided guidance for "making Military Service Suitability Determinations (MSSD) and initiating involuntary administrative separation as appropriate." ECF No. 50-1 at 1.  The policy sets out procedures for "cases where the Department of Defense Central Adjudications Facility (DoDCAF) has made an adverse Military Service Suitability Recommendation (MSSR)."  *Id*.  The policy memorandum does not include reference to or require use of AR 380-67 or DoDI 5200.02 simply do not apply to the MSSR / MSSD process. *See id*.  The October 26th memorandum also describes the procedure for initiating and processing involuntary administrative separations based on unfavorable MSSDs.  Again, the procedure does not reference either AR 380-67 or DoDI 5200.02.

The October 26, 2018 memorandum is the Army policy that defines the procedures for MSSDs and related discharge actions.  The October 26 policy does not refer to AR 380-67 or

---

[3] Plaintiffs claim the October 26, 2018 memorandum "referenced the very Army and DoD regulations Plaintiffs had alleged were violated."  Plaintiffs are wrong.  The memorandum cites Army Regulation (AR) 135-178, but does not cite either AR 380-67 or DoDI 5200.02, which Plaintiffs claim Defendants violated.

DoDI 5200.02 because they are not applicable to MAVNIs.  Plaintiffs' demand that the Army

follow these regulations seeks to impose a wholesale change to the manner in which the Army

initiates and processes MAVNI discharge actions.

Plaintiffs further seek wholesale changes to the way the Army characterizes discharges of

individuals who are still in "entry-level status."  Entry-level status includes, for purposes of the

DTP members serving in the Army reserve component ("RC") (which includes all Named

Plaintiffs except for Xing Lu who is in the DEP):

> "[a] member of a RC who is not on active duty or who is serving under a call or
> order to active duty for 180 days or less begins entry level status upon enlistment
> in a RC.  Entry level status for such a member of a RC terminates as follows:
> (1) 180 days after beginning training if the Soldier is ordered to ADT [Active Duty
> Training] for one continuous period of 180 days or more.
> (2) 90 days after the beginning of the second period of ADT if the Soldier is ordered
> to ADT under a program that splits the training into two or more separate periods
> of active duty."

AR 135-178 (Glossary).

As a result, a DTP soldier who has only served in the reserves and has never been

on active duty or active duty for training will remain in entry level status.  This is true for

all of the Named Plaintiffs except Xing Lu.  It is also true for *any* soldier in the RC who

has not served on active duty, whether they are MAVNIs or not.  Any soldier separated

while still in an entry-level status will receive an "uncharacterized" discharge.  AR 135-

178, ¶ 2-7a(2).  In other words, MAVNIs who are provided with an "uncharacterized"

discharge are treated exactly the same as any other soldier who is discharged while in an

entry-level status.

Any change to this process would represent a wholesale change to the manner in which

the Army characterizes MAVNI discharges.  As such, Plaintiffs bring an impermissible broad

programmatic attack on the Army's MAVNI program.

### b.  Plaintiffs Request that the Court Interject Itself Into Day-to-Day Army Management

The Court should reject Plaintiffs' attempt to persuade it to manage day-to-day Army operations.  "The Courts have always been reluctant to interfere in the management of the military services.  The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."  *Kreis v. Sec'y of the Air Force*, 866 F. 2d 1508 (D.C. Cir. 1989) (citing *Orloff v. Willoughby*, 345 U.S. 83 (1953)).

In their Second Amended Complaint, Opposition to Defendants' Motion to Dismiss, and in other filings in this case (*see* ECF No. 33), Plaintiffs ask the Court to disregard this principle disfavoring judicial interference with military decisions and take on the duties of a *de facto* member of each named plaintiff's chain of command (and, presumably of each proposed class member's chain of command) and address soldier issues that arise regularly in the course of military service.  Plaintiffs do not seek to compel the Army to adhere to a specific provision of the law or to reconsider Plaintiffs' discharges; rather they request, among other things, that the Court reinstate them in the military and restore their military benefits retroactive to the date of the discharge action.  2d Am. Compl. (ECF No. 61) ¶ 1.  Plaintiffs seek full reinstatement to "pre-discharge status."  *See, e.g.* Pls' Resp. Def.'s Mot. Stay (ECF No. 33) at 2.

