**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUCAS CALIXTO, *et al.*,      ) | |
| ) | |
| PLAINTIFFS,     ) | |
| ) | **Case No. 1:18-cv-01551-ESH** |
| v.     ) | |
| ) | |
| UNITED STATES DEPARTMENT OF THE     ) | |
| ARMY, *et al.*,     ) | |
| ) | |
| DEFENDANTS.     ) | |
| ) | |

## <u>PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY</u>
## <u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Plaintiffs respectfully move this Court to grant Plaintiffs leave to file a sur-reply in further

opposition to Defendants' Motion to Dismiss (Dkt. 68) and Reply (Dkt. 75).[1]

This Court has discretion to grant leave to file a sur-reply, and such motions are routinely

granted "when a party is 'unable to contest matters presented to the court for the first time' in the

last scheduled pleading." *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (internal

citation omitted). In other words, "[i]f the movant raises arguments for the first time in his reply

to the nonmovant's opposition, the court will either ignore those arguments in resolving the motion

or provide the non-movant an opportunity to respond to those arguments by granting leave to file

a sur-reply." *Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 120 (D.D.C. 2003); *see also*

*Aguirre v. SEC*, 671 F. Supp. 2d 113, 117 n.2 (D.D.C. 2009) (Huvelle, J.).

---

[1]  In accordance with Local Civil Rule 7(m), undersigned counsel for Plaintiffs sought
Defendants' position with respect to this motion. Defendants' counsel indicated that Defendants
are unable to take a position on the motion without first reviewing a draft of the proposed sur-
reply.

In their Reply, Defendants present several legal arguments and factual assertions that they did not raise in their Motion to Dismiss.  Thus, without a grant of leave to file a sur-reply, Plaintiffs lack the means to identify these points for the Court and rebut them.  Plaintiffs seek leave to respond to three of these new assertions by Defendants.

First, in connection with their previous contention that the Second Amended Class Action Complaint (hereinafter, the "Complaint") does not challenge a discrete and final agency action, Defendants now argue that this is established by the number of times that the Complaint uses the specific words "policy" or "practice."  *See* Reply at 7-8; 15-16.  In their Motion to Dismiss, Defendants did not argue or suggest in any manner that their "lack of waiver of sovereign immunity" dismissal ground was in any way dependent on a formulaic pleading requirement or the use of "magic words."  Had they done so, Plaintiffs would have cited to legal precedent refuting this point.  Plaintiffs should be afforded an opportunity to respond to this argument.

Second, Defendants argue for the first time that Plaintiffs' claims are not justiciable based on a portion of the relief Plaintiffs are seeking.  *See* Reply at 20-22.  By contrast, the sole basis for Defendants' Motion to Dismiss was that "Plaintiffs' theory of the case lacks ***one*** essential element for this Court to exercise its Article III judicial power against the head of an Article II executive branch department: a waiver by Congress of sovereign immunity."  MTD, Dkt. 68-1 at 5 (emphasis added).  In fact, in their Motion, Defendants explicitly "put[] aside the issue of remedies."  *Id.* at 5-6.  Plaintiffs therefore seek leave to respond to this new argument and demonstrate that it is contrary to the law in this Circuit.

Finally, in an attempt to bolster their theory that the Complaint makes a "broad programmatic challenge" that is not justiciable, an argument which they themselves represented as a purely "facial" challenge to the allegations in the Complaint, Defendants' Reply injects several

new factual assertions that are outside of (and in several instances directly contrary to) the four corners of the Complaint.  For example:

- Defendants argue for the first time that AR 380-67 and DoDI 5200.02 – two regulations that are not mentioned anywhere in the Motion to Dismiss – do not apply to MAVNIs, *see* Reply at 10-12, 23, even though the Complaint alleges otherwise, as do military regulations and statements by the Army and DoD.

- Defendants argue for the first time that the existence of non-discharged MAVNIs establishes that there is no "discharge policy," Reply at 17, even though the Complaint specifically and repeatedly alleges that the Army has engaged in a campaign to discharge – formally or effectively – "entry-level" MAVNI soldiers without affording them the requisite due process.

- Defendants argue for the first time that the claims here could be resolved by Army review boards, Reply at 22, again departing from the four corners of the Complaint and also ignoring the limited scope of review afforded to those boards.

