**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUCAS CALIXTO, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>DEPARTMENT OF THE ARMY, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 18-1551 (ESH) |

<u>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**</u>

**TABLE OF CONTENTS**

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................................................... iv

I. INTRODUCTION ..............................................................................................................1

　　A.  PLAINTIFFS' PROPOSED CLASS AND SUB-CLASSES .........................2

　　B.  THE NAMED PLAINTIFFS.............................................................................3

　　　　1.  Reinstated Recruits..................................................................................3

　　　　2. Recruits Whose Training Reservations Were Cancelled ...........................5

　　　　3. Discharged Recruits..................................................................................6

II. BACKGROUND ...............................................................................................................7

　　A.  DTP Recruits are Assigned to Both USAREC and USARC;
　　　　DEP Recruits are Assigned Only to USAREC...................................................7

　　B.  MSSDs are Processed In Accordance With Army's
　　　　October 26, 2018 Policy .................................................................................8

　　C.  USAREC Discharge Orders Cancel a DTP Recruit's Training Reservations
　　　　and USARC Discharge Orders Remove a DTP Recruit from the Army .....9

**III.  THE CLAIMS OF PLAINTIFFS' PROPOSED "SUB-CLASS 1" ARE NOT RIPE FOR JUDICIAL REVIEW** ...............................................................................10

    **A.  Ripeness Legal Standard** ...............................................................................10

    **B.  The Claims of Plaintiffs' Proposed "Sub-Class 1" are not Fit for Judicial Review** ...........................................................................................11

    **C.  The Plaintiffs' Alleged Challenge to the October 26, 2018 Policy is Not Ripe for Judicial Review** ...................................................................14

    **D.  The Army and the Court Would Benefit from Postponing Judicial Review** .................................................................................................16

    **E.  Plaintiffs Fail to Show Any Hardship That Would Result from Postponing Judicial Review** ...................................................................18

**IV.  PLAINTIFFS' REQUEST FOR CLASS CERTIFICATION SHOULD BE DENIED** ..................................................................................................................19

    **A.  Legal Standard** ............................................................................................19

    **B.  Plaintiffs' Proposed Class Requires the Court to Decide the Case Prior to Litigating the Issues or the Merits** ...............................................22

    **C.  Plaintiffs' Proposed "Sub-Class 1" is Devoid of Class Members and Cannot Be Certified Under Federal Rule of Civil Procedure 23** ..........24

    **D.  Plaintiff's Proposed Class Fails to Meet Rule 23's Requirements** ...............26

        **1.  Plaintiff's Proposed Class, Including Sub-Class 2, Does Not Present Common Questions or Legal Interests Typical of All Proposed Class Members** ...........................................................26

        **2.  The One Named Plaintiff Who is in the DEP is an Inadequate Representative** .......................................................................27

        **3.  Plaintiffs' Proposed Sub-Class 2 Members are Not Entitled to Common Relief** .................................................................................28

        **4.  There Are No Questions of Law of Fact Common to All Class Members** ............................................................................................29

        **5.  The Named Plaintiffs' Claims Are Not Typical of the Members of the Proposed Class** ................................................................29

**6.  The Named Plaintiffs are Inadequate Representatives and Will Not Fairly and Adequately Protect Class Interests** ........................**31**

**E.  The Proposed Class Does Not Satisfy the Requirements of Rule 23(b)(2)** ..**33**

**VI. CONCLUSION** ......................................................................................................................**35**

# TABLE OF AUTHORITIES

**CASES**                                                                       **Page**

[*]*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ................................................................10, 11, 18

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................................31

*Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281 (D.C. Cir. 2003) ........................................11

*AT&T Corp. v FCC*, 349 F.3d 692 (D.C. Cir. 2003) ...................................................................11

*Berge v. U.S.*, 949 F.Supp. 2d 36 (D.D.C. 2013) .......................................................................14

*Califano v. Sanders*, 430 U.S. 99 (1977) ....................................................................................10

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...............................................................................19

*Clean Air Implementation Project v. EPA*, 150 F.3d 1200 (D.C. Cir. 1998) ..............................11

*Cobell v. Norton*, 240 F. 3d 1081 (D.C. Cir. 2001) ...................................................................15

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ..........................................................................19

*DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) ........................................................23

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978) .................12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................................22

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .................................................31

*Franklin v. Barry*, 909 F. Supp. 21 (D.D.C. 1995) .....................................................................19

[*]* *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ....................................................................20, 21

*Hanlon v. Chrysler Corp.* 150 F.3d 1011 (9th Cir. 1998) ...........................................................31

*Hartman v. Duffey*, 19 F.3d 1459 (D.C. Cir. 1994) .....................................................................19

*In re Google AdWords Litig.*, 2010 U.S. Dist. LEXIS 146392 (N.D. Cal. Nov. 12, 2010) ..........21

*In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12 (D.D.C. 2001) .........................21

---

[*] Authority principally relied upon.

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013) ....................23

*Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453 (D.D.C. 1984) ..............................21

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ....................................................15

*McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428 (D.D.C. 2002) .......................31

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803 (2003) ................................11

*Powell v. McCormack*, 395 U.S. 486, 489 (1969) .......................................................20

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) .................................23

*R.I.L. – R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...........................................20

*Shays v. FEC*, 337 F. Supp. 2d 28 (D.D.C. 2004) ......................................................11

*Steele v. United States*, 159 F. Supp. 3d 73 (D.D.C. 2016) .........................................23

*Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33 (D.D.C. 2007) ...........................................31

[*] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............................................19, 20, 21, 30

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ...................................19, 20

**STATUTES**

5 U.S.C. § 706(2)(A) (Administrative Procedure Act) .................................................29

10 U.S.C. § 513.................................................................................................7

10 U.S.C. § 12103 ..........................................................................................4, 27

**RULES**

Federal Rule of Civil Procedure 23 ....................................................... *passim*

**DEPARTMENT OF DEFENSE INSTRUCTION & ARMY REGULATIONS**

Department of Defense Instruction 5200.02 ...........................................................8, 9

Army Regulation 135-178 ...............................................................................7, 27

Army Regulation 380-67 ...................................................................................8, 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

LUCAS CALIXTO, *et al.*,

               Plaintiffs,

    vs.

DEPARTMENT OF THE ARMY, *et al.*,

               Defendants.

Civil Action No. 18-1551 (ESH)

---

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendants the Department of the Army ("Army") and the Secretary of the Army Dr. Mark T. Esper (collectively, "Defendants"), by and through counsel, respectfully submit this memorandum in opposition to Plaintiffs' renewed motion for class certification and appointment of class counsel (hereinafter, "Motion for Class Certification") (ECF No. 62).

## I.   INTRODUCTION

The Court should deny Plaintiffs' Motion for Class Certification because Plaintiffs' proposed class encompasses a broad range of dissimilarly situated individuals whose claims are not common, whose injuries are not typical, and who have different factual bases for their claims. As a result, even if Plaintiffs were to prevail in this action, it would be unclear as to which proposed class members would be entitled to relief, if any. Furthermore, the named Plaintiffs are inadequate representatives of the class proposed in the motion.

Moreover, Plaintiffs' proposed class definition is flawed because it improperly requires the Court to decide the merits of the case in order to certify the class. In addition, Plaintiffs' proposed "sub-class 1" is devoid of members and cannot be certified because it does not meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). And, the Court lacks subject

matter jurisdiction over the claims of proposed "sub-class 1" because their alleged claims are not ripe for adjudication.  Plaintiffs' proposed "sub-class 2" also fails to meet the requirements of Rule 23 and cannot be certified.

### A.  PLAINTIFFS' PROPOSED CLASS AND SUB-CLASSES

Plaintiffs' proposed class, with sub-classes, is as follows:

1.  All soldiers who enlisted in the U.S. Army (including Selected Reserve of the Ready Reserve/DTP [Delayed Training Program] and Regular Army/DEP [Delayed Entry Program] soldiers) through the MAVNI [Military Accessions Vital to National Interest] program, and

2.  were the subject of an involuntary administrative discharge action by the Army (including the Army Recruiting Command and/or the Army Reserve Command) after September 30, 2016, where such discharge or separation was not or will not be characterized by the Army (including "uncharacterized" and "entry level" discharges or separations), and

3.  where such action was taken without the soldier first being afforded the process due under applicable Army and DoD regulations and the law (including adequate notice of the discharge grounds, an opportunity to respond, due consideration of the soldier's response by the Army, or other requirements of law), and

4. where the soldier wants to be reinstated in or remain in the Army, and

5. where the Army has determined that the soldier:

a. [Subclass 1] has an unfavorable MSSD [Military Service Suitability Determination] and will be subject to the procedures outlined in the October 26 Memo, or

b. [Subclass 2] does not have an unfavorable MSSD and will not be subject to the procedures outlined in the October 26 Memo.

Pls.'s Mem. Class Cert. (ECF No. 62) at 3-4.

### B.      THE NAMED PLAINTIFFS

The named Plaintiffs are eleven recruits who accessed into the Army through the Military

Accessions Vital to National Interest ("MAVNI") program, through either the Delayed Training

Program ("DTP") or Delayed Entry Program ("DEP").

### 1.   Reinstated Recruits

Plaintiffs Lucas Calixto and Tounde Djohi are DTP recruits who were discharged from

the United States Army Reserve ("USAR") and whose training reservations were cancelled by

the United States Army Recruiting Command ("USAREC").  Their USAR discharges have been

revoked and they have been reinstated in the USAR.  St. Clair Dec. (Aug. 13, 2018) (ECF No.

22-1) ¶¶ 5-6.

Plaintiff Calixto was discharged from the USAR effective July 1, 2018 with an

"uncharacterized" discharge.  2d Am. Compl. (ECF No. 61) ¶ 51.  The Army revoked Plaintiff

Calixto's discharge order on July 17, 2018 and reinstated him in the USAR.  *Id*. ¶ 55.  Plaintiff

Calixto is subject to the procedures in the October 26, 2018 memorandum.  *See* Army Mem. Oct.

26, 2018 (ECF No. 50-1).

Plaintiff Djohi was discharged from the USAR effective July 1, 2018 with an "entry level

separation" discharge.  St. Clair Dec. (ECF No. 22-1) ¶ 6; 2d Am. Compl. (ECF No. 61) ¶ 59.

The Army revoked Plaintiff Djohi's discharge and he has been reinstated in the DTP.  Exhibit 1

(Declaration of Lin St. Clair ("St. Clair Dec.") Apr. 22, 2019) ¶ 9.  He is subject to the

procedures set forth in the October 26, 2018 memorandum.  *Id*.

