## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LUCAS CALIXTO,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 18-1551 (ESH)** |
| **UNITED STATES DEPARTMENT OF THE ARMY,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Defendants have filed a motion to dismiss for lack of subject matter jurisdiction.  For the reasons set forth below, the Court will deny the motion.

## BACKGROUND

Plaintiffs are United States Army soldiers who enlisted through the Military Accessions Vital to the National Interest ("MAVNI") program, "which enables certain non-U.S. citizens to enlist and serve in the U.S. Armed Forces." (2d Am. Compl. ¶¶ 1–2, ECF No. 61.)  Plaintiffs assert that various Army regulations, Department of Defense regulations, and the due process clause of the Fifth Amendment of the U.S. Constitution require that MAVNI soldiers be afforded certain procedural protections—such as notice and an opportunity to respond—before they can be lawfully discharged from the Army.  (*Id.* ¶¶ 136–158.)  Plaintiffs argue that, in contravention of these legal requirements, they were "summarily discharged" by the Army without notice or process.  (*Id.* ¶¶ 1, 6.)

Plaintiff Lucas Calixto was the first discharged MAVNI soldier to file suit, bringing his complaint on June 28, 2018, against defendants United States Department of the Army (the

"Army") and its Secretary, Mark Esper (collectively "defendants"). (Compl., ECF No. 1.) Calixto argued that he was discharged without "prior notice of the [d]efendants' intent to discharge him," without "specific reasons or grounds for the discharge," and without knowledge "of the facts or circumstances that purported to justify or explain the discharge." (*Id.* ¶ 1.) On August 3, 2018, Calixto amended his complaint, adding seven additional discharged soldiers as named plaintiffs who, together with Calixto, have sought to represent a class of other similarly-situated discharged MAVNI soldiers. (Am. Compl., ECF No. 19.) After a status conference on November 14, 2018, the Court set a deadline for plaintiffs to further amend their complaint. Plaintiffs' Second Amended Complaint was filed on January 2, 2019. (2d Am. Compl.)

The operative Second Amended Complaint lists a total of eleven named plaintiffs who seek to represent a putative class of MAVNI soldiers who were summarily discharged from the Army without receiving procedures that plaintiffs allege were required. (*Id.* ¶¶ 1, 137, 183.) On the same day that the Second Amended Complaint was filed, plaintiffs also filed a motion for class certification and appointment of class counsel, which is currently pending before the Court. (Pls.' Mot. for Class Cert., ECF No. 62.)

The Second Amended Complaint has six counts: 1) a claim for "a declaratory judgment that the final discharge decisions made with respect to [p]laintiffs and the [putative] [c]lass are unlawful and must be revoked" (Count I); 2) a claim for injunctive relief seeking, *inter alia*, that defendants revoke discharge actions against putative class members and fully reinstate them to their pre-discharge action status (Count II); 3) a claim under the Administrative Procedure Act ("APA") alleging that defendants violated 5 U.S.C. § 706(2) by taking agency actions that were arbitrary, capricious and "without observance of procedure required by law" (Count III); 4) a claim pursuant to the U.S. Constitution for violation of procedural and substantive due process,

alleging that the challenged discharge actions violated the plaintiffs' Fifth Amendment rights (Count IV); 5) an equal protection claim under the U.S. Constitution, arguing that non-citizens who entered the Army through the MAVNI program have been treated differently from other soldiers due to their national origin (Count V); and 6) a First Amendment retaliation claim, alleging that defendants took retaliatory actions against plaintiffs in direct response to their filing of the First Amended Complaint (Count VI).  (2d Am. Compl. ¶¶ 187–213.)

Defendants filed a motion to dismiss for lack of subject matter jurisdiction on January 25, 2019.  (Defs.' Memo. in Supp. of Mot. to Dismiss ("Mot."), ECF No. 68-1.)  Defendants' motion argues that all counts of the Second Amended Complaint should be dismissed because the United States has not waived sovereign immunity with respect to plaintiffs' claims.  (*Id.* at 1–2.) Defendants assert that plaintiffs' APA claim presents a broad programmatic attack on the manner in which defendants conduct Army recruitment—instead of challenging a discrete final agency action—and thus, plaintiffs cannot properly invoke the waiver of sovereign immunity provided for in the APA.  (*Id.* at 11–13.)  Defendants also argue that since no other statute provides for a waiver of sovereign immunity for plaintiffs' claims, all of plaintiffs' claims—both APA and non-APA—should be dismissed for lack of subject matter jurisdiction.  (*Id.* at 28–29.)