As indicated in Plaintiffs' previous filings in this case, the actions Plaintiffs want the Court to assume from the Army include some of the most mundane, day-to-day tasks managed by a recruit's chain-of-command.  Plaintiffs ask the Court to ensure MAVNIs are able to drill with their units, to help them obtain "access their electronic records," "be recognized within the

military systems as a serving soldier (which impacts healthcare coverage with Tricare and other things)," and resolve pay issues. *Id*. at 11.

For these reasons, it is clear Plaintiffs seek the Court's intervention into the day-to-day operations of the Army relative to reinstating MAVNIs to their pre-discharge status. As such, Plaintiffs bring an impermissible generalized attack on the Army.

Plaintiffs cite *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19 (D.D.C. 2018) in support of their argument that they are challenging the October 26, 2018 policy and that their challenge is proper. The *Jafarzadeh* case does not help Plaintiffs. The *Jafarzadeh* Court noted in a footnote that "plaintiffs point to a discrete agency action: the memorandum instituting CARRP." *Jafarzadeh*, 321 F. Supp. 3d at 43 n.14. In the instant case, Plaintiffs have not properly challenged a policy (written or unwritten), whether it is their novel "challenge [to] Defendants' summary discharge policy," *see, e.g*., ECF No. 74 at 13, or the October 26, 2018 policy. As noted above, Plaintiffs did not challenge either the non-existent policy or the October 26, 2018 policy in their Second Amended Complaint and the arguments related to both appear for the first and only time in their Response to Defendants' Motion to Dismiss. *Id*.

While it is true that agency action does not have to be in writing to be finally and judicially reviewable, *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015), in *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50-51 (D.D.C. 2014), the Court rejected a challenge to "a generalized, unwritten administrative 'policy' but did permit a challenge to five specific purported applications of that alleged policy. There, as Judge Contreras explained in his *Ramirez* opinion, the plaintiffs had attacked both a general policy and specific applications of that purported policy. *Bark*, 37 F. Supp. 3d at 50. Judge Contreras found the *Bark* court "merely observed that *Lujan* does not permit plaintiffs to shoehorn generalized attacks on agency

behavior into a court under the "policy" label." *Id*. The Court did find reviewable "agency action" under the APA relative to specific applications of the purported policy. *See id*. at 51.

The Court should, for these reasons, dismiss Plaintiffs' claims as an attempt to "shoehorn" their generalized attack (broad programmatic attack) on the Army's discharge of MAVNIs into this Court under the "policy" label first found in their Opposition to Defendants' Motion to Dismiss. And even if this were proper, Plaintiffs are not challenging their individual discharges in this case, ECF No. 74 at 9, so they would not be subject to individual review.

### 2. The Court Should Strike, or Simply Disregard, Plaintiffs' Attempt to Recast Their Claims as Against a Discrete Agency Action

In an effort to save their case in the face of Defendants' sovereign immunity challenge, Plaintiffs attempt to recast their allegations into a challenge of a discrete agency action. Plaintiffs restate their case by presenting two novel claims in their opposition memo (ECF No. 74) that do not appear in the Second Amended Complaint. Plaintiffs claim in their Opposition, for the first time in this extensive litigation, that they are challenging (1) an Army "policy" of discharging MAVNIs without due process; and (2) the October 26, 2018 policy memorandum. ECF No. 74 at 13 ("It is perfectly appropriate for Plaintiffs to challenge Defendants' summary discharge policy, including the October 26 memo"). Respectfully, the Court should not consider either of these claims because Plaintiffs failed to include them in the Second Amended Complaint and, therefore, the claims are not properly before the Court. Also, there is no such "summary discharge policy" (either written or unwritten).