As this District has recognized, "[a] surreply is most appropriate where the new matter introduced is factual." *Aguirre*, 671 F. Supp. 2d at 117 n.2 (quoting *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 277 (D.D.C. 2002)).

WHEREFORE, Plaintiffs respectfully request that this Motion be granted.   In the alternative, if leave to file a sur-reply is not granted, Plaintiffs request that the Court disregard the factual and legal arguments made for the first time in Defendants' Reply.

Dated: March 1, 2019                     Respectfully submitted,

                                         _____*/s/ Douglas W. Baruch*_____
                                         Douglas W. Baruch (D.C. Bar No. 414354)
                                         Jennifer M. Wollenberg (D.C. Bar No. 494895)
                                         Kayla Stachniak Kaplan (D.C. Bar No. 996635)
                                         Neaha P. Raol (D.C. Bar No. 1005816)
                                         Katherine L. St. Romain (D.C. Bar No. 1035008)
                                         Fried, Frank, Harris, Shriver & Jacobson LLP
                                         801 17th Street, NW
                                         Washington, D.C. 20006
                                         Telephone:  (202) 639-7000
                                         Facsimile:   (202) 639-7003
                                         Email: douglas.baruch@friedfrank.com
                                         Email: jennifer.wollenberg@friedfrank.com

                                         *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUCAS CALIXTO, *et al.*,               ) | |
|               ) | |
|        PLAINTIFFS,      ) | |
|               ) | **Case No. 1:18-cv-01551-ESH** |
| v.               ) | |
|               ) | |
| UNITED STATES DEPARTMENT OF THE  ) | |
| ARMY, *et al.*,           ) | |
|               ) | |
|       DEFENDANTS.    ) | |
|               ) | |

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, by and through their undersigned counsel, respectfully submit this Sur-Reply in opposition to Defendants' Motion to Dismiss (Dkt. 68, "MTD") and Reply (Dkt. 75, "Reply"). This Sur-Reply is necessitated by Defendants' raising new matters for the first time in their Reply, as addressed below.

**I.**      **Jurisdiction Does Not Depend Upon Any Formulaic Pleading of the Words "Policy" and "Practice," and Plaintiffs' Allegations Are Justiciable as Pled**

In their Reply, Defendants argue that the Second Amended Class Action Complaint (Dkt. 61, hereinafter "Complaint" or "SAC") does not challenge a discrete and final agency action simply because it does not – according to Defendants – use the precise words "policy" or "practice" often enough. *See* Reply at 7-8, 15-16. But, no such pleading requirement exists. *See ACE Am. Ins. Co. v. Fed. Crop Ins. Corp.*, 732 F. App'x 5, 8 (D.C. Cir. 2018) (explaining that "we do not require the invocation of 'magic words'" in evaluating whether a claim is absent from a pleading (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006))); *API v. Johnson*, 541 F. Supp. 2d 165, 175 (D.D.C. 2008) ("Rather than reject a substantial part of plaintiffs' claims [that the EPA violated the APA] for hypertechnical reasons, the Court concludes that plaintiffs'

challenges to subsections [of an EPA rule] are not barred merely because plaintiffs' declarants failed to use the magic words [appearing in that rule of] 'impoundment' and 'adjacent wetland.'"). *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1286 (3d ed. 2018) ("A pleading will be judged by the quality of its substance rather than according to its form or label and, if possible, it will be construed to give effect to all its averments.").

The allegation that Defendants had a policy or practice (under whatever nomenclature) of discharging MAVNIs without due process does not appear for the first and only time in the Opposition, as Defendants in their Reply now argue.  Instead, it is the theme of the entire Complaint.  Indeed, the Complaint alleges that *hundreds* of "entry-level" MAVNI soldiers have been the subject of discharge actions by Defendants without being provided the process required by military regulations and the Constitution.  SAC ¶¶ 5-8, 47, 175-79.  If that does not allege a "practice," it is difficult to imagine what would.  As Defendants themselves recognize, "agency action does not have to be in writing to be finally and judicially reviewable."  Reply at 14 (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015); *Bark v. U.S. Forest Serv.,* 37 F. Supp. 3d 41, 50-51 (D.D.C. 2014)).  Moreover, the failure of an agency to follow its own policies or regulations is reviewable agency action under the APA.  *See Am. Fed'n of Gov't Emps. v. Fed. Labor Relations Auth.*, 593 F. Supp. 1203, 1206 (D.D.C. 1984) (finding agency practice of failing to decide stay requests under regulatory factors, thereby allowing temporary stays to remain in effect by default, was a reviewable final agency action and violative of the APA).