Plainitff Xing Lu is a DEP recruit and the only named plaintiff in the DEP.  *Id*. ¶¶ 110-

14.  Plaintiff Lu enlisted as a recruit in the DEP on January 19, 2016.  *Id*. ¶ 110.  She was in the

DEP awaiting initial entry training for a period of over two years [1] and, because of a statutory

requirement, had to be separated from the DEP.[2]  Ex. 1 (St. Clair Dec.) ¶ 16.  Nonetheless,

Plaintiff Lu indicated her desire to remain in the DEP beyond the two-year mark following her

enlistment and should have been included in a group petition to the Army Board for the

Correction of Military Records ("ABCMR") seeking correction of individual military records to

allow DEP recruits who had already been in the Army beyond the two-year mark to continue in

the DEP beyond that time.

The ABCMR granted relief to the group by correcting their military records to move the

enlistment date a year forward, allowing them to serve beyond the two-year mark.  Due to an

error, Plaintiff Lu was not included in the group.  Plaintiff Lu sought reinstatement through the

Army and the Army informed her that she would need to seek relief through the ABCMR.

Plaintiff Lu filed a petition with the ABCMR seeking reinstatement and approval for continued

service in the DEP.  Ex. 1 (St. Clair Dec.) ¶ 16.  Her petition was granted on January 15, 2019,

thereby correcting her enlistment date from January 19, 2016 to January 19, 2017.  *Id.* ¶ 16 &

Ex. A to St. Clair Dec. (ABCMR Decision Jan. 15, 2019).  As a result, Plaintiff Lu was found

eligible to continue to serve in the DEP and she has been reinstated in the DEP.  *Id.*  On January

22, 2019, the Army issued a favorable Military Service Suitability Determination ("MSSD") to

Plaintiff Xing Lu and she is scheduled to ship to basic training on May 21, 2019.  *Id.* ¶ 16.

---

[1] In accordance with 10 U.S.C. § 12103, members of the DEP are required to attend Initial Entry Training ("IET") and enter the active duty Army within 2 years from the time they contract into the DEP.

[2] The Army has assured the Court that it does not intend to separate individuals who have reached the two-year mark and it does not intend to separate Plaintiff Lu for that reason.  Tr. Mot. Hearing on Oct. 17, 2018 (ECF No. 49) at 85.

### 2.   Recruits Whose Training Reservations Were Cancelled

Five other named plaintiffs (Wanjing Li, Fang Lu, Hembashima Sambe, Jingquan Qu, and Emeka Udeigwe) are DTP recruits who have not been and were never discharged from the Army.  They received "discharge orders" from USAREC, which cancelled their reservations for initial entry training, but none of them were discharged from the USAR.  St. Clair Dec. (ECF No. 22-1) ¶¶ 4, 7, 9-12.  The Army revoked their USAREC "discharge orders" (*i.e.*, cancellation of training reservations) and they continued to be assigned to their USAR units.  *Id*.

Plaintiff Wanjing Li received a USAREC discharge order on July 6, 2018 with a discharge type as "uncharacterized."  2d Am. Compl. (ECF No. 61) ¶ 69.  The USAREC discharge order cancelled Plaintiff W. Li's reservation for initial entry training.  St. Clair Dec. (ECF No. 22-1) ¶¶ 4, 7.  Plaintiff W. Li was not separated from the USAR and is subject to the procedures in the October 26, 2018 memorandum.  2d Am. Compl. (ECF No. 61) ¶¶ 71-72.

Plaintiff Fang Lu received a USAREC discharge order with an effective date of August 1, 2018 with a discharge type of "entry level separation."  *Id*. ¶ 85.  The USAREC order cancelled Plaintiff Lu's reservation for initial entry training.  St. Clair Dec. (ECF No. 22-1) ¶¶ 4, 9.  Plaintiff Lu was not separated from the USAR and is subject to the provisions of the October 26, 2018 memorandum.  2d Am. Coml. (ECF No. 61) ¶ 88.

Plaintiff Hembashima Sambe received a USAREC discharge order, effective October 1, 2017, with an "uncharacterized" discharge.  *Id*. ¶ 98.  The USAREC order cancelled Plaintiff Sambe's reservation for initial entry training.  St. Clair Dec. (ECF No. 22-1) ¶¶ 4, 10.  Plaintiff Sambe's discharge order was revoked on August 8, 2018.  2d Am. Compl. (ECF No. 61) ¶ 103. The Army issued Plaintiff Sambe a favorable MSSD on April 12, 2019.  Ex. 1 (St. Clair Dec.).

Plaintiff Jingquan Qu received a USAREC discharge order effective December 1, 2016 with a discharge type of "uncharacterized."  2d Am. Compl. (ECF No. 61) ¶ 91.  The USAREC order cancelled Plaintiff Qu's reservation for initial entry training.  St. Clair Dec. (ECF No. 22-1) ¶¶ 4, 11.  Plaintiff Qu was not separated from the military, and is subject to the provisions of the October 26, 2018 memorandum.  2d Am. Compl. (ECF No. 61) ¶ 94.

Plaintiff Emeka Udeigwe received a USAREC discharge order with an effective date of August 1, 2018 with a discharge type of "uncharacterized."  *Id.* ¶ 105.  The USAREC order cancelled Plaintiff Udeigwe's reservation for initial entry training.  St. Clair Dec. (ECF No. 22-1) ¶¶ 4, 12.  Plaintiff Udeigwe was not separated from the USAR and received orders to report to basic training in July 2019 and Advanced Individual Training ("AIT") in September 2019.  Ex. 1 (St. Clair Dec.).

Plaintiff Bright Izudike is a DTP recruit who received a USAREC discharge order dated September 15, 2017 which cancelled his reservation for initial entry training.  2d Am. Compl. (ECF No. 61) ¶ 126; St. Clair Dec. (ECF No. 22-1) ¶ 4.  Plaintiff Izudike remains in the USAR, has recently been issued a favorable MSSD, and will be ordered to ship to basic training.  Ex. 1 (St. Clair Dec.).

### 3.  Discharged Recruits

Only two recruits—Plaintiffs Zeyuan Li and Yisheng Dai—remain discharged from the USAR and are not subject to the procedures of the October 26, 2018 policy.

Plaintiff Zeyuan Li is a DTP recruit who remains discharged from the USAR.  2d Am. Compl. (ECF No. 61) ¶ 78.  The Army initiated Plaintiff Z. Li's separation because he refused to cooperate during the required Counterintelligence ("CI") security interview.  St. Clair Dec. (ECF No. 22-1) ¶ 8.  He did not receive a MSSD.  2d Am. Compl. (ECF No. 61) ¶ 77.  Plaintiff Z. Li is

not subject to the procedures in the October 26, 2018 memorandum.  *Id*. ¶ 80; St. Clair Dec. (ECF No. 22-1) ¶ 8; Ex. 1 (St. Clair Dec.) ¶ 11.

Plaintiff Yisheng Dai was a DTP recruit who remains discharged from the USAR due to failure to schedule his CI security interview.  2d Am. Compl. (ECF No. 61) ¶ 119; Ex. 1 (St. Clair Dec.) ¶ 17.  Plaintiff Dai did not receive a MSSD and is not subject to the procedures of the October 26, 2018 memorandum.  Ex. 1 (St. Clair Dec.) ¶ 17.

## II. BACKGROUND

### A. DTP Recruits Are Assigned to Both USAREC and USARC; DEP Recruits are Assigned to USAREC Only

The DEP and DTP are different programs and the recruits in the programs are in different statuses and are subject to different provisions relative to separation.  *See* Army Mem. (ECF 50-1) (Army Oct. 26, 2018 policy memorandum setting out relevant provisions for separation of DEP members (¶ 4a(1)) and DTP members (¶ 4a(2)).  DEP recruits are contracted to serve on active duty in the Army at some point in the future.  But, they have not yet taken the oath of enlistment to join the Army, they do not attend training, they are not paid and, for all intents and purposes, they are not serving in the Army until they enlist on active duty.  10 U.S.C. § 513. Once DEP recruits enter the active Army, they are no longer in the DEP.  Tr. Mot. Hearing (ECF No. 49) at 10.  If the Army initiates separation for a recruit in the DEP, the process is initiated under Army Regulation ("AR") 135-178, *Army National Guard and Reserve Enlisted Administrative Separations* (Nov. 7, 2017), ¶ 14-5(c).  *See* Reference 1 (excerpt of AR 135-178 ¶ 14-5(c)); Army Mem. (ECF No. 50-1) ¶ 4a(1).

On the other hand, DTP recruits have taken the oath of enlistment and attend Army Reserve unit assemblies (*i.e.*, "drills"), are paid when they attend unit assemblies, and are recipients of other benefits the Army offers including insurance, medical, and dental benefits (as

applicable).  DTP recruits are assigned to both the USARC and USAREC.  St. Clair Dec. (ECF No. 22-1) ¶ 4.  Each command must issue discharge orders to effect removal from their respective personnel rolls.  *Id*.  USAREC issues discharge orders to remove recruits from the Future Soldier Training Program and cancel the recruit's reservation for initial entry training.  *Id*.  Once the United States Army Reserve Command ("USARC") issues discharge orders, the recruit is removed from the USAR's rolls and is discharged from the Army.  *Id*.  If the Army initiates separation for DTP recruits, the DTP recruit will first have her training reservations cancelled through a USAREC "discharge" order.  If the Army chooses to discharge the DTP recruit from the service, the recruit is then discharged from the USARC by actual discharge orders.  *Id*.

## B.  MSSDs are Processed In Accordance With Army's October 26, 2018 Policy

A Military Service Suitability Determination ("MSSD"), as the name implies, is a determination of a recruit's suitability to serve in the Army and is based on a review of a number of factors, including security issues.  The National Security Determination ("NSD") determines the soldier's eligibility to access classified information and eligibility to hold a National Security Position.[3]  The MSSD process is separate and distinct from the NSD process and occurs prior to initiation of the NSD process.  *See Nio v. Dep't of Homeland Sec*., Civ. A. No. 17-0998 (ECF No. 128-2) ¶ 2.[4]

---

[3] Every soldier is considered to be in a "National Security Position," but until a NSD is completed, the soldier has not been certified as eligible to hold a National Security Position. DTP and DEP members are recruits and are not considered to be in a "National Security Position."  As a result, MAVNI DTP and DEP recruits are not subject to the NSD process as outlined in Department of Defense Instruction ("DoDI") 5200.02 and AR 380-67 until they have received a favorable MSSD and complete initial entry training.