Plaintiffs filed an opposition to defendants' motion to dismiss on February 8, 2019.  (Pls.' Opp. to Defs' Mot. to Dismiss ("Opp."), ECF No. 74.)  Defendants then filed a reply in support of their motion, which included a new argument that plaintiffs' request for reinstatement is not justiciable.  (Defs.' Reply in Supp. of Mot. to Dismiss ("Reply") at 20–22, ECF No. 75.) Plaintiffs subsequently filed a motion for leave to file a sur-reply (ECF No. 78), which defendants have opposed (ECF No. 80).

## ANALYSIS

For the reasons set forth below, the Court rejects defendants' argument that it lacks subject matter jurisdiction and denies defendants' motion to dismiss.

## I.      LEGAL STANDARD

A motion brought under Federal Rule of Civil Procedure 12(b)(1) seeks to dismiss claims based on a court's lack of subject matter jurisdiction. "When evaluating a Rule 12(b)(1) motion, 'the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Conference of State Bank Supervisors v. Office of Comptroller of Currency*, 313 F. Supp. 3d 285, 294 (D.D.C. 2018) (quoting *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016)). An argument that the United States has not waived sovereign immunity for purposes of a given claim raises a jurisdictional question properly addressed under a Rule 12(b)(1) motion or *sua sponte* by the Court. *See Brown v. Sec'y of Army*, 78 F.3d 645, 648 (D.C. Cir. 1996).[1]

## II.     DEFENDANTS' MOTION TO DISMISS

### A.      The APA's Discrete, Final Agency Action Requirement

Causes of actions brought under the APA must present a challenge to an agency action that is both final and discrete. The finality requirement applies "[w]here no other statute provides a private right of action" and derives from the text of APA § 704. *Norton v. S. Utah*

---

[1] In the Court's analysis of the present motion, it will be necessary to touch upon the difference between a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6). A motion brought under Rule 12(b)(6) seeks to dismiss claims based on a failure of the complaint to state a claim upon which relief can be granted. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*Wilderness Alliance*, 542 U.S. 55, 61–62 (2004); 5 U.S.C. § 704 (providing for judicial review of "final agency action for which there is no other adequate remedy in a court"). The "discrete" requirement comes from judicial interpretation of APA § 551(13), which provides the APA's definition of "agency action." *See* 5 U.S.C. § 551(13). Section 551(13) defines an "agency action" as "whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* In *Norton*, the Supreme Court explained that the five specific categories listed in this definition (agency rules, orders, licenses, sanctions, and relief) all "involve circumscribed, discrete agency actions." 542 U.S. at 62. Thus, "an 'equivalent . . . thereof' must also be discrete (or it would not be equivalent), and a 'denial thereof' must be the denial of a discrete listed action (and perhaps denial of a discrete equivalent)." *Id.*

Because every possible category of "agency action" under § 551(13) involves a discrete action, parties cannot bring APA claims that present a "broad programmatic attack." *Id.* at 64. The Supreme Court confronted a broad programmatic attack in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), where it rejected plaintiffs' attempt to bring a challenge to the entirety of the Bureau of Land Management's ("BLM's") "so-called 'land withdrawal review program,'" which did not "refer to a single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations." *Id.* at 890. In *Norton*, the Supreme Court similarly rejected a general challenge to the Bureau of Land Management's compliance with broad statutory mandates, as the suit did not complain of the agency's failure to take discrete actions that were legally required. 542 U.S. at 65–66.

Under the established law of the D.C. Circuit, the APA's requirement of a final, discrete agency action is a non-jurisdictional requirement that limits an APA cause of action; it has no bearing on the scope of the United States' waiver of sovereign immunity. *See Trudeau v. Fed.*

*Trade Comm'n*, 456 F.3d 178, 184 (D.C. Cir. 2006) ("[T]he APA's final agency action

requirement is not jurisdictional."); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620–21 (D.C.

Cir. 2017) ("[T]he requirement of final agency action in § 704 is not a condition of the waiver of

immunity. . . , but instead limits the cause of action created by the APA").  Indeed, the D.C.