First, Plaintiffs do not challenge a policy in their 51-page Second Amended Complaint. Throughout their complaint, Plaintiffs repeatedly refer to "challenged discharge actions," ECF No. 74 ¶¶ 196, 197, 199; their challenges to "summary discharge actions" *id*. ¶ 185; "summary administrative discharge actions," *id*. ¶ 5; or simply "summary discharges," *id*. ¶¶ 8, 9. At no

time in their 213-paragraph complaint do the Plaintiffs refer to a summary discharge "policy." Indeed, the claim that the Army had a policy of discharging MAVNIs without due process is nowhere to be found in the Plaintiffs Second Amended Complaint.

Plaintiffs cannot simply dismiss this as Defendants "mold[ing] the allegations to suit their own purposes" as they erroneously state in their Opposition.  *See* ECF No. 74 at 2.  The word "policy" appears seven times in the Second Amended Complaint, but is never used to refer to an Army policy of discharging MAVNIs without due process.  In their Opposition to Defendants' Motion to Dismiss, on the other hand, Plaintiffs attempt to recast their claims, referring *five times* to their new-found challenge to "Defendants' summary discharge policy applicable to MAVNIs" *Id*. at 9[4]; "the Army's policy and related practice of not providing MAVNI soldiers with mandatory process in connection with adverse national security eligibility decisions and 'uncharacterized discharge' actions."  *Id*. at 13;[5] the Army's "unlawful policy and practice" *Id*.; "Defendants discharge policy" *Id*.; and a "policy and practice of summary discharge actions against MAVNIs" *Id*. at 14.  In short, Plaintiffs' attempt to restate their claims as a challenge to an Army "policy" or "practice" fails.  They have not challenged a policy or practice in their complaint and this "claim" is not properly before the Court.

---

[4] The Court need not accept Defendants' word for it here.  Plaintiffs themselves cite the language from their complaint on page 9 of their Response.  The words "policy" and "practice" are conspicuously absent from the paragraphs they cite.  They refer to "actions," "decisions," and "discharge misconduct," but never claim the Army had a policy of discharging MAVNIs without due process.

[5] Plaintiffs cite to 12 paragraphs from the Second Amended Complaint.  Not one of those paragraphs refers to an Army "policy" or "practice."

Second, and maybe most importantly, no such policy exists, either written or unwritten.[6] The most compelling evidence that no policy exists is the many MAVNIs who currently serve in the Army and who, obviously, were not discharged from the Army without due process. For example, prior to July 2018 (Plaintiffs initiated the original complaint in this matter on June 28, 2018), over one-thousand MAVNIs received favorable MSSDs and over 800 were naturalized. Very few (less than 5%) of those MAVNIs were discharged from the Army. *See Nio v. Department of Homeland Security, et al.*, Civ. A. No. 1:17-cv-998 (D.D.C.), ECF No. 234. If the Army had a policy to discharge MAVNIs without due process, these MAVNIs would not be currently serving honorably in the Army. Again, Plaintiffs' attempt to restate their claims as against a policy (for purposes of arguing they are challenging a discrete agency action) fails and this "claim" should be disregarded as not properly before the Court.

### 3. Plaintiffs Do Not Challenge the October 26, 2018 Policy in the Second Amended Complaint and the Policy is Not Reviewable

Plaintiffs claim in their Opposition to Defendants' Motion to Dismiss (for the first time) that they are challenging the October 26, 2018 policy memorandum. ECF No. 74 at 11. But Plaintiffs assert no claim in the Second Amended Complaint to challenge that policy memorandum. *See* ECF No. 61 ¶¶ 187-213. Plaintiffs discuss the October 26, 2018 policy in the Second Amended Complaint at paragraphs 18-25, but they admit "because the procedures described in the October 26 Memo have not yet been fully developed or implemented, it remains to be seen whether these procedures fully comport with the military regulations on which they