Furthermore, while not necessary as a pleading matter, there is a written policy discussed in the Complaint that illustrates Defendants' questioned policy/practice.  The policy outlined in the October 26 Memo – of reinstating soldiers and providing them some process – ***is not being***

*applied to all* "entry-level" MAVNIs who were denied process in relation to their discharge actions. *See* SAC ¶¶ 21, 171.  And, the October 26 Memo policy *is inadequate*. *See* SAC ¶¶ 22-25, 171, 181 (concerning implementation of the policy for the first proposed sub-class)[1]; *see also* Section III.A below (noting that the Army's deliberate omission from the October 26 Memo of the due process rights of AR 380-67 and DoDI 5200.02 is an unlawful challengeable policy/practice articulated by the Complaint).

Moreover, the Complaint *does* use the precise words Defendants now argue are missing to refer to the Army's summary discharge "practices" and "policy."  *See*, *e.g.,* SAC ¶ 158 ("Defendants are directing their summary discharge *practices* at MAVNIs in particular …" (emphasis added)); SAC ¶ 184 (describing necessity of a class action to "address Defendants' *practices*, actions, and inactions" (emphasis added)).  As the Complaint makes clear, and as the Court already has recognized, the crux of the allegations here are about "the Army's *policy* with respect to administrative separation procedures applicable to DEP and DTP members."  SAC ¶ 17 (quoting Dkt. 23 (emphasis added)).  Thus, Defendant's argument boils down to a contention that the Complaint does not use these words frequently enough.  As noted above, there is no "magic word" requirement for pleading.  And there certainly is no minimum frequency requirement.

Nothing more is necessary to confirm this Court's jurisdiction.[2]

---

[1]   The Army's issuance of inadequate notices pursuant to the October 26 Memo illustrates the unlawfulness of that policy. *See, e.g.*, Dkt. 70-1.

[2]   In their Reply, Defendants try to claim that these "magic words" also are necessary for Plaintiffs' Constitutional claims.  But the *Norton* case cited by Defendants, Reply at 19, nowhere addressed Constitutional claims, much less the waiver of sovereign immunity for such claims. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004).  And, as *Trudeau* explains, it is the second sentence of § 702 that provides the waiver of sovereign immunity for Constitutional claims, and this sentence nowhere uses the otherwise defined term "agency action." *Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006) ("While the sentence does refer to a claim against an 'agency' and hence waives immunity only when the defendant falls within that category, it does not use either the term 'final agency action' or the term 'agency action.'  Nor does the legislative history refer to

## II.    The Requested Relief Does Not Render the Claims Non-Justiciable

Under a separate heading in their Reply, Defendants present an entirely new argument that "Plaintiffs' Request for Reinstatement for All Discharged MAVNI Recruits Is Not Justiciable." Reply at 20.  In addition, Defendants now claim that "Plaintiffs further seek to have the Court constrain Defendants from issuing uncharacterized discharges to MAVNI recruits, ... even though every recruit who is discharged while in an entry-level status receives an uncharacterized discharge."  Reply at 10; *see also* Reply at 3-4 ("Plaintiffs also seek to have this Court … chang[e] how the Army characterizes discharges for entry level recruits.").  Beyond being irrelevant to the question of sovereign immunity, which was the only basis for the Motion to Dismiss, both of Defendants' assertions about the relief Plaintiffs seek are wrong.[3]

<u>First</u>, the reinstatement relief sought in the Complaint, SAC ¶¶ 193, 197, is appropriate and does not strip this Court of jurisdiction.  *See* 5 U.S.C. § 706(2) ("The reviewing court shall— hold unlawful and ***set aside*** agency action …" (emphasis added)); *Emory v. Sec'y of the Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987) (per curiam) ("The military has not been exempted from constitutional provisions that protect the rights of individuals[;] [i]t is precisely the role of the courts to determine whether those rights have been violated." (citations omitted)); *McKoy v. Spencer*, 271 F. Supp. 3d 25, 36 (D.D.C. 2017) (holding that the court "has an obligation to, and is capable of, entertaining Plaintiff's First Amendment claim" stemming from her discharge from the Navy in alleged

---

either limitation.  To the contrary, the House and Senate Reports' repeated declarations that Congress intended to waive immunity for 'any' and 'all' actions for equitable relief against an agency make clear that no such limitations were intended." (internal citations omitted)).