[4] Plaintiffs' counsel in this case are class counsel for plaintiffs in *Nio v. Dep't of Homeland Sec*.

Procedures for separating MAVNIs who received unfavorable MSSDs are established in the Army's October 26, 2018 policy memorandum (ECF No. 50-1).[5]  In cases where the Department of Defense Central Adjudications Facility ("DoDCAF") has made an adverse Military Service Suitability Recommendation ("MSSR"), the MAVNI recruit is to be notified "in writing, that the DoDCAF made an adverse MSSR."  Army Mem. (ECF No. 501-1) ¶ 3.a.  The notice is to include the specific adjudicative guidelines, and information (as applicable) that formed the basis of the adverse MSSR.  *Id.*  The MAVNI recruit is given 30 days from receipt of the notice to submit matters that may refute, correct, explain, extenuate, mitigate, or update the unfavorable information.  *Id.*  The military service then reviews the underlying information and the recruit's submissions to make a MSSD.  *Id.* ¶ 3.b.

## C. **USAREC Discharge Orders Cancel a DTP Recruit's Training Reservations and USARC Discharge Orders Remove a DTP Recruit from the Army**

On August 13, 2018, Defendants filed a status report and declaration clearly explaining the difference between USAREC "discharge" orders (*i.e.*, orders that cancel training reservations) and USARC discharge orders (*i.e.*, orders that actually discharge an individual from the Army).  St. Clair Dec. (ECF No. 22-1).  Defendants again offered this explanation in their Response to Plaintiffs' Motion to Lift Stay and For Briefing Schedule (ECF No. 41 at ¶¶ 4-6 (citing ECF No. 22-1)).  Numerous other times in hearings and discussions with Plaintiffs'

---

[5] Plaintiffs erroneously claim in the Second Amended Complaint and Opposition to Defendants' Motion to Dismiss that individuals who receive unfavorable MSSDs are to be processed in accordance with the NSD procedures found in DoDI 5200.02 and AR 380-67.  *See* ECF No. 61 ¶¶ 142-44 and ECF No. 74 at 5.  This is incorrect and the Army has clarified this matter.  In the Army's October 26, 2018 policy memorandum, the Army issued guidance for "making Military Service Suitability Determinations (MSSD) and initiating involuntary administrative separation as appropriate."  *See* ECF No. 50-1 at 1.  This memorandum correctly does not include reference to, or use of, DoDI 5200.02 or AR 380-67.  *Id.*  The October 26, 2018 memorandum also describes the procedure for initiating and processing involuntary administrative separations based on unfavorable MSSDs.

counsel, Defendants have articulated the difference.  Nonetheless, Plaintiffs continue to cite USAREC "discharge" orders as if they actually separate an individual from the Army.  *See* 2d Am. Compl. (ECF No. 61) at ¶ 17-31 (allegations regarding named Plaintiffs Wanjing Li, Fang Lu, Jingquan Qu, Hembashima Sambe, Emeka Udeigwe, and Bright Izudike).

USAREC orders *do not* separate an individual from the Army.  Instead, USAREC "discharge" orders simply cancel a recruit's reservation for initial entry training (also referred to as "basic training").  St. Clair Dec. (ECF No. 22-1) ¶ 4 and Def.'s Resp. Mem. (ECF No. 41) ¶ 6. Even after a recruit's training reservations have been cancelled, the recruit remains in the USAR until he or she is issued an actual discharge order from the United States Army Reserve Command ("USARC").  *Id*.

## III.  THE CLAIMS OF PLAINTIFFS' PROPOSED "SUB-CLASS 1" ARE NOT RIPE FOR JUDICIAL REVIEW[6]

### A.  Ripeness Legal Standard

The rationale behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *superseded by statute on other grounds as explained in Califano v. Sanders*, 430 U.S. 99, 105 (1977).

The Court may find challenges ripe for review after evaluating "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court

---

[6] In the Court's minute order entered on March 27, 2019, the Court ordered that Defendants' opposition to Plaintiffs' renewed motion for class certification "shall address, inter alia, whether the claims of Plaintiffs' proposed Subclass 1…are ripe for judicial review."  Order (Mar. 27, 2019.)

consideration." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (hereinafter, "*NPHA*") (citing *Abbott Labs*., 387 U.S. at 149).  The D.C. Circuit "has characterized the ripeness inquiry as a balancing  test, where the court 'balances the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subject to review and the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting."  *Shays v. FEC*, 337 F. Supp. 2d 28, 37 (D.D.C. 2004) (citing *AT&T Corp. v FCC*, 349 F.3d 692, 699 (D.C. Cir. 2003)).  Under *AT&T Corp.*, the fitness for review prong consists of two considerations:  (1) "whether the disputed claims [are] presumptively suitable for judicial review;" and (2) "whether the court or the agency would benefit from postponing review until the policy in question has sufficiently crystallized by taking a more definite form."  *AT&T Corp.*, 349 F.3d at 699-700.

**B.  The Claims of Plaintiffs' Proposed "Sub-Class 1" are Not Fit for Judicial Review**

"Among other things, the fitness of an issue for judicial decision depends on whether it is purely legal, whether the consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final."  *Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (quoting *Clean Air Implementation Project v. EPA*,  150 F.3d 1200, 1204 (D.C. Cir. 1998).

The first question is whether the issues relative to Plaintiffs' claims in this case are 'purely legal.'  "Claims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues.  But even purely legal issues may be unfit for review because further factual development would "significantly advance [the Court's] ability to deal with  the legal issues presented."  *See NPHA*, 538 U.S. at 812 (finding issue unfit for review, even though the issue was "a purely legal one" and "constituted 'final agency action' within the meaning of §10

11

of the APA.") (citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 82 (1978)).

Even if Plaintiffs do present a purely legal question with regard to proposed sub-class 1 and they actually challenge a final agency action, the issues here are unfit for review because Plaintiffs' proposed sub-class 1 is devoid of members, their claims are not ripe for review, and further factual development relative to the October 26, 2018 policy would significantly advance the Court's ability to deal with the legal issues presented. *See id.*

Plaintiffs proposed sub-class 1 includes MAVNI recruits with an unfavorable MSSD and who are subject to the procedures of the October 26, 2018 policy. These MAVNI recruits fall into one of three categories: (1) recruits who are still in the Army because they were never discharged; (2) recruits who were discharged, but had the discharge revoked;[7] or (3) recruits who have been discharged and have been (or are currently being) offered and have accepted reinstatement in the Army. *See* Section IB *supra*; *see also* ECF No. 50-1, ¶¶ 3 and 5 (describing the MAVNI recruits subject to the policy). Recruits in category 1 have not been discharged from the Army and are therefore currently in the Army. Likewise, Plaintiffs Calixto and Djohi, who are the only individuals in category 2, have had their discharges revoked and are currently recruits in the Army. Recruits in category 3 have been offered reinstatement in the Army. If a former recruit choses to be reinstated, her discharge has been revoked and she has been reinstated in the Army. If a former recruit chooses not to be reinstated (or failed to respond to the reinstatement offer), she has chosen to waive the due process offered under the October 26, 2018 policy and has indicated she does not wish to be reinstated as a recruit in the Army and

---

[7] Only two people fall into this category: Plaintiffs Calixto and Djohi.

therefore would not meet the fourth prong of Plaintiffs' proposed class definition – "where the soldier wants to be reinstated in or remain in the Army."  2d Am. Compl. (ECF No. 61) ¶ 170.

In short, MAVNI recruits in Plaintiffs' proposed sub-class 1 are currently serving in the Army.  As a result, these recruits have not suffered an injury-in-fact and any claim of injury Plaintiffs assert is merely conjectural.  Plaintiffs admit in their complaint that any injury to MAVNI recruits subject to the October 26 policy is merely speculative: "it *remains to be seen* whether these procedures [in the October 26, 2018 memorandum] comport with the military regulations on which they are purportedly based" and "*it is not yet clear* whether soldiers will be adequately informed of the so-called derogatory information such that they will have a meaningful opportunity to respond."  2d Am. Compl. (ECF No. 61) at ¶ 25 (emphasis added).

For these reasons, members of Plaintiffs' proposed "Sub-class 1" fail to establish that their claims are ripe for judicial review, because they have not suffered an injury-in fact, *i.e.*, they have not been discharged, or their discharges have been revoked, or they have been offered reinstatement.  Plaintiffs' claims of injury in this regard are conjectural and hypothetical.  Any claimed injury cannot be "redressed by a favorable decision" because the favorable decision Plaintiffs seek is declaring discharges unlawful and reinstating Plaintiffs in the Army.  *See, e.g., id*. ¶ 197.  In sum, the claims of the named plaintiffs subject the October 26, 2018 policy and the proposed class members who may be subject to the policy are not ripe for judicial review and further factual development would greatly assist the Court in deciding the issues in this case.  *See NPHA*, 538 U.S. at 812.

The second and third considerations under the *AT&T Corp.* fitness for review analysis ("whether the court or the agency would benefit from postponing review until the policy in question has sufficiently crystallized by taking a more definite form") intertwine in this case.

Plaintiffs claim they are challenging a discrete, final agency action. *See* Pls.'s Opp. to Mot. Dismiss (ECF No. 74) at 17 ("Plaintiffs are challenging the Army's policy and related practice of not providing MAVNI soldiers with mandatory process in connection with adverse national security eligibility decisions and "uncharacterized" discharge actions."). But, as noted in Defendants' Reply in Further Support of its Motion to Dismiss, Plaintiffs' claims are a moving target and it is unclear if Plaintiffs themselves know what they are challenging in the Second Amended Complaint. Defs.'s Reply Mot. Dismiss (ECF No. 75) at 7. For the reasons set forth there, it would be appropriate for the Court to allow the Plaintiffs more time to sufficiently crystallize what they are challenging and present their challenge in a more definite form.