Circuit has concluded that it would be erroneous for a district court to dismiss an APA claim

under Rule 12(b)(1) for a lack of final agency action, as this is a non-jurisdictional issue properly

addressed under Rule 12(b)(6).  *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety

Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003).[2]

### B.     APA § 702's Waiver of Sovereign Immunity

Contrary to defendants' argument (*see* Mot. at 28), the second sentence of APA § 702

provides for a waiver of sovereign immunity that is sufficiently broad to encompasses both APA

and non-APA claims.  *See* 5 U.S.C. § 702.  This sentence states that "[a]n action in a court of the

United States seeking relief other than money damages and stating a claim that an agency or an

officer or employee thereof acted or failed to act . . . shall not be dismissed nor relief therein be

denied on the ground that it is against the United States or that the United States is an

indispensable party."  *Id.*  Congress added this sentence to § 702 in 1976 with the "clear purpose

to 'elimina[te] the sovereign immunity defense in *all* equitable actions for specific relief against

a Federal agency or officer acting in an official capacity.'"  *Trudeau*, 456 F.3d at 186 (quoting

*Sea–Land Serv., Inc. v. Alaska Railroad*, 659 F.2d 243, 244 (D.C. Cir. 1981)).  The D.C. Circuit

---

[2] It appears that the Fourth Circuit considers the lack of a discrete, final agency action in an APA
claim to bear on a court's subject matter jurisdiction.  *See City of New York v. U.S. Dep't of Def.*,
913 F.3d 423, 430, 432–33 (4th Cir. 2019) (concluding the court lacked subject matter
jurisdiction over an APA claim because plaintiffs were not challenging a discrete agency action).
Where the D.C. Circuit's jurisprudence differs from another Circuit's, this Court is bound to
follow the D.C. Circuit.  *See, e.g., Perry-Anderson v. Howard Univ. Hosp.*, 192 F. Supp. 3d 136,
148 (D.D.C. 2016).

has "repeatedly and expressly held in the broadest terms" that the waiver of sovereign immunity in the second sentence of § 702 "applies to any suit whether under the APA or not." *Perry Capital*, 864 F.3d at 620 (internal citation and quotation marks omitted).  Because § 702's "waiver is not limited to APA cases," "it applies regardless of whether the elements of an APA cause of action are satisfied." *Trudeau*, 456 F.3d at 187.[3]

### C.    Plaintiffs' Second Amended Complaint

The second sentence of APA § 702 provides a waiver of sovereign immunity for all of the claims that plaintiffs have brought in the Second Amended Complaint, which are all against a federal agency or officer and seek relief other than monetary damages.  *See* 5 U.S.C. § 702. Given that the APA's final, discrete agency action requirement bears on a plaintiff's ability to sustain an APA claim, defendants should have raised their arguments in a Rule 12(b)(6) motion. *See Reliable Automatic Sprinkler*, 324 F.3d at 731; *see also El Paso Natural Gas Co. v. United*

---

[3] Defendants' Reply concedes that the APA's *final* agency action requirement is an element of an APA cause of action and thus unnecessary to invoke § 702's waiver of sovereign immunity, but argues that, in contrast, a *discrete* agency action as *Norton* described *is* necessary to invoke § 702's waiver.  (Reply at 19–20.)  This argument is baseless.  *Norton*'s discrete agency action requirement is derived from the Supreme Court's interpretation of 5 U.S.C. § 551(13), in which the APA defines "agency action."  *See Norton*, 542 U.S. at 61–62.  The D.C. Circuit has rejected the idea that an "agency action" within the meaning of § 551(13) is required in order to invoke § 702's waiver of sovereign immunity.  *See, e.g., Trudeau*, 456 F.3d at 187 ("[A]ttempt to restrict the waiver of sovereign immunity to actions challenging 'agency action' as technically defined in § 551(13) offends the plain meaning of the amendment" to § 702) (quoting *Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 525 (9th Cir. 1989)).  Thus, the Supreme Court's interpretation in *Norton* of what constitutes an "agency action" under 5 U.S.C. § 551(13) for purposes of sustaining an APA claim is irrelevant to questions regarding the scope of the sovereign immunity waiver in the second sentence of § 702.  Neither *Norton* nor *Lujan* discuss the issue of sovereign immunity or the second sentence of § 702.  Instead, *Norton* and *Lujan*'s mention of § 702 is restricted to the first sentence of the section, which provides that a party bringing an APA claim must have "suffer[ed] legal wrong because of agency action" or been "adversely affected or aggrieved by agency action."  5 U.S.C. § 702; *see Norton*, 542 U.S. at 61–62; *Lujan*, 497 U.S. 882–99.  *Lujan* and *Norton* provide no guidance for determining the scope of the waiver of sovereign immunity in § 702's second sentence.

*States*, 750 F.3d 863, 888 (D.C. Cir. 2014) (concluding that a plaintiff failed to state a claim because under the APA it could not rely on a broad programmatic attack); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097–99 (D.C. Cir. 2015) (holding a plaintiff had failed to state a claim due to not satisfying *Norton*'s requirements).   However, even a Rule 12(b)(6) motion would not have been successful, as plaintiffs' Second Amended Complaint does not present a broad programmatic attack.