---

[6] Plaintiffs make no mention in the "Class Action Allegations" section of the Second Amended Complaint of an Army policy of discharging MAVNIs without due process. Instead, Plaintiffs identify only discharge actions taken without due process to the soldier. If the policy Plaintiffs claim they now challenge actually existed, there would be no need for sub-classes. The only class necessary would be "anyone subject to the Army's policy of discharging MAVNIs without due process."

are purportedly based." *Id*. ¶ 25.  As such, the October 26, 2018 policy is not a final agency

action and is not reviewable at this time.

      The APA defines "agency action" as an "agency rule, order, license, sanction, relief, or

the equivalent or denial thereof, or failure to act."  5 U.S.C. §551(13); 5 U.S.C. § 701(b)(2)

(explaining that "agency action" for purposes of the judicial review provisions of the APA

carries the same meaning given by 5 U.S.C. §551.)  "[T]he 'agency action' in question must be

'final agency action.'" *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (citing section

704 which defines "actions reviewable" as "[a]gency action made reviewable by statute and final

agency action for which there is no other adequate remedy in a court are subject to judicial

review.").  "[T]he party seeking review under § 702 must show that he has 'suffered legal

wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that

action 'within the meaning of a relevant statute." *Id*. at 883.

      Even if Plaintiffs had challenged the October 26, 2018 policy, it is not reviewable.  As

the Supreme Court explained in *Lujan*, an agency action is reviewable "to the extent that specific

'final agency action' has an actual or immediately threatened effect." *Lujan*, 497 U.S. at 894; *cf.*

*Cobell v. Norton*, 240 F. 3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or measure is

reviewable, an on-going program or policy is not, in itself a 'final agency action' under the

APA.").

      The October 26, 2018 policy is now being implemented, but no MAVNI has been

discharged, nor has any MAVNI had their discharge initiated under the policy.  Def.'s Stat.

Report (ECF No. 71) ¶ 4.  Further, Plaintiffs have not properly challenged the October 26, 2018

policy in the Second Amended Complaint.  Even if Plaintiffs had properly challenged the policy,

it is not reviewable because Plaintiffs offer no facts in the Second Amended Complaint that show

or would tend to show that anyone has suffered a legal wrong or has been adversely affected or aggrieved by the policy.

### 4. Constitutional Claims

Plaintiffs rely on *Trudeau v. FTC*, 456 F3d 178 (D.C. Cir. 2006), to support their position that the APA's waiver of sovereign immunity in section 702 allows them to assert the constitutional claims asserted in Counts IV, V and VI of the complaint.  In *Trudeau*, the DC Circuit repeated its precedent that the "APA's waiver of sovereign immunity applies to any suit whether under the APA or not."  *Id.* at 186.  On that basis, the court in *Trudeau* found that the plaintiff in that case properly invoked the APA's waiver of sovereign immunity under section 702 by asserting a cause of action that the FTC violated his First Amendment rights when it issued an allegedly false press release regarding a settlement agreement between plaintiff and the FTC.  *Id.* at 187.  The *Trudeau* court explained that the "final" requirement of "final agency action" in APA section 704 ("actions reviewable") is an element of an APA cause of action – it is not an element of the waiver of sovereign immunity found in section 702.  *Id.* at 186.

But the element of "finality" is not what is at issue in this motion.  This motion to dismiss is based on the fact that Plaintiffs' Second Amended Class Action Complaint does not present this court with a "discrete" agency action such that they have properly invoked APA section 702's waiver of sovereign immunity.  The *Trudeau* court did not discuss the "discrete" element because it was not at issue in that case.  The *Trudeau* plaintiff's case was based on the FTC's issuance of a single press release – clearly a discrete agency action and therefore not an issue that was litigated by the parties.  The requirement that a purported waiver of sovereign immunity under APA section 702 must be based on a discrete agency action is a matter of Supreme Court precedent, clearly established in *Norton*.