[3]    Defendants' statement that "every recruit who is discharged while in an entry-level status receives an uncharacterized discharge" is contrary to language found in the October 26 Memo. *See* Dkt. 50-1 at 2-3 ("[S]ervice will be described as uncharacterized if separation processing is initiated while a Soldier is in an entry level status, ***except in the following circumstances:*** . . .") (emphasis added). It also is contrary to the regulations.

retaliation); *Larsen v. U.S. Navy*, 346 F. Supp. 2d 122, 127-28 (D.D.C. 2004) (construing the plaintiffs' complaint as seeking the opportunity to compete for a commission without being subject to illegal hiring practices and finding that "the court is well within its authority to adjudicate that"). A district court in the Eastern District of Virginia recently explained why and when areas subject to military discretion, such as personnel and service fitness matters, remain justiciable. *Roe v. Shanahan*, No. 1:18-cv-1565 (LMB/IDD), 2019 U.S. Dist. LEXIS 25419, at *35-37 (E.D. Va. Feb. 15, 2019); *see also* Dkt. 77 at 2 (Plaintiffs' notification of supplemental authority).

Military regulations allow for revocation of a discharge under a number of scenarios, including if the soldier did not receive the order, when the order was the result of fraud, mistake of law, or obvious error, or when there is substantial new evidence to consider. *See, e.g.*, AR 135-178 at § 2-13*b*; AR 600-8-105 at § 2-21*e*. Indeed, here, the October 26 Memo admits that it would be appropriate relief to reinstate a soldier when the discharge was without due process. *See* Dkt. 50-1 at 3 ("Former members of the DEP and the DTP … will be offered reinstatement in the DEP/DTP for purposes of receiving the administrative due process described in this memorandum."). Setting aside the unlawful discharge action is an appropriate remedy.

<u>Second</u>, nowhere does the Complaint request that the Court order Defendants to characterize a discharge or to stop issuing "uncharacterized" discharges.[4] Plaintiffs include an "uncharacterized" or "entry level" discharge as part of the proposed class definition, SAC ¶ 170,

---

[4] The law and military regulations dictate that an "uncharacterized" discharge must be treated as an "under honorable conditions" discharge. *See, e.g.,* 10 U.S.C. § 12685 ("A member … is entitled to a discharge under honorable conditions unless … the member is discharged under conditions other than honorable under an approved sentence of a court-martial or under the approved findings of a board of officers convened by an authority designated by the Secretary concerned"); Department of Defense Instruction 1332.14 at Enclosure 3, 3c(1)(c) ("With respect to administrative matters outside this instruction that require a characterization as honorable or general, an entry-level separation will be treated as the required characterization.").

as a way to more specifically define the class because it is assumed that soldiers who receive a characterized discharge, particularly one that is characterized as "other than honorable," will have received the extensive due process required by Army regulations in those circumstances, such as a court martial proceeding or officer board review.  It is the MAVNI soldiers who are subject to receipt of "uncharacterized" discharges (those in "entry-level" who have yet to complete 180 days of active duty service – *i.e.*, DEP and DTP MAVNIs, as well as MAVNIs injured during or otherwise unable to complete BCT and AIT) who have been shown to be the victims of Defendants' summary discharge policy/practice.

## III.    **Defendants Raise Other Irrelevant and/or Incorrect Factual Arguments**

Given that Defendants admit that their challenge to the Complaint is a "facial" one, *see* MTD, Dkt. 68-1 at 10, the Court should ignore the extra-Complaint "facts" asserted by Defendants in their Reply.  Regardless, Plaintiffs are compelled to address the principal factual misstatements made by Defendants.

### A.    **AR 380-67 and DoDI 5200.02 Apply to MAVNIs and Defendants' Assertion Otherwise Is an Admission of an Unlawful Discharge Policy/Practice**

Without support or citation, Defendants advance the new argument that military regulations AR 380-67 and DoDI 5200.02 do not apply to MAVNIs.  *See* Reply at 10-12, 23.  But the Complaint alleges that AR 380-67 and DoDI 5200.02 (and DoD Manual 5200.02, incorporated by reference in DoDI 5200.02) apply, *see* SAC ¶¶ 142-44, 149-56, 191, 196, and this allegation must be taken as true for purposes of the Motion to Dismiss.  Indeed, Defendants, by their Reply assertion that the due process protections of AR 380-67 and DoDI 5200.02 are not being applied to MAVNIs at all and are not a part of the October 26 Memo policy, have admitted key allegations in the Complaint.