### C. The Plaintiffs' Alleged Challenge to the October 26, 2018 Policy is Not Ripe for Judicial Review

The Court cannot make a proper determination on class certification with regard to proposed sub-class 1, even provisional class certification, until the Army has actually implemented the October 26, 2018 policy. Because Plaintiffs seek to challenge discharge actions (*see* 2d Am. Compl. (ECF No. 61) ¶1), the Court cannot certify a class until the Army has implemented its policy and soldiers have actually been discharged. *See Berge v. U.S.*, 949 F.Supp. 2d 36, 49 (D.D.C. 2013) (in order to certify even a provisional class, the Court must be satisfied that the requirements of Rule 23 have been met). For these reasons, the Army's on-going implementation of its October 26, 2018 policy means that Plaintiffs' sub-class 1 claims are not ripe for judicial review and makes it impossible to certify sub-class 1 of Plaintiffs' request for provisional class certification.

Further, Plaintiffs bring no claim in the Second Amended Complaint to challenge the October 26, 2018 policy. *See* 2d Am. Compl. (ECF No. 61) ¶¶ 187-213. Plaintiffs discuss the October 26, 2018 policy in the Second Amended Complaint (*see id.* ¶¶ 18-25), but they admit

"because the procedures described in the October 26 Memo have not yet been fully developed or implemented, it remains to be seen whether these procedures fully comport with the military regulations on which they are purportedly based." *Id.* ¶ 25.

Even if Plaintiffs had properly challenged the October 26, 2018 policy, it is not reviewable. As the Supreme Court explained in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), an agency action is reviewable "to the extent that specific 'final agency action' has an actual or immediately threatened effect." *Id.* at 894; *cf. Cobell v. Norton*, 240 F. 3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or measure is reviewable, an on-going program or policy is not, in itself a 'final agency action' under the APA.").

The October 26, 2018 policy is now being implemented, and to date no MAVNI has been discharged, nor has any MAVNI had their discharge initiated under the policy. Defs.'s Status Rpt. (Apr. 15, 2019) (ECF No. 85). Further, Plaintiffs have not properly challenged the October 26, 2018 policy in the Second Amended Complaint. Even if Plaintiffs had properly challenged the policy, it is not reviewable because Plaintiffs offer no facts in the Second Amended Complaint that show or would tend to show that anyone has suffered a legal wrong or has been adversely affected or aggrieved by the policy.

To the extent that the Court finds Plaintiffs are challenging the October 26, 2018 policy, Plaintiffs' claims rely on speculation as to how the policy may apply or may be applied and are therefore not ripe for judicial review. *See* 2d Am. Compl. (ECF No. 61) ¶ 25.

For these reasons, it would be premature for the Court to consider Plaintiffs' (alleged) challenge to the October 26, 2018 policy, and the Court would benefit from postponing review until the policy has sufficiently crystallized by taking a more definite form.

### D.  The Army and the Court Would Benefit from Postponing Judicial Review

"[T]he focus of the second prong of the ripeness inquiry – "hardship" to the parties from withholding review – is not whether they have suffered any 'direct hardship,' but rather whether *postponing* judicial review would impose an undue burden on them or would benefit the court. *AT&T Corp.*, 349 F.3d at 700 (explaining that the "hardship prong" considers "potential hardship of delay on the [Plaintiffs]" only if the court finds important agency interests and rejecting [Plaintiffs] challenge as unripe because "both the agency and the court would benefit from postponing review" and petitioner failed to show that postponing review would cause it hardship).

First, the Army has important interests in postponing judicial review of the October 26, 2018 policy.  Should the Court postpone review of the policy, it would allow the Army to reconsider MAVNI recruits previously considered ineligible to serve due to an adverse security recommendation.  The Department of Defense established the MAVNI program as an exception to the rule that only United States citizens and legal permanent residents may enlist in the military.  The exception allowed certain non-U.S. citizens to enlist in the military because they possess skills "vital to the national interest" such as critical language skills or health care skills relevant to medical specialties where the Army had a critical shortfall.  The Army obviously has an interest is accessing these MAVNI recruits.  The October 26, 2018 policy affords the MAVNI recruit the opportunity to mitigate unfavorable information found by the DoDCAF and provides the Army the opportunity to reconsider and access the MAVNI recruit with vital skills needed by the Army.  Specifically, under the October 26 policy, should a recruit receive an unfavorable MSSR, the recruit has the opportunity to refute, correct, explain, extenuate, mitigate, or update unfavorable information that is the basis of an unfavorable MSSR.  Army Mem. (ECF No. 50-1)

16

¶ 3.a.  In accordance with the policy, the Army reviews the recruit's submissions and may issue a favorable MSSD, thereby possibly allowing the Army to access a recruit who possesses skills "vital to the national interest," while at the same time allowing the MAVNI recruit to continue serving.  The Army's interest in accessing MAVNI recruits is not merely hypothetical – the Army has taken steps since the beginning of this litigation to access three named plaintiffs.[8]

The evidence in this case further demonstrates the Army's interest in ensuring the October 26 policy provides the process due MAVNI recruits.  After initial notifications were sent on January 3, 2019 to MAVNI recruits who received unfavorable MSSRs, the Army placed a pause on further notifications to assess whether the information provided was sufficient for the MAVNI recruit to provide a meaningful response.  On March 28, 2019, the Army began the process of re-notifying and notifying MAVNI recruits with unfavorable MSSRs to provide them with the specific adjudicative guideline and information (as applicable) that formed the basis of the unfavorable MSSR.  Defs.'s Status Rpt. (Apr. 1, 2019) (ECF No. 84) ¶ 2; *see also* Army Mem. (ECF No. 50-1).[9]  For these reasons, the Army has important interests in postponing judicial review of the October 26, 2018 policy, allowing the policy to be fully implemented and possibly allowing MAVNIs to continue serving.

Second, the Court would likewise benefit from postponing review of the October 26, 2018 policy.  The administrative record relative to the policy is incomplete because the Army has just recently re-notified 30 MAVNI recruits with further information relative to unfavorable

---

[8] Plaintiffs Emeka Udeigwe, Bright Izudike, and Xing Lu.  *See supra*, section IB.

[9] The notification process under October 26, 2018 has taken longer than originally expected.  In August 2018, Defendants submitted a declaration indicating that full development and implementation of the policy could take up to 180 days.  The Army's reassessment of the original notifications sent on January 3, 2019 has added additional time to the timetable for full policy implementation.  *See* St. Clair Dec. (Aug. 20, 2018) (ECF No. 24-1) ¶ 5.

MSSRs.  *Id.*  In accordance with the October 26, 2018 policy, the MAVNI recruits notified on

March 28, 2019 have 30 days to submit matters to refute, correct, explain, extenuate, mitigate, or

update unfavorable information that is the basis of an unfavorable MSSR.  Army Mem. (ECF

No. 50-1) ¶ 3.a.  The Army will then consider the matters the MAVNI recruit submits and either

issue a favorable MSSD or initiate separation proceedings.  *Id.* ¶ 3.b-c.  These steps have yet to

take place relative to any MAVNI recruit.  Full implementation of the policy for at least each of

the named plaintiff—from notification to a favorable MSSD or a discharge action—would fully

establish an administrative record.  The Court would benefit from having a fully implemented

policy and complete administrative record for judicial review.

### E.  Plaintiffs Fail to Show Any Hardship That Would Result from Postponing Judicial Review

Plaintiffs have not alleged sufficient harm to meet the hardship prong of the *Abbott*

*Laboratories* test.  To the contrary, should the Court withhold consideration, the named plaintiffs

who are subject to the policy would actually benefit by receiving the due process under the

October 26, 2018 policy and could receive a favorable MSSD and continue to serve, which is the

very relief Plaintiffs request.  2d Am. Compl. (ECF No. 61) ¶ 197.  Plaintiffs have articulated no

hardship that would befall Plaintiffs should the Court withhold consideration.

In sum, due process as established in the October 26, 2018 policy, without the

appropriate time to implement it, is no due process at all.  In other words, no party benefits from

denying the time necessary to implement due process in the October 26, 2018 policy:  the Army

would not be able to access otherwise qualified MAVNI recruits, the Court would not have a

fully-developed administrative record or a fully-implemented policy for judicial review, and

Plaintiffs would not benefit from the due process (and the opportunity to continue their service)

that they have sought through this litigation.

For these reasons, Plaintiffs' sub-class 1 claims are not ripe for review and the Court should withhold considerations of Plaintiffs' claims at this time.

## IV.   PLAINTIFFS' REQUEST FOR CLASS CERTIFICATION SHOULD BE DENIED

### A.  Legal Standard

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23 of the Federal Rules of Civil Procedure.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A party seeking certification of a proposed class bears the burden to demonstrate that the required elements set forth in Rule 23(a) exist, *i.e.*, (1) the proposed class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named plaintiffs are typical of the claims or defenses of the class ("typicality"); and (4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation").  *See* Fed. R. Civ. P. 23(a).  In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3).  *See Hartman v. Duffey*, 19 F.3d 1459, 1468 (D.C. Cir. 1994); *Franklin v. Barry*, 909 F. Supp. 21, 30 (D.D.C. 1995); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

To certify a class under Rule 23, a plaintiff bears the burden to show that the proposed class satisfies all four requirements of Rule 23(a) and one of the three Rule 23(b) requirements.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable."  *Gen. Tel. Co. v.*

*Falcon*, 457 U.S. 147, 160 (1982) (hereinafter, *Falcon*).  If a court is not fully satisfied that all of the requirements have been met, a class cannot be certified.  *Id.*  "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Zinser*, 253 F.3d at 1186.  When reviewing a motion for class certification, it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 160-61).

The plaintiffs must also show that a named plaintiff has a live claim.  *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 179 (D.D.C. 2015).  A class should not be certified "[w]hen the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 489 (1969).

To obtain class certification, Plaintiffs must demonstrate that the proposed class members are entitled to common relief.  *See* Fed. R. Civ. P. 23(a)(2), (b)(2).  The Supreme Court has repeatedly held to establish commonality, "[w]hat matters to class certification…is not the raising of common "questions" – even in droves – but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (citation omitted).  "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id.* (citation omitted).

This commonality requirement is likewise present in Rule 23(b)(2), which requires that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  For certification under Rule 23(b)(2), Plaintiffs must show "declaratory relief is available to the class as a whole" and that the challenged conduct is "such

20

that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.  Therefore, Plaintiffs bear the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to relief.  *See In re Google AdWords Litig.*, Civ. A. No. C08-3369, 2010 U.S. Dist. LEXIS 146392 (N.D. Cal. Nov. 12, 2010) ("The question of which advertisers among the hundreds of thousands of proposed class members are even entitled to restitution would require individual inquiries.").  If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification is not be appropriate.