Defendants concede that the order that plaintiff Calixto received discharging him from the Army Reserve was a "discrete and final agency action" that was "ripe for federal court review."  (Mot. at 3.)  Plaintiffs have amended their complaint to add additional plaintiffs and putative class members, each of whom—according to the Second Amended Complaint—seek to challenge their discharge order, just as Calixto sought in the initial Complaint.  (2d Am. Compl. ¶ 137 ("All Plaintiffs and proposed class members in this action were the subjects of involuntary administrative discharge actions by Defendants.").)[4]  Given defendants' concession that each discharge order represents a discrete and final agency action, the Court can easily reject any assertion that plaintiffs' Second Amended Complaint—which merely attempts to aggregate soldiers' challenges to the discrete discharge orders that each soldier faced—represents a broad programmatic attack.  The "aggregation of similar, discrete purported injuries—claims that many

---

[4] Defendants may be able to raise factual disputes regarding whether each plaintiff has in fact been discharged.  (*See, e.g.*, Mot. at 6.)  However, for purposes of Rule 12(b)(6)—which, as explained *supra*, is the proper lens through which the Court should assess defendants' "broad programmatic attack" argument—the Court is compelled to accept the allegations in the Second Amended Complaint as true.  *See, e.g., Croixland Properties Ltd. P'ship v. Corcoran,* 174 F.3d 213, 215 (D.C. Cir. 1999).  Even under the framework through which defendants advocate the Court assess their argument—as a Rule 12(b)(1) facial challenge to the Second Amended Complaint—the Court would be required to accept the plaintiffs' allegations as true.  (Mot. at 10 (stating that "[t]his is a facial challenge" under Rule 12(b)(1) and thus "the district court must accept the well-pleaded allegations contained in the complaint as true").)

people were injured in similar ways by the same type of agency action—" does not constitute "a

broad programmatic attack." *Ramirez v. U.S. Immigration & Customs Enforcement*, 310 F.

Supp. 3d 7, 21 (D.D.C. 2018).

## III.   JUSTICIABILITY OF PLAINTIFFS' REQUEST FOR REINSTATEMENT

In their Reply, defendants raise a new argument:  that because one of the remedies that

plaintiffs seek, reinstatement, is non-justiciable, plaintiffs' claims should be dismissed.  (Reply at

20–22.)[5]  This argument is without merit.[6]

Claims arguing that deficiencies in the *process* used to reach military personnel decisions

violated the Constitution, statutes, or regulations are appropriate for judicial review.  *See Kreis*,

866 F.2d at 1511 (describing the distinction between justiciable claims that argue the military's

"decision making process was deficient" and non-justiciable claims that ask a court to review the

substance of a military personnel decision for its correctness); *see also Dilley v. Alexander*, 603

F.2d 914, 920 (D.C. Cir. 1979), *decision clarified*, 627 F.2d 407 (D.C. Cir. 1980) ("It is the duty

of the federal courts to inquire whether an action of a military agency conforms to the law, or is

instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency.").

Plaintiffs' Second Amended Complaint argues that the procedures by which plaintiffs were

discharged were unlawful because the Army failed to comply with applicable law.  Such a claim

---

[5] It is generally improper for a party to raise new arguments in a reply brief, and "courts may disregard any such arguments." *Performance Contracting, Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010).  However, because this non-justiciability argument potentially touches upon the Court's subject matter jurisdiction, the Court addresses it to make clear that the Court has satisfied itself regarding its own jurisdiction.  *See Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511–12 (D.C. Cir. 1989) (affirming in part a district court's decision to dismiss an Air Force major's non-justiciable claim regarding a promotion decision for lack of subject matter jurisdiction).

[6] Because the Court can easily determine the baselessness of defendants' new argument without the assistance of any sur-reply by plaintiffs, plaintiffs' motion for leave to file a sur-reply (ECF No. 78) is DENIED.

is justiciable.

Furthermore, the D.C. Circuit has already held that where servicemembers are discharged from the military via an unlawful process, reinstatement can be a form of judicially-ordered relief in appropriate cases. *See Dilley*, 627 F.2d at 415 (describing a "general rule requiring retroactive reinstatement for illegally discharged servicemen"). The Court need not at this time decide what relief plaintiffs would be eligible to receive if their claims are ultimately successful, as to do so would put the cart before the horse. But plaintiffs' request for reinstatement—a form of judicial relief that the D.C. Circuit has previously afforded successful military plaintiffs—does not somehow divest this Court of jurisdiction over plaintiffs' claims.

## CONCLUSION

For the reasons stated above, the Court denies defendants' motion to dismiss. A separate Order accompanies this Memorandum Opinion.

ELLEN S. HUVELLE
United States District Judge

Date:   May 16, 2019