In this case, Plaintiffs' lawsuit is not based on a discrete agency action – an agency "rule, order, license, sanction, or relief" – that has aggrieved Plaintiffs.  In this case, there was no one order issued by the Army to "discharge all MAVNIs" that this court can review under an APA cause of action or under Plaintiffs' alleged causes of action for constitutional violations.

Each decision to separate a MAVNI recruit was based on the facts of that specific recruit's situation.  These decisions cannot be aggregated under the general category of "the Army's policy to discharge MAVNIs" because there is no such policy and there was no such order or other "agency action."  The fact that the Army discharged a large number of MAVNI recruits in the course of its operations is not a discrete agency action.  In the absence of a discrete agency action, Plaintiffs causes of actions for constitutional violations must fail for lack of subject matter jurisdiction because the APA and no other statute waives the United States' sovereign immunity for such claims to be aggregated and asserted in a single lawsuit.  *Trudeau* simply does not provide a basis for Plaintiffs to claim that they have properly invoked the APA's waiver of sovereign immunity to assert their collective grievances in the manner that they seek in this lawsuit.

## C. **PLAINTIFFS' REQUEST FOR REINSTATEMENT FOR ALL DISCHARGED MAVNI RECRUITS IS NOT JUSTICIABLE**

Reinstatement of discharged MAVNI recruits is function and is within the discretion of the Army as military personnel decision.  Even if the Court finds that the Plaintiffs somehow bring a proper claim against an Army policy of discharging all MAVNIs without due process or against the October 26, 2018 policy memorandum, Plaintiffs' requested relief of reinstating each individual MAVNI in the Army is not justiciable.

Plaintiffs allege their claims are justiciable.  Pls' Opp. Mem. (ECF No. 74) at 3.  They are not.  Even though the Plaintiffs' claims are a moving target and it is difficult to discern what they

are challenging, their requests for relief have remained consistent.  They request that the Court

find unlawful each individual MAVNI discharge (for any reason) and reinstate *each individual*

MAVNI who was discharged from the Army.  Plaintiffs' request for reinstatement of *each*

*individual* MAVNI is non-justiciable.

In its leading opinion on the issue of the justiciability of claims such as Plaintiffs', the

D.C. Circuit warned the judiciary to avoid inserting itself into Army operations because the

Army is a specialized community that operates differently from civilian agencies and companies:

> Judges are not given the task of running the Army . . . [o]rderly government
> requires that the judiciary be as scrupulous not to interfere with legitimate Army
> matters as the Army must be scrupulous not to intervene in judicial matters.

*Kries*, 866 F.2d 1508, 1511 (citing *Orloff*, 345 U.S. 83).  The D.C. Circuit further cautioned that

the "Constitution vests 'the complex, subtle, and professional decisions as to the composition,

training, equipping, and control of a military force' exclusively in the legislative and executive

branches."  *Id*. (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)).

In *Kries*, the D.C. Circuit found that to grant the relief Plaintiff requested (judicial

promotion) "would require us to second-guess the Secretary's decision about how to best

allocate military personnel in order to serve the security needs of the Nation."  *Id*.  Consequently,

the Court determined that requests for retroactive military promotions fall "squarely within the

realm of nonjusticiable military personnel decisions." *Id*.

Here, Plaintiffs seek as relief a finding that their discharges were unlawful and that the

Court order that *each individual* MAVNI who has been discharged since 2016 be reinstated in

the Army, whether eligible for reinstatement or not.  2d Am. Compl. (ECF No. 61) ¶ 1.

Plaintiffs' claims for relief are clearly not justiciable because consideration of their claims

"would require the Court to intrude upon military personnel decisions committed exclusively to

the legislative and executive branches." *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998) (citing *Kries*, 866 F.2d at 1511).