In any event, Defendants are wrong to claim that MAVNIs are not subject to those military regulations; both AR 380-67 and DoDI 5200.02 apply to MAVNIs, as shown by the military's own documents and statements.  With respect to AR 380-67, the most recent Government report filed in the related *Nio* class action reveals that the "reference" for discharge code JDK, a discharge code often provided for MSSD discharges, is AR 380-67.  *See Nio* Dkt. 235-1 at 2.  Indeed, JDK was the code included on the discharge order for Plaintiff PFC Calixto.  *See* Dkt. 2-2.

With respect to the DoD instructions and manual labeled 5200.02, the Adverse MSSR Notices that MAVNIs have received pursuant to the October 26 Memo expressly refer to DoD Manual 5200.02 in Reference b.  *See* Dkt. 70-1.  And the September 30, 2016 Memo is just one of many DoD memos concerning MAVNIs that reference DoDI 5200.02.  *See Nio* Dkt. 17-10 at 8 of 10.  In addition, Stephanie Miller, the DoD Director of Accessions Policy with responsibility for establishing policy guidance for the MAVNI program, testified under oath during the trial of a separate case that all MAVNIs hold national security positions, which is the trigger for application of DoDI 5200.02, as alleged in the Complaint at Paragraph 150.  *See* Nov. 28, 2018 Trial Testimony of Stephanie Miller 125:1-15, *Tiwari v. Mattis*, No. C17-00242-TSZ (W.D. Wash.) (Q. You referred to a national security position. What is a national security position?  A. A national security position are all positions within the uniformed military services .… Q. And do individuals who enlist in the military via the MAVNI program hold national security positions?  A. They do.").

**B.**     **The Existence of Currently-Serving MAVNIs Does Not Establish the Lack of a *Summary* Discharge Policy**

In their Reply, Defendants illogically argue that there cannot be a policy to summarily discharge MAVNIs because some MAVNIs are not being subjected to discharge actions.  Reply at 17 (referencing MAVNIs with favorable MSSDs who have been naturalized).  But the Complaint does not allege that the Army has a policy to dismiss all MAVNI soldiers.  Instead, the

Complaint alleges that there is a policy/practice of *summarily* discharging MAVNIs whom the Army decided should be discharged for some reason.  Thus, *this* case concerns soldiers who are subjected to unlawful discharge actions.  The fact that other MAVNIs have not faced any discharge actions is of no moment.  Plaintiffs and putative class members are MAVNIs who the Army has subjected or is subjecting to discharge actions without due process.

Nothing in the *Nio* reporting or otherwise establishes that Plaintiffs or putative class members here received the process they were due with respect to initiated discharge actions.

**C.    This Court Can Review the Summary Discharge Practice/Policy Regardless of Whether USARC Orders Have Been Provided to All Plaintiffs**

Defendants argue in the Reply that many Plaintiffs have not shown that they are fully discharged because they have not received USARC discharge orders (as opposed to USAREC discharge orders).  Reply at 4-5.  This has no relevance to the question of a waiver of sovereign immunity because a "final" USARC discharge order is not necessary for the policy/practice of summary discharges to be questioned and reviewed.  *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 487-88, 493 (1991) (finding court had jurisdiction to hear a class action challenge to unlawful practices and policies in how an INS interview process was conducted, such as the lack of ability to challenge adverse evidence, even though the agency had not issued a final decision); *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 309-11 (D.D.C. 2017) (applying *McNary* to an APA challenge).  *See also* Dkt. 77 at 3-4.

Moreover, the Complaint, which must be accepted on its face, alleges that Defendants have engaged in discharge *activity* without providing the requisite process.  *See, e.g.*, SAC ¶¶ 14, 47. MAVNIs who have not received USARC discharge orders still have been subjected to discharge actions and are effectively discharged because that is how the Army, DFAS, and others are treating them, as illustrated by the circumstances of Plaintiff SPC Izudike.  *See* Opp., Dkt. 74 at 11.