The typicality requirement of Rule 23(a)(3) ensures that the interests of the named representatives align with the interests of the class.  As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) will be satisfied.  *Kas v. Fin. Gen. Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C. 1984).  The typicality requirement is not met, however, if the proposed class representatives are subject to unique defenses.  *Id.*  The typicality requirement is used to ascertain "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) (citations omitted).

Rule 23(a)'s commonality and typicality requirements occasionally merge:  "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.  *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157-58 n.13).

Even before applying Rule 23's requirements, the Court should not certify Plaintiffs' proposed class and sub-classes for two reasons.  First, if the Court were to grant class certification in accordance with Plaintiffs' proposed class, the Court would decide the merits of the case even before the issues have been properly litigated.  Second, Plaintiffs' proposed sub-class 1 is devoid of members and cannot be certified.

### B.   Plaintiffs' Proposed Class Requires the Court to Decide the Case Prior to Litigating the Issues or the Merits.

In a hearing held on October 17, 2018 in this case, the Court observed that if it were to grant Plaintiffs' requested relief by ordering MAVNI discharges revoked and reinstating MAVNIs in the Army, it would be the equivalent of Plaintiffs "winning the case before it is litigated."  Tr. Mot. Hearing (ECF No. 49) at 81:9-14.  Likewise, if the Court granted class certification based on Plaintiffs' proposed class definition, it would be equivalent to deciding the merits of the case in favor of Plaintiffs before the case is litigated.

Such a conclusion at the class certification stage of the case would be premature and improper.  In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974), the Supreme Court found "nothing in either the language or history of Rule 23 that gives the Court authority to conduct a preliminary inquiry into the merits of the suit in order to determine whether it may be maintained as a class action.  Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of the class action without first satisfying the requirements for it."  *Id*.  The Supreme Court further noted, "a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials.  The Court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant."  *Id*.

The Court may "probe behind the pleadings before coming to rest on the certification question," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013), with an understanding that the question of class certification "often involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Steele v. United States*, 159 F. Supp. 3d 73, 80 (D.D.C. 2016), *reconsideration granted*, 200 F. Supp. 3d 217 (quoting *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 n.5 (D.C. Cir. 2006)).  Courts must take care to refrain from engaging in free-ranging merits inquiries, however; instead, they must examine merits questions only to the extent that they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *DL v. Dist. of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013).

Here, Plaintiffs' proposed class definition includes individuals who were the subject of involuntary administrative discharges "*where such action was taken without the soldier first being afforded the process due under applicable Army and DoD regulations and the law.*" Pls.'s Mem. Class Cert. (ECF No. 62) at 3-4 (emphasis added).  In order to grant class certification, the Court would have to conclude, prior to the issue being litigated appropriately, that each named plaintiff (and therefore every similarly situated proposed class member) was discharged without "the process due under applicable Army and DoD regulations" and that each individual discharge was therefore unlawful.  Such a proceeding would place an unfair burden on Defendants and would benefit the class without first satisfying the requirements for a class action.  The Court could "probe behind the pleadings" for purposes of determining whether the prerequisites of Rule 23 are satisfied, but it should refrain from making conclusions regarding the lawfulness of the named Plaintiffs' and proposed class members' discharges beyond what is relevant for determining whether Plaintiffs' proposed class meets Rule 23 prerequisites.

Plaintiffs argue in their Motion for Class Certification that Defendants have "admitted that its involuntary discharges were undertaken in violation of military regulations" based on offering reinstatement to previously discharged MAVNIs, revoking discharges, and instituting the October 26, 2018 policy.  *Id*. at 2-3.  Defendants have made no such admission.  And even if the Court were to find that Defendants did, the Court can grant no further relief to Plaintiffs than reinstatement in the Army for purposes of receiving due process, and the Army has already done so for every proposed member of Plaintiffs' sub-class 1.

For these reasons, the Court should not grant Plaintiffs' request for class certification.

### C.  Plaintiffs' Proposed "Sub-Class 1" is Devoid of Class Members and Cannot Be Certified Under Federal Rule of Civil Procedure 23

Plaintiffs proposed "Sub-Class 1" is made up of anyone who meets the first four prongs of the proposed class definition *and* who "has an unfavorable MSSD and will be subject to the procedures outlined in the October 26, 2018 memo."  *Id*.  The Court is hamstrung in determining class certification because there are not (and will not) be any members of the proposed "Sub-class 1" based on the Plaintiffs' definition.  *Id*. at 3-4.  Plaintiffs have therefore failed to propose a class that meets the requirements of Fed. R. Civ. P. 23.

As noted above, MAVNI recruits subject to the procedures of the October 26, 2018 memorandum fall into one of three categories:  (1) individuals who are still in the Army because they were never discharged; (2) individuals who were discharged, but had the discharge revoked and are currently serving in the USAR;[10] or (3) individuals who have been discharged and have been offered the opportunity to be reinstated in the Army.  Individuals in category 1 have not been discharged from the Army and therefore do not meet prongs 2, 3, or 4 of the Plaintiffs'

---

[10] Only two people fall into this category:  Plaintiffs Calixto and Djohi.

proposed class definition.  Therefore, these individuals cannot be a part of a larger proposed

class or the proposed sub-class.

Likewise, Plaintiffs Calixto and Djohi, who are the only individuals in category 2, have

had their discharges revoked and are now subject to the due process provisions set forth in the

October 26, 2018 memorandum.  Therefore, Plaintiffs Calixto and Djohi cannot meet prongs 2 or

3 of the Plaintiffs' proposed class definition.  Plaintiffs Calixto and Djohi cannot be a part of the

larger proposed class or proposed sub-class 1.

Individuals in category 3 have been offered reinstatement in the Army (or the Army is in

the process now of offering them reinstatement).  Defs.'s Status Rpt. (Jan. 22, 2019) (ECF No.

65) ¶ 4.  If the individual chooses to be reinstated, her discharge will be revoked and she will be

reinstated in the Army.  Army Mem. (ECF No. 50-1) ¶ 5.  Under those circumstances, these

individuals would not meet prongs 2 and 3 of the Plaintiffs' proposed class definition because

their discharge would be revoked and they would be subject the due process as set forth in the

October 26, 2018 memorandum.  *Id*.  If the individual chooses not to be reinstated, she has

chosen to waive the due process offered under the October 26, 2018 policy and has indicated she

does not wish to be reinstated in the Army.  As a result, individuals who choose not to be

reinstated do not meet prong 4 of the Plaintiffs' proposed class definition (which requires an

individual who "wants to be reinstated in or remain in the Army").  Pls.'s Mem. Class Cert.

(ECF No. 62) at 3-4.  These individuals cannot be a part of the larger proposed class or proposed

sub-class 1.

As a result, the Court should not grant Plaintiffs' request for class certification.

### D.  Plaintiffs' Proposed Class Fails to Meet Rule 23's Requirements

The named Plaintiffs, because they are either in the Army or are being offered reinstatement in the Army, cannot adequately represent the proposed class because their claims are not typical of the proposed class and there are no questions of law or fact common to the class.  Plaintiffs further fail to establish numerosity, typicality, or commonality.  Finally, Plaintiffs fail to meet the requirements of Fed. R. Civ. P. 23(b)(2) because the relief they request (finding discharges unlawful and reinstatement) is not appropriate for MAVNI recruits in proposed sub-class 1 because they (1) have not been discharged or have had their discharges revoked; and (2) have already been reinstated or were offered reinstatement and chose not to be reinstated.

### 1.  Plaintiffs' Proposed Class, Including Sub-Class 2, Does Not Present Common Questions or Legal Interests Typical of All Proposed Class Members

In their Motion for Class Certification, Plaintiffs propose a sub-class that lacks commonality for the same reasons its lack typicality:  the proposed class (including sub-class 2) includes groups of MAVNIs whose legal and factual interests differ from each other and from those of the proposed class representatives.  Plaintiffs move to certify a class that is so factually diverse that it fails to present common questions or legal interests typical of all proposed class members.  Plaintiffs' proposed sub-class 2 includes members of both the DEP and DTP, and MAVNI recruits who were discharged on the basis of unfavorable MSSDs and for a wide variety or other reasons.[11]  These differences are not academic; rather, the differences render Plaintiffs'

---

[11] Other reasons for discharge include: Entry Level Performance and Conduct, Refuse to Enlist, Pregnancy, Apathy/Personal Problem, Declined to Ship, Education, Police Record/Charge after Enlistment, Moral/Legal Reason, and Fraudulent Enlistment.  Defs.'s Rpt. (Sep. 4, 2018) (ECF No. 27) (filed under seal).

legal interests atypical and questions of fact and law uncommon.  Because of these differences, the proposed class does not raise common legal questions, and the alleged injuries of the proposed class could not be resolved through a common answer in this lawsuit.

### 2.   The One Named Plaintiff Who is in the DEP is an Inadequate Representative.

Plaintiffs' proposed class, specifically "Sub-class 2" includes individuals in the DEP, ostensibly represented by named Plaintiff Xing Lu, who is the only named Plaintiff from the DEP.  All other named Plaintiffs are or were members of the DTP.  DEP members cannot be part of Plaintiffs' proposed class because Plaintiff Xing Lu cannot adequately represent the class and is the only named Plaintiff who is also a DEP member.

First, Plaintiff Xing Lu cannot adequately represent a class that includes members of the DEP who were involuntarily separated for reasons other than a favorable MSSD because she was separated from the DEP in accordance with 10 U.S.C. § 12103 (*i.e.*, the two-year "time out" statute) and not through involuntary discharge procedures under AR 135-178, paragraph 14-5(c). The questions regarding Plaintiff Lu's discharge are not common to and her legal interests are not typical of the other proposed class members in the DEP.  Furthermore, the legal questions (if any) raised by Plaintiff Lu's situation are not common to the proposed class members.  Plaintiff Lu petitioned the ABCMR to be reinstated in the Army.  The ABCMR granted her request, she has been reinstated in the Army, and on January 22, 2019, the Army issued her a favorable MSSD and ordered her to ship to basic training.  Ex. 1 (St. Clair Dec.).

For these reasons, and because Plaintiffs do not claim any other proposed class member with a claim common to Plaintiff Lu's, no other named plaintiff is a member of the DEP, and because Plaintiff Lu was reinstated in the DEP and has been issued a favorable MSSD, she cannot fairly and adequately represent the proposed class members who are members of the DEP

27

and were separated for reasons other than an unfavorable MSSD and remain separated from the Army.