    *Charette* involved a former Army officer who had voluntarily resigned after a Board of Officers recommended that she be retained.  Charette requested that the Court order the Army to set aside her non-selection to the rank of major, grant her promotion reconsideration, and reinstate her to active reserve status.  *Id*. at 48.  At bottom, Charette's request is exactly the type of relief sought by Plaintiffs in this case.  In *Charette*, the Court found "plaintiff's request for reinstatement and promotion reconsideration are clearly not justiciable because consideration of these claims would require this Court to intrude upon military personnel decisions committed exclusively to the legislative and executive branches."  *Id*. at 50 (citing *Kreis*, 866 F.2d at 1511).

    Like Charette's claims, the Plaintiffs' claim for relief (reinstatement in the Army) in this case is not justiciable.  Their claims may be amenable to individual resolution at the agency level, either at the Administrative Discharge Review Board ("ADRB") and/or the Army Board for the Correction of Military Records ("ABCMR").  But they cannot be aggregated and brought before this Court in a generalized manner, as Plaintiffs seek to do in the Second Amended Complaint.  Therefore, Plaintiffs' claims should be dismissed and, should the Court find them amenable to resolution at the agency level, individually remand them to the agency.

    **D.  <u>IN THE FINAL ANALYSIS, EVERY COUNT IN THE SECOND AMENDED CLASS ACTION COMPLAINT MUST BE DIMISSED.</u>**

    In view of all of the principles discussed above, a review of each count in the Second Amended Complaint shows that each one fails to invoke APA section 702's limited waiver of sovereign immunity:

    Count I is a request for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, for a declaration "that the final discharge decisions made with respect to Plaintiffs and

the Class are unlawful and must be revoked." 2d Am. Compl. (ECF No. 61) ¶ 189.  As argued in

Defendants' Motion to Dismiss (ECF 68-1 at 28) the Declaratory Judgment Act does not provide

a waiver of sovereign immunity.  *See P&V Enters. v. U.S. Army Corps of Engineers*, 466 F.

Supp. 2d 134, 141 (D.D.C. 2006).  And the collective and inherently individualized "final

discharge decisions made with respect to Plaintiffs and the Class" are not a discrete agency

action that properly invokes section 702's limited waiver of sovereign immunity.  As Plaintiffs

have failed to establish as a matter of law that this Court has jurisdiction to hear Count I of the

Second Amended Class Action Complaint, this count must be dismissed.

Count II is a request for broad, sweeping injunctive relief that is again based on the

collective and individualized "final discharge decisions with respect to Plaintiffs and the

Class[.]" 2d Am. Compl. (ECF No. 61) ¶ 191.  It asks this Court to require the Army to apply

inapplicable regulations (Army Regulation 380-67 and Department of Defense Instruction

5200.02) and to take a variety of actions that the Army is not required to take by law or

regulation, such as to "promptly notify" the Department of Homeland Security "that the

discharges are revoked and void for all purposes." *Id*. ¶ 193.  This count cites to no statutory

authority for its purported waiver of sovereign immunity; therefore, Plaintiffs obviously rely on

APA section 702.  But as in the case of Count I, the collective and inherently individualized

"final discharge decisions with respect to Plaintiff and the Class" are not a discrete agency

action.  There is no waiver of sovereign immunity for the Court to hear Count II and to grant the

injunctive relief requested.  Therefore, this Count must be dismissed.

Count III is Plaintiff's APA cause of action.  *Id*. ¶ 194-97.  It asks this Court to hold

unlawful and set aside "the challenged discharge actions" *id*. ¶ 197, meaning, all MAVNI

discharge actions without reviewing each individual decision on its merits.  Again, all of the

collective and individualized MAVNI discharge decisions – which were based on a variety of

reasons including medical disqualifications and failure to pass criminal background checks – are

not a discrete agency action subject to APA section 702's limited waiver of sovereign immunity.

As there is no waiver of sovereign immunity under section 702, Count III must be dismissed.