Finally, by focusing solely on identified MSSD discharges in their Reply, Defendants ignore that, as alleged in the Complaint, there are over 450 proposed class members with "final" discharge orders (even under Defendants' limited USARC definition) who will not be offered reinstatement pursuant to the October 26 Memo.  *See* SAC ¶ 176.

> ### D.    <u>Army Boards Cannot Resolve These Issues</u>

In a new line of attack in their Reply, Defendants argue that the "claims may be amenable to individual resolution at the agency level, either at the Administrative Discharge Review Board ('ADRB') and/or the Army Board for the Correction of Military Records ('ABCMR')."  Reply at 22.  But Defendants are wrong on the facts; neither of these boards has the ability to address the issues before this Court.

The ADRB itself publicly stresses that it cannot reverse a discharge and instead can only adjust the characterization of that discharge.  *See* Army Discharge Review Board, Overview, *available at* http://arba.army.pentagon.mil/adrb-overview.html ("The ADRB is not authorized to revoke a discharge, to reinstate a person who was separated from the Army, or to recall a person to active duty.").  Similarly, the ambit of the ABCMR, like its sister board for the Air Force, "is relatively limited … it cannot adjudicate a claim that … policies and regulations <u>themselves</u> are unconstitutional or otherwise unlawful."  *Roe*, 2019 U.S. Dist. LEXIS 25419, at *29 (quoting *Navas v. Gonzalez Vales*, 752 F.2d 765, 769-70 (1st Cir. 1985)) (emphasis in original).

The existence of these boards does not support Defendants' sovereign immunity argument nor does it deprive this Court of jurisdiction to hear the challenge to Defendants' policy/practice of summarily discharging MAVNIs.

***

For all the foregoing reasons and those in their Opposition, Plaintiffs request that Defendants' Motion to Dismiss be denied.

9

Dated: March 1, 2019                    Respectfully submitted,


                                        _____ */s/ Douglas W. Baruch* _____
                                        Douglas W. Baruch (D.C. Bar No. 414354)
                                        Jennifer M. Wollenberg (D.C. Bar No. 494895)
                                        Kayla Stachniak Kaplan (D.C. Bar No. 996635)
                                        Neaha P. Raol (D.C. Bar No. 1005816)
                                        Katherine L. St. Romain (D.C. Bar No. 1035008)
                                        Fried, Frank, Harris, Shriver & Jacobson LLP
                                        801 17th Street, NW
                                        Washington, D.C. 20006
                                        Telephone:  (202) 639-7000
                                        Facsimile:   (202) 639-7003
                                        Email: douglas.baruch@friedfrank.com
                                        Email: jennifer.wollenberg@friedfrank.com

                                        *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LUCAS CALIXTO, *et al.*, | ) ) ) ) | |
| PLAINTIFFS, | ) ) | **Case No. 1:18-cv-01551-ESH** |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF THE ARMY, *et al.*, | ) ) ) | |
| DEFENDANTS. | ) ) ) ) ) | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION**
**FOR LEAVE TO FILE A SUR-REPLY IN FURTHER OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

**THIS MATTER**, having come before the Court on a motion for leave to file a sur-reply

by Plaintiffs; the Court having reviewed the arguments on the motion; and good cause appearing,

it is hereby

**ORDERED** that Plaintiffs' Motion for Leave to File a Sur-Reply, dated March 1, 2019, is

**GRANTED**.

Dated: _____                                     _____
                                                                          U.S.D.J. Ellen Segal Huvelle

1

**NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDER UPON ENTRY**

In accordance with LCvR 7(k), listed below are the names and addresses of the attorneys and parties entitled to be notified of the proposed order's entry:

| | |
|---|---|
| *Counsel for Defendants* | *Counsel for Plaintiffs* |
| Roberto C. Martens, Jr. | Douglas W. Baruch |
| U.S. Attorney's Office, | Jennifer M. Wollenberg |
| Civil Division | Fried, Frank, Harris, Shriver & Jacobson LLP |
| 555 4th Street, NW | 801 17th Street, NW |
| Washington, D.C. 20530 | Washington, D.C. 20006 |
| Telephone:  (202) 252-2574 | Telephone:  (202) 639-7000 |
| Email: roberto.martens@usdoj.gov | Facsimile:  (202) 639-7003 |
| | Email: douglas.baruch@friedfrank.com |
| | Email: jennifer.wollenberg@friedfrank.com |