### 3. Plaintiffs' Proposed Sub-Class 2 Members are Not Entitled to Common Relief

The "common answers" Plaintiffs propose — holding unlawful and setting aside the challenged discharge actions (2d Am. Compl. (ECF No. 61) ¶ 197) — may not apply to the diverse members of Plaintiffs' proposed sub-class 2.  Individuals in Plaintiffs' proposed sub-class 2 have been discharged from the DTP for reasons other than unfavorable MSSDs or they were separated from the DEP for reasons other than unfavorable MSSDs.  The "other reasons" DTP discharges or DEP separations were based on any number of reasons including the individual declined to ship to training, failure to meet the Army's medical/physical enlistment standards, entry level performance and conduct, apathy/personal problems, refusal to enlist, police record/charge after enlistment, moral/legal reasons, fraudulent enlistment, and pregnancy. Def.'s Rpt. (Sep. 4, 2018) (ECF No. 27) (filed under seal).  In order to reinstate MAVNI recruits in the Army, the Army would be required to assess each individual on a case-by-case basis to determine if she is still eligible to serve in the Army.  If the recruit was disqualified from serving on the basis of a permanent condition (and was discharged on that basis), then that individual would remain unqualified to serve.  While some individuals may be suitable for military service, the "common answer" of setting aside each individual's discharge would not be appropriate. Here again, factual development would "significantly advance [the Court's] ability to deal with the legal issues presented."  *See NPHA*, 538 U.S. at 812.

It is clear that the proposed class members in Plaintiffs' sub-class 2 are not entitled to common relief.

### 4.   There Are No Questions of Law or Fact Common to All Class Members

A review of the issues in this case proves there are no questions of law or fact common to all class members.  First, there is no adequate class representative for DEP members of the proposed class.  Second, many proposed class members are still in the Army and have not been discharged, have had their discharges revoked, or are currently being offered reinstatement for purposes of receiving the due process provisions of the October 26, 2018 policy.  Finally, even among those left in the proposed class (DTP members who have received a final discharge and will not be offered reinstatement), there is a lack of common issues of fact or law that affect all class members in the same way.

Plaintiffs request that the Court set aside the challenged discharge actions under the APA, 5 U.S.C. § 706(2).  This relief, of course, would apply to anyone who has been discharged from the Army because the Court can only review final discharge actions.  Relative to the named Plaintiffs, this relief, even if granted, would only apply to Plaintiffs Yisheng Dai and Zeyuan Li.  All other named Plaintiffs have either had their discharges revoked or were never discharged from the Army.  This group includes Plaintiff Xing Lu who is a MAVNI recruit from the DEP.[12] Plaintiffs Dai and Zeyuan Li are not representative of the proposed class members because they were discharged before receiving a MSSD.

### 5.   The Named Plaintiffs' Claims are Not Typical of the Members of the Proposed Class

Contrary to Plaintiffs' assertions in their Second Amended Complaint and Motion for Class Certification, the named Plaintiffs are not similarly situated to each other and their claims

---

[12] As noted above, Plaintiff Lu petitioned the ABMCR to be reinstated in the DEP.  Ex. 1 (St. Clair Dec.) ¶ 16 & Ex A.  The ABCMR granted the petition and Plaintiff Lu is eligible to serve in the DEP.  *Id.*  On January 22, 2019, the Army issued Plaintiff Lu a favorable MSSD.  *Id.* ¶ 16.

are not typical of the members of the proposed class.  Plaintiffs attempt to bring within their proposed class individuals with differing factual circumstances and differing legal claims, which of course is contrary to Fed. R. Civ. P. 23 (a)(2) and (3).  Plaintiffs fail to establish that proposed class members are entitled to common relief.  *See* Fed. R. Civ. P. 23(a)(2), (b)(2).  To establish commonality, the Supreme Court has repeatedly held that "[i]t is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc*., 564 U.S. at 350 (citation omitted).  "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id*.

Many of the named Plaintiffs are not similarly situated because their alleged "injuries" are different, including some have been discharged as a result of unfavorable MSSDs and are now subject to the provisions of the October 26, 2018 policy, while others were discharged for "other reasons" and are not subject to the provisions of the October 26, 2018 policy, while still others are in the military and have not been discharged at all or were discharged and had their discharges revoked and thus have not suffered an injury-in-fact.  Individuals in Plaintiffs' proposed sub-class 2 were discharged from the DTP and DEP for reasons other than unfavorable MSSDs.  Any injury they suffered would be dissimilar from proposed sub-class 1 members because the Army is not offering reinstatement to proposed sub-class 2 members.[13]

---

[13] The "other reasons" DTP discharges or DEP separations were based on any number of reasons including the individual declined to ship to training, failure to meet the Army's medical/physical procurement standards, entry level performance and conduct, apathy/personal problems, refusal to enlist, police record/charge after enlistment, moral/legal reasons, fraudulent enlistment, and pregnancy.  Defs.'s Rpt. (Sep. 4, 2018) (ECF No. 27) (filed under seal).

**6.  The Named Plaintiffs are Inadequate Representatives and Will Not Fairly and Adequately Protect Class Interests**

The named Plaintiffs are inadequate representatives of the proposed class.  Pursuant to Rule 23(a)(4), the named Plaintiffs must fairly and adequately protect the interests of other members of the class.  Fed. R. Civ. P. 23(a)(4).  To determine whether named Plaintiffs will adequately represent a class, courts must resolve two questions:  (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 45 (D.D.C. 2007) (citing *McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428, 446 (D.D.C. 2002); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon v. Chrysler Corp*. 150 F.3d 1011, 1020 (9th Cir. 1998)).  The adequacy requirement "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

Here, the legal and factual circumstances surrounding the named class representatives demonstrate the lack of commonality and typicality of the proposed class, and therefore, they cannot be said to adequately and fairly represent the proposed class's interests.  For example, two of the named Plaintiffs identified in Plaintiffs' Second Amended Complaint (ECF No. 61) (Plaintiffs Lucas Calixto and Tounde Djohi) received unfavorable MSSDs, discharge orders from both USAREC and USARC, were officially discharged from military service, had their discharges revoked, and were reinstated in the USAR.  *See* St. Clair Dec. (Aug. 20, 2018) (ECF No. 24-1) ¶ 4.

Unlike Plaintiffs Calixto and Djohi, six of the individuals identified in the Second Amended Complaint (Wanjing Li, Fang Lu, Hembashima Sambe, Jingquan Qu, Emeka

Udieigwe, and Bright Izudike) received orders only from the USAREC, meaning that their reservations for initial entry training were cancelled, but they remained in the United States Army Reserve.  Plaintiff Emeka Udeigwe has since received a favorable MSSD and orders for initial entry training.  2d Am. Compl. (ECF No. 61) ¶ 109.  Plaintiff Izudike remains in the USAR, has recently been issued a favorable MSSD, and will be ordered to basic training.  Ex. 1 (St. Clair Dec.).

Plaintiff Zeyuan Li refused to cooperate during the required Counterintelligence (CI) security interview and did not receive a MSSD.  He received discharge orders from USAREC and USARC and is currently discharged from the U.S. Army.  St. Clair Dec. (Aug. 13, 2018) (ECF No. 22-1) ¶ 8.  Similarly, Plaintiff Yisheng Dai remains discharged from the USAR. Plaintiff Yisheng Dai's separation was as a result of his refusal to reschedule his counterintelligence interview.  He did not receive a MSSD.  Because they never received MSSDs, neither Plaintiff Li nor Plaintiff Dai are adequate representatives for a proposed class that includes MAVNI recruits who have an "unfavorable MSSD and will be subject to the procedures outlined in the October 26 Memo" (sub-class 1).

These Plaintiffs will not adequately represent the class because their discharges, based on their failure to complete a condition precedent for entry into the Army, are not typical of the other proposed class members and the relief requested would not adequately address their alleged injuries.

In addition, all named Plaintiffs are inadequate representatives of the proposed sub-class 2 because none of them is similarly situated to a person who was discharged from the DEP for reasons other than an unfavorable MSSD and remains discharged from the Army.  Plaintiff Xing Lu is the only named plaintiff who was a member of the DEP.  Plaintiff Lu has been reinstated in

the DEP and has received orders to report to basic training and AIT.  For these reasons, Plaintiff

Lu cannot fairly and adequately represent the proposed class members who are members of the

DEP who were separated for reasons other than an unfavorable MSSD and remain separated

from the Army.

The facts make it clear that the named Plaintiffs themselves are not similarly situated to

each other or to the proposed members of the class.  As a result, the named plaintiffs cannot

adequately and fairly represent the class interests.

### E.  The Proposed Class Does Not Satisfy the Requirements of Rule 23(b)(2).

Under Rule 23(b)(2), Plaintiffs must demonstrate that Defendants have "acted or refused

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  To

attempt to meet this burden, Plaintiffs claim that the "challenged Army practice of summary

discharges applies to all class members simply by virtue of their designation as MAVNI soldiers,

without regard to the individual circumstances of their cases or any other differences among

them."  Pls.'s Mem. Class Cert. (ECF No. 62) at 17.  But, individualized consideration of

Plaintiffs' cases is unavoidable for two reasons.  First, the challenged actions ("summary

discharges") would obviously only apply to individuals who have been discharged from the

Army and the proposed relief ("reinstatement" in the Army if the recruit wants to be reinstated)

would only apply to those who have not already been reinstated and who indicate a desire to be

reinstated.  The proposed relief would not apply to those who have already been reinstated or to

those who are being offered reinstatement in accordance with the October 26, 2018 policy.  In

other words, the Plaintiffs' proposed relief would not apply to MAVNI recruits in proposed sub-

class 1.

Second, contrary to Plaintiffs assertion that the Army's alleged practice applies to each proposed class member regardless of their individual circumstances or differences, every discharge or separation from the Army generally and the MAVNI program specifically is based upon an assessment of each individual's suitability to serve in the military and the individual circumstances that led to the initiation of discharge or separation procedures. Each individual proposed class member's case presents different circumstances and facts, which must be taken into account when determining suitability to serve in the military and their ability to continue to serve or to be reinstated to serve.