Count IV seeks unspecified "appropriate equitable relief" based on the allegation that the

"challenged discharge actions" violate Plaintiffs right to due process. *Id*. ¶ 199, 200.  It is not

clear what relief Plaintiffs seek in this count, but what is clear is that the collective and

individualized "discharge actions" are not a discrete agency action subject to section 702's

waiver of sovereign immunity.  Plaintiffs are incorrect to argue that the D.C. Circuit's decision in

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006), provides legal authority for Plaintiffs to assert

this count.  *See* discussion *supra* III.B.4.

Count V is where the "broad programmatic attack" nature of the Second Amended Class

Action Complaint truly comes to light.  In this Count, Plaintiffs assert an equal protection

challenge based on the allegation that MAVNIs – who are entry level recruits waiting to ship to

basic training – received "uncharacterized" or "entry level separations," 2d Am. Compl. (ECF

No. 61) ¶ 204, *and* based on the Army's alleged decision to re-review MAVNI

counterintelligence ("CI") packets "for the purpose of identifying potential criminal violations."

*Id*. ¶ 205.  Count V is clearly not based on a discrete agency action such that Plaintiffs have

properly invoked APA section 702's limited waiver of sovereign immunity to assert this

constitutional cause of action.  It is part of Plaintiff's multi-pronged broad programmatic attack

on the Army.  Therefore, Count V must be dismissed.

Plaintiffs' plan for a broad programmatic attack on the Army concludes in Count VI,

which is a cause of action for First Amendment retaliation based on the alleged "policy to re-

review the proposed class members CI screening packets to look for information on potential crimes and to then report those potential crimes to law enforcement for investigation and prosecution." *Id.* ¶ 210. Perhaps more so than any other counts, Counts V and VI show that Plaintiffs do not seek to merely have this Court "hold unlawful and set aside" *all* MAVNI discharge actions (without reviewing the merits of each one individually), but further seek to have this Court interject itself into the inner workings of the Army's personnel office to review operations and decisions that are not discrete agency actions. As with every count in the Second Amended Complaint, none of which are based on a discrete agency action (i.e., a discrete rule, order, license, sanction, or relief), Count VI must be dismissed because there is no waiver of sovereign immunity for Plaintiffs to assert this type of claim against the Army.

## IV. CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Class Action Complaint for lack of subject matter jurisdiction because Plaintiffs have failed to meet their burden of proving that they have properly invoked a statutory waiver of sovereign immunity and because they present claims for relief that are not justiciable.

Dated: February 15, 2019                    Respectfully submitted,

                                            JESSIE K. LIU, D.C. Bar # 472845
                                            United States Attorney
                                            for the District of Columbia

                                            DANIEL F. VAN HORN, D.C. Bar # 924092
                                            Chief, Civil Division

*Of Counsel:*
                                            BY: */s/ Roberto C. Martens, Jr.*
JEREMY A. HAUGH                             ROBERTO C. MARTENS, JR.
Major, U.S. Army                           Special Assistant United States Attorney
                                            United States Attorney's Office
JOSEPH G. NOSSE                            Civil Division
Major, U.S. Army                           555 4th Street, N.W.
                                            Washington, D.C. 20530

U.S. Army Legal Services Agency      (202) 252-2574
9275 Gunston Road      roberto.martens@usdoj.gov
Fort Belvoir, VA 22060
(703) 693-1011      *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

    I certify that on this 15th day of February 2019, I served upon counsel for Plaintiffs the foregoing Defendants' reply memorandum in further support of motion to dismiss by filing said document using the Court's Electronic Case Filing System.

Dated:  February 15, 2019      */s/ Roberto C. Martens, Jr.*
      ROBERTO C. MARTENS, JR.
      Special Assistant United States Attorney
      United States Attorney's Office
      Civil Division
      555 Fourth Street, N.W.
      Washington, D.C. 20530
      (202) 252-2574
      roberto.martens@usdoj.gov

      *Attorney for Defendants*