The Army has to make an individual determination as to whether a person can be discharged, and also, whether a person can be reinstated. Every individual (not just MAVNIs) who enters military service must meet certain qualifications. If the individual cannot meet those qualifications, she is ineligible to serve in the Army. The Army would have to review the facts and circumstances of each individual to determine if she meets enlistment qualifications. For example, it is possible that the proposed class members are ineligible to serve for reasons including medical or legal disqualification, inability to meet the Army's height and weight standards, or some other reason for disqualification.[14]

Plaintiffs further claim that the proposed class members do not seek any individualized relief. Pls.'s Mem. Class Cert. (ECF No. 62) at 17. In the very next sentence of their motion, however, plaintiffs seek an order "declaring that Defendants' practice of summarily discharging MAVNI soldiers is unlawful and directing that Defendants fully reinstate these soldiers in the Army." *Id.* The first part of the requested relief would fail to reach those MAVNIs who have

---

[14] See for example Army Regulation 40-501, *Standards of Medical Fitness* (Jun. 14, 2017), chapter 2 (listing medical conditions that would disqualify an individual from serving in the Army).

had their discharges revoked and are serving in the Army, those MAVNIs who were never

discharged (including five of the named Plaintiffs), and those who accept the Army's offer of

reinstatement under the October 26, 2018 policy.  As a result, such generalized relief would be

utterly ineffective for a large swath of Plaintiffs' proposed class.

Further, reinstatement in the Army is, by definition, individualized relief because the

Army is required to make an individualized suitability assessment of each MAVNI recruit (*i.e.*

an MSSD).  Therefore, Plaintiffs' assertion in their motion that the proposed class members are

not seeking individualized relief is disingenuous and misleading.   Plaintiffs are indeed seeking

individualized relief (declaring discharges unlawful and reinstating MAVNI recruits) and it

defeats their claim that the case is best resolved through class certification.

For these reasons, Plaintiffs' proposed class fails to meet the requirements of Rule

23(b)(2).

## VI. CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny

Plaintiff's Motion for Class Certification.

Dated:  April 23, 2019                                 Respectfully submitted,

                                                       JESSIE K. LIU, D.C. Bar # 472845
                                                       United States Attorney

                                                       DANIEL F. VAN HORN, D.C. Bar # 924092
                                                       Chief, Civil Division

*Of Counsel:*

                                                       BY: */s/ Roberto C. Martens, Jr.*
JEREMY A. HAUGH                                        ROBERTO C. MARTENS, JR.
Major, U.S. Army                                       Special Assistant United States Attorney
U.S. Army Legal Services Agency                        United States Attorney's Office
Litigation Division                                    Civil Division
9275 Gunston Road                                      555 4th Street, N.W.
Fort Belvoir, VA 22060                                 Washington, D.C. 20530
(703) 693-1011                                         (202) 252-2574

jeremey.a.haugh.mil@mail.mil

JOSEPH G. NOSSE
Major, U.S. Army
U.S. Army Legal Services Agency
Litigation Division
9275 Gunston Road
Fort Belvoir, VA 22060
(703) 693-1013
joseph.g.nosse.mil@mail.mil

roberto.martens@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of April 2019, I served upon counsel for Plaintiffs the

foregoing Defendants' memorandum in opposition to Plaintiffs' motion for class certification by

filing said document using the Court's Electronic Case Filing System.

Dated:  April 23, 2019

*/s/ Roberto C. Martens, Jr.*
ROBERTO C. MARTENS, JR.
Special Assistant United States Attorney

*Attorney for Defendants*

36

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LUCAS CALIXTO, *et al.*,

          Plaintiffs,

   vs.

DEPARTMENT OF THE ARMY, *et al.*,

          Defendants.

Civil Action No. 18-1551 (ESH)

## <u>ORDER</u>

For the reasons stated in the accompanying memorandum opinion, it is hereby

ORDERED that Plaintiffs' renewed motion for class certification and appointment of class

counsel (ECF No. 62) is DENIED.

IT IS SO ORDERED.


Dated: _____

                                  _____
                                  ELLEN S. HUVELLE
                                  United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUCAS CALIXTO, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-01551 |
| | ) The Honorable Ellen Segal Huvelle |
| UNITED STATES DEPARTMENT OF | ) |
| THE ARMY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**DECLARATION OF LIN H. ST. CLAIR**

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      I make this declaration updating information previously provided to the District

Court on August 13, 2018. *See* ECF 22-1.

2.      I am currently the Assistant Deputy for Recruiting, Office of the Assistant

Secretary of the Army (Manpower & Reserve Affairs).  In this capacity, I am responsible for

serving as the Senior Advisor on all matters relating to military accessions and retention for the

Assistant Secretary of the Army for Manpower and Reserve Affairs, the Principal Deputy, and

the Deputy Assistant Secretary of the Army for Military Personnel.  I have oversight

responsibilities for the Army's officer and enlisted accessions and retention programs across all

components, to include youth outreach programs (JROTC).  In this capacity, I serve as the action

officer oversight for non-citizen recruiting (MAVNI and Lawful Permanent Residents).    I have

previously submitted a declarations in *Kirwa v. DOD* (17-cv-01793) and in this case.  *See* ECF

Nos. 22-1, 24-1, and 56-1.

3.      On July 20, 2018, Assistant Secretary of the Army, Manpower & Reserve Affairs, (ASA M&RA), suspended processing of all involuntary separation actions pertaining to members of the Delayed Entry Program (DEP) and the Delayed Training Program (DTP) who were recruited through the MAVNI Pilot Program.  I provided a copy of this memorandum attached to my declaration submitted on August 13, 2018. *See* ECF No. 22-1 Exhibit A.

4.      My August 13, 2018, declaration was made in response to the District Court's Minute Order issued August 8.  As such, I provided the Court with current information regarding the status of the Plaintiffs in this matter.  I also explained, despite possibly receiving discharge orders from U.S. Army Recruiting Command (USAREC), soldiers in the DTP who have not received orders issued by U.S. Army Reserve Command (USARC) have not been discharged from the U.S. Army.  *See* ECF No. 22-1

5.   On October 26, 2018, the ASA M&RA signed a Memorandum authorizing the Deputy Chief of Staff, G-1, subject to specified guidance, to resume making military service suitability determinations and initiating involuntary administrative separation as appropriate for members of the DEP and DTP recruited through the MAVNI Pilot Program.  This policy was provided to the court in a status report submitted on October 31, 2018.

6.   On January 2, 2019, Plaintiffs filed an amended Complaint, in which they updated some of the named Plaintiffs' information and named additional Plaintiffs.

7.   As of April 22, 2019, based upon the report submitted to my office, below is the current status of the following individuals.

**<u>Status of Plaintiffs in this matter</u>**

8.      Plaintiff Lucas Calixto is currently enrolled in the DTP and was reinstated into the U.S. Army.  The Army has not re-issued him a MSSD.  He is pending notification of his adverse

security recommendation pursuant to the 26 October memorandum and will be subject to the procedures therein.

9.    Plaintiff Tounde Djohi is currently enrolled in the DTP and was reinstated into the U.S. Army.  The Army has not re-issued him a MSSD.  He is pending notification of his adverse security recommendation pursuant to the 26 October memorandum and will be subject to the procedures therein.

10.    Plaintiff Wanjing Li is currently enrolled in the DTP and was not discharged by the U.S. Army.  The Army has not re-issued her a MSSD.  She is pending notification of her adverse security recommendation pursuant to the 26 October memorandum and will be subject to the procedures therein.

11.    Plaintiff Zeyuan Li is currently discharged from the U.S. Army.  Plaintiff Zeyuan Li's discharge was not affected by the 26 October memorandum.

12.    Plaintiff Fang Lu is currently enrolled in the DTP and was not discharged by the U.S. Army.  The Army has not re-issued her a MSSD.  She is pending notification of her adverse security recommendation pursuant to the 26 October memorandum and will be subject to the procedures therein.

13.    Plaintiff Hembashima Sambe is currently enrolled in the DTP and was not discharged by the U.S. Army.  The Army issued him a favorable MSSD on April 12, 2019. Plaintiff Sambe is awaiting a ship date to Initial Entry Training.

14.    Plaintiff Jungquan Qu is currently enrolled in the DTP and was not discharged by the U.S. Army.  The Army has not re-issued him a MSSD.  He is pending notification of his adverse security recommendation pursuant to the 26 October memorandum and will be subject to the procedures therein.

15.     Plaintiff Emeka Udeigwe is currently enrolled in the DTP and has accessed into the U.S. Army.  The Army issued him a favorable MSSD on November 6, 2018.  Plaintiff Udeigwe is scheduled to ship to Initial Entry Training on July 2, 2019.

16.     Plaintiff Xing Lu is currently enrolled in the DEP and was reinstated upon recommendation of the Army Board for the Correction of Military Records (ABCMR) on January 15, 2019.  Plaintiff Lu was separated from the DEP effective January 1, 2018, for exceeding the statutory 730 day limit.  Plaintiff Lu filed a petition with the ABCMR dated January 30, 2018, seeking correction of her military records.  The ABCMR determined by a review of her records that she was erroneously discharged after timing-out at 730 days and that the ABCMR Record of Proceedings for MAVNI Group Application, dated October 5, 2017, effectively applied to Xing Lu.  In granting her petition, the ABCMR directed correction of her enlistment date from January 19, 2016 to January 19, 2017. *See* Exhibit A.  The Army issued Plaintiff Lu a favorable MSSD on January 22, 2019.  Plaintiff Lu is scheduled to ship to Initial Entry Training on May 21, 2019.

17.     Plaintiff Yisheng Dai is currently discharged from the U.S. Army. Plaintiff Dai received discharge orders issued by USAREC, dated September 29, 2017, with an effective date of October 1, 2017.  USARC issued discharge orders with an effective date of December 11, 2017. His separation was initiated for refusing to conduct, or be scheduled for, his Counterintelligence (CI) Security Interview.  On 14 August 2017 Plaintiff Dai stated he would not attend a CI interview due to currently residing in the People's Republic of China. Office of the Secretary of Defense established the CI Security Interview requirement in its September 30, 2016, policy memorandum extending the MAVNI Pilot Program, *see* ECF 22-1 ~~Exhibit B.~~ Plaintiff Yisheng Dai's discharge was not affected by the 26 October memorandum.

18.     Plaintiff Bright Izudike is currently enrolled in the DTP and was issued a

favorable MSSD on 20 March 2019.   Plaintiff Izudike is awaiting a ship date to Initial Entry

Training.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 22,

2018.

ST
CLAIR.LINDEN.HARR
ISON.II.1252353646

Digitally signed by ST
CLAIR.LINDEN.HARRISON.II.1252
353646
Date: 2019.04.22 16:11:47 -04'00'

_____
LIN H. ST. CLAIR



**DEPARTMENT OF THE ARMY**
OFFICE OF THE DEPUTY CHIEF OF STAFF G-1
300 ARMY PENTAGON
WASHINGTON DC 20310-0300

DAPE-MPA                                                    15 January 2019

MEMORANDUM THRU Commander, US Army Recruiting Command (RCRO), 1307 Third Avenue, Fort Knox, KY 40121

SUBJECT:  Army Board for Correction of Military Records Record of Proceeding for MAVNI Group Application (Update to Group List –Xing Lu)

1.  References SAMR-RBA, Memorandum, subject: Army Board for Correction of Military Records Record of Proceedings for MAVNI Group Application, 5 October 2017.

2.  A review of the discharge orders for former MAVNI DEP member, Xing Lu, ██████ indicate through an administrative oversight that she was erroneously discharged after timing-out at 730 days.   Considering the discharge orders was published after the board's decision, the decision effectively applies to Xing Lu (list enclosed). This individual is eligible to continue to serve in her former status in the DEP, provided she is still otherwise qualified (no medical or conduct disqualifications).

3.  Within 10 business days of the date of this memorandum, the following actions must be accomplished:

   a.  Notify the individual that she is eligible to continue to serve as a member of the DEP, provided she is still otherwise qualified (no medical or conduct disqualifications).

   b.  Rescind the discharge order for the individual reflected on the list of one, unless the member declines continued service in the DEP through formal notification.

   c.  Complete USAREC Form 601-210.21 (Separation Request) if the member has lost interest and declines further service.

   d.  Publish a new discharge order on the individual if she formally declines further service, using date of declination as the effective date of discharge.

   e.  Coordinate with HRC (PERSIND) and this office to reinstate the member into the DEP and restore the archived enlistment contract for the affected member for use in maintaining and shipment of the member to training.

**EX. A**

DAPE-MPA
SUBJECT:  Army Board for Correction of Military Records Record of Proceeding for
MAVNI Group Application (Update to Group List – Lu Xing)


    f.  Re-initiate security vetting requirements (where required) and coordinate with
appropriate agencies to ensure required vetting is accomplished prior to shipment to
training.

    g.  File a copy of this memorandum and the attached memorandum "Correction of DD
Form 4" in the Electronic Records Management (ERM) system to show the correction to
enlistment date into the DEP and upload both memorandum into iPERMS at shipment to
training.

4.  The point of contact for this action is ████████████████████████

FOR THE DEPUTY CHIEF OF STAFF, G-1:


2 Encls
                                       PAUL L. ASWELL
                                       Chief, Accessions Division

CF:
CG, TRADOC
AHRC-EPF
DCS, G-2



**DEPARTMENT OF THE ARMY**
OFFICE OF THE DEPUTY CHIEF OF STAFF, G-1
300 ARMY PENTAGON
WASHINGTON DC 20310-0300

DAPE-MPA                                                                                      15 January 2019

MEMORANDUM FOR United States Army Recruiting Command (RCRO), 1307 Third Avenue, Fort Knox, KY 40121

SUBJECT: Correction of DD Form 4 – Enlistment Date **(LU, XING ▮▮▮▮)**

1. References

   a. SAMR-RBA, Memorandum, subject:  Army Board for Correction of Military Records Record of Proceedings for MAVNI Group Application, 5 October 2017.

   b. 10 USC 1552.

   c. AR 601-210 (Regular Army and Reserve Components Enlistment Program), 31 August 2016.

2. As ordered by reference 1.a, the Army enlistment contract of **LU, XING** recorded on DD Form 4, Section a, item 5 is no longer correct.  This memo corrects the DD Form 4, pursuant to reference 1.c, no pen and ink correction is authorized.  The enlistment date of **1/19/2016** is corrected to enlistment date **1/19/2017**.  This corrected date is the actual date of enlistment for all official purposes to include calculating the military service obligation and time in the Delayed Entry Program.

3. Place a copy of this memorandum in the Electronic Records Management (ERM) enlistment folder next to **LU, XING's** DD Form 4 and place a copy in the Soldier's Army Military Human Resource Records upon accession onto active duty.  Pursuant to references 1.a and 1.b, please ensure electronic records within the Department of Defense are altered to reflect the corrected date of enlistment.  Distribute this memorandum as appropriate to records custodians to support corrections to electronic financial and personnel records.

4. The point of contact for this action is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

PAUL L. ASWELL
Chief, Accessions Division

CF:
USMEPCOM (J-3)
AHRC (AHRC-EPF)
Future Soldier **LU, XING**

*FOR OFFICIAL USE ONLY--PRIVACY ACT PROTECTED*

| Added to Group List:  MAVNI DEP Member covered under 5 October 2017 Decision: | | | |
| --- | --- | --- | --- |
| SSN | NAME | DOB | COMP |
| ███████ | LU XING | █████ | AA |

*FOR OFFICIAL USE ONLY--PRIVACY ACT PROTECTED*

**Army Regulation 135–178**

Army National Guard and Reserve

# Enlisted Administrative Separations

**Headquarters**
**Department of the Army**
**Washington, DC**
**7 November 2017**

# UNCLASSIFIED

**Headquarters**
**Department of the Army**
**Washington, DC**
**7 November 2017**

***Army Regulation 135–178**

**Effective 7 December 2017**

**Army National Guard and Reserve**

# Enlisted Administrative Separations

**By Order of the Secretary of the Army:**

**MARK A. MILLEY**
*General, United States Army*
*Chief of Staff*

**Official:**

**GERALD B. O'KEEFE**
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a major revision.

**Summary.** This regulation implements DODI 1332.14. It establishes policies, standards, and procedures governing the administrative separation of certain enlisted Soldiers of the Army National Guard/Army National Guard of the United States and the U.S. Army Reserve.

**Applicability.** This regulation applies to Army National Guard/Army National Guard of the United States, and U.S. Army Reserve Soldiers not serving on active duty.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–1. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army internal control process.** This regulation contains internal control provisions in accordance with AR 11–2 and identifies key internal controls that must be evaluated (see appendix B).

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Deputy Chief of Staff, G–1 (DAPE–MP), 300 Army Pentagon, Washington, DC 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Headquarters, Department of the Army, Deputy Chief of Staff, G–1 (DAPE–MPE–IP), 300 Army Pentagon, Washington, DC 20310–0300.

**Distribution.** This publication is available in electronic media only and is intended for command level B for the Active Army and A for the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

## Contents (Listed by paragraph and page number)

**Chapter 1**
**General Provisions,** *page 1*

*Section I*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Statutory authority • 1–5, *page 1*
Objective • 1–6, *page 2*
Separation processing goals • 1–7, *page 3*
DA Form 5138 • 1–8, *page 3*
Medical processing and evaluation • 1–9, *page 3*
Precedence of referral to the Integrated Disability Evaluation System and administrative separation • 1–10, *page 5*

*Section II*
*Authority to Order and Accomplish Separation, page 7*

*This regulation supersedes AR 135–178, dated 12 January 2017; and AR 135-205, dated 11 March 2008.

# UNCLASSIFIED

## 14–2.  Characterization of service

The service of a Soldier separated under this section will be characterized as honorable, unless an uncharacterized description of service is required by paragraph 2–11, or a characterization of general (under honorable conditions) is warranted under chapter 2, section III.

## 14–3.  Procedures

Prior to characterization of service of general (under honorable conditions), the Soldier will be notified of the specific factors in the service record that warrant such a characterization, and the notification procedure (chap 3, sec II) will be used.

## 14–4.  Separation authority

The appropriate authority cited in paragraph 1–11 can order separations under this section.

## Section II

## Separation from the Delayed Entry Program

## 14–5.  Basis

A Soldier who enlisted in the USAR under the DEP in accordance with AR 601–210 must be processed for separation if they satisfy the conditions in paragraphs 14–5*a* or *b*, and may be processed for separation if they satisfy the conditions in paragraphs 14–5*c* or *d*.

  *a.*  Upon enlistment in the regular Army (para 5–4*a*).

  *b.*  On discovery that the USAR enlistment is defective. The Soldier will be processed for separation under para 7–3.

  *c.*  The Soldier is found to be ineligible for enlistment in the regular Army.

  *d.*  The Soldier declines enlistment in the regular Army and is not being ordered to active duty as a Reserve of the Army (10 USC 12103(b)).

## 14–6.  Characterization or description

  *a.*  The service of a Soldier discharged on the basis of paragraph 14–5*a*, is not characterized. (See DD Form 4 (Enlistment/Reenlistment Document Armed Forces of the United States), section G.)

  *b.*  The separation of a Soldier on the basis of paragraph 14–5*c* or paragraph 14–5*d*, will be described as an entry level separation and the service will be uncharacterized.

## 14–7.  Procedures

When it is determined that a member of the DEP is unqualified for further military service or has requested separation, the Commander, U.S. Army RBN, will advise the Soldier, in writing, of the proposed separation and the reasons using the notification procedure (chap 3, sec II).

  *a.*  The notification memorandum (see fig 3–1) will be presented to the Soldier. If the Soldier cannot be personally notified, the certified mail procedures in paragraph 3–4*b*, will be applied or an equivalent procedure if such service is not available by the U.S. mail at an address outside the United States. The notice will inform the Soldier that they must respond by endorsement (see fig 3–2) within 30 days from the date of delivery.

  *b.*  Insert the following with the member's original DEP enlistment packet:

  (1)  A copy of the endorsement (see fig 3–2) completed by the Soldier;

  (2)  A copy of the notification memorandum (see fig 3–1) and post office receipt; or

  (3)  The original notification memorandum (see fig 3–1) and envelope marked "unclaimed" or other designation indicating it was not delivered, and the Affidavit of Service by Mail (see fig 1–1).

  *c.*  On receipt of the completed endorsement (see fig 3–2) from the Soldier, the Commander, U.S. Army RBN, will make the final determination for retention or separation from the USAR DEP. A careful consideration of the Soldier's statement or rebuttal is mandatory.

  *d.*  If the Soldier is not approved for retention or fails to respond within 30 days from the date of delivery, the authorities cited in paragraph 14–7*a*, will process the Soldier for discharge.

  *e.*  The discharge order (Format 500) will cite this paragraph and regulation as the authority.

  *f.*  On discharge, with the discharge order as the top document, the Soldier's USAR DEP enlistment packet will be sent to Director, National Personnel Records Center, Accession and Disposal Section, 9700 Page Avenue, St. Louis, MO 63132–5200.