**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LUCAS CALIXTO, *et al*.,

     Plaintiffs,

  vs.

DEPARTMENT OF THE ARMY, *et al*.,

    Defendants.

Civil Action No. 18-1551 (ESH)

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**I. INTRODUCTION** ...................................................................................................................1

**II. THE COURT'S MAY 24, 2019 ORDER** ..............................................................................2

**III. ARGUMENT** .........................................................................................................................3

    1. **All DEPs and DTPs—including MAVNIs—are Processed for**
    **Separation from USAREC In Accordance With USAREC Regulation**
    **601-210, Appendix I** ......................................................................................................4

       **1.a. Once Their Training Reservations are Revoked Via**
       **USAREC Orders, DTPs are Processed for Discharge from**
       **the USARC In Accordance With AR 135-178** ...............................................5

    2. **USAREC Regulation 601-210 Applies to MAVNIs in the**
    **DEP and DTP; AR 135-178 Applies Only to MAVNIs in the DTP** ..........................8

    3. **Each MAVNI Discharged for Non-MSSD Reasons, Including**
    **but Not Limited to Those Listed on ECF No. 27-2, Received the**
    **Procedures Required by the Applicable Regulations** ...............................................9

**IV. CONCLUSION** ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**STATUTE**

10 U.S.C. § 513, Enlistments: Delayed Entry Program..........................................................10 n.8

**REGULATIONS**

Reference 1.  USAREC Regulation 601-210, *Enlistment and Accessions Processing*
(July 20, 2018) ....................................................................................................................... *passim*

Reference 2.  Army Regulation 135-178, *Army National Guard and Reserve
Enlisted Administrative Separations* (Nov. 7, 2017) ............................................................. *passim*

Reference 3.  Army Regulation 601-210, *Regular Army and Reserve Components
Enlistment Program* (Aug. 31, 2016) ..................................................................................... *passim*

Army Regulation 40-501, *Standards of Medical Fitness* (June 14, 2017) ..............................7 n.6

Army Regulation 635-200, *Active Duty Enlisted Administrative Separations*
(Dec. 19, 2016) ................................................................................................................................4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUCAS CALIXTO, *et al*., | |
| Plaintiffs, | |
| vs. | Civil Action No. 18-1551 (ESH) |
| DEPARTMENT OF THE ARMY, *et al*., | |
| Defendants. | |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

Pursuant to the Court's Order entered on May 24, 2019 (ECF No. 96), Defendants the

Department of the Army ("Army") and the Secretary of the Army Dr. Mark T. Esper

(collectively, "Defendants"), by and through counsel, respectfully submit this sur-reply

memorandum in opposition to Plaintiffs' renewed motion for class certification and appointment

of class counsel (hereinafter, "Motion for Class Certification") (ECF No. 62).

## I.   INTRODUCTION

MAVNIs,[1] whether they are DEP recuits or DTP recruits, are processed for separation for

non-MSSD reasons in the exact same manner as every other DEP and DTP in the Army,

regardless of the recruit's mode of accession into the Army.  The procedures for DEPs and DTPs

are meaningfully different because DEPs, who are assigned only to USAREC, are subject only to

USAREC Regulation 601-210, *Enlistment and Accessions Processing* (July 20, 2018) (Reference

---

[1] This memorandum utilizes the following acronyms that have been frequently used throughout
this litigation and defined in prior memoranda:  Military Accessions Vital to the National Interest
("MAVNI"), Delayed Entry Program ("DEP"), Delayed Training Program ("DTP"), Military
Service Suitability Determination ("MSSD"), United States Army Recruiting Command
("USAREC"), United States Army Reserve Command ("USARC"), and Army Regulation ("AR"
followed by the regulation number).

1) and do not fall under the provisions of AR 135-178, *Army National Guard and Reserve Enlisted Administrative Separations* (Nov. 7, 2017) (Reference 2), which sets forth the enlisted administrative separation procedures for the Army Reserve.  DTPs, who are assigned to both USAREC and USARC, are subject to the requirements of both USAREC Regulation 601-210 and AR 135-178.

DTPs discharged from USARC for non-MSSD reasons under AR 135-178 are discharged on any number of bases and are therefore subject to the specific pre-notification procedures and requirements of the specific provision relative to the reason for their discharge.  The substance of the required discharge procedures vary significantly from one basis to another, from the requirement for a determination that a pregnant soldier was pregnant at the time of enlistment or became pregnant after enlistment (AR 135-178 ¶ 6-3 and ¶ 6-6); to whether a soldier's enlistment or reenlistment was fraudulent (*id*. ¶ 7-4); to a judgment call by a commander that a soldier will not develop to participate satisfactorily in further training (*id*. ¶ 9-2); to a commander's determination of whether a soldier's misconduct is a minor disciplinary infraction, a pattern of misconduct, or a serious offense (*id*. ¶ 11-1).

The Army processes discharges for all DEP and DTP recruits—to include MAVNIs—in accordance with the applicable regulations.  MAVNI DEPs and DTPs are processed for separation in exactly the same manner as non-MAVNI recruits, except MAVNIs subject to separation for an unfavorable MSSD, who are processed for separation in accordance with the Army's October 26, 2018 policy memorandum (ECF No. 50-1).

## II.  THE COURT'S MAY 24, 2019 ORDER

On May 24, 2019, the Court ordered Defendants to file a sur-reply regarding Plaintiff's motion for class certification.  Order (ECF No. 96).  The Court ordered that the sur-reply be no

more than 10 pages and address the following for proposed sub-class $2^2$ (*i.e.*, putative class members discharged for non-MSSD reasons):

> 1.  Defendants shall identify the specific regulations that defendants allege apply to discharges of DTPs and DEPs, and the specific ways in which the substance of the required discharge procedures for each group differ, if at all.
>
> a.  If Defendants argue that the discharge procedures meaningfully differ for DTPs and DEPs, defendants should address, for example, why a DEP soldier who under AR 135-178 ¶ 14-7 appears to be entitled to the notification procedure outlined in chapter 3, sec. II of AR 135-178 should not be in the same class as a DTP soldier discharged for entry-level performance and conduct, who under AR 135-178 ¶ 8-4 also appears to be entitled to the notification procedure outline in chapter 3, sec. II of AR 135-178.
>
> 2.  Since defendants argue that differences among putative class members in the reason for their discharge should prevent class certification (Defs.' Opp. to Mot. for Class Cert. at 26-27, ECF No. 89), defendants shall identify the specific regulations that defendants allege apply to discharges of MAVNI soldiers for *each* "basis for discharge" category listed on ECF No. 27-2, and the specific ways in which the substance of the required discharge procedures differ for each discharge category, if at all.
>
> 3.  Is it Defendants' position that each MAVNI soldier discharged for non-MSSD reasons, including but not limited to those listed on ECF No. 27-2, received the procedures required by the applicable regulations?

*Id*. (emphasis in original).

## III.  ARGUMENT

USAREC Regulation 601-210 applies to discharges of all DTPs and DEPs,[3] including

MAVNIs, who do not have an unfavorable MSSD and will not be subject to the Army's October

26 policy memorandum.

---

[2] Plaintiffs' proposed sub-class 2 includes recruits who do not have an unfavorable MSSD and will not be subject to the procedures outlined in the October 26 policy memorandum.  ECF No. 62 at 3-4.

[3] This regulation applies to **all** DEP and DTP recruits, not just MAVNIs.  Plaintiffs have argued in this litigation that Defendants are discharging MAVNIs under these procedures for discriminatory reasons, *i.e.*, *because they are MAVNIs*.  These procedures, however, apply to all DEPs and DTPs, regardless of their mode of accession into the Army.

Army Regulation 601-210, *Regular Army and Reserve Components Enlistment Program* (Aug. 31, 2016) (Reference 3), Chapter 5, Section VII, Paragraph 5-28.a., authorizes the Commanding General ("CG") of USAREC "to—(1) Organize and administer the Army Reserve Control Group (DEP) to which enlistees will be assigned."  Paragraph 5-29.b. identifies the recruiting battalion commander as the delegated authority to separate DEP enlistees as directed by the Commanding General of USAREC or the Deputy Chief of Staff, G-1 ("DCS, G-1").  "In addition, recruiting battalion commanders may void enlistments according to AR 635-200 [*Active Duty Enlisted Administrative Separations*] or AR 135-178, when appropriate."  *Id*.

Pursuant to the authority of Army Regulation 135-178, ¶ 1-11, the Commanding General of USAREC may order DEP and DTP separations prior to the expiration of their service obligation.  *Id*. ¶ 1- 11.b.(6).  Under the same authority, the Commanding General of USAREC may delegate to the commander of a U.S. Army recruiting battalion separation authority for DEP, Reserve DEP, and DTP members.  A recruiting battalion commander may also void enlistments of soldiers under his jurisdiction.  *Id*.

In accordance with these authorities, USAREC Headquarters issued USAREC Regulation 601-210, Appendix I, which "outlines procedures for processing DEP/DTP/DS [Delayed Status] separations after the initial Oath of Enlistment."  *Id*. Appx. I ¶ I-1.  USAREC Regulation 601-210 is thus the controlling regulation and authority governing processing of all DEP and DTP discharges from USAREC for non-MSSD reasons, whether the DEP or DTP recruit assessed through the MAVNI program or not.

**1.  All DEPs and DTPs—including MAVNIs—are Processed for Separation from USAREC In Accordance With USAREC Regulation 601-210, Appendix I.**

Requests for separation from the DEP or DTP are approved for valid reasons identified in AR 601-210 and AR 135-178, and fall into three broad categories:  (1) the result of a request

4

from a member of the DEP or DTP; (2) the discovery of an erroneous or fraudulent enlistment; or (3) medical disqualifications. *Id.* ¶ I-2. From these three broad categories, USAREC Regulation 601-210 contemplates at least sixteen specific bases for separation and an additional "other" basis. USAREC Reg. 601-210, Appx. I, Table I-1. Each basis requires specific documentation and sometimes requires different separation procedures. *See id.*

The procedures for separating DEPs and DTPs from USAREC for one of the sixteen disqualifying reasons are set forth in USAREC Regulation 601-210, Appendix I, ¶ I-4. When a valid reason exists to separate a DEP or DTP from USAREC under AR 135-178 (as identified in Tables I-1 and I-2), USAREC initiates a separation request using USAREC Form ("UF") 601-210.21 (example provided as Exhibit A). The UF 601-210.21 must be signed by the DEP/DTP, but if the DEP/DTP is unavailable or refuses to sign, the command is directed to "write 'unavailable for signature' or 'refuses to sign' in the remarks section of the form." USAREC Reg. 601-210, Appx. I, ¶ I-4.a.(1). According to the regulation, Battalion Operations ("Bn Ops") "will cancel the [training] reservation" and "will publish appropriate separation orders within 14 days." *Id.* ¶ I-4.a.(2)-(3). The regulation further clarifies that this provision applies specifically to DEPs/DTPs: "[w]hen a FS [Future Soldier] enlists into DEP/DTP, . . . [t]he [Battalion] publishes the discharge order within 14 days of the cancellation of the reservation." *Id.* ¶ I-4.c.

In the case of a DEP, who is assigned solely to USAREC, the USAREC discharge order issued in accordance with USAREC Regulation 601-210, Appendix I, cancels their enlistment contract, removes them from the DEP, and removes them from USAREC.

**1.a.  Once Their Training Reservations are Revoked Via USAREC Orders, DTPs are Processed for Discharge from the USARC In Accordance With AR 135-178**

Once USAREC issues its discharge order to a DTP (thereby cancelling the DTP's reservation for initial entry training), the DTP's separation action is forwarded to the United

States Army Reserve (USAR) Troop Program Unit (TPU)[4] for further separation processing. The unit follows the provisions of AR 135-178 for the particular basis of separation the recruit is subject to.  There is no specific reference to the "DTP" in AR 135-178, but because DTPs are assigned to the USAR, the USAR utilizes the separation procedures of the specific provisions of AR 135-178 that applied to the individual being processed for discharge.

While each reason for discharge follows the notification procedure in AR 135-178, Chapter 3, Section II (provided an under other than honorable conditions discharge is not authorized), the required discharge procedures and requirements are significantly different, depending on the reason for discharge.  In other words, there are significant differences in the pre-notification procedures and requirements for each chapter of AR 135-178.  To determine if a discharge was processed in accordance with regulation and therefore lawful, any review would have to include assessment of the propriety and lawfulness of the basis for discharge, the pre-notification procedural requirements (including counseling and rehabilitative efforts)[5], the notification requirements, and whether the proper separation authority took action.

The following chart identifies the reason for discharge and citations to AR 135-178 setting out extensive pre-notification procedures and requirements for each basis for discharge.

\* \* \*

---

[4] The Troop Program Unit is the DTP's assigned unit in the Army Reserve.

[5] "Counseling and rehabilitative efforts are a prerequisite to initiation of separation proceedings only as far as expressly set forth under the specific requirements for the separation.  An alleged or established inadequacy in previous rehabilitation efforts does not bar separation.  AR 135-178, ¶2-4.

| Reason for Discharge | Pre-Chapter 3, Section II Notification Procedures |
|---|---|
| Pregnancy | AR 135-178, ¶ 6-3, recruit's voluntary request for discharge; ¶ 6-6, involuntary – not medically qualified |
| Failure to Meet Medical Procurement Standards | AR 135-178, ¶ 6-6.a-c. – requirements for soldiers not medically qualified under procurement medical fitness standards |
| Fraudulent Enlistment | AR 135-178, ¶ 7-4.b.(1) – first test for establishing fraudulent enlistment; ¶ 7-4.b.(2) – second test for fraud |
| Entry Level Performance and Conduct | AR 135-178, ¶ 8-1; Counseling (¶ 2-4, ¶ 8-2) |
| Unsatisfactory Performance | AR 135-178, ¶ 9-2; Counseling (¶ 2-4, ¶ 9-3) |
| Misconduct | AR 135-178, ¶ 11; Counseling (¶ 2-4, ¶ 11-5) |
| Other Reasons | AR 135-178, ¶ 14 |
| Failure to Meet Army Body Composition Standards | AR 135-178, ¶ 15-2; Counseling (¶ 2-4, ¶ 15-3) |

For example, for a soldier who fails to meet medical procurement standards, the Army is required to follow the pre-notification procedures outlined in AR 135-178, ¶ 6-6.  The Army must obtain a medical finding from the staff surgeon that the "Soldier has a medical condition that –

(a)  Would have permanently disqualified them from entry into the Army had it been detected at the time of enlistment; and
(b)  Does not qualify them from retention under the provisions of AR 40-501."[6]

*Id*.

In contrast to the few pre-notification requirements in ¶ 6-6, a separation for fraudulent enlistment requires extensive pre-notification actions.  In accordance with AR 135-178, ¶ 7-4 (fraudulent enlistments or reenlistments), a soldier may be separated "on the basis of procurement of a fraudulent enlistment or reenlistment through any deliberate material misrepresentation, or concealment of which, if known at the itme of the enlistment or reenlistment migh have resulted in rejection."  *Id*.  To establish fraud, the Army must apply one

---

[6] AR 40-501, *Standards of Medical Fitness* (June 14, 2017), is the controlling regulation for medical fitness standards for induction, enlistment, appointment, and retention in the Army.

of two tests, approprietely entitled the "first test" or "second test" after completeing fact-finding.  *Id*.  These tests are used to determine if the enlistment or reenlistment was, in fact, fraudulent.  The Army command determines if the evidence found substantiates a fraudulent enlistment.  If the information found does not amount to a disqualification, if the defect is no longer present, or if the defect is waivable (and a waiver has been obtained by the appropriate authority), then there is not a fraudulent enlistment and separation would not be authorized.

On the other hand, if after fact-finding and application of one of the two tests, the Army finds the enlistment was fraudulent, then (and only then) may it initiate separation under AR 135-178, ¶ 7-4.  These extensive requirements and pre-notification procedures are just a couple of examples of the significant differences in the procedures required by each chapter of AR 135-178.  A legal sufficiency review of a discharge would therefore require assessment of the propriety and lawfulness of the basis for discharge, the pre-notification procedural requirements (including counseling and rehabilitation requirements, if applicable), notification requirements, and whether the proper separation authority took action.

These requirements (and the other requirements for specific discharges set forth in AR 135-178) underscore the specific ways in which the substance of the required discharge procedures differ for each discharge category.

**2.  USAREC Regulation 601-210 Applies to MAVNIs in the DEP and DTP; AR 135-178 Applies Only to MAVNIs in the DTP**

The specific ways in which the substance of the required discharge procedures differ for each discharge category are too extensive to fully identify in this brief, but the chart below identifies the reasons for discharge listed in ECF No. 27-2, the regulations that apply to each specific basis for discharge, and the paragraphs that contain the specific ways in which the substance of the required discharge procedures differ for each discharge listed in ECF No. 27-2.

| Reason for Discharge | Applicable Regulation/Paragraph |
|---|---|
| Apathy/Personal Problem | AR 135-178, Chapter 6 (Convenience of the Government – dependency or hardship), ¶ 14-5; USAREC Reg. 601-210, Appx. I ¶ I-4 |
| Declined to Ship | USAREC Reg. Appx. I ¶ I-11, ¶ I-4 |
| Refuse to Enlist | USAREC Reg. Appx. I ¶ I-7, ¶ I-4 |
| Failed Medical/Physical Procurement Standards | AR 135-178 ¶ 6-6; USAREC Reg. Appx. I ¶ I-4, ¶ I-11 |
| Entry Level Performance and Conduct | AR 135-178, Chapter 11; USAREC Reg. Appx. I ¶ I-11 |
| Pregnancy | AR 135-178 ¶ 6-3, ¶ 14-5; USAREC Reg. Appx. I ¶ I-11 |
| Education | AR 135-178, Chapter 14; USAREC Reg. Appx. I ¶ I-11 |
| Police Record/Charge After DEP Enlistment | AR 135-178, Chapter 11, 14 |
| Moral/Legal Reason | AR 135-178, Chapter 9, 11, 14 |
| Fraudulent Enlistment | AR 135-178 ¶ 7-4; USAREC Reg. Appx. I |

**3. Each MAVNI Discharged for Non-MSSD Reasons, Including but Not Limited to Those Listed on ECF No. 27-2, Received the Procedures Required by the Applicable Regulations.**

The Army processes and did process discharges for all DEP and DTP recruits—to include MAVNIs—in accordance with the applicable regulations.  MAVNI DEPs and DTPs are processed for separation in exactly the same manner as non-MAVNI recruits, except MAVNIs subject to separation for an unfavorable MSSD.  If an individual MAVNI contends that the Army failed to properly follow discharge procedures and wishes to contest her discharge on any basis, the appropriate authority to review the alleged deficiency is the Army Review Boards Agency, including the Army Discharge Review Board ("ADRB") and the Army Board for the Correction of Military Records ("ABCMR").

For example, named plaintiff Xing Lu[7] sought ABCMR review of her discharge and was reinstated in the Army.  Plaintiff Lu enlisted as a recruit in the DEP and did not attend IET for a

---

[7] Plainitff Lu is a DEP recruit and the only named plaintiff in the DEP.  2d Am. Compl. (ECF No. 61) ¶¶ 110-114.

period of over two years.  Therefore, due to two-year statutory requirement,[8] she had to be separated from the DEP.  Plaintiff Lu should have been included in a group petition to the ABCMR seeking to allow DEP recruits who had already been in the Army beyond the two-year period to continue in the DEP.  The ABCMR granted relief to the group by correcting their military records to move the enlistment date a year forward, allowing them to serve beyond the two-year mark.  Due to an error, Plaintiff Lu was not included in the group.  Plaintiff Lu sought reinstatement through the Army and filed a petition with the ABCMR seeking reinstatement and approval for continued service in the DEP.  Her petition was granted on January 15, 2019, correcting her enlistment date from January 19, 2016 to January 19, 2017.  As a result, Plaintiff Lu was found eligible to continue to serve in the DEP.  *See* ECF No. 89-2 (Ex. A to St. Clair Dec.) (ABCMR documents pertaing to Xing Lu).[9]

As Plaintiff Lu's application to the ABCMR demonstrates, the Army has an existing administrative procedure for addressing claims for wrongful or erroneous discharge for all servicemembers discharged from the Army, regardless of their mode of accession.

## CONCLUSION

For the reasons stated above and in Defendants' opposition memorandum (ECF No. 89), Defendants respectfully request that the Court deny Plaintiff's Motion for Class Certification.

Dated:  June 9, 2019                    Respectfully submitted,

                                        JESSIE K. LIU, D.C. Bar # 472845
                                        United States Attorney

---

[8] In accordance with 10 U.S.C. § 513, members of the DEP are required to attend Initial Entry Training ("IET") and enter the active duty Army within two years from the time they contract to serve in the Army via the DEP.

[9] On January 22, 2019, the Army issued a favorable MSSD for Specialist Xing Lu and she shipped to basic training on May 30, 2019.

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

*Of Counsel:*

BY: */s/ Roberto C. Martens, Jr.*

JEREMY A. HAUGH
Major, U.S. Army
U.S. Army Legal Services Agency
Litigation Division
9275 Gunston Road
Fort Belvoir, VA 22060

ROBERTO C. MARTENS, JR.
Special Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2574
roberto.martens@usdoj.gov

JOSEPH G. NOSSE
Major, U.S. Army
U.S. Army Legal Services Agency
Litigation Division
9275 Gunston Road
Fort Belvoir, VA 22060

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 9th day of June 2019, I served upon counsel for Plaintiffs the foregoing Defendants' sur-reply memorandum in opposition to Plaintiffs' motion for class certification by filing said document using the Court's Electronic Case Filing System.

Dated:  June 9, 2019

*/s/ Roberto C. Martens, Jr.*
ROBERTO C. MARTENS, JR.
Special Assistant United States Attorney

*Attorney for Defendants*

# SEPARATION REQUEST

(For use of this form see USAREC Reg 601-210)

## SECTION I - TYPE OF SEPARATION

| 1. Check one box only: | 2. Check one box only: |
|---|---|
| ☐ DISCRETIONARY | ☐ AC FS |
| ☐ NONDISCRETIONARY | ☐ RC FS |
| | ☐ PRIOR SERVICE |
| | ☐ DAYS OF SERVICE |

## SECTION II - FS DATA

3. NAME  *(Last, first, MI)*:

4. TELEPHONE NUMBER  *(Include area code)* :

DEP/DTP date *(YYMMDD)*

6. SHIP DATE OR PADD  *(YYMMDD)*:

7. RECRUITER RSID:

8. AFQT AND EDUCATION:

9. UNIT:

a. Name:

b. Telephone number  *(Include area code)* :

c. Street address:

d. City, state, and ZIP Code:

## SECTION III - REASON FOR SEPARATION

10. REASON  *(Match cancellation code)* (Check one)  :

| | | |
|---|---|---|
| ☐ Civilian Employment (CE) | ☐ NAC Pending (NP) | ☐ Pregnancy (PG) |
| ☐ Declined Enlistment (DE) | ☐ No Show (NS) | ☐ Positive HIV (PH) |
| ☐ Death (DT) | ☐ Discharge Prior to IET (USAR) (DP) | ☐ Permanent Medical Condition (PM) |
| ☐ Continuing Education (ED) | ☐ Declined to Ship (USAR) (DS) | ☐ Police Record (PR) |
| ☐ Fraudulent Enlistment (FE) | ☐ Joined Other Component (USAR) (JC) | ☐ Positive THC (PT) |
| ☐ Fail to Graduate (FG) | ☐ Unit Request (USAR) (UR) | ☐ ROTC or SMP (RS) |
| ☐ Hardship (HP) | ☐ Positive Alcohol Test (PA) | ☐ Weight Standard (WS) |
| | ☐ Positive Cocaine Test (PC) | ☐ Other *(Explain in remarks)* |

11. REMARKS:

## SECTION IV - VERIFICATION

12. NAME AND SIGNATURE OF FS (AC and RC):

13. DATE  *(YYMMDD)*:

14. NAME, GRADE AND FSTL (Future Soldier Team Leader)

15. DATE  *(YYMMDD)*:

16. NAME, GRADE, AND SIGNATURE OF RECRUITING CENTER LEADER:

17. DATE  *(YYMMDD)*:

18. I have confirmed the reason for separation identified above.

a. NAME, GRADE, AND SIGNATURE OF RECRUITING COMPANY COMMANDER:

b. DATE  *(YYMMDD)*:

19. NAME, GRADE, AND SIGNATURE OF RECRUITING BATTALION COMMANDER:

20. DATE  *(YYMMDD)*:

21. NAME, GRADE, AND SIGNATURE OF GUIDANCE COUNSELOR:

22. DATE  *(YYMMDD)*:

**EX. A**

**USAREC Regulation 601-210**

Personnel Procurement

# Enlistment & Accessions Processing

Headquarters
United States Army Recruiting Command
Fort Knox, Kentucky
20 July 2018

# UNCLASSIFIED

# *SUMMARY of CHANGE*

USAREC Reg 601-210

Enlistment and Accessions Processing. This is the version 7 Administrative Revision (update) dated 20 July 2018.

o   5-1.4l(3) - change to "Complete all Tier Evaluation Workflows submitted by recruiting personnel for all;
    (a) Applicants with education credentials from DoD Education Code "TE" schools in Headquarters Support System/Force Structure and Zip Code Realignment System (HSS/FAZR).
    (b) Recruiter manually entered schools processing for enlistment."

o   5-1.4l(4) - change to "Conduct further evaluations for programs and/or applicants identified as requiring further review for verification of education credentials."

o   5-1.4l(5) - change to "Update and maintain school detail information within HSS/FAZR School sections."

o   5-1.4l(6) - change to "Serves as the primary evaluating official for all submitted Tier Evaluation workflows."

o   7-2.3e - move to App D-2d(h) "Law violation mismatch: Listing all law violations in RZ, however not listing violation(s) correctly in corresponding RZ questions."

o   7-2.3f - move to App D-2d(i) "Drug use mismatch: Listing drug use in RZ, however not listing drug use correctly in corresponding RZ questions."

o   7-2.4a - add "Any appointing PPR official may authorize, through verbal or email confirmation, an authorized individual to conduct a PPR prior to initiating the UF 601-210.35. Verbal authorization must be given individually, "blanket orders" are not authorized."

o   7-4.2b complete sentence add "committed an RM.  Track all alleged and reported RMs using UF 601-210.31 (Recruiting Misconduct Investigation Log)."

o   Appendix A Reference; Section II Related Publications - delete "UF 601-210.03(OP), Request Regular Army Enlistment (DA4187 Personnel Actions)."

o   App D-2d3(j) – add "The BN Ops will ensure corrective action(s) were completed on the fourth (4th) processing day."

o   App G-6d(2) – change "180 days" to "120 days."

o   App G-7a – change "180 days" to "120 days."

o   App G-12c(2) – delete "CG shops without an onsite SI will adhere to the following procedures."

o   App G-12f – delete "All applicants requiring one of the aforementioned will follow the procedures"

o   App G-12g – delete " Responsibilities"

o   App H5 – add "NOTE: If the reno goes beyond 365 days, the reno may be sent by Policy to USARC G1 for additional guidance."

o   App I-3a(2) – delete "Bn Cdrs will approve or disapprove the request within their authority."

o   App M-10c(3) – add "Administrative – RE-code only."

o   App N – completely revised adding electronic Tier Evaluation Workflow process.

o   App P-4d – delete "Only RA reservation holds applicants authorized by EEPD, ROC may remain on these tabs overnight."

o   App Q-5 – revised add codes.

o   USAREC Form 601-210.15 Army Preprocessing Drug Screening Acknowledgment and Consent was added.

o   USAREC Form 601-210.16 Army Recruiting Station Drug Screening/Test Log was added

Headquarters
United States Army Recruiting Command
1307 3rd Avenue
Fort Knox, Kentucky 40121-2725
20 July 2018

*USAREC Regulation 601-210

Effective: 20 July 2018

Personnel Procurement

## Enlistment & Accessions Processing

For the Commander: For the Commander:

ISAAC O. JOHNSON
Colonel, GS, Chief of Staff

*Official:*

*Ronnie L. Creech*

Ronnie L Creech
*Assistant Chief of Staff, CIO/G6*

**History.** This publication is a major revision dated 20 July 2018.

**Summary.** This regulation establishes the policies and procedures for processing applicants for enlistment into the U.S. Army.

**Applicability.** This regulation applies to all military and civilian personnel assigned, attached, or detailed to the U.S. Army Recruiting Command. Specific and or paragraphs of this regulation that prescribe specific actions or conduct are subject to possible administrative of punitive action. Violations of these provisions may subject Soldiers to disciplinary action under the Uniform Code of Military Justice and civilian employees to disciplinary or adverse action under Federal law and regulations.

**Proponent and exception authority.** The proponent of this regulation is the Assistant Chief of Staff, G3. The proponent has the authority to approve exceptions to this regulation that are consistent with controlling law and regulation.

**Army management control process.** This regulation contains management control provisions in accordance with AR 11-2, but does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation is prohibited.

**Relation to USAREC Reg 10-1.** This publication establishes policies and procedures regarding the Enlistment, Accessions, and Processing procedures according to UR 10-1, para 3-14.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQ USAREC, ATTN: RCRO-EEP, 1307 3rd Avenue, Fort Knox, KY 40121-2725.

**Distribution.** This publication is available in electronic media only and is intended for command distribution levels A and Y

*This regulation supersedes USAREC Regulation 601-21 0(V6), dated 20 July 2018

## UNCLASSIFIED

**Contents** (Listed by paragraph and page number)

Purpose • 1, *page 1*
References • 2, *page1*
Explanation of abbreviations and terms •3, *page 1*
Policy • 4, page 1
Responsibilities for Recruiting personnel • 5, *page1*
Procedures • 6, *page 6*
Recruiting Standards Program • 7, *page 6*

**Appendixes**

*A.*    References, *page 17*
•    DoD policy that regulates Accessions into the military
•    Army Regulations that prescribe Enlistment and Accessions
•    USMEPCOM Regulations that impact processing
•    USAREC Regulations from other proponents that impact enlistment
•    Forms used in enlistment, accessions and processing
•    System User Guides that describe system processes (RZ, LZ, GCRc, REQUEST, Live Scan, MIRS)
     (copy this link into your browser to access User Guides:  https://span.usarec.army.mil/sites/HQ/
     Publications-Library/SamplesandCertificates/Forms/AllItems.aspx )


*B.*    Recruit Quota System (REQUEST) Procedures, *page 22*
•    Use REQUEST users' guide as primary reference
•    Abuses of the system
•    Alternate procedures


*C.*    Live Scan, *page 23*
•    Use Live Scan User Guide  (LSUG) as primary reference (LSUG-google)
•    Requirements for applicant processing
•    Procedures and responsibilities


*D.*    Quality Control (QC) Procedures and Scheduling of Applicants, *page 26*
•    Use GCRc User Manual as primary reference. (GCRc UM-google)
•    Procedures (When/Type)
•    Projection roster development
•    Scheduling of applicants
•    OPI process


*E.*    Procedures for Enlistment into the Delayed Entry Program/Delayed Training Program/Delayed Status
       DEP/DTP/DS), *page 28*
•    MEPS DAT requirements
•    General procedures for enlistment into the DEP/DTP
•    REQUEST reservations
•    QNE procedures
•    GC processes


*F.*    Procedures for Enlisting Prior Service and Glossary Non-Prior Service (Regular Army),  *page 30*
•    Procedures unique to PS and GNPS
•    Disenrolled USMA (West Point) Ordered to AD
•    ROTC Ordered to AD
•    ROTC Requesting AD
•    WOC Processing

- Sister Service Enlistment
- Conditional Releases (DD Form 368)

**G.** Applicant Background Screening (Technical Check and National Agency Check and Local Check), *page 36*
- Checks or screenings required for applicant conduct qualifications
- Procedures to execute fingerprinting and investigation submission
- Security Interview

**H.** Change in Active Duty Ship Date and DEP/DTP Renegotiation (Active Duty and Army Reserve), *page 43*
- Reno approval authority
- Procedures for conduct of change or Reno
- Reno codes

**I.** Active and Reserve Component Separations, *page 45*
- Separation request routing
- Separation procedures
- Procedures after Oath of Enlistment
- Positive DAT separation
- No -show shipper
- Standards for loss forgiveness
- Cancellation codes
- AR Entry Level Separations

**J.** Army Reserve Specific Processing, *page 55*
- Alternate Training Program
- Processing AR applicants with English as a Second Language (ESL)
- AR PS Non-Duty Military Occupational Specialty Qualifications (DMOSQ) Acceptance Policy
- AR Released from Active Duty (REFRAD) for Temporary Medical Reasons
- Vacancies in the AR
- Reservation request AR AMEDD officers
- SMP Processing flowchart

**K.** Army Options and Incentives, *page 61*
- ESL (RA)
- OCS
- WOFT
- Band
- ACASP
- FLRI (RA and AR)
- Partnership for Youth Success (PaYS)
- 14 Month HS Senior

**L.** Overseas Processing, *page 67*
- Europe, Asia, Pacific

**M.** Waiver Procedures, *page 69*
- Waiver procedures
- Admin waivers
- Conduct waivers

- • Medical waivers
- • Supporting documents
- • OCS & WOFT waivers
- • USAREC level reviews

**N.**  Educational Credentialing, *page 74*
- • Education Evaluation Worksheet
- • HS diploma producing programs - TIER 1
- • Alternate HS diploma credentials - TIER 2
- • Less than an HS diploma credentials - TIER 3
- • Credential Laundering

**O.**  Future Soldier Management, *page 84*
- • Orientation
- • FS Center
- • AR Sponsorship
- • Sustainment
- • Follow-up
- • Restrictions on FS Activities
- • Training
- • FSTP Functions

**P.**  DEP/DTP-Out Procedures, *page 92*
- • General DEP/DTP out procedures
- • Courtesy Shippers
- • Hometown Shippers (Active Duty & Army Reserve)

**Q.**  Required USMEPCOM Daily Reports and GCRc End of Day Report Records, *page 95*

**R.**  Government Meals and Lodging Procedures, *page 96*

**S.**  Electronic Records Management, *page 98*

**T.**  US Army Recruiting Command Liaisons at US Army Reception Battalions, *page 98*
- • Responsibilities
- • Duties of USAREC Liaisons
- • Flight Physicals
- • Records Requests
- • US Army FLRI and ESL Liaison
- • Physical Security
- • Personnel and Administrative Functions
- • Logistical and Communications Support

**U.**  Occupational Physical Assessment Test, *page 101*
- • General
- • Policy
- • FS Tracking Log
- • OPAT Renegotiation
- • OPAT Loss/Cancellation
- • OPAT Discharge Orders SDP

- PS/GNPS
- 6BDE DEP Trips and Remote Alaska
- FLRI and ESL
- Options 4 and 40 and ACASP
- MAVNI
- Officers and SMP
- Training and Other Resources

*V.*   Temporary Reservation Procedures, *page 104*
- Purpose
- General
- Recruiter Procedures
- GC Procedures

**Figures List**

Figure 1 • USAREC Recruiting Misconduct Flow chart, *page 16*

Figure J-1 • Army Reserve ROTC SMP Processing Flowchart, *page 60*

Figure K-1 • OCS & WOFT Selection Process, *page 66*

Figure N-1 • Processing of Education Documents, *page 81*

Figure N-2 • Education Matrix, *page 82-83*

Figure O-1 • FSTP Decision Matrix, *page 88*

**Tables List**

Table F-1 • Army Reception Battalion list, *page 36*

Table I-1 • Basis for Separation and required documentation, *page 50-51*

Table I-2 • Authorities for Approval/Disapproval of DEP/DTP Separation Requests, *page 52*

Table I-3 • Separation Authority, *page 53*

Table I-4 • Separation Order Formats Overview, *page 54*

Table K-1 • ESL Calculation, *page 61*

Table O-1 • Future Soldier Asset Inventory (FSAI), *page 87*

Table O-2 • Future Soldier Status Code Examples, *page 91*

Table P-2 • USAREC Liaisons, *page 95*

**Glossary**

-This page left intentionally blank-

## 1. Purpose

a. Establish policies, responsibilities, and procedures for processing applicants for enlistment and accession in the Army and ensuring accuracy and completeness of enlistment records.

b. Contains instructions to determine the eligibility and suitability for enlistment processing of Regular Army (RA) and Army Reserve (AR) applicants.

c. Provides ready references for functions and processes performed by assigned United States Army Recruiting Command (USAREC) recruiting personnel.

d. In the case of conflict between this regulation and other USAREC regulations or directives that address applicant processing procedures contact G3, Enlistment Eligibility Processing Division (EEPD), and Policy Branch.

e. Contains supplementary information to AR 601-210.

## 2. References

For required and related publications and prescribed and referenced forms, see appendix A.

## 3. Explanation of Abbreviations and Terms

The Glossary Sections I & II (Abbreviations and Terms) explain abbreviations and special terms used within this regulation.

## 4. Policy

a. This regulation establishes policies, responsibilities, and procedures for processing applicants for enlistment in the U.S. Army and quality control (QC) of enlistment records.

b. This regulation also establishes responsibilities and procedures for station commanders (SCs) and recruiters using the Future Soldier Remote Reservation Systems (FSR2S).

c. This regulation contains instructions for processing Regular Army (RA) and Army Reserve (AR) waiver applications to determine eligibility for enlistment.

d. This regulation will enable guidance counselors (GCs) to provide quality service to applicants processed through Military Entrance Processing Stations (MEPS). Efficient, responsive applicant processing promotes mission accomplishment and the smooth flow of information throughout the command.

e. This regulation provides ready references for functions performed by GCs.

f. In case of conflict between this regulation and other United States Army Recruiting Command (USAREC) regulations or directives that address GC procedures, call through channels to the G3, Enlistment Eligibility and Processing Division, Policy Branch.

## 5. Responsibilities for Recruiting Personnel

### 5-1.1 Purpose

This section establishes policies and procedures for assigned USAREC personnel in specified roles within the processing and operations functions to ensure the accuracy and completeness of enlistment records and legal enlistments. All Cdrs will ensure compliance within this regulation.

a. This regulation establishes policies, responsibilities, and procedures for processing applicants for enlistment in the U.S. Army and quality control (QC) of enlistment records.

b. This regulation also establishes responsibilities and procedures for station commanders (SCs) and recruiters using the Temporary Reservation System.

c. This regulation contains instructions for processing Regular Army (RA) and Army Reserve (AR) waiver applications to determine eligibility for enlistment.

d. This regulation will enable guidance counselors (GCs) to provide quality service to applicants processed through Military Entrance Processing Stations (MEPS). Efficient, responsive applicant processing promotes mission accomplishment and the smooth flow of information throughout the command.

e. This regulation provides ready references for functions performed by GCs.

f. In case of conflict between this regulation and other United States Army Recruiting Command (USAREC) regulations or directives that address GC procedures, call through channels to the G3, Enlistment Eligibility Processing Division, Policy Branch.

### 5-1.2 Policy

a. This regulation establishes policies for the performance of those GC duties which are mandatory elements in enlisting qualified men and women into the Army and provides procedures for the performance of other duties.

b. This regulation establishes policies for GC and operations functions and procedures.

c. GCs must thoroughly understand all phases of the recruiting cycle. They must be self-starters and display outstanding character traits, initiative, self-discipline, and integrity. They must be capable and persuasive communicators, not only with applicants, but also with recruiters and MEPS personnel. Under no circumstances will a relieved recruiter serve in an operations section or as a GC.

d. All workflow histories within the Army Recruiting Information Support System (ARISS), Guidance Counselor Resource Center (GCRc), and Recruiter/Leaders Zone (R/LZ) are considered for official use only and will not be released to anyone outside of USAREC.

e. Access to information that is a work product within the USAREC chain of command is restricted. Under no circumstances will an applicant be provided a copy of any workflow information. If an applicant requests the name of an approval authority they will only be given the position title such as commanding general or deputy commanding general. If an applicant or parent requests further explanation they will be referred to the company or battalion commander. Applicants or parents will not be referred to higher headquarters or provided with e-mail addresses or phone numbers of Headquarters, U.S. Army Recruiting Command (HQ USAREC) personnel.

### 5-1.3 Prerequisites for selection as GC and operations noncommissioned officer

a. Soldiers selected for assignment to guidance counselor and operations noncommissioned officer positions must meet the following criteria.

(1) Must have successfully completed the Station Commander Course.

(2) Must successfully complete the Guidance Counselor and Operations Course (GCOC) at the Recruiting and Retention College.

b. NCOs and DA Civilians assigned to SGC, GC, and operations NCO positions must possess the V7 additional skill identifier (ASI).

### 5-1.4 Duties and Responsibilities

a. The Assistant Chief of Staff, G3 will:

(1) Implement and administer this regulation and serve as the functional proponent of the Recruit Quota System (REQUEST).

(2) Clarify all conduct or waiver issues (EEPD, Waivers Branch).

(3) Process all exception to policy (ETP) requests for Joint Personnel Adjudication System (JPAS); Live Scan (LS) fingerprint (FP) results, Personnel Reliability Program (PRP) qualifications for applicable Military Occupational Specialties (MOS), top secret clearance issues and language ETP (EEPD, Background Screening Branch).

(4) Announce Special Mission board dates and board ready packet receipt cutoff dates for selection boards (Special Programs and Boards).

(5) Notify each Bde of applicants who are selected and non-selected (WOFT/OCS), upon approval of the USAREC level board results (Special Programs and Boards).

b. The Staff Judge Advocate (SJA) provides the command legal advice on Processing Procedure Reviews (PPR), and Recruiter Misconduct Investigations (see chapter 7 for additional duties and responsibilities).

c. The Office of the Inspector General (IG) is responsible for evaluating the regulation's effectiveness and for monitoring adherence to its policies and provisions during unit or staff IG inspections.

d. Director, Recruiting Standards Division (RSD) is responsible for the training, inspection and investigation of subordinate units and assigned personnel to verify adherence with all applicable laws, regulation or policies that regulate or direct recruiting activities through the Recruiting Standards Program (RSP) (see chapter 7 for additional duties and responsibilities) and will provide support, when requested by Cdrs, to assist or conduct investigations of adherence to applicable law, regulation, or policy that regulates or directs recruiting activities.

e. The Assistant Chief of Staff, G1, is responsible for managing the selection, screening, and assignment of recruiting personnel.

f. The Assistant Chief of Staff, G6, is responsible for the supervision, coordination, and administration of REQUEST operations.

g. The Commandant, Recruiting and Retention College is responsible for the institutional training of all recruiters, guidance counselors (GC), senior guidance counselors (SGC) and Cdrs/NCO advisors.

h. Brigade Cdrs will provide subordinate Bns the necessary training, management, operational oversight and command emphasis to ensure compliance with this regulation through the USAREC command inspection program (CIP). This includes, but is not limited to: mission assignment, budget allocation, personnel and equipment resourcing, leader training and certification, recruiter development, waiver and exceptions processing, renegotiation and loss processing, production management, policy establishment, marketing/advertising resourcing and oversight.

(1) Ensure that the Bde completes the end of day processing and shipping close-out with USAREC through EEPD, Recruiting Operations Center (ROC).

(2) Provide oversight of subordinate Bn's enforcement of RSP (See chapter 7 for additional duties and responsibilities).

i. Bde Educational Services Specialists (ESS)

(1) Serves as the Bde Cdr's functional expert on all matters relating to education enlistment eligibility and education credentials.

(2) In the absence of a Bn ESS, the Bde ESS serves as the evaluating official for tier evaluations as required and conducts Tier/DoD education code classification evaluations for those applicants whose school or program require further evaluation to determine enlistment Tier/DoD education code classification status.

j. Bn Cdrs are responsible for all enlistment and accession activities prescribed in this regulation and will:

(1) Retain overall responsibility for applicant processing.

(2) Provide the necessary training, management, and command emphasis to ensure compliance with this regulation.

(3) Establish policies and procedures for sustainment training of all assigned GCs and Bn Ops.

(4) Establish a projection cutoff time that will allow GCs sufficient time to perform a proper Quality Control (QC) based upon the supporting MEPS' Standard Operating Procedure (SOP).

(5) Appoint an Applicant Background Screening Manager (ABSM) as the primary point of contact for all applicant background screening (ABS) program issues and maintain overall responsibility for the ABS program in the Bn. Bn Cdrs will appoint, by duty memorandum, an Ops NCO or civilian and alternate to perform duties as the ABSM.

(6) Appoint a Special Missions program OIC or NCOIC to serve as a Special Mission liaison and point of contact for the unit.

(7) Appoint and conduct recommendation boards for OCS and WOFT IAW AR 601-210, OCS and WOFT enlistment programs, and this regulation.

(8) Execute the unit RSP (see chapter 7 for additional duties and responsibilities).

(9) Serves as approval authority for all tier evaluations in the Bn.

(10) Ensure suspected or recruiter misconduct (RM) allegations are reported IAW chapter 7 of this regulation.

(11) Initiate any required investigation if presented by a MEPS through the UMF 601-23-E concerning any alleged misconducts with the enlistment process.

(12) Ensure the conduct of the unit Volume II analysis and reporting to monitor for disqualification trends.

k. Bn S-3/Operations SGMs or NCOICs will:

(1) Monitor the Bn ABS program to ensure compliance with this regulation.

(2) Ensure that ABSM reviews the Clearance Status page daily in Report Management Zone (RMZ) to verify the previous day's submissions from the unit's supporting MEPS.

(3) Monitor Erroneous Enlistment Reports (EERs) (UF 601-210.06) to identify training base disqualification trends and report the data to the Bn XO, or Bn Cdr's designated action officer, for Volume II analysis and reporting.

(4) Report all 20 point increases on the Armed Services Vocational Aptitude Battery (ASVAB) to the Bn XO.

(5) Report all PPR and RM allegations to the responsible Bn XO.

(6) Ensure the daily completion of applicant enlistment record QC for all assigned MEPS.

(7) Inspect each supporting GC shop semi-annually using UF 601-210.05.

(8) Validate the completion of processing and enlistment record completeness for all courtesy shippers IAW appendix P-4.

(9) Maintain and update the Ship without Advanced Reservation (SWAR) Program as part of the Alternate

Training Program (ATP) IAW appendix J-2b.

(10) Track all qualified not enlisted (QNE) to identify trends and report the date to the Bn XO for training indicators.

l. Bn ESS will:

(1) Serve as the functional expert for interpretation and application of education qualification for the Bn.

(2) Conduct physical on-site visits and complete School Profile Evaluation (UF 601-210.40) as required for non-regionally accredited non-public schools, non-public adult or alternative education schools.

(3) Complete all Tier Evaluation Workflows submitted by recruiting personnel for all:

(a) Applicants with education credentials from DoD Education Code "TE" schools in Headquarters Support System/Force Structure and Zip Code Realignment System (HSS/FAZR).

(b) Recruiter manually entered schools processing for enlistment.

(4) Conduct further evaluations for programs and/or applicants identified as requiring further review for verification of education credentials.

(5) Update and maintain school detail information within HSS/FAZR School sections.

(6) Serves as the primary evaluating official for all submitted Tier Evaluation workflows.

**NOTE**: SGCs play a key role in enforcing policy. The purpose is to ensure every applicant receives "red-carpet treatment."

m. Senior Guidance Counselor (SGC) will:

(1) Ensure applicants meet basic eligibility for enlistment, specific options, MOS, and assignment prior to enlistment.

(2) Serve as the primary liaison between the Bn and the supporting MEPS.

(3) Provide the Bn a copy of the existing supporting MEPS SOP that reflects the respective MEPS' processing operations.

(4) Monitor and report all processing walk-ins, add-ons, and no-shows daily for negative trends IAW MEPCOM policies and local MEPS SOP and QNEs to the respective Bn Ops.

(5) Monitor Prior Service (PS) verification system as outlined in AR 601-210, chapter 3-26.

(6) Ensure the correct background screening path is submitted/accepted IAW appendix G.

(7) Supervise the operation of REQUEST in the GC shop.

(8) Report all 20 point increases and known confirmation test failures on the ASVAB to the Bn XO.

(9) Report suspected PPR and RM allegations to the responsible Bn XO.

(10) Validate the required documentation for Applicant and Shipper Meals and Lodging and required Shipper Reports IAW applicable MEPCOM policy or MEPS SOP IAW appendix R.

(11) Ensure the training of all GCs on all programs and options. SGC will conduct deliberate GC sustainment training and After Action Reviews (AARs) monthly.

(12) Conduct corrective training on all reported EERs (UF 601-210.06) and provide the Bn with a copy of training documentation.

(13) Inform the Bn Cdr when presented with information from MEPS through UMF 601-23-E concerning any alleged misconducts with the enlistment process.

(14) Verify daily that all processed applicants have a disposition code entered in GCRc Select -A-Person screen (see Q-5 for disposition codes).

(15) Ensure that the following MIRS reports are generated and reviewed daily during GC shop opening: MIRS Report 18 - Daily HIV Report (USMEPCOM PCN ZHM005), MIRS Report 9 - Daily DAT Report (USMEPCOM PCN ZHM002), MIRS Report 23 - Daily ENTNAC Submission Report (USMEPCOM PCN BIR), Daily UMF 727-E – MEPS Processing List.

(16) Validate the completion of processing and records build for all courtesy shippers IAW appendix P-4.

(17) Upload documents in the correct ERM folders.

**NOTE**: At no time will an applicant be enlisted in the DEP/DTP/DS with a "No-Go".

**NOTE**: All documents must be uploaded in the correct folder IAW associated drop-down menu. At NO TIME should any documents be uploaded in ERM that are not associated with the folder drop-down menu. For example: Hot Seat Checklist, blank documents, BDE/BN/Co/station questionnaires, 16 questions, etc. They are not authorized ERM documents. It is imperative that uploading is completed professionally and IAW current guidance.

n. GCs (RA, AR, or Civilian) will:

(1) Ensure applicants meet basic eligibility for enlistment, specific options, MOS, and assignment (if applicable) prior to enlistment.

(2) Validate that all enlistment records are complete and accurate IAW appendix D prior to enlistment.

(3) Review and verify temporary reservations in REQUEST for accuracy and qualifications before making permanent reservation and enlistment IAW appendix B and E. Ensure each applicant meets selected option prerequisites as established by DA Pam 611-21 (Smart Book), REQUEST qualifications, AR 601-210, and

applicable USAREC Messages, Fragmentary Orders and Flash Messages.

(4) QC the applicant record within 24 hours, or on the first duty day after the record populates the inbox before processing the record for MOS selection and enlistment.

(5) Report all suspected PPRs and/or RM allegations to the SGC.

(6) Deny enlistment to any applicant with incomplete or erroneous records or no LS results.  Inform applicants of any disqualification.

(7) Advise all applicants that their FPs are checked against Federal Bureau of Investigation (FBI). Concealed records may result in a discharge from the RA or AR.

(8) Ensure that the correct background screening path is submitted IAW appendix G.

(9) For PS applicants with remaining Military Service Obligation (MSO), forward a copy of the DD 4 series along with the DD 368 to the applicant's unit within 24 hours of the Oath of Enlistment IAW appendix F.

(10) Upload documents in the correct Electronic Records Management (ERM) folders.

o. Army Reception Battalion (RECBN) Liaisons will:

(1) Retrieve necessary system data to verify and resolve disqualifications (if possible).

(2) Provide feedback information to USAREC on invalid data and accession flow (see appendix T).

p. Company Cdrs will:

(1) Provide the necessary training, management, and command emphasis to ensure compliance with this regulation.

(2) Report all PPRs and RM allegations to the appropriate Bn reporting official.

(3) Review Volume II analysis and reporting on a monthly basis and implement measures to correct negative trends.

(4) Analyze FS Ship potential codes (green, amber, and red) in LZ tracking log to ensure proper management and follow-up.

(5) Process FSs' separation requests utilizing the Separation request (UF 601-201.21) IAW unit SOP or policy.

(6) Validate and sign the Advanced Rank Verification (UF 601-210.23) for FSs who qualify for advanced enlistment rank.

(7) Contact Bn Ops on ship day to validate all FS shippers and report no shows IAW unit SOP or policy.

(8) Validate that all FSs have signed a Recruit/Trainee Prohibited Activities Acknowledgement (DD 2983) by the first visit or meeting following enlistment and the form is uploaded in ERM and remains on file until the FS enters Active Duty (AD).

r. Station Commanders and recruiters will:

(1) Ensure applicants meet basic eligibility for enlistment prior to projecting for MEPS processing.

(2) Report all PPRs and RM allegations to the Company Cdr.

(3) Receive, verify, and upload all required original source documents in the applicant's ERM. Station commanders will ensure the documents are legible, are IAW AR 601-210, chapter 2, and have the required file number(s) and government seals (if applicable).

(a) Source documents will not be destroyed.

(b) Source documents will not be kept at the station or at a MEPS.

(c) Source documents will be given back to the applicant/FS immediately after verification and uploaded ERM.

(d) Source documents that have been "abandoned" and cannot be returned to the owner will be mailed to the issuing document's office by certified mail by the station commander or recruiter.

(4) FP all applicants that agree to enlist to initiate LS processing.

(5) Station commander or designated representative authorizes the LS for applicants.

(6) Ensure FPs on any applicant are not submitted solely to determine if the individual is morally qualified for enlistment. Recruiters will not conduct LS processing of FPs on themselves, family members (not processing for enlistment), other recruiters, anyone not pursuing enlistment in the RA or AR or any FS pending shipment for any reason.

(7) Review MOS qualifications with the applicant to verify qualification for the MOS before making a temporary reservation and not make a temporary reservation with known discrepancies or without the applicant physically present.

(8) Ensure a temporary reservation is not created until all source documents are obtained and verified IAW AR 601- 210, chapters 2 and 3 and uploaded in ERM.

(9) Inform the applicant that the temporary reservation is valid for only seven (7) days and is contingent upon the applicant qualifying for enlistment. The applicant must meet mental, medical, and conduct qualifications and any additional MOS requirements.

(10) Complete any required applicant waiver or suitability review IAW AR 601-210, chapter 4 before making a temporary reservation in REQUEST.

(11) Recruiters will project all applicants via RZ. Ensure that applicants' records projected for enlistment are complete and accurate with all supporting documents uploaded in ERM.

(12) Station commander or designated representative will conduct a complete QC validation for each applicant record prior to projection of the record for MEPS processing. The station commander, or designated representative, will place comments in the record through LZ in the station commander comments section verifying that the QC was conducted and that the record is prepared for MEPS processing.

(13) Ensure applicants are not transported to MEPS or lodging for the purpose of processing to enlist without the applicant's GCRc record in a 'Go' status and valid LS results returned.

(14) Ensure FS signs the DD 2983 NLT the first visit or meeting with the FS following enlistment.

(15) Review the LZ FS Tracking Log ensuring height, weight, ship potential codes, Occupational Physical Assessment Test (OPAT), remarks, and next and last actions are updated IAW unit SOP or policy.

(16) Station commander will complete an UF 601-210.23 on each FS qualifying for an advanced enlistment rank IAW AR 601-210, chapter 2-18 and forward to Company Cdr for digital signature.

(17) Ensure the FS receives an RPI 200, FS Welcome Kit.

(18) Ensure each FS signs UF 601-210.24 (US Army FS -Physical Training Program Statement) prior to each organized PT session.

(19) Conduct all required Leader Based Training with the FS (SHARP, Army Suicide Prevention and Resiliency) outlined on the G3 Programs IKROme site, under the FS Training Program (FSTP) tab.

(20) Validate the enlistment record prior to shipping of the FS.

(21) Disposition of enlistment records/source documents following enlistment in the DEP (Delayed Entry)/DTP (Delayed Training Program)/DS (Delayed Status):

(a) All enlistment records will be maintained in ERM.

(b) Documents received after enlistment/accession (HS diploma, driver's license/state identification, dependent verification, etc.) will be uploaded into the appropriate folder in ERM, and original source documents will be returned to the FS.

(22) Complete ELCT/ALCPT testing prior to a permanent reservation being made for those required to test.

(23) Station commander or designated representative completes the processing and records build for all courtesy shippers IAW appendix P-4.

(24) Notifies the applicable Troop Program Unit (TPU) when a new AR Soldier enlists. The recruiter schedules and physically escorts the new Soldier to the Reserve Center to meet in-processing personnel during a scheduled unit battle assembly.

(25) Execute all required DEP/DTP out procedures IAW appendix P.

NOTE: All documents must be uploaded in the correct folder IAW associated drop-down menu. At NO TIME should any documents be uploaded in ERM that are not associated with the folder drop-down menu. For example: Hot Seat Checklist, blank documents, BDE/BN/Co/station questionnaires, 16 questions, etc. They are not authorized ERM documents. It is imperative that uploading is completed professionally and IAW current guidance.

## 6. Procedures

Specific procedures of this regulation are contained in the appendices and figures that follow.

## 7. Recruiting Standards Program

### 7-1.1 Purpose
Prescribe responsibilities associated with the Recruiting Standards Program (RSP), policies, procedures, reporting, processing, investigating, and disposing of allegations of Processing Procedure Reviews (PPR) and Recruiter Misconduct (RM) within USAREC. The RSP ensures the integrity of the recruiting process within USAREC. RSP adherence eliminates systemic deficiencies in the recruiting process to prevent erroneous or fraudulent enlistments.

### 7-1.2 Policy and Procedure
a. All USAREC personnel will adhere to prescribed enlistment processing standards in order to eliminate recruiter misconduct (RM) that can lead to defective, erroneous or fraudulent enlistments.

b. Report all allegations of RM IAW chapter 7-4.2. Processing procedure reviews (PPRs) will be conducted IAW chapter 7-2.1.

c. Allegations of RM may also be reported directly to RSD HOTLINE 1-800-223-3735, extension 63001, or usarmy.knox.usarec.mbx.hq-rsd-improprieties@mail.mil.

d. USAREC Soldiers that commit an instance of RM as defined by chapter 7-3 may be subject to disciplinary or administrative action such as involuntary reassignment, separation, suspension or removal from recruiting duties,

termination of Special Duty Assignment Pay (SDAP), and withdrawal of the Recruiting Military Occupational Specialty (MOS) code. DACs who commit RMs may be subject to appropriate administrative actions as provided by Office of Personnel Management (OPM) regulations.

### 7-1.3 Additional Responsibilities

a. Director, RSD will:

(1) Provide oversight of the RSP and procedures.

(2) Provide oversight for the CG and DCG-O by validating subordinate units are enforcing and training the RSP through inspections.

(3) Develop and update information requirements and business practices that monitor the enlistment process for compliance with applicable policies and regulations.

(4) Coordinate with USAREC IG and Bde Recruiting Standards Teams (RST) to inspect the Bn's RSP as part of the Organization Inspection Program (OIP).

(5) Ensure RM allegations are investigated and reported to DA-G1 and Office of the Secretary of Defense (OSD) IAW DoD Instruction 1304.32, Enclosure 6, dated 06 March 2013 and Information Memo dated 19 August 2016.

(6) Provide training support to subordinate elements of the command on the RSP.

(7) Coordinate between USAREC and the US Army Criminal Investigation Command (USACIDC) for reports of investigation (ROI), if applicable.

(8) Analyze PPRs and RMs for systemic enlistment errors, trends and root causes and brief the command as required.

(9) Review ROI per current CG withhold policy for administrative and investigative thoroughness.

b. SJA/Brigade Judge Advocate (BJA) will:

(1) Assist BJAs and civilian attorneys with PPRs, RM investigations, and other legal actions.

(2) Provide legal advice to USAREC and subordinate Cdrs on RMs.

(3) Process substantiated RM cases to the CG which fall under misconduct or action IAW the CG withhold policy.

c. Bde Cdrs will:

(1) Ensure the inspection of subordinate unit's RSP.

(2) Conduct (with a minimum frequency of quarterly) Volume II analysis and reporting down to the company level. Communicate trends of the Volume II analysis reporting to the appropriate Cdrs. Maintain Volume II analysis and reporting for the current and previous FY.

(3) Validate RSP and Investigating Officer (IO) training at Bn.

(4) Provide a watchful and responsible care of all PPRs and RM investigations.

(a) PPR: Review all subordinate Bn PPR Logs (UF 601-210.30) monthly to ensure subordinate commanders are conducting all required PPRs IAW Chapter 7-2.2 and identifying trends and correcting areas identified as a possible training deficiency.

(b) RM: Review and sign all UF 601-210.32 on completed substantiated RM investigations to ensure completeness and accuracy. May delegate review process of completed not substantiated RM investigations to the Bde XO. Report results to RSD for tracking.

(c) RM: Review case processing efficiency and take appropriate action on all cases over 60 days.

(d) RM: Review all subordinate Bn RM Logs (UF601-210.31) to ensure they are complete and accurate.

(e) RM: Review monthly trends in areas of RMs and direct training in specific areas identified as a possible training deficiency.

(5) Monitor processing by BJAs to ensure a timely legal review of all RMs.

d. **Bn Cdrs will:**

(1) Execute and train subordinates on the RSP IAW regulation and applicable policies.

(2) Conduct (with a minimum frequency of monthly) Volume II analysis and reporting down to station level. Update Company Cdrs and Bn Ops on any trends and ensure appropriate action is taken for negative trends. Maintain Volume II analysis and reporting for the current and previous FY.

(3) Ensure XOs, or designated unit representatives, are trained on the RSP, Volume II analysis and reporting, and enlistment QC processes.

(4) Train all officers and NCOs in the grade/position of E8 and above on IO procedures.

(5) Brief all newly assigned personnel on the RSP.

(6) Maintain records, reports and training pertaining to the RSP inspections for the current and previous FY.

(7) Provide watchful and responsible care of all PPRs and RM investigations.

(a) PPR: Ensure XOs, or designated unit representative appoint, by UF 601-210.35 (Notification of Processing Procedure Review and Determination) appropriate unit members to conduct reviews.

(b) PPR: Ensure all PPRs are completed within 15 calendar days.

(c) PPR: Review processing efficiency and take appropriate action on all reviews over 15 days.

(d) PPR: Ensure all required reviews are being conducted.

(e) PPR: Evaluate and close each PPR to determine whether an RM investigation is necessary and what, if any, immediate action is required for the enlistment (for example, FS separation, renegotiation, notify a TPU, etc.).  At no time will this evaluation be delegated to subordinate officers or NCOs.

(f) PPR: Review trends monthly and direct training in specific areas identified as a possible training deficiency.

(g) PPR: Maintain all PPR; UF 601-210.35 on file for the current and previous FY.

(h) RM: Appoint, by official MFR, IOs to conduct RM investigations.

(i) RM: Ensure all ROI are completed within 60 calendar days. Review case processing efficiency and take appropriate action on all ROIs over 60 days.

(j) RM: Review all PPRs and RM allegations for administrative and investigative thoroughness, and completeness.

(k) RM: Maintain RM log (UF 601-210.31) for the current and previous FY.

(1) Properly address instances of misconduct during the recruiting process.

(2) Forward unit monthly PPR Logs (UF 601-210.30) and RM Logs (UF601-210.31) to Bde RST or designated representative.

## 7-1.4 Delegations of Authority

a. The Bde Cdr(s) or acting Bde Cdr, and Bn Cdr(s) or acting Bn Cdr (in the grade of major or above) may temporarily suspend personnel from recruiting duty status.

b. Delegation of authority does not relieve Cdrs or persons to whom authority is delegated of their responsibilities under this regulation.

## 7-2. Processing Procedure Review (PPR)

### 7-2.1 Purpose

Review suspect or questionable facts and circumstances in the recruiting process, without allegation of a RM, to determine if an RM investigation is warranted. The PPR is initiated on a UF 601-210.35. The PPR reviews circumstances and facts, results of the inquiry, and recommendation on the UF 601-210.35. The Bn Cdr reviews the inquiry to determine if evidence reveals that an RM allegation is present.  If credible evidence is found, or during the inquiry an allegation is made, the Bn Cdr initiates an RM investigation. If no allegation is revealed or evidence is revealed, the PPR is closed with no RM investigation required on the UF 601-210.35.

### 7-2.2 PPR (Misconduct Review) Defined

a. PPRs are to review discrepancies or circumstances that indicate a possible RM. The PPR will be conducted on the UF 601-210.35. The PPR will determine if the act or omission was done with the intent, and purpose, to wrongfully facilitate the recruiting process. The following are mandatory PPRs;

(1) Discrepancies that made the applicant/FS disqualified for further processing (temporary or permanent) between existing information on the Medical Prescreen of Medical History Report (DD 2807-2), and the Report of Medical History (DD 2807-1), Supplemental Health Screening Questionnaire (UMF Form 40-1-15-1-E), or SF 86.

(2) All increases of 20 or more points on an ASVAB retest to include confirmation test failure.

(3) FS loss or a physical only applicant with positive drug and alcohol test results.

(4) All separations of enlistees reflected on the Training Base Attrition Report, Appendix H, Volume II analysis and reporting with a Separation Program Designator (SPD) code of:

(a) JFM, JFX, or KFN; possible violation related to concealed medical information.

(b) JDG; possible violation related to concealed dependents.

(c) JFC, JDA; possible violation related to fraudulent or erroneous enlistment or accession.

(d) JFB; possible violation related to improper or false parental consent.

(5) All enlistees reflected on the Prior Service List, Appendix F, and Volume II with unreported/undisclosed PS. This is a possible violation of concealed prior military service.

(6) FS loss for fraudulent enlistment or accession (except for individuals identified as a match) is a possible violation of concealed medical, conduct or administrative information. Individuals identified as a match (RA and AR) will follow the procedures in appendix G.

b. Do not conduct a PPR when credible irrefutable documentary evidence exists. Conduct an RM investigation.

c. All PPRs are reported to the Bn XO, or designated unit representative, as soon as possible, but not later than one (1) working day from discovery.

d. For a PPR, the case number will consist of the four digit Recruiting Station Identification (RSID) followed by the last number of the Fiscal Year (FY), and end with the two digit case number (start with 01). For example; if the first PPR for FY 15 in the Cleveland Bn occurs in the Cuyahoga Falls Station, Medina Company, the first PPR number would be (5C1J/501). Maintain a UF 601-210.30 (Processing Procedure Review Log), see Figure 2.

## 7-2.3 PPR (Administrative Review) Defined

An error within the DEP/DTP-In process that may have violated current USAREC Messages, policies or procedures. Errors (not listed in chapter 7-3.2) that are discovered and corrected during the DEP +10 or the Before Ship quality control (QC) procedures require a PPR on UF 601-210.35. The PPR will determine if the act or omission was done intentionally to wrongfully facilitate the recruiting process. DEP/DTP-in errors discovered on, or after the original scheduled ship day, will be considered an RM.

a. Failure to report and/or investigate known, or suspected RMs.

b. Failure to upload required source documents (including sex offender checks, live scan, or police check

c. Processing prior to LS.

d. MOS qualifications and time in DEP/DTP requirements; processing resulting in a training reservation for an MOS which the applicant does not have all necessary qualifications. This includes but is not limited to, driver's license requirement, driver's license expiration, education requirements, physical requirements or drug use.

e. Failure to identify information that disqualifies an applicant (temporary or permanent) for enlistment, accession, bonuses, incentives, training seat, option, MOS, education benefits, promotion, or entry in the DEP/DTP/DS.

## 7-2.4 Responsibility for Appointing PPR Official

a. The Bn XO has primary staff responsibility for oversight of PPRs at the Bn level and should normally be the appointing authority; however, any office with authority to appoint a preliminary inquiry, to include the Bn Ops SGM, may appoint a PPR. Any appointing PPR official may authorize, through verbal or email confirmation, an authorized individual to conduct a PPR prior to initiating the UF 601-210.35. Verbal authorization must be given individually, "blanket orders" are not authorized.

b. Personnel who may be appointed to conduct a PPR: Commissioned officers, NCOs in the rank of MSG and above, NCOs in the rank of SFC assigned as the SGC or in an E-8 position, DACs permanently assigned to a position graded as GS-07 or above, DAC investigators assigned to RSD, and SFC and above assigned to RSD (UF 601-210.35).

## 7-2.5 PPR Responsibilities

a. Individuals conducting the PPR must understand requirements of the review.

b. Review circumstantial and/or documentary evidence.

c. Review required regulations, policy, and messages.

d. Determine personnel to interview if necessary. Interviews should include all available fact witnesses and other persons who may assist in determining whether a PPR should become a RM investigation.

e. Conduct interviews either face-to-face or telephonically, if necessary. However, other reliable means of communication, including email, may be employed when face-to-face or telephonic communication is impractical.

f. Complete UF 601-210.35 to the appointing authority detailing results of review. The UF 601-210.35 will identify the personnel interviewed and applicable enlistment or commissioning documents used.

g. Conversation records, statements, emails, or other correspondence are not required unless they are necessary to clarify the report.

h. Complete PPR within 15 calendar days with one of the below recommendations:

(1) Close PPR with no further action; no credible evidence or allegation was discovered to warrant further inquiry or investigation.

(2) Close PPR as Other Misconduct or Recruiter Error; Commander's discretion for corrective action and/or training.

(3) Close PPR and initiate an RM based on the allegation received or credible evidence obtained that indicate the recruiter knowingly directed the fabrication, withheld or altered applicant or enlistment information, advised an applicant not to disclose pertinent information. Includes withholding medical information, knowingly utilized false diplomas, intentionally provided false information, or intentionally concealed information necessary to determine the eligibility, qualification, military entitlements, or certification of an applicant to enlist (or enlist for a specialty, grade, or rating) for which the applicant is not eligible.

**7-2.6 Suspension of Favorable Personnel Actions (Flag) and Article 31 Rights Warning**

USAREC personnel are not normally flagged during a PPR.  Official sworn statements are not normally required. Article 31 rights warnings are required as soon as personnel conducting a review or investigation suspect misconduct (for questions about Article 31 rights warnings, consult with the BJA prior to conducting any questioning). Once an individual conducting a PPR suspects any recruiting personnel of misconduct they must cease questioning until Art. 31 rights warnings are read to the individual. Additionally, once an Inquiry Official suspects any recruiting personnel of misconduct, they must immediately inform the chain of command to allow their determination of whether to flag the Soldier IAW AR 600-8-2.

**7-3. Recruiter Misconduct (RM)**

**7-3.1 Purpose**

Cdrs are required to thoroughly investigate allegations of an RM and when substantiated, initiated appropriate training or other appropriate action. For the purpose of this chapter, the term recruiter is used to refer to all military, civilian, or contracted personnel whether attached, detailed, assigned, or involved in the recruiting process. A RM is a reportable misconduct.

**7-3.2 Recruiter Misconduct Defined**

   a. Those intentional acts or intentional omissions listed in paragraph d. below that are perpetrated by a recruiter to facilitate the recruiting process for an applicant. It includes any act or omission which did intentionally cause to enlist or is designed to enlist an individual not qualified for Army enlistment or any act or omission which did intentionally provide, or is designed to provide an Army bonus, benefit, option, or MOS to an individual not qualified for that bonus, benefit, option, or MOS. Incidents are reported based on the date of the allegation regardless of when the possible infraction or final disposition occurred. Each recruiter involved in an allegation is reported as a separate allegation. Multiple allegations against one recruiter, with one applicant, reported at the same time, are reported as one allegation. If more than one applicant is involved, then each allegation is counted as a separate allegation for reporting purposes. This paragraph is punitive. Individuals who violate this policy may be subject to punishment under the UCMJ. Commanders must seek the advice and counsel of their legal advisor when taking actions pursuant to this paragraph.

   b. Facilitate the recruiting processes: An intentional action or intentional event to qualify a prospect, applicant, or DEP/ DTP member for accession into another Army component, such as AR or RA Service when it is required under AR 601-210 or related DoD, DA, or USAREC regulation, issuance, or policy.

   c. Omission: The failure to do what is required by law or legal authority.

   d. Recruiter Misconduct

   (1) Concealment. Knowingly directing the fabrication, withholding, altering or concealing applicant information. Advising an applicant not to disclose pertinent information. Includes withholding medical information, knowingly utilizing false diplomas, purposely providing false information, or intentionally concealing information necessary to determine the eligibility, qualification, military entitlements, or certification of an applicant to enlist (or enlist for a specialty, grade or rating) for which the applicant is not eligible.

   (a) Concealed medical information and recruiter assistance. This RM occurs when there is an allegation that recruiting personnel knowingly either omitted medical information, omitted details of a medical condition from the enlistment record, or advised or assisted an applicant to take any medication or supplement to become medically qualified.

   1. Recruiters will not conceal, assist in the concealment of, or advise an applicant to conceal any medical information, whether or not disqualifying.

   2. Recruiters will not give, or advise applicants to use, any pharmaceutical product, medicine, medication, or remedy, whether controlled, prescribed, or sold over the counter, for the purpose of meeting enlistment or commissioning eligibility.

   (b) Concealed Police Record.  This RM is initiated when there is an allegation recruiting personnel either omitted law violations, or omitted detail of law violations from the enlistment record.

   1. Recruiters will not intentionally interfere with, or participate, in the civilian criminal or civil process on behalf of a prospect or applicant of their own volition. Recruiters will not knowingly allow persons who have an unpaid fine or are pending charges (including unfiled charges) to process or enter the DEP/DTP/DS until all such restrictions are removed. Recruiters will not allow individuals who are confined in any criminal justice facility, on probation, parole, or similar status to process or enter the DEP/DTP/DS until all such restrictions are removed.

Recruiters are prohibited from participating in the release of individuals from such restrictions whether by paying fines, appearing in court with applicants, testifying for applicants, or interceding on behalf of these individuals in any manner.

2. Applicants must disclose all prior and pending law violations, whether civilian or military. Recruiters will not conceal, assist in the concealment, or advise an applicant to conceal any information.

(c) Concealed dependents. Recruiters will not conceal, assist in the concealment of, or advise an applicant to conceal the existence of a dependent(s) as defined by AR 601-210.

1. Recruiters will not recommend, encourage, or materially assist any person in the transfer of custody of their minor children for the purpose of meeting eligibility requirements. Informing applicants that they may apply for or be permitted to regain custody of their children during their first enlistment or TOS is also prohibited. This policy does not prevent recruiters from informing such applicants of the basis for the Army's policy and explaining eligibility requirements IAW AR 601-210.

2. Recruiters will not provide an applicant with sample custody agreements or templates, or assist an applicant in filling out custody paperwork.

(d) Concealed Prior Service. Recruiters will not conceal or assist in the concealment of an applicant's PS and/or the concealment of applicants who are considered Glossary Non-Prior Service (GNPS-applicants with 179 days or less, to include zero days of AD, in any component of the Armed Forces). Recruiters will not access an applicant into the AR for the purpose of qualifying that person for accession into the RA as PS or GNPS (this does not include AMEDD MAVNI applicants).

(2) Falsification of Documents. Recruiters will not intentional falsify, assist in falsifying, knowingly use any false documents, information, or intentionally omit any material information pertaining to an applicant's qualification for enlistment, officer accession, option, bonus, benefit, or referral credit for promotion. This prohibition includes any physical or electronic records or entries made or used during enlistment, and/or officer accession processing. This includes the use of any documents bearing forged or unauthorized signatures to include the copy/paste of any written or digital signatures with or without consent.

(a) Recruiters will not possess any blank documents which could be used to determine eligibility of an applicant (e.g. source documents).

(b) Recruiters will not pre-sign, nor have the applicant pre-sign, any forms.

(c) Recruiters will not sign on behalf of any DA personnel, or any official capacity which they do not have authority, who are required to sign an enlistment or officer accession document unless permission was expressly granted, and the document clearly indicated that the recruiter signed in a representative capacity.

(3) Cheating on Tests. Cheating, use of ringers or imposters, providing test questions or items, or test compromise relating to any enlistment qualification screening test or process. This includes providing prior ASVAB tests or ASVAB test preparation materials to an applicant. Recruiters will not tutor or personally prepare an applicant for the ASVAB.

(4) False Promise. The act of knowingly misrepresenting benefits, enlistments, or other aspects of service. Recruiters will not knowingly mislead or misinform a prospect or applicant regarding any aspect of processing, entitlements, benefits, or other aspects of the Army to entice a prospect or applicant to access or enlist into either the RA or AR. This includes "conditional" enlistments in which an applicant enlists based on a recruiter's assurance that the applicant's prospects for selection for another program will improve. Other examples include, but are not limited to, false promises of cash bonus, Student Loan Repayment Program (SLRP), regaining custody of dependent children prior to completion of the first term of enlistment, overseas assignments, or a specific station of choice, etc.

(5) Coercion. Recruiters will not threaten, coerce, or intimidate any person for the purpose of inducing a FS to report to AD. This includes misrepresenting the likelihood of being apprehended and/or ordered to AD. It also includes obstructing a FS from being separated from the DEP/DTP. Although recruiters may properly attempt to "resell" a FS, they will not unreasonably delay the process of a FS's request for separation.

(a) Recruiters will not induce, attempt to induce, or assist a FS to fail to report to AD or IADT after taking the Oath of Enlistment or Oath of Office and/or receiving orders to AD or IADT.

(b) Tampering with a witness or interfering with the investigation of an RM allegation.

**7-3.3 Responsibility for Appointing Investigating Officers (IO)**

a. Bn Cdrs are the appointing authority for IOs.

b. Personnel who may be appointed to conduct the RM investigation: commissioned officers and DACs permanently assigned to a position graded as GS-11 or above. (RM-Appointment of IO Memo.)

(1) Those persons who, in the opinion of the appointing authority, are best qualified for the duty by reason of their education, training, experience, length of service, demonstrated sound judgement and temperament. IOs must be impartial, unbiased, objective, and have the ability to complete the investigation in a timely manner. If an appointing authority determines that a person with the required experience and expertise is not available within his or her organization, he or she may request assistance from a superior in his or her chain of command or supervision, or coordinate with a counterpart to obtain an IO with the required education, training, experience, and expertise to conduct the investigation.

(2) Only commissioned officers, warrant officers, and DACs permanently assigned to a position graded as GS-11 or above may be appointed as IOs. The CG may approve noncommissioned officers in the grade E-7 or above may be appointed as IOs when the appointing authority determines that military exigencies exist and no commissioned officers, warrant officers or qualified DACs are readily available.

c. Personnel who may be appointed as an assistant to the RM investigation: Commissioned officers, NCOs in the rank of MSG and above, DACs permanently assigned to a position graded as GS-11 or above, DAC investigators assigned to RSD, and SFC and above assigned to RSD.

**7-4. Processing and Investigation of RMs**

**7-4.1 Purpose**

This chapter prescribes the procedures for reporting, processing, investigating, and disposing of RM allegations (see flowchart at Figure 2). Deviations from these procedures may be made only with the approval of the Bde Cdr after consultation with USAREC RSD and the SJA/BJA. ROI are exempt from information requirements IAW AR 335-15 (Management Information Control System).

**7-4.2 Allegation Reporting Requirements**

a. Report all completed RM investigations to USAREC RSD immediately upon completion. RSD will report all RMs to DA-G1 and OSD as required.

b. Allegations may come from any source and can be either verbal or written alleging that any USAREC personnel committed a RM. Track all alleged and reported RMs using UF 601-210.31 (Recruiting Misconduct Investigation Log).

c. RM allegations must be reported to the Bn XO within (1) working day of discovery. The Bn will have one working day to report to RSD using UF 601-210.34 via email following the reporting format at Figure 2.

d. RM allegations identified by HQ USAREC personnel, or any external source must be reported to USAREC RSD within three (3) working days from identification. RSD will notify the respective Bn using UF 601-210.34 via email following the reporting format at Figure 2.

e. Reception Battalion (RECBN) liaisons must report RM allegations within (3) working days via UF 601-210.33 (Report of Alleged or Suspected Recruiting Misconduct) to USAREC RSD, via e-mail to usarmy.knox.usarec.mbx.hq-rsdirregularities@mail.mil. (UF 601-210.33)

f. Cdrs must evaluate each alleged RM to determine whether any immediate action must be taken regarding the applicant or enlistee involved and take action as necessary if required.

**7-4.3 Processing RM Investigations (Figure 2):**

Review the allegation and any supporting documentation to determine whether all necessary pre-investigative information has been provided. After an RM case number has been received, it is the Bn Cdr's discretion to determine the necessary course of action to take with the RM allegation and ensure all ROIs are completed in a timely manner where combined ROI processing time with BJA does not exceed 60 calendar days.

Conduct a Preliminary Inquiry (Commander's inquiry), Administrative Investigation or through appointment

of a Board of Officers IAW 15-6 is likely impractical under normal circumstances. (AR 15-6 and/or USAREC Pamphlet UP 27-2 New.)

(1) Preliminary Inquiry: A preliminary inquiry IAW AR 15-6, chapter 4 is an informal investigation. The purposes of a preliminary inquiry include, but are not limited to, ascertaining the magnitude of a problem; identifying and interviewing witnesses and summarizing and recording their statements; and determining whether a more extensive investigation is warranted, and if warranted, assisting in determining the scope of such investigation. A preliminary inquiry under AR 15-6 may satisfy the preliminary inquiry requirement, sometimes referred to as "Commander's Inquiry," in RCM 303, MCM.

(2) Administrative Investigation: Investigation procedures are used by a single IO, or by an investigation team consisting of an IO and one or more assistant IOs designated by the appointing authority to assist the IO in questioning witnesses, taking sworn statements, and otherwise facilitating evidence gathering. In the event that assistant IOs are used, those designated as assistants must abide by the provisions of AR 15-6, chapter 3. There is no recorder. The IO prescribes the duties of each assistant IO and determines the findings and recommendations.

(3) Board of Officers: An administrative fact-finding procedure using a board of investigating officers. The subject matter under investigation determines the procedural rule to follow IAW AR 15-6.

b. Review the IO's recommendation.

c. Include recommendations for disposition regarding the case in the Cdr's endorsement on the UF 601-210.32 (Notification and Recruiter Misconduct Allegation and Determination). Possible recommendations for substantiated RMs are listed below, though this list is not all inclusive:

(1) No action taken

(2) Other/Training

(3) Adverse administrative action

(4) Non-judicial Punishment/Article 15

(5) Removal from recruiting

(6) Initiate separation proceedings

(7) Courts Martial

d. Close the case as appropriate, except where the CG, USAREC has retained authority or where recommended final action is beyond the scope of the Bn Cdr's authority in Bn/Bde Cdr remarks on UF 601-210.32.

e. Ensure Part V of the UF 601-210.32 is completed by the Soldier/DAC.

f. All completed RM investigations are forwarded to RSD for review and filing.

g. Forward cases IAW CG withhold policy, to the RSD Director who will review and forward to SJA for review.

h. Consider if suspension from recruiting duty is warranted, taking into account the severity of the RM allegations the number of substantiated RMs the Soldier has against them, and the apparent strength of evidence of the alleged RM. Termination of SDAP is effective on the date of suspension.

i. Notify suspended recruiters in writing; provide them with a copy of the supporting documentation, and their right to appeal the decision. Suspension is directed using an MFR format. Suspended recruiters must not perform recruiting duties IAW AR 601-1 (Assignment of Enlisted Personnel to the US Army Recruiting Command) chapter 5-7. Soldiers assigned to duty at any location outside their local travel area must be placed on TDY orders prior to reassignment.

j. Notify Soldier after decision indicating a final action unless authority is withheld or action is pending at HQ USAREC.

k. Refer substantiated cases to the appropriate recruiting personnel for acknowledgment on UF 601-210.32 and appeal in an MFR. The Soldier or Civilian is given a copy of the investigation. They have ten (10) calendar days to review the file and submit appeal matters from the date notified; extensions may be granted.

l. Forward submitted appeals to the Bde Cdr for consideration.

m. All appeals will be included in the investigation when forwarded to USAREC RSD

## 7-4.4 Investigating and Inquiry Officer Responsibilities

a. See AR 15-6 (Procedures for Investigating Officers and Boards of Officers).

b. During Administrative Investigation into RM allegation, the IO will take face-to-face sworn statements from all witnesses using DA 2823 (Sworn Statement Form). Explain, in detail, the circumstances if the IO is unable to obtain face-to-face sworn statements. All Statements must be written legibly or typed. IOs should contact RSD if they are having trouble locating witnesses for assistance.

c. The IO will use the following definitions in making determination of substantiated or not substantiated RM allegation.

(1) Preponderance of Evidence. A proposed finding is substantiated if it is supported by a greater weight of the evidence than supports a contrary conclusion. Proving an allegation is done by judging the weight, credibility, and value of evidence. If an allegation is not supported by greater evidence, then it is not substantiated.  Not substantiated is not equivalent to "innocent" or "guiltless," but only that the evidence did not substantiate the allegation.

(2) Substantiated. An action or omission done deliberately with the intent to wrongfully enlist an unqualified individual, improperly provide a benefit to an individual, or commit specific misconduct prohibited by this regulation. The intent must be supported by evidence indicating that the omission or act was deliberate, rather than evidence indicating the act was negligent. Proving intent is done through judging the weight, credibility, and value of evidence. If intent is supported by greater evidence, then the allegation is substantiated.

(3) Root Cause Analysis. The following root cause analysis will be utilized by the IO to address their assessment of whether alleged RM allegation is intentional in the ROI.

(a) Don't know-if recruiters do not know the standard, their failure to comply with the standard is normally not misconduct. The IO must clearly articulate why the recruiter did not know the requirements or proper procedures; or

(b) Can't Comply-If recruiters are prevented from complying, their failure to comply with the standard is normally not misconduct. The IO must clearly articulate what obstacles or directives prevented the recruiter from complying; or

(c) Won't Comply – If a recruiter knows the standard but won't comply, this is normally considered intentional misconduct.  The IO must clearly articulate the facts and circumstances that prove the recruiter knew the requirements and could comply with the proper procedures, but elected on their own volition not to comply with established regulations or policies.

## 7-4.5 Suspension of favorable personnel actions (Flag)

a. A Bn Cdr must immediately flag Soldiers under RM investigation IAW AR 600-8-2 (Suspension of Favorable Personnel Actions) chapter 2-2.

b. The Bn Cdr must ensure every Soldier that receives investigation notification during an on-going RM investigation or notification of conclusion of an RM with adverse action not yet completed is flagged. There is no requirement to suspend a recruiter who receives a notification.

c. The Soldier's current Bn Cdr must flag them when notified by the Soldier's previous unit of an ongoing RM investigation, that an RM must be initiated by the previous unit or if final action for a completed RM investigation is pending.

d. A Bn Cdr must remove a flag within five (5) days of notification of final action and completion of all personnel actions required.

## 7-4.6 Request for investigation by USACIDC

a. Alleged and suspected RMs are normally investigated by USAREC in authority with the Memorandum of Understanding (MOU) between USAREC and US Army Criminal Investigation Division (USACIDC). USAREC RSD, is responsible for ensuring all reports of misconduct within CID's investigative jurisdiction are properly reported to the CID liaison officer.

b. When an offense listed in AR 195-2 (Criminal Investigation Activities) appendix B, is linked to an alleged or suspected RM, CID investigative assistance is requested by the appointing authority. Offenses detected by the IO during the course of the investigation are reported to the appointing authority, which will coordinate with RSD and the servicing CID office. The IO will continue with their investigation and will not delay the report to the appointing authority pending the conclusion of the CID investigation.

c. Bn Cdrs will monitor the progress of the CID investigation and maintain close liaison with the agent-in-charge. Ask the agent to furnish statements of witnesses and other relevant evidence as they are obtained. The conclusions expressed by the CID agent in his or her final ROI are not binding on Cdrs. Cdrs have the authority to initiate UCMJ or adverse personnel actions against the subjects of a CID investigation as they determine. For this reason, Cdrs who obtain sufficient evidence from CID, in advance of the completion of the final law enforcement report, can proceed to dispose of the matter being investigated. Issues with CID investigations are addressed through the BJA or SJA.

## 7-4.7 HQ USAREC, RSD Review

a. RSD or SJA is responsible for the review of all RMs where the FS reported to Initial Active Duty for Training (IADT) or involving personnel or conduct subject to the CG withhold policy.

b. The Director of RSD forwards all investigation results involving personnel or conduct subject to the CG withhold policy, with CDR recommendation, to the SJA who will prepare the case for CG review and action.

**7-4.8 Final Disposition of Cases Reviewed by Commanding General**

a. The OSJA provides RSD a copy of the CG's decision and any disciplinary or administrative action taken by the CG for final investigations. The SJA prepares the appropriate legal documents for cases reviewed by the CG. In cases referred to CID, the OSJA assists CID on titling decisions.

b. RSD will notify CID, as required, for titling Soldier(s) in a CID ROI. Upon receipt, of titling correspondence, RSD must notify the chain of command. When a Soldier is relieved from recruiting duties for a substantiated RM, appropriate action is taken by the Assistant Chief of Staff G1 to withdraw the recruiter MOS Code 79R or additional skill identifier and all incentive recruiting awards and to verify that a relief for cause evaluation is entered into the person's official record.

## 7-5. Recruiting Brigade and Bn Management Reporting System

### 7-5.1 Purpose

The Recruiting Standards Functional Area Analysis and Data Package, Volume II, Rctg Bde/Bn Management Reporting System, provides Cdrs and recruiting supervisors of the Bde and Bn with data in RSP functional areas. This data provides a method for evaluating the performance of stations, companies, and battalions, as it relates to production. The data serves to identify negative or positive trends or potential PPRs. Report executors identify units that deviated from the standard and conduct analysis to determine the possible causes for deviation. Units can retrieve data, conduct analysis, continue monitoring, and correct recruiting operation issues with monthly/quarterly sustainment training. The report assists the commander in maintaining the highest levels of integrity in recruiting.

*Management Reporting System*

a. Appendix B of the Volume II Report is used as the primary screening document in selected station functional areas down to company level. The numbers concerning attrition are a moving 12-month window. They provide information on FSTP losses, AR FS losses, training base attritions, possible PPRs, and 20-point ASVAB increases.

b. Appendix C of the Volume II Report, Army Recruiting Information Support System-Personnel (ARISS- PER) provides a listing of all recruiters and recruiting specialists assigned to the Bn. The unit should be familiar with reconciliation procedures to ensure the information listed for each recruiter is correct.

c. Appendix D of the Volume II Report, Erroneous Enlistment Report (EER), provides a listing of the cumulative recruiting calendar year information on those enlistees from the Bn with either an administrative or contractual error in their enlistment processing. The information is provided by the RECBN liaisons via UF 601- (Erroneous Enlistment Report).

d. Appendix F of the Volume II Report, Prior Service Versus Non-prior Service Report, provides a listing to identify whether an applicant being processed as a NPS has prior active military service.

e. Appendix G of the Volume II Report, the current FY RA FSTP separation listing identifies all cancelled FSTP enlistments.

f. Appendix H of the Volume II Report, current FY RA Training Base Attrition listing, provides a listing of RA individuals identified as a loss at training installations within the first 179 days of AD.

g. Appendix I of the Volume II Report, current FY AR Fail-to-Ship Report lists those enlistees in the AR that were separated prior to their ship date.

h. Appendix J of the Volume II Report, current FY Moral Waiver Report, identifies what types of conduct (moral) waivers are being approved for accessions from the Bn and whether the Soldiers are subsequently being discharged at training installations.

i. Appendix K of the Volume II Report, current FY Administrative and Medical Waiver Report identifies approved administrative and medical waivers and whether Soldiers are subsequently being discharged as Training Base Attrition.

j. Appendix L of the Volume II Report, is a moving 12-month window Recruiter's summary sheet. This data is similar to the unit matrix Appendix B as it provides information pertaining to the individual recruiter regarding the previous 12 months.

## RECRUITER MISCONDUCT FLOW CHART



**\*Allegation received / made USAREC internal source (Brigade, Battalion, Company, Center, Soldier, etc...)**

**\*Allegation received / made USAREC HQ or external source (IG, CID, Training Liaison, Congressional, RSD Hotline, etc...)**

After an RM case number has been received, it is the Bn Commander's Discretion

- Formal Board of Officers
- Administrative Investigation
- Preliminary Inquiry (Commander's Inquiry)

Released to Bn

RSD determines to investigate or forward to Bn responsible.

RSD Investigates

\*Not Substantiated

\*Substantiated

\*Substantiated

\*Not Substantiated

No          CG Withhold

Yes

RSD completes formal Report of Investigation.  Forward RM to appropriate Commander for disposition.

**Bn Commander Final Disposition**

- No Action Taken
- Other/Training
- UCMJ
- Removed as Rctr
- Separated from Svc
- Court Martial

May Recommend Beyond Authority

**CG Withold (See Note)**

- No Action Taken
- Other/Training
- UCMJ
- Removed as Rctr
- Separated from Svc
- Court Martial

Update databse for tracking and reporting.

Forward to the UF 601.210.32 & ROI / Inquiry to BDE CDR endorsement/recommendation.

Forward to the UF 601.210.32 & ROI / Inquiry to BDE CDR endorsement/recommendation.

Forward UF 601.210.32 & Report of Investigation / Inquiry to HQ USAREC RSD for tracking and reporting.

Forward UF 601.210.32 & Report of Investigation / Inquiry to HQ USAREC RSD for tracking and reporting.

NOTE:
\* Denotes information reported to OSD.

CG WITHHOLD:
1. CG Withhold applies to cases per current CG withhold policy.
2. ROI will be forwarded to HQ USAREC via electronic records on share drive.
3. Cases forwarded to the CG for action remains open and flags will not be removed until case is closed and disposition is complete.

**Figure 1. USAREC Recruiting Misconduct Flow Chart**

**Appendix A**
**References**

**Section I**
**Required Publications**

**AR 15-6**
Procedures for Investigating Officers and Boards of Officers

**AR 25-2**
Information Assurance.

**AR 25-55**
The Department of the Army Freedom of Information Act Program.

**AR 40-501**
Standards of Medical Fitness.

**AR 50-5**
Nuclear Surety.

**AR 135-7**
Incentive Programs.

**AR 135-178**
Enlisted Administrative Separations.

**AR 140-10**
Assignments, Attachments, Details, and Transfers.

**AR 195-2**
Criminal Investigation Activities.

**AR 335-15**
Management Information Control System.

**AR 600-8-2**
Suspension of Favorable Personnel Actions.

**AR 600-9**
The Army Body Composition Program.

**AR 600-20**
Army Command Policy.

**AR 601-25**
Delay in reporting, and Exemption from Active Duty, Initial Active Duty Training, and Reserve Forces Duty.

**AR 601-210**
Active and Reserve Components Enlistment Program.

**AR 614-200**
Enlisted Assignments and Utilization Management.

**AR 630-10**
Absence without Leave, Desertion, and Administration of Personnel Involved in Civilian Court Proceedings.

**AR 635-200**
Active Duty Enlisted Administrative Separations.

**DA Pam 611-21**
Military Occupational Classification and Structure.

**DOD 1312.1-I**
Occupational Conversion Index (Enlisted/Officer/Civilian).

**DODI 1304.32**
Military Services Recruiting Related Reports.

**DOD 5400.11-R**
Department of Defense Privacy Program.

**FM 6-22**
Army Leadership.

**UTC 5-03.2**
Influencing and Interviewing

**UR 350-13**
School Recruiting Programs.

**UR 601-2-1**
Total Army Involvement in Recruiting (TAIR)

**UR 350-1**
Training and Leader Development.

**UR 700-5**
Integrated Logistics Support.

**UP 385-10**
Safety.

**USMEPCOM Reg 40-8**
Human Immunodeficiency Virus (HIV) and Department of Defense (DOD) Pre-accession Drug and Alcohol Testing (DAT) Program.

**USMEPCOM Reg 715-4**
Applicant Meals and Lodging Program.

**USMEPCOM Reg 601-23**
Personnel Procurement, Enlistment processing
This regulation provides policies and procedures on applicant processing; matters relating to preparing, maintaining, and distributing enlistment documents (including interviewing and fingerprinting enlistment applicants), processing Special Agreement Check (SAC) requests. It also provides instructions for implementation of MEPS functions required by the DoD, and GCs directives during peacetime and mobilization.

**38 USC 30**
All Volunteer Force Education Assistance Program.

**Section II**
**Related Publications**

**AR 140-111**
U.S. Army Reserve Reenlistment Program.

**AR 612-201**
Initial Entry/Prior Service Trainee Support.

## Section III Prescribed Forms

**UF 601-210.02**
Probation Officer and/or Court Records Report (Former UF 1037)

**UF 601-210.04**
Request for Information from Institution (Former FL 41)

**UF 601-210.05**
Guidance Counselor Shop Inspection Checklist (Former UF 1305)

**UF 601-210.06**
Erroneous Enlistment Report (Former FL 153)

**UF 601-210.07**
Match Log (Former UF 1054)

**UF 601-210.08**
Waiver Worksheet (Former UF 670)

**UF 601-210.10**
Security Clearance Questionnaire (Former UF 1227)

**UF 601-210.11**
Board Evaluation Sheet (Former UF 609)

**UF 601-210.12**
Packet Checklist Validation Form Letter (Former UFL 136)

**UF 601-210.13**
Loan Repayment Program   In-Processing Counseling (Former UF 1232)

**UF 601-210.14**
Release of Arrest Information (Former UFL 146)

**UF 601-210.15**
Army Preprocessing Drug Screening Acknowledgment and Consent (New)

**UF 601-210.16**
Army Recruiting Station Drug Screening/Test Log (New)

**UF 601-210.20**
Future Soldier Hometown Shipping Program Checklist (Former UF 1302)

**UF 601-210.21**
Separation Request (Former UF 986)

**UF 601-210.22**
Request to Change Enlistment Option (Former UF 1035)

**UF 601-210.23**
The U.S. Army Recruiting Command Future Soldier Advanced Rank Verification (Former UF 1137)

**UF 601-210.24**
Future Soldier -Physical Training Program Statement (Former UF 992)

**UF 601-210.26**
Future Soldier Training Function Request and After Action Report (Former UF 1115)

**UF 601-210.27**
Medical Safety for Future Soldier Physical Training Program and Physical Fitness Assessments

**UF 601-210.30**
Processing Procedure Review Log (Former UF 737A)

**UF 601-210.31**
Recruiting Misconduct Investigation Log (Former UF 737)

**UF 601-210.32**
Notification of Recruiter Misconduct Allegation and Determination (Former UF 713)

**UF 601-210.33**
Report of Alleged Recruiting Misconduct (Former UF 315)

**UF 601-210.34**
Notification of Recruiter Misconduct (New form referenced in Chap. 7-4.2)

**UF 601-210.35**
Notification of Processing Procedure Review (New form referenced in Chap. 7-4)

**UF 601-210.40**
School Profile Evaluation (Former UF 1015)

**UF 601-210.41**
Education Evaluation Worksheet (Former UF 1015-A)

## Section IV Referenced Forms

**DA Form 61**
Application for Appointment

**DA Form 71**
Oath of Office - Military Personnel

**DA Form 2823**
Sworn Statement Form

**DA Form 3286**
Statements for Enlistment, U.S. Army Enlistment Program, U.S. Army Delayed Enlistment Program

**DA Form 3540**
Certificate and Acknowledgment of U.S. Army Reserve Service Requirements and Methods of Fulfillment

**DA Form 4187**
Personnel Action

**DA Form 5435-R**
Statement of Understanding - The Selected Reserve Montgomery GI Bill

**DD Form4 series**
Enlistment/Reenlistment Document -Armed Forces of the United States

**DD Form 214**
Certificate of Release or Discharge from Active Duty

**DD Form 368**
Request for Conditional Release

**DD Form 369**
Police Record Check

**DD Form 370**
Request for Reference

**DD Form 1966 series**
Record of Military Processing - Armed Forces of the United States

**DD Form 2807-1**
Report of Medical History

**DD Form 2807-2**
Medical Prescreen of Report of Medical History

**DD Form 2808**
Report of Medical Examination

**DD Form 2983**
Recruit/Trainee Prohibited Activities Acknowledgement

**INS Form G-845**
Document Verification Request

**INS Form I-551**
Alien Registration Receipt Card. NGB Form22 Report of Separation and Record of Service

**RPI 275 (old UF 1286)**
PaYS Pocket Card

**SF 86**
Questionnaire for National Security Positions

**SF 1199A**
Direct Deposit Sign-Up Form

**UF 350-1.2**
Training Record

**UMF 601-23-E**
Report of Additional Information. (For use of this form see USMEPCOM Reg 601-23)
   a.  For processing procedures associated with Report of Additional Information
see USMEPCOM Reg 601-23.
   b.  See chapter 7.3 for additional processing requirements when an applicant makes an
RM allegation. NOTE: The initial and final USMEPCOM 601-23-E is always uploaded in
ERM.

**UMF 680-3A-E**
Request for Examination

**UMF 727-E**
Processing List (PL)

**DD Form 2983**
Recruit/trainee Prohibited Activities Acknowledgement

**DD Form 785**
Record of Dis-enrollment from Officer Candidate Type Training

**Section V**
**User Guides**
These documents are referenced as recommended system process guides and are not incorporated as punitive
regulatory guidance.

**Recruiter Zone (RZ) User Guide (RZUG google link)**

**Leader Zone (LZ) User Guide**

**Guidance Counselor Resource Center (GCRc) User Guide (GCRc UG-google link)**

**Live Scan User Guide  (LSUG-google link)**

**Recruit Quota System (REQUEST) User Guide**

**MEPCOM Integrated Resource System (MIRS) User Guide**

**Appendix B**
**Recruit Quota System (REQUEST) Procedures**

**B-1. Purpose**
Establish procedures for the efficient use of REQUEST for enlistments in the RA and AR.

**B-2. General**
REQUEST is an information management subsystem of KEYSTONE that provides the Army with an orderly and
efficient mechanism for allocating training resources to new accessions.
   a. Any use of REQUEST and the information therein for a purpose or manner other than authorized is
prohibited.
   b. Access to REQUEST is only granted to V7 Additional Skill Identifier (ASI) holders, when Bdes and Bns
encounter a problem with the reservation process, contact the ROC through command channels.
   c. In the event of REQUEST failing, procedures for continuity of the reservation process are outlined in B-5.

**B-3. Security**
   a. REQUEST classification is sensitive according to the provisions of AR 25-2 (Information Assurance). The
classified component includes all data files, the entire database, and all associated programming.  At a minimum, all
systems of records will be safeguarded IAW AR 25-55 (DA Freedom of Information Act (FOIA) Program).

b. At no time will an individual log into REQUEST using another person's login ID and/or password.

## B-4. REQUEST Use

a. The following are abuses of the system and are prohibited for any enlistment.

(1) Duplicate reservation.

(2) Failure to cancel a reservation for an applicant that fails to process for enlistment at MEPS.

(3) Early ship or late ship reservations.

(4) Creating a reservation without the applicant present.

(5) Improper gender coding.

(6) Unqualified applicant reservations.

(7) Swapping. Enlisting an applicant under a reservation made for another applicant is not authorized.

(8) Uncommitted applicant reservation. A reservation made for an individual who does not execute an enlistment agreement immediately.

(9) Advanced reservation. In no case will a permanent reservation be made prior to the applicant's arrival at MEPS.

(10) Unsubstantiated reservation. A temporary or permanent reservation that contains data not substantiated by appropriate documentation.

(11) Securing a reservation with an incorrect education level and/or Armed Forces Qualification Test (AFQT) is considered fraudulent.

(12) MOS substitution. Changing an applicant's MOS to another MOS within the same career management field (CMF) is not authorized.

(13) GC SSN substitution.

(14) Recruiters making more than two temporary reservations for an applicant.

(15) Manipulating an ECLT/ALCPT score to qualify an applicant. An ECLT/ALCPT that has been passed with a 75 or higher will not require a retest. Intentionally advising an applicant to score lower on an ECLT/ALCPT because of a low ASVAB score is prohibited and will be turned over to RSD.

b. Authorized alternate REQUEST uses:

(1) A reservation for an RA applicant may be held until the next duty day, pending completion of enlistment processing only. GCs must cancel REQUEST reservations for applicants who have not completed enlistment processing by the day following the reservation.

**NOTE**: In no case will a permanent reservation (res hold) be held past the end of the phase line (PL).

(2) An RA reservation can be held up to five (5) calendar days in the Far East (Japan and Korea) but not past the end of the Recruit Ship Month (RSM).

(3) Permanent reservations for AR applicants are not made and held over to the next working day under any circumstances.

(4) RA and AR temporary reservations may be held for seven (7) calendar days.

## B-5. Alternate Procedures for Terminal or System Failure

a. In the event a REQUEST terminal becomes inoperable and no other terminal is immediately available, GCs contact their respective Bn Ops which have authorization to access the system and make the reservation. The HRC REQUEST office has established alternate commercial access directives. If a terminal failure is at the RECBN, liaisons call the ROC for system access and programs.

b. In the event of system failure, notify the Customer Support Branch (CSB), at 1-877-272-1330.

c. Notify the ROC, immediately of system failure(s) through command channels after notifying the Help Desk.


## Appendix C
## Live Scan (LS)


## C-1. Purpose

This appendix outlines policies and procedures for FBI background checks on applicants prior to processing at MEPS.


## C-2. General

Recruiting personnel will not submit fingerprints (FPs) of applicants solely to ascertain if they are morally qualified for enlistment. Furthermore, recruiters will not FP themselves, family members (not processing for enlistment) or other recruiters. Do not fingerprint FSs pending shipment with the exception of processing errors resulting in an additional fingerprinting requirement.

**C-3.Station Commanders and/or Recruiter Responsibilities**

a. FP only those applicants who agree to enlist. Entry of the correct SSN for each applicant is essential. Enrollment and the results returning hinge on correct SSN data.

b. Complete all portions of the conduct screening pages in RZ prior to the submission of FPs. List all law violations of any level, to include traffic, with dispositions. The law violation(s) are considered as self-admitted offenses and will remain in RZ regardless of the LS results.

c. Applicants who agree to enlist must sign a completed DD 369. The signed DD 369 serves as authorization for capture. Upload the DD 369 in the applicant's ERM in the waiver folder labeled "Early Background Check (EBC) Release – DD369" prior to the submission of FPs.

d. Submit the FPs upon approval by the station commander or higher of the LS request. Enter the statement "Station Live Scan Authorized" into the applicant's contact history.

e. Utilize the Live Scan User Guide for processing procedures.

f. Initiate a UF 601-210.02(s) and/or court dockets at all locations where charges are revealed or locations returned on the Record of Arrest and Prosecution (RAP) sheet (minor non-traffic or higher). Although UF 601-210.02(s)/court dockets are not required for traffic offenses (with the exception of careless/reckless driving), list all charges in RZ. The required UF 601- 210.02(s)/court dockets are uploaded prior to transporting an applicant to MEPS for enlistment.

g. Capture all self-admitted charges and all charges that return from the LS results on the SF 86 along with the charge disposition.

h. Applicants will not be transported to a MEPS or lodging facility without LS results with the exception of applicants who are scheduled to ASVAB only. In the event the LS system is not operational, take instructions from EEPD via messages or OPS FLASH.

i. Results will typically be uploaded into ERM daily.  Normal turnaround time for results are 24-48 hours after. If results are not in ERM or if they do not appear on the RMZ/Bi-Zone LS report 24 hours after the LS submission, the below information is in effect until further notice.  (If results do not return to ERM, Select the appropriate RSID and enter the applicant's SSN. Select "Process".  Access the LS report in My App by selecting "RMZ or BiZone", "Processing" and "Live Scan Report".)  No HRC trouble ticket is required.

j. Send e-mail with screen shot of the Personal screen and the Transaction screen from the LS device to G3 NACLC at usarmy.knox.usarec.list.g3-naclc-mgr@mail.mil (RMZ-Bi-Zone screen shot is not required).  G3 NACLC will contact National Background Investigation Bureau (NBIB) to attempt to retrieve FP results telephonically.  They will then return an email with results to upload into the EBC results folder as evidence of results.

k. If G3 NACLC reports there are no results available due to NBIB not receiving the submission, authorization will be given to G3 NACLC for applicant processing to continue using DD 369(s) and UF 601-210.02(s). Applicants who claim no law violation(s) will have DD 369(s) ran where they currently live, work, and or attend school (city, county and state).  Applicants who admit to charge(s) above traffic level can process with DD 369(s) where they currently live, work and or attend school (city, county and state).

l. If G3 NACLC confirms the LS results have a 'Record' or if an RMZ-Bi-Zone report shows 'Record' and there is no accompanying RAP Sheet a RAP Sheet must be ordered.  Allow five (5) business days from the date of submission before requesting a RAP Sheet.

**C-4. GC Responsibilities**

a. Ensure all charges that returned on the LS are listed on the SF 86 along with any previously revealed charges.

b. Do not "No-Go" a projection if LS results are not present when conducting QC procedures.

c. Do not enlist anyone into the DEP/DTP/DS without LS results.

d. When the RMZ LS report is used, compare PRID from the LS report with the PRID of the applicant's record during the QC process.

e. The LS process does not eliminate the FP submission during MEPS processing. Ensure all applicants who enlist are fingerprinted at the MEPS. The FP results from the MEPS submission are required to be uploaded in ERM under the Entrance National Agency Check (ENTNAC) RAP Sheet folder.

**C-5. Validity Period/Retains**

a. LS results remain valid for 180 days. A new LS submission is needed outside of 180 days to enlist an applicant. If new violations are revealed prior to 180 days, no new LS is required. All new charges or violations are recorded IAW self-admission procedures. The required DD 369 and UF 601-210.02 are executed prior to enlisting the applicant.

b. Retention in the DEP/DTP/DS is not authorized for applicants who initially return unclassifiable FP

c. Results and discrepant charges after return of the MEPS submission results. DEP/DTP/DS discharge procedures for fraud will occur and a six (6) month wait is required to reprocess.

## C-6. Live Scan for 6th BDE Overseas Locations (DEP Trips)

a. Overseas applicants are not required to have LS results prior to enlisting into the DEP/DTP/DS. Capture FPs of applicants with a valid SSN during the trip and submit them. Capture and submit FPs for applicants who initially enlist with a TIN prior to receiving their SSN, upon issue of the SSN in either Honolulu or Guam.

b. Applicants who enlist from Guam or Samoa who have a SSN require LS results prior to enlistment.

c. Applicants from remote areas of Alaska who have no recruiter contact prior to arrival at MEPS, are exempt from LS submission prior to enlisting. GCs will ensure FP submission occurs during MEPS processing.

## C-7. Assistance

**NOTE:** If an OPS FLASH is published directing a HRC Help Desk ticket for LS issues the below guidance will be used. If there is no current OPS FLASH directing this; C3 k above is the authoritative source.

Instructions to initiate a trouble ticket to the HRC Help Desk: usarmy.knox.hrc.mbx.it-help-desk@mail.mil for LS results that have not returned to ERM or disposition is not on the RMZ LS report:

a. If after 48 hours no results have returned, stations will:

(1) Verify state indicated "transmitted ok".

(2) Verify SSN/SON/SOI/OPAC/ALC accuracy. Ensure the correct information is entered on the LS device particularly with the input of the OPAC/ALC code, SON and SOI codes. DA-EFP is the only entry acceptable for the OPAC/ALC code, the SON code is 676G and SOI code is A334. Any other codes will result in prints not being submitted successfully.

(3) If any of the above is not met, make corrections and resubmit.

(4) If (1) and (2) are met, do not resubmit FPs. The station will contact the HRC Help Desk to open a trouble ticket. Initiate a trouble ticket by sending an encrypted email screen shots of the LS device screen, the RMZ report and a screen shot of the actual DD 369 to usarmy.knox.hrc.mbx.it-help-desk@mail.mil. Once a ticket number is assigned and 24 hours has elapsed and there is not ticket resolution; processing can continue using DD 369(s) and UF 601-210.02(s). Applicants who claim no law violation(s) will have DD 369(s) ran where they currently live, work, and or attend school (city, county and state). Applicants who admit to charge(s) above traffic level can process with DD 369(s) where they currently live, work and or attend school (city, county and state).

b. If applicants are able to be enrolled in FP submission due to poor quality of FPs, take a screenshot of the enrollment screen proving the FPs were poor quality. Upload the screenshot in ERM under waivers, EBC results folder and process with DD 369(s)/UF 601-210.02(s) (take appropriate action for restrictions if fraudulent results return).

c. POC for technical issues/FP submission difficulties is the USAREC G6, IT Assistance Team at (502) 626-0066. Questions related to LS Policy can be addressed to EEPD at 1-800-688-9203, option 3. NOTE: If a station is having difficulty enrolling an applicant for a FP submission, they can refer to the training manual located on G3, EEPD SharePoint under Places/Recruiting Functions, Recruiting Operating Functions Guidance, and click on processing tab or copy and paste this link:

http://SharePoint.usaac.army.mil/documents/25521/29549/Live+Scan+User +Guide.pdf.

## C-8. Replacement

If a LS machine is inoperable, contact the CRC HRC IT Service Desk at 1-877-272-1330. The desk will assist in determining if there is a hardware or software issue and work to resolve a software issues. In the event of a hardware issue, contact the Bn Information Management Office (IMO) or S4 for a replacement device or parts.

The S4 or the IMO will submit a trouble ticket to the CSC for device replacement. Upon receipt of a replacement, email the new machine serial number and RSID with physical address to usarmy.knox.usarec.list.hq-g3-ariss-feedback@mail.mil prior to activating the device. Coordinate a test submission of the new device through G6. Station personnel request a test submission prior to use on an applicant via email to usarmy.knox.usarec.list.hq-g3-ariss-feedback@mail.mil. In the interim, utilize a neighboring station's LS device to capture and submit FPs if applicant processing is delayed pending device replacement.

**NOTE:** Refer to Appendix M (Waivers) for Policy Agency Listing (PAL).

**Appendix D**
**Quality Control (QC) Procedures and Scheduling of Applicants**

**D-1. Purpose**
Outlines the processes to ensure complete and accurate enlistment records and applicant scheduling procedures. During all QCs, the inspector will check the entire record and identify all errors rather than stopping and returning the record at the first identified error. This step reduces multiple returns for record corrections.

**D-2. QC Procedures**
   a. All enlistment records are reviewed by a qualified GC and given either a 'Go' or 'No-Go' status.
   b. Initial QC (GC). A GC QC workflow initiates when a recruiter projects an applicant for DEP-in.
   (1) Run the validation report to check the enlistment record for any administrative errors. LS results must be present and favorable at the time of DEP-in QC.
   (2) QC the record and either approve ('Go') or disapprove ('No-Go') the record. A projection is not considered a 'Go' until all information on the source documents has been verified against the information in the record. Ensure all documents in the applicant's ERM are legible and uploaded from original documents, court-certified copies or legible photocopies, and uploaded right side up. GCs will validate that all source documents are legible and uploaded in the proper ERM folders and required government seal(s) and/or file number(s) are visible. GCs will 'No-Go' the record for illegible documents.
   c. DEP-in QC and DTP-accession QC (GC): Workflows are initiated by pulling a permanent reservation for the RA and completing the DA 5435-R (Statement of Understanding -The Selected Reserve Montgomery GI Bill) for AR applicants.
   d. DEP + 10 QC by Bn Ops:
   (1) The DEP + 10 QC workflow is automatically generated on the tenth (10th) day after enlistment, accession or DS of the applicant.
   (2) This QC is completed NLT the first working day after receipt of the DEP + 10 QC workflow.
   (3) This QC includes but is not limited to:
   (a) Updated MEPCOM 680-ADP uploaded in ERM
   (b) Original DD Form 2808 with DAT and HIV results, DD 2807-1, DD 2807-2, and any other medical documentation.
   (c) FP submission and results
   (d) Security Investigation submission and acceptance
   (e) Validation of MOS qualifications
   (f) Review of the Difference Report for changes in the record
   (g) Any other official forms/documents required by appendix E.
   (h) Law violation mismatch: Listing all law violations in RZ, however not listing violation(s) correctly in corresponding RZ questions.
   (i) Drug use mismatch: Listing drug use in RZ, however not listing drug use correctly in corresponding RZ questions.
   (j) When errors are found, the Bn Ops disapproves the workflow and provides remarks. The disapproved workflow is returned to the GC for corrective action. The GC will follow-up with corrective action(s) within three (3) processing days of notification. The Bn Ops immediately regenerates a new QC for that record. The GC will follow-up with corrective action(s) within three (3) processing days of notification by regenerating a new QC. The BN Ops will ensure corrective action(s) were completed on the fourth (4th) processing day.
   e. Before Ship QC (GC): Between seven (7) and 30 working days prior to the FS's scheduled AD or IADT date, GCRc will place the FS's enlistment record in the GCRc inbox. The GC will review the enlistment record for completeness and accuracy. During the Before Ship QC the GC shop will conduct a verification of all source documents in ERM. The GC will validate that all source documents are uploaded in the proper ERM folders and are legible; government seal(s) and/or file number(s) must be visible. If any documents are missing the GC annotates this in the text box of the GCRc QC workflow. The review generates an email from the reviewing GC to the station.
   (1) Verify the REQUEST reservation.
   (2) Verify the qualifications for options and programs selected.
   (3) Review the medical data on the DD 2807-1, DD 2808, UMF 40-1-15 and the GCRc 680-3ADP.
   (4) Verify the FS's MOS qualifications per DA Pam 611-21, AR 601-210, and applicable messages.
   (5) Verify the FS's OPAT Consent Form, scorecard, and PDC are within 90 days of ship date and that the FS is still qualified for their MOS based on OPAT PDC achieved.
   (6) Ensure FSs enlisting for SLRP have a completed UF 601-210.13 uploaded in ERM.
   (7) Verify the status of the FS's MEPS FP results and background investigation submission status.
   (8) Review the enlistment record for completeness and accuracy IAW the applicable appendixes of this

regulation and AR 601-210.

f. Ship QC (SGC). The SGC will conduct his or her portion of the enlistment interview and approve or disapprove the QC and review the applicant's DD 4/3 with the applicant.

(1) During QC procedures, the GC will place emphasis on comparing the applicant's source documents to the applicant's data contained in RZ and the GCRc 680-3ADP data to ensure the following data matches:

(2) Personal information (to include derived names).

(3) Education.

(4) NPS or PS status.

(5) MOS (if MOS was reserved via temporary reservation).

(6) Correct any discrepancy in the GCRc record and the enlistment documents before the applicant selects a MOS, temporary reservation is converted to permanent, or enlists.

g. Once the GC completes the QC, an email message is generated from GCRc to the recruiter, station commander, 1SG and Company Cdr informing them of the record status and additional documents that may be required.

## D-3. Projection Rosters

Local MEPS policy will dictate projection rosters (UMF 727-E), the specific cutoff times for different projection rosters and the number of walk-ins allowed.

## D-4. Scheduling of Applicants for Processing

a. When an applicant is projected for enlistment, four levels of validation are automatically performed by GCRc and an e-mail is sent to the 1SG, Company Cdr, station commander, and the recruiter initiating the projection. The email provides the status of the projection, validation levels passed or failed, and the exact reason for failure.  The recruiter must make the corrections and revalidate the applicant's record. Recruiting personnel are not authorized to enter false data in the record in an attempt to pass validation. The station commander validates completion of all the corrections and the presence of a Parental Consent (DD 1966), if required. The recruiter is then authorized to re-project the record as required.

b. Applicants projected for "Other" processing may continue to process to enlist on the day of their scheduled other processing with Bn Cdr Authorization.

c. Upon confirmation of all projections for the day by the GC shop, submit a UMF 727-E to the supporting MEPS using MEPCOM Integrated Resource System (MIRS) after ensuring all entries are complete and accurate IAW USMEPCOM Regulation 715-4.

**NOTE:** See appendix M-2 for same day administrative or conduct waiver processing.

## D-5. Scheduling of Oral Proficiency Interview (OPI) Processing

a. SGCs must register and schedule OPIs through the OPI Authorization and Reporting System (OARS). Only the SGC at each MEPS is authorized to register for OARS. Associate accounts for other OPI schedulers are authorized under the SGC's account. Authorized OPI schedulers eligible for full access associate account include GCs and Bn Ops personnel. Each station is authorized on limited basis associate account for  scheduling OPIs. The web address for OARS is at the following link: https://oars.languagetesting.com. Required registration information:

(1) Service Branch: Drop-down menu; Army 09L/MAVNI

(2) Location: Drop-down menu; select appropriate Z MEPS ID "ZXXXX- XX MEPS SGC"

(3) TCO #: Use appropriate Z ID number (5-Digit ID Number)

(4) Email: Enterprise email address (.mil email address)

(5) DLPT test site ID: Use appropriate Z ID number (5-Digit ID Number)

(6) Group ID: Use appropriate Z ID number (5-Digit ID Number)

(7) User type: GC

(8) All other fields self-explanatory

b. Allow up to 72 hours for registration/account activation. The SGC will receive an email notification from an OARS administrator when the account is activated. Once activated, SGCs and associated OPI schedulers must request OPIs through OARS.

c. Recruiters must complete the OPI request form and forward it via encrypted e-mail to the SGC or other authorized OPI scheduler. OPI request dates must be a minimum of five (5) business days from the request submission date. OPI requests within the five (5) business day window will be disapproved. The SGC, or authorized OPI scheduler, submit the OPI request via OARS. The recruiter is notified by Bn Ops or MEPS test administrator of the date and time of the scheduled OPI. Download the MAVNI and 09L OPI request forms as well as the OARS OPS schedule instructions from the USAREC Language Page at: https://span.usarec.army.mil/sites/HQ/G3/EEPD/SitePages/Language.aspx.

d. Use the 5-digit test site Z ID number for all OPI requests.

e. OPI Results: OPI results are emailed within 72 hours of date of testing. The DA 330 is the only authorized OPI results OPI results form for MAVNI or 09L enlistments. OPI results produced from OARS are not accepted.

f. Test Proctoring: The only personnel authorized in the test room during the OPI are the proctor and the applicant. Cellular phones, computers and other electronic devices are not allowed during the OPI.

(1) 09L OPI: Conduct all 09L OPI exams at the MEPS. 09L OPI exams include a Reading Comprehension Screening Test (RCST). The RCST is a controlled item and is inspected after each use for any unauthorized markings or tampering. Authorized proctors for 09L OPI/RCST are limited to SGC/GCs only.

(2) MAVNI OPI: Conduct all MAVNI OPI exams at the MEPS or the Bn. Authorized proctors for MAVNI OPI are limited to GCs and Bn Ops personnel.

(3) English OPI: Send all English OPI requests via unencrypted email to Defense Language Institute English Language Center (DLIELC). Do not use OARS when scheduling an English OPI. No English OPI request dates within five (5) business days from the request submission date are authorized. Conduct English OPI exams only at the MEPS or the Bn Ops section. Authorized proctors for an English OPI are limited to GCs and Bn Ops personnel. Download the English OPI request form and form instructions (which include POCs) from the USAREC Language Page.

g. Cancellations: SGCs or associated OPI schedulers must check OARS daily for changes or updates to the OPI exam schedule. Coordinate rescheduling and cancellation of testing with Defense Language Institute Foreign Language Center (DLIFLC) or DLIELC as soon as possible.

## Appendix E
## Procedures for Enlistment into the Delayed Entry Program/Delayed Training Program/Delayed Status (DEP/DTP/DS)

### E-1. Purpose
This appendix outlines procedures used in the enlistment of applicants into the DEP/DTP/DS.

### E-2. Reception of Applicants
The GC shop executes:

a. Check-in of all applicants upon arrival at MEPS and verification of all required documents in GCRc.

b. Collection of any required enlistment and ship documents from applicants.

c. Provides all shippers with their original DD 2807-1 and DD 2808.

**NOTE:** Once the MEPS control desk has checked in the applicant, update the GCRc processing list with the applicant's arrival status.

### E-3. MEPS Processing Drug and Alcohol Test (DAT) Requirements
Any applicant that refuses to submit to a DAT will not continue processing for enlistment into the DEP/DTP/DS (no exceptions or waiver authorized) IAW AR 601-210, chapter 5. Applicants who fail to provide a urine sample at time of processing must return to MEPS within three (3) working days for a DAT. Any applicant who does not provide a specimen within three (3) work days is considered a "refusal to test". The applicant is then placed in a 180-day disqualification period beginning from the day of the medical examination. (See Refusal to Test, MEPCOM Reg 40-8, Chapter 2)

### E-4. General Procedures for Enlistment into the DEP/DTP/DS
After the applicant has passed all required MEPS processing (physical and testing requirements), the SGC designates a GC to enlist the applicant. The enlisting GC executes the following:

a. Initiate a new QC to check the Difference Report for discrepancies from the initial QC. If discrepancies are identified notify the SGC for appropriate actions.

b. Reviews the DD 2807-2, DD 2807-1, UMF 40-1-15, SF 86, DD 2808, and DD1966 and will report any discrepancies to the SGC. SGCs will report any unreported medical conditions as noted between the DD 2807-2 and the DD 2807-1 completed at MEPS to the Bn XO or designated unit reporting official. The GC will upload the medical processing forms in the appropriate folders in ERM.

c. The GC informs the applicant that the concealment of any disqualification may result in a fraudulent discharge. Ask all PS applicants if he/she has family members that are or have ever been part of the Exceptional Family Member program (EFMP).

d. The GC will annotate the free flow remarks of the DD 1966 that all information disclosed by the applicant is in the applicant's record and the applicant fully understands the fraudulent enlistment statements.

e. Verify the GCRc 680-3ADP data and make corrections as needed.

f. Make a final determination of the applicant's qualifications based on enlistment eligibility criteria IAW AR

601-210.

g. Submit 680-3ADP data to REQUEST.

**NOTE**: GCs and recruiters will not change the applicant's general math and general science qualifications to a higher level of math and/or science without supporting educational documents uploaded in ERM.  GCs and recruiters will not select "no credit" or "other" for an applicant's math or science unless specifically directed to do so.

**NOTE**: After any medical actions at MEPS, an updated DD 2808 is required to be uploaded in ERM.

## E-5. Reservation Procedures for REQUEST

a. REQUEST is used to secure a reservation for all applicants who have selected a MOS, program(s), and/or option(s) and will comply IAW appendix B-4 pertaining to REQUEST abuse.

b. Every applicant must possess a valid REQUEST reservation prior to enlisting in the DEP/DTP. Although DS is not considered an enlistment; all DS must possess a valid REQUEST reservation.

c. Make reservations only for applicants who possess a valid SSN (with the exception of applicants enlisting with a TIN from certain overseas locations) verified by documentation IAW AR 601-210.

NOTE: Applicant(s) will not be enlisted for an overseas assignment if they are under the age of 18 prior to the completion of IADT. This restriction applies to any assignment, not within CONUS, Alaska, Hawaii, Puerto Rico and territories in possession of the United States.

d. Recruiters who make an AR reservation will change the "enlistment date" to the actual MEPS processing date within the seven (7) day temporary reservation processing window.

e. If at any time, the applicant's reservation is canceled, the cancellation printout must be uploaded in the applicant's DEP/DTP Admin folder in ERM.

f. ROC counselors will:

(1) Validate the submission to REQUEST of the 680-ADP in the applicant/FS's record in GCRc by reviewing the applicable REQUEST tabs.

(2) ROC counselor(s) must receive an acknowledgement of validation for accuracy and completeness of the applicant record and that the applicant is fully qualified from the GC prior to providing ROC assistance in making reservations.

g. All members of the DEP (RA) /DTP (AR) with an education code of 11S must have a minimum of 7 days in DEP after graduation prior to ship.  All applicants with an education code of 109 must have 7 days in DEP/DTP after the completion of the current school year. Exceptions to policy 109s will be considered based on training availability.

## E-6. GC Procedures after Making REQUEST Reservation

a. Ensure the applicant understands the enlistment MOS, TOS, BCT location, incentives, and first duty assignment (if the applicant is enlisting under Program 9B - US Army Station/Unit/Command/Area Enlistment Program).

b. Complete the DD 1966/3.

c. GCRc will place the appropriate statements on DD 1966/3, block 32, IAW AR 601-210.

d. Brief the applicant concerning the requirement of Sure Pay (SF 1199A (Direct Deposit Sign-Up Form) prior to shipping for AD or IADT.

e. For NPS applicants print the following documents for MEPS processing:

(1) DD 1966/1 completely coded for DEP/DTP-in (RA and AR).

(2) A current 680-3ADP with all current data (RA and AR).

(3) The REQUEST reservation sheet for the applicant (RA and AR).

(4) The automated DEP-in enlistment annex (the applicant's copy printed from GCRc) (RA only).

(5) The automated AR enlistment annex (the applicant's copy printed from GCRc) (AR only).

(6) A copy of the DA 5435-R (AR only).

(7) Any changes made to the finalized SF 86 requires the signing of a new Certification of Applicant page.

f. Upon completion of the MEPS pre-enlistment interview (PEI), the SGC, or designated representative, conducts a final review of the applicant's enlistment record.

g. Upon return of the completed DD 4 series, the SGC or designated representative reviews with the applicant the appropriate entries to ensure all data is correct based on the REQUEST reservation and source documents.

(1) The applicant and SGC or designated representative initial any corrections made, except those corrections made in these areas of the DD 4 series where a new DD 4 series is required:

(a) Date of enlistment.

(b) Term of service.

(c) Approval and acceptance.

(d)  Confirmation of enlistment.
(2)  Have the applicant read, and initial Item 8c of the DD 4. Prior to swearing in, have the applicant initial Item 19 (Initials of Enlistee/Re-enlistee block).
(3)  SGC or designated representative completes, signs, and dates Item 14 of the DD 4.
(4)  SGC or designated representative uploads all documents in ERM DEP Admin folder.

## E-7. Qualified Not Enlist (QNE) Procedures

If the SGC cannot overcome an applicant's objection to enlist, prior to ceasing the applicant's processing the SGC contacts the responsible company leadership or Bn Ops to assist in overcoming the applicant's objections. If the objection(s) are not overcome, cease processing of the applicant.

## E-8. GC Actions After Oath

Once the applicant swears in and returns to the GC shop with a signed and completed DD 4 series, the SGC:
a. Confirms the enlistment by reviewing the DD 4 series.
b. Uploads the DD 4/1 and DD 4/2 into the applicant's DEP/DTP folder in ERM.

## Appendix F
## Procedures for Enlisting Prior Service and Glossary Non-Prior Service (Regular Army)

## F-1. Purpose

This appendix specifically outlines additional requirements for the processing of applicants considered PS as defined IAW AR 601-210, chapter 3 or GNPS as defined IAW AR 601- 210, chapters 2 and 3.

## F-2. General

a. ASVAB test all PS and GNPS applicants without valid test scores, to include the AFQT. PS and GNPS applicant may use their original or prior test scores. Use the most recent test scores in cases where the applicant has tested after their original test for enlistment.
b. Prior to accessing from the DS, applicants must have:
(1) Valid DAT and HIV results.
(2) Verification of suitability results, IAW appendix G. If not, resubmit the suitability results.
(3) Current members of the Individual Ready Reserve (IRR) or the Reserve Component (RC) of any service, other than the Army IRR, processing for enlistment into the RA or AR must have an approved DD 368. Refer to appendix F- 10 and AR 601-210, chapter 5 for procedures for transferring components and obtaining the DD 368.

## F-3. Procedures Unique to PS/GNPS Applicants Enlisting into the DS

a. Process PS and GNPS applicants for enlistment into the RA as directed by DA and the HRC Business Rules. Processing is completed through normal REQUEST reservation procedures.
b. All PS and GNPS applicants enlisting in the rank of E-5 and above require an electronic grade determination IAW AR 601-210, 3-17. The only headquarters authorized to provide a follow-on assignment to these Soldiers is HRC.
c. No applicants with PS enlisting into the active component will be enlisted into the DEP, to include those who have previously enlisted into any RC of the Armed Forces, regardless of the remaining military service obligation (MSO). Place these applicants into the DS.
d. Conduct the enlistment of these applicants IAW AR 601-210 and this regulation, appendix D, with the exception of the following:
(1) Do not execute the DD 4 series at the time of the REQUEST reservation. The DD 4 series is executed at the time of enlistment (ship date). Applicants enlisted into the DS will not receive a DD 4/3.
(2) The GC will complete the following after the REQUEST reservation is completed to enlist applicant into the DS.
(a) The applicant and GC sign the automated enlistment annex.
(b) The applicant signs all applicable pages of the SF 86.
(c) Inform PS/GNPS enlisting from an AR or ARNG unit on a conditional release (DD 368) or PS/GNPS with less than 90-day break in service must have all initial issue when shipping IAW AR 601-210, chapter 2-12.
(3) The GC will complete the following entries at the time of enlistment (ship date):
(a) DD 1966/1, item 17.
(b) The applicant signs DD 1966/3, block 29c.
(c) The GC signs block 31e of the DD 1966/3.

(d) DD 1966/3, items 32b and 33a-f.

(e) All required PS and GNPS statements that are applicable to the applicant are printed in the Remarks section of DD 1966/4.

(f) The DD 368, automated enlistment annex, and the DD 1966 series are hand carried to the AR unit by the Soldier.

(g) The DD 4 series is executed on the date of the RA enlistment (ship date) and provided to the reserve unit along with the DD 368 to facilitate appropriate discharge of the enlistee.

(h) Members of a TPU are not processed unless the appropriate release authority has an approved DD 368.

(i) Do not process members of a TPU unless they have completed IADT and been awarded an MOS. EEPD will work the exceptions request process.

(4) Applicants in a reserve unit that have not completed IADT require a 5-21 exception to AR 601-210, chapter 5-21.

(5) The completed DD 368 is sufficient authority to cancel an AR or ARNG training reservation.

e. Use the DD 368 for applicants serving in a TPU, either AR or ARNG. The authorized RC representative must sign the form.

## F-4. USMA ordered to Active Duty.

a. Cadets will follow the assignment instructions on the order provided by USMA.

b. Temporary reservations are not authorized. GC must contact the ROC for a reservation. Utilize the recruiting program code of "OR" - Ordered to Active Duty to assist with tracking cadets. Build the code in GCRc and transfer it to the REQUEST record.

c. USMA will provide the disenrolled cadet ordered to AD with the following:

(1) Notification memorandum directing the cadet to report to the nearest station.

(2) Copy of AD order from USMA. Official order will have an order number and signature.

(3) Copy of their separation physical; both the DD 2808 and 2807.

NOTE: The cadet will be a 'no-med'. If any condition is revealed in screening that would normally preclude a 'no-med' enlistment, contact EEPD Policy.

d. Cadets are processed as PS applicants.

e. Cadets are ordered to extended active duty (EAD) in the grade indicated on the order.

f. Cadets who have completed at least 180 days at USMA are considered BCT graduates.

g. Cadets are screened under, and must meet, the current PS ht/wt standards even if the cadet was separated from USMA for ht/wt.

h. All cadets must have a DD 214 and a copy of their discharge order prior to processing.

i. Recruiters will:

(1) Submit a workflow to EEPD Policy within five (5) working days via GCRc for every USMA cadet ordered to AD.

(a) The workflow type will be 'missing official documents' regardless of whether or not the disenrolled cadet has hand carried the documents to the station.

(b) Recruiters will receive a response back from EEPD Policy to continue processing after the orders have been verified. If the cadet did not have a copy of his/her orders, Policy will add a copy to the record. If the cadet did not have a copy of the separation physical, Policy will instruct the recruiter how to obtain a copy.

(c) Ensure the cadet meets mental and conduct qualifications. Cadets are processed as "no-med". (Ensure the cadet meets the retention standards in AR 40-501, chapter 3, Standards of Medical Fitness.)

(d) Pull a Re-enlistment Eligibility Data Display (REDD) Report and upload in ERM. Use the last ASVAB qualifying score.

(e) Complete all information in the SF 86.

(f) Upload source documents required for a PS enlistment in ERM.

(g) Schedule the cadet for processing.

(h) Ensure that the cadet is projected for all required processing. Build and project as a PS. LS results are required. The cadet will not require swear-in or require the execution of DD4 at time of entry into the DS.

(i) NOTE: All cadets will be processed. Notify EEPD Policy immediately if the cadet is disqualified for any reason.

(j) GCs will:

(1) Ensure appropriate projection of the former cadet is made in MIRS and scheduled to process on the UMF 727. Validate the cadet's record and ensure successful completion of the Quality Review Program (QRP).

(2) For initial processing, validate the SF86 and save to the record. Complete all standard form signature pages required prior to sending the record to REQUEST.

**NOTE**: Ensure the build is completed correctly through the GCRc portion of the 680-ADP prior to saving and submitting the record.

(4) Ensure the information in REQUEST under the PS tab is correct. Contact the ROC for assistance in completing the permanent reservation. If cadets do not have an MOS on their orders, they will select an MOS. NOTE: Some cadets are considered MOS qualified based on their PS status before entering USMA.

(5) Complete the DA 3286 DS Annex.

(6) Cadets are not entitled to enlistment incentives, to include the Montgomery GI Bill or Post 9/11.

(7) Upon completion of DS Annex, ensure the former cadet completes the necessary checks by FPing by the MEPS Ops.

(8) Provide the ship packet with appropriate documents to the MEPS and ensure the former cadet understands that he/she will return to the MEPS to swear in and ship to training/duty location.

(9) The DD 4 is executed when the cadet returns to ship.

(10) Complete the DA 3286 DEP out.

(11) Validate SF 86 with signature pages and complete the DD 1966.

**NOTE**:  Ensure the former cadet is eligible to ship verified with correct JPAS prior to ship.

(12) Ensure the enlistment rank is as indicated on the order.

(13) Ensure former cadets with an assigned MOS and TOS form USMA have the MOS and TOS correct in the REQUEST reservation. (Contact the ROC if any discrepancies.)

(14) Ensure the MEPS is furnished copies of appropriate documents to include any amendments to the orders to AD.

(15) Once the former cadet ships, send the completed DD 4 back to USMA G1 as indicated on the orders.

j. EEPD Policy will:

(a) Contact USMA G1 for amendments to the orders, if applicable.

(b) Contact USMA G1 immediately for disqualified cadets.

## F-5. Reserve Officer Training Corps (ROTC) Cadets Ordered to AD

a. Procedures for processing ROTC cadets ordered to AD only applies to disenrolled ROTC Scholarship recipients ordered to AD. Temporary reservations are not authorized. GCs must contact the ROC for a reservation. Utilize the recruiting program code of "OR" - Ordered to Active Duty to assist with tracking cadets. Build the code in GCRc and transfer it to the REQUEST record.

NOTE: Sister Service ROTC disenrolled cadets ordered to AD will be processed the same as Army ROTC disenrolled cadets ordered to AD.

b. Army ROTC processing includes the following:

(1) Cadets are disenrolled from ROTC and ordered to AD by US Army Cadet Command (USACC).  Copies of the AD orders are provided by USACC.

(2) Notification order is issued to the cadet to report to the nearest station by USACC.

(3) Recruiters conduct eligibility screening, to include mental and physical qualifications. Cadets must have a DD 785 (Record of Disenrollment from Officer Candidate-Type Training) and a copy of their discharge order prior to processing.

**NOTE**: USAREC is responsible for conducting all screening related to MOS assignment, to include medical examination and dependency. For conduct (moral issues), USAREC is responsible for conduct that occurred after disenrollment but not during ROTC or for the reason of disenrollment. The orders to AD constitutes a waiver (if applicable). If cadet was disenrolled for major misconduct, the recruiter must contact EEPD Policy immediately.

(4) Schedule the cadet for the ASVAB if the cadet has never tested or requires to be retested. Cadets must classify as an I-IIIA/B (CAT IV not authorized). Schedule the cadet for any other special testing required.

(5) All cadets must be medically qualified. Cadets are projected for a full accession physical at the MEPS. The DD 2807-2, current ROTC physical, medical records, etc., are provided to the MEPS medical personnel for QRP in advance of the projected processing date. Schedule the cadet for the Airborne screening physical, Armed Forces Vision Test (AFVT) or any other additional physical testing that may be required for the cadet to qualify for a specific MOS.

(6) Cadets must meet physical standards to include ht/wt. Cadets without PS are screened under current NPS ht/wt standards.

(7) All cadets are processed as PS applicants. Cadets can enlist at a higher grade than what is indicated on the orders if they provide transcripts with credits that show they qualify for advanced grade.

(8) For additional processing steps for a cadet ordered to AD refer to appendix E-5.

**NOTE**: Cadets who receive orders directing them to AD may be directed to serve a required length of time (TOS can vary) that the former cadets are required to complete. For example; 24/36/48 months. If a cadet is ordered to

serve 36 months or less and requires training, the cadet can only select an MOS with a TOS of 36 months. The ROC will make and update the reservation removing the training time associated. DD Form 4 will reflect the "even number with no weeks" for those who have a committed TOS. If the cadet chooses an MOS with a TOS longer than the time instructed on the orders, the cadet must acknowledge it. GCs must indicate by annotating in the free form remarks "_____has been counseled and acknowledges the commitment time of service for the MOS selected exceeds the time of service reflected in their orders to AD." In the cases where the cadet selects an MOS with a longer TOS than what is on the orders, the DD 4 will reflect the "even number with weeks" TOS.

## F-6. Disenrolled ROTC Cadets Requesting to Enter Active Duty

Processing of ROTC Scholarship or non-scholarship contracted cadets that have disenrolled and are requesting enlistment to AD. This does not apply to those cadets that have been ordered to AD.

a. A ROTC cadet who has disenrolled from a ROTC program and who has not been ordered to AD and desires to enlist in the RA, may enlist under the following guidelines:

(1) The cadet must have a completed and signed DD 785 along with discharge orders from USACC before processing can be initiated.

(2) Have a valid ASVAB and any other required special test result.

(3) The cadet is informed that they are entitled to bonuses that are associated with the MOS they enlist for IAW the current USAREC messages.

(4) The cadet is informed that they are not eligible for SLRP.

b. For cadets requesting enlistment to AD, the recruiter and GCs will:

(1) Indicate on the 680-3A-E and the 1966 Series (blocks 22B and 24A) that they are PS and have participated in ROTC.

(2) Build the record in GCRc and RZ as GNPS with "1" day of service for those who have no Active Federal Service (AFS).

(3) Build record in GCRc and RZ as PS with the actual amount of days of AFS for those that have fewer than 179 days of AFS time.

c. Applicants who have served on AD for more than 179 days are defined as PS. These applicants are processed IAW current HRC Business Rules and are not entitled to incentives.

## F-7. Processing Disenrolled Service Academy Applicants Not Ordered to AD:

Processing of Disenrolled Service Academy applicants not ordered to AD. This does not apply to USMA cadets ordered to AD.

a. Disenrolled Service Academy applicants who have not been ordered to AD and desire to enlist RA, may enlist under the following guidelines;

(1) Applicants must be released without a remaining MSO.

(2) Applicants will be processed as GNPS/PS IAW AR 601-210.

(3) Applicants will be processed IAW the current HRC Business Rules.

b. Applicants currently in an Academy pending discharge are not eligible to process until they are in receipt of their DD 214.

(1) The applicant's DD 214 will not reflect an RE Code but will have a narrative reason and authority for separation.

(2) If the DD 214 reflects a narrative reason listed in AR 601-210 that requires a waiver, the waiver must be initiated and processed through normal channels.

NOTE: Current open/closed categories and waiver restrictions apply.

c. GCs will be advised of the following:

(1) Applicants are not entitled to any enlistment incentives.

(2) Applicant's pay grade will be determined by the amount of college credit the individual has IAW AR 601-210 only.

(3) Applicants must attend BCT if he/she has not completed 180 days or more as a cadet at West Point. Attendance time as a cadet can be found on the DD 214, item 18 (remarks).

(4) Cadets who have been separated for three (3) years or more from USMA must attend BCT. Cadets from the other Services must attend BCT.

d. Questionable cases concerning processing must be submitted via workflow to EEPD Policy. All reservations must be made through the ROC.

## F-8. Processing Warrant Officer Course (WOC) Selectees from Sister Services

a. If a currently serving member of any Service decides to pursue the Army WOC, they must submit an

application, sit before a selection board and receive a selection notification for the program.

b. The phases of processing for WOC:

(1) The selectee completes an application packet. The application packet is reviewed and evaluated for selection by a centralized board.

(2) The selectee is notified by HRC.

(3) All required testing of the selectee is completed during the application process.

(4) Selected candidates take the physical as part of the application process. Selectees must have an HIV screening within two years.  Selectees must meet PS ht/wt standards.

(5) Upon notification of selection by HRC, selectee immediately report to nearest station and provide recruiters with the selection packet and required documents for enlistment.

(6) The GC must contact the ROC for a reservation.

(7) The selectee is scheduled to ship to BCT based upon the reservation.

**NOTE:** BCT is required for all PS personnel entering the RA, regardless of component who have not completed an Army BCT, US Marine Corps (USMC) Basic Training, completed training for Air Force or Navy Special Operations Forces, or Air Force Security Police.

c. Station commander/recruiters' actions:

(1) If necessary, assist the potential selectees in obtaining an approved DD 368 through their Servicing Personnel Office. Verify the DD 368 has a projected RE Code, SPD code, ETS, Air Force Specialty Code (AFSC) or Navy Rate, and annotation of any lost time in whole days, provided in the Remarks block on page 2 of the form.

(2) Obtain a REDD Report and upload in ERM. Use the last ASVAB qualifying score for the selectees.

(3) Upload documents required for enlistment in ERM. Include the selectee's complete physical.

(4) Project the selectee for all required processing. LS results are required. Selectees will not require swear-in or require the execution of DD 4 at time of entry into the DS.

d. GC actions:

(1) Ensure selectees have a current security clearance. DO NOT initiate an SF 86.

(2) Ensure that the enlistment occurs the day after separation from the parent Service.

(3) Break in service is not authorized.

(4) Selectee must have a completed DD 214 and discharge orders from their Service on ship day.

(5) Ensure the selectee enlists in the Army at their present grade and for a period of four (4) years.

(6) Provide selectee school reporting information:

(7) HHC, Warrant Officer Career College (WOCC), Building 5910, Ft Rucker, AL.

(8) Movement of dependents at government expense is authorized provided selectee is eligible under JFTR. Travel by POV is authorized.

(9) Hand-carry their complete MPRJ to Ft. Rucker, AL.

(10) Uniform issue is obtained at Ft. Rucker.

(11) Rations and quarters are available and must be utilized.

(12) An information and welcome packet is found at: http://usacac.army.mil/cac2/WOCC/

(13) Ensure the MEPS Cdr is furnished copies of appropriate documents as listed in c and d above to include amendments to the AD orders.

(14) Once the selectee ships send the completed DD 368 and DD 4 back to appropriate Service.

e. GCs and recruiters can find inter-service transfer information at: http:// www.usarec.army.mil/hq/ warrant/

## F-9. Processing Procedures for Applicants from Sister Services

Processing procedures for applicants from all other Services IAW HRC Business Rules.

## F-10. PS Applicants Processing Who Require a Conditional Release, DD 368

Applicants processing for enlistment into the RA or AR and are current members if the IRR or RC must have an approved DD 368 prior to processing for enlistment.  This excludes the Army IRR.  Applicants who are in the Army IRR who desire to transfer into a TPU will be given to the local 79V Retention and Transition NCO at a local reserve unit.

 a. U.S. Marine Corps (USMC) IRR members must be released from the IRR with the approval of the first GO in their chain of command IAW MARADMIN Message 156/03.

(1) Submit requests via email with the DD 368 attached through the following:  mcirsa_ima@usmc.mil.

(2) The completed DD 368 will have the first five (5) digits of the SSN blacked out.

(3) Once the request has been submitted, allow at least five (5) days for processing.

(4) MARCORRES customer service is (800) 225-5082.

(5) The SGC will ensure the Soldier's DD 4 is forwarded to the email address above within 24 hours of Soldier

shipping/accessing.

    b. US Navy (USN) IRR members must be released by the Cdr of the naval district where the person is assigned or the Chief of Naval Personnel.

    (1) Email ATTN to HR Assistant Conditional Release: Pers-913_DD368@Navy.mil .

    (2) The completed DD 368 will have the first five numbers of the SSN blacked out per USN's PII policy.

    (3) Once the request has been submitted, allow at least one week for the request to be processed. The customer service number is (866) 827-5672.

    (4) The SGC will ensure that the DD 4 is forwarded to the above email address within 24 hours of the Soldier shipping/accessing.

    c. US Air Force (USAF) IRR members must be released as follows:

    (1) Fax the DD 368 to (478) 327-2215, must include a fax cover sheet. Or mail to: 18420 E. Silver Creek Avenue, Building 390, Mail Stop 68, Buckley AFB, CO 80011.

    (2) SGC will ensure that the DD 4 is forwarded to the above address within 24 hours of Soldier shipping/accessing.

    (3) Air National Guard members. Unit Wing Cdr.

    (4) Air Force Reserve members. Unit Wing Cdr.

    d. Coast Guard (CG) IRR Conditional Release:

    (1) Website address. http://www.uscg.mil/rpm/rpm3/irr/

    (2) Mailing address: Commander (RPM-3) Personnel Service Center US Coast Guard Stop 7200 4200 Wilson Blvd STE 1100 Arlington, VA   20598-7200

    (3) The SGC will ensure that the DD 4 is forwarded to the above address within 24 hours of the Soldier shipping/accessing.

    e. ARNG. The approval authority for Soldiers assigned to the ARNG will be the state MILPO/G-1 IAW: National Guard memo dated 15 October 2010. Adjutants General may delegate the approval authority to grant a DD 368 below the first GO in the chain of command. The SGC will ensure DD 4 is forwarded to the appropriate State Adjutant General and send an information copy of the DD 368 to the losing ARNG command indicated in item 1 of the DD 368 within 24 hours of the Soldier shipping/accessing.

    f. AR TPU Conditional Release. All requests for conditional release will be submitted through the Soldiers' chain of command to the approving authority.

    (1) The approval authority for DD 368 (Conditional Release) for ALL AR TPU Soldiers is the USARC Assistant to the Deputy Commanding General (ADCG) who may further delegate some or all of this authority to USARC G-1.

    (2) Soldiers with 24 months or less in a SELRES approval authority rests with HQ, USARC. Disapproval authority rests with USARC OFTS GOs (7th CSC and 9th MSC) and may be delegated to the first GO in the Soldier's chain of command.

    (3) The SGC will ensure that the DD 4 and DD 368 is forwarded to the appropriate TPU as indicated in Item 1 of the DD 368 within 24 hours of the Soldier shipping/accessing.

    g. The SGC will ensure that the DD 4 and DD 368 is forwarded to the appropriate TPU as indicated in Item 1 of the DD 368 within 24 hours of the Soldier shipping/accessing.

    h. Prior approval from HRC EIS if enlistment grade is E-5 and above.

    i. NOTE: Refer to AR 601-210, chapter 3-17b (3) for proper procedures on processing an enlistment if pay grade is E-5 or above.

    j. RA Applicants who are current members of the Army IRR will have a DD 368 completed on their ship date. The ship GC forwards a hard copy or emails a copy of the completed DD 4 and the DD 368 to the address below within 72 hours of ship date: Commander, HRC, 1600 Spearhead Division Avenue, Department 364, AHRC-EPF-M, Fort Knox, KY 40122 Email:  usarmy.knox.hrc.mbx.epmd-irr-separations@mail.mil.

    k. Obtain additional contact information for DD 368 releases by accessing: http://span2010.usaac.army.mil/pub/RC-G3/Div/Pages/Policy.aspx

## F-11. Movement of GNPS/PS Soldiers from Place of Enlistment

When an AIT is not conducted at an Army installation, PS/GNPS and Phase II Split Option (Alternate Training Program ATP) Soldiers are sent to the nearest Army RECBN listed in Table F-1.

**Table F-1 Army Reception Battalion list**

| AIT | Reception BN |
|---|---|
| Presidio of Monterey, CA | Lwood |
| Gulfport Naval Station, MS | Lwood |
| Sheppard, Air Force Base, TX | Sill |
| Pensacola Naval Base, FL | Lwood |
| Eglin AFB, FL | Lwood |
| Goodfellow AFB, TX | Lwood |
| Panama City Coastal System Station, FL | Lwood |
| Ophthalmic Support and Training Activity, VA | Jackson |
| Naval Amphibious Base (JEBLC-FS), VA | Jackson |

**NOTE**: The Army School of Music (SOM):

a. Phase II will report directly to SOM, Naval Amphibious Base (JEBLC-FS).

b. PS will report to Ft. Jackson for in-processing prior to reporting to the SOM.

**Table F-1 Army Reception List**

# Appendix G
# Applicant Background Screening (ABS): Technical (tech) Check and National Agency Check and Local Check (NACLC)

## G-1. Purpose
This appendix outlines the process to ensure proper background submissions (tech check and NACLC) and required actions by GCs and Ops personnel.

## G-2. General
Bn Cdrs are responsible for the overall ABS program of the unit.

## G-3. Primary Purpose for Submissions
Tech check, which is defined as the MEPS fingerprint submission and NACLC submissions are requests for applicant conduct information from the Army to Office of Personnel Management (OPM) and the FBI. Tech check results are required within DEP plus 7 days, acceptance of the NACLC submissions is required to take place within 14 days of enlistment into the DEP/DTP/DS, or sooner if ship date is prior to 14 days from permanent reservation.

a. The enlisting MEPS or BN responsible for suitability procedures at that location is responsible for the successful submission of all NACLC and secret clearance investigations not covered in b. below. MAVNI Single Scope Background Investigations (SSBIs) are also the MEPS/BN responsibility when the program is open.

b. Security Interviewers (SI) located at Personnel Security Screening Program (PSSP) detachment at Fort Knox are responsible for the successful submission of all Tier 5 (top secret (TS) SSBI, with the exception of MAVNI)), Personnel Reliability Program (PRP), 09S and 09W investigations. Assistance by the station or MEPS will be coordinated from the Fort Knox location. OPM conducts background investigations (BIs) for all Federal agencies using the following submission methods:

(1) Tech checks: Submitted by MEPS personnel.
(2) NACLC: Submitted for applicants requiring no clearance.
(3) NACLC and/or secret: Submitted for applicants who require a secret clearance for their MOS.
(4) SSBI or TS: submitted for all applicants requiring a TS clearance by the SA.

## G-4. Tech Check Submissions
a. MEPS personnel submit tech checks via the electronic LS FP device. It is utilized in determining every applicant's suitability for enlistment.

b. GCs ensure that all enlistments have FPs captured by MEPS personnel for submission at the time of entry in the DEP/DTP/DS regardless of MOS, option, PS status, or prior security clearances granted. MEPS submits all FPs

electronically, provided results have not returned within 120 days of the new submission date.

c. Tech check results remain valid for the duration of time spent in DEP/DTP/DS.

## G-5. Tech Check Results

a. Case Closing Transmittal (CCT) that reads "FBIF - No Record" means that OPM and the FBI were able to read the FPs and the FPs returned no law violations.

b. The RAP sheet is a notice sent from OPM alerting the Army that the "subject" (applicant or FS) has charges tied to their FPs.  Normally, the RAP sheet returns with the CCT as a separate attachment.

c.  Upload results received into the ENTNAC RAP Sheet folder in ERM. Results typically post within (7) seven days of DEP/DTP/DS status or after following match procedures. Address MEPS personnel or the NACLC office for assistance with results not returned within seven (7) days for the retrieval of results.

(1) The Applicant Background Screening Manager (ABSM) uploads the tech check results into the FS's record and in the Core Admin folder titled ENTNAC RAP sheet folder. Results are part of the ship record. Upload the UF 601-210.10 (secret only) in ERM at enlistment. USMEPCOM 680ADP showing favorable results in the background section RSLT=F or under the work history with a WKID result of B006F can also be used as proof of favorable MEPS FPs by uploading either into the ENTNAC RAP sheet folder.

(2) When a FS is a match, and the charges on the RAP sheet are identified in the enlistment record, the ABSM enters "Favorable Suitability Results," date posted, and the ABSM's rank and name using the Remarks menu in GCRc. This requirement is only for FSs who return with a RAP sheet. Favorable results are defined as all of the charges listed on the RAP sheet are listed on the SF 86 at DEP/DTP/DS. If all charges are not listed, process the FSs IAW with appendix G-9a (3).

d. A CCT that returns as "FBIF - Unclassifiable" indicates inability of the FBI to read the FPs. FS must then return to MEPS to re-FP within five (5) working days of CCT return. The GC shop informs MEPS that the FPs are a resubmission and ensures that MEPS places the original case number in the Original Case Assignment area.

e. Results are returned in the MEPCOM Background Investigation Report (BIR) system. To attain access to the BIR, the GC shop requests access through MEPCOM.

## G-6. NACLC and/or Secret Submissions.

a. An accepted NACLC submission is required for all applicants enlisting in a MOS not requiring a TS clearance. The Army Personnel Security Center of Excellence (PSCE) must accept the investigation within 14 days of enlistment.

b. GCRc electronically submits all NACLCs to OPM the day of permanent reservation processing.

c. Submit applicants requiring a secret clearance as NACLC/secret.

d. GCs complete or ensure the following:

(1) Applicant RZ record must pass all levels of validation at the time of submission.

(2) Send FPs (tech check); if not, a "PR NAC Info" error is received. If FPs are not received by OPM within 30 days, the NACLC or NACLC-secret investigation is discontinued. The FP results for an applicant with previous processing are valid only if within 120 days prior to the NACLC submission.

(3) Ensure SF 86 is completely accurate and in ERM. Applicants review the form for accuracy and completeness and sign within 90 days of enlistment.

(4) Verify that the following are digitally signed and stored in ERM:

(a) Medical Release of Information Statement

(b) Release of Information Statement

(c) Certification of Applicant

(d) Signature Release of Credit Check

(5) NPS applicants require a DEP-in Annex A and Reserve Annex in ERM for a valid submission.

(6) After submission, GCs verify in the "Select a Person screen, JPAS Processing, Messages" of proof of acceptance by Army Investigative Enterprise Service (AIES). A message of "Success-JPAS Status A" is proof.

e. ABSMs review the Clearance Status page daily in BIR Zone to verify the previous day's submissions from their respective MEPS by:

(1) Entering "Reports" in BIR Zone.

(2) Clicking on the "Processing" tab.

(3) Selecting the "Clearance Status" page.

(4) Selecting processing date (run the report using two working days prior to start date for the best information).

(5) Selecting either "Display the Report on the Screen" or "Send via email" to receive the report.

(6) Verify the date displays in the "JPAS Clearance Accepted" block and a statement of acceptance appears on the DD 1966 series upon submission acceptance.

(7) If rejected, the reason for submission rejection appears under "JPAS Processing; Messages" in GCRc. Recruiters then make "AIES rejections" error corrections and resubmit NACLC/secret clearances. The MEPS/BN with enlistment credit is responsible for the successful submission within DEP plus 14 days. Fort Knox PSSP detachment is responsible for the submission of the TS, PRP, 09S and 09W clearance and will assist stations with corrections. Make all required corrections within 14 working days of the error notification. Resubmission is required until the investigation is accepted.

(8) EEPD, Background Screening Branch can assist GCs in making corrections to the errors returned by JPAS. Contact the Background Screening Branch via email. The GC shop is primarily responsible for corrections and verification of the submission. Failure to make immediate corrections can lead to delays in the FS's ship date.

(9) Include the error message and the corrected information in the assistance request emails. For example: Place of birth is not consistent with Boyd Crowder, 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. Place of birth should be Harlan, KY.

(10) Only Background Screening Branch can correct the following submission errors, via email (if an error outlined in a-c below is received, immediately email the Background Screening Branch for assistance):

(a) SSN or SSN/name mismatch caused by the FPs submitted with different information than the investigation.

(b) Date or place of birth mismatch.

(c) Name is not consistent with SSN.

(d) PID data does not match.

(11) Background Screening Branch clears the information with OPM and submits the investigation.

(12) The GC initiates an UF 601-210.10 (The Security Clearance Questionnaire) for applicants who enlist in an MOS listed in DA Pam 611-21 as requiring a secret clearance (with the exception of 31B/K and 37F). (If DA Pam 611-21 states the clearance level is confidential, follow the instructions for a secret submission.) Applicants are required to answer all questions. Explain all yes answers in detail. Also, all yes responses require a review by the assigned SI except for Question 10 (citizenship). The SGC/GC will sign and approve all UF 601-210.10 that have no yes answers outside of question 10. If the yes answer(s) is for law violations, the SGC/GC will sign the UF 601-210.10 if the law violations are traffic offenses as defined by AR 601-210 only and the number doesn't exceed five (5). The exception to this is for applicants enlisting into OCS or WOFT, SI must interview those applicants and complete the UF 601-210.10. If there is still an assigned SI at the MEPS, that SI, is the approval authority for all that require a secret clearance.

(13) One of the Fort Knox PSSP detachment supervisors are the final authority for questions of qualification for secret clearance. Confirm enlistments only when the SI determination is complete. The completed UF 601-210.10 is uploaded in the Core Admin folder in ERM. All interviews required by the Fort Knox PSSP detachment will be accomplished via phone to 1-833-290-0109.

(a) The SI screens applicants desiring to enlist in a MOS listed in DA Pam 611-21 as requiring a TS or PRP level clearance. FS enlisting in a MOS requiring a TS or PRP clearance must have a completed and approved SI worksheet uploaded in ERM or free form remarks from the SI attesting to the approval to continue to process for a TS or PRP clearance at the time of DEP/DTP/DS. The worksheet must be uploaded prior DEP/DTP/DS. Favorable tech check results and proof of their TS or PRP clearance submission is required prior to 10+QC ship to IADT or unit of assignment. The SI or PSSP detachment is responsible for the successful submission of the TS or PRP clearance within 14 days of entrance in the DEP/DTP/DS.

(b) Approval for continued processing for secret clearance is annotated in the free form remarks by the SI for FSs enlisting in a MOS requiring a secret clearance or with the UF 601-210.10 marked approved and signed by the SI responsible. MEPS or Bn Ops submit the secret clearance within 14 days of DEP/DTP/DS. Favorable tech check results and proof of clearance submission is required to ship to IADT or unit of assignment.

(c) FSs enlisting in an MOS that requires no clearance will have a NACLC submitted and accepted within 14 days of DEP/DTP/DS by MEPS or Bn Ops. A favorable tech check and proof of clearance submission is required to ship to IADT or unit of assignment.

(d) Recruiters are responsible to correct all AIES errors returned for action within the required 14 days of DEP/DTP/ DS regardless of the clearance level. MEPS/BN Ops personnel are responsible to follow up with stations and assist them with the correction of AIES errors.

(e) GC shops without an on-site SI will adhere to the following procedures:

1. Validate that the SF 86 is in ERM and contact the supporting SI for an interview. The SI will review the SF 86 in ERM and perform a telephonic interview after the SGC/GC contacts 1-833-290-0109.

2. The SI will inform the SGC and/or GC of the results of the interview and will upload the interview form with the approval or disapproval. The SI may also document the interview outcome in the free form remarks.

(f) During DEP-out procedures, if the GC determines that the FS is no longer qualified for the MOS IAW DA Pam 611-21, the GC will renegotiate the contract or initiate separation of the FS from the DEP/DTP/DS. The GC notifies the SI of the action taken.

(g) MOS 31B, 31K and 37F require PRP screening from the SI. The SI or PSSP detachment process all ETPs for MOS 31B/K and 37F relating to security approval. Proponent approval is not required for security clearance issues. PRP screening approval/disapproval must be uploaded in ERM.

## G-7. Processing PS and GNPS.

a. Submit PS and GNPS for a tech check at the time they enlist in the DS provided the previous results are more than 120 days old. If a PS or GNPS requires a level of investigation higher than what they currently hold, FPs are submitted regardless of the date of previous FP results and an email notification is sent to EEPD, Background Screening Branch.

b. Proof of a clearance verified by the SI (performed by a terminal check with the Central Clearance Facility (CCF) or a JPAS check through one of the detachments or the Background Screening Branch) is required for PS and GNPS enlisting Option 18 or in an MOS that requires a security clearance. Proof of clearance is captured and uploaded by the GC into the "Security Clearance Verification" in the Core Admin folder in ERM. Process PS and GNPS applicants that do not hold the clearance level for that MOS in the same manner as a NPS enlistment.

## G-8. Processing Enlistment Records after Enlistment

a. The GC shop pulls the BIR report from the BIR system to verify submission acceptance. If, after 72 hours of FP submission, there is no case number, the GC shop must notify MEPS personnel. MEPS personnel verify the FP submission and acceptance at MEPCOM and then transmittal to and acceptance at OPM. In the case that they were not, the GC shop and MEPS commit and submit the FPs at that time. It is imperative that FP acceptance occurs within seven (7) days of DEP/DTP/DS as this also affects the investigation submission. All GCs and Bn Ops must remain current on the status of submission of all FPs.

b. The Bn ABSM reviews the "Clearance Status" page in BIR Zone daily, ensuring the submission and acceptance of required investigations, corrective action for a submission error is outlined in appendix G-6. In cases where the FS does not appear on the Clearance Status page, contact EEPD Background Screening Branch for assistance.

## G-9. Procedures for Applicants Identified as a Match (RA and AR)

a. When a RAP sheet is received on a FS:

(1) The ABSM reviews for any discrepancies between the applicant SF 86 and the RAP sheet to determine if all charges listed on the RAP sheet were listed at initial enlistment (DEP-in).
**NOTE:** Some charges may not appear on the stored version of the SF 86 if the date or offense level is outside the scope of the investigation. The ABSM additionally checks the Entrance National Security Questionnaire (ENSQ) screen to ensure the charges were previously revealed and will check the Difference Report to ensure that items were not entered on the SF 86/ENSQ after the date of the FP submission. If charges were entered after the FPs or investigation was submitted, the ABSM treats the results as a match or fraud.

(2) If all the information on the RAP sheet was revealed and listed in the FS's record, the FS has favorable results. The ABSM annotates the results in the Remarks section of the DD 1966/4 (name, rank, and date posted) using the "Remarks" section in GCRc. Upload the RAP sheet in the "ENTNAC RAP Sheets" folder located in the Core Admin in ERM.

(3) For cases where there are discrepancies between the enlistment record, SF 86, and the RAP sheet, the following procedures are completed:

(a) The ABSM annotates the match on the UF 601-210.07. The ABSM notifies the Bn S-3/Ops SGM or Ops NCOIC the same day the RAP sheet is received to inform of the match. The ABSM maintains the UF 601-210.07 but does not capture and upload the RAP sheet into the ENTNAC RAP Sheets folder until the Bn Ops interview of the FS is completed.

(b) After verification of a match, the ABSM annotates the UF 601-210.07.

(c) The Bn S-3/Ops SGM or Ops NCOIC is required to contact and interview the FS identified as a match within seven (7) calendar days of notification. The interview determines if the FS intentionally concealed the information and any involvement by recruiting personnel in the concealment. If the FS alleges or the interviewer identifies a RM by recruiting personnel, the interviewer reports the potential RM to the Bn XO, or designated Bn official. If intentional concealment is determined and a conduct waiver is required or charges are open, initiate discharge of the FS IAW appendix I using loss code "FE." The interviewer notifies the Company Cdr and 1SG of the interview results; whether the FS is retained or discharged, and which DD 369(s) and UF 601-210.02(s) are needed. Upon determination of the FS as unqualified for retention in the DEP/DS, the Bn initiates the loss the same day. The interviewer prepares a UF 601-210.35 or MFR detailing the interview results. The UF 601-210.35 or MFR includes, but is not limited to; whether the discrepancy was intentional and/or if involvement by recruiting personnel occurred.

Upload the UF 601-210.35 or MFR in the "Memorandum for ENTNAC Interview" folder. Retention in the DEP is authorized if the Bde Cdr believes the FS unintentionally concealed the information and an extremely meritorious case exists, see AR 601- 210, chapter 4-2f (3).

(4) Notify the ABSM upon completion of the interview. The ABSM then captures and uploads the RAP sheet in the "ENTNAC RAP Sheets" folder.

(5) FSs identified as a match for minor traffic offenses listed in AR 601-210, chapter 4-8, Figure 4-1, do not require retains. If any of the charges are still open, the FS is discharged IAW appendix I using loss code "FE." The GC lists all additional charges in the GCRc record and has the FS re-sign the applicable pages of the SF 86.

**NOTE** 1: Retain-in-DEP/DS are not authorized if LS results are returned as UNCLASSIFIABLE twice, or if LS enrollment could not occur due to FPs that are too degraded to capture. Retains are not authorized in cases where LS results have returned with a RAP sheet and the SF 86 was not updated with those changes.

**NOTE** 2: Bde Cdrs have retain authority for conduct cases in which no intent to commit fraud is identified (see AR 601-210, chapter 4-2f (3)).

**NOTE** 3: The Bde Cdr is authorized to retain and ship applicants enlisting in the DEP/DTP/DS who fail to disclose an offense that does not require a waiver or USAREC suitability review.

b. AR FSs found to have concealed law violations over the level of traffic violations are taken as an Entry Level Separation (ELS).

(1) Process PS who enlists in a "non-train" or "will train" position and subsequently are found to be a match; the ABSM enters the appropriate data on the UF 601-210.07 and informs Bn Ops and the gaining unit. Police and court checks are uploaded in the appropriate folders in ERM. Soldier discharged from the AR as a result of concealed charges incur a six (6) month wait, prior to processing for either the AR or RA.

(2) AR Soldiers who return with charges that are either open or would have resulted in being ineligible for a waiver, had the charges been revealed, are subject to training reservation cancellation. The gaining unit and discharge authority is notified that these Soldiers do not meet enlistment eligibility and will not ship to training.

c. PS/GNPS who enlist with concealed information that requires a waiver, or return with open charges, are discharged from the DS. There is a six (6) month wait from the date of the REQUEST reservation cancellation before the submission of a waiver to reenter the RA or AR. If a waiver isn't required, the six (6) month wait still applies for those PS and GNPS discharged as frauds.

d. Discharge any FS who enlists fraudulently due to intentionally concealed information for fraudulent enlistment. They are required to wait six (6) months from the discharge order publication date before submitting a waiver for enlistment. FSs who were previously discharged for reasons other than fraud and would have been discharged as a fraud (for example; DAT loss) prior to the RAP sheet returning, also incur a six (6) month waiting period before re-contracting.

e. Discharge applicants that conceal open law violations from the DEP/DTP/DS regardless of the level of offense. Discharge as a fraudulent enlistment which requires a six (6) month wait from discharge order publication date to re-contract.


## G-10. Procedures for FSs without "Favorable" Tech Check Results and/or RAP Sheets

FSs do not ship without favorable tech check results. Tech check results are required to be obtained within DEP plus 7 days. Corrective action outlined in G-5 is required to ensure results return during this time period. They are renegotiated if tech check results are not received by their scheduled ship date. OPM requires FP results to conduct an NACLC or security clearance investigation. Prior to renegotiation, contact EEPD Background Screening Branch to validate existence of tech check results. FSs identified as a match while in the DEP/DTP/DS with no charges listed on their enlistment record cannot ship until a RAP sheet is received. If CCT returns as "Record" and there is no accompanying RAP sheet, email EEPD Background Screening Branch, with the applicant name and SSN immediately and request a RAP sheet. EEPD Background Screening Branch retrieves the RAP sheet from OPM within 48 hours. FSs that are a match and have charges above traffic level listed on their enlistment record, with no accompanying RAP sheet, are interviewed by the Bn Ops and ship with a control number from EEPD, Policy Branch. Background Screening Branch notifies the MEPS and Bn of the issue code. If the given issue code coincides with what is revealed, perform an interview that testifies to the fact that the applicant has no other charges than what is listed on the SF 86, and the Bn Cdr is confident that the applicant is not concealing any information. Record the interview in an MFR.

a. Issue codes:

(1) 1 - Intoxicants

(2) 2 - Drug use

(3) 3 - Financial responsibility

(4) 4 - Moral Conduct

(5) 5 - Honesty

(6) 6 - Violent behavior

(7) 7 - Employment

(8) 8 - Firearms or weapons

(9) 9 - Miscellaneous

(10) 10 - Statutory debarment

(11) 11 - Loyalty and security

(12) 12 - Qualifications

(13) 13 - Associates

(14) 14 - Relatives

b. Issue seriousness codes are:

(1) A - Issues are minor and the conduct or issue, standing alone, would not be disqualifying.

(2) B - Issues are moderate and the conduct or issue, standing alone, would probably not be disqualifying.

(3) C - Issues alone are substantial and the conduct or issue, standing alone, would be disqualifying.

(4) D - Issues are major and the conduct or issue, standing alone, would be disqualifying.

(5) E - Issues that are other matters such as, qualifications, medical issues, or inconclusive results, which may affect your determination.

c. An MFR listing all violations identified in the interview is uploaded in the Core Admin folder under "Memorandum ENTNAC Interview". The interview process should include:

(1) Have you ever been questioned by police, probation officer, or court official (adult or juvenile)?

(2) Have you ever been arrested and/or FPed for any reason (adult or juvenile)?

(3) Have you ever been told to say "no" to being questioned by police, being arrested, being issued a ticket, or ever been FPed (adult or juvenile) by any law enforcement personnel?

(4) Have you ever been told to say "no" to having charges after you completed a diversion program, charges were expunged, removed, wiped off record, or resulted in no charges filed?

(5) Have you ever been on probation, either supervised or unsupervised, or court probation (adult or juvenile)?

(6) Did anyone tell you or coach you on how to respond to my questions?

(7) Do you understand that any charge that is uncovered that was not previously disclosed may result in your fraudulent discharge?

(8) Is there anything you feel you want or need to add to your record?

d. The interview results are included as part of any exception and includes all the charges listed by the FS including: who, what, why, where, and when details of the charges.

e. The GC or ABSM notifies the RECBN liaison and/or ship location immediately of any additional charges, not previously revealed, that return on the actual RAP sheet.

## G-11. Reports, Records, and Files

Bns digitally maintain the UF 601-210.07 for each MEPS utilized. The log is maintained and filed electronically for each fiscal year and is retained for 36 months from the end of the fiscal year.

## G-12. Security Interview

GCs and SIs are the last line of defense to ensure all enlistments are legal, and all enlistment information is true and accurate. The following establishes policies and details procedures for the processing of applicants for possible selection to sensitive positions and MOSs. It further establishes procedures to preclude the enlistment of disqualified applicants.

a. Procedures:

(1) The GC will initiate UF 601-210.10 on all applicants who require a secret clearance. If the applicant answers yes to one of more of the questions (with the exception of question 10) or if the law violation answer is more than five (5) traffic offenses as defined by AR 601-210 or any offense above traffic, the SI will review the applicant's SF 86 provided by the GC and is the approval authority to continue to process for the MOS requiring a clearance. The SGC/GC is the approval authority and will sign a UF 601-210.10 with no yes answers (less question 10) or if the law violation answer is yes but the offenses are only traffic level as defined by AR 601-210 and there are five (5) or less. The SI will check the forms for completeness and accuracy. If the applicant is found acceptable, the SI will sign the UF 601-210.10. The UF 601-210.10 screening conducted by the SI is to determine the applicant's eligibility to obtain the clearance. If the applicant is determined qualified, this does not override specific MOS qualification. In cases where a UF 601-210.10 interview is requested, and the MOS is not known, the SI will conduct an interview for the clearance only. The SGC/GC will determine if the applicant is qualified for the MOS.

(2) All applicants who require a TS clearance, PRP, 09S or 09W will be interviewed by the SI either in person

or via telephone by the Fort Knox PSSP detachment or the still physically assigned SI. Based on the information gathered during the interview, the SI has the authority to obtain from the DoD Central Adjudication Facility (CAF), the adjudication required to accept or reject applicants on these critical security MOSs or options. If the applicant is found acceptable for the MOS, the SI will complete all necessary security paperwork.

(3) The SI will make minor corrections to any erroneous entries, missing information or any other corrections required to the enlistment documents in Bi Zone. The SI will inform the GC that corrections have been made to the SF 86 as this could affect enlistment eligibility. In cases where correction to the applicant's record will be time consuming, processing will be discontinued until the recruiter has made the required updates. The SI will not approve any further processing until a corrected copy has been obtained from GCRc. The updated copy will be reviewed and approved by the SI.

**NOTE**: The SI will not perform GC functions or prepare enlistment paperwork.

b. TS Processing:

(1) Applicants who enlist for an MOS, option or assignment that requires security processing will be processed as follows;

**NOTE**: Permanent reservations will not be confirmed if SI approval is required and annexes will not be generated if SI review is pending.

(a) SIs will review the SF 86, certification PAI/PEI GCRc, physical and REQUEST reservation (if available). GC shops with access to a SI will refer applicant to him/her. SIs will ensure all documents are signed and printed on the current processing day and all entries are correct. GC shops without an onsite SI will call the Fort Knox PSSP detachment at 1-833-290-0109 for an interview. The SI will make a determination of acceptability or non-acceptability.

(b) Fort Knox PSSP SIs or the MEPS SI still in place will upload results of the interview and any supporting documents in ERM under Core Admin, Security Technician folder once it is completed. If the results are unable to be uploaded on the day of enlistment, at a minimum the SI will enter comments in the free form remarks block whether or not the applicant passed or failed the security screening. At no time will the DEP/DTP enlistment occur without proof that the required interview has been completed and passed.

(2) PS/GNPS (MOS qualified secret and TS); the SI will conduct the interview and terminal check. As a reminder, this action will not change any previous instructions.

(3) Screening conducted by the SI is to determine the applicant's eligibility to obtain a clearance. If the applicant is determined "qualified" this does not override specific MOS qualifications such as law violations. Certain military intelligence MOSs dictate that applicants cannot receive a charge over the minor non-traffic level. If the SA qualifies these individuals, the GC must still obtain an ETP or approval from the proponent for the MOS via workflow to EEPD Policy. The SA with assistance from the PSSP supervisor or DA are making the clearance determination only.

(4) GCRc will submit the TS clearance on the day DEP/DTP/DS. The SI will be responsible for the acceptance of the investigation in GCRc with assistance from the station if errors return from AIES. If there is information that is required for the completion of the SF 86 that does not relate to clearance information necessary for the submission. The SI should also notify the recruiter and that further information is required by XX date (a suspense date) so the submission can occur.

(5) FSs who require additional medical screening or tests such as the DLAB or any additional requirements/tests related to the MOS qualifications will not be submitted for a TS clearance until any and all results have returned and the FS maintains their MOS eligibility with either a passing score or an approved ETP. This normally will occur within the 14 day window, but there could be circumstances that dictate a delay in the submission. If the delay in submission is going to be 30 or more days, SAs will contact their PSSP for instructions.

c. PRP screening. Applicants who enlist for a MOS, option, or assignment that requires a PRP screening will be processed as follows:

(1) GCs with access to a SI will refer the applicant to him/her or if there is no SI assigned, call 1-833-290-0109 for an interview. SIs will ensure all documents are signed and printed on the current processing day and all entries are correct. SIs will screen the SF 86 and physical to determine eligibility to continue to process for the MOS. All results will be uploaded in ERM. Approval authority for PRP MOS determinations is the Fort Knox PSSP supervisor.

(2) If approved, GCs will submit the clearance via GCRc until an acceptance is returned.

d. Ship procedures. No requirement for SI to interview any shippers. If SGC/GC determines that the FS remains qualified for the MOS IAW DA Pam 611-21, the FS will ship as schedule. (See F-1 for ship locations for applicants who do not require BCT.)

e. Additional procedures for AR. The SI will screen all AR applicants that require a security clearance. The SI will initiate a request for special background investigation (SBI) in the same manner as RA applicants with the following exceptions:

(1) Standard training program (STP). The SI will conduct an initial interview on the day the applicant contracts with the AR. If CAF, SI or the PSSP detachment determines the applicant is not eligible for clearance, he/she will be returned to the SGC for disposition and must choose a different MOS.

(2) SIs will ensure all Phase II shippers have a clearance submitted. The clearance must be in progress or finalized prior to the Phase II ship date. If the Phase II shipper has a final clearance or the investigation is still in progress the Phase II shipper can ship as scheduled, no further interview required. The SGC must be notified if the SI has an indication that the Phase II shipper has been denied a final clearance. The TPU will be contacted by the SGC or Bn Ops for shipping instructions. If the Soldier is in due process, the TPU will have to approve the shipment to training. If due process has been completed and the results is that no clearance can be granted, the TPU would have to request a different MOS through AR G1.

(3) AR PS. The SI will conduct the security interview for all PS requiring a TS and the CAF will adjudicate. As a reminder, this action will not change any previous instructions given. If the applicant requires MOS training, the SI will conduct an interview and submit clearance request if qualified.

f. MOSs and options requiring SBI, SCI, BI and secret and TS clearances. GCs and SIs will use DA Pam 611-21 to determine if the MOS or option requires a SBI, SCI, BI or secret or TS clearance.


**Appendix H**
**Change in Active Duty Date and DEP/DTP Renegotiation**

**H-1. Policy**
This appendix outlines procedures for recruiting personnel to apply in the FS change of active duty date and renegotiation (reno) of DEP/DTP contracts.

**H-2. General**
Provisions for DEP/DTP change in active duty dates and reno exist as a management tool to allow flexibility in responding to disqualifications for options and a request for extension or discharge from DEP/DTP, enlistees, requests for early ship, and other reasons authorized by appropriate authority. Changes in active duty dates and renos involve substantive changes to the enlistment contract. Process these actions to avoid invalidating the existing contract. Under normal circumstances, FSs are authorized to serve in the DEP/DTP no more than 365 days, unless exception is granted.  ETPs are forwarded to EEPD Policy, via GCRc workflow.

**H-3. Renegotiation Procedures**
The automated enlistment annex serves as DEP/DTP orders for all NPS applicants. Therefore, the annex must document all periods of DEP/DTP service. Complete the following actions for a reno.

a. GCs reno the FS, using REQUEST renegotiate screen to obtain a new reservation. Select a new MOS and/or ship date, enter the proper cancellation code, and complete the reservation.

b. Prepare a new automated annex A (for NPS, GNPS, and PS (if applicable)). The GC and FS then sign the new annex with item 3 reflecting the new reservation.

c. Reno require completion of UF 601-210.22 (Request to Change Enlistment Options) by the applicant and approval by the appropriate authority.

FSs renoing and wanting incentives must choose incentives offered at time of original enlistment unless otherwise indicated by EEPD.

## H-4. DEP/DS Renegotiation Approval Authority (RA)

Bde and Bn Cdrs are responsible for and maintain approval authority for RA renos with specific exceptions.

a. HQ, USAREC is the approval authority for the following reno requests:

(1) Two-time reno (regardless of the reason).

(2) Extension beyond 365 days in DEP (with exception of a 14-month HSSR).

(3) Any ship day reno, regardless of the reason.

(4) Medical -Temporarily Medically Disqualified (TMR) and Reevaluation Believed Justified (RBJ) for more than 180 days.  A UF 601-210.22 is not required for a FS who is TMR'd or RBJ'd generate a workflow only.

b. The Bde Cdr retains approval authority for the following reno requests:

(1) Matches - FS must have an approved retain from the Bde Cdr to reno. If a FS's retain is still pending, reno is not authorized, unless the RAP sheet has returned.

(2) Change MOS/option or Family/personal issues within 1 to 16 days from ship date.

(3) Change in AD date (no change in MOS/option) within 1 to 16 days from ship date.

(4) Medical - TMR/RBJ for 90-180 days.

c. The Bn Cdr retains the approval authority for the following reno requests:

(1) Minor non-traffic charges and misdemeanor charges when the final disposition is resolved within 30 days.

(2) Change MOS/option or Family/personal issues outside of 16 days from ship date.

(3) Change in AD date no change in MOS/option outside 16 days from ship date.

(4) Medical-TMR/RBJ for 1 to 89 days.

d. Renos are not authorized for serious criminal misconduct charge.

e. A workflow is generated for all renos. The workflow includes renos that EEPD forwards to HQ DA for exception. Direct contact with HQ DA is not authorized below EEPD. GCRc automatically enters the reno workflow identification numbers on page 4 of the DD 1966.

f. Contact the ROC for changes of AD date or reno for PS/GNPS.

g. FSs who have a chance to complete high school by attending a summer session to make up the graduation requirements would be acceptable. Renos are authorized only in cases where the FSs are enrolled in a tier 1, traditional high school (12L) completion course. High school letter must be from the high school the FS is attending. High school telephonic enrollment letter is not authorized to be used for reno purposes.

## H-5. DTP Renegotiation Approval Authority (AR)

a. Process an AR renos workflow in GCRc by:

(1) Submit all renos to USAREC via GCRc workflow for review. These include:

(a) Change in MOS/TPU.

(b) Three-time renos regardless of the reason.

(c) Standard Training Program (STP) to Alternate Training Program (ATP) or ATP to STP when an MOS or TPU change.

(d) Change in MOS or TPU due to deactivation or reorganization (with orders).

(e)  Change in training date beyond 365 days in the DTP.

(f) Ship date change.

(g) Two-time reno.

(h) To complete education requirements (to ship within 365 days in DTP).

(i)  Medical (including overweight/underweight).

(j) ATP to STP (same MOS and TPU) Matches - when additional time is required for disposition.

(k) Conduct/Legal - when additional time is required for disposition.

(2) Required documents for these actions include: MFR from TPU requesting approval or disapproval for retaining the FS for all renos (except medical); updated DD 2808, DD 2807-1, 680-ADP, and any supporting medical documents; FS statement that outlines the circumstances (if applicable) of the charge/match with expected release/completion dates and acknowledgment that incentives may change based on the reno.

(3) Required documents for a change in MOS/TPU, STP to ATP, or training date beyond 365 days in the DTP for capture and upload in ERM are:

(a) TPU endorsement MFR. For MOS or option changes the MFR must include the new position, paragraph, line number(s), and unit identification code (UIC).

(b) The statement from the FS, outlining the circumstances for the chance and an acknowledgement that the incentives may change based on the reno action.

(c) TPU deactivation or reorganization orders, if applicable.

(d) UF 601-210.22 (Request to Change Enlistment Option).

(e) Any other supporting documents as required.

#### H-6. Remote Renegotiation

a. FSs with approved reno requests aren't required to travel to a MEPs to accomplish the reno if they are in a location below:

(1) Las Vegas Company: FSs from Las Vegas Company will be transported to the Las Vegas Company GC located at the 6th Bde HQs.

(2) Honolulu Company: FSs who do no reside on Oahu or enlisted as a result of an overseas DEP trip can reno telephonically. After receipt of an approved reno request recruiters/station commanders must establish a three-way call between the GC, ROC and the recruiter/station commander.

(3) Guam Detachment: FSs who enlisted as a result of an overseas DEP trip are authorized to reno telephonically. After receipt of an approved reno request V7 personnel assigned to Guam are authorized to reno the FS with the recruiter/station commander. If assistance by the ROC is required a three-way call will be established.

b. A new reservation letter will be emailed to the recruiter/station commander to provide to the FS. Annexes and updates to the enlistment agreement will be finalized during DEP out procedures at the MEPS on ship day.

#### H-7. REQUEST Renegotiation Codes

The following is a list of REQUEST renegotiation codes:

a. AS - Contract renegotiated after ship (liaison use only)
b. CM - Changed MOS
c. CO - Changed option
d. CR - Changed reception station
e. ED - Continuing education
f. EE - Erroneous enlistment (GC error)
g. EN - Background investigation failure
h. FG - Failed to graduate high school
i. HP - Hardship (personal)
j. OD - Failed to achieve minimum OPAT score for MOS
k. OF - Failed to achieve minimum OPAT score
l. OP - Exceeded current MOS OPAT requirement
m. TM - Temporary medical disqualification
n. UI - Unqualified/Ineligible (ROC use ONLY)
o. WS - Weight standard

## Appendix I
## Active and Reserve Component Separations

#### I-1. Purpose

This appendix outlines procedures for processing DEP/DTP/DS separations after the initial Oath of Enlistment.

#### I-2. General

Requests for separation from the DEP/DTP/DS are approved for valid reasons identified in AR 601-210 and AR 135-178. Reasons for granting FS separations and approving authorities are provided at Tables I-1 and I-2. b. Separations fall into three categories:

a. The result of a request from a member of the DEP/DTP/DS
b. The discovery of an erroneous or fraudulent enlistment
c. Medical disqualifications

#### I-3. Routing of Separation Requests

a. The request for a FS initiated separation must bear the signature of the FS who initiated the request.

b. Recruiting personnel must respond positively to any inquiry from FSs concerning separations from the DEP/DTP/DS. Under no circumstances will any member of this command threaten, coerce, manipulate, or intimidate FSs, nor may they obstruct separation requests.

c. Submit FSs UF 601-210.21 (Separation Request) with supporting documents through the chain of command.

d. Bn Cdrs may approve requests within their authority and publish appropriate separation orders.

**I-4. Separation Procedures**

a. Process FS separation by:

(1) FS initiate separation request on UF 601-210.21 and must be signed by the FS. If the FS is unavailable or refuses to sign, write "unavailable for signature" or "refuses to sign" in the remarks section of the form. For medically disqualified FSs, the CMO must annotate the DD 2808 with the disqualification which will be uploaded in ERM by the SGC/GC, a UF 601-210.21 is not required for a FS who is medically disqualified by the CMO.

(2) Bn Ops or GCs will cancel the reservation with the correct code. When the FS is medically disqualified, cancel the reservation as soon as possible to mitigate losses of training base reservations inside of 30 days.

(3) Bn Ops will publish appropriate separation orders within 14 days. Upload UF 601-210.21, REQUEST cancellation printout, supporting documents, and the discharge orders in the "DEP Admin" folder in ERM.

(4) A workflow is generated as a result of the discharge being approved. GCs will provide the discharge orders and medical records to the MEPS Ops who will remove the record from MIRS.

(5) GCs will verify the record is removed from MIRS by obtaining an updated 680-3ADP verifying the discharge data is correct and upload the 680-3ADP in ERM. If errors are discovered, report them to the respective MEPS for corrections.

b. For FSs who enlist into the DS and fail to enter the RA on scheduled ship date:

(1) No separation orders are published for DS. The GC shop completes the UF 601-210.21, and cancels the REQUEST reservation on the same day.

(2) For FSs who enlisted on a DD 368. Complete the remainder of the DD 368 for forwarding to the Service with additional information for distribution as per below.

(a) Enter the cancellation code (see Para I-9) in the space provided; Section III (#7).

(b) Complete Section III (#8).

(c) Complete the remarks block to explain the reason for the cancellation; Section IV.

(3) The REQUEST cancellation printout, completed DD 368, and UF 601-210.21 for Soldiers in the RA DS are captured and uploaded in the" DEP Admin" folder in ERM. Copies are provided to the following:

(a) Individual

(b) Unit (applies to serving members of any RC)

(4) Soldiers of the IRR, Inactive National Guard (ING), or other Services (non-unit members), and those with no MSO, distribute as outlined in (4) above, less the unit. The UF 601-210.21 is uploaded in the "DEP Admin" folder in ERM.

(5) For reasons of death, explanation on UF 601-210.21 is sufficient. Check the "Death" block and in the remarks section, enter "Member Deceased".

(6) For DS with a positive HIV results the UF 601-210.21 only reflects "medical" in the Remarks.

(7) The Bn Ops monitors DEP/DTP/DS losses in RMZ, under the FS Loss tab to ensure accountability and proper coding for all losses in GCRc.

c. When a FS enlists into DEP/DTP, the DD 4 series is valid until discharge orders are published and signed by the Bn Cdr. The Bn publishes the discharge order within 14 days of the cancellation of the reservation.

d. The following procedures comply with AR 135-178 when processing a FS separation:

(1) When the AR FS requests separation by signing a UF 601-210.21, the notification process identified in AR 135-178 is considered to have been completed.

(2) When the AR FS's DAT or HIV test is returned positive, the letter of notification issued by CMO is considered to comply with the notification process contained in AR 601-210, chapter 5-78 for DAT and AR 600-110 (Identification, Surveillance, and Administration of Personnel Infected with HIV) for HIV.

**I-5. Procedures for Separation from the RA after the Oath of Enlistment**

a. Each case will be reviewed by HQ USAREC. Bn Ops will forward an ETP to EEPD Policy through the chain of chain of command via workflow.

b. Separation from the RA as a result of the discovery of a disqualification (erroneous enlistments) after the Oath of Enlistment, but prior to the FS's shipment (departure from the MEPS) the enlistment will be voided as follows:

(1) After GC reports the disqualification to MEPS, the MEPS Cdr will revoke any orders already issued assigning the individual to a Reception Battalion (RECBN) or other unit of assignment and will issue an order assigning the individual to the respective recruiting Bn for the purpose of separation. The REQUEST reservation is not cancelled and the record is "Shipped confirmed" in REQUEST.

**NOTE:** This is only authorized on the day of accession. After the day of accession, MEPCOM does not have authority to revoke orders or change PULHES.

(2) The recruiting Bn Cdr will void the enlistment by issuing an order (AR 600-8-105) releasing the individual from the custody and control of the Army. The order will reflect that the individual's enlistment is void by reason of erroneous enlistment and that his/her release from the custody and control of the Army is being accomplished by reason of a void enlistment.

**NOTE**: If the FS absents themselves from the MEPS without authority prior to ship or fails to appear for the departure of the FS's transportation, the MEPS notifies the ship GC, who notifies EEPD ROC immediately. The ROC will notify the respective RECBN and the EEPD PS/Liaison Branch Chief. The initiation of separation, if appropriate, is a function of the initial receiving activity or RECBN and is not the responsibility of MEPS or the recruiting Bn. The individuals have accessed into the Army and are not assigned to the respective recruiting Bn for separation.

## I-6. Positive Drug Test Separation

Process all FSs with confirmed positive drug test (DAT) results as follows:

    a. GC cancels the REQUEST reservation on the same day the notification is received in GCRc.

    (1) Positive for THC (marijuana), use cancellation code PT.

    (2) Positive for amphetamines, or both THC and amphetamines, use cancellation code PB.

    (3) Positive for cocaine, or both THC and cocaine, use cancellation code PC.

    (4) Positive for opiates or both THC and opiates, use cancellation code PO.

    b. UF 601-210.21 is not required for the above cancellations with the exception of DS FSs.

    c. PS FSs do not require discharge by the Bn. However, notification of positive DAT is required, and cancellation of the reservation is mandatory.

    d. Upload DAT notification MFRs from the CMO in the "DEP Admin" folder in ERM.

    e. Publish and upload all positive drug test separation orders in ERM within 14 days of cancellation.

    f. Cancel reservations for AR FSs with confirmed positive drug results using the "full" cancellation process and notify the gaining unit.

    (1) The GC informs Bn Ops upon notification of a DAT result for AR FSs and cancels the REQUEST reservation on the same day notification is received.

    (2) An MFR from the Bn notifying the TPU Cdr of the positive drug test is required. Upload all notification MFRs in the "DEP Admin" folder in ERM.

## I-7. Failure to Report

If the FS simply fails to report; cannot be located, declares a refusal to enlist in the RA, reports for AD but declines enlistment in the RA and does not formally request separation; and there are no extenuating circumstances, the Bn Ops reviews the enlistment record to ensure that all required documents are present, properly prepared, signed, dated, and witnessed, as appropriate. The reservation is cancelled and the individual is discharged (as required).

## I-8. Requests for FS loss forgiveness for DEP/DTP/DS

Requests for FS loss forgiveness will be considered in the following cases. The approval authority is the Bn Cdr with documentation verifying any of the below statuses:

    a. DT - Death

    b. PH - HIV positive

    c. OT - Member of RC who has been mobilized or called to AD

    d. A verified contract of an ROTC scholarship recipient, acceptance to one of the US Military Academies (West Point, Naval, Coast Guard, Air Force) or acceptance to one of the Academy Preparatory Schools.

## I-9. REQUEST Cancellation Codes

    a. The following is a list of REQUEST FS loss cancellation codes for RA and AR (AR only codes in I-9c below):

    (1) CE - Civilian employment

    (2) DE - Declining enlistment (RA)

    (3) DT - Death

    (4) ED - Continuing education

    (5) FE - Fraudulent enlistment

    (6) FG – Fail to graduate high school

    (7) HP - Hardship

    (8) ND - No DEP loss (same-day cancellation). Only used for cancellation on applicants that have not been confirmed or that do not result in a loss. Do not use the code in conjunction with a reno.

(9) NP - Background Investigation Failure.

(10) NS - No-show (used only when the FS fails to arrive at the MEPS on ship day).

(11) OT - Other (code only used for FSs who are in the RC and are ordered to AD). GC must list the reason in the remarks section.

(12) PA-Positive alcohol test

(13) PB-Positive amphetamine test

(14) PC-Positive cocaine test

(15) PG-Pregnancy (only when validated by CMO or by FS's personal physician).

(16) PH-Positive HIV

(17) PM-Permanent medical disqualification

(18) PO-Positive Opiates

(19) PR-Police record (open law violation(s) or new law violation(s) since enlistment that disqualified FS).  GC must use the FE code if information was concealed.

(20) PT - Positive THC test

(21) WS - Weight standards

(22) OPAT Codes:

(a) OF - Failed to achieve minimum OPAT score.

(b) OD - Failed to achieve minimum OPAT score for MOS.

(c) OR - FS refused to take OPAT.

**NOTE:** The Company Cdr will verify the reason(s) for the loss in an MFR in cases where official documents validating the loss do not exist or cannot be obtained.

b. A short narrative in the remarks section is required for clarification when the code itself does not fully explain the circumstances. The use of "apathy" is not authorized.

c. The following is a list of authorized REQUEST codes that only apply to AR DTP:

(1) DS - Declined to ship (used when the applicant arrives at MEPS to ship and refuses or for AR loss where the reason for the cancellation does not match any other authorized DTP loss code. The Company Cdr must sign the UF 601-210.21 in these cases).

(2) JC - Joined another component (DD 368 required).

(3) RS - Contract with an ROTC program for purposes of commission or contract as an ROTC SMP.

d. Prohibited cancellation codes: CA, CS, DA, DP, FC, JO, ML, TD, TI, TS, UR, and US.

e. No loss cancellation codes:

(1) TR - Temporary reservation (the only cancellation code available for temporary reservations).

(2) ND - Same day cancellation, no loss. Never use this code after swear-in, even if it is a cancellation on the same day.


## I-10. FS Separation Documentation and Void Enlistment Processing and Disposition

a. The respective Bn executes all requests for void enlistments. The Bn Cdr is the approval authority on all discharge orders for fraudulent enlistments.

b. When processing the following requests for FS separation, a Bn MFR that details the reasons for separation, a commissioned officer or senior NCO (E8 or above) interview of the FS, UF 601-210.21 and the DD 4/1 are required. Additional documents include:

(1) Concealed conduct

(2) ENSQ, page 7 (and page 9 if continued)

(3) Copy of Entrance National Agency Check, DD 369, UF 601-210.02, or court documents proving fraud.

(4) Concealed dependency

(a) DD 1966, page 1

(b) ENSQ SF 86, page 5

(c) Dependency documents proving fraud

(5) Concealed PS

(a) DD 1966, page 1

(b) ENSQ, page 6

(c) Documentation of PS proving fraud

(6) Concealed medical: Copy of DD 2807-1 and DD 2808

c. Listed at table I-1 are the basis for separation and the documentation required before separating a FS. Copies of the documents are acceptable.

d. Death of a FS. The death of a FS requires the Bn Ops and the SGC to take certain actions. A copy of the death certificate is provided to the SGC, who forwards the document to the MEPS Cdr. If the death occurred while

participating in a military sanctioned event (IAW AR 638-8, chapter 2-6) the unit immediately contacts the Casualty Assistance Center.

**I-11. Army Reserve Entry Level Separations**

a. Initiate Entry Level Separations (ELS) on all Soldiers who fail to ship to IADT - (conduct, administrative or medical). This includes Soldiers who receive a temporary disqualification lasting six months or more.

b. If the Soldier ships to IADT, it is the AR TPU unit's responsibility to initiate the ELS.

c. If the Soldier never ships to IADT, it is USAREC's responsibility to initiate the ELS. A USAREC initiated ELS does not require a TPU Cdr's memo.

d. A full cancellation is completed in REQUEST and a discharge order completed at the respective BN. An AR FS who desires to enlist AD is not discharged as ELS and must submit a DD 368 through their chain of command to the proper discharge authority IAW AR current AR release policy and F-10 of this regulation. AR ELS Soldiers are not authorized to re-contract for RA or AR until six (6) months after the effective date of the discharge order. Follow these procedures:

(1) Station commander, or designated representative, will:

(a) Immediately initiate UF 601-210.21.

(b) Forward completed UF 601-210.21 to the Company Cdr for review and signature.

(2) The Company Cdr will:

(a) Immediately confirm annotation of the reason for separation on the UF 601-210.21.

(b) Sign, date and forward UF 601-210.21 to the Bn Cdr for review and signature.

(3) SGC/G C will:

(a) Upon receipt of UF 601-210.21 from Bn Ops, verify the correct cancellation code/reason for separation.

(b) Sign and upload UF 601-210.21 in FS's ERM.

(c) Cancel REQUEST reservation using the correct cancellation code.

(d) Provide MEPS with ELS orders and the medical folder.

(4) Bn Ops will:

(a) Ensure that UF 601-210.21 is completed with appropriate signatures and the correct cancellation code for separation.  If the FS is not available, or refuses to sign, indicate this by writing "refuses to sign" or "unavailable for signature" in the Remarks section. Forward the completed UF 601-210.21 to the SGC/GC.

(b) Validate that the Soldier is NPS and he or she did not ship for training.

(c) Verify REQUEST reservation cancellation code.

(d) Create and process AR ELS using Order Format 500 found at: (http://span.usarec.army.mil/sites/HQ/G3/EEPD/SitePages/Policy.aspx ) under AR Resources. The effective date of the ELS order is the first day of the following month.

(e) Upload the signed ELS order in ERM under "DEP ADMIN" folder as a discharge order.

(f) Forward a copy of the ELS order to respective MEPS for processing.

(g) Provide a copy of the ELS order to the TPU for input of the loss transaction through Regional Level Application Software (RLAS).

**NOTE**: AR ELS Soldiers cannot re-contract for the RA or AR until six (6) months after the effective date of the discharge order. ELS Soldiers re-contract IAW current waiver guidelines. EEPD Policy reviews ETPs for RA enlistment prior to the end of the six (6) month waiting period on a case by case basis. If a PS does not ship to BCT for the AR a Unit letter will be obtained from unit requesting to cancel training seat with the understanding that they will have to discharge the Soldier. Then an ETP will be requested from HQ USAREC for training seat only cancellation and then cancellation will be sent to unit to assist with the discharge. ELS orders will not be cut by USAREC personnel.

**I-12. Order Format and Responsibilities**

The Bn issues Separation Orders, Orders format 500 for RA FSs who do not enlist from the DEP and for AR FSs who do not ship. Orders format 505 (Release Order) to separate RA FSs for erroneous and/or fraudulent (withheld disqualifications that existed prior to entry into the DEP) reasons. Forward these cases to the Bn Cdr for final determination and signature (see Table I-4 for the orders formats).

**Table I-1-Basis for Separation and required documentation**

| Basis for separation | Required documentation |
|---|---|
| Medical disqualification to include, drug addiction, alcoholism, pregnancy, and positive HIV. | Original or MEPS certified copy DD 2807-1, DD 2808, and SF 513 (Medical Record - Consultation Sheet) (if applicable), and any other medical documents bearing on the disqualification. Original or MEPS certified copy of DD 2807-1, DD 2808, and statement from a physician giving estimated date of birth. **NOTE**: DD 2808, items 74-78, should be annotated as appropriate by the MEPS CMO. |
| Conduct disqualification | DD 369, UF 601-210.02, UF 601-210.04, or (if appropriate) Entrance National Agency Check; approved waiver if waiver was processed; and all other data bearing on conduct disqualification. **NOTE**: If the FS has been convicted and sentenced for offense committed after they enlisted, include details of offense and place of confinement. |
| Hardship | Statement from FS, family member, doctor, clergy, etc. Any statement substantiating that hardship exists. |
| Dependency | Documents substantiating dependency (that is, birth certificate, marriage certificate, etc.). |
| Erroneous, defective enlistment, or fraudulent enlistment. | Show that such enlistment occurred. Senior NCO (E8 or above) or commissioned officer interview required. If completed, copy of commander's inquiry or report of investigation, if applicable. |
| Acceptance of scholarship or pursuit of higher education | Signed statement from the FS requesting separation (UF 601210.21 can be used), and letter of acceptance from institution indicating award of scholarship, grant or enrollment into program. |
| Conscientious objector | Statement from the FS. |

**Table I-1 Basis for separation and required documentation**

**Table I-1 (Con't), Basis for separation and required documentation**

| | |
|---|---|
| Religious training or appointment as an ordained minister. | Statement from appropriate authority of the church, religious sect, or organization that the FS has met the requirements for recognition, and has been appointed a regular or duly ordained minister of religion; or that he or she must be separated from military status for further processing into the order, is fully qualified and acceptable for further religious training or that, if separated will be eligible for ordination and will take final vows on or about a given date. Signed statement from FS requesting separation. |
| Acceptance of an appointment as a commissioned or warrant officer in a branch of the service or as a commissioned officer of the Public Health service or Environmental Science Service Administration. | Evidence of appointment and signed statement from FS requesting separation. |
| Failure of senior to graduate. | Letter from high school confirming that FS has dropped out of school or telephonic verification. |

| Determined no longer qualified for option for which enlisted in the DEP/DTP and declines alternate. | Signed statement from FS requesting separation. Statement from GC verifying loss of original option. |
|---|---|
| Enlistment into another service. | Statement from FS with evidence of enlistment intention from another service. |
| Personal problems. | Signed statement from the FS, or third party verifying the personal problem or issue to support request. |
| Marriage | Marriage certificate. |
| Concealment of PS | Copy of DD 214 (Certificate of Release or Discharge From Active Duty) or DD 215 (Correction to DD 214 Certificate of Release or Discharge From Active Duty). |
| Recruiting error or enlistment. | Statement from GC explaining the error. |
| Other | Minimum documentation as required and any documentation to support the request. Entire ERB along with one copy of the death certificate. |
|  | Notification of death will be reported to HRC by Bn Cdr. Separation order will not be issued. **NOTE**: Death certificate must be sent. Other documentation to verify death will be accepted if extenuating circumstances exist, as determined by HQ USAREC, G3, Waivers Branch. |

**Table I-1 (Con't), Basis for separation and required documentation**

**Table I-2 Authorities for approval and/or disapproval of DEP/DTP separation requests**

| Approval authority | Basis for separation | Disapproval authority |
|---|---|---|
| Bn | Medical disqualification  or psychiatric disorder | CG USAREC |
| Bn | Marriage | CG USAREC |
| Bn | Pregnancy | CG USAREC |
| Bn | Conduct disqualification | CG USAREC |
| Bn | Hardship | CG USAREC |
| Bn | Dependency | CG USAREC |
| Bn        . | Acceptance of scholarship or pursuit of higher education (education above high school level). | CG USAREC |
| Bn | Enrolled in training to become or receive appointment as an  ordained  minister | CG USAREC |
| Bn | Acceptance of appointment as a commissioned or warrant officer in a branch of the service or as a commissioned officer of the Public Health Service or Environmental Science Service Administration. | CG USAREC |
| Bn | Failure of senior to graduate and does not meet basic enlistment criteria of non-high school graduate. | CG USAREC |
| Bn | Determined no longer qualified for option for which enlisted in the DEP/DTP. | CG USAREC |
| Bn | Enlistment in another service. | CG USAREC |
| Bn | Loss of original option and/or military occupational specialty resulting from temporary disqualification for enlistment and declines alternate. | CG USAREC |
| Bn | All other reasons for the convenience of the Government (for example, personal problems, conscientious objector, no background investigation, aliens). | CG USAREC |
| Bn | Erroneous enlistment. Provisions of chapter 7.3 apply. (Written statement of interview is required to determine if disqualifying information was withheld, either intentionally or unintentionally.) | CG USAREC |
| Bn | *Fraudulent enlistment (AR 135-178). (Interview is required to determine if Soldier intentionally concealed disqualifying information.) | CG USAREC |
| CG USAREC | In DEP/DTP 365 days. Maximum time in DEP/DTP is 365 days. This period is established by Congress. FSs are not permitted to remain in the DEP beyond 365 days. All violators to this rule must justify, in writing, why the individual was retained beyond the limit. | CG USAREC |
| Bn | Overweight or underweight. | CG USAREC |

**Table I-2 (Con't)-Authorities for approval and/or disapproval of DEP/DTP separation requests**

**Table I -3 Separation authority**

| Basis for separation | Separation code | Authority |
|---|---|---|
| Medical Disqualification-EPTS | ZAA | AR 135-178, paragraph 14-5 |
| Medical Disqualification-NEPTS | ZAB | AR 135-178, paragraph 14-5 |
| Medical Disqualification-Pre-accession Drug, Alcohol Testing | ZZY | AR 601-210, chapter 4-18 |
| Pregnancy | ZAC | AR 135-178, paragraph 14-5 |
| Death | ZAD | AR 135-178, paragraph 14-5 |
| Conduct Disqualification-EPTS | ZBA | AR 135-178, paragraph 14-5 |
| Conduct Disqualification-NEPTS | ZBB | AR 135-178, paragraph 14-5 |
| Apathy/Personal Problem | ZBC | AR 135-178, paragraph 14-5 |
| Refuse to Enlist | ZBD | AR 135-178, paragraph 14-5 |
| Did Not Report on Date Scheduled | ZBE | AR 135-178, paragraph 14-5 |
| Concealment of PS | ZBF | AR 135-178, paragraph 14-5 |
| Dependency Disqualification | ZCA | AR 135-178, paragraph 14-5 |
| Marriage | ZCB | AR 135-178, paragraph 14-5 |
| Personal Hardship | ZCC | AR 135-178, paragraph 14-5 |
| Failure to graduate from High School | ZDA | AR 135-178, paragraph 14-5 |
| Pursuit of Higher Education | ZDB | AR 135-178, paragraph 14-5 |
| Religious Training or Appointment as an Ordained minister | ZDC | AR 135-178, paragraph 14-5 |
| Ringer | ZDD | AR 135-178, paragraph 14-5 |
| For USAREC use only | ZDE | AR 135-178, paragraph 14-5 |
| Enlisted in Another Service | ZEA | AR 135-178, paragraph 14-5 |
| Enlisted in Error | ZEB | AR 135-178, paragraph 14-5 |
| Enlistment Misunderstanding | ZEC | AR 135-178, paragraph 14-5 |
| No Longer Qualified for Option and Declines Alternate | ZED | AR 135-178, paragraph 14-5 |
| Other Reason | ZFA | AR 135-178, paragraph 14-5 |
| Transfer to Individual Ready Reserve (Requires USAREC Approval) | ZKC | AR 135-178, paragraph 14-5 |
| For Official Use Only (United States Military Entrance Processing Command (USMEPCOM) | ZZZ | AR 135-178, paragraph 14-5 |

**Table I -3 Separation authority**

**NOTE:** EPTS = disqualification(s) existed before the FS enlisted in DEP or DTP. NEPTS = disqualification(s) occurred after the FS enlisted in DEP or DTP. (See table I-2).

**Table I-4 Separation Order Formats Overview**

| Order and Format | Authority to Publish | Remarks |
|---|---|---|
| Separation (500) | Bn Cdr | |
| Release (505) | Bn Cdr (review by HQ USAREC) | Order Format 505 is for cases involving erroneous and/or fraudulent entry in the DEP. Cases must include written officer or senior NCO interview to determine recruiter involvement as outlined in chapter 7.3 |
| Release from RA (505) (see fig E-5) | Bn Cdr | When Soldier has sworn in on AD and disqualifying information is revealed prior to leaving the MEPS. |

Table I-4 Separation Order Formats Overview

**Appendix J**
**Army Reserve Specific Processing**

**J-1. Purpose**
This appendix outlines policies and detailed procedures to ensure applicants are properly processed for enlistment, shipped to IADT, and separated from the AR. (Refer to Figure J-1.)

**J-2. Alternate Training Program Enlistment Procedures**
a. The Alternate Training Program (ATP) is designed to provide specific applicants the ability to enlist and attend IADT without interfering with civilian education or employment. In order to qualify for ATP, an applicant must be: a current High School student (CIHS/109); a High School Senior (11S) who has been accepted to college; enrolled college student; or a seasonal employee.

(1) The AR uses Advanced Initial Training (AIT) course length and MOS density to determine MOS availability.

(2) Due to AIT course length limitations, vacancies requiring and ASI are not eligible for the ATP, with the exception of band (MOS 42R).

(3) GCs are reminded that applicants enlisting for the ATP must have a Mandatory Return Date (MRD) 11 weeks from the applicant's Reception Station (RECSTA) arrival date, not the ship date.

(4) HS juniors and college students will ship no earlier than (NET) seven (7) days from the completion of the current school year. HS seniors ship NET 14 days after graduation to allow time for receipt of the HS diploma or official transcript.

(5) CIHS education verification

(a) For CIHS the verification must state the following:

1. The end date of the junior year

2. The beginning and end date of the senior year

3. The expected HS graduation date

4. Confirmation from a school official that the school is aware that the student may leave their junior year XX days early and/or return after the beginning of the senior year XX days late and will not be penalized due to military training. Confirmation must also include the number of days the student may miss and must state the specific date that the student is released their junior year to attend training.

(b) Verification may be obtained from the applicant's principal, registrar, school guidance counselor, or the custodian of records. Verification must include all items in (5) above.

(c) A signed letter (not telephonic conversation or confirmation) from the parents or legal guardian acknowledging that they are aware that their child may leave their junior year XX days early and/or return after the beginning of their senior year XX days late. The letter must specify the number of school days either at the end of the junior year or beginning of the senior year that they will allow their child to miss for military training.

(d) A telephonic verification can be performed by the 1SG, Company Cdr, senior Ops, SGC, commissioned officer, ESS, or equivalent contracted personnel assigned to USAREC. The telephonic education verification must include all items in (5) above and name of applicant, last four of applicant's SSN, date of birth, name, address and telephone number of school, name and title of individual providing verification and the name and title of individual conducting verification.

b. Ship without Advanced Reservation (SWAR). GCs must pull Phase II (AIT) reservations for Soldiers who have completed Phase I (BCT) of the ATP.

(1) Do not make Phase II (AIT) reservations without verification of BCT graduation on the DD 220, or if there is a BCT completion date for the Soldier on the SWAR Report in REQUEST. ATTRS is an authorized method to verify BCT graduation. All Phase II Soldiers must ship to AIT within 365 days of BCT completion. Forward any ETPs to EEPD Policy through the chain of command via GCRc workflow to the AR G-1. Do not schedule Phase II until approval is received.

(2) Soldiers who receive an ETP to meet MOS qualifications IAW DA Pam 611-21 for the Phase I reservation, must meet MOS qualifications before the Phase II reservation is made (i.e., driver's license, typing, etc.). This does not apply to previously approved line score exceptions.

(3) When the Phase II reservation is made, the GC requests travel orders from MEPS. Upon receipt, the GC uploads the order in ERM and notifies the station of the Soldier's ship date. A copy of the Phase II reservation and order is provided to the Soldier and unit by the station. The station coordinates with the TPU to secure the Phase II packet consisting of: 201 file (to include DD 220), security clearance documentation, training records, equipment operator's qualification information, medical/dental records, DA 705, clothing record, and promotion documents. Phase II Soldiers ship IAW appendix J-4.

(4) Soldiers identified as no longer needing a Phase II training seat are removed from the SWAR report by using the proper codes through REQUEST. Code:

(a) A-Joined ROTC/SMP

(b) B-Unit Discharge

(c) C-Deceased

(d) D-Enlisted Active Component

(e) H-TRADOC Discharge

(f) M-N/A-Reservation made outside REQUEST

(5) The following codes will be used to update the SWAR for Soldiers who are not attending Phase II but need to remain on the SWAR:

(a) I-Other

(b) J-Awaiting Training

(c) K-Medical Hold

(d) L-Hold other than Medical

(6) In all cases where a Soldier is not attending Phase II, proper documentation is uploaded in ERM to support the non-attendance code. The GC will place appropriate comments in the remarks section of the SWAR with an explanation for no reservation.

(7) The Soldier MUST have their full initial issue when shipping to the training base.

(8) It is the responsibility of the Bn Ops to maintain and update the SWAR Program.

**NOTE**: The AR G-1 memo states whether or not BCT was completed in the event the Soldier was a REFRAD (Release from Active Duty). If the Soldier has a DD 220 conflicting with the AR G-1 memo, AR G-1 makes the final decision.


## J-3.  Processing AR applicants with English as a Second Language (ESL)

a. Due to the extended training time for ESL plus BCT, the GC must ensure that ATP applicants have a MRD allowing for both. Those scoring 75 or above on the English Comprehension Level Test (ECLT), ESL training is not required. Applicants scoring below 75 must conduct ESL training prior to BCT, IAW Table K-1. NOTE: CIHS applicants are not eligible for enlistment if they require ESL training.

b. Ensure all applicants requiring ESL are shipped to Fort Sill, OK, with records marked "ESL" in red on the outer envelope.

**NOTE**: See K-6 for Foreign Language Recruiting Initiative (FLRI) AR processing.


## J-4.  AR Vacancies

a. Vacancy loads are a tool that provides USAREC some flexibility for enlisting applicants, but should not be considered standard process.  Station commanders and recruiters will attempt to fill available, advertised vacancies first. When a vacancy load is submitted, BN Ops will ensure the load is not over strength filling unit "A" when unit "B" is under strength in the same MOS.

b. BN Ops will have access to the Reserve Components Manpower System (RCMS) with access to the Unit Explorer and Request Unit Transcript functions. The Request Unit Transcript function allows personnel to view current assigned strengths and vacancies for the TPU in question. RMCS is located at: https://rcms.usar.army.mil/ Instructions for accessing and requesting access to RCMS can be found on the EEPD Span site at: https://span.usarec.army.mil/sites/HQ/G3/EEPD/Shared%20Documents/Requesting_RCMS_Access.pdf

c. Under no circumstances can an applicant enlist into any TPU that has a Priority Code of 70 and above. The Priority Code is found by running a "UNIT" report in REQUEST.

d. Letters of Acceptance (LOA) are required for all vacancy loads. When not signed by the TPU Cdr, signature authority or assumption of command must accompany the LOA. When the vacancy load will be placing more than one Soldier in the position, the LOA must state that the TPU Cdr is aware that the position will be (double, triple, etc.) slotted. An example LOA can be found on the EEPD span site: https://span.usarec.army.mil/sites/HQ/G3/EEPD/Shared%20Documents/Vacancy_Load_Letter_of_Acceptance.docx

(1) For 09R Enlistments: Simultaneous Membership Program (SMP) Potential applicants require the letter of intent from the Professor of Military Science (PMS). SMP Participants require the CC Form 203-R or the CC Form 167-R and the DA Form 597.

e. The Vacancy Load Request form will accompany all vacancy load requests. The Vacancy Load Request can be found on the EEPD span site: https://span.usarec.army.mil/sites/HQ/G3/EEPD/Shared%20Documents/Vacancy_Load_Request_Form.pdf

f. Vacancy load processing procedures:

(1) Due to approval processes required for certain UICs and MOSs, all Vacancy Load Requests will be

submitted a minimum of three (3) duty days prior to the projected floor date.

(2) Recruiters will obtain the LOA and upload it in ERM. The LOA and Vacancy Load Request form will be emailed to BN Ops for validation. BN Ops will check RCMS and validate that the UIC, POS, PARA, LIN, and MOS are valid. Request with errors will be returned without action (RWA). If there is a currently advertised vacancy for that MOS in a different UIC, the Bn Ops will identify the reason for requesting the Vacancy Load. If quantifiable evidence does not support proceeding with the Vacancy Load Request, it will be RWA'd and the applicant enlisted into the currently advertised position. If the Vacancy Load Request data is correct, it will be submitted by email to the AR Liaison and AR ROC NCOs using this email distribution list: USARMY Ft Knox USAREC List HQ G3 Vacancy Load usarmy.knox.usarec.list.hq-g3-vacancy-load@mail.mil . To ensure timely processing and facilitate tracking of Vacancy Load Requests, the email subject line will be formatted as follows:

- Subject Line: Vacancy Load Request RSID Applicants Last Name Floor Date
- Subject Line Example:  Vacancy Load Request, 8B6D_Johnson_20180101

No other information is required in the body of the email. All data will be pulled from the LOA and Vacancy Load Request form.

g. The following MOSs require a Vacancy Load Request submission:

(1) 09C - must have UIC, Para 101, Line 01, Pos 9990

(2) 09N - UIC W0NJAA, Para 001, Pos 01, Pos 0005

(3) 09R - must have UIC, Para 101, Line 01, Pos 9991

(4) 09Q - UIC W47A9Q, Para 000, Line 00, Pos 9992

(5) 09S - must have UIC, Para, line, position from TPU.

h. The following AOCs are authorized for 09S enlistments without additional authorization:

(1) 12 Engineer

(2) 25 Signal

(3) 31 Military Police

(4) 42 Adjutant General

(5) 36/44 Finance

(6) 74 Chemical

(7) 88 Transportation

(8) 89 Ammunition

(9) 91 Ordnance

(10) 92 Quartermaster

i. The vacancy requests listed below require AR G1/G7 approval and require additional processing time.

(1) All E8/E9 vacancy request

(2) All Will-Train flips to 'Yes', to include 00G MOS

(3) CMF 68 series MOSs require AR MEDCOM approval to be changed from Will-Train "No" to Will-Train "P".

j. MI AOCs; 35, 37 and 38 vacancies are limited. OCS applicants applying MI unit AOCs must have an approved ETP from AR G1 prior to accession. Recruiters will ensure that MI OCS applicants are aware that accession into a MI AOC is not guaranteed until the ETP is approved. Once the OCS applicant has been boarded and approved for continued processing, Bn Ops will initiate the ETP via GCRc. EEPD Policy will forward all AR MI ETPs to AR G1 with supporting documentation. Policy will notify the Bn Ops of the decision by approving or disapproving the workflow upon receipt of a decision by AR G1.

k. Bn Ops will request an ETP via GCRc to EEPD Policy to enlist the applicant outside of the 10 day window pending the AR MI exception.

l. AOC 90A is O-3 level logistics and not authorized for accessing O-1 & O-2 officers. If the position given is for 90A, OCS applicant must select from the following.

(1) AOC: 88 Transportation

(2) 91 Ordnance

(3) 92 Quartermaster

m. All OCS applicants will be informed by the recruiter that AR incentives are offered based on the unit, the MOS/ AOC, individual qualifications, and the needs of the AR. No incentives can be guaranteed until the applicant enlists at MEPS.

**J-5. AR Prior Service Non-Duty Military Occupational Specialty Qualification (DMOSQ) Acceptance Policy**

Recruiters will identify vacancies for PS in their DMOS prior to sending them to MEPS and GCs will assign PS in their DMOS whenever possible. If no DMOSQ vacancy is available the recruiter will identify will train vacancies (coded P) for which the Soldier is qualified from the G2 AR Strength Atlas found on the G2 Google+ site.

a. All will train enlistments will be for 3, 4, 5, 6, 7 or 8 years and will be served in a TPU (except as authorized in AR 140-10). The 3 year minimum enlistment allows Soldiers to become DMOSQ within 24 months as required by AR 140-10, chapter 2-6c.

(1) Enlistment will be in a TPU with an authorized unit priority code only IAW appendix J-4a.

(2) PS E-4s may enlist as will train skill level 2 as long as it is advertised for the Soldier in REQUEST.

b. If there is not a will train vacancy available a request to flip a non-will train (code N) to a will train (code P) an ETP will be sent through the chain of command to EEPD to AR G-1/G-7 approval. (See J-4b (2) (3), J- 4j and J-4j.)

(1) The LOA must state the TPU Cdr will send the PS to the appropriate AR MOS qualification training.

(2) TPU commander will specifically include any ASI or SQI for any MOS, if applicable.

(3) AR G-1/G-7 will review each request and make a determination based on MOS, TPU strength, and funding.

(4) Expected turnaround time is 3-5 working days.

c. GCs are reminded that PS will not be built in GCRc or REQUEST as Projected Specialty "J" code. PS must be built with a primary or secondary MOS only. PS will not be built as 09B if they hold an Army MOS. If the PS MOS is not available they can enlist in the will train vacancy. One only exceptions are PS Army Civilian Acquired Skills Program (ACASP) and PS from a sister Service. Will train yes vacancies are to be used for Soldiers who do not hold an Army MOS or for Soldiers who hold an MOS that is not available within the normal commuting distance of their home zip code. REQUEST will attempt to pull a vacancy for the held MOS, if that fails, REQUEST will show all available will train yes vacancies.

(1) ACASP Soldiers are authorized the Projected Specialty "J" for their projected ACASP MOS. The identified MOS will reflect the ACASP held skills.

(2) Soldiers with a specialty MOS in the 09 series are authorized to have the MOS identified as the Projected Specialty "J" code. This includes PS from a sister Service who holds an MOS that does not convert to an Army MOS. The Soldiers will be identified with MOS 09B.

d. If the vacancy type is a mobilization vacancy, coded "M" on Available Vacancy Report, and is coded will train no by AR G1/3/7, changing the will train status to yes is not authorized. No "M" vacancies will be coded as will train yes.

**J-6.  AR Released from Active Duty (REFRAD) for Temporary Medical Reasons**

Occasionally AR Soldiers are injured or become ill while in IADT and are given a REFRAD to allow time for recovery.  These Soldiers are sent home with a REFRAD memo from AR G-1.

a. Soldiers with a REFRAD will provide their recruiter with all medical documents from their physician relating to their treatment and recovery. A release from care to return to duty, with no limitations is required.

b. Recruiters will submit the documents listed below (as applicable) with a completed DD 2807-2 to the MEPS as a medical read. The DD 2807-2 must list the medical reason for the REFRAD and the read must be approved prior to projecting the Soldier for a new physical. The medical read will include:

(1) AR G-1 approved REFRAD memo with suspense date to return to training.

(2) Memo from training base explaining the REFRAD reason.

(3) DA 4856, Developmental Counseling from the training base.

(4) Line of Duty (LOD) Investigation.

(5) DA 2173, Statement of Medical Examination and Duty Status.

(6) DA 3349, Physical profile or DA 4707, Entrance Physical Standard board (EPSBD) proceedings.

(7) Medical documents pertaining to injury or illness and the release from care from the physician.

c. GCs will ensure the medical read is submitted and completed by MEPS. The GC will ensure the Soldier is cleared and that the new physical and all REFRAD related documents are uploaded in ERM. The GC will contact the ROC for assistance pulling all REFRAD REQUEST reservations and notify the Soldier, TPU, and recruiter of the new training seat reservation, and submit a Request for Orders (RFO) to MEPS as a Hometown Shipper (HTS). (See appendix P-5.)

d. MEPS medical and operations staff will:

(1) Complete the medical read and authorize a full physical examination under accession standards IAW AR 40-501, chapter 2.

(2) Update the Soldier's record in MIRS.

(3) Provide the GC with the new MEPS orders, travel itinerary and meal checks.

(4) Code the Soldier in MIRS as BOMOP (No Medical Required) allowing the Soldier to ship without inspect.

## J-7.  REQUEST Reservations for AR AMEDD Officers

GCs may assist health care recruiters (HCRs) with processing newly commissioned AR AMEDD officers by building, confirming, and shipping REQUEST reservations. HCRs will submit hold screen and vacancy look-ups for TPU assignments after the applicant is Physical Examination Qualified (PEQ) through the respective medical Bn. Project all processing actions to take place at the MEPS through MIRS. Follow local MEPS policy for projection procedures. The newly commissioned officers will have a position on hold.

a. HCRs are required to provide a copy of the following documents to the GC:

(1)  DA 71 (Oath of Office - Military Personnel).

(2)  DD 2808.

(3)  DA 61 (Application for Appointment).

b. Reservations are the same as the enlistments, except for the following items:

(1)  Driver's license is not required.

(2)  Test scores are not required.

(3)  Category is PS.

(4)  Process as enlistment for a new accession.

(5)  Build as an officer with BCT completed (MPC Code=0).

(6)  Source of commission is normally direct.

(7)  Advanced rank reason is normally for completed necessary college requirements.

(8)  Area of concentration (AOC) must be listed along with a skill identifier (if applicable) and listed as the primary specialty.

(9)  Personnel procurement number code is 88.

(10) Ship date will automatically default to the current date.

(11) Enlistment date will match DA 71 date.

(12) Provide the HCR a printed copy of the reservation to be submitted with the appointment record.

## Army Reserve ROTC SMP Processing



**ROTC SMP Potential Participants must take the ASVAB, a full MEPS physical and will complete all processing. This includes the DD1966, Annexes, and DD 4 and will swear-in at MEPS. These FSs must ship to BCT within 270 days of enlistment.



**ROTC Participants have already executed a DD4 with Cadet Command. They do NOT swear-in. These Cadets must take the ASVAB, a full MEPS physical and complete all processing. This includes the DD1966 and Annexes. BCT is not required for these Cadets. Once the Cadet has completed all processing they may leave the MEPS.

This processing flow chart is designed to assist the recruiting force. For questions regarding Army Reserve ROTC SMP qualifications, policies, and procedures refer to AR 601-210, 9-14 and current USAREC Messages.

**Figure J-1.  Army Reserve ROTC SMP Processing Flowchart**

**Appendix K**
**Regular Army Options and Incentives**

**K-1.  Purpose**
This appendix consolidates implementing instructions and guidance for the management of current recruiting options.

**K-2.  General**
RA enlistment programs and options are available for qualified male and female applicants. AR 601- 210, chapter 9 lists and describes each authorized enlistment program and associated option(s).
**NOTE**: List all applicable statements for the applicant's enlistment in the Remarks section of DD 1966/4.

**K-3.  Procedures (general)**
     a. The recruiter executes the selection of an option or program when pulling the REQUEST reservation for a qualified applicant.
     b. REQUEST is designed to display only those MOSs and options for which the applicant is qualified.
     c. During DEP-in the GC ensures that the applicant understands the precise nature of the option commitment and guarantee.

**K-4.  Procedures for Applicants Requiring ESL Training**
US Army English Language Comprehension, REQUEST Option 06:
     a. This is a 4-year enlistment.
     b. Applicant must attain an AFQT score of 31 or higher on the ASVAB.
     c. ECLT/ALCPT score of 40-74.
     d. Applicant can enlist in any MOS in which they are qualified and a vacancy exits.
     e. All NPS applicants who speak English as a second language (anyone whose records indicate he or she is not a native speaker of English and has resided in the US for less than one (1) year) or demonstrate difficulty understanding or speaking English will take the English Comprehension Language Test (ECLT) prior to recruiters making an enlistment reservation.
     f. If the ECLT score is 75 or above, ESL training is not required. Applicant scoring below 75 must conduct ESL training prior to BCT IAW Table K-1.  If enlisting for 09L, the ECLT score must be 80 or higher.

**Table K-1**
**ESL calculation**

| ECLT | Total Weeks |
|------|-------------|
| 40-44 | 25 |
| 45-49 | 22 |
| 50-54 | 20 |
| 55-59 | 17 |
| 60-64 | 16 |
| 65-69 | 14 |
| 70-74 | 13 |
| 75-79 | 8  * 09L Only |

**Table K-1**. ESL calculation

g. The GC must determine the desired training date and add the number of weeks for ESL training to the desired training date. This serves as the applicant's RECBN arrival date to secure a reservation.

h. Applicants enlisting under this option must ship to Fort Sill, OK to in-process, prior to attending ESL training (Lackland Air Force Base, TX).

## K-5.  Recruiting Enlistment Programs

a. Training Enlistment Program. The Army guarantees, in writing, a specific MOS, as well as provides a guarantee to Airborne, Language, and MI MOSs and training if selected and if qualified. The guarantee is offered to qualified NPS, GNPS and PS applicants enlisting for the minimum term of enlistment authorized by REQUEST.

b. OCS and WOFT Policy:

(1) The OCS and WOFT enlistment programs are available for limited procurement of qualified male and female applicants. The number of training spaces available for these programs is based upon the needs of the Army, as determined by HRC and DA G-1.

(2) AR OCS applicants are branched IAW TPU vacancies and will acknowledge the vacancy on a DA 5586-R (Addendum to Certificate of Acknowledgment of Service Requirements in the USAR Officer Candidate School Enlistment Option).

(3) Initial MSO for all OCS and WOFT is eight (8) years with any remaining obligation to be served in the IRR;

(a) RA OCS 3 years + training and commissioned as second lieutenant after OCS graduation.

(b) AR OCS 6 years TPU and commissioned as a second lieutenant after OCS graduation.

(c) RA WOFT 6 years + training and appointed to warrant officer after WOFT graduation.

c. OCS Program (Figure K-1).

(1) This section establishes procedures for administration of the OCS Program, identification of prospective OCS applicants, processing and screening procedures, and guidelines for the conduct of Bn OCS selection boards. Utilize the following processing for OCS applicants:

(2) Initial OCS screening. ASVAB and MEPS physical is completed after the applicant's initial interview to screen the applicant for OCS selection.

(3) Application packets are collated and submitted to Bn Ops for a Bn selection board.

(4) Documents needed for an application packet:

(a) Certified copy of college degree and transcripts or memorandum from the institution verifying student enrollment and status. Applicants currently enrolled in a 4-year degree-producing program of an accredited postsecondary institution may apply for OCS if they are classified as a college senior with a projected degree completion of less than 365 days at time of application (RA only). AR OCS applicants must currently be classified as a senior in their last semester of the 4-year degree producing program.

(b) DA 61 (Application for Appointment).

(c) Full-length digital photo of the applicant.

(d) Typed applicant essay (not to exceed one page in length) on "Why I want to be an Army Officer"

(e) Letters of recommendation or character references (minimum of three, no more than six).

(f) Resume (optional).

(g) DD 214, NGB 22 or other documentation needed to show PS.

(h) DA 705 (applicants must score minimum of 60 points in each event by age group).

(i) UF 601-210.10 (Security Clearance Questionnaire).

(5) Recruiting Bn selection board: Upon receipt of completed application packet(s), the designated Bn Ops Special Missions' OIC and/or NCOIC schedules an OCS selection board and QCs the packet. The board consists of three commissioned officers (O-3 and above), at least one member of the Bn OCS board must be an officer (O-4 and above) and one must be assigned to US Army Cadet Command (USACC). Bn S3s will coordinate with one of their local ROTC Professor of Military Science (PMS) to have a representative from USACC. If the USACC officer is not available to participate as a panel member of the board an ETP may be requested via a memo from the Bn S3 to G3, Special Programs and Boards prior to the board date. The memo must address the reason why the USACC officer is unavailable. The objective of the board is to identify the degree to which the applicant has developed attributes that show potential for a successful career as a professional Army commissioned officer. The applicant's past behavior in a variety of situations is evaluated to predict future performance. Applicant should demonstrate character, competence and commitment. After the board adjourns, the Special Missions OIC/NCOIC completes the following for inclusion in the applicant's ERM:

(a) UF 601-210.11 (Board Evaluation Sheet) (signed by recommendation board members).

(b) UF 601-210.12 (signed by the Bn Cdr).

(6) Applicants selected by a USAREC Bn board have ten (10) working days after board result release to enlist into the RA or the AR. Bn OPs notifies G-3, Special Programs and Boards immediately if any selected applicant

declines to enter the FSTP or RA DS. GCs will call the ROC to procure a training seat. AR OCS must be in the DTP for a minimum of 90 days, the ROC will schedule a training seat 90 days from the date of accession.

(7) The Bn Ops Special Missions must publish a board results memorandum and forward a copy to USAREC G3, Special Programs and Board (usarmy.knox.usarec.list-hq-g3-ocs-woft-boards@mail.mil) NLT the published date with the following information:

(a) RSID.

(b) Name of applicant.

(c) PRID.

(d) AR or RA.

d. WOFT Program (Figure K-1).

This section establishes procedures for the administration of the WOFT (RA) Program to include screening, processing and guidelines for the conduct of all Bn WOFT (RA) recommendation boards.

(1) Initial WOFT screening. Utilize the ASVAB, Selection Instrument for Flight Training Test (SIFT), and completed MEPS physical after the applicant's initial interview to screen for eligibility.

(2) The unit schedules the applicant for the Class I Flight Physical. The flight physical (DD 2808, DD 2807-1, DD 2807-2, and all test results) is returned to the Bn Ops by the medical facility upon completion of the examination. The Bn Ops uploads the completed application with supporting documents in the applicant's ERM. Bn Ops uploads the flight physical in ERM and ensures the physical has been forwarded to Aeromedical Center, Fort Rucker, AL for upload into AERO medical data system.

(3) The Aeromedical Center, Fort Rucker reviews the Class 1 Flight Physical to determine the applicant's medical qualification for WOFT. Upon receipt of approval of the physical from Fort Rucker, the applicant is scheduled for the next Bn level WOFT board.

(4) Application packets for each applicant are collated and submitted to Bn Ops for a Bn recommendation board.  The following documents are needed for an application packet:

(a) Certified copy of HS diploma and/or transcripts, and college degree and/or transcripts. If the applicant is a GED holder he/she must have the required college credit hours to be eligible to enlist with Education Code "128", per AR 601-210, chapter 2-7c (7).  Tier 2 are not authorized.

(b) DA  61

(c) Full-length digital photo

(d) Typed applicant essay (not to exceed one page in length) on "Why I want to be an Army Aviator".

(e) Letters of recommendation or character references (minimum of three, no more than six).

(f) Resume (optional).

(g) DD 214, DD 215 or NGB 22 to show PS.

(h) UF 601-210.12 (signed by the Bn Cdr).

(i) DA Form 705 (applicants must score minimum of 60 points in each event by age group).

(j) UF 601-210.10.

(k) Class I Flight Physical completed (DD 2808 with qualified physical stamp).

(l) USMEPCOM 680-3ADP showing test scores.

(m) UF 601-210.08, if applicable.

(5) Recruiting Bn recommendation board: Upon receipt of completed application packet(s), the designated Bn Ops Special Missions' OIC/NCOIC schedules a WOFT recommendation board. The board consists of three commissioned officers (O-3 and above), at least one member of the Bn WOFT board must be an officer (O-4 and above). The objective of the board is to recommend the applicants deemed suitable and competitive for inclusion at the USAREC WOFT selection board. After the board adjourns, the Special Missions OIC/NCOIC completes the following for inclusion in the applicant ERM and forwards, NLT published date, to G-3, Special Programs and Boards (usarmy.knox.usarec.list.hq-g3-ocs-woftboards@mailmil) for the USAREC WOFT selection board:

(a) UF 601-210.11 (Board Evaluation Sheet) (signed by recommendation board members).

(b) UF 601-210.12 (signed by the Bn Cdr).

(6) Upon receipt at G3, Special Programs and Boards, the application is screened to ensure all documents are accurate and in ERM.

(7) Selected applicants have 10 working days after selection result release to enlist. Bn Ops notifies USAREC G3, Special Programs and Boards immediately if any selected applicant declines to enlist.

e. Army Music.

(1) Applicants for the Army Music Program access under MOS 42R with an ASI, 9B through 9X, identifying the instrument played.  Special Bands individuals selected by DA process as MOS 42S with no ASI.

(2) Applicants applying for MOS 42R will first be prescreened by respective Bde Band Liaisons. Once the liaison determines the applicant's musical potential to enlist in the Army Music Program, the recruiter will ensure

the applicant meets all basic eligibility requirements.

(3) Following eligibility screening, the Bde Band Liaison will coordinate for a live assessment with the applicant. Due to the complexity of the ASI 9X, the applicant must travel to the Army School of Music in Virginia Beach, Virginia for a live assessment.

(4) The applicant is placed on an order of merit list (OML) based on their audition score, and a board is held monthly at HQ USAREC, Special Programs and Boards to select the most qualified applicants for training seats.

(5) The Army Musician Proficiency Assessment (AMPA) form is required for the enlistment record.

(6) Direct any issues or questions on the Army Music Program to respective Bde Band Liaisons or G3 Special Programs and Boards at (502) 626-0456 or email usarmy.knox.usarec.mbx.hq-g3-band@mail.mil.

f. Airborne Training Option.

(1) This option guarantees training in the basic airborne qualification course and a possible assignment to a unit listed in REQUEST, if airborne qualifications are maintained. (Unassigned airborne reservations do not guarantee an assignment to an airborne unit. Temporary reservations can be made prior to an airborne screening/ inspection.)

(2) GCs will ensure all applicants enlisting for the airborne option have passed the airborne screening/ inspection by the CMO prior to DEP/DTP-in.

**NOTE:** Applicants with an approved USAREC medical waiver and are airborne qualified by the CMO are qualified for the airborne option.

## K-6.  Foreign Language Recruiting Initiative (FLRI) (RA and AR)

Program 9A, US Army Training Enlistment Program REQUEST Option 10, US Army Trainee English Second Language (ESL).

a. FLRI is for applicants whose primary language is other than English (English is their second language). It is not for applicants seeking to learn a new language.

b. Applicants who demonstrate a clear enunciation and comprehension of English with good Standard English grammar skills and who are native-born citizens (excluding Puerto Rico) or have attended US schools continuously and full time from the age of 10 (ten) are not eligible for this program.

c. Individuals must meet the following additional criteria prior to enlistment:

(1) NPS only.

(2) Be a HS graduate or a Tier 1 HS senior.

(3) Applicants who require a DAT waiver are not authorized to process for the FLRI program.

(4) Attain an AFQT score of 21-30 on the ASVAB with a qualifying score of 54 in Assembling Objects (AO). Applicants who took the ASVAB in HS as part of the Career Exploration Program (CEP) must retest at MEPS due to the AO subset not being included in the CEP.

(5) Attain an ECLT or American Language Course Placement Test (ALCPT) score between 40 and 74. ECLT retesting to attain a lower score is not authorized to qualify applicants that have already passed the ECLT and do not meet ASVAB requirements.

d. GC informs FLRI applicants of the following pertinent information:

(1) The guarantee of training in a specific MOS/CMF, specific assignment to a specific station, unit or command area for RA applicants is not granted until successful completion of training.

(2) AR applicants are initially assigned to the local TPU with a valid 09C vacancy.

(3) Ship all FLRI to Fort Sill, OK for in-processing prior to ESL at Lackland AFB, TX.

(4) Based on the Soldiers current ECLT score, Soldiers may attend ESL for up to 30 weeks.

e. FLRI is not available as a temporary reservation.

f. The ROC executes all FLRI reservations.

g. AR applicants require a vacancy load for 09C. Send the vacancy load request to EEPD, AR Senior ROC NCO and USAREC AR liaison prior to enlistment date. AR FLRI Soldiers who successfully complete ESL and pass the ECLT with a 75 or higher will take the AFCT. The 09C reservation will be reno'd to a valid vacancy with the TPU of assignment. MOS selection will be dependent upon the Soldier's qualifications and training seat availability.

## K-7.  Partnership for Youth Success (PaYS) (RA and AR)

This program provides Soldiers an opportunity to interview with an employer selected during their enlistment process. Soldiers must successfully complete their initial tour (RA) or IADT (AR) to qualify for the interview. Recruiters and GCs have the ability to select two PaYS jobs.

a. PaYS is available for RA/AR NPS/GNPS/PS. PaYS is also available to ROTC cadets.

(1) NPS applicants must be a HSSR or a HSDG with an AFQT of 31 or higher.

(2) PS/GNPS processing for either RA or AR qualify for PaYS, no IRR to TPU transfers. There is no AFQT education requirements beyond normal enlistment qualifications.

(3) When the GC pulls or converts a reservation with PaYS option, the PaYS Statement of Understanding (SOU) - Partnership for Youth Success (PaYS) has been incorporated in the annexes for acknowledgment and signature of both the applicant and GC.

b. Recruiters will:

(1) Discuss PaYS with applicants, their influencers, educators and local business owners.

(2) Review the PaYS program with the FS during the FS orientation and will ensure the FS has a copy of:

(a) The SOU.

(b) RPI 274.

(c) RPI 275 (PaYS Pocket card).

(d) PaYS website address: www.armypays.com. Additional links: http://IKROme.usaac.army.mil/web/pays/home1PaYS Pamphlet: http://span.usarec.army.mil/sites/HQ/G7-G9/PaYS%20Documents/USAAC_Pam_601-1.pdf Advanced User Guide: http://span.usarec.army.mil/sites/HQ/G3/Training/TSP/Documents/RZ%20GRCc%20Advanced%20User%Guide.docx

**Figure K-1. OCS & WOFT Selection Process**



Figure K-1. OCS & WOFT Selection Process

**Appendix L
Overseas Processing Procedures**

**L-1. Purpose**
This appendix establishes standardized guidelines for processing overseas enlistments and provides the procedures required to process these applicants.

**L-2. General**
Overseas applicant processing is critical to USAREC's mission.
a. Overseas processing will be accomplished by GCs assigned overseas who have been awarded the ASI-V7.
b. 1SGs who are ASI-V7 qualified can be granted the authority to complete applicant processing in the absence of the assigned ASI-V7.
c. Recruiting personnel performing duties in the absence of the assigned ASI- V7 will adhere to all policies and regulations.

**L-3. Policy and Procedures for Securing a Social Security Number (SSN) for Future Soldiers Who Enlist with a Temporary Identification Number (TIN).**
a. The Social Security Administration Offices (SSA) in Guam and Honolulu will process FSs for a SSN.
b. 6thBde/Portland Bn will:
(1) Ensure that ship dates for FSs are at least 60 days from reservation to allow for SSN processing. Arrive FSs to Guam/ Honolulu at the earliest possible date after entering the DEP/DTP in order to process for SSN.
(2) Provide the SSA with a list of recruiters that will accompany FS's to the SSA office. Portland Bn is responsible for providing and updating the list (Bn letterhead, MFR format and signed by the Bn Cdr). EEPD will forward the list to the SSA.
(3) Recruiters will notify the appropriate SSA office NLT of 72 hours in advance of arrival. When escorting the FS to the SSA office, recruiters must wear a uniform and present their Military Identification Card (CAC) to the SSA office official.
(a) Guam office (671) 635-4212
(b) Honolulu office (855) 572-4879
(4) Recruiters will ensure that FS hand carry the following documentation with them when applying for a SSN.
(a) US Passport
(b) INS I-94 and associated paperwork
(c) DD 4 from the DEP/DTP enlistment
c. After applying for SSN, FSs return to their home of record. The SSA will mail the hard copy SSN card to the FS's address 14-21 days after application submission.
d. Recruiters will instruct FSs to contact them immediately after receiving their SSN, and will update RZ/GCRc with new SSN. The FS's new SSN is forwarded through Bn OPS to the ROC for update in REQUEST.
e. Reminder; Do not submit FPs or investigation until the SSN is issued for those who enlist using a TIN.

**L-4. Guidelines**
a. Europe:
(1) Projecting; Project all applicants to Heidelberg MEPS (code A07) for the correct date of each phase of processing (test, physical, DEP-in) except for shipping which is automatically projected by GCRc.
(2) Testing; All tests are given at the education centers and the results are electronically transmitted to NYC MEPS. MIRS automatically updates GCRc when the test is graded. Build and pull an applicant reservation if there is undue processing time from test to receipt of test scores. The recruiter can input the AFQT and line scores that are provided on a print out by the Test Site Coordinator at the education center. A temporary reservation can be converted to a permanent reservation with the print out results. However, a FS cannot ship without the actual scores built in the record.
**NOTE**: Estimated line scores populate when the AFQT is added.
(3) Medical; Physicals are conducted at Military Treatment Facilities (MTFs) and once completed; the recruiter will upload the DD 2807-1 and DD 2808 in ERM. This process occurs whether the applicant passes the physical or not. The Bn Ops is responsible for ensuring compliance by validating the applicant's record.
**NOTE**: The MTFs establishes the PULHES and reservations are pulled based on those PULHES. HIV and DAT testing occurs at the RECBN.
(4) Shipping; Soldiers shipping from Europe are not required to process through MEPS. The recruiter ensures that the electronic copy of the DD 1966 series is in ERM. NYC GC shop prints a completed DD 1966/1 on the

Soldier's ship day and supplies it to MEPS for submission to MIRS. MEPS inputs the data within one (1) business day. This process is imperative as the RECBN does not accept individuals that do not have accession data input in MIRS. The recruiter will ensure that all required documents per this regulation and the GCRc User Manual are uploaded in the record prior to the Soldier shipping. All European FSs will ship on Tuesdays and Wednesdays only.

(6) European Overseas Courtesy Shipping; Medical inspects for shipping (RA and AR) from Europe that normally do not ship from a MEPS location is not required, unless changes to the FS's medical eligibility is noted. Follow this process:

(a) Station commander of the shipping station will:

1. Complete a UF 601-210.20 (FS Hometown Shipping Checklist) three (3) working days prior to scheduled ship date to determine if there have been any changes to the FS's medical eligibility or if there were previously undisclosed medical issues.

2. Upload the completed UF 601-210.20 in the FS's ERM.

(b) If there are no changes to the FS's medical condition, no inspect is required. The FS can ship as scheduled after processing through the ship counselor. The GC will confirm the UF 601-210.20 is completed and uploaded in ERM.

(c) Follow all other courtesy shipper procedures listed in appendix P-4 of this regulation.

b. Japan and Korea:

(1) Projecting; Project all applicants to the Tokyo, Japan MEPS (code C86) or Seoul, Korea MEPS (code C87) for the date of each phase of processing (test, physical, DEP-in) except ship, which is automatically projected by GCRc.

(2) Testing; All tests are given at the education centers, and the results sent to Honolulu MEPS. See L-4a (2)

(3) Medical; See L-4a (3)

(4) Shipping; Soldiers shipping from Japan and Korea are not required to process through MEPS. The recruiter must save an electronic copy of the DD 1966 series. Email the copies (encrypted) to Honolulu MEPS GC shop (all personnel). The SGC prints a completed DD 1966/1 on the Soldier's ship day and supplies it to MEPS for submission to MIRS. MEPS must input the data within one (1) business day. The recruiter will ensure that all required documents per this regulation and the GCRc User Manual are uploaded in the record prior to the Soldier shipping. All FSs will ship on Monday and Tuesday only.

c. Pacific Rim:

(1) Shippers (RA and AR) from Pacific Rim locations that normally do not ship from a MEPS location.

(2) Recruiter or station commander will:

(a) Complete a UF 601-210.20 three (3) working days prior to scheduled ship date to determine if there have been any changes to the FS's medical eligibility or if there were previously undisclosed medical issues.

(b) Upload the completed UF 601-210.20 in the FS's ERM.

(3) If there are no changes to the FS's medical condition no inspect is required. The FS can ship as scheduled after processing through the ship counselor. The GC will confirm the UF 601-210.20 is completed and uploaded in ERM.

d. Guam/Saipan:

(1) Projecting; All applicants will be projected to the Agana, Guam/Saipan MEPS (code C85) for the correct date of each phase of processing (test, physical, DEP-in) with the exception of shipping, which is automatically projected by GCRc. Exception to this policy are those applicants who do not have a SSN and are issued a TIN by MEPCOM. The TIN applicants must be projected for every phase after receiving their TIN. MEPCOM will issue TINs as directed by DOD. All enlistees must have a valid SSN and their GCRc record updated with the new number prior to shipping.

(2) Testing; The Honolulu MEPS has an OPM tester in Guam/Saipan for testing purposes. The test scores are sent to Honolulu MEPS for grading and input in MIRS.

(3) Medical; See L-4a (3)

(4) Shipping; Soldiers shipping from Guam/Saipan are not required to process through MEPS. The recruiter must save an electronic copy of the DD 1966 series. The copies will be emailed (encrypted) to Honolulu MEPS GC shop (all). All FSs will ship on Tuesdays and Wednesdays only. See L-4a(4)

e. American Samoa Federated States of Micronesia, Philippines, and the Republic of the Marshall Islands:

(1) Projecting; Project all applicants to the Honolulu. See L-4a (1)

(2) Testing; Testing is accomplished by MEPS personnel from the Honolulu MEPS during the trips.

(3) Medical; The physical is administered by MEPS personnel during the DEP trip.

(4) Shipping; Soldiers process to ship through the Honolulu MEPS, with the exception of Samoa shippers.

(5) Use LS results for both DEP-in and DEP-out. USMEPCOM at this time does not have the means to USAREC Reg 601-210 capture FPs for overseas applicants. Recruiting personnel are responsible for the successful

submission and posting of FP results and the required investigation submission and acceptance.

f. Remote areas of Alaska: There are several remote areas in Alaska that warrant remote packet completion.

(1) Projecting/packet completion; Project applicants for the Anchorage MEPS. There are certain remote locations in Alaska that require the recruiter to complete the enlistment record via Army Career Explorer (ACE), email or fax without the benefit of face to face verification. Document verification occurs with the assistance of local school officials, police personnel or ARNG NCOs. Hand carry originals to the MEPS for verification by the assigned GCs.

(2) Testing (or utilize school ASVAB), medical and shipping is accomplished at the Anchorage MEPS.

(3) LS results are not required for applicants processing from remote locations in Alaska.

## Appendix M
## Waiver Procedures

### M-1. General

This appendix contains procedures for waiver processing. These procedures supplement AR 601-210, chapters 2, 3, 4 and 5.

### M-2. Policy

a. Waivers that were granted by other Services or components of the US Armed Forces may not be used for RA or AR enlistment. This policy pertains to pre-accession waivers that were approved but either the applicant did not enlist, or was discharged from their DEP. For applicants that received a waiver of any type from the ARNG and are still serving, submit a suitability ETP to EEPD Waivers via workflow.

b. Applicants may not enlist the same day that a conduct or administrative waiver has been approved without an ETP from the Bde Cdr.

c. If an applicant has an approved conduct waiver and commits or is convicted of a new offense, the applicant must submit a new conduct waiver to the approval authority. The applicant record is updated as follows:

(1) The recruiter runs a new police record check(s) (DD 369) and court check(s) (UF 601-210.02) (see AR 601-210, chapter 2-11) and adds any new information to the applicant's security clearance application.

(2) Initiate new waiver through a workflow. Update and upload all required documents and memos. Completely QC the waiver packet and forward the waiver workflow to the Bn Cdr for approval or recommendation to the approval authority in GCRc remarks section.

d. Physical requirements. The Bn Cdr may approve a waiver prior to the applicant taking the physical where he/she is the approval authority. A completed physical is not required to submit administrative waivers requiring USAREC level approval, except in cases where an applicant must take an APFT or demonstrate some physical ability. A complete physical is required for all other USAREC waivers.

e. Administrative and conduct waivers are valid for six (6) months from the date of approval. Medical waivers are valid until the physical expires.

f. In the event of the applicant requiring multiple waivers (conduct and medical), the Bn Cdr must approve the conduct waiver before submission of the medical waiver.

g. Documents (such as police checks, waivers, references, etc.) obtained by recruiters of other services or components are not accepted for RA or AR waiver processing.

### M-3. Conduct Waiver Procedures

a. The Company and Bn Cdr, or interim Cdr, (on assumption of command orders) interviews all applicants requiring a conduct waiver. Annotate results of the interview in the waiver workflow (GCRc remarks section) or in a MFR uploaded in ERM. The interview will reflect the details of the conversation, as well as a description of the disqualification and why it no longer exists.

b. An AR Soldier who unintentionally fails to reveal conduct requiring a waiver, that occurred prior to accessing, cannot ship to IADT without a retention letter from their unit IAW AR 135-178, chapter 7-4 and an approved waiver. Submit a conduct waiver for the charge or offense to the appropriate waiver approval authority provided the first O-6 or higher commander in the AR Soldier's chain-of-command approves the Soldier for retention and training. All additional information is added to the Soldier's security clearance application, DD 1966, and the Cdr's disposition noted in the Remarks section of DD 1966. Upload all applicable pages of the security clearance application, DD 1966, and copy(s) of written unit notification and decision in the Soldier's ERM.

c. Submit a detailed and chronological description of all offenses (to include traffic violations) from the applicant. Upload the applicant statement as part of the documentation for the waiver packet.

## M-4.  Administrative Waiver Procedures

The majority of administrative waivers are dependency and re-enlistment eligibility (RE) code waivers.

a. Dependency

(1) The Company and Bn Cdr, or interim Cdr (on assumption of command orders), reviews the DA 3072-2 (Applicant's Monthly Financial Statement) to validate the applicant's ability to support his/her family.

(2) Applicants requiring a dependency, parenthood, hardship, pregnancy, or a dual military member waiver will complete DA 3072-2 (Applicants Monthly Financial Statement). The applicant fills out the form using his or her monthly income and liabilities against civilian and military pay. Instructions for preparing the form are:

(a) Blocks 1 and 2: Self-explanatory

(b) Block 3: Enter current income or if currently unemployed, enter monthly salary and termination date of the last period of employment. Other income includes spouse's income, money from odd jobs, and child support. The applicant must state clearly the source of the income. Other income if enlisted should cover any anticipated income while serving in the military from sources other than military.

(c) Block 4a: Liabilities against current income include all expenses paid out by the applicant and spouse (such as credit cards, loans, utilities (to include cell phones) and child support). Explain and detail what payments of other indebtedness or financial obligations in block 6.

(d) Block 4b: Liabilities against military income include most of the liabilities listed in block 4a unless that particular debt is paid prior to enlisting. In this case, explain it in the remarks section. Complete this block regardless of whether processing for RA or AR. When completing this block, do not assume housing is provided.

(e) Block5: Include all assets owned (for example boats, RVs, mutual funds, and certificates of deposit).

(f) Block 6: Use this block to clarify anything on the form where a question might arise. This block includes any pertinent information regarding current and future financial stability.

(g) The applicant and a witness sign the form.

(3) Review the statement from the person responsible for the care of dependent(s), ensuring they are functionally able to care for the dependent(s) with whom they are entrusted. In cases of a hardship waiver, ensure the statement supports the claim that the hardship no longer exists.

(4) Include the Company and Bn Cdr applicant interview in the waiver packet prior to the electronic submission of the waiver to EEPD via workflow.

**NOTE**: Applicants found to be in arrears for child support may only continue to process if there is no pending criminal action to secure payment. This is determined through LS, DD 369/court checks as appropriate. Applicant may continue to process once arrears are paid to the court's satisfaction (when applicable).

b. Admin RE Code requirements

(1) The complete discharge/separation packet uploaded in ERM.

(2) The DD 214, NGB 22 and any applicable discharge/separation orders. If AR discharge, obtain PERNET or similar printout that shows a narrative reason for separation and "Current Organization" affiliation (should be CUR ORG Y).

**NOTE**: Pre-Accession RC separations that result in an "Uncharacterized" characterization of Service must have an exception to process without a hardcopy RE code waiver prior to processing.  Include an explanation from the applicant why they could not ship and why the condition no longer exists, and any other supporting documentation. For AR losses, provide the PERNET N10 screenshot.

(3) Applicant statement outlining any factors in the separation.

(4) Company and Bn Cdr Interviews.

(5) To allow a comprehensive whole-person review of the applicant's waiver, include a description of any applicant law violations for all waivers (except medical).

**NOTE**: Exceptions to process the waiver without the discharge packet will be considered on a case-by-case basis provided all means to obtain the documents have failed. Provide the FL142 results, a description of the efforts taken to retrieve the documents, and any supporting via "Missing Documents" ETP via workflow to Policy attention "EEPD- Waivers Branch.

## M-5. Medical Waiver Procedures

Request for medical waiver is submitted only if the applicant is otherwise qualified.

a. Processing a medical waiver:

(1) Required documentation for all medical waivers:

(2) DD 2807-2 completed by the CMO.

(3) DD 2807-1

(4) DD 2808

(5) 680-ADP

(6) Any applicable medical records related to the disqualifying condition that have been reviewed and annotated by the CMO (first and last page stamped and initialed, pages numbered IAW USMEPCOM regulation 601-23).

b. Initiate a medical waiver workflow upon GC notification of applicant disqualification.

(1) PS and GNPS applicants discharged from any Service or component of the Armed Forces for medical reason requires a medical waiver regardless of MEPS physical result. The approval authority is USAREC Command Surgeon. Additional documentation for specific discharge/separation:

(a) Failure to meet medical procurement standards. Submit DA 4707 (Entrance Physical Standards Board (EPSBD) Proceedings).

(b) Personality Disorder and Physical Condition Not a Disability. Submit DA 3822 (Report of Mental Status Evaluation or admin or medical documents with psych diagnosis).

(c) Disability Severance or similar. Submit DA 3947 (Medical Evaluation Board Proceedings), DA 199 (Physical Evaluation Board Proceedings), MEB Narrative Summary.

(2) The Command Surgeon has the authority under the provisions of AR 40-501, chapter 7-8e, to revise the physical profiles for approved medical waivers. Any change made by the Command Surgeon to the physical profile is valid for enlistment. Approved waiver does not guarantee qualifications, exceptions from the proponent may be required.

(3) Stamp all changes made to an applicant's physical profile by the Command Surgeon indicating the new physical profile on the workflow.

(4) Recruiting personnel will not request the applicant to perform any exercise or obtain civilian medical tests related to the applicant's condition or a physical fitness test unless directed/requested by the USAREC Command Surgeon via workflow.

## M-6.  Counseling of Applicants

a. Take care in counseling applicants and/or influencers on waivers to prevent frustration and confusion on the part of both the recruiter and the applicant.

b. Advising applicants of denial of waivers. Recruiters inform applicants that the application for waiver of disqualification was not favorably considered. Under no circumstances will recruiting personnel disclose the name, organization, or contact information of the final disposition authority. When processing PS waivers, the individual is advised that the denial of the waiver was based upon a thorough evaluation of their PS records in conjunction with their current waiver request. Only provide the applicant their personal medical records or documentation. Do not provide the applicant any USAREC or MEPS generated documents, to include waiver workflows received via email or GCRc.

## M-7. Supporting Documents

a. Use DD 370 for required references. (The individual providing a character reference for an applicant may compose his or her own original letter rather than using the DD 370. Ensure that applicant identification data is included in the letter or statement.)

b. Recruiters will obtain the court documents and police incident report for the charge(s) requiring a waiver (DD 369s  are also required IAW AR 601-210, chapter 4).  Claim any fees charged by the court for copies of court documents as reimbursable expenses for documents in the same manner as fees for copies of birth certificates or other official documents. Reimbursement is not authorized if the charge for the court document is for a purpose other than a copying expense. Recruiters will check the online Police Agency List (PAL) via "My Launcher" on IKROme.

c. The UF 601-210.14 (formerly FL 146) is valid for five (5) years. If the date or modified date on the PAL is outside of five (5) years of UF 601-210.14 is no longer valid.

(1) Bn and Bde Ops will update the PAL as necessary by sending a new UF 601-210.14 to applicable police agencies.  Information will be validated by the Bn XO or Cdr and updated by Ops.

(2) PAL search(es) will be uploaded to the appropriate folder in ERM. It is no longer required to upload a DD 369 when a PAL search is uploaded for an agency that does not release.

d. The UF 601-210.02 is valid for six (6) months. Use the UF 601-210.02 to obtain court information when the court will not furnish a copy of court documents or charges a fee other than copying expense, but will provide information about the applicant's court history. Recruiters will ensure all information required and available is recorded on the form. If the court will not complete the form nor furnish court documents, but will allow the recruiter to review court records, the recruiter will record the court history on UF 601-210.02 and sign the form indicating that they extracted the information from official court records. Telephonic court checks can be used by following the same procedures as telephonic police checks IAW AR 601-210. This does not apply to the requirement of obtaining a police incident report.

e. DD 369 used as part of the waiver request are valid for six (6) months. If new charges arise after police

checks have been complete, obtain new checks.

f. Utilize the UF 601-210.04 to obtain a report from a correctional facility for all applicants who have been detained, committed, or confined in a law enforcement facility. Confinement and detainment are applicable only when the applicant is restrained from leaving the law enforcement facility, by whatever means, for a period in excess of 24 hours. Obtain the UF 601-210.04 for applicants who were under house arrest from the person having responsibility for monitoring the program. The UF 601-210.04 is valid for six (6) months.

g. UF 601-210.08 (Waiver Worksheet) is required for all waivers except medical waivers. Only page 1 of the UF 601- 210.08, is required to be uploaded in ERM for all conduct and administrative waivers, as well as USAREC level suitability reviews. The workflow serves as page 2 of the UF 601-210.08 (Recommendation for Approval/Disapproval) and saved in ERM/GCRc. The UF 601-210.08 will include all offenses with complete dispositions in chronological order.

## M-8. Personal Conduct

a. Conduct standards deal with acceptability of persons with police records. They are designed to screen persons likely to become serious disciplinary problems and impact the performance of military missions.

b. Apply the whole person concept in determining the applicant's conduct qualification for enlistment.  Areas of consideration under this concept include number of offenses, severity of the charges, the actual sentence, and applicant's age at time of the violation. Other considerations are physical qualification for enlistment, employment history of applicant, educational achievements of the applicant, and favorable comments from probation and parole officers, employers, and school officials.

NOTE 1: AR 601-210, chapter 4-2 outlines what requires a suitability. This is "at a minimum", meaning a commander may conduct a suitability on any charge(s) deemed questionable. This includes excess traffic tickets.

NOTE 2: Any offenses that would have required a waiver if guilty/OAD requires a suitability review. Exceptionally meritorious cases are granted conduct waivers. These cases must present clear evidence of rehabilitation and assurance that the individual will not become a disciplinary problem. The commander will closely adhere to the above criteria for conduct waiver processing.

## M-9. OCS Waivers

a. Age exceptions. Applicants requesting an exception for age to the OCS enlistment option will have a complete packet with a request for an exception submitted to EEPD Policy. For all OCS waivers (RA and AR):

(1) RA and AR NPS and PS applicants entering into OCS must enter AD or ship to training by their 33rd birthday and must graduate and accept commission prior to age 34.

(2) PS personnel entering OCS must not have more than nine (9) years of Active Federal Service upon arrival at OCS.

(3) Age ETPs for applicants who are 33 years old or older are considered for meritorious cases.

b. Medical waivers. Medical waivers for the OCS enlistment option are the same as for any applicant applying for enlistment. Approval authority is the CG. The Command Surgeon acts on behalf of the CG for all OCS medical waivers. Additional medical considerations for OCS that differ from normal enlistment processing are as follows:

(1) Applicants applying for OCS must meet ht/wt standards of AR 600-9 regardless of category (NPS, GNPS, and PS).

(2) Applicants applying for OCS with the inability to distinguish and identify, without confusion, the color of an object, substance, material, or light that is uniformly colored a vivid red or vivid green are disqualified (AR 40- 501, chapter 2-13e).

c. Disenrollment from prior officer candidate training exceptions, Bn must submit an exception for disenrollment from prior officer candidate training for the OCS enlistment program to EEPD Policy. Use the following for this ETP: Not to run a hard copy RE code waiver.

d. Conduct waivers.

(1) Disqualification. A conduct waiver/suitability review for OCS processing is required from CG (RA and AR), for any of the following:

(a) Any person adjudicated as a youthful offender.

(b) Any offense with a fine of $300 or more excluding court costs.

(c) Any offense, where confinement was ordered, regardless of suspended sentence or deferred disposition.

(d) Any offense that involves contributing to the delinquency of a minor, spouse or child abuse, and any sex-related crime.

(e) Any offense, listed in AR 601-210, chapter 4, as a misconduct offense.

(f) Any alcohol related offense.

(2) Non-waiver conduct disqualification for OCS processing. Any applicant that has received any of the

following are ineligible to process for the OCS enlistment option:

(a) A conviction or other adverse disposition for a felony offense.

(b) Two or more convictions or adverse dispositions for driving while intoxicated, under the influence, or while impaired due to substance abuse, alcohol, drugs, or any other condition that affected judgment or driving ability. Consider without regard to technical or legal definition or term used by the State, county, or country, in which the applicant committed the offense.

## M-10. WOFT Waivers

a. Age exceptions. RA applicants requesting exceptions to the maximum age for WOFT must complete a packet with a request for an exception submitted through HQ USAREC, ATTN: RCRO-SP, to Aviation Proponency, and to HQDA, Office of the Deputy Chief of Staff, G-1, ATTN: DAPE-MPO-D, Washington, DC 20310-0300. Include in the memorandum: the date of birth, Selection Instrument for Flight Training (SIFT) test score, GT score, education level, flight experience, and strong justification as to why the exception is in the best interest of the Army.

b. Medical waivers. Applicants requesting exceptions to medical entry standards must receive an aero-medical summary and recommendation for a waiver from the flight surgeon administering the Class 1 examination. Requests for waivers are submitted to the Commander, US Army Aero-medical Center, ATTN: HSXY-AER, Fort Rucker, AL 36362-5333.

c. Conduct waivers.

(1) Disqualification. Conduct waivers for WOFT processing are submitted through HQ USAREC, ATTN: RCRO-SP, to Aviation Proponency, and to HQDA, Office of the Deputy Chief of Staff, G-1, ATTN: DAPE-MPO-D, Washington, DC 20310-0300 for any of the following.

(2) Any person adjudicated as a youthful offender.

(3) Any offense with a fine of $300 or more excluding court costs.

d. Any offense where confinement was ordered, regardless of suspended sentence or deferred disposition.

e. Any offense, regardless of disposition. That involves contributing to the delinquency of a minor, spouse or child abuse, and any sex- related crime.

f. Any offense listed in AR 601-210, chapter 4, as a misconduct offense.

g. Received four or more minor non-traffic.

h. Administrative - RE-code only.

i. Any alcohol related offense.

(1) Non-waiver conduct disqualification for WOFT. Any applicant that has received any of the following is ineligible to process for the WOFT enlistment option:

(a) Conviction or adverse disposition for a felony offense.

(b) Two or more convictions or adverse dispositions for driving while intoxicated, under the influence, or while impaired due to substance abuse, alcohol, drugs, or any other condition that affected judgment or driving ability. Consider without regard to technical or legal definition or term used by the state, county, or country in which the applicant committed the offense.

(2) HQDA G-1, is the approval authority for a conduct waiver for WOFT processing; however, Bns are responsible for obtaining the appropriate conduct waiver for enlistment purposes prior to boarding at Bn level. For example, an applicant that has one driving under the influence conviction and is applying for WOFT, the Bn Cdr must approve a conduct waiver for enlistment prior to boarding. Forward a copy of the approved conduct waiver for enlistment, as well as a Bn Cdr endorsement for conduct waiver review for WOFT processing, to HQ USAREC, ATTN: RCRO-SP, along with the completed board ready WOFT application packet and supporting documents required for conduct waiver. Special Programs and Boards Division, forwards the packet to the appropriate approving authority, HQDA G-1.

(3) Documents required in support of a conduct waiver:

(a) Company and Bn Cdr's endorsement for conduct waiver review.

(b) Applicant's detailed statement describing the circumstances of charges.

(c) All required DD 369(s), UF 601-210.02(s), and court checks.

(d) Approved Bn level waiver for enlistment (if required).

## M-11. USAREC Level Reviews

a. Submit USAREC level suitability reviews, as required, by AR 601-210, chapter 4, to the EEPD Waivers Branch.  This is the only official opinion used for enlistment qualification.

b. Supporting documentation: Upload in ERM all supporting court documents, LS results, police checks and incident reports, Company and Bn Cdr interviews, UF 601-210.08 (Waiver Worksheet) and applicant statement prior to submission. The same process will be followed for Bn-level actions.

c. Cdrs at levels below the approving authority, including the Company, may disapprove the review for

applicants that fail to meet prescribed standards or establish a meritorious case. Capture the Cdr's recommendation in the workflow or via uploaded MFR.

## M-12. Exceptions to Policy

Submit requests for ETP for qualifications and standards contained in AR 601-210 and/or REQUEST qualifications via workflow generated from GCRc. When a final disposition is received the results of the workflow are posted to GCRc. Document all approved or disapproved exceptions in the "Remarks" section of the DD 1966/4 and included in the enlistment record.

## Appendix N
## Education Credentialing

### N-1.  Purpose

This appendix details requirements and processes for education credentials established by AR 601-210. The local ESS conducts both school, and or program evaluations, by completing UF 601-210.40 (School Profile Evaluation) to enter schools into HSS/FAZR database.  The ESS will complete Tier Evaluation Workflows on applicant to determine and assign proper DoD Education Code classifications for applicant enlistment processing. See Figure N-1 for the education credentialing process.

**Note**: Contact G7/9 Education Division with questions or issues pertaining to school programs, evaluations, accreditation or Tier Evaluation Workflow process.

a. The Tier Evaluation Workflow process will be used for all applicants with education credentials from DoD Education Code "TE" schools in HSS/FAZR, all recruiters will manually enter schools processing for enlistment and to request education related exceptions to policy as needed or required to determine and assign proper DoD Education Code classifications for enlistment purposes.

b. Consider regionally accredited non-public schools as established HSs that do not require a physical on-site visit to  determine Tier/DoD Education Code classification.  The BN ESS obtains proof of regional or legitimate accreditation and completes a UF 601-210.40 prior to inclusion of the school in HSS/FAZR.

c.  Public charter schools which parallel traditional HS programs, do not require a physical on-site visit to determine Tier classification. Public charter school students who are enrolled in and/or completed a program that parallels a traditional HS program are considered in the same manner as a HS diploma graduate (HSDG) (DoD Education Code Classification L) for enlistment purposes. Charter schools in which the majority of the credit is not classroom based or exemplify alternative school characteristics require further evaluation by the Bn ESS and completion of UF 601-210.40 to establish Tier/DoD Education Code classification in HSS/FAZR.

d. All traditional public HS credentials are classified as DoD Education Code L. However, when a station commander or Company Cdr, Bn S3, or GC detects questionable credentials, refer the credential(s) to the Bn ESS for further evaluation and proper Tier/DoD Education Code classification. Public HS credentials and diplomas awarded based on testing, (GED, HiSET, California High School Proficiency Examination, Florida GED Exit Option), independent study, web and online based education, distance learning, competency based, adult basic education (ABE), or correspondence require the ESS or authorized evaluating official to determine the proper Tier/DoD Education Code Classification.

### N-2. School Profile Evaluation (UF 601-210.40)

a. The ESS, or authorized official, must complete UF 601-210.40 to determine a school Tier/DoD Education Code classification on non-regionally accredited non-public schools, and all non-public adult or alternative education schools and/or programs. The information gathered to complete UF 601- 210.40 is used to enter schools into the HSS/FAZR database.

b. Information to complete UF 601-210.40 can be gathered telephonically, during a physical on-site visit, via email, web site, or by written correspondence. A physical on-site visit and completion of UF 601-210.40 is required prior to coding any non-regionally accredited non-public schools, non-public adult or alternative education school as an DoD Education Code "L" or "B".

c. DoD Education Code L or B subsequent validations of such programs will be conducted every three (3) years. Schools with expired Tier Evaluations will be coded as Tier Evaluation "TE" required until a validation is completed.

d. Programs classified as Tier 2 DoD Education Code Classification E, J, or X as a result of a Tier Evaluation do not require subsequent validation every three (3) years.

e. Programs previously classified as Tier 3 will require a physical on-site visit and completion of UF 601-210.40 to upgrade the status from a Tier 3 classification to any higher-level DoD Education Code. Validation and concurrence from the Bde ESS or G7/9, Education Division staff is required.

f. If the ESS is unavailable to conduct a physical on-site visit due to geographical dispersion, the Bn XO, the Bn S3, and Company Cdrs are authorized to complete the UF 601-210.40 and/or conduct a physical on-site visit.

g. When conducting a physical on-site visit and/or completing UF 601-210.40, recommend the appropriate Tier or corresponding DoD Education Code classification to the Bn Cdr for final approval and signature.

h. Public HSs, public continuation schools, public charter schools which parallel traditional HS programs; regionally accredited non-public HSs do not require a UF 601-210.40.

i. Tier Evaluations are the responsibility of the Bn ESS. Bn ESSs are not authorized to change Tier/DoD Education Code classifications for schools outside their Bn area. Contact the Bn ESS, Bn XO or Bn S3 within the recruiting area of operation for assistance.

j. Upon completion of the on-site school visit, the individual conducting the visit provides the recommendation in section III of UF 601-210.40, signs, and forwards it to the Bn Cdr for final approval and signature.

k. The Bn Cdr's signature is required to complete and validate the recommended Tier/DoD Education Code classification on UF 601-210.40. When the Bn Cdr is physically outside of the Bn area, a copy (email or fax) of the form is acceptable. The Bn XO, when on assumption of command orders, is authorized to sign for the Bn Cdr. (Attach a copy of the assumption of command orders to the UF 601-210.40.)

l. If a physical on-site visit and UF 601-210.40 is completed by other authorized individuals and the school/program meets DoD Educational Code L classification requirements, the Bn ESS must review and validate the form within 60 days of the visit.

(1) The ESS must maintain all completed UF 601-210.40 on file for three (3) years.

(2) If the ESS determines a school Tier/DoD Education Code classification change is required, the ESS must complete a new UF 601-210.40 and include justification in the comments section of HSS/FAZR.

(3) The Bn ESS must sign and date UF 601-210.40 in Section III to validate the recommended Tier level.

## N-3. Education Tier Evaluation Workflow Process

The Bn and Bde ESSs will utilize the Tier Evaluation Workflow process IAW HSS/FAZR, the applicant's educational credential records and other substantiating educational documents to determine if an applicant's educational credentials meet AR 601-210 criteria for enlistment eligibility when a school's Tier/DoD Education Code classification listed in HSS/ FAZR is "TE" a recruiter has manually entered a school for applicant enlistment processing or to request education related exceptions to policy as needed or required to determine and assign proper DoD Education Code classification for enlistment purposes. (See figure N-1 for the Education Credentialing Process and see figure N-2 for an Education Code classifications matrix for secondary schools.)

a. The local Bn ESS is the primary evaluating Tier Evaluation Workflow evaluating official. In the absence of the Bn ESS, the Bn XO or Bn S3 (commissioned officer or equivalent ranked civilian) acts as the evaluating official. Company Cdrs, First Sergeants or other enlisted personnel are not authorized to complete applicant education Tier Evaluation workflows.

b. The evaluating official, using the Tier/DoD Education Code classifications outlined in N-4 of this regulation, review the applicant's education documents to determine Tier/DoD Education Code classification (Figure N-2).

c. Prior to accessing individuals from a manually entered school or "TE" coded school in HSS/FAZR, the following documents are required for completion of Tier Evaluation workflow:

(1) Official transcripts from each school attended, grades 9th-12th (uploaded by the recruiter in ERM).

(2) Diploma or official transcript showing the graduation date from the school issuing the diploma.

d. Prior to accessing individuals enrolled and attending a school or program listed as listed as manually entered school or "TE" in HSS/FAZR into the DEP or DTP, the following documents are required:

(1) Official or certified letter from the educational institution indicating date of enrollment, class attendance, expected graduation date, school transcripts for previous credits and courses completed, and the name of the school awarding the diploma if different from the school or program the individual is attending.

(2) "For DEP-In only", complete the Education Tier workflow for currently enrolled applicants by affirming the applicant's education enlistment eligibility (S, M, or 9) and the recommended DoD Education Code classification upon completion by the applicant of the currently enrolled and attending program (L, B, H or 7) is annotated as applicable.

(3) "For DEP-Out", upon the applicant's completion of the educational program (graduation), a DEP-Out Tier Evaluation workflow must be submitted and the evaluating/authorized official must reevaluate the applicant's education documents to ensure completion of the same program in which applicant was enrolled at initial DEP-In. Affirm the re-evaluation "For DEP-Out" only. Annotate appropriate Tier/DoD Education Code in the Education Tier Evaluation workflow.

NOTE: The "process Tier Evaluation" link in the applicant profile screen will remain active for those applicants who require a DEP-Out Tier Evaluation workflow.

e. The evaluating official/authorized evaluating official is the approval authority for processing the Education

Tier Evaluation workflow.

f. If a Tier/DoD Education Code classification evaluation is questioned by anyone within the Bn chain of command, forward the Education Tier Evaluation workflow to the Bde ESS for validation and Tier/DoD Education Code classification determination prior to applicant processing. If a decision is not reached at Bde level or below, G 7/9, Education Division makes the final determination.

g. All Education Tier Evaluation workflows will be maintained in a database server and all completed workflows will be visible in the "Completed" tab by evaluating/authorized officials.

h. All completed/previous UF 601-210.41 will be maintained on file with the Bn ESS for three (3) years from date of completion.

i. In the case of missing education documents, battalions request an ETP. Documentation verifying the educational status of the applicant must accompany any request for an ETP. Forward all ETPs to EEPD, Policy via workflow for review by G 7/9, and Education Division.

## N-4. High School Diploma Producing Programs (Tier 1)

a. High school diploma (HSD) graduate (ED LVL code 12L) (HSDG). A graduate issued a diploma or official certified copy of a transcript from a traditional private or public school. The four (4) years of secondary schooling/program of instruction (public or private) must provide education in a traditional manner (teacher- student environment, teacher directed, classroom based, day program of instruction, and required attendance. Self- paced and modular units are not teacher directed). Credits are earned based on the state, district or school standard policy for graduation requirements which vary depending on state law and the diploma is issued from the high school where the individual completed the requirements for graduation. This also includes individuals that met all requirements for graduation, but if applicable, failed to pass the state mandated exit exam(s). Graduation credentials must be issued by an institution (attendance based) approved by state/local government education agency, or accredited by one of the accrediting organizations recognized by the US Department of Education or the Council for Higher Education Accreditation, one of the following document(s) is required for verification:

(1) An official diploma or certified transcript showing the individual's graduation date from the school that issued the diploma.

(2) Applicants not yet issued a diploma, but having met all graduation requirements, must obtain an original letter from the applicant's principal, registrar, school guidance counselor, or custodian of records. The letter must state that the individual met all requirements for graduation but a diploma was not issued, include the reason why, and provide the completion date of high school graduation requirements.

(3) Telephonic verification can be performed by the 1SG, Company Cdr, senior Ops, SGC, ESS, or equivalent contracted personnel assigned to USAREC.  FSs cannot ship to training until they have received official transcripts and/or diploma that indicates they are considered a HSDG.  All documents will be uploaded into the applicant/FS's ERM.

(4) Applicants, who have met graduation requirements but will not receive a diploma until financial obligations are met, must obtain a letter which explicitly states, "Diploma will not be released until all debts are cleared." Upload the letter in ERM and request an ETP via workflow to EEPD.

b. A HS diploma earned via semester, quarter or clock hours (HSDC)Job Corp (ED LVL code 128): A non-high school diploma graduate who completed 15 semester hours, 22 quarter hours of college credit or 675 classroom clock hours from an accredited traditional or online college or post-secondary institution.  This category includes Job Corps graduates who completed at least 675 clock hours of post-secondary vocational-technical training from the Job Corps operated by the US Department of Labor and earned a GED or other Tier 2 education credential. Job Corps students must enroll in Job Corps for a minimum of 60 days prior to enlistment and are considered a HSDG.

(1) HS diploma graduate via semester, quarter or clock hours (HSDC) will required the following: A non-high school diploma graduate who attended a post-secondary institution and completed 15 semester hours, 22 quarter hours of college credit or 675 classroom clock hours from an accredited traditional or online post-secondary institution.

(a) Credits from any post-secondary institution accredited by one of the accrediting organizations recognized by the US Department of Education or the Council of Higher Education Accreditation are accepted.  Questionable post-secondary institutions require verification by the Bn ESS or authorized official.

(b) Online College credits must be on an official transcript from post-secondary institutions accredited by oneof the accrediting organizations recognized by the US Department of Education or the Council on Higher Education Accreditation are accepted for HSDG.

(c) Transcripts establishing HSDC eligibility must convey the number of semester hours, quarter hours, or clock hours acquired IAW the degree plan of the institution. Semester and/or quarter hours are accepted from any accredited degree granting institution. Clock hours are acceptable from any accredited degree and accredited nondegree granting postsecondary institution.

(d) Combining of semester hours with quarter hours or combining clock hours with either semester or quarter hours is allowed (use the formula in AR 601-210, chapter 2-7).

(e) Combine clock hours from two or more accredited post-secondary vocational-technical schools.

(f) Do not accept or use credits for life experiences for HSDC enlistment purposes, credits earned from testing or for the pursuit of HS equivalency and credits from schools that are candidates for accreditation.

(g) Credits earned through testing, adult education, assessment, military training, or high school equivalency preparations are not applicable.

(h) Use credits awarded for online or Internet-based post-secondary courses from any degree-granting institution accredited by one of the accrediting organizations recognized by the US Department of Education or the Council for Higher Education Accreditation to establish HSDC eligibility. Online or Internet courses must be:

1. College level courses (no work or life experience courses).

2. Semester hours or quarter hours

3. Completed before shipping to IADT.

**NOTE:** Use the completion of college classes numbered below 100 if the course is clearly identified as a college level course. Accept the courses for credit only if the college or university applies them to a degree producing program.  Do not use college classes numbered above or below 100 that are listed as continuing education units (CEUs) or not applied to a degree-producing program.

(2) Job Corps graduates require the following: This category includes Job Corps graduates who completed at least 675 clock hours of post-secondary vocational-technical training from the Job Corps operated by the U.S. Department of Labor and earned a GED or other Tier 2 education credential. Job Corps students must enroll in Job Corps for a minimum of 60 days prior to enlistment and are considered a HSDG.

(a) The Job Corps center director and training director must verify (substitutions are not acceptable) the Job Corps Certification of Student Graduation and Completion of Vocational Training Form. The Bn ESS evaluates Job Corps HS completion programs (not a GED) to ensure minimum Tier 2 education code classification requirements are met.

(b) Do not combine clock hours from Job Corps with any institution, other than another Job Corps.

c. HS diploma graduate via adult/alternative diploma (ED LVL code 12B). This includes a graduate that receives a diploma from a public or private attendance based, non-traditional school that utilizes alternative methods of instruction to complete graduation credit requirements (such as; alternative, accelerated, or HS completion programs to include the GED test option). The school or program may operate outside of a four (4) year secondary school, traditional teacher directed, credit based day program of instruction, may have flexible operating hours and utilize some type of alternative means of education (computer based, or teacher directed, and combination of testing and self-paced and or accelerated instruction). The classification of these types of schools/programs may vary depending on the state.

(1) A GED test option program is currently offered in several states as part of HS completion and is designed to target students with the capabilities to complete high school graduation requirements: but for a variety of reasons lack the credits needed to graduate with their class and are at risk of leaving school without a HS diploma. These programs are intended to prepare students for the GED test and provide substantive academic content aligned with the schools' regular curriculum and expectations. Students must attend school regularly and have access to counseling and support services. Students in a GED test option program must remain enrolled and in school and receive a HS diploma from the HS or school district and are counted as HS graduates. A minimum number of academic hours of instruction per week are provided as determined by local school districts or states to retain the classification of full-time student. The GED test scores for students enrolled in a GED test option program are only traditional academic course work. The GED score report is one of the academic components required for the awarding of a HS diploma by the local HS or school district, and as such, may be included in the student's permanent record (transcripts). Since the purpose of the GED test option program is to qualify the student for a HS diploma, the scores are only valid in that context.

(2) Do not code students who fail to complete all GED test option program requirements as determined by a local HS, school district or state as DoD Education Code B. Their status will revert to Tier 2, DoD Education Code E with the appropriate GED certificate or as Tier 3 if no valid education credentials are provided (refer to N-5a or N6).

d. HS diploma graduate via virtual/distance school (ED LVL code 127). A secondary school graduate that, upon completion of an accredited home study, distance learning, independent study, self- study, correspondence school,Cyber School, or virtual learning program is awarded a diploma. The diploma is issued from an institution that is either state/local government education agency approved, accredited by the Distance Education Accrediting Commission (DEAC), or accredited by one of the accrediting associations recognized by the US Department of Education or the Council for Higher Education Accreditation.

e. HS diploma graduate via home school (ED LVL code 12H). A graduate of a home school program that received a diploma IAW state requirements administered by a parent, teacher/school district, or umbrella association.

(1) To qualify for enlistment as a home school graduate, an applicant must meet one of the following criteria:

(a) In states that require parents to notify the school and/or local school district that they are home schooling their children, provide a signed enrollment form from the State Department of Education or local school district.

(b) In states that do not require parents to notify the school and/or school district that they are enrolling their children in home school, provide a home school certification or diploma from the parent, guardian, or national, state, or county home school association or organization.

(c) The curriculum used must involve parental instruction and supervision, and should closely pattern standard subjects taught in traditional HSs. Accelerated, independent/self-study, home study programs and lesson packets that award a credential or diploma based on assessment and testing are not acceptable. Do not confuse home school with independent study which may take place at home, but does not involve parental instruction.

(d) A copy of the applicant's transcript(s) for all completed secondary school grades (9th – 12th) is required. The transcripts must include an enrollment date, graduation date, and type of curriculum. Additionally, the transcripts must reflect successful completion of the last nine (9) academic months of continuous schooling from the home school or parent issuing the diploma.

(e) Further evaluation and additional verification (such as a parent letter or home school association letter) are required for all applicants attempting to enlist with only a diploma and transcript from the parents or guardian. Refer such cases to the Bn ESS for final determination. If a decision cannot be reached at Bn level, the ESS will send the packet to Bde ESS. If a decision cannot be reached at Bde level, G7/9, Education Division makes the final determination of home school credentials.

f . Currently enrolled and attending other than a HS diploma program (adult or alternative education or post-secondary) (ED LVL code M). A non-high school graduate currently enrolled and attending class in an adult, alternative or virtual (online) education or college program other than a HSD program and is expected to graduate or attain the required credits: 15 semester hours, 22 quarter or 675 clock hours of classroom instruction within the current term. Credits from any institution accredited by one of the accrediting organizations recognized by the Department of Education are accepted. Credits earned through testing (for example, College Level Examination Program (CLEP), adult education, assessment, military training and high school equivalency preparation) are not applicable. An applicant must have a statement from the school stating he/she is currently enrolled and attending and indicates the expected graduation or completion date. Applicants attending post-secondary institutions in pursuit of HSDC status through clock hours are permitted to enlist (DEP/DTP). Process these individuals for enlistment after required documents are obtained and accomplishing proper verification procedures as established below.

(1) Document and verification procedures required for applicants currently enrolled and attending in an adult education program are as follows:

(a) For DEP/DTP, an official or certified letter from the educational institution indicating date of enrollment,the date the applicant is expected to complete the program and receive a diploma, and class attendance. Utilize a MFR from the Bn ESS to verify current attendance if the college is unable to provide written verification.

(b) Upon completion from the approved adult or alternative education program, and prior to shipping for AD orfor IADT, the applicant must have a diploma or certified copy of transcripts.

(2) Forward documentation that requires further review to the Bn ESS.

(3) Documents and verification procedures for applicants currently in pursuit of HSDC are as follows:

(a) An official or certified letter from the educational institution verifying enrollment in the current term (semester, quarter, or trimester) and indicates the current term completion date.

(b) Enlist individuals who have already met the minimum requirements for HSDC status under the provisions of 1(b) above, and are currently continuing attendance at an accredited institution as an HSDC credential holder. Code these applicants as COLL rather than ENRL in the REQUEST database.

(c) Individuals must have official transcripts prior to shipping for IADT. Transcripts issued by the institutionstamped "Issued to Student" or "Student Copy" are acceptable.

(4) DEP/DTP members currently in pursuit of HSDC status through an adult or alternative education program or college who fail to graduate or meet the minimum 15 semester hours or 22 quarter hours of college level (post- secondary) credit are considered failed to graduate and DEP/DTP separated. These individuals are encouraged to return to school. Applicants obtaining education credentials and re-apply for enlistment qualify based on current enlistment policies.

g. HS senior (ED LVL code 11S). An individual who does not possess a valid secondary school credential (GED, HiSET or other) who is currently enrolled in a traditional, home school, online, or adult/alternative HS program of instruction and will graduate within the current authorized DEP/DTP period. An individual not in the 12th grade and enrolled in an accelerated program, must meet the requirements for graduation and complete school attendance within 365 days for RA, or 270 days (360 days for ages 17 to 18 1/2) for AR may enlist in this category. Applicants for AR must be in a full senior curriculum course of study. These individuals must have an official letter issued by the HS on official school letterhead signed by a qualified school official verifying this status.

(1) Verification is required and can be obtained in writing. It must be on the school's letterhead stationery and signed by a qualified school official (principal, vice principal, registrar, counselor, or custodian of school records, so designated by the principal).

(2) Verification is authorized by telephone or email for enlistment into the DEP/DTP. The 1SG, Company Cdr, senior OPS, SGC, commissioned officer, ESS, or equivalent contracted personnel assigned to USAREC can perform telephonic or email verification for enlistment. The telephonic or email verification must include name of applicant, last four of applicant's SSN, date of birth, name of school, school address, school telephone number, currently meeting graduation requirements and expected date of graduation, name and title of individual providing verification, and the name and title of individual conducting verification.

(3) Verification of senior status for all DoD Educational Code TE schools will require an initial Education Tier Evaluation workflow initiated by the recruiter. Information required will be obtained from the applicant's school principal, school guidance counselor, or the custodian of records, or registrar for enlistment in the DEP/DTP and uploaded in ERM by the recruiter. Education Tier Evaluation workflow must be completed for DEP-In only. Upon graduation, a DEP-Out Education Tier Evaluation workflow must be submitted by the recruiter and completed via the Education Tier Evaluation workflow process. NOTE: The 'process Tier Evaluation' link in the applicant profile screen will remain active for those FSs who require a DEP-Out Education Tier Evaluation workflow.

(4) Do not change an applicant's DoD Education Code to HSDG until the applicable provisions of N-4 above are met. Advise applicants to provide the recruiter a HSD prior to shipping for IADT for GC verification of graduation. The GC then uploads the documents in ERM.

h. Currently in high school (ED LVL code 109). This applies to DTP enlistments only and HS students (other than seniors) that completed the 10th grade and are currently enrolled in a traditional, home school, online, or adult/alternative HS program of instruction. Verification must show placement into the 11th grade. Enlist the applicant into the AR ATP entering IADT Phase I after completion of the 11th grade. Verification requirements are the same as a high school senior outlined in N-4g above.

i. Applicants enrolled in accredited post-secondary universities/colleges or vocational-technical institutions. Accept degree credentials from any degree-granting institution accredited by one of the accrediting organizations recognized by the US Department of Education or the Council for Higher Education Accreditation. Degree credentials are identified below.

(1) Associate degree (ED LVL code D). A certificate conferred upon completion of a 2-year program at a community college, university, or degree-producing technical institute.

(2) Professional nursing diploma (ED LVL code G). A certificate conferred upon completion of a 3-year hospital school of nursing program.

(3) Baccalaureate degree (ED LVL code K). A certificate conferred upon completion of a 4-year college program other than a first professional degree.

(4) First professional degree (ED LVL code W). A certificate conferred upon completion of the academic requirement for the first degrees awarded in selected professions: Architecture, certified public accountant, chiropody or podiatry (D.S.C. or POD.D), dentistry (D.D.S. or D.M.D.), medicine (M.D.), optometry (O.D.), osteopathy (D.O.), pharmacy, veterinary medicine, law (L.L.B. or J.D.), and theology (B.D.), rabbi, or other first professional degree.

(5) Master degree (ED LVL code N). A certificate conferred upon completion of additional academic requirements beyond the baccalaureate or first professional degree but below the doctorate level.

(6) Post-Master's degree (ED LVL code R). A certificate conferred upon completion of additional academic requirements beyond the master degree level but below the doctorate level.

(7) Doctorate degree (ED LVL code U). A certificate conferred in recognition of the highest academic achievement within an academic field, excluding honorary degrees and first professional degrees.

(8) Refer questions on accreditation or coding to the Bn ESS.

## N-5. Alternate HS Credentials (Tier 2)
The alternate category includes the HS equivalency credentials (GED, High School Equivalency Test (HiSET)), National Guard Youth Challenge Program (NGYCP), and High School Certificate.

a. Test-based equivalency diploma (Ed LVL code E). A state or locally issued secondary diploma or certificate of GED/HiSET or other test-based credential obtained solely on the basis of testing and not graded day course work. This includes statewide testing programs such as the California High School Proficiency Examination where an examinee may earn a certificate of competency or proficiency.

b. High school certificate of attendance/completion of special education (ED LVL code J). An attendance-based high school certificate issued based on an Individualized Education Program (IEP) that involves community experiences, employment, training, and/or daily living skills which differs from traditional high school graduation requirements.

c. High school graduate via National Guard Youth Challenge Program (NGYCP)/General Education Diploma

(EDLVL code X). An individual who has completed a National Guard Youth Challenge Program and received a National Guard Youth Challenge diploma. This test-based credential differs from other GED holders in that the GED certificate or other test based credential was issued based on enrollment and attendance of a 22-week NGYCP and passing the GED test. Applicants must complete both the NGYCP and GED to enlist as a Tier 2/DoD Education Code classification X.

(1) Evaluate graduates of NGYCP which have embedded educational programs meeting Tier 1/DOD Education Code classifications and/or awarded a HS diploma other than a GED based NGYCP diploma as an Education Tier Evaluation workflow on UF 601-210.41 to determine proper Tier/DoD Education Code classification.

(2) If further investigation is required, forward questions and documentation via email to G7/9, Education Division for a case-by-case determination.

## N-6. Less than an HSD (Non-High School Diploma) (Tier 3)

Less than an HSD (ED LVL code 1). An individual who is not currently in a secondary education program and does not possess a diploma/credential as listed above. Diploma mills/degree mills are non-accredited organizations claiming to be an institution of learning (Secondary and Post-Secondary), but exist for profit only and offer degrees, diplomas, or certifications for a fee that may be used to represent to the general public that the individual possessing such a degree, diploma, or certification has completed a program of education or training, but little or no education or course work is required to obtain such a degree, diploma or certification. These types of programs will be classified as Tier 3.  Schools classified as Tier 3 or determined to have had previous education improprieties require re-evaluation, by the Bn/Bde ESS or G7/9, Educational Division. Enter schools identified as Tier 3 into the HSS/FAZR database with the proper DoD Education Code classification with justification in the comments section. (Refer to N-2e.)

## N-7. Credential Laundering

a. Recruiters are strictly prohibited from participation in credential laundering activities. Credential laundering is defined as "recruiter advice or assistance provided to an applicant or prospect for the purpose of, or which has the effect of, converting or transferring a Tier 2 credential to a Tier 1 credential solely for the applicant or prospect to meet the Army's Tier 1 education enlistment requirements."  This includes:

(1) Transporting applicants to education institutions except to obtain HS letters, diplomas, or other required documents for the enlistment packet.

(2) Assisting applicants in registering in any education program or institution for the purpose of qualifying for enlistment and initiating involvement with school officials for the purpose of developing a HS/alternative degree completion program.

(3) For additional prohibitions see chapter 7 of this regulation.

b. Realizing the difficulty recruiters face in scrutinizing the instructional methods used by public schools in their various educational programs, questionable HSDs will be referred to the Bn ESS for further evaluation and proper Tier/ DoD Education Code classification prior to acceptance.

**Figure N-1-Processing of education documents**



**Figure N-1-Processing of education documents**

**Figure N-2-Education Matrix**

| | EDUCATION | | | | |
|---|---|---|---|---|---|
| Credential | Ed Code | Tier | Definition | Required verification | Juniors/Seniors [109/11M/115] |
| Currently in High School (CHS) | 109 | 1 | An individual currently in high school who is not yet a high school senior. This includes Adult Alternative, Online high school and Home School (Covered Grads). | HS letter or telephonic memo specifying applicant is a junior, beginning and last day of current year classes, first day of next year classes, and projected graduation date. Permission to ship early and/or return late must be on school letterhead, not telephonic, and also be accompanied by a parental letter also giving permission. Confirmation from the high school official that the school is aware the student will return after the beginning of school and will not be penalized due to military training and must also include the number of days the student may miss and must state the specific date that the student will be released during his/her junior year in order to attend training. The high school letter will also state the end date of the Junior year, beginning and expected graduation date. | Not Applicable |
| High School Senior** | 115 | 1 | An individual attending high school, who completed the junior year and is a high school senior. This includes Adult Alternative, Online high school and Home School. | HS letter or telephonic memo indicating applicant is a senior, and projected date of graduation, which must be within 365 days. Mid-term grads; must have a letter stating the applicant is currently enrolled and in good standing will be classified as High School graduate upon completion of all required courses. | Not Applicable |
| Currently Enrolled other than High School Diploma | 11M | 1 | An individual who is currently enrolled and attending class in a tier 1 category (credential) other than a High School Diploma (college or Job Corps). Enlistment is authorized under education code currently enrolled (M) for applicants using online college credits. All online courses must be validated prior to enlistment. | Letter of enrollment from college or telephonic memorandum verifying applicant is currently enrolled, attending, and verifying number of quarter/semester hours for which enrolled. Applicants enlisting (DEP-In) as 11M will be required to complete the program in which the program in which enrolled prior to DEP Out. Future Soldiers (FS) who fail to graduate or complete the program will not be allowed to ship as Tier 2. | Not Applicable |
| High School Diploma | 11L**** | 1 | A diploma issued to a graduate of a public or private 12-year, "traditional," credit-based day program of classroom instruction. Includes individuals who met all requirements for graduation but failed to pass mandated exit exams (formerly Code F). | HS diploma or certified transcripts showing actual date of graduation. | 115 and 109 |
| Completed One Semester of College/Job Corp | 128 | 1 | A non-high school diploma graduate (i.e., tier 2 credential holder) who attended and completed 15 semester hours of college credit or 22 quarter hours of college credit or 675 clock hours of classroom instruction from an accredited post-secondary institution. Credit earned through testing, adult education, assessment, military training or high school equivalency preparation is not applicable. This includes Job Corps. | College Credit: Certified transcripts verifying number of clock, quarter, or semester hours completed is required. Job Corps applicants must provide verification of program completion of 675 hours signed by Center Director and Training Director, as well as GED or HS diploma to enroll as a 128. The use of online college credits to establish HSDG via semester hour or quarter hours from any degree granting institution recognized by the United States Department of Education or the Council for Higher Education Accreditation. Eligibility for the use of any online credits must be: 1. College level courses (no remedial courses, work, or life experience). 2. Semester hours or quarter hours (no clock hours) | 11M |

**Figure N-2-Education Matrix**

**Figure N-2-Education Matrix (Con't)**

| | | | | | |
|---|---|---|---|---|---|
| Adult/Alternative Program and *NGYCP (Covered Grad) | 12B | 1 | A diploma issued to a graduate of a public or private non-traditional school using alternative methods of instruction to complete graduation requirements based on state law (i.e., alternative, accelerated, or high school completion programs to include the GED Test Option. The Army will accept a diploma issued from an institution (attendance based) that is state/local government education agency approved, or accredited by one of the accrediting organizations recognized by the United States Department of Education or the Council for Higher Education Accreditation. | HS diploma issued from an institution which is listed as Adult/Alternative HS in HSS. The BN Education Services Specialist (ESS) is the primary evaluating official for all tier evaluations UF 601-210.41 will be completed on applicants from public and non-public and adult or alternative education programs listed as Tier Evaluation (TE) in HSS-FAZR. *NGYCP-Applicants from NGYCP authorized by the state to award adult HS diploma (none-GED based) or a post-secondary based program diploma will have the credentials evaluated by the ESS to determine proper DOD Education Code. NGYCP seniors (11M/S) and juniors (109) are not authorized. | **11S and 109 |
| Virtual/Distance School (Covered Grad) | 12T | 1 | A diploma awarded upon completion of an accredited Home Study, Distance Learning, Independent Study, Self-Study, Correspondence School, Cyber School or Virtual Learning Program. The Army will accept a diploma issued from an institution that is either state/local government education agency approved, accredited by the Distance Education Training Council (DETC) or accredited by one of the accrediting organizations recognized by the United States Department of Education or the Council for Higher Education Accreditation. | HS Diploma issued from an institution which is listed as Virtual/Distance school in HSS. The BN Education Services Specialist (ESS) is the primary evaluating official for all tier evaluations    UF 601-210.41 will be completed on applicants from public and non-public and adult or alternative education programs listed as Tier Evaluation (TE) in HSS-FAZR. | **11S and 109 |
| Home School Diploma (Covered Grad) | 12H | 1 | A diploma issued to a graduate of a home school program in accordance with state requirement, administered by a parent, teacher/school district, or umbrella association. Applicants must provide a diploma or certificate and transcripts indicating the individual completed four years of a high school curriculum. Transcripts must reflect successful completion of the last 9 academic months of continuous schooling from the home school umbrella association or parent issuing the diploma. The curriculum must involve parental instruction, supervision and should closely pattern subjects used in traditional high schools. | HS Diploma/Certificate and transcripts confirming four years attendance and graduation IAW state requirements. The BN Education Services Specialist (ESS) is the primary evaluating official for any required tier evaluations (UR 601-101). | 11S and 109 (do not use 11H) |
| Test-Based Equivalency Diploma*** | 11E | 2 | A diploma or certificate of General Education Development (GED) or other test-based credential. A state or locally issued secondary school diploma obtained solely on the basis or testing and not graded day coursework. | General Education Diploma or certificate; HiSET and TASCexam states: http://hiset.ets.org/requirement or http://www.tasctest.com/test-center-locations-for-test-takers.html. Applicants must be 18 years of age to process under education code 'E'. Education code 'J' are required   to have been withdrawn from high school at least six months prior to the date of application for  enlistment. In questionable cases need to get letter from | Not Authorized |
| National Guard Youth ChalleNGe Program | 12X | 2 | An individual who completed a 22 week National Guard Youth ChalleNGe Program (NGYCP) and passed the GED. Must be identified separately from other GED holders. | National Guard Youth Challenge Certificate and GED. | Not Authorized |
| High School Certificate of Attendance/Completion or Special Education | 12J | 2 | An attendance-based High School Diploma or certificate or credential based on an Individualized Education Program (IEP) that involves community experiences, employment, training, daily living skills and post-school transition skills which differ from the traditional high school graduation requirements. | HS Certificate of Attendance or Credential verifying completion of Individual Education Program. | Not Authorized |

FOR TAPAS INFORMATION REFER TO UM 17-022

*LEGEND*

**GCs will validate school Tier/DoD Ed Code and select Recruiting Program Code "CG" for all DoD Ed Code 7, B, and H applicants

***For definition/clarification of GED Test Option, refer to UR 601-210 Appendix N-5

****The 6-month wait for code E is not required.

*NOTE*
Tier 2- Alpha and Bravos must score 90 WD. One Year Suspension of Tailored Adaptive Personality Assessment.
Applicants from NGYCP authorized by the state to award adult HS diploma.

**Figure N-2-Education Matrix**

**Appendix O**
**Future Soldier (FS) Management**

**O-1. Purpose**

a. Outlines procedures to manage FS from the time of enlistment until the FS accesses onto AD or IADT. FSs are persons who have enlisted in the DEP or DTP and have not shipped.

b. Provides guidance for FS initial orientation, management and training.

c. The Future Soldier Training Program (FSTP) is the primary introduction to the Army and provides the basic core knowledge required to prepare the FS for the rigors of Army life and keeps them qualified, committed, and eager to serve in the Army.

d. The FSTP is a command responsibility at all levels. Key tasks for the chain of command include accountability, training, counseling, mentoring, retention and preparing the FS for training.

**O-2. Future Soldier Orientation**

The commitment of each FS is highest immediately after enlistment. Station commanders or designated representatives, meet with each FS following their enlistment. Recruiters review the FS enlistment documents or any other items in ERM. This provides the opportunity to answer any questions the FS has about the enlistment, shipping or the military. Brief any minors with their parents present (if possible) and the presence of the influencers of any FS is essential to engender influencer commitment and answer questions. Utilize the Initial Orientation section of www.futuresoldiers.com to guide the discussion and cover the following topics:

a. FSTP functions. Stress the importance of attending these functions and the opportunity to bring a guest. Provide all FSs the training schedule with all functions and training annotated.

b. Assist the FS establish an ARS-SMART account. The purpose of the referral program is to generate new contracts from members of the FSTP and applicants processing for enlistment. Establish the ARS-SMART account IAW the instructions found on http://www.usarec.army.mil/support/ and explain the importance of the account. Ensure the FS understands the referral process and how referrals may result in advanced enlistment rank under the provisions of AR 601-210.

c. Personal readiness. Recruiters will emphasize the importance of maintaining mental, physical, and conduct readiness prior to BCT.

d. Family support. Provide the spouse, parents, Family members or other key influencers information and materials developed to assist in support initiatives. Introduce and familiarize spouses and parents to online community support opportunities available through the Family Information Center (FIC). Inform Family members about the Family member link on the top of the FS home page and of the U.S. Army Future Soldier Family Facebook links so they can learn more about the Army and share common interests, concerns and questions with other FS Family members.

e. Brief new FSs about the Hometown Recruiter Assistance Program (HRAP) and that they are eligible for consideration for HRAP duty while in AIT or after arrival at their first duty station.

f. Verify the NPS FS received a FS Welcome Kit (RPI 200) from the GC shop on day of enlistment.

**O-3. Future Soldier Center (FSC)**

a. The USAREC FSC augments the recruiting force in the operation of a successful FSTP. The FSC does not take the place of the station, but provides an additional line of communication between recruiters, FSs and influencers. The FSC personnel's military background allows them to relate easily to FSs, spouses and Family members, to address questions or concerns.

b. The FSC communicates with FSs by email, telephone, and the FS chat room accessible through www.futuresoldiers.com. The FSC often identifies potential ship issues, and immediately shares this information with the FS's station commander and Company Cdr. FSs can contact the FSC for assistance by calling 1-866-534-5297.

c. FSC activities assist in sustaining FS motivation and commitment to ship. Activities include:

d. Cyber Squad. FSs are offered opportunities to enroll in MOS specific groups. These cyber squads link to online social communities that promote learning about their chosen MOS. FSs meet and interact with their future BCT teammates from across the nation prior to ship day.

(1) Chat room. Chat events range from a general forum available to all FSs to specialty chats that allow them to interact directly with drill sergeants or cadre members for various training facilities across the Army.

(2) Family Information Center (FIC). Married FSs are contacted directly by an FIC representative whose primary focus is in support of the spouse in order to facilitate a smooth and informative transition from the civilian to Army Family. Contact actions are accomplished through a combination of telephone, email and online social

community interactions. FS spouses and parents may contact the FIC by calling 1-877-535-6387.

e. Each spouse is provided an opportunity to voluntarily enroll in the FIC online forums where they will have the ability to ask questions and interact with FIC staff directly as well as other new Army spouses. Common issues include pay, moving, family housing, and enrollment in the Defense Enrollment Eligibility Reporting System (DEERS) and TRICARE, to name a few.

f. The FIC also contacts the parents of the FS to provide them with Family information as well as allow them also the opportunity to enroll on a parent's side of the online community. The forums invite parents to ask questions of FIC staff and to communicate with other FSs' parents before, during and after their new Soldier ships to basic training. Common questions include, mailing information, graduation and family day information and where to view training installation online updates.

(1) In addition to the activities above, the FSC handles all FS inquiries IAW USAREC policy and provides a welcome letter to the FS. The enlisting station and Company Cdr are included on the return correspondence.

(2) In the event of a natural disaster, the FSC stands ready to assist in FS accountability. The FSC contacts Bns and companies potentially affected by such events and offers assistance in contacting assigned FSs as well as disseminating critical information deemed necessary by the local level Cdrs.

(3) Direct Unit Support. The FSC augments FS follow-up by contacting recruits via phone and e-mail. The FSC can devise a contact program tailored to the needs of the local Cdr through custom survey questions and providing the responses directly to the Cdr.

(4) Facebook. The FSC maintains a FSC Facebook page providing real time information and discussions as well as an online location for FSs to meet and congregate. Located on the FSC Facebook page, tabs are available for both FS spouses as well as parents that contain information and offer links to interactive online help and support.

## O-4. AR Sponsorship

a. Recruiting personnel assist AR TPUs maintain their strength. The enlistment of a new AR soldier presents an opportunity to enhance the special relationship between stations and TPUs. The AR Sponsorship Program formally recognizes this relationship and allows recruiting personnel to act as ambassadors for the units.

b. Program processes: The station notifies the TPU when a new AR Soldier enlists and sets a date for the recruiter to escort the Soldier to the unit. The appointment is scheduled with the unit administrator, commander, first sergeant, or unit career counselor who is responsible for in-processing new personnel.

c. Recruiting personnel utilize UF 601-210.23 (FS Advanced Rank Verification) to document the FS's completed training tasks. The station commander will complete their portion of UF 601-210.23, get the Company Cdr's signature to validate, and then forward to the TPU Cdr as a source document for promotion on each FS qualifying for an advanced enlistment rank (IAW AR 601-210, chapter 2-18). The UF 601-210.23 and associated promotion documents (DA 4187) are uploaded in the FS's ERM.

## O-5. Future Soldier Sustainment

Utilize the Army Pocket Physical Training Guide RPI 237 for the four training schedules to provide the baseline for FS Physical Training (PT).

a. Prior to conducting any type of PT, recruiting personnel conduct risk assessments and maintain the DD 2977 (Deliberate Risk Assessment Worksheet) completed IAW UP 385-10 (USAREC Safety). Execute the PT session IAW guidelines listed in the RPI 237, which complies with Army Physical Readiness Training (PRT).

b. Recruiting personnel will require each FS to sign UF 601-210.24 (FS Physical Training Program Statement), prior to each organized PT session. Recruiting personnel will explain that by signing the form, the FS indicates that their participation in the event is voluntary. Participants must understand that no medical coverage is afforded to the FS. They will be informed that they must rely on their own medical plan for health care in case of illness or injury during any activity to include pre-initial military training PT and the diagnostic APFT.

c. Review of UF 601-210.27 (Medical Safety for FS Physical Training Program and Physical Fitness Assessments). UF 601-210.27 provides the recruiter with items that should be considered and symptoms of heat injuries that may arise during the performance of these physical activities. Any sign of heat-related injury noted on the form will be cause to immediately cease the activity.

d. Utilize RPI 237 for the four (4) training schedules. These provide the baseline for FS PT. FSs are assigned a training schedule based on the individual's physical strengths and conditioning.

e. Physical Training (PT)

(1) Organized PT builds morale while working on the overall goal of getting the FSs to pass the APFT. Recruiting personnel will not use PT to replicate BCT or IADT conditions.

(2) Esprit de corps PT may consist of non-contact team sports such as soft ball, touch or flag football, volleyball, and basketball. Physical conditioning exercises may also be used instead of or in combination with team

sports.

(3) The CG authorizes FSs to voluntarily participate in PT with recruiting personnel under the following guidelines:

(a) Each FS must read and sign UF 601-210.24.

(b) The training period should last no longer than 90 minutes to include warm-up and cool-down activities.

(c) Although FSs participate voluntarily, remind them that PT is an individual responsibility. Encourage FSs to follow their individual training plan as outlined in RPI 237.

## O-6. Future Soldier Follow-up

a. Aggressive and professional follow-up is essential to FS management. Recruiters must rely on face-to- face or telephonic contacts and not solely on email or social media. Cdrs must stress the importance of scheduled follow-up with their FSs. Recruiters discuss, at a minimum, mental, physical, and conduct readiness. Additional topics include new referrals, status of past referrals, and up-coming events, such as FSTP functions. Utilize follow- up contacts to reinforce the FS's decision to enlist in the RA or AR.

b. Follow-up and commitment reinforcement begins at the conclusion of the swearing-in ceremony. This is accomplished in an appropriate setting with congratulatory remarks made by the SGC or other recruiting personnel. Address the new FS as Private (Private Smith, Jones, etc.). The GC explains to FS that they are now a private in the AR (in an inactive status), and prior to shipping they will swear into the RA. For new AR FSs explain that they are members of the specific TPU and when they ship to IMT.

c. Leverage all available technology for FS follow-up. Recruiting personnel must identify the FSs preferred method of communication and use it when updating the FS on coming events. Twitter, Google+, and Facebook are all authorized methods. Validate if the FS can receive text messages and cell phone calls. The FS bears all incurred costs of text messaging or cell phone calls if that is the preferred method. Identify alternate means of communication if cellular or internet is not available to the FS.

d. Stations will refer to Figure O-1 (FSTP Decision Matrix) for guidance on the sequential order of tasks to be accomplished prior to shipping to IMT.

e. Record the results of follow-up are recorded in the FS's record, under "contact history".

f. There will be instances of FSs losing their motivation to ship or becoming disqualified while in the FSTP. Depending on the circumstances, a recruiter will use all available means in order to re-engender the FS's commitment. If the FS loss is unavoidable, the recruiter will immediately notify the station commander/Company Cdr and initiate FS separation procedures IAW appendix I.

## O-7. Future Soldier Asset Inventory

a. The Company Cdr will conduct two Future Soldier Asset Inventories (FSAI) on each FS. The first at 60 days from ship day, with the second at 30 days from ship day. This FSAI is designed to identify potential ship issues while there is still time to prevent a FS loss.

b. The Company Cdr will initiate the FSAI using the questions listed in Table O-2. All answers that indicate the FS is not ready or able to ship to training, will be documented in the "Comments" section of the FS record in LZ. The FS ship potential will then be updated, based upon the criteria listed in Table O-3.

c. Cdrs will report the FSAI contact percentages and results to Bn Ops on a monthly basis.

**Table O-1: Future Soldier Asset Inventory (FSAI)**

Future Soldier Asset Inventory

Do you have any questions or concerns regarding your enlistment contract?

Have you met all requirements to obtain your diploma or degree?

Have you been treated or have been seen by any medical professional for any reason since you joined the US Army?

Have you taken or been prescribed any new medications sine you have enlisted?

Have you given your notice to your civilian employer?

Is your family prepared for your departure to IADT?

Have you had any dealings with law enforcement since your enlistment into the Future Soldier Program?

Have you received any new tattoos since your enlistment into the Future Soldier Program?

If Army Reserve, have you fully processed into your Army Reserve Unit?

Has your marital status, dependency status change?

If your ship day was tomorrow, would you be prepared to leave?

**Table O-1: Future Soldier Asset Inventory (FSAI)**

**FIGURE O-1. FSTP Decision Matrix**



**FIGURE O-1. FSTP Decision Matrix**

**O-8. Future Soldier Training**

a. Station commanders ensure that FSs are trained on the Leader Based training tasks. Classes are available on the "Recruiting Operating Functions Guidance" tab on IKROME https://span.usarec.army.mil/sites/HQ/G3/Plans-Programs/Programs%20Library/Forms/AllItems.aspx . Leader Based Training consists of:

(1) SHARP/Unauthorized Relationships (Requirement)

(2) Army Suicide Prevention - ACE

(3) Resiliency Training Phase I

(4) Resiliency Training Phase II (5) Resiliency Training Phase III

b. The Required Training (Basic Training Task List-BTTL) (only required for advanced enlistment rank), is on the "Required Training" Tab in the Future Soldier Training System (FSTS). These classes assist the FS in preparing for the challenges they will face in IMT. BTTL tasks include:

(1) Army Values and History

(2) First Aid

(3) General Orders

(4) Land Navigation

(5) Customs, Courtesies, and Traditions

(6) Military Time

(7) Phonetic Alphabet

(8) Rank Structure

(9) Voice Communication

c. Additional classes located on the FSTS are:

(1) Anti-Terrorism

(2) Combat Trafficking in Persons

(3) Drill and Ceremonies

(4) Equal Opportunity

(5) Equipment of the U.S. Army

(6) Personnel Recovery

(7) Risk Assessment

(8) Financial Management

d. The FS may elect to train virtually via the FSTS located at www.futuresoldiers.com. The FSTS is a self-paced training program that the FS accesses with their GoArmy user name and password from any computer with internet capability. The FSTS is designed to assist the recruiter in tutoring the FS, giving the recruiter back valuable time to prospect and process. The FSTS does not replace one-on-one mentorship. Recruiters may elect to train the tasks individually or in a group setting and use the FSTS to reinforce their collective training.

e. FSs successfully completing the BTTL, the APFT (60 points in each event), and provide a qualified referral who enlists in the AR, RA, or ARNG, may qualify for advanced promotion to E-2 under the provisions of AR 601-210.

f. Station commanders will complete the UF 601-210.23 and forward it to the Company Cdr for verification and digital signature.

**O-9. Management of FSTP Functions**

a. Conduct all FS training IAW AR 350-1. Download training material from IKROme, "Important Links" tab, "Recruiting Functions" link, "FSTP" tab and through the FSTS.

b. Procure FSTP functions IAW policies and procedures established by the servicing contracting officer AR 601-2, chapter 6, establishes Army policy for use of Government funds for FSTP functions.

c. Use the funds established in support of FS programs to pay for meals, refreshments, and nonalcoholic beverages (see below). The approval authority for FSTP functions (below $2,500) is the Bn Cdr.

(1) Costs between $2,500 through $ 3,000 require advanced approval from the Bde Cdr.

(2) Bdes must submit a DA 3953 (Purchase Request and Commitment) through the USAREC, G4, Acquisitions Division, for any event over $2,500.00.

(3) The ACS, G8 is the approval authority when the cost is expected to exceed $3,000 or $15 per person.

(4) Company Cdrs can order Meals, Ready to Eat (MREs) for FS functions using UF 601-210.26 (Future Soldier Training Function Request and After Action Report) IAW UR 700-5 (Integrated Logistics Support).

d. All requirements containing services such as transportation (busses) or catered meals require Acquisition Management Oversight (AMO) approval as required by TRADOC Regulation 5-14.

e. Any event scheduled to take place at a restaurant with wait staff requires AMO approval. Schedule functions only with restaurants, or other vendors, that agree to charge only for the number of meals served. In exceptional

cases, the Bn Cdr may approve payment for meals provided but not consumed. Government payment is not made for meals in excess of those contracted originally.

f. Prohibited activities:

(1) Only recruiting personnel, military and DoD guests, and FSs and their non-military or non- DoD guests are authorized funded meals and/or snacks at FSTP functions.

(2) Funds are not authorized for entertainment (such as tickets to sports events, amusement parks, theme parks, etc.)

(3) Train only general military subjects (for example; first aid, phonetic alphabet, general orders, etc.).

(4) Under no circumstances will activities with FSs include any of the following:

(a) Firing weapons of any kind, including hand guns, rifles, live grenades, artillery, cannons and rocket launchers.

(b) All overnight activities such as hikes, outings, and canoe trips.

(c) Adventure type training involving risk of physical injury, such as river rafting, rappelling, scuba diving, obstacle courses, paint ball, or similar activities.

(d) Taking FSs on tactical field training exercises with RA, ARNG, or AR units unless for observation purposes with proper permission from the unit only.

(5) Total Army Involvement in Recruiting (TAIR) assets may be used in conjunction with FSTP functions and/or meetings. For details see UP 601-2-1.

(6) USAREC G-3 is the approval for ETPs for FS functions or training. ETP approvals are required prior to the scheduled event.

g. FSs are encouraged to bring guests to FSTP functions. Guests may include eligible prospects, parents, a spouse, girlfriend or boyfriend, or close relative.

h. Procedures.

(1) The station commander will determine the number of attendees for FSTP functions and relay them to the Company Cdr. Ensure invitees have been notified and that reminder calls are made so meal counts can be confirmed and adjusted with the vendor.

(2) The Company Cdr will initiate requests for FSTP functions. Requests are sent to the Bn Cdr on UF 601-210.26.

(3) Upon receipt of a request for function, the Bn Cdr will evaluate the request. The Bn budget and accounting technician will ensure that no sales tax is paid when using the Government Purchase Card (GPC).

(4) If the Bn Cdr does not concur with the need for the function, the Bn Cdr will indicate disapproval in block 12 and sign block 15c of UF 601-210.26, notifying the Company Cdr of the disapproval.

(5) If a request for a high-cost function is approved by the Bde Cdr (and by HQ USAREC), the Bn Cdr will begin procurement procedures upon receipt of the approval and the Bde control number. When G3, Programs Division, receives a request from a Bde for approval of a function exceeding $3,000 or expected to exceed $15 per meal or snack per FS guest, the request will be expeditiously evaluated and prepared, preferably within 3 working days, either approving or disapproving, by endorsement before sending the request to the G4 Acquisitions Division.

(6) MREs are authorized at any FS function and are requested using UF 601-210.26 IAW UR 700-5.

(a) Station commanders will initiate a request for MREs via email to the Company Cdr. Requests must be submitted NLT 90 days prior to the function start date.

(b) MREs shipments via FEDEX are sent directly to the recruiting company for distribution. MREs are only for FSs. Recruiters, Family members, and other civilian COIs or VIPs are prohibited from receiving MREs.

(c) Account for MREs requested for use at functions by the Signature Headcount Sheet, DA 3032. Check the Dinner Category (block 5) "Other" with "Future Soldier Function" placed on the following line. Personnel receiving MREs will sign block 6 (signature) and place the last four digits of their SSN in block 7 (meal card number).

(d) After the FSTP function, the Company Cdr will collect any residual MREs and supporting documentation (UF 601-210.26 and DA 3032). Forward the supporting documentation to the Bn S-4 for accountability. Upon receipt, the Bn S-4 will contact the Bde S-4 for remaining MRE disposition instructions.

(e) When MREs are used in conjunction with a funded function, annotate UF 601-210.26, block 18 (Remarks) with the number of MREs consumed. When MREs are used at unfunded functions place "US Army" in block 7, both block 8f and 8g will reflect "NA"; and place "NA" in block 24 in both actual cost and cost per person of UF 350- 10.5. All other sections of this form must be completed IAW regulatory guidance.

**Table O-2 FS Status Code Examples**

| Color | Examples |
|-------|----------|
| Red | Significant life changing event (scholarship, inheritances). Pregnancy. Excessive weight gain; failing BF% Non-waiver able medical condition; non waiver able law violation. No contact. Failure to meet graduation requirements (attendance, grades). |
| Amber | Poor attendance at school Overweight or underweight Changes in dependent status Changes in employment status Avoiding follow-ups with recruiter. |
| Green | Member in good standing of all classes (secondary and post-secondary) Performs PT and tracking accomplishments; completing FS tasks. Ready to ship. Solid Commitment. Regularly provides referrals. Regularly attends FSTP functions. |

**Table O-2 FS Status Code Examples**

**Appendix P
DEP/DTP-Out Procedures**

**P-1. Purpose**
This appendix provides a systematic approach for accessing Future Soldiers into the RA and AR through the DEP-out procedures at shipping.

**P-2. General**
Complete DEP-out procedures IAW this appendix and AR 601- 210, chapters 5 and 6.

**P-3. Procedures**
a. Upload and review the DD 2807-1 and the updated DD 2808 with DAT and HIV results and UMF 40 series for any additional medical information revealed during the packet inspection.
b. Review the FS's MOS and option(s) to ensure all qualifications are accurate, to include the OPAT PDC. Review, sign, upload and save the following:
(1) DEP-out annex.
(2) DD 1966 series, to include all required statements i Section VI, Remarks section.
(3) UF 601-210.13 (Loan Repayment Program in Processing Counseling), if applicable.
c. Conduct a personal interview prior to printing the DD 1966/1 with the FS to ensure proper documentation is in the enlistment record (any changes during DEP- in).
(1) Review the personal data on the 680-3ADP screen in GCRc.
(2) Verify the processing of valid FS promotion to a higher enlistment pay grade.
(3) Validate the FS has a Government issued photo ID in his or her possession prior to accession.
(4) Upload any additional documentation provided by the FS to substantiate changes in the enlistment record.
(5) Validate the legible upload of any FS dependent; marriage certificates, birth certificates, SSCs, spouse photo ID, divorce decrees, court order (as applicable)   .
(6) Verify the accuracy of the following:
(a) Updated MEPCOM 680-ADP uploaded in ERM
(b) Original DD Form 2808 with DAT and HIV results, DD 2807-1, DD 2807-2, and any other medical documents.
(c) FP submission and results
(d) Security Investigation submission and acceptance
(e) Validation of MOS qualifications
(f) Review of the Difference Report for changes in the record
(g) Any other official forms/documents required by appendix E.
d. Review DD 1966/1, items 18-19, for proper codes IAW AR 601-210, 6-12 and figure 6-1.
e. Complete and sign the ship annex for the enlistment option(s) and program(s) selected.
f. Verify tech check results and the background investigation submission.
g. Provide required documents to MEPS only if required IAW local MEPS SOP at the time the FS ships to IADT, training, or permanent party.
h. Upload ship documents in ERM; DD4 series reflecting accession, DD 93, travel orders, updated 680ADP, etc.
i. Confirm ship in REQUEST.
**NOTE:** When an AIT is not conducted at an Army installation, PS/GNPS and Phase II Split Option, ATP Soldiers are sent to the nearest Army Reception Battalion listed in Table F-1.

**P-4. Courtesy Shippers**
a. GCs review the FS record for all qualifications for the enlistment options and programs selected and confirm the proper completion of all documents. The following actions will be taken:
(1) Enlisting station commander, or designated representative, will:
(a) Upon notification that a FS is requesting to ship from location other than the enlisting MEPS, immediately notify the enlisting SGC of the courtesy shipper request.
(b) Validate that the FS's ERM record contains all required documents for shipping.
(c) Contact the gaining station and inform the unit of the courtesy shipper.
(d) Validate that the gaining station has contact with the courtesy shipper in their area.
(2) Enlisting SGC, or designated representative, will:
(a) Notify the enlisting MEPS of the courtesy shipper and the gaining MEPS. Provide MEPS a Request for

Orders (RFO) for the initial travel order or an amendment for an existing travel order IAW MEPS SOP.

(b) Send a paper copy of the courtesy shipper's enlistment packet to the gaining MEPS. The enlisting GC shop maintains the enlistment packet IAW respective GC shop's SOP.

(c) Ensure the enlistment packet and travel order arrive at the shipping MEPS NLT five (5) processing days prior to the projected ship day to allow MEPS transportation scheduling. Account for holiday schedules or closure for mandatory training.

(d) Project courtesy shipper in MIRS for the shipping MEPS immediately upon confirmation of arrival of the enlistment packet at the shipping MEPS.

(e) Validate the transfer of the enlistment record in MIRS.

(3) The enlisting MEPS will:

(a) Create orders based on the RFO, and provides them to the SGC in sufficient time for the enlistment packet to arrive at the shipping MEPS.

(b) Amend the initial travel order based on the amendment RFO and send the amended order to the shipping MEPS if original travel order requires an amendment.

(c) Rescind the original travel order and provide the shipping MEPS with a copy of the rescinded order; the shipping MEPS can only amend an order once.

(4) The shipping MEPS will:

(a) Upon receipt of the enlistment packet take permanent ownership of the recruit file in MIRS.

(b) Make travel arrangements and prepare meal checks based on travel times.

(c) Charge travel arrangements to the shipping MEPS travel account.

(d) Create a new travel order for the individual if the enlisting MEPS rescinded the amended order.

(e) Coordinate with the enlisting SGC for alternate ship day if the shipping MEPS are unable to obtain a reservation and ticket for the projected ship date.

b. Prior to the FS's ship day, the shipping Bn Ops will:

(1) Validate the transfer of the FS's record in GCRc.

(2) Validate the shipping unit RSID is reflected in the GCRc record.

c. Upon the FS accessing, or if a problem arises, notify the enlisting GC shop immediately.

d. Based on Bn SOP, either the GC shop or Bn Ops clear all processing out of the "Pending DEP Confirm, Pending ENL Confirm, and Pending SHIP Confirm" tabs as soon as the action occurs but no later than the close of day.

e. Overseas Courtesy Shippers: refer to appendix L and refer to the specific region for actions.

## P-5. Hometown Shipping Program.  (RA /AR)

a. RA (only designated locations with HTS for RA): A GC is assigned for the participating companies with the responsibility to:

(1) Sign all DEP-out annexes with FS.

(2) Prior to FS departing, QC the enlistment record to ensure all documents have been properly completed and uploaded in ERM.

(3) Brief the FS on travel requirements, provide a safety briefing, and verify transportation.

(4) The Company Cdr/1SG is responsible for the following actions:

(5) Administer the Oath of Enlistment (commissioned officer only)

(6) Contact Bn Ops on ship day to validate shippers and report any no-shows

(7) Confirm FSs shipped and provide status to Bn Ops

(8) Validate all underweight/overweight FSs meet procurement standards

b. AR: Hometown Shipping (HTS) is the only method of shipping AR Soldiers to training. The SGC or designated representative is responsible for the following actions:

(1) Project HTS IAW local MEPS' policies or SOPs.

(2) Ensure that HTS have "Hometown Shipper" and "Mode of Transportation" in the comments section of the UMF 727 and they are scheduled as shippers.

(3) Provide all required information to the MEPS for completion of orders, no later than seven (7) working days, prior to date of shipping. (Ensure orders reflect current residence.)

(4) Ensure that FS has at least 15 days in DEP/DTP.

(5) Complete MEPS ship packet breakdown IAW USMEPCOM Reg 601-23 and local MEPS policy or SOPs.

(6) Forward the FS's MEPS ship packet and meal checks to the responsible station no earlier than 15 days after enlistment or no less than 5 working days prior to FS ship day (the exception to this are the FSs who are quick shipping). Ensure the physical is the most up to date one before forwarding the MEPS ship packet. Packet will not

be released without verification that MEPS fingerprints have returned and the required background investigation has been submitted and has been accepted.

(7) Ensure FS's orders are uploaded in ERM.

(8) FSs requiring a Return Believed Justified (RBJ) must return to MEPS to clear their profile prior to HTS.

c. The station commander, or designated representative, is responsible for the following actions:

(1) Complete and upload the HTS checklist (UF 601-210.20) in ERM NLT three (3) days prior to shipping.

(2) Annotate any new conduct issues IAW appendix G.

(3) Ensure the FS has been screened for ht/wt requirements. Annotate all HTS ht/wt regardless of DEP-in weight standards, on the UF 601-210.20 and annotated in contact history within 72 hrs of shipping. Upload a DA 5500/5501 in ERM, if applicable.

(4) Prepare a reno request IAW appendix H if the FS is temporarily disqualified.

(5) If it is determined that the FS is eligible for promotion IAW AR 601-210, 2-18, prepare the UF 601-210.23 and provide the TPU Cdr with the appropriate supporting documentation for completion of DA 4187 to promote the Soldier to the appropriate rank and pay grade. If the FS's ship date is within 15 days or the TPU commander is not available, the GC is authorized to process the DA 4187. GCs place the following statement in the remarks section for promotion, "AR TPU Cdr was not available for promotion of Soldier."

(6) Ensure each shipper has a government-issued photo ID for ship day. Government issued IDs are required by the airlines for boarding passes. The photo ID must have the same name as the airline ticket (check itinerary).

(7) Ensure that the shippers have meal tickets, travel cards, itineraries prior to travel.

(8) Verify the FS's OPAT PDC, OPAT consent form, and scorecard are within 90 days of ship date and that the FS achieved the qualifying PDC for their MOS.

(9) Ensure orders are in the FS's MEPS ship packet as well as uploaded in ERM.

(10) Provide transportation for the shipper from their home location to point of embarkation to training.

(11) Ensure to annotate shipping in the shipper's contact history.

(12) Confirm Soldiers have shipped and provide status to Cdr/1SG.

d. The Cdr/1SG is responsible for the following actions: Contact Bn Ops on ship day to validate all shippers and report shippers and no-shows IAW local SOP.

e. The Bn Ops is responsible for the following actions:

(1) Confirm the daily HTS status in REQUEST.

(2) Report any Soldier(s) as AWOL that are confirmed as "Ship" in REQUEST but do not arrive at the RECBN.

f. The following are guidelines for local MEPS functions:

(1) Process shipping projections IAW MEPCOM regulations.

(2) Notify liaisons of problem(s) associated with HTS.

(3) If there are holdovers, the Travel Assistant must rebook the flight and provide the itinerary to the GCs and if needed, amendment to the orders.

g. Special Instructions:

(1) Females will ship without a pregnancy test.

(2) Do not project HTS for lodging on the night prior to shipping. The only exception is for cases where the shipper lives a sufficient distance from the airport that requires an overnight stay. The shipper must lodge in the closest contract hotel to the point of embarkation. This requires Bn Ops approval 96 hours prior to projection.

(3) If the FS has a name change while in the DEP/DTP, ensure the respective MEPS are notified and the TPU has conducted name change IAW AR 600-8-104 (Military Personnel Information Management/ Records). Ensure FS has an updated Government issued picture ID with current name. Verify travel itinerary for the correct name.

(4) HTS who courtesy ship from another MEPS will follow the regulatory guidance set in appendix

h. Pacific Rim Shippers:

(1) Shippers (RA and AR) from Pacific Rim locations that normally do not ship from a MEPS location, are no longer required to have a medical inspect, prior to shipping provided there are no changes to the FS's medical condition. FSs ship as scheduled after processing thru the ship counselor provided they are otherwise qualified.

(2) Complete the UF 601-210.20.

## P-6. Ship Date for BCT (RA and AR)

a. DEP/DTP/DS who require BCT will ship on a Monday or a Tuesday.

(1) If a Monday is a scheduled holiday, shippers will ship the following Tuesday and Wednesday.

(2) This applies to PS, GNPS and all NPS shipping to BCT.

b. GCs are required to ensure the ship date is scheduled in MIRS and transportation is scheduled IAW current MEPCOM policies.

c. Shippers' moves outside of the Monday/Tuesday window must be coordinated thru Bn Ops via the ROC only. Do not move shippers without authorization from the ROC.

**Table P-2. USAREC Liaisons**

| 3   Liaisons | 4 |
|---|---|
| 4-1      **Fort Benning** | 6   30th AG Bn (Reception)<br>7   5305 3rd Infantry Division Rd<br>8   Bldg 3010, Ste 2E14<br>9   Ft Benning, GA 31905<br>10 DSN 784-9214<br>11 Commercial (706) 687-6929/7426<br>12 120th AG Bn (Reception) Building 1895 Fort<br>13 Jackson, SC  29207-6700 DSN 734-4222/5416<br>14 Commercial (803)751-5416<br>15 Fax (803) 751-4394 |
| 5   Fort  Jackson | |
| 15-1      **Fort LeonardWood** | 16 43d AG Bn (Reception) Building<br>17 2100<br>18 Fort Leonard Wood, MO<br>19 65473-5000 DSN 581-3613/0657 Commercial (573) 596-0657/3613<br>20 Fax (573) 596-0662 |

**Table P-2. USAREC Liaisons**

---

**Appendix Q**
**Required USMEPCOM Daily Reports and GCRc End of Day Report Records**

**Q-1. Purpose**
This appendix outlines the daily reports pulled from MIRS, REQUEST, and GCRc.

**Q-2. General**
The GCRc system generates an email to the GC shop and Bn Ops informing that the results are not returned on the following schedule: 3 days for HIV results, 7 days for DAT results, or 21 days for ENTNAC results.

**Q-3.  Required USMEPCOM and other Reports (GC shop)**
The reports that are required to be generated and reviewed daily during GC shop opening are:
    a. MIRS Report 18 - Daily HIV Report (USMEPCOM PCN ZHM005)
    b. MIRS Report 9 - Daily DAT Report (USMEPCOM PCN ZHM002)
    c. MIRS Report 23 - Daily ENTNAC Submission Report (USMEPCOM PCN BIR)
    d. Daily UMF 727-E – MEPS Processing List.
    e. The SGC is responsible for the completion and accuracy of all Shipper Reports.
    f. The SGC validates the REQUEST Flagged Reservation Report to check for any flagged shipper REQUEST records. The GC shop makes any necessary corrections to the flagged records.
  **NOTE**: A copy of these reports will be attached to the UMF 727-E and maintained either in an electronic

shared/common file or in the recruiting files in the GC shop (current year, plus previous 2 years). All MEPCOM reports will be maintained with the processing list for each day in the active files for each recruiting year.

**Q-4.  Required REQUEST and Close-out Reports (Bde and Bn Ops)**

a. Shipper Reports. The Bn Ops will provide a projected ship report monthly and weekly by component to MEPS. These reports are provided to the MEPS Travel Section IAW MEPS policy and/or MEPS SOP.

b. Daily processing and shipping close-out. All Bdes are required to close out the end of day telephonically with USAREC through EEPD, ROC. If the SGC/GC ship confirms a scheduled shipper who failed to ship, the Bn S3 must immediately report the error by e-mail to USAREC: usarmy.knox.usarec.mbx.hq-g3-eepd@mail.mil.

**Q-5.  Procedures for Completing GCRc End-Of-Day Reports**

SGCs will ensure accurate and complete dispositions are entered on all processors. The following result codes (RSLT CODE) will be entered by the GC shop:

a. REQ TEST (Requires additional test) (A)
b. TEST REJ (Failed ASVAB) (B)
c. NOT QUAL (Does not qualify for enlistment) (C)
d. REFUSED (refused to enlist) (D)
e. ENLISTED (E)
f. NO HELP (Applicant qualifies for enlistment, no jobs available) (F)
g. NO CHG (No change from the last status) (G)
h. CONFER (Applicant needs to confer with influencers) (H)
i. OPT NOT POSS (Applicant desired job or option combination not possible) (I)
j. DTP LOSS (AR cancellation) (J)
k. DEP LOSS (RA cancellation) (K)
l. LAW (Applicant revealed law violations, DD 369 required) (L)
m. SHOP (Applicant shopping) (M)
n. PMR (Permanent medical disqualification) (P)
o. QUALIFIED (Qualified not scheduled to enlist) (Q)
p. Reno (Reno completed) (R)
q. TMR (Temporary medical disqualified) (T)
r. ADMIN (Could not enlist for an administrative reason) (V)
s. ACCESSED/SHIP VERIFIED (Verified shipped) (V)
t. WINDOW (Wants to leave outside of available constraints). (W)
u. ELOPE (Left MEPS prior to finishing processing) (X)
v. FROZEN (Desired MOS currently on the frozen list) (Y)
w. NO OPT (Qualified for enlistment, no jobs available) (Z)

**Appendix R**
**Government Meals and Lodging Procedures**

**R-1.  Purpose**

This appendix outlines the process to ensure proper documentation for submission of Government Meals and Lodging and required actions by GCs.

**R-2.  General**

SGCs are responsible for the overall proper documentation for Government Meals and Lodging. Documentation will be retained by electronic or by printed copies for 6 (six) years and three (3) months per Department of the Army Government Purchase Card Operating Procedures dated 14 January 2013.

**R-3.  Primary Purpose for Submissions**

a. The GC is responsible for inputting the daily projections from GCRc to MIRS.

b. MIRS generates automated versions of the UMF 727-E, Copy 2 but the status of each individual (applicant or enlisted) and the type room needed should be marked "double" and must be manually annotated. (The contract hotel will use this information in the billing process.)

c. The UMF 727s will be checked to ensure that the appropriate three (3) position DoD Service/component code (Active Army/DAR; Army Reserve/DAV; AMEDD and Chaplain/DAZ) appears in block 3.

d. The GC provides the UMF 727-E, Copy 2 (may be more than one) to the MEPS control desk, who will send the form to the contract hotel daily according to the local scheduled (generally by 1500).

e. The contract hotel receives the UMF 727-E, Copy 2(s) for all Services and assigns rooms as the personnel arrive. Arriving personnel are required to sign in on the UMF 727-E, Copy 2 on the line bearing their name.

f. In the event that a person is going to arrive at the hotel who is not projected on the UMF 727-E, Copy 2s, coordination is made between either the GC or the hotel to authorized a "Walk-in". Walk-ins are listed on a UMF 728 and sign their names on the line bearing their name.

g. The next morning, the hotel provides a summary daily invoice (UMF 729) and the signed UMFs 727/728 back to the MEPS control desk. The control desk should then make copies and provide them to the GC according to local SOPs.

h. The GCs will review and reconcile all the UMFs.  (This will be completed daily and copies retained.)

i. If there is a problem noted on any of the documents the GC will coordinate with the MEPS QAE (generally the senior MEPS NCO) for resolution of the issue. The MEPS QAE should work with should work with the hotel to resolve the issue.

## R-4.  Daily Noon Meal Procedures

Noon meal procedures can have local variations, but will generally resemble this process.

a. GCs will fill out the Daily Noon Meal Worksheet each morning by 0730 to order noon meals that are required for the day and provide the worksheet to the MEPS control desk.
NOTE: Meals ordered must be paid for whether or not they have been eaten.

b. The MEPS control desk will order the meals from the vendor by 0800 daily as per contract requirements.

c. The MEPS control desk will ensure the vendor receives a copy of the worksheet showing breakout of meals ordered by the Services and category (Applicant (Pre)/Enlisted (Post)).

d. The GCs will track and retain the daily worksheets and sign in sheets to ensure validity of the monthly invoice from the vendor.

e. If there is a problem noted on any of the documents the GC will coordinate with the MEPS QAE.

## R-5.  Month Procedures

a. The contractors for both the Noon Meals and Meals and Lodging contracts prepare the monthly invoices within three (3) days of the end of the month and will send them to the MEPS QAE.

b. The MEPS QAE will ensure that the invoices are detailed and provides a copy of each to the GC.

c. The GC will reconcile the monthly invoices and inform the MEPS QAE if there is a problem.

d. The GC will sign the invoices and contact the GPC cardholder for the Applicant Meals and Lodging Program. This contact will be made via emailing the signed monthly invoice to the GPC cardholder NLT the 10th of the month following the month the service is received.

e. The GC will file the invoice and supporting documents (UMF 727, 728, and 729) together and retain them for a period of six (6) years and three (3) months. (Retention period is IAW DA GPC Operating Procedures, chapter 3-12.)

f. GPC cardholders will contact the contractor authorizing them to charge the appropriate account for payment.

## R-6. Forms

a. UMF 727-E, Copy 1. GCs will complete this form when scheduling individuals for MEPS processing. Automated versions are printed from MIRS.

b. UMF 727-E, Copy 2. GCs are responsible for initiating. When completing the preparation of UMF 727- E, Copy 1, and simultaneous entries on UMF 727-E, Copy 2 are made. Printed from MIRS.

c. UMF 727-E, Copy 5. This voucher remains in use at the MEPS to control the applicants' access to noon meals. It is not involved with the documentation of noon meal charges by the lunch vendor. The lunch vendor is paid for all lunches ordered whether eaten or not eaten.

d. UMF 728-E. This form is provided to the contractors and is used to document late arrivals, add-ons, or walk-ins.  One form is used for all Services.

e. UMF 729-E. This form is provided to the contractors and is used by the contractors to record each day's meals and lodging charges for the services rendered. This form should be reconciled by the contractor, the MEPS, and the GCs.

## R-7. Important Definitions

a. Applicant (App) – an individual who is processing for enlistment. Also referred to as "non-shipper" and/or "Pre" in this process.

b. Enlisted (Enl) – an individual who has completed all processing and is shipping. Also referred to as "shipper" and/or "Post" in this process.

**R-8. Useful Reference**
USMEPCOM Regulation 715-4, Applicant Meals and Lodging Program, dated 29 November 2010 and Department of the Army Government Purchase Card Operating Procedures dated 14 January 2013.

**Appendix S**
**Electronic Records Management**

**S-1. Purpose**
Guidelines for storing enlistment documents in ERM.

**S-2. General**
ERM is a standard yet simple advanced records management solution that is designed to meet the command's record information needs. Once a document has been uploaded in ERM it cannot be altered or deleted by anyone at any level in the command. The entire Soldier's record will be electronically maintained in Interactive Personnel Electronic Records Management System (iPERMS) from the time of accession until 62 years after the Soldier's service ends.  Therefore, uploading documents in ERM must be done IAW with current policy.

**S-3. Uploading Enlistment Documents**
Documents that are system-generated such as the DD 1966 series and the automated annex(es) will be created in ERM by GCRc and will not need to be uploaded (electronically loads automatically).  All additional documents and forms associated with the enlistment to include pre-screening/medical documents that must be presented to the MEPS prior to an applicant being floored and all documents received by MEPS personnel will be uploaded in the applicant's record, by the recruiter and/or GC on or prior to the applicant being projected.  All documents and forms associated with shipping will be uploaded on or prior to the ship date. Extreme care must be taken to ensure all documents are legible and uploaded in the correct folder(s).

**S-4. Process**
Everyone in the enlistment process is responsible to ensure that all required documents are uploaded and unnecessary documents are not.
   a. Documents generated at initial enlistment must be uploaded at that time. Some documents are electronically transferred and others must be manually uploaded.
   b. Documents generated at shipping/accessing will be uploaded prior to confirming shipping in REQUEST. No FS will be ship confirmed without the required documents uploaded into the correct folder(s).
   c. Only documents that are associated with the drop-down menu are authorized to be uploaded. "Do Not" upload blank documents or documents that are not required for enlistment/shipping.
   d. NOTE: Some UM Acknowledgments are required to be uploaded as part of the enlistment record. The acknowledgments will be uploaded in the DEP folder as "Other".
   e. Documents must be uploaded in the correct folder IAW associated drop-down menu. At NO TIME should any documents be uploaded in ERM that are not associated with the folder drop-down menu. For example: Hot Seat Checklist, blank documents, BDE/BN/Co/station questionnaires, 16 questions, etc., they are not authorized ERM documents. It is imperative that uploading is completed professionally and IAW current guidance.

**Appendix T**
**U.S. Army Recruiting Command Liaisons at U.S. Army Reception Battalions (RECBN)**

**T-1.  Purpose**
This appendix establishes policies and procedures for USAREC liaisons assigned to U.S. Army RECBNs, the National Archives Records Administration (NARA), St. Louis (as advisors), the Defense Language Institute English Language Center (DLIELC), Lackland Air Force Base, TX, and Ft. Rucker, AL at the U.S. Army Aeromedical Center (flight physicals).

**T-2.  General**
USAREC liaisons are assigned to G3, EEPD with duty at their respective installations. Due to the nature of their duties, liaisons will not be assigned additional duties or placed on duty rosters (for example; staff duty NCO, charge of quarters, etc.) by the RECBN commander or staff.

**T-3. Responsibilities**

a. The primary responsibility of the liaison is to reduce Soldier attrition at the RECBN. Liaisons are USAREC's quality control representatives in detecting and resolving unfulfilled, erroneous, or fraudulent enlistments. Liaisons are expected to resolve problems by reselling enlistment options, renegotiating option(s) (if not qualified for current options), and resolving improper or incomplete documentation problems by contacting the appropriate Bn, and by requesting ETPs to retain a Soldier who may not be qualified. The ETPs are sent to EEPD for reply or to forward to other agencies.

b. The secondary responsibility of the liaison is to assist and advise the installation commander and his or her staff, training Bde and Bn Cdrs and their staffs, and the RECBN Cdr on matters pertaining to the enlistment process.

**T-4. Duties of the USAREC Liaisons**

Since the operation of each liaison office will vary with the mission of the installation, each liaison will be required to modify operational procedures to support the local mission. Liaisons will;

a. Act as advisors to the RECBN on recruiting policies and procedures.

b. Perform liaison and coordinate problems between the RECBN, MEPS, BN Cdrs and subordinate elements as required.

c. Maintain close contact with the Post Adjutant General, IG, SJA, and RSD concerning recruiting matters.

d. Resolve defective, unfulfilled, or erroneous enlistments pertaining to new Soldiers caused by recruiting personnel and/or enlistment processing errors. Report all administrative errors and waivers required to complete enlistment, discharge, or separation using UF 600-8.3 to EEPD at usarmy.knox, usarec.list.g3-rcro-pp@mail.mil; RSD at usarmy.knox.usarec.list.hq-rsd-improprieties-mgmt@mail.mil; and the appropriate Bde/Bn S3 via email within three (3) working days.

e. Maintain UF 600-8.1 (RA and AR Inquiries to the Liaison) for all Soldiers who visit.

f. Maintain records, references and historical files on reportable errors IAW AR 25-400-2, record number 601-210h. Include at a minimum, before and after copies of effected documents, waiver statements, and REQUEST printout.

g. Record, log and process all alleged RMs identified at the RECBN.

h. Conduct interviews with Soldiers concerning alleged RMs, enlistment option(s) or MOS eligibility, recruiter or GC errors, irregularities, and fraudulent enlistments when requested to determine the validity of each case.

**T-5. Flight Physicals (FOLLOW THE UM IRT FLIGHT PHYSICALS)**

Once the flight physical is complete, the Bn Ops will:

a. Verify that all required flight physical test information and data entered on the DD 2807-1 and 2808 is correct. If the physical is missing test information or data, return it to the recruiter or administering facility for completion with the FS, if required.

b. Establish a log that contains the FS's name, SSN, physical location, recruiter's name, RSID, date the physical was received at the BN and mailed to Ft. Rucker, a block for the return date, approval or disapproval date, and a remarks block.

c. Attach to the flight physical the completed UF 600-8.4 (Flight Physical Cover Sheet) with the appropriate return address and POC inside the block at the bottom of the sheet. Mail the physical and UF 600-8.4 to: US Army Aeromedical Center, ATTN: MCXY-AER-AAMA, 5700 Novosel Street, Ft. Rucker, AL 36362-5333.

d. Upon approval, complete the log with an approval date and ensure the control number that was issued by the liaison is in the remarks section of the DD 1966. The approved physical will remain with the liaison at Ft. Rucker. The control number is the verification of an approved physical.

e. When a suitable facility for administering flight physicals resides outside a reasonable driving distance of the FS, recruiters will contact their Bn to have the appointment and transportation scheduled. Bns will issue travel orders to the closest supporting facility that administers flight physicals.

**T-6. Record Requests**

Liaison will:

a. Request records not available within Army systems such as iPERMS, Integrated Web Services/Soldier Management System (IWS/SMS), Personnel Network (PERNET), Automated Orders and Resource systems (AORS), Defense Manpower Data Center (DMDC), Reenlistment Eligibility Data Display (REDD), Defense Personnel Records Information Retrieval System (DPRIS), GCRc, from the appropriate Service component and other systems.

b. Provide guidance and resolve issues concerning current and PS records, status, and Service. Issues may include, but are not limited to conflicting, erroneous, or missing data in a Soldier's record or database.

c. Provide authorized agencies/petitioners documentation to resolve issues for records requiring contact or correction.

d. Provide guidance for submission of correction to agencies that require direct request from a Soldier.

e. Validate request forms (UF 600-8.6, SF 180, and SF 86 when required) to ensure correctness. Contact sender if he/she did not fill out the request form correctly, or for clarification.

f. Process all requests, researching systems and request files from appropriate agencies.

g. Review and validate records and systems for corrections to include DD 214 and complete DD 215.

h. Forward requests for corrections and supporting documentation to the appropriate agency by Service component.

i. Develop MFRs to address missing documentation needed for processing of PS personnel who do not require record corrections.

j. Process records, certify and send via email or FEDEX to appropriate personnel.

## T-7. U.S. Army Foreign Language Recruiting Initiative (FLRI) and English Language Training (ESL) Liaisons

The primary responsibilities of these liaisons is to coordinate the administration of the Armed Forces Classification Test (AFCT) for Soldier who enlist for FLRI through the test administrator at Echo Company (E Co) DLIELC, Lackland AFB, TX.  Additional responsibilities are:

a. Report erroneous and fraudulent enlistments.

b. Identify and report trends found in enlistment processing procedures to the EEPD, PS Accessions/Liaisons.

c. Provide briefing(s) to the DLIELC commander.

d. Serve as a link between USAREC and TRADOC on recruiting related matters pertaining to ESL and 09C enlistment programs.

e. Provide Basic Skills Education Program (BSEP) instruction to Soldiers enlisting as a 09C after the completion of English Language Training (ESL).

## T-8. Physical Security

a. The liaison is responsible for the physical security of his/her Command Operations Center (CoC). Instance of damage or theft of property under USAREC control will be reported immediately via email to: usarmy.knox.usarec.mbxg3-coc-officer@mail.mil.

b. Acts of vandalism, demonstrations, threatening behaviors, bomb threats or force protection incidents must be reporting reported using UF 190-4.2; Serious Incident Report.

(1) The CoC-Security Watch Officer can be reached at (501) 626-0823/0824. The watch officer desk hours are 24/7.

(2) Each liaison office will have on file an authorization memo specifically designating access to REQUEST terminals IAW AR 25-2. The individual liaison will maintain REQUEST computer terminals, software, and computer access codes.

## T-9. Personnel and Administrative Functions

Each liaison is responsible for the resolution of Soldier's issues involving promotions, marital status, dependents, etc.

a. USAREC retains administrative and UCMJ jurisdiction for liaisons unless transferred IAW AR 27-10 chapter 5-2b.

b. Each liaison will adhere to USAREC's SOP for liaisons and update as the installation's mission demands, but at least yearly. The SOP must address normal processing procedures, ways to solve typical MOS related problems and contact information for those who can help solve problems. The liaison will send a copy of their SOP to the EEPD, PS Accessions/ Liaisons.

## T-10. Logistical and Communication Support.

a. Logistical and communication support to the liaison offices are provided by the Bns that have liaison locations inside their area of operations;

(1) Atlanta Bn – Fort Benning, GA.

(2) Oklahoma City Bn – Fort Sill, OK.

(3) Columbia Bn – Fort Jackson, SC.

(4) Montgomery Bn – Fort Rucker, AL.

(5) San Antonio Bn – Lackland Air Force Base, TX.

(6) Kansas City Bn – Fort Leonard Wood, MO.

b. The liaison will comply with the policies and procedures of the supporting Bn as to logistics and communications. Problems that cannot be resolved will be referred to EEPD, PS Accessions/Liaisons at (502) 626-0362.


**Appendix U**
**Occupational Physical Assessment Test (OPAT)**


**U-1. General**
The Occupational Physical Assessment Test (OPAT) is a battery of four physical fitness test events that will be used to assess an individual's physical capabilities to engage physically demanding Army tasks. The four test events consist of the standing long jump, seated power throw, strength deadlift, and the interval aerobic run. The standing long jump, seated power throw and strength deadlift can be performed in any order; however, the interval aerobic run must be performed as the last event.


**U-2. Policy**
    a. All RA and AR shippers require the successful completion of the OPAT after enlistment into the (FSTP DTP/DS) as specified by the Physical Demands Categories (PDC). Every MOS has a PDC. All FSs must have a passing OPAT PDC for their selected MOS within 90 days of shipping to training.
    b. PDCs (Binning Spreadsheets) are categorized as:
    (1) Heavy 'H'
    (2) Significant 'S'
    (3) Moderate 'M'
    (4) Unprepared 'U'*
    (5) Achieving PDC 'H' qualifies a FS for all MOSs under that category and in addition all MOSs under category 'S' and 'M'. Achieving category 'S' qualifies a FS for all MOSs under that category and category 'M'. Achieving category 'M' only qualifies a FS for MOSs under that category.
**NOTE**: There are no MOSs that fall under category 'U'.
    c. OPAT will NOT be administered without the FS signing the OPAT consent form.  The consent form uploaded in RZ under the 'Core Admin Folder' (bearing the title of the form).  OPAT scorecard will be uploaded in the RZ OPAT page after the FS's signature and certification of the scores.  Reservation cancellation and discharge procedures will be initiated for FSs refusing to consent to take the OPAT or refusing to sign the OPAT scorecard.
    d. FSs are not authorize to ship without a signed consent form and a signed scorecard by the FS and the administrator.  Results must be updated in RZ and REQUEST.
    (1) The FS will print full name (First, Middle, Last), sign and date the scorecard in the "Qualification Level/ Comments" block after the test has been given to certify that he/she had in fact taken the test (must achieve the minimum acceptable score, for the selected MOS, in each event in that single session) and acknowledges his/her test scores.
    (2) The test administrator or station commander will upload the signed scorecard in the FS's record after his/her signature and verify the scores in RZ as soon as possible.
**NOTE**: GC are reminded to review the flagged record report daily for the FSs who have not met the PDC requirement for the MOS selected.
    (3) GCs will validate that the FS and the OPAT testing administrator have signed the OPAT scorecard within 90 days of shipping to training. All discrepancies will be reported to the responsible Company Cdr/1SG immediately.
    e. The station commander or test administrator will enter the raw OPAT scores in RZ.
    (1) Select the "Future Soldier's Questionnaires" page under "I Want To...", "Maintain Occupational Physical Assessment Tests."
    (2) Select 'Add' in the "Enter and Update OPAT Scores" page. Beginning with the test date, complete each section to record the results of the FS's OPAT.
    (a) Test date
    (b) Standing Long Jump (must enter 4 digits; start with 0).
    (c) Seated Power Throw (must enter 4 digits; start with 0).
    (d) Strength Deadlift (click the drop-down arrow and select the highest weight successfully lifted correctly).
    (e) Interval Aerobic Run (list the last successful Level#, Shuttle#, and Total# of shuttles in the appropriate boxes).
    (f) All steps must be completed to update or add an OPAT score.

(3) OPAT scores must reflect a FS maximum effort in each OPAT fitness test event. All four OPAT events must be administered within a one-hour session. The FS must achieve the minimum acceptable score, for the selected MOS, in each event in that single session.

(4) Once all the scores have been entered, select the "save" button.  The new scores will be added to the summary box along with the summary of the previous scores. After the OPAT has been saved, select the score and verify option to populate REQUEST. Immediate retests are authorized without an ETP. FSs may complete multiple OPATs. Regardless of the multiple tests, the only qualifying score is the test taken within 90 days of shipping. Systems have not been updated to flag a FS record if he/she fails to score the PDC (within 90 days of shipping) required for the MOS after passing the PDC score earlier. GCs will validate within 90 days of shipping to training, the FS and OPAT test administrator has signed the OPAT scorecard and the FS had passed the PDC required for the MOS selected.

**NOTE**: Recruiters will establish a Physical Readiness Training Path IAW UR 601-210, appendix O-5 to assist and prepare FSs with OPAT testing.

## U-3. Future Soldier Tracking Log

OPAT scores populate to the Future Soldier Tracking Log in RMZ. The report will display any OPAT data to support the 90-day requirement.  Additional columns are as follows;

a. OPAT Pre-Ship Date; displays any OPAT score within 90 days of shipping.

b. OPAT Pre-Ship Rating; displays the OPAT rating (PDC) for a score from the "OPAT Pre-Ship

c. OPAT Pre-Ship Qualified; displays a 'Y' or 'N' based on the "OPAT Pre-Ship Rating" and the OPAT (PDC) required for the MOS.

  **NOTE:** The "OPAT Pre-Ship Qualified" column must reflect a 'Y' for the FS to ship.

## U-4. OPAT Renegotiations

Renegotiation for OPAT must be completed as soon as possible. FSs who do not meet the PDC requirement can be given as many opportunities to pass while in the FSTP.  Use the following codes;

a. OF - Failed to achieve the minimum OPAT score (U-Unprepared).

b. OP - Exceeded current MOS OPAT Score; for example: FS MOS PDC requirement 'M'. However, score is category 'H'. FS could request to renegotiate in an MOS with an OPAT score category 'S' or 'H'.

c. OD - Failed to achieve minimum OPAT score for MOS; for example FS MOS PDC is 'H'. However, FS OP score is category 'S'.  The FS must renegotiate in a MOS with an OPAT score category 'S' or 'M'.

## U-5. OPAT Loss/Cancellation

Losses/Cancellations, use the following codes:

a. OF - Failed to achieve minimum OPAT score.

b. OD - Failed to achieve minimum OPAT score for MOS.

c. OR - FS refused to take OPAT.

## U-6. OPAT Discharge Orders SPD

The Separation Program Designator (SPD) code of 'ZED – No Longer Qualified for Option and Declines Alternate' will be used on all discharge orders for FS who are taken as an OPAT loss (whether it was due to failure or refused to take the OPAT).

## U-7. PS and GNPS

Army PS/GNPS OPAT validity period is 36 months past their Military Service Obligation (MSO).

a. RA PS/GNPS applicants who are enlisting in their original MOS and are not attending training are not required to be administered the OPAT, the scores must still be verified in RZ to prevent errors in ship confirming. In RZ under "Maintain Occupational Physical Assessment Tests", click "score and verify". Ensure there is a "Y" in "verified".

b. PS/GNPS who are not enlisting in their original MOS and are going to training are required to be administered the OPAT within 90 days of shipping. PS/GNPS must pass OPAT with a PDC of their selected MOS.

c. AR PS/GNPS applicants who enlist in a 'will-train' MOS that is not their original MOS with a different OPATPDC are required to take the OPAT at their respective unit. AR PS/GNPS who have to attend AIT must meet the OPAT PDC for the AIT they are scheduled for within 90 days of shipping.

d. AR PS/GNPS applicants who require BCT must take and pass the OPAT. PS/GNPS must have a passing OPATPDC for their selected MOS within 90 days of shipping, if attending training.

**U-8. 6BDE DEP Trips and Remote Alaska (RA and AR)**

a. Applicants processing from the Federated States of Micronesia (FSM), Palau or the Republic of Marshall Islands who enlist remotely as a result of a MEPS DEP trip will take the OPAT during the 3-5-day period that the FS is on Guam attending FS training and submitting a SSN card request.

b. Applicants processing at Anchorage MEPS who are flown in from remote locations will take the OPAT during after enlistment if they are NOT within a two (2) hours radius from a station. The FSs will be held over for the test.  The test will be given by Anchorage North or Anchorage South stations.

**U-9. FLRI and ESL**

a. MOS 09C (FLRI Program) requires a minimum 'M' category. The USAREC liaison at Lackland AFB will renegotiate Soldier in an MOS upon successful completion of English as a Second Language (ESL) using the PDC attained while in the FSTP.

b. Passing OPAT scores are valid until the completion of ESL.

**U-10. Options 4 and 40 and ACASP**

a. OPAT PDC for Option 4 (Airborne) or 40 (Ranger) will be determined by the selected MOS. Example-11X Option 40 is an 'H', 92G Option 4 and 40 is a 'S'.

b. ACASP FSs are required to qualify in an OPAT PDC for the ACASP MOS they enlisted in whether or not they are required to attend AIT.

**U-11. MAVNI**

a. RA MAVNI 09U will test and must score in one of the three PDCs (H/S/M) after they have been cleared to training. This test can be administered after their MOS has been renegotiated and must be within 90 days of the new ship date.

b. AR MAVNI will test and must score in the PDC required for his/her MOS. Although the training seat has been cancelled the FS must still meet the required PDC to ensure successful pull of a training reservation. Once the reservation has been pulled the FS will need to retest within 90 days of shipping.

**U-12. Officers and SMP**

a. Officer MOSs; 09B/Q/R/S/W all require "M" category prior to shipping.

b. 09R (SMP) NPS/PS TPU Cdrs will ensure cadet takes OPAT prior to attending training when applicable.

**U-13. Training and Other Resources**

a. Comprehensive training can be located at;
http://span.usarec.army.mil/sites/HQ/G3/Training/TSP/Documents/Forms/AllItem
s.aspx?RootFolder=%2Fsites%2FHQ%2FG3%2FTraining%2FTSP%2FDocuments%2FOPAT%20T
rain%20the%20Trainer%20Documents&FolderCTID=0x012000B0130D123E58AF4BB34265C2
54917286&View={50DB2925-A6FE-40FD-BD03-17BA10DE7543}

b. OPAT information to include the PDC (Binning Spreadsheets), Scorecard, Consent Form, Testing Instruction and Video links are available in IKROme, EEPD on both the ROC and Policy pages;
https://span.usarec.army.mil/sites/HQ/G3/EEPD/SitePages/Policy.aspx or on IKROme homepage

    (1) Select All Sharepoint Sites

    (2) Select G3 Plans and Operations

    (3) Select the Enlistment Eligibility Processing Division under the Divisions

    (4) On the EEPD homepage select the 'ROC' or 'Policy' tabs

**NOTE**:  Ensure to continuously check the Binning spreadsheets as PDC requirements may change.

**Appendix V. Temporary Reservation Procedures**

**V-1. Purpose.**
This appendix establishes standardized procedures for the use of the temporary reservation (temp res) in RZ.

**V-2. General**
Temp res is a process that allows the recruiter and applicant to make an MOS selection and temporarily reserve the MOS.

**V-3. Recruiter Procedures**
a. Recruiters will review UR 601-210 Appendix B-4 prior to making a temp res.

b. Any applicant requiring a conduct waiver or suitability review IAW AR 601-210, chapter 4, must have the waiver or suitability review completed and approved before making a temp res.

c. The applicant must have a qualifying ASVAB score or line score predictor (PiCAT, EST or WinCast) results. If the PiCAT is used, the applicant must take and pass the PiCAT Verification Test (VTest) to remain qualified for the selected MOS on the temp res.

d. When the QT and line scores are obtained, the recruiter will build the applicant's record in RZ. If the applicant is not physically qualified by taking a MEPS examination, the system will populate the record with a PULHES (Physical capacity, Upper extremities, Lower extremities, Hearing, Eyes, Psych) profile of 111111.

e. The record can be constructed before a recruiter has verified the applicant's data with source documents. HOWEVER, a reservation will not be "pulled" until all source documents are obtained and verified IAW AR 601-210, chapter 2. The temp res will not be pulled without the applicant present. Pulling a reservation with known discrepancies, missing source docs or without the applicant present is prohibited.

f. Recruiters are authorized to make only two temp reservations on a single applicant. If for any reason an applicant needs a third reservation it must be pulled as a permanent reservation by a GC. Renegotiation of a temp res is prohibited. (Reservations for uncommitted applicants tie up training seats and prevent qualified/committed applicants from securing one of these training seats.)

g. Recruiters must perform the following steps:

(1) Ensure the search starts on the first Monday 14 calendar days AFTER the enlist date (day the applicant will be at the MEPS to join) (both RA and AR).

(2) For high school seniors' searches will start the Monday 14 calendar days after the graduation date shown on the high school letter (both RA and AR) to ensure a minimum of seven (7) days in the DEP/DTP prior to departure for training after graduation.

h. On Reservation Summary:

(1) Select MEPS.

(2) Select Pay grade per AR 601-210, chapter 2-18.

(a) If pay grade not E01 select correct advance Rank Reason.

(b) Enter correct College Semester Hours or zero if none.

(c) Select all appropriate math and sciences (some MOSs require only completion, others require a passing grade, always validate). (Must have transcripts loaded in ERM to validate anything other than general math or science.)

(d) Select the correct color vision; Normal-normal, R/G-Red/Green, or No Color Vision-completely color blind.

i. On the Eligibility screen; training type for normal DEP and MOST DTP are Standard. Alternate is for AR Split Training.

j. On the Preferences screen; refer to appendix V-3a and V-3b.

k. Perform a job search or lookup in the same manner as a GC.

l. On the Opportunities screen;

(1) Select UNCM (uncommitted).

(2) Reserve MOS and print the reservation letter.

(3) Inform the applicant a temp res is contingent upon the applicant qualifying for enlistment. The applicant must meet mental, medical and conduct qualifications. (The MOS may have additional prerequisites and/or qualifications.)

(4) AR - Change the 'enlistment date' on the completion screen to the date the applicant will complete his/her processing and swear in at the MEPS.

m. Upload source documents in ERM. Including all pages of the temp res. PiCAT or EST score printout will be uploaded behind the temp res, if applicable.

n. Temp res are valid for seven (7) calendar days. Cancel the reservation if the applicant cannot complete

enlistment processing within the seven (7) calendar days.

o. Recruiters are authorized to call the ROC directly during normal duty hours, Monday through Thursday 0700-2000 EST, Friday 0700-2100. All other business must be performed during normal duty hours using the queue line; 1-800-699-9203, ext 2. Recruiters can call for assistance under the following circumstances;

(1) DEP/DTP control window exceptions. All grad applicants must ship to training within the "window of opportunity". If the applicant cannot ship within this window, the recruiter will assist the applicant in writing a statement and provide necessary supporting documents to further demonstrate as to why they want or need to ship after a specific date. This statement and supporting documents become source document, justifying the ETP (shipping outside the DEP/DTP control window).

(2) Line score ETPs. If there are no MOS opportunities showing for the applicant, a call can be made for assistance. Line score ETPs are not always favorable. Under no circumstances will a line score ETP be granted based on on-line score predictor test; PiCAT, EST or WinCAST.

(3) Recruiters must do as much "homework" as possible before calling. This includes having an applicant's statement prepared and knowing exactly what MOS and what week the applicant needs or desires. The applicant must be present and with the recruiter. The ROC counselor will receive acknowledgment from the recruiter that the applicant's record has been validated for accuracy and completeness, and is fully qualified prior to requesting assistance in making a reservation.

## V-4. GC Procedures

a. GCs will check records for completeness, level 3 and 4 validations, and ensure the applicant meets the MOS qualification. The GC will wait until the applicant is mentally and physically qualified and the dates and scores have been updated in MIRS and transferred to the GCRc 680 before submitting the applicant's record to REQUEST.

(1) Ensure all supporting documentation validating an applicant's qualification for an MOS are uploaded in ERM prior to converting or pulling a permanent reservation.

(2) Once the data is transferred to REQUEST, update the REQUEST record. Ensure AR "Enlist Date" is correct for AR applicants.

(3) GCs will be unable to convert reservations if the record does not pass level 3 and 4 validations.

b. Records that are constructed based on PiCAT, if the V-Test QT score lower below 50 and incentives are attached to the temp res the GC will not be able to convert the res to permanent. The existing temp res must be canceled and a new reservation made on the production scores. If there are no incentives attached, the record will convert.

c. In cases when the QT increases above a 50, the GC will delete the bravo incentives and update the record with alpha incentives, if applicable.  Contact the ROC immediately with issues, do not cancel the temp res.

d. If the applicant is no longer qualified for the MOS the temp res will be cancelled. DO NOT renegotiate the temp res.

e. Always use "TR" temp res as the cancellation code. Ensure remarks are annotated with the reason for cancellation.  DONOT renegotiate the temp res.

f. In the event the applicant is disqualified medically and the disqualifying factor cannot be overcome within the seven (7) day temp res period, the recruiter or GC will cancel the temp res.

g. The SGC and GCs remain the final authority for the verification of applicant qualifications, to include MOS qualifications, for enlistment in the RA or AR.

h. BN and BDE Ops will monitor the reservations being made within their AOs. Instances of multiple reservations and cancellations will be treated as abuse of the system.

# Glossary

**Section I**
**Abbreviations**

**AAR**
After Action Review

**ABS**
Applicant Background Screening

**ABSM**
Applicant Background Screening Manager

**AC**
Active Component

**ACASP**
Army Civilian Acquired Skills Program

**AD**
Active Duty

**AFQT**
Armed Forces Qualification Test

**AFR**
Advance Fingerprint Report

**AFS**
Active Federal Service

**AFSC**
Armed Forces Specialty Code

**AFVT**
Armed Forces Vision Test

**AIT**
Advanced Individual Training

**AMEDD**
Army Medical Department

**AO**
Assembling Objects

**AR**
Army Reserve

**ARISS**
Army Recruiting Information Support System

**ARN**
Alien Registration Number

**ARNG**
Army National Guard

**ASI**
Additional Skill Identifier

**ASVAB**
Armed Services Vocational Aptitude Battery

**ATP**
Alternate Training Program

**BCT**
Basic Combat Training

**BI**
Background Investigation

**BIR**
Background Investigation Report

**BJA**
Brigade Judge Advocate

**BCT**
Basic Combat Training

**CCF**
Central Clearance Facility

**CCT**
Case Closing Transmittal

**CEP**
Career Exploration Plan

**CG**
Commanding General

**CID**
Criminal Investigation Division

**CIHS**
Currently In High School

**CMF**
Career Management Field

**CMO**
Chief Medical Officer

**CSB**
Customer Support Branch

**CSM**
Command Sergeant Major

**DA**
Department of the Army

**DAT**
Drug and Alcohol Test(ing)

**DCG**
Deputy, Commanding General

**DEP**
Delayed Entry Program

**DLAB**
Defense Language Aptitude Battery

**DLIELC**
Defense Language Institute English Language Center

**DLIFLC**
Defense Language Institute Foreign Language Center

**DOD**
Department of Defense

**DOS**
Days of Service

**DS**
Delayed Status

**DTP**
Delayed Training Program

**EAD**
Extended Active Duty

**EB**
Enlistment Bonus

**EBC**
Electronic Background Check

**ECLT**
English Comprehension Level Test

**EER**
Erroneous Enlistment Report

**EEPD**
Enlistment Eligibility Processing Division

**EFMP**
Exceptional Family Membership Program

**EIS**
Enlistment Inquiry Section

**ELS**
Entry Level Separation

**ENSQ**
Entrance Inquiry Section

**ENTNAC**
Entrance National Agency Check

**EREC**
Enlisted Records Evaluation Center

**ERM**
Electronic Records Management

**ESL**
English as a Second Language

**ESS**
Education Services Specialist

**ETP**
Exception to Policy

**ETS**
Expired Term of Service

**FAZR**
Force Structure and Zip Code Realignment System

**FBI**
Federal Bureau of Investigation

**FIC**
Family Information Center

**FOUO**
For Official Use Only

**FS**
Future Soldier

**FSR2S**
Future Soldier Remote Reservation System

**FSTP**
Future Soldier Training Program

**FSTS**
Future Soldier Training System

**FY**
Fiscal Year

**GC**
Guidance Counselor

**GCOC**
Guidance Counselor and Operations Course

**GCRc**
Guidance Counselor Resource Center

**GED**
General Education Development

**HCR**
Health Care Recruiter

**HIV**
Human Immunodeficiency Virus

**HQDA**
Headquarters, Department of the Army

**HQ USAREC**
Headquarters, US Army Recruiting Command

**HRC**
US Army Human Resources Command

**HSD**
High School Diploma

**HSDC**
High School Diploma Graduate via College Credit

**HSDG**
High School Diploma Graduate

**HSS**
Headquarters Support System

**HTS**
Hometown Shipping

**IADT**
Initial Active Duty Training
**ID**
Identification

**IET**
Initial Entry Training

**IEP**
Individualized Education Program

**IG**
Inspector General

**IMO**
Information Management Office

**IMT**
Initial Military Training

**IO**
Investigative Officer

**iPERMS**
Interactive Personnel Records Management System

**IRR**
Individual Ready Reserve

**JPAS**
Joint Personnel Adjudication System

**LOA**
Letter of Acceptance

**LRP**
Loan Repayment Program

**LS**
Live Scan

**LZ**
Leader Zone

**MEPS**
Military Entrance Processing Station

**MET**
Military Entrance Test

**MFR**
Memorandum for Record

**MGIB**
Montgomery GI Bill

**MIRS**
MEPCOM Integrated Resource System

**MOS**
Military Occupational Specialty

**MOSC**
Military Occupational Specialty Code

**MRD**
Mandatory Return Date

**MRE**
Meals, Ready to Eat

**MSO**
Military Service Obligation

**MTF**
Military Treatment Facility

**NACLC**
National Agency Check and Local Check

**NCO**
Noncommissioned Officer

**NCOIC**
Noncommissioned Officer in Charge

**NGYCP**
National Guard Youth Challenge Program

**NPS**
Non-Prior Service

**OARS**
OPI Authorization and Reporting System

**OCS**
Officer Candidate School

**OIC**
Officer in Charge

**OIP**
Organizational Inspection Program

**OMPF**
Official Military Personnel File

**OPI**
Oral Proficiency Interview

**OPM**
Office of Personnel Management

**OPS**
Operations

**OSD**
Office of the Secretary of Defense

**OSUT**
One-Station Unit Training

**PAI**
Pre-accession Interview

**PAL**
Police Agency Listing

**PaYS**
Partnership for Youth Success

**PE**
Physical Examination

**PEI**
Pre-enlistment Interview(er)

**PL**
Processing List

**PMOS**
Primary Military Occupational Specialty

**PMR**
Permanent Medical Rejection

**PPR**
Processing Procedure Review

**PRID**
Person Identification

**PRP**
Personnel Reliability Program

**PRT**
Physical Readiness Training

**PS**
Prior Service

**PSSP**
Personnel Security Screening Program

**PT**
Physical Training

**QC**
Quality Control

**QNE**
Qualified Not Enlisted

**QRP**
Quality Review Program

**QUALS**
Qualification Requirements

**PEQ**
Physical Examination Qualified

**RA**
Regular Army

**RAP**
Record of Arrest and Prosecution

**RBJ**
Reevaluation Believed Justified

**RC**
Reserve Component

**RCST**
Reading Comprehension Screening Test

**RE**
Reenlistment Eligibility

**REQUEST**
Recruit Quota System

**RECBN**
Reception Battalion

**RECSTA**
Reception Station

**REFRAD**
Released From Active Duty

**RENO**
Renegotiation

**RI**
Recruiting Irregularity

**RLAS**
Regional Level Application Software

**RM**
Recruiter Misconduct

**RMZ**
Report Management Zone

**ROC**
Recruiting Operations Center

**ROI**
Reports of Investigation

**ROTC**
Reserve Officers Training Corps

**RPI**
Recruiting Publicity Item

**RSID**
Recruiting Station Identification

**RSD**
Recruiting Standards Directorate

**RSM**
Recruit Ship Month

**RSP**
Recruiting Standards Program

**RSW**
Recruit Ship Week

**RWS**
Recruiter Work Station

**RZ**
Recruiter Zone

**SA**
Security Assistant

**SAC**
Special Agreement Check

**SBI**
Special Background Investigation

**SCI**
Sensitive Compartmental Information

**SDAP**
Special Duty Allowance Pay

**SGC**
Senior Guidance Counselor

**SI**
Suspected Irregularities

**SJA**
Staff Judge Advocate

**SLRP**
Student Loan Repayment Program

**SM**
Screening Manager

**SMP**
Simultaneous Membership Program

**SMT**
Senior Master Trainer

**SOP**
Standing Operating Procedure

**SPD**
Separation Program Designator

**SRIP**
Selected Reserve Incentive Program

**SSA**
Social Security Administration

**SSN**
Social Security Number

**ST**
Security Technician

**STP**
Standard Training Program

**SWAR**
Ship without Advanced Reservation

**Tech Check**
Technical Check

**Temp Res**
Temporary reservation

**TIN**
Temporary Identification Number

**TMR**
Temporary Medical Rejection

**TPU**
Troop Program Unit

**TRADOC**
US Army Training and Doctrine Command

**TS**
Top Secret

**TTHS**
Trainees, Transients, Holdees, and Students

**UCMJ**
Uniformed Code of Military Justice

**UIC**
Unit Identification Code

**USACC**
United States Army Cadet Command

**USACIDC**
United States Army Criminal Investigation Division Command

**USAR**
United States Army Reserve

**USARC**
US Army Reserve Command

**USAREC**
US Army Recruiting Command

**USARECBN**
US Army Reception Battalion

**USMEPCOM**
U.S. Military Entrance Processing Command

**VCN**
Vacancy Control Number

**WOCC**
Warrant Officer Career College

**WOFT**
Warrant Officer Flight Training

**XO**
Executive Officer

**1SG**
First Sergeant

**Section II Terms**
**Accession**
- AC - An individual who has entered onto active duty status.
- RC - An individual who has enlisted into an Army Reserve program.

**Administrative Investigation**
An investigation conducted in accordance with chapter 5, AR 15-6, upon receipt of a credible allegation of RM by a prospect, applicant, recruit, or other person which occurs during the recruiting process, or when a PPT IO determines that sufficient evidence exists to warrant further inquiry into RM. An Administrative Investigation is required to substantiate
RM.

**Adverse Personnel Actions**
Unfavorable personnel actions including, but not limited to, removal from recruiting duties, withdrawal of recruiting MOSC or additional skill identifier code, and/or letter of reprimand.

**Active Duty Service Date**
- NPS - Date entered onto active duty.
- PS - Date computed by taking current date entered onto active duty and subtracting from that date the years, months, and days of creditable active Federal service

**Allegation**
Information from any source, that a USAREC member violated this regulation and/or committed a Recruiting Irregularity. Allegations can be expressed or implied based on oral or written statements which need not be signed or sworn. Recruiting Irregularities also can be inferred based on documentary evidence. Applicant
A person who has begun processing for enlistment, accession or Individual Ready Reserve transfer; into the RA or any other AR component of the Army.

**Application for Enlistment - Armed Forces of the United States**
The five pages of DD Form 1966. These pages along with the DD Form 4 series, DA Form 3286, SF 86, and verification documentation constitutes the enlistment record.

**Appointing Authority**
USAREC Cdrs at the Bn level or higher, USAREC Deputy Commanding General, and USAREC Chief of staff, are authorized to appoint informal investigations concerning allegations of RIs and other matters within their areas of responsibility. Only USAREC Commanding General, Deputy Commanding General, or Chief of Staff may authorize a headquarters investigation.

**Approval Authority**
The Commanding General, USAREC, or when empowered to act for the Commanding General the Deputy Commanding General USAREC.

**Army Civilian Acquired Skills Program**
Enlistment program allowing accelerated promotion dependent upon level of training or experience. The promotion to private first class is for secondary school level education or experience, and specialist and sergeant is for post-secondary level training or experience.

**Army College Fund**
Funds in addition to those provided by the All-Volunteer Forces Educational Assistance Program of 1984 (GI Bill).

**Army Transmission Unit**
An element of the processing section at the MEPS which collects, edits, and processes data for submission to USAREC, to enable maintenance of a computerized databank on all examinations and enlistments accomplished by MEPS.

**Background Investigation**

Consists of a full field background inquiry scoped from 5 to 15 years, or longer, and is required for U.S. citizens for a Top Secret clearance.

**Basic Combat Training**

Training for an accession (less those exempted IAW AR 612-201) which provides fundamental military knowledge.

**Before Ship Record Check**

Record check accomplished by a Guidance Counselor between 7 and 30 days prior to shipping to active duty or Initial Active Duty for Training.

**Chief Medical Officer**

Physician assigned as the Chief of the Medical Examination Section at MEPS, responsible for profiling and determination of medical eligibility for special programs (ex. airborne).

**Coding**

Alpha and numeric characters for assigned specific meanings which when entered into the service required and unique data blocks, allow for automatic data processing collection of historical information on every applicant and enlistee.

**Completed Medical Evaluation**

DD Form 2807-1 and DD Form 2808 which are complete and have been reviewed by the CMO to include profiling.

**Cdrs Inquiry**

Rules for Courts-Martial, Rule 303 Preliminary inquiry into reported offenses. Upon receipt of information that a member of the command is accused or suspected of committing an offense, the immediate commander shall make or cause to be made a preliminary inquiry into the charges or suspected offense.

**Contract**

A signed document specifying conditions, standards, and terms of enlistment into an Army program (see DD Form 4 series).

**Control Activity**

The activity within MEPS that controls applicant processing, directs individuals to various sections, and is usually under the supervision of the reception and orientation sergeant.

**Courtesy Shipment**

The accession of an individual previously processed at a different MEPS into the Future Soldier Training Program. Although the shipping Bn receives no enlistment credit, the Senior Guidance Counselor of the shipping Bn is responsible for ensuring the accuracy of the enlistment documents prior to shipment to a US Army Reception Bn.

**Credential Laundering**

Credential laundering is defined as recruiter advice or assistance provided to an applicant or prospect for the purpose of, or which has the effect of, converting or transferring a Tier 2 credential to a Tier 1 credential solely for the applicant or prospect to meet the Army's Tier 1 education enlistment requirements.

**Currently in High School**

A person currently in a high school grade other than senior; who has completed the 10th grade. This code is used for AR REQUEST purposes only.

**Delayed Entry Program**

An enlistment program which allows an individual to delay entry onto active duty for a period of up to 365 days. This program is subject to controls, as determined by the Commanding General, USAREC.

**Diploma Mill**

A diploma mill (also known as a degree mill) is an organization that awards academic degrees and secondary diplomas with substandard or no academic study and without recognition by official educational accrediting bodies.

The organization will offer academic degrees or secondary diplomas for a flat fee in a short amount of accreditations by non- recognized/ unapproved accrediting bodies set up for the purposes of providing the appearance of authenticity.

**Duplicate Reservation**
Two or more reservations for the same applicant.

**Early Ship**
A Future Soldier Training Program enlistee brought onto active duty prior to the Recruit Ship Week within which his or her enlistment date falls. (Example: AIT class calls for an RSW of 8 October. The FS must enlist between 2 October (Tuesday) and 8 October (Monday). If an FS is brought onto active duty prior to 2 October without a reno he or she is an early ship.)

**Eligibility**
Qualification for enlistment or appointment as a warrant or commissioned officer.

**Elopement**
Failure of a Future Soldier Training Program shipper to report to active duty by consciously going absent without leave.

**Eloper**
An individual who departs the MEPS with or without authorization prior to completion of processing and fails to return to complete processing.

**Enlistee**
A person who has taken the Oath of Enlistment into the Future Soldier Training Program, RA, any AR component of the Army and signed the applicable portions of DD Form 4 (Enlistment/Reenlistment Document - Armed Forces of the United States), or who has signed a request to transfer to a Troop Program Unit.

**Enlistment**
A voluntary contract (DD Form 4) for military service entered into between an individual and the Army which results in changing the status of the individual person from that of a civilian to that of a member of the military (RA or USAR). NOTE: For the purpose of this regulation, "enlistment" includes entry into the Future Soldier Training Program, original enlistment in a Troop Program Unit (with or without delay or split training), in the RA or appointment in the RA, AR, Officer Candidate School, Warrant Officer Flight Training, Chaplain, or Army Medical Department RA or AR. This includes transfers from the Individual Ready Reserve to a Troop Program Unit. Thus, the rules of this regulation apply both to all matters pertaining to enlistment in the Future Soldier Training Program and to all matters pertaining to the subsequent enlistment in the RA.

**Enlistment Bonus**
An amount of money determined by HQDA, which is paid to a qualified enlistee upon completion of Advanced Individual Training in selected MOSs. The amount of the Enlistment Bonus paid may depend on the Bn in which enlisted, the date of the original Future Soldier Training Program contract, MOS, and other factors determined by HQDA.

**Enlistment Contract**
A signed document specifying conditions, standards, and terms of enlistment into an Army program.

**Enlistment Inquiry Section**
Office established at HRC by direction of the Secretary of the Army to control MOSs and assignments of certain Prior Service applicants prior to enlistment or reenlistment.

**Enlistment Record**
The enlistment contract with associated and verifying documents broken down into six packets for distribution to various Army agencies

**Erroneous Enlistment**

An enlistment that later proves to be invalid because the individual failed to meet the qualifications prior to enlistment. Erroneous enlistment is not the result of fraudulent conduct on the part of the applicant.

**Even flow**

Attainment of DA-directed numbers of enlistments needed to maintain training centers at optimum level. Even flow also refers to a constant regulated flow of applicants to the MEPS to prevent overloading the MEPS.

**Fee Basis Physician**

A civilian medical doctor employed by MEPS to conduct medical examinations and/or consultations in MEPS.

**Fraudulent Enlistment**

An enlistment procured through a deliberate material misrepresentation, omission, or concealment of facts by a recruiter, Guidance Counselor, applicant, or any or all, which if known at the time of enlistment, would have resulted in rejection of the enlistee.

**Future Soldier Training Program**

A training program that prepares a Future Soldier for Initial Entry Training after enlisting into the RA or AR.

**Formal Investigation**

An administrative fact-finding procedure under AR 15-6 may be designated an investigation or a board of officers Proceedings that involve more than one investigating officer using formal or informal procedures or a single investigating officer using formal procedures are designated a board of officers.

**Future Soldier Training Program loss**

A Future Soldier separation or voided contract.

**Future Soldier Training Program separation**

A separation from the Future Soldier Training Program through official published orders.

**Future Soldier Training Program voided enlistment**

A release from the Future Soldier Training Program through official published orders.

**Guidance Counselor**

Recruiter or civilian contractor assigned duties at the MEPS for enlistment processing of Army applicants.

**Headquarters Investigation Team**

The group of commissioned officers selected by the Chief of Staff, for training as USAREC Investigations Officers and for detail to investigative duties when allegations of RIs warrant an HQ USAREC investigation. Civilian employees and senior NCOs, sergeants first class through sergeants major, may be appointed as members of a headquarters investigative team. Only the USAREC Commanding General, Deputy Commanding General, or Chief of Staff may authorize a headquarters investigation.

**High School Senior**

A person enrolled in a program of education which, within 365 days, will result in meeting the definition of a High School Diploma Graduate contained in AR 601-210, 2-7.

**Informal Investigation**

An informal investigation or board may use whatever method it finds most efficient and effective for acquiring information. Although witnesses may be called to present formal testimony, information also may be obtained by personal interview, correspondence, telephone inquiry, or other informal means.

**Inter-Service Recruitment Committee**

A Bn level joint service committee established in the local area to coordinate and monitor aspects of applicant testing, processing, and educational liaison with high schools and the local community. One of its prime functions is planning and implementing the local school ASVAB testing program.

**Late Cancellation**
A reservation that is canceled after the scheduled enlistment date.

**Late Ship**
Future Soldier who enlist in the RA after the scheduled recruit ship date.

**Live Scan**
The electronic uploading of an applicant's FPs for electronic submission of Entrance National Agency Check.

**Male or Female Impersonator**
Improper gender coding. Reservation made for an applicant based on incorrect input of gender code.

**Medical Waiver**
An instrument for enlistment, which requires minimum documentation to warrant an exception to the physical standards established by AR 40-501. If a defect is considered to be disqualifying in accordance with the standards set forth in AR 40- 501, but is of such a nature as not to preclude the performance of duty, a waiver may be recommended by the Chief Medical Officer and submitted by the Bn.

**MEPCOM Integrated Resource System**
A USMEPCOM-wide system designed to collect, edit, and process information required to maintain a computerized databank on all processing accomplished by MEPS.

**MEPS database listing**
A computer listing of all records on the active file; sometimes referred to as the "dump listing."

**MEPS jumper**
An applicant who has processed and found to be disqualified (physically, morally, or mentally) at a MEPS, and subsequently processes at a different MEPS to conceal the original disqualification.

**Midterm Graduate**
This applies to the graduate who has met and/or exceeded prescribed requirements (units, credits) early. Graduation could occur at midterm (December to January) rather than the end (May to June) of the school term.

**Military Entrance Processing Station**
The joint service facility which conducts final PEs and final mental tests of all Selective Service registrants and service applicants, effects induction of enlistment processing, and ships such accessions to appropriate U.S. Army Reception Bns or duty stations.

**Military Entrance Test Site**
A location outside the MEPS used for the administration of the ASVAB. Either military or contracted test administrators may administer the test at the MET site.

**Moral Waiver**
An instrument for enlistment which requires documentation to warrant an exception to the enlistment standards established in AR 601-210. Waiver documentation should show that rehabilitation of the individual concerned has been demonstrated and that the individual is a good risk from a conduct standpoint, not to become a disciplinary problem during the term of enlistment.

**National Agency Check and Local Check**
A check accomplished by Office of Personnel Management, whereby, FBI Headquarters files, the FBI (Identification Division), FBI FP identification files, and local agencies, as appropriate, are checked for information on the designated individual. This check is required for Prior Service applicants. A National Agency Check is submitted on all Prior Service personnel unable to provide proof of their original Entrance National Agency Check status, regardless of break in service.

**Non-High School Graduate**
An individual who has earned neither a High School Diploma nor an equivalency certificate and is not attending school.

**Non-Prior Service**
For enlistment purposes (RA) an individual who has completed less than 180 days of active service in any armed service, (AR) and who is not MOS qualified.

**No-Show**
A processor who fails to report to a designated place for scheduled processing or enlistment.

**Oath of Enlistment**
Oath prescribed by statute and administered by a commissioned officer to each applicant who has been found qualified for, and desires, enlistment. An applicant orally subscribing to the oath and executing the DD Form 4 series becomes a member of the Armed Forces.

**Pay Entry Base Date**
The date, for pay purposes that an enlistee entered an armed service. For computation example see AR 601-210.

**Phantom Reservation (bogus)**
REQUEST reservation made for a fictitious applicant.

**Physical Inspection**
An abbreviated medical examination, given prior to entry into military service, to an individual who has received a complete medical examination within 18 months of the date of enlistment and was found acceptable. For entry into the Future Soldier Training Program or Delayed Status, if enlistment is accomplished within 30 days of the initial physical or last physical inspection, a new inspection is not required. For shipment onto active duty, if RA enlistment is accomplished within 72 hours of the initial physical or last physical inspection, a new inspection is not required.

**Physical Profile Categories (PULHES)**
Descriptive explanation of the Physical Evaluation divided into categories:
- P = General physical health
- U = Upper extremities
- L = Lower extremities
- H= Hearing and ears
- E = Vision and eyes
- S = Psychiatric

**Positive Match ENTNAC**
Individuals with derogatory information from Office of Personnel Management for law, credit, or citizenship.

**Preliminary Inquiry (Cdrs Inquiry)**
Rules for Courts-Martial, Rule 303 Preliminary inquiry into reported offenses. Upon receipt of information that a member of the command is accused or suspected of committing an offense, the immediate commander shall make or cause to be made a preliminary inquiry into the charges or suspected offense.

**Processing Procedure Review**
A preliminary inquiry conducted in a questionable situation in which a Recruiter Misconduct is possible based on circumstantial or documentary evidence.

**Processing Section**
A MEPS element responsible for administrative actions relative to the processing of applicants for enlistment or reenlistment into the Armed Forces.

**Proprietary Schools**

A proprietary college or university is one which operates as a private, profit seeking business. They emphasized applied education while minimizing traditional liberal arts education.

**Prospect**

An individual who has indicated interest in an enlistment to a recruiter directly or indirectly through face-to-face or telephonic communication or by Lead Evaluation and Distribution System, centers of influence (COI), Future Soldier Training Program referrals, and/or hometown recruiter aides.

**Public Continuation School**

A continuation school is an alternative school. Some school districts throughout the country use the term "continuation" and "alternative" interchangeably.

**Qualification Test Material**

Actual or illustrative questions and/or answers to any version of the test, or any other test administered to applicants for enlistment to determine test score qualification for enlistment; any component of these tests which would reveal actual questions and/or answers; and copies, written extracts, or crib sheets of test questions, answers, or any component of these tests which would reveal actual questions and answers.

**Qualified Applicant**

An applicant who has been mentally, medically, and morally evaluated, and found to be qualified for Army enlistment.

**Qualified Military Available**

Male citizens 17 to 21 years of age that are physically, mentally, and morally qualify for military service. Estimates of qualified military available may be calculated for county or other geographic area by applying experienced rejection rates to military available from the geographical area.

**Qualified not Enlisted**

An individual who is fully qualified and able to enlist, but declines to accept an available option.

**Reasonable Commuting Distance**

Distance from home to the AR center, within a 50-mile radius or 90-minute travel time.

**Recruit Quota System**

Centralized recruiting qualifications data, real-time training space and unit vacancy reservation capability, retrieval of operational and management data, and real-time message capability. REQUEST is an official reporting system for management information within USAREC.

**Recruit Ship Date**

The last day of the Recruit Ship Week. This day is always Monday, except as modified to accommodate the Christmas holiday schedule. This is the last day an individual may be enlisted so as to arrive at the Army Reception Bn in time for processing into the proper Basic Training and Basic Combat Training class.

**Recruit Ship Month**

A4 or 5-week period commencing on a Tuesday and ending on a Monday, not in consonance with a calendar month.

**Recruit Ship Week**

Tuesday through the following Monday is established as the Recruit Ship Week.

**Recruiter Misconduct**

The term Recruiter Misconduct is the equivalent of 'Recruiter Impropriety' or 'Recruiter Irregularity' to extent such terms are used in AR 601-1 and any related authority. Those intentional acts of misconduct where by the recruiter knowingly directed the fabrication, withholding or altering of applicant or enlistment information. Advising an applicant not to disclose pertinent information. Providing false information, or intentionally concealing information necessary to determine the eligibility, qualification, military entitlements, or certification of an applicant to enlist (or

enlist for a specialty, grade or rating) for which the applicant is not eligible; whereby perpetrated by a recruiter that involve a prospect, applicant, recruit, or member of the DEP, including sexual misconduct, sexual harassment, fraternization and unauthorized relationships, concealment or falsification, cheating on tests, and false promise or coercion. However, Recruiter Misconduct not specifically related to the enlistment process is outside the scope of this regulation. This includes sexual misconduct, sexual harassment, fraternization, and unauthorized relationships.

## Recruiting Incentives Program
Those programs designed to attract high quality prospects or to induce enlistments in hard-to-fill MOSs or options (that is, the U.S. Army Cash Bonus Enlistment Option, and Loan Repayment Program).

## Recruiting Irregularity
Those intentional or unintentional acts of omission and improprieties that are perpetrated by a recruiter, or alleged to be perpetrated by a recruiter, to facilitate the recruiting process for an applicant.

## Red-Carpet Treatment
Procedures employed by the MEPS, which ensures that individuals receive personalized, efficient, and courteous service.

## Reevaluation Believed Justified
A determination of the existence of a temporarily disqualifying medical condition, expected to improve in time.

## Reinstatement
The restoration to recruiting duty status, along with a restoration of eligibility for Special Duty Allowance Pay.

## REQUEST Reservation
One of the core programs of REQUEST which is the heart of the system. The REQUEST Program reserves an enlistment training space.

## Residual Record
A record of each enlistment kept in the Enlist Record Management database consisting, at a minimum, of DA Form 3286, the DA Form 3540 (Certificate and Acknowledgment of US Army Reserve Service Requirements and Methods of Fulfillment), UF 601-210.13, DD Form 4 series, DD Form 1966 series, DD Form 2807-1, and DD Form 2808.

## Reserve Officers' Training Corps Referral Program
A program whereby all elements of USAREC provide personal data on qualified applicants to Army Reserve Officers' Training Corps elements.

## Retest
Any subsequent ASVAB test administered after the initial test during the validity period of the initial test. A retest is the only authorized means which may be used to qualify applicants for enlistment, whose initial test scores are not qualifying and do not reflect the applicant's true abilities and capabilities.

## Ringer
An individual who attempts to process under a false name to qualify another individual for enlistment, who may otherwise not possess the ability to qualify.

## Screening Manager
Person responsible for all matters pertaining to Entrance National Agency Check and National Agency Check policies and procedures as prescribed by this regulation.

## Security Assistant
An individual who has the primary mission of screening, interviewing, counseling, and assisting in the processing of enlistees for all MOSs that are required to be cleared for sensitive positions.

## Service Required Data and Service Unique Data
Any data element that is not a standard, where values of the data element vary among recruiting services.

**Special Duty Assignment Pay**
A monthly monetary incentive that is paid to enlisted personnel who qualify for and serve in designated special duty assignments. It is used for designated personnel who have extremely demanding duties that require an extraordinary effort for satisfactory performance or an unusual degree of responsibilities.

**Ship**
To transport an enlistee from MEPS to an Army Reception Bn.

**Straight Shipper**
An individual who enlists onto active duty without having entered the Future Soldier Training Program.

**Suitability**
Check of records of appropriate agencies such as the FBI, made by Office of Personnel Management, bearing on the loyalty and trustworthiness of an applicant.

**Suspected Irregularity**
Questionable situations in which a Recruiting Irregularity is possible based on circumstantial or documentary evidence.

**Suspension**
An exclusion from recruiting duty status for an indefinite period of time for the best interests of the Army. The recruiter is transferred from all duties involving contact with prospects and/or applicants for enlistments.

**Technical Search**
Electronic live scan fingerprint search of criminal indices.

**Test Disqualified**
An applicant who failed to achieve scores acceptable for enlistment as determined by specific criteria (that is, educational level, age, and category).

**Test Management Section**
Unit of MEPS which is responsible for administration of ASVAB tests developed for selection and classification purposes.

**Test Qualified Declined**
Individuals who have completed the ASVAB test and are qualified but decline further processing.

**Umbrella School**
School that enrolls homeschooling children or Families and offers services supportive of home education. This type of school is also known as a "Cover School"

**Uncommitted Applicant Reservation**
Reservation made for an individual who does not execute an enlistment agreement immediately.

**Unfulfilled Enlistment**
This enlistment occurs when a qualified applicant is properly enlisted, but who through no fault of his or her own cannot receive his or her original option or guarantee as contained on applicable DA Form 3286 and DD Form 4 series; or when the Army cannot honor an enlistment guarantee or promise, made in writing or verbally by a recruiting official, providing the communication of such guarantee or promise can be verified.

**Unqualified Applicant**
Any applicant found to be unqualified whether mentally, morally, or physically.

**Volume II (VOL II)**
Reports and retrieval of reports. The automated reporting system is used to monitor enlistment processing. The Recruiting Standards Management Reporting System (Volume II) contains a series of automated reports. This system provides raw information to analyze and identify units responsible for suspect enlistment processes. See appendix B.

**Walk-In**

A potential enlistee who walks into an RS without prior contact with a recruiter. Walk-in also refers to a person who arrives at the MEPS for processing without prior notification or being scheduled for processing.



**ELECTRONIC PUBLISHING SYSTEM**

**DATE:**          20 JULY 2018
**DOCUMENT:**     USAREC REG 601–210
**SECURITY:**     UNCLASSIFIED
**DOC STATUS:**   REVISION

**Army Regulation 135–178**

Army National Guard and Reserve

# Enlisted Administrative Separations

Headquarters
Department of the Army
Washington, DC
7 November 2017

**UNCLASSIFIED**

# *SUMMARY of CHANGE*

AR 135–178

This major revision, dated 7 November 2017—

o   Updates responsibilities for enlisted administrative separations (para 1–4).

o   Updates medical processing policy for enlisted administrative separations (para 1–9*g*).

o   Updates precedence, referral and exceptions regarding the Integrated Disability Evaluation System (para 1–10).

o   Incorporates Army Directive 2013–21, Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses (paras 3–1 and 11–4).

o   Adds conditions of dependency or hardship (paras 6–2*c*(1) and (2)).

o   Allows separation upon death of a spouse (para 6–2*c*(1)(*e*)).

o   Adds requirement to counsel Soldiers in writing to establish observed behavior of specific deficiencies that interfere with assignment to or performance of duty (para 6–7*a*(7)).

o   Requires higher level review by Office of the Surgeon General for administrative separation of Soldiers who have served or are currently serving in an imminent danger pay (para 6–7*e*).

o   Incorporates Army Directive 2012–07, Administrative Processing for Separation of Soldiers for Alcohol or Other Drug Abuse (paras 10–1*a*, 10–1*a*(3), 10–1*d*, and 11–1*d*.)

o   Moves policy for the Qualitative Retention Program, to include use of the program as a force-shaping mechanism from AR 135–205 (herby superseded) to this regulation (chap 16).

o   Changes guidance for when a Qualitative Retention Board may convene (para 16–5).

Headquarters
Department of the Army
Washington, DC
7 November 2017

*Army Regulation 135–178

Effective 7 December 2017

Army National Guard and Reserve

## Enlisted Administrative Separations

**By Order of the Secretary of the Army:**

**MARK A. MILLEY**
*General, United States Army
Chief of Staff*

Official:

**GERALD B. O'KEEFE**
*Administrative Assistant to the
Secretary of the Army*

**History.** This publication is a major revision.

**Summary.** This regulation implements DODI 1332.14. It establishes policies, standards, and procedures governing the administrative separation of certain enlisted Soldiers of the Army National Guard/Army National Guard of the United States and the U.S. Army Reserve.

**Applicability.** This regulation applies to Army National Guard/Army National Guard of the United States, and U.S. Army Reserve Soldiers not serving on active duty.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–1. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army internal control process.** This regulation contains internal control provisions in accordance with AR 11–2 and identifies key internal controls that must be evaluated (see appendix B).

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Deputy Chief of Staff, G–1 (DAPE–MP), 300 Army Pentagon, Washington, DC 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Headquarters, Department of the Army, Deputy Chief of Staff, G–1 (DAPE–MPE–IP), 300 Army Pentagon, Washington, DC 20310–0300.

**Distribution.** This publication is available in electronic media only and is intended for command level B for the Active Army and A for the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

## Contents (Listed by paragraph and page number)

**Chapter 1**
**General Provisions,** *page 1*

*Section I*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Statutory authority • 1–5, *page 1*
Objective • 1–6, *page 2*
Separation processing goals • 1–7, *page 3*
DA Form 5138 • 1–8, *page 3*
Medical processing and evaluation • 1–9, *page 3*
Precedence of referral to the Integrated Disability Evaluation System and administrative separation • 1–10, *page 5*

*Section II*
*Authority to Order and Accomplish Separation, page 7*

*This regulation supersedes AR 135–178, dated 12 January 2017; and AR 135–205, dated 11 March 2008.

**UNCLASSIFIED**

**Contents—Continued**

Authority to order separation prior to expiration of service obligation • 1–11, *page 7*
Authority to order separation of Soldiers having more than 18 but fewer than 20 years of qualifying service for retired pay • 1–12, *page 7*
Referrals to Headquarters, Department of the Army • 1–13, *page 8*
Authority to convene administrative separation boards for non-unit Soldiers • 1–14, *page 8*
Actions required of commanders having separation authority regarding Soldiers' incentives and entitlements • 1–15, *page 8*

*Section III*
*Instruction in Benefits of an Honorable Characterization of Service on Discharge, page 8*
Purpose of instruction • 1–16, *page 8*
Presentation of instruction • 1–17, *page 8*
Contents of instruction • 1–18, *page 9*
Applicability and time of instruction • 1–19, *page 9*
Recording • 1–20, *page 9*

*Section IV*
*Bars to Continued Service, page 9*
General • 1–21, *page 9*
Discharge initiation and processing • 1–22, *page 9*

*Section V*
*Mobilization Asset Transfer Program, page 9*
Policy • 1–23, *page 9*
Eligibility for the Mobilization Asset Transfer Program • 1–24, *page 10*
Ineligible for the Mobilization Asset Transfer Program • 1–25, *page 10*
Separation authority determination of mobilization potential • 1–26, *page 10*
Requirements on retention, transfer, or reassignment to the individual ready reserve • 1–27, *page 11*

**Chapter 2**
**Guidelines on Separation and Characterization,** *page 11*

*Section I*
*Separation, page 11*
Scope • 2–1, *page 11*
Guidance • 2–2, *page 11*
Limitations on separation actions • 2–3, *page 12*
Counseling and rehabilitation • 2–4, *page 13*

*Section II*
*Suspension of Separation, page 14*
Suspension • 2–5, *page 14*
Action during the period of suspension • 2–6, *page 14*

*Section III*
*Characterization or Description of Service on Separation, page 14*
Types of characterization or description • 2–7, *page 14*
General considerations • 2–8, *page 14*
Characterization of service • 2–9, *page 15*
Limitation on characterization of service • 2–10, *page 16*
Separation where service is uncharacterized • 2–11, *page 17*

*Section IV*
*Discharge Policy, page 17*
Separation counseling for Soldiers being discharged • 2–12, *page 17*
Orders • 2–13, *page 17*
Separation before expiration of the service obligation • 2–14, *page 18*

**Contents—Continued**

Separation after expiration of the service obligation • 2–15, *page 18*
Effective date of discharge • 2–16, *page 18*
Notification of discharge • 2–17, *page 18*
Notification of discharge of a Soldier who cannot be located or is absent in the hands of civil authorities • 2–18, *page 19*
Certificates • 2–19, *page 19*
Preparation of certificates • 2–20, *page 19*
Amendments and corrections to certificates • 2–21, *page 19*

**Chapter 3**
**Guidelines for Separation,** *page 20*

*Section I*
*Application, page 20*
Scope • 3–1, *page 20*
Guidance • 3–2, *page 20*
Counsel for respondent • 3–3, *page 21*
Screening and counseling of victims of sexual assault • 3–4, *page 22*

*Section II*
*Separation Using the Notification Procedure, page 22*
Notice under the notification procedure • 3–5, *page 22*
Additional notice requirements • 3–6, *page 30*
Response • 3–7, *page 30*
The initiating commander's report to the separation authority • 3–8, *page 31*
Action by intermediate commanders • 3–9, *page 35*
Action by separation authority • 3–10, *page 35*

*Section III*
*Separation Using the Administrative Board Procedure, page 36*
Notice under the administrative board procedure • 3–11, *page 36*
Additional notice requirements • 3–12, *page 44*
Response • 3–13, *page 44*
The initiating commander's report to the separation authority • 3–14, *page 45*
Action by intermediate commanders • 3–15, *page 45*
Waiver • 3–16, *page 45*
Action by the separation authority on commander's recommendation • 3–17, *page 48*
Hearing requirements • 3–18, *page 48*
Action by separation authority on board recommendations • 3–19, *page 50*
Disposition of proceedings • 3–20, *page 52*
Errors and discrepancies noted before accomplishing separation • 3–21, *page 52*
Disposition of the case file • 3–22, *page 52*

*Section IV*
*Additional Provisions Concerning Soldiers Confined by Civil Authorities, page 52*
Proceedings when Soldier is confined by civil authorities • 3–23, *page 52*
Notification requirements • 3–24, *page 52*

**Chapter 4**
**Expiration of Service Obligation,** *page 54*

Basis • 4–1, *page 54*
The military service obligation • 4–2, *page 55*
Retention beyond expiration of service obligation • 4–3, *page 55*
Voluntary separation of Soldiers on indefinite re-enlistments • 4–4, *page 55*
Characterization of service • 4–5, *page 56*
Separation authority • 4–6, *page 56*

Contents—Continued

**Chapter 5**
**Selected Changes in Service Obligations,** *page 56*
Basis • 5–1, *page 56*
Reduction in authorized strength of the U.S. Army Reserve or Army National Guard of the United States • 5–2, *page 56*
Discharge for immediate reenlistment • 5–3, *page 56*
Discharge on enlistment in another component of the U.S. Armed Forces • 5–4, *page 56*
Discharge on appointment as a commissioned or warrant officer • 5–5, *page 57*
Separation of cadets on disenrollment from the Senior Reserve Officers' Training Corps or an Reserve Officers' Training Corps Scholarship Program • 5–6, *page 57*
Reserve Officers' Training Corps cadet early release • 5–7, *page 58*
Discharge of a potential Reserve Officers' Training Corps/Simultaneous Membership Program participant • 5–8, *page 58*

**Chapter 6**
**Convenience of the Government,** *page 58*
Basis • 6–1, *page 58*
Dependency or hardship • 6–2, *page 58*
Pregnancy • 6–3, *page 60*
Surviving sons or daughters • 6–4, *page 60*
Involuntary separation due to parenthood • 6–5, *page 61*
Not medically qualified under procurement medical fitness standards • 6–6, *page 61*
Other designated physical or mental conditions • 6–7, *page 61*
Characterization of service • 6–8, *page 63*
Procedures • 6–9, *page 63*
Separation authority • 6–10, *page 63*

**Chapter 7**
**Defective Enlistments and Reenlistments,** *page 63*
Minority enlistments • 7–1, *page 63*
Erroneous enlistment, reenlistment, and extension • 7–2, *page 64*
Defective enlistments or reenlistments • 7–3, *page 65*
Fraudulent enlistments or reenlistments • 7–4, *page 65*

**Chapter 8**
**Entry Level Performance and Conduct,** *page 66*
Basis • 8–1, *page 66*
Counseling and rehabilitation • 8–2, *page 66*
Characterization and description • 8–3, *page 66*
Procedures • 8–4, *page 66*
Separation authority • 8–5, *page 66*

**Chapter 9**
**Unsatisfactory Performance,** *page 67*
Basis • 9–1, *page 67*
Criteria • 9–2, *page 67*
Counseling and rehabilitation • 9–3, *page 67*
Suspension of favorable personnel action • 9–4, *page 67*
Medical processing and evaluation • 9–5, *page 67*
Characterization of service • 9–6, *page 67*
Procedures • 9–7, *page 67*
Separation authority • 9–8, *page 67*

**Chapter 10**
**Substance Abuse Rehabilitation Failure,** *page 68*
Basis • 10–1, *page 68*
Characterization or description • 10–2, *page 68*
Procedures • 10–3, *page 68*

**Contents—Continued**

Separation authority • 10–4, *page 68*

**Chapter 11**
**Misconduct,** *page 68*
Basis • 11–1, *page 68*
Conviction by civil court • 11–2, *page 69*
Procedures for civil court cases in foreign countries • 11–3, *page 70*
Related separations • 11–4, *page 70*
Counseling and rehabilitation • 11–5, *page 71*
Suspension of favorable personnel action • 11–6, *page 71*
Medical processing and evaluation • 11–7, *page 71*
Characterization of service • 11–8, *page 71*
Procedures • 11–9, *page 71*
Separation authority • 11–10, *page 71*

**Chapter 12**
**Unsatisfactory Participation in the Ready Reserve,** *page 72*
Basis • 12–1, *page 72*
Suspension of favorable personnel action • 12–2, *page 72*
Characterization of service • 12–3, *page 72*
Procedures • 12–4, *page 72*
Separation authority • 12–5, *page 72*

**Chapter 13**
**Secretarial Plenary Authority,** *page 72*
Basis • 13–1, *page 72*
Characterization of service • 13–2, *page 73*
Procedures • 13–3, *page 73*

**Chapter 14**
**Separation for Other Reasons,** *page 73*

*Section I*
*Reasons for Separation, page 73*
Basis • 14–1, *page 73*
Characterization of service • 14–2, *page 75*
Procedures • 14–3, *page 75*
Separation authority • 14–4, *page 75*

*Section II*
*Separation from the Delayed Entry Program, page 75*
Basis • 14–5, *page 75*
Characterization or description • 14–6, *page 75*
Procedures • 14–7, *page 75*
Separation authority • 14–8, *page 76*

*Section III*
*Dropping from the Rolls, page 76*
Sentenced to imprisonment (10 USC 12684(3)) • 14–9, *page 76*
Characterization of service • 14–10, *page 76*
Procedures • 14–11, *page 76*
Separation authority • 14–12, *page 76*

**Chapter 15**
**Failure to Meet Army Body Composition Standards,** *page 76*
Applicability • 15–1, *page 76*
Basis • 15–2, *page 76*

**Contents—Continued**

Counseling and rehabilitation • 15–3, *page 77*
Medical processing and evaluation • 15–4, *page 77*
Characterization or description • 15–5, *page 77*
Separation authority • 15–6, *page 77*

**Chapter 16**
**Qualitative Retention Program,** *page 77*

*Section I*
*Introduction, page 77*
Applicability • 16–1, *page 77*
Objectives • 16–2, *page 77*

*Section II*
*Policy, page 77*
Zones of consideration for qualitative retention • 16–3, *page 77*
Soldiers not to be considered • 16–4, *page 78*
Scheduling of the Qualitative Retention Board • 16–5, *page 78*

*Section III*
*Composition and Conduct of the Qualitative Retention Board, page 78*
Support required • 16–6, *page 78*
Appointing authority • 16–7, *page 83*
Board composition • 16–8, *page 84*
Instructions to board members • 16–9, *page 84*
The board oath • 16–10, *page 86*
Conduct of the board • 16–11, *page 86*
Board recommendations for retention • 16–12, *page 87*
Board reports • 16–13, *page 87*
Protective markings • 16–14, *page 89*

*Section IV*
*Approval, Disapproval, and Disposition, page 89*
Approval or disapproval of board recommendations • 16–15, *page 89*
Safeguard against premature separation from unit membership • 16–16, *page 90*
Disposition of Soldiers not selected for retention • 16–17, *page 90*
Unit reaffiliation policy • 16–18, *page 90*

**Appendixes**

**A.**   References, *page 93*

**B.**   Internal Control Evaluation Checklist, *page 98*

**Table List**

Table 16–1: Sample format for the statistical report of Qualitative Retention Board deliberations to be filed as an enclo-
    sure to the board report , *page 91*

**Figure List**

Figure 1–1: Format for an affidavit of service by mail, *page 5*
Figure 3–1: Sample memorandum for victims of sexual assault statement for administrative separations, *page 21*
Figure 3–2: Format for notification of separation proceedings when the notification procedure is used, *page 26*
Figure 3–2: Format for notification of separation proceedings when the notification procedure is used—Contin-
    ued, *page 26*
Figure 3–2: Format for notification of separation proceedings when the notification procedure is used—Contin-
    ued, *page 26*

## Contents—Continued

Figure 3–3: Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used, *page 30*

Figure 3–3: Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used—Continued, *page 30*

Figure 3–3: Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used—Continued, *page 30*

Figure 3–3: Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used—Continued, *page 30*

Figure 3–4: Format for commanding officer's report to the separation authority, *page 35*

Figure 3–4: Format for commanding officer's report to the separation authority—Continued, *page 35*

Figure 3–4: Format for commanding officer's report to the separation authority—Continued, *page 35*

Figure 3–4: Format for commanding officer's report to the separation authority—Continued, *page 35*

Figure 3–5: Format for notification of separation proceedings when the administrative board procedure is used, *page 40*

Figure 3–5: Format for notification of separation proceedings when the administrative board procedure is used—Continued, *page 40*

Figure 3–5: Format for notification of separation proceedings when the administrative board procedure is used—Continued, *page 40*

Figure 3–6: Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used, *page 44*

Figure 3–6: Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used—Continued, *page 44*

Figure 3–6: Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used—Continued, *page 44*

Figure 3–6: Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used—Continued, *page 44*

Figure 3–7: Format of request for conditional waiver of administrative board proceedings, *page 48*

Figure 3–7: Format of request for conditional waiver of administrative board proceedings—Continued, *page 48*

Figure 3–7: Format of request for conditional waiver of administrative board proceedings—Continued, *page 48*

Figure 3–8: Sample findings and recommendations memorandum, *page 54*

Figure 16–1: Sample selection for retention memorandum, *page 79*

Figure 16–2: Sample non-selection for retention memorandum, *page 80*

Figure 16–3: Sample memorandum of notification, *page 82*

Figure 16–4: Sample response to memorandum of notification, *page 83*

Figure 16–5: Sample memorandum of instruction for the Qualitative Retention Board, *page 86*

Figure 16–5: Sample memorandum of instruction for the Qualitative Retention Board—Continued, *page 86*

Figure 16–6: Report of Qualitative Retention Board, *page 89*

Figure 16–6: Report of Qualitative Retention Board—Continued, *page 89*

## Glossary

# Chapter 1
# General Provisions

**Section I**

**General**

## 1–1. Purpose
This regulation sets policies, standards, and procedures to ensure the readiness and competency of the U.S. Army while providing for the orderly administrative separation of Army National Guard of the United States (ARNGUS) and U.S. Army Reserve (USAR) enlisted Soldiers for a variety of reasons. Readiness is promoted by maintaining high standards of conduct and performance.

## 1–2. References
See appendix A.

## 1–3. Explanation of abbreviations and terms
See the glossary.

## 1–4. Responsibilities
   *a.* The Deputy Chief of Staff, G–1 (DCS, G–1) has Army general staff responsibility for the enlisted separation program and for the formulation, management, and evaluation of manpower and personnel policies, plans, and programs for all components of the Army.
   (1) The Commanding General (CG), U.S. Army Human Resources Command (HRC) is responsible for ensuring that Reserve Component (RC) Career counselors who as a part of the transition life-cycle function, counsel, inform and initially assign those Soldiers with a military service obligation (MSO) who are being released from active duty into ARNGUS units, USAR troop program units (TPUs) or the Individual Ready Reserve (IRR).
   (2) With respect to Reserve enlisted Soldiers under their respective commands, the CG, HRC; CG, Reserve Officers' Training Corps (ROTC) Cadet Command; CG, U.S. Army Aviation Center and Fort Rucker; Commander, U.S. Army Reserve Readiness Training Center; and CG, U.S. Army Recruiting Command will ensure that the policies, standards, and procedures of this regulation are applied consistently, that fact-finding inquiries are conducted properly, that no abuse of authority occurs, and that failure to follow the provisions of this regulation results in appropriate corrective action.
   *b.* The Chief, National Guard Bureau (CNGB) has special staff responsibility for ARNGUS Soldiers. The CNGB will monitor the Army National Guard (ARNG) enlisted separations process set policy, monitor, review, and support the Qualitative Retention Program (QRP) for the ARNGUS consistent with this regulation and applicable Army policy.
   *c.* The Chief, Army Reserve (CAR) has special staff responsibility for USAR Soldiers. The CAR will monitor the USAR enlisted separations process and set policy, monitor, review, and support the QRP for the USAR consistent with this regulation and applicable Army policy.
   *d.* The State Adjutants General and the CG, U.S. Army Reserve Command (USARC), within their areas of jurisdiction, are responsible for the personnel management programs outlined in this regulation. They will implement and administer the QRP. QRP responsibility for ARNGUS Soldiers will not be delegated below State Adjutants General. QRP responsibility for USAR TPU Soldiers will not be delegated below the first USAR general officer commander below the USARC. This authority may not be further delegated.
   *e.* See additional CNGB and CAR responsibilities in paragraph 16–6.

## 1–5. Statutory authority
The following provisions of law contained in Title 10, United States Code (10 USC) pertain to the separation of Reserves of the Army:
   *a.* Section 1176(b) provides for the retention of Reserve enlisted Soldiers in an active status on completion of 18 but fewer than 20 years of qualifying service for retired pay.
   *b.* Section 1177 provides that a medical examination is required for Soldiers deployed in support of a contingency operation, or sexually assaulted during the previous 24 months, and who have been diagnosed by a physician, clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse as experiencing post-traumatic stress disorder (PTSD) or traumatic brain injury (TBI) or who otherwise reasonably allege, based on service while deployed, or based on such sexual assault, the influence of such a condition,  to evaluate a diagnosis of PTSD or

TBI. In addition, prior to being administratively separated with an other than honorable discharge, including an administrative separation in lieu of court-martial, these Soldiers must be evaluated by a physician or behavior health professional regarding the potential influence of PTSD or TBI on the circumstances of the separation and this evaluation must be considered by the separation authority prior to approval of the separation. The medical examination shall assess whether the effects of PTSD or TBI constitute matters in extenuation that relate to the basis for administrative separation under conditions other than honorable or the overall characterization of service of the member as other than honorable. In a case involving PTSD, the medical examination shall be performed by a clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse. In cases involving TBI, the medical examination may be performed by a physician, clinical psychologist, psychiatrist, or other health care professional, as appropriate.

*c.* Section 1214a stipulates that members determined fit for duty in a physical evaluation board (PEB) evaluation may not be involuntarily separated due to unsuitability for deployment or worldwide assignment based on the same medical conditions considered by the PEB.

*d.* Section 10206 provides that members of the Selected Reserve not on active duty will have a comprehensive medical readiness health and dental assessment on an annual basis and execute and submit to the Secretary of the Army on an annual basis documentation of the medical and dental readiness of the member to perform military duties.

*e.* Section 12106 provides that an enlisted member of the ARNGUS who is discharged from the ARNG but not concurrently discharged as a Reserve of the Army automatically becomes a member of the USAR.

*f.* Section 12641 provides for regulatory directives pertaining to standards and qualifications for retention in the RCs and for the disposition of those Soldiers who fail to comply with such standards and qualifications.

*g.* Section 12644 provides for the disposition of those Soldiers determined to be physically unfit for active duty.

*h.* Section 12681 provides that the Secretary of the Army will prescribe regulations for discharge of Reserves of the Army.

*i.* Section 12682 provides that Reserves of the Army who become regular or duly ordained ministers of religion will be discharged upon their request.

*j.* Section 12684 describes the circumstances under which Reserves of the Army may be dropped from the rolls of the Army.

*k.* Section 12685(1) precludes the discharge of Reserves of the Army for cause, except under 10 USC 12684, under other than honorable conditions unless such discharge is the result of an approved sentence of a court-martial or approved findings of a board of officers.

*l.* Section 12685(2) describes other circumstances when a reserve Soldier separated for cause may receive a characterization of service other than under honorable conditions.

## 1–6. Objective

*a.* The separation policies in this regulation promote the readiness of the Army by providing an orderly means to—

(1) Judge the suitability of persons to serve in the Army based on their conduct and their ability to meet required standards of duty performance and discipline.

(2) Maintain standards of performance and conduct through characterization of service in a system that emphasizes the importance of honorable service.

(3) Achieve authorized force levels and grade distribution.

(4) Provide for the orderly administrative separation of enlisted Soldiers in a variety of circumstances.

*b.* Department of the Army (DA) separation policy is designed to strengthen the concept that military service is a calling different from any civilian occupation.

(1) The acquisition of military status involves a commitment to the United States, the Army, fellow citizens, and Soldiers to successfully complete a period of obligated service. Early separation for failure to meet required standards of performance or conduct represents a failure to fulfill that commitment.

(2) It is the policy of DA to provide Soldiers with the training, motivation, and professional leadership that inspires the dedicated Soldier to emulate their predecessors and peers in meeting required standards of performance and conduct.

(3) The Army makes a substantial investment in training, time, equipment, and related expenses when persons enter into military service. Separation prior to completion of an obligated period of service is wasteful because it results in loss of this investment and generates a requirement for increased accessions. Consequently, attrition is an issue of significant concern at all levels of responsibility within the RCs of the Army. Reasonable efforts should be made to identify Soldiers who are likely to be separated early, and to improve their chances for retention through counseling, retraining, and rehabilitation prior to initiation of separation proceedings. Soldiers who do not conform to required standards of conduct and performance and Soldiers who do not demonstrate potential for further military service should be separated to avoid the high costs of continued service in terms of pay, administrative efforts, degradation of morale, and substandard mission performance.

*c.* This regulation provides—

(1) The authority for separation of Soldiers upon expiration of their MSO.

(2) The authority and general provisions governing the separation of Soldiers before the expiration of their service obligation to meet the needs of the RCs of the Army and its Soldiers.

(3) The criteria for governing uncharacterized separations and the issuance of honorable, general (under honorable conditions), or under other than honorable conditions discharges.

*d.* This regulation prescribes policies and responsibilities for the QRP. The separation programs, policies, and procedures in this regulation are conducted without regard to race, color, national origin, religion, sex, gender, or sexual orientation.

## 1–7.  Separation processing goals

*a.* The separation process will be conducted efficiently and in a manner which will afford each Soldier being separated the courtesy, recognition, and consideration deserved by the nature of the service performed. Separation processing must be accomplished in a manner which will enhance the dignity of the individual and leave the departing Soldier with a favorable attitude toward the Army.

*b.* Processing time for separations when the notification procedure is used will not exceed 45 days. Processing time when the administrative board procedure is used will not exceed 90 days. Time will be measured from the date of notification to the Soldier of the proposed separation to the date of separation. Shorter processing times are encouraged.

*c.* Failure to process an administrative separation within these time frames does not create a bar to separation or characterization of service.

## 1–8.  DA Form 5138

*a.* To ensure separation processing goals are met, commanders initiating separation actions under the notification procedure (chap 3, sec II) or the administrative board procedure (chap 3, sec III) will initiate, maintain, and file DA Form 5138 (Separation Action Control Sheet).

*b.* On final disposition of the proceedings, a copy of DA Form 5138 will be filed with each copy of the proceedings.

## 1–9.  Medical processing and evaluation

*a.* Medical examinations are required for Soldiers being processed for separation under chapter 6 (paras 6–3, 6–6, and 6–7 only) and chapter 11. When medical examinations incident to separation under other provisions of this regulation are not required, examinations will be administered, if requested, in writing, by the Soldier or if the Soldier's commander considers it necessary based on the circumstances of the case or when the Soldier's fitness is in doubt. Completion of the physical will not delay separation.

*b.* In addition to a medical examination, mental status evaluations are required for Soldiers being processed for separation under paragraph 6–7 and chapter 11. Commanders referring a Soldier for a mental status evaluation that is not required, must comply with the provisions of DODI 6490.04 and AR 600–20.

*c.* Mental status evaluations will be conducted by privileged mental health providers as defined in DODI 6490.04.

*d.* The medical examination and procedures required by this paragraph to not apply to courts-martial or other proceedings conducted pursuant to the Uniform Code of Military Justice (UCMJ).

*e.* Detailed information about the reasons for considering a Soldier for separation will be provided to attending medical personnel to permit a thorough understanding of the contemplated action. Medical personnel will not be used in an investigative capacity to determine facts relative to a Soldier's behavior.

*f.* Specific responsibilities and procedures for conducting medical examinations and mental status evaluations will be prescribed in pertinent regulatory guidance issued by The Surgeon General.

(1) The Surgeon General's guidance, identified in paragraph 1–9*f*, will include specific guidance directing Army military treatment facilities (MTF) to conduct medical examinations and mental status evaluations for all USAR Soldiers who require an examination under chapter 6 and chapter 11.

(2) The USAR G–1 will publish procedures for coordinating medical examinations and mental status evaluations, at Army MTFs, for Reserve Soldiers, required under chapter 6 and chapter 11.

*g.* In accordance with 10 USC 1177 and AR 40–501, a medical examination is required for any Soldier pending administrative separation who has deployed overseas in support of a contingency operation or who has been sexually assaulted during the previous 24 months, and who is diagnosed by a physician, clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse as experiencing PTSD and/or TBI, or who otherwise reasonably alleges the influence of such a condition based on the service of the Soldier while deployed or based on such sexual assault. The purpose of the medical examination is to: (1) evaluate a diagnosis of PTSD or TBI; and (2) assess whether the effects of PTSD or TBI constitute matters in extenuation that relate to the basis for administrative separation

under conditions other than honorable or the overall characterization of service of the member as other than honorable. In a case involving PTSD, the medical examination shall be performed by a clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse. In cases involving TBI, the medical examination may be performed by a physician, clinical psychologist, psychiatrist, or other health care professional, as appropriate.

*h.* Any Soldier covered by paragraph 1–9*g* will not be administratively separated under conditions other than honorable until the results of the medical examination have been reviewed and acknowledged, in writing, by the separation authority within the instrument (for example, memorandum) ordering, directing, or approving separation. The purpose of the medical examination is to assess whether the effects of PTSD and/or TBI constitute matters in extenuation that relate to the basis for administrative separation under conditions other than honorable or the overall characterization of service of the member as other than honorable. In cases involving PTSD, the medical examination shall be performed by a clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse. In cases involving TBI, the medical examination will be performed by a physician, clinical psychologist, psychiatrist, or other health care professional, as appropriate. The separation authority will indicate they have reviewed the medical examination and mental status evaluation and have determined the Soldier's medical condition(s) [do] or [do not] constitute matters in extenuation that relate to the basis for administrative separation.

*i.* Soldiers being processed for separation under those chapters cited in paragraph 1–9*a*, who refuse to undergo a medical examination or mental status evaluation, when required, will be processed as follows:

(1)  The Soldier will be advised, in writing, that failure to undergo such examination or evaluation will be the basis for the separation action to proceed, despite the absence of such information. Reasonable effort should be made to furnish copies of the notice to the Soldier through personal contact by a representative of the command. If the Soldier cannot be contacted or refuses to acknowledge receipt of the notice, the notice will be sent by registered or certified mail to the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail. A return receipt will be requested. The individual who mails the notification will prepare an Affidavit of Service by Mail (see fig 1–1). This will be inserted in the Soldier's personnel file together with PS Form 3800 (Receipt for Certified Mail).

(2)  Except for separation based on other designated physical or mental conditions (para 6–7), when a Soldier has failed or refused to comply with notification in paragraph 1–9*i*(1), or if the notification was mailed and the Soldier fails to acknowledge receipt, or fails to submit a reply within 30 days, separation action may be taken without a medical examination. A Soldier may not be separated based on other designated physical or mental conditions (para 6–7) without the required medical examination and mental status evaluation. Copies of communications remaining unanswered or returned unclaimed along with the dates and addresses will be included in the recommendations for discharge. Also, a brief description of any other means used to locate or communicate with the Soldier concerned will be included. If a board is required, these documents will be furnished to the board of officers. They will be made a part of the board proceedings.

*j.* Action under the Uniform Code of Military Justice. When Soldiers are under investigation or are charged with an offense under the UCMJ that could result in a punitive discharge (dismissal, dishonorable discharge, or bad conduct discharge), they remain eligible to be referred to and complete the MEB phase of the Disability Evaluation System (DES). Eligibility for the PEB occurs when one of the actions listed below occurs. (The PEB or the United States Army Physical Disability Agency (USAPDA), as applicable, will suspend adjudication or disposition when UCMJ action is initiated during the PEB or USAPDA review phases. These cases remain suspended until final UCMJ action is taken or one of the following events occurs.)

(1)  The investigation ends without charges.

(2)  The officer exercising proper court-martial jurisdiction dismisses the charges.

(3)  The officer exercising proper court-martial jurisdiction refers the charge for trial by summary court-martial.

(4)  Court-martial conviction does not include confinement and discharge or Soldier completes confinement without discharge.

**Affidavit of Service by Mail**

State of (*name*)

County of (*name*)

(*Name of individual who mailed notification*), being duly sworn, deposes and says:  I am the (*job title, for example, personnel officer*) of (*organization and on* (*Day*) (*Month*) (*Year*)) I mailed a notification dated (*Date*), (*for subject, select and enter one or more of the following, as appropriate*):

a.  Subject:  Separation Under AR 135-178;

b.  Subject:  Medical evaluation;

c.  Subject:  Discharge orders.

a true copy of which is attached hereto, via certified mail, restricted delivery, return receipt requested, to (*name of Soldier*) at (*most recent address of Soldier*) that being  the last known address given to the (*Soldier's organization of assignment*) as the one at which official mail would be received by or forwarded to (*him*) (*her*), by depositing the same in an official depository of the U.S. Postal Service at (*location of postal facility*) in a securely wrapped and sealed U.S. postage-and-fees-prepaid envelope addressed to (*him*) (*her*) at said address.

(*Signature and rank of affiant*)

Sworn and subscribed before me this (*Day*) (*Month*) (*Year*).

(*Signature and rank of officer administering oath*)

Attachment
Copy of notification

If the Soldier is a member of the ARNGUS or assigned to a USAR TPU the affidavit together with the receipt showing the certified mail receipt number will be forwarded to the area commander or State adjutant general, as appropriate, for insertion in the member's military personnel records jacket (MPRJ) as an action pending document.

If the Soldier is a member of the USAR assigned to an IMA duty position, or assigned to the IRR, the Standby Reserve, or the Retired Reserve, the affidavit together with the receipt showing the certified mail receipt number will be retained in the separation authority's suspense file as an action pending document.

**Figure 1–1.  Format for an affidavit of service by mail**

## 1–10. Precedence of referral to the Integrated Disability Evaluation System and administrative separation

*a.* Except as specified in paragraphs 1–10*b* and 1–10*c*, processing under the Integrated Disability Evaluation System (IDES) takes precedence over administrative separation action when the MTF commander, attending medical officer, or profiling officer determines that a Soldier has a medical condition that may not meet the medical fitness standards for retention of AR 40–501. For purposes of this paragraph, processing under the IDES means referral of the Soldier to a

medical evaluation board (MEB) under the provisions of AR 40–400 or AR 635–40, as applicable at the time of referral, and when the MEB determines the Soldier does not meet medical retention standards, referral of the Soldier to a PEB under the provisions of AR 635–40. A Soldier is considered referred to the DES when: (1) the Soldier is issued a permanent profile on the DA Form 3349 (Physical Profile) signed by a profiling officer and an approving authority (as indicated on the form) and the profile contains a numerical designator of P3/P4 in any of the serial profile factors for a condition that appears not to meet medical retention standards in accordance with AR 40–501 (see glossary). Any DA form generated for a USAR Soldier in a drilling TPU or AGR status must be validated by the USARC's medical management center before a Soldier's referral into the DES; or (2) the Soldier is referred to the DES as the outcome of military occupational specialty (MOS) Administrative Retention Review (MAR2) evaluation under the provision of AR 635–40. DES processing concludes and administrative separation action may resume when: (1) The Soldier is determined by the MEB to meet medical retention standards and the MEB returns the Soldier to duty (if referral to MEB resulted from MAR2 evaluation, referral to the PEB may be required); or (2) If the Soldier is found physically fit by the PEB. If the Soldier is found physically unfit, the administrative separation action will be abated. For Soldiers referred to the DES under a legacy DES or the expedited DES, see AR 635–40, chapter 4. The precedence of DES processing to administrative separation for separations actions other than fraudulent enlistment and misconduct actions applies regardless of whether the DES process begins before or after initiation of the administrative separation.

*b.* Soldiers being processed for separation under paragraph 7–4 (fraudulent enlistment), or under chapter 11 (misconduct), regardless of the actual characterization of service recommended or received, remain eligible to be referred to the MEB. However, they are ineligible to be referred to the PEB or to otherwise be separated or retired for physical disability unless the Soldier's General Court Martial Convening Authority (GCMCA) abates the separation action, as set forth below.

(1)  When a MEB is required, as described in paragraph 1–10*a*, the administrative separation proceedings will continue but final action by the separation authority will not be taken until after the MEB findings are finalized. The Soldier's commander must notify the Soldier's PEB liaison officer in writing that administrative separation action has been initiated.

(2)  If the MEB finds the Soldier meets medical retention standards, the MTF commander will forward the approved MEB proceedings to the separation authority and unit commander to complete the separation action.

(3)  If the MEB finds the Soldier does not meet medical retention standards, the MTF commander will forward the approved MEB proceedings to the Soldier's GCMCA and unit commander. If the administrative separation action for misconduct or fraudulent enlistment was initiated after the Soldier was referred to the PEB, or after disability separation or retirement was approved for the Secretary of the Army (but before final discharge), PEB processing or disability disposition will be suspended, in accordance AR 635–40. The MTF commander will forward the last level of completed adjudication (informal PEB, formal PEB, or the case approved for the Secretary of the Army) to the GCMCA.

(4)  The GCMCA, upon considering the MEB findings (or the last completed level of PEB findings, as the case may be) may abate the administrative separation action and direct referral of the Soldier to the PEB (or allow PEB evaluation to continue, as applicable).The GCMCA will direct, in writing, that the Soldier will, or will not, be processed through the DES. To process these cases through the DES, when action under the UCMJ has not been initiated, the GCMCA must find one of the following:

*(a)*  The Soldier's medical condition is the direct or substantial contributing cause of the conduct that led to the recommendation for administrative elimination; or

*(b)*  Other circumstances of the individual case warrant disability processing instead of further processing for administrative separation.

(5)  The authority of the GCMCA to determine whether the administrative separation action will proceed or be abated for disability evaluation will not be delegated.

(6)  The GCMCA's signed decision to abate the administrative separation will be transmitted to the MTF commander as authority for referral of the case to a PEB (or disability evaluation/disposition to be completed, as the case may be).

(7)  Copies of the GCMCA's decision, whether to process the administrative separation or processing through the DES, will be furnished to the unit commander and included in the administrative separation packet.

(8)  If the outcome of PEB evaluation is a finding of "Fit for Duty," processing of the administrative separation action through appropriate command channels may resume.

(9)  The GCMCA's signed decision to process a Soldier through the physical disability system will be transmitted to the MTF commander as authority for referral of the case to a PEB. Copies of the GCMCA's decision will be furnished to the unit commander and will be included in the administrative separation proceedings. The unit commander will suspend processing of the administrative separation action pending the PEB. If the Soldier is found physically fit, the administrative separation action will be resumed. If the Soldier is found physically unfit, the administrative separation action will be abated.

*c.* Action under the Uniform Code of Military Justice. When Soldiers are under investigation or are charged with an offense under the UCMJ that could result in a punitive discharge (dismissal, dishonorable discharge, or bad conduct discharge), they remain eligible to be referred to and complete the MEB phase of the DES. Eligibility for the PEB occurs when one of the actions listed below occurs. (The PEB or USAPDA, as applicable, will suspend adjudication or disposition when UCMJ action is initiated during the PEB or USAPDA review phases. These cases remain suspended until final UCMJ action is taken or one of the following events occurs:)

(1) The investigation ends without charges.

(2) The officer exercising proper court-martial jurisdiction dismisses the charges.

(3) The officer exercising proper court-martial jurisdiction refers the charge for trial by summary court-martial.

(4) Court-martial conviction does not include confinement and discharge or Soldier completes confinement without discharge.

*d.* Soldiers who are approved for discharge in lieu of trial by court-martial are ineligible for referral to the MEB and PEB phases of the DES (see AR 635–200). If the Soldier is in the DES process, their DES case will be terminated, and the Soldier will be discharged in lieu of trial by court-martial (see AR 635–40).

## Section II

## Authority to Order and Accomplish Separation

### 1–11. Authority to order separation prior to expiration of service obligation

Except where approval by Headquarters, Department of the Army (HQDA) is required, the following officials are authorized to convene administrative separation boards as required, and to order separation under this regulation. The separation authority delegated to commanders by this regulation will not include the authority to discharge a Soldier under court-martial sentence that includes a dishonorable or bad conduct discharge, prior to the completion of appellate review, unless the discharge is directed by HQDA.

*a. For Army National Guard of the United States Soldiers.* State Adjutants General.

*b. For U.S. Army Reserve Soldiers.*

(1) The CG, HRC for Soldiers under his or her jurisdiction serving in the Individual Mobilization Augmentee (IMA) Program, or assigned to the IRR, the Standby Reserve, or the Retired Reserve. (See para 1–13).

(2) Area commanders (see glossary) for Soldiers attached or assigned to TPUs of the Selected Reserve within their jurisdiction. An area commander may delegate authority to order separations and convene administrative separation boards under this regulation for separation of Soldiers within the jurisdiction of that commander to any subordinate general officer commander who has a Staff Judge Advocate or legal advisor.

(3) When authorized by the State Adjutant General or the officials cited in paragraphs 1–11*b*(1) or (2), unit commanders may order discharge in accordance with paragraph 5–3, for immediate reenlistment under the provisions of AR 140–111 or NGR 600–200, as appropriate.

(4) CG, ROTC Cadet Command, for cadets enrolled in the Senior Reserve Officers' Training Corps (SROTC) and assigned to control group (ROTC). Authority to separate cadets for purposes of appointment (para 5–5) or disenrollment from the ROTC Program (para 5–6), may be delegated to professors of military science.

(5) CG, HRC (AHRC–OPD–R); CG, U.S. Army Aviation Center and Fort Rucker; and Commander, U.S. Army Reserve Readiness Training Center, are authorized to order the discharge of a warrant officer candidate concurrent with the candidate's appointment as a warrant officer (para 5–5).

(6) The CG, U.S. Army Recruiting Command, for Soldiers in the Delayed Entry Program (DEP) (chap 14, sec II), the Reserve DEP, and the Delayed Training Program. CG, U.S. Army Recruiting Command, may delegate to the commander of a U.S. Army recruiting battalion (RBN) separation authority for DEP, Reserve DEP, and Delayed Training Program. An RBN commander may also void enlistments (para 7–2*c*(2)(*e*)) of Soldiers under the commander's jurisdiction.

### 1–12. Authority to order separation of Soldiers having more than 18 but fewer than 20 years of qualifying service for retired pay

*a.* A Soldier having completed 18 but fewer than 20 years of qualifying service for retired pay (10 USC 1176(b)) will not be involuntarily separated (other than for physical disability) without the approval of the Secretary of the Army or his designated representative. All recommendations for involuntary separation of Soldiers in this category will be sent to HQDA (para 1–12) for consideration.

*b.* Cases involving voluntary separation at the request of the Soldier need not be referred to HQDA for approval.

### 1–13. Referrals to Headquarters, Department of the Army

Cases requiring approval by HQDA, to include the Army Secretariat, will be referred to the following:

*a. For Army, National Guard of the United States Soldiers.* Headquarters, Department of the Army, Office of the Chief, National Guard Bureau (NGB–ARP), 2500 Army Pentagon, Washington, DC 20310–2500.

*b. For U.S. Army Reserve Soldiers.* Office of the Chief, Army Reserve (DAAR–ZX), 2400 Army Pentagon, Washington, DC 20310–2400.

### 1–14. Authority to convene administrative separation boards for non-unit Soldiers

When sufficient basis exists to initiate separation action pertaining to USAR Soldiers assigned under jurisdiction of the CG, HRC (para 1–11*b*(1)), the notification and administrative board procedures will apply. Where an investigation or appointment of an administrative separation board is required, the case may be referred for necessary action to an area commander in whose geographical area the member resides. The CG, HRC may convene and conduct administrative separation boards and serve as the separation authority for non-unit Soldiers, including members of the IRR. The CG, HRC will serve as the initiating authority for separation actions of IRR Soldiers and may delegate this authority, in writing, to a division chief in the grade of colonel or the civilian equivalent. The CG, HRC may convene and conduct administrative separation boards and serve as the separation authority for non-unit Soldiers, including members of the IRR.

*a.* Cases referred to area commanders by the CG, HRC will include, to the extent possible, the following: correspondence, statements, Army Military Human Resource Record (AMHRR), and similar related documents. Area commanders may further delegate cases in accordance with paragraph 1–11*b*(2).

*b.* Where a criminal investigation is required in accordance with AR 195–2, the CG, HRC will request the appropriate area commander to contact a military law enforcement agency to perform the investigation. On completion of the investigation, the area commander will initiate further action, as required.

*c.* Except for cases where final action is restricted to HQDA, or cases of Soldiers under the jurisdiction of the CG, HRC. Area commanders are authorized to take final action on board recommendations.

*d.* On completion of the separation board, area commanders will forward the original of the board proceedings with approved disposition to the CG, HRC who will process the separation action, as appropriate, and file the board proceedings in the enlisted Soldier's AMHRR.

### 1–15. Actions required of commanders having separation authority regarding Soldiers' incentives and entitlements

Incentives and entitlements for Reserve membership and participation are prescribed by AR 135–7. Under certain conditions, separation will terminate payment of an incentive and entitlement to a Soldier and may also result in a collection of overpayment or recoupment action from the Soldier. In all cases of voluntary or involuntary separations, commanders will—

*a.* Determine a Soldier's entitlements, if any, in accordance with AR 135–7.

*b.* Initiate termination and recoupment actions where required and/or appropriate.

### Section III

### Instruction in Benefits of an Honorable Characterization of Service on Discharge

### 1–16. Purpose of instruction

*a.* The rate of enlisted Soldiers receiving less than an honorable characterization of service on discharge is a concern of commanders at all levels. Receiving less than an honorable characterization of service can have a lasting adverse effect on the individual Soldier. Every effort must be made to ensure that Soldiers are aware of such consequences. This section prescribes a program of instruction concerning the benefits derived from receiving an honorable characterization of service on discharge from the Army.

*b.* This training should assist commanders in their efforts to minimize misconduct. Many Soldiers gain the false impression that an unfavorable characterization of service can be easily re-characterized by petitioning the Army Discharge Review Board. Many Soldiers can be discouraged from the type of conduct that warrants an unfavorable characterization of service on discharge.

### 1–17. Presentation of instruction

Commanders will ensure that this instruction is presented in a manner that will create the most lasting impression on each Soldier who receives the training.

## 1–18. Contents of instruction

The instruction will include a comprehensive explanation of the following:

*a.* Characterization of service (chap 2, sec III).

*b.* The types of discharge certificates (chap 2, sec IV).

*c.* The possible effects of the various certificates on reenlistment, civilian employment, veterans' employment, veterans' benefits, and related matters.

*d.* The fact that changes or upgrades in discharges may be made if there is a proven error, injustice, or inequity in the discharge. See 10 USC 1552, 10 USC 1553, AR 15–185, and AR 15–180.

## 1–19. Applicability and time of instruction

The instructions cannot be offered to Soldiers assigned to the IRR, Standby, or Retired Reserve. It also is not feasible to offer the instructions to a Soldier serving as an IMA in a non-drilling status. However, the instruction will be presented to enlisted Soldiers assigned to Selected Reserve units of the ARNGUS and the USAR and to drilling IMA Soldiers. It will be given—

*a.* On initial assignment to the IMA duty position or Selected Reserve unit or within 3 months thereafter.

*b.* During the annual orientation of the Soldier's service obligations and participation requirements in accordance with AR 135–91.

*c.* When a Soldier's conduct or performance warrants counseling in accordance with paragraph 2–4.

## 1–20. Recording

The DA Form 2–1 (Personal Qualification Record) of each Soldier receiving instructions in the benefits of receiving an honorable characterization of service on discharge during the annual orientation (para 1–19*b*) will be annotated in item 19 (Specialized Training) as follows: "Bfts of Hon Disch (date)."

## Section IV

## Bars to Continued Service

## 1–21. General

As set forth in paragraph 1–22, commanders will initiate discharge proceedings against Soldiers who have received a local bar to continued service in accordance with AR 140–111 or NGR 600–200. Separation action is not based on the imposition of continued service, but rather on the conduct which forms the basis(es) for the bar.

## 1–22. Discharge initiation and processing

*a.* If the unit commander does not recommend that the bar be removed at the time of the second 6-month review of a locally imposed bar to continued service, they will process the Soldier for discharge in accordance with chapter 9, chapter 11, or another appropriate chapter of this regulation.

*b.* "Processed for separation" means that separation action will be initiated and processed through the chain of command to the separation authority for appropriate action. There must be compliance with paragraph 2–4. The immediate and intermediate commanders will recommend discharge or retention and the characterization of service to be awarded (chap 2, sec III).

## Section V

## Mobilization Asset Transfer Program

## 1–23. Policy

*a.* The purpose of the Mobilization Asset Transfer Program (MATP) is to ensure sufficient trained manpower is available in the IRR of the USAR to meet the Army's personnel requirements under conditions of full mobilization (10 USC 12301(a)). To retain mobilization assets, eligible and qualified Soldiers who have a remaining statutory or contractual MSO (para 4–2) are in, or transferred or reassigned, to the IRR to complete their statutory or contractual MSO, whichever expires later. Soldiers who are not retained, transferred, or reassigned to the IRR under the separation procedures prescribed by this regulation will be discharged from the military service.

*b.* This section and the MATP applies only to ARNGUS and USAR Soldiers who are subject to separation processing under this regulation or for the reasons in NGR 600–200 corresponding to the reasons listed below and who meet the eligibility criteria listed in paragraph 1–24.

(1) Disenrollment from SROTC or an ROTC Scholarship Program (para 5–6).

(2) ROTC cadet early release (para 5–7*b*).

(3) Pregnancy (para 6–3).

(4) Entry level performance and conduct (chap 8).

(5) Unsatisfactory participation (chap 12).

(6) Secretarial plenary authority (chap 13), as determined by HQDA.

(7) Failure to meet Army body composition standards (chap 15).

*c.* The provisions of this section are not applicable to Soldiers being processed for separation under this regulation for reasons other than those shown paragraph 1–23*b*.

## 1–24. Eligibility for the Mobilization Asset Transfer Program

*a. Army National Guard of the United States.*  State military authorities are required to follow the procedures of NGR 600–200 in processing ARNGUS Soldiers for discharge from the ARNGUS prior to expiration of their terms of service. ARNGUS Soldiers who are discharged from the ARNG in accordance with NGR 600–200 become members of the IRR unless they are concurrently discharged from the ARNGUS and the Reserve of the Army under the discharge procedures set forth in this regulation. An ARNGUS Soldier, upon separation from the ARNGUS for any of the reasons cited in paragraph 1–23*b*, is eligible for transfer to the IRR as a Reserve if they meet all of the following conditions:

(1) The separation authority has determined the Soldier possesses the potential for useful service if ordered to active duty under conditions of full mobilization.

(2) The Soldier has completed initial entry training (IET) and has been awarded a MOS.

(3) The Soldier has 3 or more months remaining on their statutory or contractual Reserve obligation.

(4) On separation from the ARNGUS, the Soldier's service will be characterized as honorable or as general, under honorable conditions, or the service is described as uncharacterized.

*b. U.S. Army Reserve.*

(1) A Soldier assigned to the Selected Reserve (TPU or IMA) who is—

*(a)* Subject to separation proceedings for any of the reasons cited in paragraph 1–23*b*, except for entry level performance and conduct (para 1–23*b*(4)), and who meets all of the conditions listed in paragraph 1–24*b*(3), will not be processed for separation under this regulation. The Soldier will be processed for reassignment to the IRR in accordance with AR 140–10; or

*(b)* Processed for separation under this regulation for entry level performance and conduct (para 1–23*b*(4)). The Soldier is eligible for transfer to the IRR if they meet all of the conditions listed in 1–24b(3).

(2) A Soldier assigned to the IRR or Standby Reserve (active list) who is subject to separation proceedings for any of the reasons cited in paragraph 1–23*b*, and who meets all of the conditions listed in 1–24b(3), will be retained in the IRR or Standby Reserve (active list).

(3) All of the following conditions must be met:

*(a)* The separation authority has determined the Soldier possesses the potential for useful service if ordered to active duty under conditions of full mobilization.

*(b)* The Soldier has completed IET and has been awarded an MOS.

*(c)* The Soldier has 3 or more months remaining on their statutory or contractual Reserve obligation.

*(d)* The Soldier's service will be characterized as honorable or as general, under honorable conditions, or the service will be uncharacterized if appropriate (see para 1–27).

## 1–25. Ineligible for the Mobilization Asset Transfer Program

A Soldier is ineligible for retention in or transfer/reassignment to the IRR or Standby Reserve (active list) and will be separated from military service if they meet any of the following criteria:

*a.* Has not completed IET or has not been awarded an MOS.

*b.* Has fewer than 3 months remaining on a statutory or contractual service obligation.

*c.* Is administratively separated with service characterized as under other than honorable conditions, or is released from custody and control of the Army, or is dropped from the rolls.

*d.* Is processed for separation for any other reason than those cited in paragraph 1–23*b*.

*e.* Has been determined, by the separation authority, to possess no potential for useful service under conditions of full mobilization.

## 1–26. Separation authority determination of mobilization potential

*a.* Except in cases where the Soldier has no remaining statutory or contractual service obligation, or where discharge is required by paragraph 1–25, the separation authority must determine whether the Soldier possesses the potential to perform

useful service if ordered to active duty to meet mobilization requirements. The decision to order discharge, transfer, reassignment, or retention, rests with the separation authority and cannot be delegated, although the recommendations of subordinate commanders (paras 3–7 and 3–8) may be considered. The separation authority's determination will be made on a case-by-case basis and included in the decision document.

*b.* The separation authority must exercise sound judgement and prudent discretion in the decision process. The key consideration is the need to retain trained Soldiers in the IRR for mobilization purposes. In making a decision regarding potential for future useful service, the separation authority, must give due consideration to all pertinent factors, including the positive motivation that a full mobilization may have on the Soldier, and the probable maturing effect of the passage of time, especially in the case of young Soldiers. The reason for separation is not in itself a basis for determining that a Soldier has no potential for useful service in the future. The separation authority will direct discharge, in lieu of retention in, or transfer/reassignment to, the IRR or Standby Reserve (active list), only when the circumstances of the individual case clearly indicate the Soldier has no potential for useful service under conditions of full mobilization.

### 1–27.  Requirements on retention, transfer, or reassignment to the individual ready reserve

*a.* The service of a Soldier retained in the IRR or Standby Reserve (active list) under the provisions of the MATP will not be characterized.

*b.* The service of a Soldier reassigned to the IRR for a reason cited in paragraph 1–23*b*, under the provisions of AR 140–10 will not be characterized.

*c.* The service of a Soldier transferred to the IRR for a reason cited in paragraph 1–23*b*, will be characterized as honorable or as general, under honorable conditions in accordance with paragraph 2–9, unless an uncharacterized description of service is required by paragraph 2–11*a*.

*d.* On transfer to the IRR, a Soldier will be notified of the following:

(1)  The date on which the MSO will expire and the Soldier will be discharged.

(2)  The characterization of service on transfer to the IRR.

(3)  That the character of service on completion of the MSO and discharge from the USAR will be the same. If, upon transfer to the IRR, the Soldier's service was characterized as general, under honorable conditions, or uncharacterized, the Soldier must perform a period of service that is characterized as honorable to receive an honorable discharge upon completion of the MSO.

(4)  The date by which the Soldier must submit evidence of satisfactory completion of service characterized as honorable. If the Soldier—

*(a)* Submits evidence of completion of service characterized as honorable, the Soldier's service will be characterized as honorable upon discharge.

*(b)* Submits evidence of completion of service characterized as honorable, but if a discharge less than an honorable is proposed, the notification procedure (chap 3, sec II) will be used. An administrative board is not required at this point regardless of the Soldier's years of service.

*(c)* Does not submit such information on or before the date specified in the notice, no further proceedings are required. The character of service at the completion of the MSO will be the same as the character of service issued when transferred to the IRR.

## Chapter 2
## Guidelines on Separation and Characterization

### Section I

### Separation

### 2–1.  Scope

This chapter provides general guidance, which applies when referenced under the reasons for separation in this regulation. Further guidance is set forth under the specific reasons for separation in chapters 4 through 15.

### 2–2.  Guidance

*a.* There is a substantial investment in the training of Soldiers enlisted in the Army. As a general matter, reasonable efforts at rehabilitation should be made prior to initiation of separation proceedings.

*b.* Unless separation is mandatory, the potential for rehabilitation and further useful military service, will be considered by the separation authority, and where applicable, the administrative separation board. If separation is warranted despite the potential for rehabilitation, consideration should be given to suspension of the separation, if authorized.

*c.* Counseling and rehabilitative efforts are a prerequisite to initiation of separation proceedings only as far as expressly set forth under the specific requirements for the separation. An alleged or established inadequacy in previous rehabilitation efforts does not bar separation.

*d.* The following factors may be considered on the issue of retention or separation, depending on the circumstances of the case:

(1) The seriousness of the circumstances forming the basis for initiation of separation proceedings, and the effect of the Soldier's continued retention on military discipline, good order, and morale.

(2) The likelihood of continuation or recurrence of the circumstances forming the basis for initiation of separation proceedings.

(3) The likelihood that the Soldier will be a disruptive or undesirable influence in present or future duty assignments.

(4) The ability of the Soldier to perform duties effectively in the present and in the future, including potential for advancement or leadership.

(5) The Soldier's rehabilitative potential.

(6) The Soldier's entire military record. This includes—

*(a)* Past contributions to the Army, assignments, awards and decorations, evaluation ratings, and letters of commendation.

*(b)* Memorandum of reprimand or admonition, counseling records, records of non-judicial punishment, records of conviction by court-martial and records of involvement with civilian authorities.

*(c)* Any other matter deemed relevant by the board or the separation authority. This may include specialized training, duties, and experience of persons entrusted by this regulation with making recommendations or decisions on separation or retention.

*(d)* Adverse information from a prior enlistment or period of military service only when such information would have a direct and strong probative value in determining whether separation is appropriate. This would include records of non-judicial punishment and convictions by court-martial. Such information ordinarily will be used only in those cases involving conduct repeated over an extended time or in cases resulting from a bar to continued service. In unusual situations, conduct from a prior enlistment that does not constitute a pattern of conduct that is manifested over an extended period of time, may be considered in determining whether retention or separation is warranted. An example is where a single incident of misconduct occurring in the prior period of service, by itself, warrants separation and the officials in the Soldier's chain of command neither knew, nor reasonably should have known, of the conduct at the time the Soldier reenlisted.

*(e)* Isolated incidents and events that are remote in time normally have little probative value in determining the issue of separation or retention.

*(f)* Criminal history information from personnel security investigative reports requested within the first 90 days of a Soldier's initial enlistment may be used to support separation proceedings initiated under chapter 7. Use of personnel security investigative reports in connection with all other separation proceedings is prohibited unless specific authorization is granted in accordance with AR 380–67. Requests for such authorization may be submitted case-by-case through command channels to HQDA, ARNGUS, NGR–ARP/Office of the Chief, Army Reserve (OCAR), Department of the Army, Army Reserve (DAAR) (para 1–13).

## 2–3. Limitations on separation actions

*a.* A Soldier may not be separated based on the following:

(1) Conduct that has been the subject of judicial proceedings resulting in an acquittal or action having the effect thereof, except in the circumstances described in paragraphs 2–3*a*(1)*(a)* through (c). Only HQDA will determine that an action does not have the effect of an acquittal. Requests for such a determination must be submitted to HQDA, ARNGUS, NGR–ARP/OCAR (DAAR) (para 1–12).

*(a)* When such action is based on a judicial determination not going to the guilt or innocence of the respondent; or

*(b)* When the judicial proceeding was conducted in a State or foreign court and the separation is approved by HQDA, ARNGUS, NGR–ARP/OCAR (DAAR) (para 1–13); or

*(c)* When acquittal from the judicial proceedings was based on a finding of not guilty only by reason of lack of mental responsibility. A Soldier in this category normally will be separated under Secretarial plenary authority (chap 13) unless separation for disability is appropriate.

(2) Conduct that has been the subject of a prior administrative separation board in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct, except when the conduct is the subject of a rehearing ordered on the basis of fraud or collusion; or

(3) Conduct that has been the subject of an administrative separation proceeding resulting in a final determination of a separation authority that the member should be retained, except in the following circumstances:

*(a)* When there is subsequent conduct or performance forming the basis, in whole or in part, for a new proceeding; or

*(b)* When there is new or newly discovered evidence that was not reasonably available at the time of the prior proceeding; or

*(c)* When the conduct is the subject of a rehearing ordered on the basis of fraud or collusion.

*b.* No convening authority will direct separation if a board recommends retention, nor will a characterization of service less favorable than that recommended by the board be directed. However, a convening authority may direct retention when separation is recommended or may direct a characterization of service more favorable than that recommended (para 3–18*f*).

## 2–4. Counseling and rehabilitation

*a. General.* Commanders must make reasonable efforts to identify Soldiers who are likely candidates for early separation and to improve their chances for retention through counseling, retraining, and rehabilitation before starting separation action. These actions are prerequisite for initiating action to separate a Soldier for one of the following reasons:

(1) Involuntary separation due to parenthood (para 6–5).

(2) Other designated physical or mental conditions (para 6–7).

(3) Entry level performance and conduct (chap 8).

(4) Unsatisfactory performance (chap 9).

(5) Minor disciplinary infractions or a pattern of misconduct (paras 11–1*a* and 12–1*b*).

(6) Failure to meet Army body composition standards (chap 15).

*b. Counseling.* When a Soldier's conduct or performance approaches the point where a continuation of such conduct or performance would warrant initiating a separation action for one of the reasons in paragraph 2–4*a*, the Soldier will be counseled by a responsible person about their deficiencies. One counseling session is not sufficient to document poor conduct or performance necessitating a separation. Multiple counseling sessions that demonstrate a pattern is appropriate. The Soldier's counseling or personnel records must establish that the Soldier was afforded a reasonable opportunity to overcome these deficiencies. Such factors as the length of time that has elapsed since the prior counseling, the Soldier's conduct, and performance during that period, and the commander's assessment of the Soldier's potential for becoming a fully satisfactory Soldier should be considered.

(1) Counseling will include, but not be limited to, the following:

*(a)* Reasons for counseling.

*(b)* The fact that continued behavior of a similar nature or additional misconduct may result in the Soldier's separation. The characterization of service that may be issued and the effect of each type if such action is taken and separation accomplished. Each counseling session will be recorded in writing (to include date and by whom counseled). When, after a reasonable effort, the Soldier cannot be located for counseling in person, the counseling information will be furnished to them by certified mail, return receipt requested, addressed to the latest mailing address provided to the command by the Soldier. If the Soldier does not respond by the date specified in the memorandum, or the memorandum-is returned as "undeliverable as addressed," "moved—left no forwarding address," or similar marking, the counseling requirement will be considered to have been satisfied.

*c. Rehabilitation.* If practical, one of the following measures will be taken:

(1) Soldiers assigned to the ARNGUS or USAR TPUs will be reassigned at least once if within commuting distance, with a minimum of 2 months in each ARNGUS unit or USAR TPU.

(2) If case reassignment is restricted (for example, small, independent, or isolated unit), or the Soldier is assigned to the IRR or Standby Reserve, the commander will ensure that proper alternate rehabilitation measures are employed, if feasible.

*d. Waivers.* The officer exercising separation authority may waive the requirement for a rehabilitative reassignment. The exercise of waiver authority may be withheld by a higher separation authority as to a particular case or class of cases. Action to withhold waiver authority will be in writing and will be valid until revoked in writing. The requirement for a rehabilitative reassignment may be waived when it is determined that—

(1) Reassignment is not feasible because there are no appropriate units within a reasonable commuting distance of the Soldier's residence; or

(2) Further duty of the Soldier would create serious disciplinary problems, or create a hazard to the military mission or to the Soldier, or would seriously affect unit readiness; or

(3) Further duty of the Soldier would be inappropriate because the Soldier is resisting all rehabilitation attempts or that rehabilitation would not produce the quality Soldier desired by the ARNGUS and USAR.

## Section II
## Suspension of Separation

### 2–5.  Suspension

*a.*  To afford a highly deserving Soldier a probationary period to demonstrate successful rehabilitation prior to expiration of the Soldier's service obligation, the separation authority or a higher authority may suspend execution of an approved separation for a period not to exceed 12 months. However:

(1)  Suspension of a discharge is not authorized in a case when the sole reason for separation is fraudulent entry; or

(2)  When there are approved reasons for separation in addition to fraudulent entry, suspension may be authorized only when a waiver of the fraudulent entry is obtained, and the suspension pertains to reasons for separation other than the fraudulent entry.

*b.*  During the period of suspension, the Soldier will be afforded an opportunity to demonstrate the capability of behaving properly and performing assigned duties efficiently under varying conditions.

*c.*  On satisfactory completion of the probationary period, or earlier, if rehabilitation has been achieved, or at the end of the Soldier's period of obligated service, the authority that suspended the separation will remit execution of the approved separation.

### 2–6.  Action during the period of suspension

During the period of suspension, if the Soldier engages in conduct similar to that for which separation was approved but suspended, or otherwise fails to meet the appropriate standards of conduct and duty performance, the commander concerned, the convening authority, or the separation authority, whichever is appropriate, will take one of the following actions:

*a.*  Initiate punitive or new administrative action notwithstanding the suspension of the execution of the approved separation, or

*b.*  Advise the Soldier, in writing, that vacation action is being considered and the reasons which warrant such consideration. The Soldier will be given an opportunity to consult with counsel and to submit a statement, in writing, to the separation authority. Failure to respond within 20 calendar days from receipt of the notification of the proposed vacation of the suspension shall constitute a waiver of this right. If the Soldier identifies specific legal issues for consideration by the separation authority, the information will be reviewed by a judge advocate, and the separation authority will—

(1)  Vacate suspension of approved separation and execute separation; or

(2)  Continue to suspend execution of the approved separation.

## Section III
## Characterization or Description of Service on Separation

### 2–7.  Types of characterization or description

*a.*  At separation, the following types of characterization of service or description of separation are authorized under this regulation:

(1)  Separation with characterization of service as honorable, general (under honorable conditions), or under other than honorable conditions.

(2)  Separation with an uncharacterized description of service when separated—

*(a)*  In an entry level status; or

*(b)*  By order of release from custody and control of the Army by reason of void enlistment; or

*(c)*  By being dropped from the rolls of the Army.

*b.*  Any of the types of characterization or description of service listed in paragraph 2–7*a*, may be used in appropriate circumstances unless a limitation is set forth in this section or in chapters 4 through 15.

*c.*  Characterization of service as a result of administrative action is governed by this regulation, and the service of Soldiers is either characterized or uncharacterized when they are separated from the ARNGUS or USAR. However, discharge certificates are issued only to those Soldiers whose service is characterized as honorable in accordance with paragraph 2–19.

### 2–8.  General considerations

*a.*  The characterization of service upon separation is of great significance to the Soldier. It must accurately reflect the nature of service performed. Eligibility for veterans' benefits provided by law, eligibility for reentry into the military service, and acceptability for employment in the civilian community may be affected by the service characterization. The

type of discharge and character of service will be determined solely by the military record during the current enlistment or period of service, plus any extension thereof, from which the Soldier is being separated. The Soldier's performance of duty and conduct must be accurately evaluated. The evaluation must be based on the overall period of service and not on any isolated actions or entries on DA Form 2–1. Separations where the service has been characterized as honorable or general, under honorable conditions entitle a Soldier to Federal rights and benefits as provided by law. However, separation characterized as under other than honorable conditions could deprive the Soldier of veterans' benefits administered by the Department of Veterans Affairs. A determination by that agency is required in each case.

*b.* Characterization at separation will be based upon the quality of the Soldier's service, including the reason for separation and guidance set forth in paragraph 2–9, subject to the limitations under the various reasons for separations. The quality of service will be determined in accordance with standards of acceptable personal conduct and performance of duty for military personnel as found in the UCMJ, Army regulations, and the time-honored customs and traditions of the Army.

*c.* The quality of service of a Reserve Soldier in an active status is affected adversely by conduct that is of a nature to bring discredit on the Army or is prejudicial to good order and discipline, regardless of whether the conduct is subject to UCMJ jurisdiction. Characterization may be based upon conduct in the civilian community, and the burden is on the Soldier to demonstrate that such conduct did not adversely affect their service.

*d.* The reasons for separation, including the specific circumstances that form the basis for the separation, shall be considered on the issue of characterization. As a general matter, characterization will be based on a pattern of behavior rather than an isolated incident. There are circumstances, however, in which the conduct or performance of duty reflected by a single incident, provides the basis for characterization.

*e.* Due consideration will be given to the Soldier's age, length of service, grade, aptitude, physical, and mental condition, and the standards of acceptable conduct and performance of duty.

## 2–9. Characterization of service

The following are characterizations of service authorized by this regulation:

*a. Honorable.* An honorable characterization is appropriate when the quality of the Soldier's service generally has met the standards of acceptable conduct and performance of duty for Army personnel, or is otherwise so meritorious that any other characterization would be clearly inappropriate.

(1) An honorable characterization may only be awarded a Soldier upon completion of their service obligation, or where required under specific reasons for separation, unless an uncharacterized description is warranted.

(2) When a Soldier is discharged before expiration of the service obligation for a reason for which an honorable characterization is discretionary, the following considerations apply:

*(a)* Where there have been infractions of discipline, the extent thereof should be considered as well as the seriousness of the offense(s).

*(b)* A Soldier will not necessarily be denied an honorable characterization solely by reason of a specific number of convictions by court-martial or actions under the UCMJ, ART. 15.

*(c)* Conviction by a general court-martial or by more than one special court-martial does not automatically rule out the possibility of awarding an honorable characterization of service.

*(d)* An honorable characterization may be awarded when disqualifying entries in the Soldier's military record are outweighed by subsequent honorable and faithful service over a greater period of time during the current term of service.

*(e)* It is a pattern of behavior and not an isolated instance which should be considered the governing factor in determining the character of service.

*(f)* Unless otherwise ineligible, a Soldier may receive an honorable characterization of service if they have, during their current enlistment, or any extension thereof, received a personal decoration.

*b. General (under honorable conditions).* If a Soldier's service has been honest and faithful, it is appropriate to characterize that service as general, under honorable conditions. Characterization of service as general (under honorable conditions) is warranted when significant negative aspects of the Soldier's conduct or performance of duty outweigh positive aspects of the Soldier's military record.

(1) When authorized, a characterization of under honorable conditions is awarded to a Soldier whose military record is satisfactory but not sufficiently meritorious to warrant an honorable discharge.

(2) A characterization of under honorable conditions may be issued only when the reason for the Soldier's separation specifically allows such characterization. It will not be issued to Soldiers upon separation for expiration of their service obligation.

*c. Under other than honorable conditions.* Service may be characterized as under other than honorable conditions only when discharge is for misconduct, fraudulent entry, unsatisfactory participation, or security reasons, and under the following circumstances:

(1) When the reason for discharge is based upon a pattern of behavior, or one or more acts or omissions, that constitutes a significant departure from the conduct expected of Soldiers. Examples of factors that may be considered include the following:

*(a)* Use of force or violence to produce serious bodily injury or death.

*(b)* Abuse of a position of trust.

*(c)* Disregard by a superior of customary superior-subordinate relationships.

*(d)* Acts or omissions that endanger the security of the United States or the health and welfare of other Soldiers.

*(e)* Deliberate acts or omissions that seriously endanger the health and safety of other persons.

(2) A discharge where service is characterized as under other than honorable conditions will be directed only by a general officer in command who has a judge advocate or legal advisor available to the command, or a higher authority in accordance with paragraphs 1–11*a* and 1–11*b*(1) and (2).

(3) No Soldier will be discharged in accordance with this regulation, with service characterized as under other than honorable conditions, unless they are afforded the right to present their case before an administrative separation board. The Soldier will be afforded the advice and assistance of counsel. Such discharge must be supported by approved board findings, and an approved board recommendation for discharge under other than honorable conditions.

(4) As an exception to paragraph 2–9*c*(3), a discharge with service characterized as under other than honorable conditions may be issued without board action if the Soldier waives their right to board action.

(5) When a Soldier is to be discharged under other than honorable conditions, the separation authority will direct an immediate reduction to private E–1, in accordance with AR 600–8–19.

## 2–10.  Limitation on characterization of service

Characterization will be determined solely by the Soldier's military record, which includes the Soldier's behavior and performance of duty during the current enlistment or period of service to which the separation pertains, plus any extensions of service prescribed by law or regulation or effected with the consent of the Soldier. The exceptions are provided in this paragraph. In determining characterization or description of service, the following will be used as guidelines:

*a.* A Soldier will receive an honorable characterization of service if limited use evidence (AR 600–85) is initially introduced by the Government in the separation proceedings, and the separation is based on those proceedings. (See para 2–10*f* and para 3–17*f*.) The separation authority will consult with the servicing Judge Advocate in cases involving limited use evidence.

*b.* The following will not be considered in determining the character of service:

(1) Pre-service activities, except in proceedings for fraudulent enlistment (para 7–4) when misrepresentations, including omissions of facts which, if known, would have prevented, postponed, or otherwise affected the Soldier's eligibility for enlistment.

(2) Prior service activities including but not limited to records of conviction by courts-martial, records of non-judicial punishment, records of absence without leave, or commission of other offenses for which punishment was not imposed. To the extent that such matters are considered on the issue of retention or separation, the record of proceedings will reflect express direction that such information will not be considered on the issue of characterization. As an exception, personal decorations received during prior service may be considered in characterizing the current period of service.

*c.* The limitations in paragraph 2–3, as to matters that may be considered on the issue of separation are applicable to matters that may be considered on the issue of characterization.

*d.* When the sole basis for separation is a serious offense that resulted in a conviction by a court-martial (to include a court-martial conducted pursuant to a state code of military justice), authorized to but not imposing a punitive discharge, the Soldier's service may not be characterized under other than honorable conditions unless such characterization is approved by HQDA, ARNGUS, NGR–ARP/OCAR (DAAR). Requests for approval will be sent to the HQDA, ARNGUS, NGR–ARP/OCAR (DAAR) addresses shown in paragraph 1–13.

*e.* The conduct of a Soldier in the civilian community may form the basis for characterization under other than honorable conditions only if such conduct directly affects the performance of military duties. Such conduct may form the basis of characterization as general, under honorable conditions, only if such conduct has an adverse impact on the overall effectiveness of the Army, including military morale and efficiency.

*f.* A Soldier's voluntary submission to a treatment and rehabilitation program (for personal use of drugs) and evidence provided voluntarily by the Soldier concerning personal use of drugs as part of initial entry into such a program may not be used against the Soldier on the issue of characterization. This limitation does not preclude the following actions:

(1) The introduction of evidence for impeachment or rebuttal purposes in any proceeding in which the evidence of drug abuse (or lack thereof) has been first introduced by the Soldier; and

(2) Taking action based on independently derived evidence, including evidence of drug abuse after initial entry into the treatment and rehabilitation program.

*g.* The results of a mandatory urinalysis may be used on the issue of characterization unless prohibited by AR 600–85.

## 2–11.  Separation where service is uncharacterized

*a.  Entry level status.*  Service will be described as uncharacterized if separation processing is initiated while a Soldier is in an entry level status (see glossary), except in the following circumstances:

(1)  When characterization under other than honorable conditions is authorized under the reason for separation and is warranted by the circumstances of the case; or

(2)  The Secretary of the Army, or the Secretary's designated representative, on a case-by-case basis, determines that characterization of service as honorable is clearly warranted by the presence of unusual circumstances involving personal conduct and performance of military duty. This characterization is authorized when the Soldier is separated—

*(a)*  By reason of selected changes in service obligations (chap 5); or

*(b)*  For the convenience of the Government (chap 6); or

*(c)*  Under the Secretarial plenary authority (chap 13).

*b.  Void enlistments.*  A Soldier will not receive a discharge, characterization of service at separation, or an uncharacterized description of service, if the enlistment is void except when a constructive enlistment arises and such action is required under paragraph 2–11*b*(3). If characterization or an uncharacterized description of service is not required, the separation will be described as an order of release from custody and control of the Army.

(1)  An enlistment is void in the following circumstances:

*(a)*  If it was effected without the voluntary consent of a person who has the capacity to understand the significance of enlisting in the Army. This includes enlistment of a person who is intoxicated or insane at the time of enlistment.

*(b)*  If the person is under 17 years of age.

*(c)*  If the person is a deserter from another military service.

(2)  Although an enlistment may be void at its inception, a constructive enlistment will arise in the case of a person serving in the Army who—

*(a)*  Submitted voluntarily to military authority.

*(b)*  Met the mental competency and minimum age statutory qualifications, at the time of voluntary submission to military authority.

*(c)*  Received military pay or allowances.

*(d)*  Performed military duties.

(3)  If an enlistment that is void at its inception is followed by a constructive enlistment within the same term of service, characterization of service or description of separation will be in accordance with paragraphs 2–8 and 2–9, as appropriate. However, if the enlistment was void by reason of desertion from another military service, the Soldier will be separated by an order of release from the custody and control of the Army regardless of any subsequent constructive enlistment. A constructive enlistment does not preclude the Army from either retaining the Soldier or separating the member based on the circumstances that occasioned the original void enlistment or any other reason for separation.

*c.  Dropped from the rolls.*  A Soldier may be dropped from the rolls of the Army when such action is authorized in accordance with chapter 14, section III and a characterization of service or other description of separation is not authorized or warranted.

## Section IV

## Discharge Policy

## 2–12.  Separation counseling for Soldiers being discharged

The purpose and authority of the Army Discharge Review Board  (ADRB) (AR 15–180) or the Army Board for Correction of Military Records (ABCMR)  (AR 15–185) will be explained during separation processing, except when the separation is for immediate reenlistment. Counseling will include advice that a discharge under other than honorable conditions is a conditional bar to benefits administered by the Department of Veterans Affairs, notwithstanding any action by the ADRB or the ABCMR. Such explanation may be furnished to the Soldier in written form. Failure on the part of the Soldier to receive or understand this counseling does not create a bar to separation or affect characterization.

## 2–13.  Orders

*a.*  The following order formats prescribed by AR 600–8–105 will be used for separations processed under this regulation:

(1)  Order Format 500 where discharge is directed in accordance with this regulation, to include expiration of the service obligation and immediate reenlistment.

(2) Order Format 502 where ROTC cadets are discharged to accept a commission.

(3) Order Format 505 where a Soldier is released from the custody and control of the Army.

(4) Order Format 540 where a Soldier is dropped from the rolls.

*b.* Once a Soldier receives their orders, by actual or constructive delivery, such orders may not be revoked except in one or more the following circumstances:

(1) The orders are revoked by proper authority, either orally or in writing, prior to the effective date of the discharge. Orally revoked orders should be documented in writing within 30 days of the revocation.

(2) When one or more of the exceptions to the doctrine of administrative finality exist (that is, fraud; mistake of law; mathematical miscalculation; and/or substantial new evidence discovered contemporaneously within a short time following the action).

*c.* After the effective date of discharge, the separation authority may amend orders only to correct administrative errors, such as errors concerning grade, social security number, or misspelled name.

## 2–14. Separation before expiration of the service obligation

*a.* A discharge for the purpose of complete separation from military service terminates a Soldier's statutory and contractual MSO on the effective date of the discharge.

*b.* An enlisted ARNGUS Soldier who is discharged from the ARNG and not concurrently discharged as a Reserve of the Army automatically becomes a member of the USAR. An enlisted Selected Reserve Soldier who is discharged from the Selected Reserve or leaves active duty status and not concurrently discharged as a Reserve of the Army becomes a member of the IRR if eligible for and desires to maintain Reserve of the Army status.

*c.* A discharge issued only for the purpose of a change in status with continuing military service does not terminate a statutory MSO. Some examples of such changes in status are—

(1) Discharge from enlisted status upon appointment as an officer.

(2) Discharge from a RC upon enlistment in a regular component.

(3) Discharge upon transfer between RCs.

(4) Discharge for the purpose of reenlistment in the same component.

## 2–15. Separation after expiration of the service obligation

*a.* A Soldier is entitled to be discharged on the expiration of their service obligation, and normally will be discharged unless action is taken to retain the Soldier beyond such expiration date.

*b.* Retention beyond the expiration date of a service obligation may be voluntary or involuntary.

(1) Soldiers may voluntarily remain beyond the expiration date of a service obligation if they are undergoing required health care or are being processed for physical disability separation. They may also consent to remain beyond the expiration date if they are subject to criminal jurisdiction of a foreign court but not physically confined by that country.

(2) Soldiers may be involuntarily retained beyond expiration of their service obligation only when action with a view toward trial by court-martial has been taken by the appropriate authorities. Such action must have been initiated before the Soldier's service obligation expired.

*c.* Soldiers properly held beyond expiration of their service obligation, whether voluntarily or involuntarily, retain their military status and continue to be subject to the UCMJ until formally separated by the appropriate authorities.

*d.* Soldiers otherwise eligible for separation on expiration of their service obligation will not be retained to satisfy a debt to the United States Government or to an individual, or to process and complete an involuntary administrative separation action in accordance with this regulation. On the other hand, if the Army does not affirmatively act to separate a Soldier and the Soldier does not demand discharge, but rather remains on duty and accepts pay and benefits, the military status of that Soldier continues.

## 2–16. Effective date of discharge

The effective date of discharge is 2400 hours on the date of notice of discharge (see para 2–17). When discharge is for change of military status, the effective date of the order will be the day prior to the date of the Soldier's entry into a new military status. When discharge is under the provisions of para 14–1*c*, the effective date of the order will be the last day of the month during which maximum allowable age is reached.

## 2–17. Notification of discharge

Notice of discharge may be either—

*a.* Actual, as by delivery to the Soldier of the discharge order or certificate; or

*b.* Constructive, when actual delivery of the discharge order cannot be accomplished due to the absence of the Soldier to be discharged.

(1) If the Soldier is assigned to a Selected Reserve unit or duty position, receipt of the order directing his or her discharge by the Soldier's organization at the proper station of the organization will be sufficient notice. The date of receipt of the order by the Soldier's organization and the reason actual notice was not given will be entered by endorsement on the back of the discharge order. A confirmed copy of the annotated discharge order will be sent by registered or certified mail to the Soldier at the most recent address provided by the Soldier for that purpose. The annotated order, reflecting the date of mailing to the Soldier, will be included in the personnel file forwarded to the Commander, U.S. Army Human Resources Command (AHRC–CIS–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5401.

(2) If the Soldier is assigned to the IRR, Standby, or Retired Reserve, the CG, HRC (AHRC–PAR), will issue an annotated discharge order. The order will be annotated on the back, by endorsement, to show that the order was mailed to the Soldier at the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail and the date the order was mailed. The annotated order will be sent by registered or certified mail. A copy of the annotated order, reflecting the date of mailing to the Soldier, will be placed in the Soldier's AMHRR.

(3) If a mailed discharge order is returned as "unclaimed" or "undeliverable," the returned order and its accompanying envelope will be retained in the Soldier's file.

(4) The discharge order of a mentally incompetent Soldier will be delivered to the Soldier's legal guardian.

## 2–18.  Notification of discharge of a Soldier who cannot be located or is absent in the hands of civil authorities

When discharge has been ordered by the separation authority and the Soldier cannot be located or is absent in the hands of civil authorities subsequent to the issuance of the discharge orders, the discharge may be executed regardless of absence. The notification procedure in paragraph 2–17, is applicable.

## 2–19.  Certificates

*a.* Discharge certificates will be furnished to Soldiers when they are honorably discharged. The discharge certificate is DD Form 256A (Honorable Discharge Certificate).

*b.* Discharge certificates will not be issued under the following conditions:

(1) Where service is characterized as general, under honorable conditions or as under other than honorable conditions.

(2) Where the service is uncharacterized.

(3) On discharge for immediate reenlistment.

(4) On discharge from a cadet status on appointment as an officer or warrant officer.

## 2–20.  Preparation of certificates

*a. Number of copies.*  Discharge certificates will be issued in the original only.

*b. How prepared.*  Entries on discharge certificates will be typewritten. Only black typewriter ribbon ink will be used.

*c. Entries.*  Entries on the discharge certificates will be as follows:

(1) On the line provided under the words "This is to certify that," enter the Soldier's name in signature order, followed by their social security number and grade, and "USAR". When the discharge certificate is prepared by automated systems, the Soldier's name may be entered in last name, first name, and middle initial sequence.

(2) Enter effective date of discharge in space provided. This date must agree with the effective date of discharge shown in the discharge order.

(3) Discharge certificates normally will be authenticated by a commissioned officer. However, the separation authority or other appropriate commander may delegate this authority to a warrant officer or noncommissioned officer (NCO) in the rank/grade of sergeant first class and above or DA Civilian in the grade of general schedule (GS)–7 and above. The designated official will sign the certificate in the space provided. Signature blocks will be in accordance with AR 25–50.

## 2–21.  Amendments and corrections to certificates

The discharge certificate as originally prepared cannot be altered or amended after the effective date of discharge. Correction of cosmetic or typographical administrative errors will be made on written application of the individual to CG, HRC. Applications for review of the type of discharge certificate awarded under this regulation will be submitted by the individual to the Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington VA 22202-3531on DD Form 293 (Application for Review of Discharge from the Armed Forces of the United States) or electronically at http://www.army.arbainquiry@mil.mil for consideration by the Army Discharge Review Board.

## Chapter 3
## Guidelines for Separation

**Section I**

**Application**

### 3–1.  Scope
The procedures in this chapter are applicable only when required under a specific reason for separation cited in this regulation. These actions are subject to the requirements set forth in the section addressing the specific reason for separation.

### 3–2.  Guidance
*a.*  When initiating an administrative separation on any Soldier, for any reason (voluntary of involuntary), include documentation in the separation packet that positively identifies the Soldier as having been, or not having been, a victim of sexual assault (see fig 3–1).

(1)  All separation cases initiated under the notification or administrative board procedure require the unit commander to indicate in the commanding officer's report to the separation authority whether the Soldier was or was not a victim of sexual assault for which an unrestricted report was filed within the past 24 months prior to initiation of the separation action.

(2)  All separation cases initiated under the notification or administrative board procedure require the Soldier to indicate on the election of rights form whether they were a victim of sexual assault and filed an unrestricted report of sexual assault within 24 months of initiation of the separation action. The Soldier must also state whether they did or did not believe that the separation action is a direct or indirect result of the sexual assault itself or of filing the unrestricted report.

*b.*  When a Soldier is processed on the basis of multiple reasons for separation, the following guidelines apply to procedural requirements (including procedural limitations on characterization or description of service):

(1)  The basis for each reason must be clearly established.

(2)  If a reason for separation set forth in the notice of proposed action requires processing under the administrative board procedure, the entire matter will be processed under section III, of this chapter.

(3)  When there is any other clear conflict between a specific requirement applicable to one reason and a general requirement applicable to another reason, the specific requirement will be applied.

(4)  If a conflict in procedures cannot be resolved on the basis of the foregoing principles, the procedure most favorable to the Soldier will be used.

*c.*  When there is any other clear conflict between a specific requirement applicable to one reason and a general requirement applicable to another reason, the specific requirement will be applied.

*d.*  If a conflict in procedures cannot be resolved on the basis of the foregoing principles, the procedure most favorable to the Soldier will be used.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

(Office Symbol)                                                      (Date)

MEMORANDUM FOR (Commander, unit)

SUBJECT:  Victim of Sexual Assault Statement of Administrative Separation

DODI 6495.02 and AR 600-20 (Sexual Assault Prevention and Response Program)
requires Soldiers being administratively separated to sign a statement answering the
following questions:

      (a)  Did you file an unrestricted report of sexual assault in which you were a
         victim within the past 24 months?

                   (YES)         (NO)

      (b)  If the answer to (a above) is YES, do you believe that this separation action
is a direct or indirect result of your sexual assault, or of filing the unrestricted report?

                   (YES)         (NO)

                   (Soldier's name and grade)

                   (Unit)

**Figure 3–1.  Sample memorandum for victims of sexual assault statement for administrative separations**

## 3–3.  Counsel for respondent
Counsel for consultation and counsel for representation for Soldiers being considered for separation under this regulation are described as follows:

  *a.  Counsel for consultation.*

  (1)  A RC or Regular Army officer of the Judge Advocate General's Corps appointed by a convening authority to consult with and advise a Soldier being processed under this regulation at the outset of an involuntary separation proceedings. Such counsel must be qualified under Article 27(b)(1) of the UCMJ. Counseling may be accomplished in person, or through the use of mail, email, fax, or telephone, as circumstances dictate. Counsel for consultation will advise respondent using DA Form 7423 (Consulting Counsel's Checklist) and make annotations as appropriate.

  (2)  A civilian counsel retained by the Soldier at no expense to the Government. Civilian counsel is not appointed by the convening authority.

  *b.  Counsel for representation.*

(1)  A RC or Regular Army officer of the Judge Advocate General's Corps appointed by the convening authority to provide representation during the course of any hearing before an administrative separation board under the provisions of this regulation. Representation by counsel will be in accordance with AR 15–6. Such counsel must be qualified under Article 27(b)(1) of the UCMJ.

*(a)*  RC judge advocates are appointed under the provisions of AR 27–3.

*(b)*  Regular Army judge advocates are appointed under the provisions of AR 27–10.

*(c)*  A respondent who declines representation by a qualified judge advocate officer is not entitled to appointment of a different counsel or counsel of choice.

(2)  Civilian counsel not employed by the Government and at no expense to the Government.

(3)  Non-lawyer counsel may represent a respondent before an administrative board only where:

*(a)*  The respondent expressly declines appointment of counsel under Article 27(b)(1) of the UCMJ and requests a specific non-lawyer counsel; or,

*(b)*  The separation authority assigns non-lawyer counsel as assistant  counsel.

*c.  Counsel for consultation and counsel for representation.*  These need not be the same individual.

### 3–4.  Screening and counseling of victims of sexual assault

*a.*  When initiating an administrative separation on any Soldier, for any reason covered by this regulation, commanders must ensure the separation packet contains a statement signed by the Soldier (see fig 3–1), with the Soldier's answers to the following questions:

(1)  Did you file an unrestricted report of a sexual assault in which you were a victim within the past 24 months?

(2)  If the answer to 3-4a(1) is "YES," do you believe that this separation action is a direct or indirect result of your sexual assault, or of filing the unrestricted report?

*b.*  When a Soldier is not available or fails to provide the statement required in 3-4a, commanders will sign a statement explaining the Soldier was unavailable or refused to provide a victims of sexual assault statement, whether the Soldier's personnel file contained evidence that the Soldier was a victim of sexual assault within the past 24 months, and whether the commander is aware of any evidence that the Soldier filed an unrestricted report as a victim of sexual assault within the past 24 months.

*c.*  The Special Court-Martial Convening Authority or GCMCA will review all administrative separations involving victims of sexual assault who filed an unrestricted report and Soldiers who answered "YES" to any of the questions listed in 3-4a or in their signed statement. The reviewing authority will determine—

(1)  Does the separation appear to be in retaliation resulting from the Soldier filing an unrestricted sexual assault report? If so, consult with your local Staff Judge Advocate.

(2)  Does the separation involve a medical condition that is related to the sexual assault? If so, consult with the appropriate medical command personnel.

(3)  Is the separation in the best interest of the Army and/or the Soldier? If not, consult with your local Staff Judge Advocate.

(4)  The status of the case against the alleged offender, and the effect of the Soldier's (victim's) separation on the disposition or prosecution of the case. If the case is still open, consult the servicing Criminal Investigation Division unit and Staff Judge Advocate.

### Section II

### Separation Using the Notification Procedure

### 3–5.  Notice under the notification procedure

*a.*  When the notification procedure is required under a reason for separation cited in this regulation, the commander will notify the Soldier, in writing, of the matter set forth in this section. (Use the memorandum format in fig 3–2, with the endorsement format in fig 3–3, for this purpose.)

(1)  The basis of the proposed separation, including the circumstances upon which the action is based, and a reference to the applicable provisions of this regulation.

(2)  Whether the proposed separation could result in a discharge from the Army, transfer from the ARNGUS to the USAR, or release from custody or control of the Army.

(3)  The least favorable characterization or description of service authorized for the proposed separation.

(4)  The right to obtain copies of documents that will be sent to the separation authority supporting the basis of the proposed separation. Classified documents may be summarized. For separation under chapter 10 or chapter 11, based on

a positive urinalysis, the Soldier will be provided, on request, a copy of the laboratory documents (as described in AR 600–85).

(5)  The Soldier's right to submit statements.

(6)  The Soldier's right to consult with military legal counsel. The Soldier may also consult with civilian counsel retained at the Soldier's own expense.

(7)  If the Soldier has 6 or more years of total active and reserve military service on the date of initiation of recommendation for separation, the Soldier's right to request an administrative board (sec III, of this chapter). (See para 3–6a.)

(8)  The right to waive the rights in paragraphs 3–5a(4) through (7), in writing (see fig 3–3), after being afforded a reasonable opportunity to consult with counsel, and that failure to respond within 30 calendar days from the date of receipt of the notice will constitute a waiver of the right.

(9)  The notification of separation will include a sample of the victims of sexual assault statement for administrative separations (see fig 3–1).

b.  Reasonable effort should be made to furnish copies of the notice to the Soldier through personal contact by a representative of the command. In such a case, a written acknowledgment of the notice will be obtained. If the Soldier cannot be personally contacted or refuses to acknowledge receipt of the notice, the notice will be sent by registered or certified mail, return receipt requested, to the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail. The individual who mails the notification will prepare an Affidavit of Service by Mail (see fig 1–1). This will be inserted in the Soldier's personnel file together with a U.S. Postal Service certified mail form (PS Form 3800). If available, the command will contact the Soldier via a known email address, social media contact, or cellular phone number.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*S: (Enter date of suspense)*

*(Office Symbol)*                                                                                   *(Date)*

MEMORANDUM FOR *(Soldier's name, grade, and organization of assignment)*

SUBJECT:  Notification of Separation Proceedings under AR 135–178, Chapter *(enter appropriate chapter)*

1.  Under the provisions of AR 135–178, *(indicate specific chapter, section, and paragraph)*, I am initiating action to separate you from *(see note below)* for *(indicate narrative reason)*.  The reasons for my proposed action are: *(state specific, factual details that constitute the basis for the proposed action)*.

2.  I am recommending that you receive a(n) *(indicate one of the following:  Honorable characterization of service, General (under honorable conditions) characterization of service, or Uncharacterized description of service)*.  My recommendation and your reply will be submitted through intermediate commanders *(if any)* to the separation authority, *(enter the name, grade, and organization of the separation authority)* who will make the final decision in your case.

3.  The intermediate commander(s) and the separation authority are not bound by my recommendation as to characterization of service.  The separation authority may direct that your service be characterized as honorable or under honorable condition, or you may receive an uncharacterized description of service if you are in an entry level status.

4.  *(Select and enter the appropriate paragraph from the following:)*

*(Use for ARNG)*
4.  If my recommendation is approved, the proposed separation could result in discharge from the Army National Guard and as a Reserve of the Army, discharge from the Army National Guard and transfer to the Individual Ready Reserve, or release from custody and control of the Army.

*(Use for USAR)*
4.  If my recommendation is approved, the proposed separation could result in discharge from the U.S. Army Reserve, transfer or reassignment from your U.S. Army Reserve unit to the Individual ready Reserve, or release from custody and control of the Army.

**Figure 3–2.  Format for notification of separation proceedings when the notification procedure is used**

5. I am suspending separation action for 45 days to give you an opportunity to exercise the following rights:

   a. You have the right to consult with an appointed counsel for consultation; or military counsel of your choice, if he or she is reasonable available, or civilian counsel at your own expense.

      (1) If you desire an appointed counsel for consultation, notify this command before completing the response by endorsement and the name and phone number of the appointed counsel will be provided.

      (2) If you desire a military counsel of your choice, provide this command with the officer's name and rank before completing the response by endorsement and if the officer is reasonably available, he or she will be appointed counsel for consultation.

      (3) If you retain civilian counsel at no expense to the Government, recommend the counsel be retained before completing the response by endorsement.

   b. You have the right to obtain copies of documents that will be sent to the separation authority supporting the basis of the proposed separation.  (Classified documents may be summarized.)

   c. You have the right to request a hearing before an administrative separation board if you have 6 or more years of total active and/or reserve service on the date of this notification.

   d. If you request a hearing before an administrative board, you have the right to representation at the administrative  board by a military counsel.

   e. You have the right to representation at the administrative board by civilian counsel at your own expense and no expense to the Government.

   f. You have the right to present written statements on your behalf instead of the administrative board proceedings.

   g. You have the right to waive the rights listed above in paragraph a through f in writing, and you may withdraw any such waiver at any time before the date the separation authority orders, directs, or approves your separation.

*(Insert this paragraph when required per paragraph 1–9 and renumbering the following paragraphs.)*

6. You are required to undergo a medical evaluation in accordance with AR 40–501. Arrangements have been made for this examination and you are to report to (*location*) at (*time*) on (*date*) (see para 1–9.)

**Figure 3–2.  Format for notification of separation proceedings when the notification procedure is used—Continued**

7.  You must complete the attached endorsement acknowledging receipt of this memorandum and indicating the election of your rights.  A copy of this memorandum with the completed endorsement attached, must be delivered to the address shown on the endorsement within 30 calendar days after your receive this memorandum of notification.  Any statement or documents you desire to submit in your behalf must also reach me within 30 calendar days after your receive this memorandum, unless your request and receive an extension for good cause shown.  Unless an extension is granted, failure to deliver the completed endorsement within 30 days of the date of your receipt of this memorandum will constitute a waiver of your rights in paragraph 5a, b, c, d, e, and f above.

Encl Listing                                    *(Commander's Signature)*
                                                *(Typed name, grade, branch)*

Note:  Enter one of the following, as appropriate:  the Army National Guard of the United States; the Army National Guard and Reserve of the Army; the U.S. Army Reserve; or, your USAR organization of assignment.

**Figure 3–2.  Format for notification of separation proceedings when the notification procedure is used—Continued**



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

(NOTE:  The commander issuing the notification memorandum (fig 3–1) will prepare and partially complete the following endorsement and enclose it with the notification memorandum.  The Soldier will complete the endorsement by making the appropriate entries where indicated and return the endorsement attached to a copy of the notification memorandum.)

*(Insert Soldier's last name) (Insert memo office symbol/date)*  1ˢᵗ End

*(Insert preparer's name and telephone number)*

SUBJECT:  Notification of Separation Proceedings Under AR 135–178, Chapter *(insert the appropriate chapter)*

*(Insert the Soldier's full name, address, and organization of assignment)*

*(Soldier will enter date of response here)*

FOR COMMANDER *(Insert the complete organization address shown on memorandum)*

1.  I hereby acknowledge receipt of the Notification of Separation Proceedings under AR 137–178, chapter *(insert the appropriate chapter)* dated *(insert the date of memorandum)*. I understand that I may expect to encounter substantial prejudice in civilian life if my service is characterized as general (under honorable conditions).

2.  Before completing this response, I understand that I have the right to consult with an appointed counsel for consultation; or military counsel of my own choice, if he or she is reasonably available, or civilian counsel at my own expense. (The Soldier will exercise this right by initialing one of the following paragraphs:)

   a.  *(initial)*  I have exercised my right and I have consulted with counsel in preparation of this response to the notification memorandum.  I have been advised by my consulting counsel of the basis for the contemplated action to separate me for *(enter the reason)* under AR 135-178, *(enter appropriate chapter)*, and its effects; of the rights available to me; and the effect of any action taken by me in waiving my rights.  The counsel has confirmed this by entering and signing the statement at the end of this endorsement; or

**Figure 3–3.  Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used**

b. *(initial)* I hereby waive my right to consult with an appointed counsel for consultation; or military counsel of my own choice, or civilian counsel at my own expense.

3. I understand I have the right to obtain copies of documents that will be sent to the separation authority supporting the basis of my proposed separation. (The Soldier will exercise this right by initialing one of the following paragraphs:)

a. *(initial)* I hereby waive my right to obtain copies of documents.

b. *(initial)* I hereby request copies of the documents.

4. I understand that if I have 6 or more years of total active and/or reserve service, on the date of this notification, I have the right to a hearing before an administrative separation board, unless I waive that right. (The Soldier will exercise this right by initialing one of the following paragraphs:)

a. *(initial)* I have 6 or more years of total active and/or reserve service on the date of this notification and I hereby exercise my right to a hearing before an administrative separation board. I understand that after having requested appearance before the board, my willful failure to appear before the board will constitute a waiver of my rights to personal appearance before the board, unless I am in civil confinement. (When requesting a board hearing the Soldier must also initial one of the following subparagraphs:)

(1) *(initial)* I request a counsel for representation at the hearing be designated.

(2) *(initial)* I waive my right to a counsel for representation at the board hearing.

b. *(initial)* I have 6 or more years of total active and/or reserve service on the date of this notification and I hereby waive my right to a hearing before an administrative separation board.

5. I have the right to representation at the administrative board by civilian counsel at my own expense and at no expense to the Government. (The Soldier will initial the following if civilian counsel is retained:)

*(initial)* I have retained, or will retain, civilian counsel.

6. I understand I have the right to present written statements in my behalf instead of the administrative board proceedings. (The Soldier will exercise this right by initialing one of the following paragraphs:)

a. *(initial)* I hereby waive my right to submit written statements.

b. *(initial)* Statements in my own behalf are submitted herewith and attached as enclosures.

7. I understand that I have the right, up until the date the separation authority orders, directs, or approves my separation, to withdraw any waiver of my rights that I may have

**Figure 3–3. Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used—Continued**

submitted.  If I had a right to a board hearing and waived that right, I can withdraw the waiver and request a hearing before an administrative board.

8.  I understand that if I have been ordered to undergo a medical or mental status evaluation and refuse to comply with the order, or willfully fail to undergo such examination or evaluation, separation action will be taken without an examination or evaluation.

9.  I understand that there is no automatic upgrading or review by any Government agency of any characterization of service that is less than honorable.  After discharge, I may apply to the Army Discharge Review Board or the Army Board for Correction of Military Records if I wish review of my characterization of service.  I realize that consideration by either board does not imply that my characterization of service will be upgraded.

*(Insert the following as paragraph 10 if the Soldier is considered for separation based on fraudulent entry.  Renumber later paragraphs if this paragraph is used.)*

10.  I understand that if I am being considered for separation for fraudulent entry my enlistment may be voided under certain circumstances and that all pay and allowances will be suspended immediately upon verification of the fraudulent entry.

11.  I have retained a copy of the Notification Memorandum and a copy of this completed endorsement and I submit the following statement of understanding:

UNDERSTANDING:  I have read and understand each of the statements above and understand that they are intended to constitute all promises whatsoever concerning my waiver options.  Any other promise, representation, or commitment made to me in connection with my separation is written below in my own handwriting or is hereby waived (if none, write "NONE").

Encl                                                      *(Signature of individual)*

                                                         *(Typed name, grade)*

**Figure 3–3.  Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used—Continued**

(Entries will be made in the following statement, where indicated, by the counsel for consultation if the Soldier elects to consult with consulting counsel.)  Having been advised by me of the basis for *(his) (her)* contemplated separation and its effects, the rights available to *(him) (her)*, and the effect of a waiver of *(his) (her)* those rights, *(Soldier's name)* personally made the choices indicated in the foregoing endorsement.

*(Signature of counsel)*

*(Typed name, grade, branch)*

*(Date counsel signed statement)*

**Figure 3–3.  Format for Soldier's response by endorsement to notification of separation proceedings when the notification procedure is used—Continued**

## 3–6. Additional notice requirements

*a.* If separation processing is initiated on the basis of more than one reason, the Soldier will be notified of the basis of each reason, including the circumstances on which the action is based, with reference to the specific provisions of this regulation that authorize separation.

*b.* If the Soldier is in civil confinement the relevant notification procedures of paragraph 3–5*b* apply.

*c.* If the separation action involves a transfer from the ARNGUS to the USAR, the notification procedures in paragraph 1–26 are required.

*d.* When the Soldier is processed for separation by reason of convenience of the Government (chap 6) and characterization of service of general (under honorable conditions) is authorized, the Soldier must be notified of the specific factors in the service record that warrant such a characterization.

*e.* The intermediate commander(s), in making recommendations on the characterization or description of service, may recommend any characterization or description of service authorized for the notified basis of separation, but will normally be limited to considering facts contained within the proposed action. If the intermediate commander(s) consider additional unfavorable information outside that contained in the proposed action in making recommendations, the intermediate commander(s) will state, in writing, the specific facts and incidents in the Soldier's record that warrant such type of discharge and characterization or description. The Soldier will be given an opportunity to rebut the additional material prior to the proposed action being forwarded from that intermediate commander. Military legal counsel will be made available to assist in preparation of rebuttal of the additional material. An explanation by the intermediate commander of the reasons for their recommendation that refers only to facts contained within the proposed action or to the commander's conclusions based on those facts will not constitute "additional unfavorable information" within the meaning of this paragraph.

## 3–7. Response

The Soldier will be provided a reasonable period of time (not fewer than 30 calendar days) to respond by endorsement to the notification memorandum (see fig 3–3). An extension may be granted on a timely showing of good cause by the Soldier. An extension will normally be granted until any documents requested by the Soldier pursuant to paragraph 3–5*a*(4), are provided to the Soldier and the Soldier has a reasonable opportunity to respond to such documents. The decision of the Soldier on each of the rights set forth in paragraphs 3–5*a*(4) through (7), and applicable provisions referenced in paragraph 3–6, will be recorded and signed by the Soldier and counsel (see fig 3–3), subject to the following limitations:

*a.* If the Soldier elects to exercise their right to a hearing before an administrative board (para 3–5*a*(7)), then the entire matter will be processed under the administrative board procedure (sec III, of this chapter) commencing with paragraph 3–14. (Compliance with paras 3–11, 3–12, and 3–13, is not required in this situation.)

*b.* If the notification memorandum was mailed (para 3–5*b*) and the Soldier fails to acknowledge receipt, or to submit a reply (see fig 3–3) within 30 calendar days, that fact will constitute a waiver of the right to respond. An appropriate notation will be recorded on the retained copy of the memorandum of notification (see fig 3–2).

*c.* If the Soldier declines to respond as to the selection of rights, such declination will constitute a waiver of rights and an appropriate notation will be recorded on the retained copy of the memorandum of notification (see fig 3–2). If the Soldier indicates that one or more of the rights will be exercised, but declines to sign the receipt of notification (see fig 3–3), the selection of rights will be noted. An appropriate notation as to the failure to sign will be made.

## 3–8. The initiating commander's report to the separation authority

The commander initiating the separation proceedings will forward a full report of the recommended proceedings through intermediate commanders, if any, to the appropriate separation authority (para 1–11) using the commanding officer's report in the format shown in figure 3–4.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                                      *(Date)*

THRU *(Intermediate commander(s), if any)*

MEMORANDUM FOR *(Commander, unit)*

SUBJECT:  Commander's Report for Separation under AR 135–178, *(enter appropriate chapter).*

1.  Under the provisions of AR 135–178, chapter *(number)*, paragraph *(number)*, I recommend *(name and grade of Soldier)*, be separated from (see note 1) prior to the expiration of *(his) (her)* term of military service, and that *(his) (her)* service be (Uncharacterized), or characterized as (Honorable) (General (under honorable conditions) (Under Other than Honorable Conditions).

2.  In accordance with AR 135–178, (para 3–4) (para 3–10), I have notified the Soldier of these proceedings and the characterization of service I have recommended. Following are my reasons for the recommended action(s) and characterization of service:

    a.  *(Commander will insert here the specific and factual reasons for the recommended action(s) and characterization of service.)*

    b.  *(Insert here a statement why the commander does not consider it feasible or appropriate to accomplish other disposition of the case.)*

    c.  *(See note 2.  Insert a recommendation regarding the Soldier's potential to perform useful service if ordered to active duty to meet mobilization requirements.)*

3.  I hereby provide the following information and facts relative to this report:

    a.  The Soldier's:

        (1) Organization of assignment.

        (2) Current reported home address.

        (3) Date of birth.

**Figure 3–4.  Format for commanding officer's report to the separation authority**

(4) Date of current enlistment/reenlistment agreement, term of service, and the date the contractual or statutory military service obligation (whichever is later) will expire.

(5) Retirement year ending (RYE) date and the total years of qualifying service for retired pay at age 60 accrued by the last (RYE) date.

(6) Aptitude area scores and duty military occupational specialty (DMOS):

(7) Primary MOS (PMOS), secondary MOS (SMOS), and additional MOS (AMOS) if any:

(8) Results of the Common Task Test (CTT):

b. Military history:

(1) Summary of previous military service, if any, including tours of active duty or active duty for training.

(2) Promotion(s) and dates thereof.

(3) Reduction(s) and dates thereof.

(4) Citations or awards.

c. Counseling/rehabilitation:

(1) Record of DA Form 2166-9-1A (NCO Evaluation Report Support Form), if appropriate.

(2) Record of counseling, if applicable.

(3) Description of rehabilitation attempts, if applicable.

(4) Evidence of rehabilitation, where unfavorable information has been revealed.

(5) Other applicable records.

d. Medical/mental examinations or evaluations:

(1) Report of mental status evaluation or psychiatric report *(is) (is not)* enclosed, if applicable.

(2) Report of medical examination *(is) (is not)* enclosed, if applicable.

**Figure 3–4.  Format for commanding officer's report to the separation authority—Continued**

e.  Record of other disciplinary action including nonjudicial punishment *(include offense(s), findings, and sentence)*.

f.  Medical or other data meriting consideration in the overall evaluation to separate the Soldiers and in the determination as to the appropriate characterization of service.

g.  Favorable communications or recommendations for the Soldiers.

h.  Other information considered pertinent to this case:

4.  When the Soldier is being processed for separation for alcohol or other drug abuse rehabilitation failure (AR 135–178, chap 11) include—

a.  A statement that the commander, in consultation with the rehabilitation team, has determined that further rehabilitative efforts  are not practical, rendering the rehabilitation a failure.  Documentation indicating this must be included with the statement.

b.  A chronological history of the Soldier's alcohol/drug abuse.  Inclusion of limited use evidence (AR 600–85) is discretionary.  (If limited use evidence is included, the provisions of AR 135–178, para 2–10f and 3–17f apply.)

c.  Circumstances *(to include dates)* concerning Soldier's referral, initial screening interview, medical evaluation *(when conducted)*, and enrollment in the Alcohol and Drug Abuse Prevention and Control Program (ADAPCP).

d.  A summary of the rehabilitation efforts made before and after Soldier was enrolled in the ADAPCP to include—

(1)  Dates of detoxification, if applicable.

(2)  Extent *(to include dates)* of counseling and other rehabilitative efforts made by the ADAPCP facility.

(3)  Extent *(to include dates)* of counseling and other rehabilitative efforts made by the unit chain of command.

5.  In addition, where Soldier is recommended for separation for unsatisfactory participation (AR 135–178, chap 13) include—

a.  The reason why the Soldier has been determined to be an unsatisfactory participant to include dates and notification procedures.

**Figure 3–4.  Format for commanding officer's report to the separation authority—Continued**

b. Records of certified mailings.

c. Record of participation during current term of service.

d. List assignments and duties under different officers and noncommissioned officers in each organization or unit during the current term of service.  Include the duration of each assignment.

6.  The memorandum of notification and Soldier's response by endorsement, or record of result of delivery by certified mail (including inability to deliver, refusal to accept, and failure or refusal to respond) are attached as enclosures.

Encls                                                      *(Initiating commander's signature)*

                                                               *(Typed name, grade, branch)*

Notes:

1.  Select the appropriate entry from the following:
    a.  The (Name of State, Commonwealth, or Territory) Army National Guard.  (Use this entry where Soldier is to be transferred as a Reserve of the Army).
    b.  The (Name of State, Commonwealth, or Territory) Army National Guard and as a Reserve of the Army.  (Use this entry where Soldier is to be discharged from all military service obligation.)
    c.  The U.S. Army Reserve.

2.  To be used when required by the Mobilization Asset Transfer Program (AR 135–178, chap 1, sec V) and only for separation reasons cited in AR 135–178, paragraph 1–22b.

**Figure 3–4.  Format for commanding officer's report to the separation authority—Continued**

## 3–9.  Action by intermediate commanders
Intermediate commanders may take the following action:

*a.*  Disapprove the recommendation and direct reassignment of the Soldier to another organization, if applicable, or direct disposition by other means. In case of reassignment, the commanding officer's report will be forwarded to the new organization commander for information.

*b.*  Approve the commanding officer's recommendation and forward the report to the separation authority.

## 3–10.  Action by separation authority
*a.*  The separation authority for actions initiated under the notification procedure will be the authority cited in paragraph 1–11.

*b.*  The action of the separation authority will be recorded.

*c.*  On receipt of the commander's report (para 3–8 or para 3–11), the separation authority will determine if there is sufficient evidence to verify the allegations set forth in the notification of the basis for separation. If an allegation is not supported by a preponderance of the evidence, it may not be used as a basis for separation. If there is not sufficient basis

for separation, the separation authority will disapprove the recommendation and return the case to the originator for disposition by other means or take other appropriate action under this regulation. If the recommendation is disapproved, the returned endorsement will cite reasons for disapproval.

*d.* If there is a sufficient factual basis for separation for the reason set forth in the notification, the separation authority will determine whether separation is warranted under the guidance in chapter 2, sections I and II. On the basis of that guidance, the separation authority will direct one of the following actions:

(1) Retention.

*(a)* In current assignment or pay category; or

*(b)* In the USAR with reassignment to the IRR under the MATP (chap 1, sec V), or in accordance with AR 140–10.

(2) Separation. If an ARNGUS Soldier eligible for MATP (para 1–23*a*) is being separated for reasons cited in paragraph 1–22*b* and the separation authority determines the Soldier has mobilization potential (para 1–25), the separation authority may direct the Soldier be discharged from the ARNG in accordance with NGR 600–200 with concurrent transfer as a Reserve of the Army to the IRR of the USAR as a mobilization asset.

(3) Suspended separation in accordance with the guidance in chapter 2, section II.

*e.* If the separation authority directs separation or suspended separation on the basis of more than one reason authorized by this regulation, the separation authority will designate the most appropriate basis as the primary reason for reporting purposes (para 3–2).

*f.* If separation or a suspended separation is directed, the separation authority will assign a characterization or description of service in accordance with chapter 2, section III.

## Section III

## Separation Using the Administrative Board Procedure

### 3–11. Notice under the administrative board procedure

*a.* When the administrative board procedure is required under a reason for separation cited in this regulation, the Soldier will be notified in writing of the matters set forth in this section: (Use the memorandum format in fig 3–5, with the endorsement format in fig 3–6, for this purpose.)

(1) The basis of the proposed separation, including the circumstances upon which the action is based, and a reference to the applicable provisions.

(2) Whether the proposed separation could result in a discharge from the Army, transfer from the ARNGUS to the USAR, or release from custody and control of the Army.

(3) The least favorable characterization or description of service authorized for the proposed separation.

(4) The Soldier's right to consult with military legal counsel. The Soldier may also consult with civilian counsel retained at the Soldier's own expense.

(5) The right to obtain copies of documents that will be sent to the separation authority supporting the basis of the proposed separation. Classified documents may be summarized. For separation under chapter 10 or chapter 11, based on a positive urinalysis, the Soldier will be provided, on request, a copy of the laboratory documents (as described in AR 600–85).

(6) The Soldier's right to request a hearing before an administrative board.

(7) The Soldier's right to present written statements instead of the administrative board proceedings.

(8) The Soldier's right to representation at the administrative board by military counsel designated in accordance with AR 27–10. Request for military counsel of choice is not authorized (AR 15–6).

(9) The Soldier's right to representation at the administrative board by civilian counsel at the Soldier's own expense.

(10) Non-lawyer counsel may not represent a Soldier before an administrative board unless:

*(a)* The Soldier expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests a specific non-lawyer counsel; or

*(b)* The separation authority assigns non-lawyer counsel as assistant counsel.

(11) The Soldier's right to submit a conditional waiver of the right to a hearing before an administrative board (para 3–15*a*).

(12) Unless prohibited by paragraph 3–16*c*, the right to waive the rights in paragraphs 3–11*a*(4) through (10), in writing (see fig 3–6), after being afforded a reasonable opportunity to consult with counsel, and that failure to respond within 30 calendar days from the date of receipt of the notification memorandum (see fig 3–2 or fig 3–5) will constitute a waiver of the right.

(13) The right to be present at the board hearing will be waived if the Soldier fails to appear without good cause.

*b.* Reasonable effort should be made to furnish copies of the notification memorandum (see fig 3–5) to the Soldier through personal contact by a representative of the command. In such a case, a written acknowledgment of receipt of the

notification will be obtained. If the Soldier cannot be contacted or refuses to acknowledge receipt of the notification, the notification memorandum will be sent by registered or certified mail, return receipt requested, to the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail. The individual who mails the notification will prepare an Affidavit of Service by Mail (see fig 1–1). This will be inserted in the Soldier's personnel file together with a U.S. Postal Service certified mail form (PS Form 3800). If available, the command will contact the Soldier via a known email address, social media contact, or cellular phone number.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

S: *(Enter suspense date)*

*(Office Symbol)*

*(Date)*

MEMORANDUM FOR *(Soldier's name, grade, and organization of assignment)*

SUBJECT:  Notification of Separation Proceedings Under AR 135–178, Chapter *(enter appropriate chapter)*

1.  Under the provisions of AR 135–178, *(indicate specific chapter, section and paragraph)*, I am initiating action to separate you from *(see note below)* for *(indicate narrative reason)*.  The reasons for my proposed action are:  *(state specific, factual details which constitute the basis for the proposed action)*.

2.  I am recommending that upon separation you receive a(n) *(indicate one of the following: Honorable characterization of service, General (under honorable conditions) characterization of service, Under Other than Honorable characterization of service, or Uncharacterized description of service)*.  My recommendation and your reply will be submitted through intermediate commanders (if any) to the separation authority, *(enter name, rank, and organization of the separation authority)*, who will make the final decision in your case.

3.  The intermediate commander(s) and the separation authority are not bound by my recommendation as to characterization of service. The separation authority may direct that your service be characterized as honorable, general (under honorable condition), under other than honorable conditions, or you may receive an uncharacterized description of service if you are in an entry level status.  However, the separation authority may not direct the issuance of a type of discharge or characterization of service less favorable than the recommended by an administrative separation board should you request a hearing before an administrative separation board.

4.  *(Select and enter the paragraph from the following):*

*(Use for ARNGUS)*
4.  If my recommendation is approved, the proposed separation could result in your discharge from the Army National Guard as a Reserve of the Army; your discharge from the Army National Guard and transferred to the Individual Ready Reserve; or your release from custody and control of the Army.

*(Use for USAR)*
4.  If my recommendation is approved, the proposed separation could result in your discharge from the Reserve of the Army; transfer or reassignment from your U.S. Army Reserve unit to the Individual Ready Reserve; or your release from custody and control of the Army.

5.  I am suspending separation action for 45 days to give you an opportunity to exercise the following rights:

**Figure 3–5.  Format for notification of separation proceedings when the administrative board procedure is used**

a. You have the right to consult with an appointed counsel; military counsel of your choice, if he or she is reasonably available, or civilian counsel at your own expense.

(1) If you desire an appointed counsel for consultation, notify this command before completing the response memorandum and the name and phone number of the appointed counsel will be provided.

(2) If you desire a military counsel of your choice, provide this command with the officer's name and grade before completing the response memorandum and if the officer is reasonably available, he or she will be appointed counsel for consultation.

(3) If you retain civilian counsel at no expense to the government, recommend the counsel be retained before completing the response memorandum.

b. You have the right to obtain copies of documents that will be sent to the separation authority supporting the basis for the proposed separation. (Classified documents may be summarized.)

c. You have the right to request a hearing before an administrative board.

d. You have the right to representation at the administrative board by military counsel that will be designated (see para 6 below). A military counsel of choice is not authorized.

e. You have the right to representation at the administrative board by civilian counsel at your own expense and at no expense to the Government.

f. You have the right to present written statement on your behalf instead of the administrative board proceedings.

g. Except as explained in paragraph 6 below, you have the right to waive the rights listed above in paragraph a through f in writing, and you may withdraw any such waiver at any time before the date the separation authority orders, directs, or approves your separation.

h. Except as explained in paragraph 6 below, you may submit a conditional waiver of your right to an administrative board proceeding contingent upon receiving a characterization of service higher than the least favorable characterization of service authorized for the basis of your proposed separation.

6. If you have over 20 qualifying years for retired pay and are being separated for unsatisfactory participation, you have the option of transferring to the Retired Reserve rather than process through an administrative separation board.

*(Insert this paragraph when required per paragraph 1–9 and renumber the following paragraphs.)*

7. You are required to undergo a medical evaluation in accordance with AR 40–501. Arrangements have been made for this examination and you are to report to *(location)* at *(time)* on *(date)*. (See para 1–9.)

**Figure 3–5. Format for notification of separation proceedings when the administrative board procedure is used—Continued**

*(Insert this paragraph when required per paragraph 1–9 and renumber the following paragraphs.)*

7. You are required to undergo a mental status evaluation in accordance with AR 40–501. Arrangements have been made for this examination and you are to report to *(location)* at *(time)* on *(date)*. (See para 1–9.)

8. You must complete the response memorandum acknowledging receipt of this memorandum and indicating the election of your rights. A copy of this memorandum with the completed response memorandum attached must be delivered to the address shown on the response memorandum within 30 days from the date of your receipt of this memorandum of notification. Any statement or documents you desire to submit in your behalf must be received by me within 30 calendar days after you receive this memorandum, unless you request and receive an extension for good cause shown. Unless an extension is granted, failure to deliver the completed response memorandum within 30 days of the date of your receipt of this memorandum will constitute a waiver of your rights in paragraphs 4a through 4h, above.

Encl                                                    *(Commander's signature)*
                                                        *(Typed name, grade, branch)*

Note: Enter one of the following, as appropriate; the Army National Guard of the United States; the Army National Guard and Reserve of the Army; the U.S. Army Reserve; your USAR organization of assignment.

**Figure 3–5. Format for notification of separation proceedings when the administrative board procedure is used—Continued**



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

(NOTE. The commander issuing the notification memorandum will prepare and partially complete the following response memorandum and enclose it with the notification memorandum. The Soldier will complete the response memorandum by making the appropriate entries where indicated and return the response memorandum attached to a copy of the notification memorandum)

*(Office Symbol)*                                                                                                    *(Date)*

MEMORANDUM FOR COMMANDER *(Insert the complete organization address shown on memorandum)*

SUBJECT:  Notification of Separation Proceedings Under AR 135-178, Chapter *(enter appropriate chapter)*.

1.  I hereby acknowledge receipt of the Notification of Separation Proceedings under AR 135–178, chapter *(insert the appropriate chapter)* dated *(insert the date of memorandum)*.  I understand I may expect to encounter substantial prejudice in civilian life if my service is characterized as General (Under Honorable Conditions), or Under Other Than Honorable conditions.  I further understand that, as the result of issuance of a discharge where the service is characterized as Under Other Than Honorable conditions, I may be ineligible for many or all benefits as a veteran under both Federal and State laws.

2.  Before completing this response, I understand that I have the right to consult with an appointed counsel for consultation, or military counsel at my own choice, if he or she is reasonably available, or civilian counsel at my own expense.  (The Soldier will exercise this right by initialing one of the following paragraphs:)

    a.  *(initial)* I have exercised my right and I have consulted with counsel in preparation of this response to the notification memorandum.  I have been advised by my consulting counsel of the basis for the contemplated action to separate me for *(enter the reason)* under AR 135–178, *(enter appropriate chapter)*, and its effects; of the rights available to me; and the effect of any action taken by me in waiving my rights.  The counsel has confirmed this by entering and signing the statement at the end of this memorandum; or

    b.  *(initial)* I hereby waive my right to consult with an appointed counsel for consultation, or military counsel of my own choice, or civilian counsel at my own expense.

3.  I understand I have the right to obtain copies of documents that will be sent to the separation authority supporting the basis of my proposed separation.  (The Soldier will exercise this right by initialing one of the following paragraphs:)

**Figure 3–6.  Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used**

a.  *(initial)* I hereby request copies of documents.

b.  *(initial)* I hereby waive my right to obtain copies of documents.

4.  I understand I have a right to a hearing before an administrative board. *(The Soldier will exercise this right by initialing one of the following paragraphs:)*

a.  *(initial)* I hereby exercise my right to a hearing before an administrative separation board. I understand that after having requested appearance before the board, my willful failure to appear before the board will constitute a waiver of my rights to personal appearance before the board, unless I am in civil confinement. (When requesting a board hearing the Soldier must initial one of the following subparagraphs:)

(1)  *(initial)* I request a counsel for representation at the hearing be designated.

(2)  *(initial)* I waive my right to a counsel for representation at the board hearing (see para 9 below).

b.  *(initial)* I hereby waive my right to a hearing before an administrative separation board (see paragraph 9 below).

5.  I have the right to representation at the administrative board by civilian counsel at my own expense and at no expense to the Government. (The Soldier will exercise this right by initialing the following paragraph:)

*(initial)* I have retained, or will retain, civilian counsel.

6.  I understand I have the right to present written statements in my behalf instead of the administrative board proceedings. (The Soldier will exercise this right by initialing one of the following paragraphs:)

a.  *(initial)* Statements in my own behalf are submitted herewith and attached as enclosures.

b.  *(initial)* I hereby waive my right to submit written statements.

7.  I understand that I may submit a waiver of my rights to an administrative board, except as explained in paragraph 9 below, on the condition that I receive a characterization of service higher than the least favorable characterization of service authorized in my separation action. I understand that the separation authority may decline to accept my conditional waiver. A request for a conditional waiver may be enclosed with this response, or in addition to but separate from this response, but in either case I understand it must be received by the commander by the suspense date shown on the Notification Memorandum. I understand that my request may be disapproved (see AR 135–178, para 3–15b).

**Figure 3–6.  Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used—Continued**

8.  Except as explained in paragraph 9 below, I understand that I have the right, up until the date the separation authority orders, directs, or approves my separation, to withdraw any waiver of my rights that I may have granted above.  If I had a right to a board hearing and waived that right, I can withdraw the waiver and request a hearing before an administrative board.

9.  I understand that if I have over 20 qualifying years for retired pay and being separated for unsatisfactory participation, I have the option of transferring to the Retired Reserves rather than process through an administrative separation board.

10.  I understand that if I have been ordered to undergo a medical or mental status evaluation and refuse to comply with the order, or willfully fail to undergo such examination or evaluation, separation action will be taken without an examination or evaluation.

*(Insert the following as paragraph 11 if the Soldier is considered for separation based on fraudulent entry.  Renumber later paragraphs if this paragraph is used.)*

11.  I understand that if I am being considered for separation for fraudulent entry my enlistment may be voided under certain circumstances and that all pay and allowances will be suspended immediately upon verification of the fraudulent entry.

12.  I understand that there is no automatic upgrading or review by any Government agency of any characterization of service that is less than honorable.  After discharge, I may apply to the Army Discharge Review Board or the Army Board for Correction of Military Records if I wish review of my characterization of service.  I realize that consideration by either board does not imply that my characterization of service will be upgraded.

15.  I have retained a copy of the Notification Memorandum and a copy of this completed response memorandum and I submit the following statement of understanding:

UNDERSTANDING: I have read and understand each of the statements above and understand that they are intended to constitute all promises whatsoever concerning my waiver options.  Any other promise, representation, or commitment made to me in connection with my separation is written below in my own handwriting or is hereby waived (if none, write "NONE").

Encl                                              *(Signature of individual)*
                                                  *(Typed name, grade)*

**Figure 3–6.  Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used—Continued**

(Entries will be made in the following statement, where indicated, by the counsel for consultation if the Soldier elects to consult with consulting counsel.)  Having been advised by me of the basis for *(his) (her)* contemplated separation and its effects, the rights available to *(him) (her)*, and the effect of a waiver of those rights. *(Soldier's name)* personally made the choices indicated in the foregoing memorandum.

*(Signature of counsel)*
*(Typed name, grade, branch)*
*(Date counsel signed statement)*

**Figure 3–6.  Format for Soldier's response by endorsement to notification of separation proceedings when the administrative board procedure is used—Continued**

## 3–12.  Additional notice requirements

*a.* If separation processing is initiated on the basis of more than one reason, the Soldier will be notified of the basis of each reason, including the circumstances on which the action is based, with reference to the specific provisions of this regulation that authorize separation.

*b.* If the Soldier is in civil confinement, the relevant notification procedures of paragraph 3–11*b*, apply.

*c.* If the separation action involves a transfer from the ARNGUS to the USAR, the notification procedures in paragraph 1–25 are required.

*d.* The intermediate commander(s), in making recommendations on the characterization or description of service, may recommend any characterization or description of service authorized for the notified basis of separation, but will normally be limited to considering facts contained within the proposed action. If the intermediate commander(s) consider additional unfavorable information outside that contained in the proposed action in making recommendations, the intermediate commander(s) will state in writing the specific facts and incidents in the Soldier's record that warrant such type of discharge and characterization or description. The Soldier will be given an opportunity to rebut the additional material prior to the proposed action being forwarded from that intermediate commander. Military legal counsel will be made available to assist in preparation of rebuttal of the additional material. An explanation by the intermediate commander of the reasons for their recommendation that refers only to facts contained within the proposed action or to the commander's conclusions based on those facts will not constitute "additional unfavorable information" within the meaning of this paragraph.

## 3–13.  Response

The Soldier will be provided a reasonable period of time (not fewer than 30 calendar days) to respond by endorsement to the notification memorandum (see fig 3–6). An extension may be granted on a timely showing of good cause by the Soldier. An extension will normally be granted until any documents requested by the Soldier pursuant to paragraph 3–11*a*(5), are provided to the Soldier and the Soldier has a reasonable opportunity to respond to such documents. The decision of the Soldier on each of the rights set forth in paragraphs 3–11*a*(1) through (10), and applicable provisions referenced in paragraph 3–12, will be recorded and signed by the Soldier and counsel (see fig 3–6), subject to the following limitations:

*a.* If the notification memorandum (see fig 3–5) was mailed in accordance with paragraph 3–11*b*, and the Soldier fails to acknowledge receipt or to submit a reply by endorsement (see fig 3–6) within 30calendar days, that fact will constitute a waiver of rights. An appropriate notation will be recorded on a retained copy of the notification memorandum (see fig 3–5).

*b.* If the Soldier declines to respond as to the selection of rights, such declination will constitute a waiver of rights and an appropriate notation will be made on the retained copy of the notification memorandum (see fig 3–5).

*c.* If the Soldier indicates that one or more of the rights will be exercised, but declines to sign the endorsement (see fig 3–6), the selection of rights will be noted. An appropriate notation as to the failure to sign will be made on the retained copy of the endorsement (see fig 3–6).

### 3–14.  The initiating commander's report to the separation authority

The commander initiating the separation proceedings will forward a full report of the recommended proceedings through intermediate commanders, if any, to the appropriate separation authority (para 1–11) using the commanding officer's report in the format shown in figure 3–4.

### 3–15.  Action by intermediate commanders

Except as may be prescribed in paragraph 11–1*d*, intermediate commanders may take the following action:

*a.* Disapprove the recommendation and direct reassignment of the Soldier to another organization, if applicable, or direct disposition by other means. In case of reassignment, the commanding officer's report will be forwarded to the new organization commander for information.

*b.* Approve the commanding officer's recommendation and forward the report to the separation authority.

### 3–16.  Waiver

*a.* When a Soldier waives their right to a hearing before an administrative board, then the entire matter will be processed under the notification procedure (sec II, of this chapter) commencing with paragraph 3–8. (Compliance with paras 3–5, 3–6, and 3–7 is not required in this situation.) However, the separation authority will be a general officer cited in paragraphs 1–11*a* or 1–11*b*.

*b.* A Soldier entitled to an administrative board may submit a conditional waiver to a hearing by a board after a reasonable opportunity to consult with counsel under paragraph 3–11*a*(11). (The memorandum format in fig 3–7 will be used for this purpose.) The conditional waiver (see fig 3–7) is a memorandum submitted by a Soldier waiving the right to a hearing by a board on the condition characterization of service on separation will be higher than the least favorable characterization or description of service authorized for the basis of the separation reason listed in the notification memorandum (see fig 3–5). The separation authority will be the same as if the Soldier had not submitted the conditional waiver.

(1)  The separation authority may approve or disapprove the conditional waiver. If the conditional waiver is disapproved, the case will be referred to a hearing before an administrative board, unless there is a subsequent unconditional waiver of a right to a hearing before an administrative separation board under paragraphs 3–5*a*(7) and 3–11*a*(6).

(2)  There is no requirement to delay board proceedings pending action by the separation authority on the conditional waiver. However, once the board has made its findings and recommendations, the convening authority may not approve the conditional waiver.

*c.* A Soldier with over 20 qualifying years for retired pay being separated for unsatisfactory participation has the option of transferring to the Retired Reserve rather than process through an administrative separation board.



**DEPARTMENT OF THE ARMY**
ORGANIZATION

CITY STATE ZIP

*(Office Symbol)* *(Date)*

FOR *(Appropriate commander in basic memorandum)*

SUBJECT:  Request for Conditional Waiver—Separation Under AR 135-178, Chapter *(enter appropriate chapter).*

1.  I hereby submit this request for conditional waiver and voluntarily waive my right to a hearing before an administrative separation board on the condition that upon separation my service will be characterized as (the Soldier will make known an election by initialing one of the following paragraphs:)

   a. *(initial)* Honorable

   b. *(initial)* General (Under Honorable Conditions).

I am making this request of my own free will and have not been subjected to any coercion whatsoever by any person.

2. Before submitting this request, I understand that I have the right to consult with an appointed counsel for consultation, or military counsel of my own choice, if reasonably available, or civilian counsel at my own expense.  (The Soldier will exercise this right by initialing one of the following paragraphs:)

   a. *(initial)* I have exercised my right and I have consulted with counsel in preparation of this request for a conditional waiver of my right to a hearing before an administrative board.  I have been advised by my consulting counsel of the basis for the contemplated action to separate me for *(enter the reason)* under AR 135–178, *(enter the appropriate chapter)*, and its effects; of the rights available to me; and the effect of any action taken by me in waiving my rights.  The counsel has confirmed this by entering and signing the statement at the end of this endorsement;

   or

   b. *(initial)* I hereby waive my right to consult with an appointed counsel for consultation; or military counsel at my own choice, or civilian counsel at my own expense.

3. I understand I have the right to present written statements in my behalf instead of the administrative board proceedings.  (The Soldier will exercise this right by initialing one of the following paragraphs:)

**Figure 3–7.  Format of request for conditional waiver of administrative board proceedings**

a. *(initial)* Statements in my own behalf are submitted herewith and attached as enclosures.

b. *(initial)* I hereby waive my right to submit written statements.

4. I understand that I may, up until the date the separation authority orders, directs, or approves my separation, withdraw this waiver and request that an administrative board hear my case.

5. I understand that if the separation authority refuses to grant my request for a conditional waiver of a hearing before an administrative board, my case will be referred to an administrative board and a military counsel will be designated as my counsel for representation at the board hearings.

6. I understand I may expect to encounter substantial prejudice in civilian life in my service is characterized as General (Under Honorable Conditions), or Under Other Than Honorable conditions. I further understand that, as the result of issuance of a discharge where the service is characterized as Under Other Than Honorable conditions, I may be ineligible for many or all benefits as a veteran under both Federal and State laws.

7. I understand that if my service is characterized as less than Honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that consideration by either board does not imply that my discharge will be upgraded.

8. I have retained a copy of this statement.

9. I [Have] [Have Not] filed an unrestricted report of sexual assault within 24 months of initiation of the separation action.

10. (To be answered only if the Soldier answered the previous question affirmatively). I [Believe] [Do Not Believe] that this separation is a direct or indirect result of the sexual assault itself or the filing of the unrestricted report. [N/A].

UNDERSTANDING: I have read and understand each of the statements above and understand that they are intended to constitute all promises whatsoever concerning my conditional waiver. Any other promise, representation, or commitment made to me in connection with my separation is written below in my own handwriting or is hereby waived (if none, write "NONE").

Encl                                   *(Signature of individual)*
                                       *(Typed name, grade)*

**Figure 3–7.  Format of request for conditional waiver of administrative board proceedings—Continued**

Having been advised by me of the basis for *(his) (her)* contemplated separation and its effects, the rights available to *(him) (her)*, and the effect of a waiver of *(his) (her)* rights. (Soldier's name) personally made the choices indicated in the foregoing statement.

*(Signature of counsel)*
*(Typed name, grade, branch)*
*(Date counsel signed statement)*

**Figure 3–7.  Format of request for conditional waiver of administrative board proceedings—Continued**

## 3–17.  Action by the separation authority on commander's recommendation

Upon receiving the commanding officer's report (para 3–8 or 3–14), the separation authority may take one of the following actions:

*a.* Disapprove the recommendation and return the case to the originator for disposition by other means.

*b.* Disapprove the recommendation relating to reason for separation and direct the Soldier be processed for separation under another reason for separation. This may be done when the separation authority determines that an alternative basis for separation is more appropriate than the originating command's reason for separation. In this case, the Soldier must be so advised and new proceedings must be initiated using the notification procedure or administrative board procedure as required.

*c.* When the board hearing has been properly and effectively waived, approve the separation and direct characterization of service or description of separation in accordance with chapter 2, section III.

*d.* When the board hearing has been properly and effectively waived, approve the separation and direct characterization of service or description of separation in accordance with chapter 2, section III, and suspend execution of the separation (chap 2, section II).

*e.* Convene an administrative board to conduct a hearing and provide recommendations as prescribed in paragraph 3–18.

*f.* Direct that the case processed through medical channels, if appropriate, as provided in paragraph 1–9.

## 3–18.  Hearing requirements

Except as otherwise provided herein, the procedures of AR 15–6 as they relate to boards of officers will also be used in these proceedings. If a Soldier requests or does not waive the right to a hearing before an administrative board, the following actions are applicable:

*a. Composition.*

(1) The separation authority (para 1–11) will appoint to the administrative board at least three experienced commissioned, warrant, or NCOs. At least one of the voting commissioned officers must be a Reserve officer.

*(a)* Enlisted Soldiers appointed to the board must be sergeants first class or above and must be senior to the respondent.

*(b)* At least one member of the board must be a major or higher, and a majority must be commissioned or warrant officers. However, all board members must be commissioned officers (to include warrant officers) if under other than honorable conditions character of service is authorized for the reason for separation.

*(c)* The senior member will be the president of the board.

*(d)* The separation authority may appoint to the board a nonvoting recorder.

*(e)* A nonvoting legal advisor may be appointed to assist the board.

(2) Boards with ARNGUS respondents will include at least one ARNGUS officer as a voting member. Boards with USAR respondents will include at least one USAR officer as a voting member.

(3)  The separation authority will ensure that the opportunity to serve on administrative boards is given to women and minorities. The mere appointment or failure to appoint a member of such a group to the board, however, does not provide a basis for challenging the proceeding.

(4)  The respondent may challenge a voting member of the board or the legal advisor, if any, only for cause.

*b.  Presiding officer.*  The president will preside and rule on all matters of procedure and evidence, but the rulings of the president may be overruled by a majority of the board. If appointed, the legal advisor will rule finally on all matters of evidence and challenges, except for a challenge for cause to the legal advisor. Military judges may be appointed as board members. If a military judge is appointed as the president of a board, a legal advisor to the board need not be appointed.

*c.  Witnesses.*

(1)  The Soldier will be notified of the names and addresses of witnesses expected to be called at the board hearing and that the recorder of the board will, on written request of the Soldier, endeavor to arrange for the presence of any available witness the Soldier desires to call. Pursuant to AR 15–6, expert medical and psychiatric testimony routinely may be provided in the form of affidavits.

(2)  The respondent may submit a written request for temporary duty or invitational travel orders for witnesses. Such a request will contain the following matter:

*(a)*  A synopsis of the testimony that the witness is expected to give.

*(b)*  An explanation of the relevance of such testimony to the issues of separation or characterization.

*(c)*  An explanation as to why written or recorded testimony would not be sufficient to provide for a fair determination.

(3)  The convening authority may authorize expenditure of funds for production of witnesses only if the presiding officer (after consultation with a judge advocate) or the legal advisor (if appointed) determines that—

*(a)*  The testimony of a witness is not cumulative.

*(b)*  The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization.

*(c)*  Telephonic, written, or recorded testimony will not adequately accomplish the same objective.

*(d)*  The need for live testimony is substantial, material, and necessary for a proper disposition of the case, and

*(e)*  The significance of the personal appearance of the witness when balanced against the practical difficulties in producing the witness favors production of the witness. Factors to be considered in relation to the balancing test include the cost of producing the witness, the timing of the request for production of the witness, the potential delay in the proceeding that may be caused by producing the witness, or the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

(4)  If the convening authority determines that the personal testimony of a witness is required, the hearing will be postponed or continued if necessary to permit the attendance of the witness.

(5)  The hearing will be continued or postponed to provide the respondent with a reasonable opportunity to obtain a written statement from the witness if a witness requested by the respondent is unavailable in the following circumstances:

*(a)*  When the presiding officer or the legal advisor (if appointed to assist the board) determines that the personal testimony of the witness is not required.; or

*(b)*  When the commanding officer of a military witness determines that military necessity precludes the witness' attendance at the hearing; or

*(c)*  When a civilian witness declines to attend the hearing.

(6)  Paragraph 3–18*c*(5)(*c*) does not authorize a Federal employee to decline to appear as a witness if directed to do so in accordance with applicable procedures of the employing agency.

*d.  Record of proceedings.*  The proceedings of the board will be summarized as fairly and accurately as possible. The proceedings will contain a verbatim record of the findings and recommendations.

*e.  Presentation of evidence.*  Except as otherwise provided in this regulation, the procedures in AR 15–6 apply.

*f.  Introduction of limited use evidence.*  The Government may initially introduce limited use evidence (AR 600–85) into separation proceedings accomplished under this regulation or, at its option, may elect to proceed solely with independent evidence not subject to limited use. If limited use evidence is initially introduced by the Government and the separation proceedings result in separation, the Soldier will receive an honorable characterization of service (para 2–10*a*). However, the proceedings may be reinitiated or a rehearing held in accordance with the following guidance. If limited use evidence is introduced by the Government before the board convenes, the separation proceedings may be reinitiated, excluding all references to limited use evidence. If limited use evidence is introduced by the Government after the board convenes, a general officer who is the separation authority may set aside the proceedings and refer the case to a new board for rehearing. (See AR 600–85.) The reason for the rehearing will not be disclosed to the new board and limited use information will not be initially introduced by the Government. Review and action in the case will be based only on the new record. If a rehearing is not deemed appropriate, the Soldier may be separated with an honorable characterization of

service (para 2–10*a*). The servicing Judge Advocate will review completed board proceedings that contain limited use evidence and advise the separation authority whether a rehearing is appropriate.

*g. Rights of the respondent.*

(1)  The respondent may testify on his or her own behalf. The provisions of Article 31(a), UCMJ, will apply, as appropriate.

(2)  At any time before the board convenes and during the proceedings, the respondent or counsel may submit written or recorded matter for consideration by the board. This includes submission of any answer, deposition, sworn or unsworn statement, affidavit, certificate, or stipulation, or depositions of witnesses not reasonably available or witnesses unwilling to appear voluntarily.

(3)  The respondent or counsel may call witnesses in his or her own behalf subject to the provisions of paragraph 3–18*c*.

(4)  The respondent or counsel may question any witness who appears before the board.

(5)  The respondent or counsel may present argument before the board closes for deliberation on findings and recommendations.

(6)  The respondent may appear in person with or without counsel at all open proceedings of the board. When a Soldier appears before a board without counsel, the record will show that the president of the board counseled the respondent as to characterization or description of service that they may receive as a result of the board action, the effects of such characterization or description, and that they may request counsel. The record of the proceedings will reflect the substance of the information conveyed to the respondent and contain the respondent's acknowledgment that they understand the information.

(7)  The respondent or counsel may challenge any voting member of the board or the legal advisor, if any, only for cause. Furthermore, when the board is considering a case in which the respondent has exercised his or her right to revoke a previous waiver, the board membership will not be advised in any manner of such action by the respondent, or of the type of discharge which had been recommended in their case. When it has come to the attention of the respondent or their counsel that facts intended to be excluded are known by any member of the board, failure to challenge the member having such knowledge constitutes a waiver of the matter.

(8)  Failure of the Soldier to invoke any of the rights in 3-18g(1) through 3-18g(7), after having been apprised of same is not a bar to the board proceedings, findings, or recommendations.

*h. Findings and recommendations.*  The board will—

(1)  Determine its findings and make recommendations in closed session. Only voting members will be present.

(2)  Determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence.

(3)  Make recommendations on the following:

*(a) Retention or separation.*  The board will recommend retention or separation. Should the board recommend retention, the recommendation must provide for the Soldier to be retained in the component and status in which the Soldier is currently serving, and no characterization of service will be recommended. A board will not recommend retention when recommending a characterization of service.

*(b) Suspension of separation.*  If the board recommends separation, it may recommend that the separation be suspended in accordance with chapter 2, section II, but the recommendation of the board is not binding on the separation authority.

*(c) Characterization of service or description of separation.*  If separation or suspended separation is recommended, the board will recommend a characterization of service or description of separation as authorized by the basis for separation (see chap 6 through 16) in accordance with the guidance in chapter 2, section III.

*i. Report of proceedings.*  A complete report of proceedings will be forwarded to the separation authority for final determination and disposition.

## 3–19.  Action by separation authority on board recommendations

*a.*  The separation authority for actions initiated under the administrative board procedure will be the authority cited in paragraphs 1–11*a* and b. This authority will not be further delegated.

*b.*  The board proceedings will be reviewed by a qualified officer fully cognizant of applicable regulations and policies. This officer determines whether the action meets the requirements of this regulation. However, in every case in which characterization of service under other than honorable conditions is recommended, or when limited use evidence was introduced in the board proceedings (para 3–18*f*), or when the Soldier identifies specific legal issues for consideration by the separation authority, the proceedings will be reviewed by a member of the Judge Advocate General's Corps or DA Civilian attorney prior to action by the separation authority.

*c.*  The respondent will be provided a copy of the board's statement of findings and recommendations. (See figure 3–8.)

*d.* In cases where the separation authority recommends the separation of a Soldier with 18 but fewer than 20 years of qualifying service for retired pay (10 USC 12732), the report of board proceedings and the separation authority recommendation will be sent to HQDA in accordance with paragraph 1–13 for consideration.

*e.* In cases where a board has recommended separation of a Soldier based on a civil court conviction and the Soldier is not incarcerated (para 11–2), approval and execution of the separation will normally be withheld only if the Soldier has filed an appeal of the conviction or stated their intention to do so (para 11–2*b*). If the separation authority determines execution of the separation is appropriate without waiting for final action on the appeal, the Soldier may be separated with the appropriate characterization of service upon the approval of HQDA, ARNGUS, NGR–ARP/OCAR (DAAR) (para 1–13), or at the request of the Soldier.

*f.* The separation authority will take action in accordance with this paragraph; the requirements of chapters 4 through 16, with respect to the reason for separation; and the guidance in chapter 2 on separation and characterization; and the guidance in chapter 1, section V, regarding the MATP.

(1) If the separation authority approves the recommendations of the board on the issue of separation and/or characterization, this constitutes approval of the board's findings and recommendations under paragraph 3–18*h*, unless the separation authority expressly modifies such findings or recommendations. However, the separation authority cannot authorize a characterization of service less favorable than that recommended by the board.

(2) If the board recommends retention, the separation authority will not direct discharge. The separation authority may take one of the following actions:

*(a)* Approve the recommendation.

*(b)* If the separation authority believes that discharge is warranted and in the best interests of the Army, a request for separation under the provisions of chapter 13 may be sent to HQDA, ARNGUS, NGR–ARP/OCAR (DAAR) (para 1–12). The separation authority will personally sign the memorandum to HQDA, ARNGUS, NGR–ARP/OCAR (DAAR) which sets forth specific reasons justifying the Soldier's discharge as being in the Army's interest. Prior to forwarding the case, the notification procedure (sec II) will be used. However, the procedure for requesting an administrative board (para 3–5*a*(7)) is not applicable. It is the policy of HQDA, ARNGUS, NGR–ARP/OCAR (DAAR) to uphold the recommendations of a duly constituted board unless compelling justification is given to warrant separation under Secretarial authority in the Army's best interest. Incomplete record available to the board, false testimony, or other procedural defects are examples (not an exhaustive list) of issues that may compel justification to warrant separation. If separation is approved under chapter 13, the characterization or description of service will be in accordance with paragraph 13–2.

(3) If the board recommends separation, the separation authority may:

*(a)* Approve the board's recommendation.

*(b)* Approve the board's recommendations, but modify the recommendations by one or more of the following actions, when appropriate:

1. Approve the separation but suspend execution as provided in chapter 2, section II.

2. Change the character of service or description of separation to a more favorable characterization or description. The separation authority cannot authorize a characterization of service less favorable than that recommended by the board.

*(c)* Disapprove the board's recommendation and direct retention.

(4) If the separation authority approves the board's findings and recommendations in whole or in part with respect to more than one reason for separation (see chaps 6 through 16), the separation authority will designate the most appropriate basis as the primary reason for reporting purposes.

(5) If the separation authority notes a defect but deems it harmless in a case in which separation has been recommended, they will take final action in accordance with paragraph 3–19*f*(3). If these are substantial defects, the separation authority may take one of the following actions:

*(a)* Direct retention.

*(b)* If the board has failed to make findings or recommendations required, return the case to the same board for compliance with this regulation.

*(c)* If there is an apparent procedural error or omission in the record of proceedings that may be corrected without reconsideration of the findings and recommendations of the board, return the case to the same board for corrective action.

*(d)* If the board's error materially prejudiced a substantial right of the Soldier, the separation authority may only take action that can be sustained without relying on the proceedings affected by the error. The separation authority may set aside the findings and recommendations and refer the case to a new board for a rehearing. A member of the new board cannot have served on a prior board that considered any of the same matters against the Soldier. The new board may be furnished the evidence properly considered by the first board. This evidence will include extracts from its record of testimony of witnesses not deemed by the convening authority to be reasonably available to testify at the rehearing. Additional admissible evidence may be furnished to or obtained by the new board. The separation authority may, on due notice to the Soldier, incorporate new allegations based on later conduct of the Soldier. Unless the new board considers substantial

additional evidence unfavorable to the Soldier, the separation authority may not approve any findings and recommendations of the new board less favorable than those rendered by the first board.

(6) If the separation authority determines, based on newly discovered evidence that the findings of the first board were obtained by fraud or collusion, the case may be referred to a new board. The fraud or collusion, which serves as the basis for referral to a new board, must be based on newly discovered evidence which was unknown at the time of the original proceedings. No member of the new board may have been a member of the first board. The separation authority may not approve findings and approve recommendations less favorable to the Soldier than those rendered by the first board unless the separation authority finds that the newly discovered evidence of fraud or collusion in the first board is attributable to the Soldier or an individual acting on the Soldier's behalf.

## 3–20. Disposition of proceedings

*a.* When separation is ordered by the separation authority or their designee, they will so note in the record of proceedings and forward them as authority for separation to the appropriate commander for execution of the separation. (See para 3–22, for disposition of the case file when separation is accomplished.)

*b.* When separation is not ordered by the separation authority, the proceedings will be filed at that headquarters. The Soldier's commanding officer will be notified of the final action. When deemed appropriate, consideration will be given to the Soldier's reassignment to a different organization. Ultimate disposition of the board proceedings will be governed by AR 25–400–2.

*c.* A Soldier who is to be separated will be furnished a copy of the board proceedings.

(1) The Soldier's copy of the proceedings will be marked "copy for (name and social security number of the member)" and furnished the Soldier or their counsel. A signed receipt will be obtained from the Soldier or the Soldier's counsel to whom the copy is furnished and filed with the original board proceedings. If the Soldier refuses to sign the receipt, a statement to that effect will be filed.

(2) If the Soldier or the Soldier's counsel does not desire a copy of the board proceedings or if for any other reason a copy is not furnished, a notation will be made on the Soldier's copy, which will be filed with the original. Release of this copy thereafter may be made only by the CG, HRC.

## 3–21. Errors and discrepancies noted before accomplishing separation

If material errors or discrepancies in approved board proceedings are found, the case will be referred for review before separation to HQDA (para 1–13), as appropriate.

## 3–22. Disposition of the case file

When separation of the Soldier has been accomplished by appropriate authority under this regulation, the complete file of the case together with the Soldier's military personnel records will be disposed of in accordance with the instructions contained in AR 600–8–104 or NGR 600–200, as appropriate.

## Section IV

## Additional Provisions Concerning Soldiers Confined by Civil Authorities

## 3–23. Proceedings when Soldier is confined by civil authorities

If separation proceedings under this chapter have been initiated against a Soldier confined by civil authorities, the case may be processed in the absence of the respondent (see para 2–18).

## 3–24. Notification requirements

The following requirements apply:

*a.* A Soldier confined by civil authorities will receive a notification memorandum under the notification procedure (para 3–5*b*) or the administrative board procedure (para 3–11*b*) as appropriate in accordance with paragraphs 3–6*b* and 3–12*b*.

*b.* If the notification memorandum (see fig 3–2 or fig 3–5) is delivered personally, receipt will be acknowledged by signing the endorsement (see fig 3–3 or fig 3–6). If the Soldier does not acknowledge receipt, the notification memorandum will be sent by mail as provided in paragraph 3–24*a*.

*c.* The required actions governing the Soldier's response or failure to respond are prescribed in paragraph 3–7 or paragraph 3–13, as appropriate.

*d.* The notice will state that the action has been suspended until a specific date (not less than 45 days from the date of delivery) to give the Soldier the opportunity to exercise the rights set forth in the notice. When warranted by the distance involved or other circumstances, a period in excess may be allowed for the Soldier to reply. If the Soldier does not reply

by the given date, the separation authority will take appropriate action under paragraph 3–17*d*. The name and address of the appointed military counsel for consultation will be specified in the notification memorandum.

*e.* When the Soldier has a right to and requests a hearing before an administrative board (paras 3–5*a*(7) and 3–11*a*(6)), the Soldier will be notified that the board may be conducted in their absence. In addition, the Soldier will be notified that an appointed military counsel will represent them.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                 *(Date)*

MEMORANDUM FOR RECORD

SUBJECT:  Summary of Board Proceedings Concerning *(Rank, Name, Headquarters, Unit Name, Street Address, City, State, Zip Code +4)*

1. In the board proceedings concerning *(rank, name, unit)*, the board finds by a preponderance of the evidence that the respondent:

    a.  Finding 1: *(name) (did) (did not)* commit *(alleged offense)*, as provided in the notice of initiation of separation.  This offense *(does) (does not)* warrant separation.

    b.  Finding 2: *(name) (did) (did not)* commit *(alleged offense)*, as provided in the notice of initiation of separation.  This offense *(does) (does not)* warrant separation.

2. Recommendation:

    a.  This board recommends in view of the findings: *(respondent)* is retained in military service.

<b>OR</b>

    b.  *(Respondent)* is separated from military service and receives the following:

    Honorable characterization of service.

    General, Under Honorable Conditions characterization of service.

    Under Other Than Honorable Conditions characterization of service.

    c.  It is recommended that the execution of this separation will be suspended and automatically remitted if not vacated, for a period of *(number of months)*.

*(Signature)*                          *(Signature)*                          *(Signature)*
**Board President**                    **Board Member**                       Board member

**Figure 3–8.  Sample findings and recommendations memorandum**

# Chapter 4
# Expiration of Service Obligation

## 4–1.  Basis

A Soldier will be discharged from the Army upon expiration of the later of the term of contractual service or the statutory MSO.

## 4–2.  The military service obligation
The period of military service required for all enlisted Soldiers will be in accordance with applicable laws and Department of Defense directives. Contractual terms of enlistment or reenlistment are as set forth in AR 140–111, AR 601–210, AR 601–280, and NGR 600–200.

   *a. Statutory military service obligation.*  A person whose initial entry into military service was on or after 1 June 1984, incurred an obligation under 10 USC 651(a) to serve a period of 8 years in the military service from the date of entry unless sooner discharged for personal hardship. Unless reenlisted or extended for a term of service that exceeds the expiration date of the statutory MSO, or retained as prescribed in paragraph 2–15, the Soldier will be discharged on the expiration of the statutory MSO by the separation authority (para 1–11).

   *b. Contractual military service obligation.*  On enlistment and reenlistment, a Soldier enters into an agreement to serve in a regular or RC of the armed forces for a specified term of service. The contracted term of service may expire during, run concurrent with, or exceed the term of an incurred statutory MSO. Unless reenlisted or extended, a Soldier will be discharged from military service on expiration of a contractual MSO, or a statutory MSO, whichever is the later, by the separation authority (para 1–11). Consider the following examples:

   (1)  A Soldier enlists in the ARNGUS or USAR TPU for 6 years and incurs an 8-year statutory MSO. On expiration of the 6 years, unless reenlisted or extended in the ARNGUS or USAR TPU, the Soldier will be transferred as a Reserve of the Army to the USAR (control group). Unless reenlisted or extended in the USAR (control group), the Soldier will be discharged on expiration of the 8-year statutory MSO.

   (2)  A Soldier enlists in the USAR for 8 years with a concurrent assignment to a TPU under the 6 x 2 option (6 years TPU and 2 years IRR) and incurs an 8-year statutory MSO. Unless reenlisted in the USAR for a term of service that exceeds the expiration date of the statutory MSO, the Soldier may request reassignment to the IRR on completion of the 6 years, or remain assigned to the TPU. In either case, unless sooner reenlisted or extended, the Soldier will be discharged from the USAR on expiration of the 8-year statutory MSO.

   (3)  A Soldier enlists or reenlists in the ARNGUS or USAR for a term of service that exceeds the expiration date of the 8-year statutory MSO. Unless sooner reenlisted or extended, the Soldier will be discharged from the ARNGUS or USAR on expiration of the enlistment or reenlistment agreement.

   (4)  A Soldier having no incurred statutory MSO remaining, enlists, or reenlists in the ARNGUS or USAR. Unless sooner reenlisted or extended, the Soldier will be discharged from the ARNGUS or USAR on expiration of the enlistment or reenlistment agreement.

   *c. Early separation.*  USAR Enlisted Soldiers assigned to TPU units in receipt of sourcing notification whose enlistment contract expire during the unit's mobilization plus 90 days who decline, or are ineligible to reenlist or extend their enlistments will be voluntarily or involuntarily separated from the TPU up to 12 months prior to the expiration of their service obligation.

   (1)  Soldiers with a remaining statutory obligation will be reassigned to the control group (Annual Training) (AT).

   (2)  Soldiers whose expiration of term of service is reached within the mobilization plus 90 days will be discharged.

## 4–3.  Retention beyond expiration of service obligation
A Soldier may not be held in the Army beyond the normal expiration of service obligation unless the service obligation is extended by law or the provisions of paragraph 2–15 apply. When through administrative error a Soldier is not discharged on the actual date of completion of term of Soldier enlistment, reenlistment, or date of completion of statutorily obligated service, or as provided in paragraph 2–15, a remark will be included in the "Remarks" section of the Soldier's DA Form 2–1 as follows: "Retained beyond normal discharge date for the convenience of the Government."

## 4–4.  Voluntary separation of Soldiers on indefinite re-enlistments
   *a.*  Army Reserve Soldiers serving on indefinite re-enlistments desiring a voluntary separation for reasons not specifically covered in this regulation must submit requests through command channels to the authority cited in paragraph 1–11.

   (1)  Soldiers requesting voluntary separation under this provision will indicate the reason(s) for voluntary separation.

   (2)  Such requests generally will be denied if the Soldier has an unfulfilled service obligation for training, as prescribed in AR 614–200, or an unfulfilled service obligation due to promotion, as prescribed in AR 600–8–19.

   (3)  If requests are approved, Soldiers will be separated under the provisions of this chapter, as they are considered to have fulfilled the MSO.

   *b.*  Soldiers applying for separation may request specific separation dates. Requested separation dates will not be more than 6 months after the date of the application.

**4–5.  Characterization of service**

The service of a Soldier being discharged on expiration of the term of an enlistment, reenlistment, or on fulfillment of a statutory MSO will be characterized as honorable except as provided in paragraph 1–27.

**4–6.  Separation authority**

The appropriate authority cited in paragraph 1–11, can order separations under this chapter.

# Chapter 5
# Selected Changes in Service Obligations

**5–1.  Basis**

A Soldier may be separated on the basis of a reason set forth in this chapter. The separation actions and the characterization of service are as prescribed for the reason for separation.

**5–2.  Reduction in authorized strength of the U.S. Army Reserve or Army National Guard of the United States**

   *a.  Early separation.*  Soldiers may be discharged from Reserve of the Army status prior to expiration of their service obligations when budgetary constraints or authorization limitations require a reduction in enlisted strength. The Secretary of the Army or his or her designee will authorize this reduction and will direct the CNGB and the CAR to issue discharge instructions pertaining to a Soldier or to all Soldiers of a specified class or category of personnel. Discharge may be voluntary or involuntary, except for enlisted Soldiers with at least 18 but fewer than 20 years of service qualifying for retired pay who meet other requirements of 10 USC 1176(b).

   *b.  Procedures.*  The notification procedure chapter 3, section II will be used for involuntary discharges under this paragraph. However, the notification memorandum may contain information other than that shown in figure 3–1, as the notification will be based on information and instructions furnished by HQDA.

   *c.  Characterization of service.*  The service of Soldiers discharged under this paragraph will be characterized as honorable unless an uncharacterized description of service is required by paragraph 2–11.

   *d.  Separation authority.*  On receipt of instructions from CNGB and CAR, the authorities cited in paragraphs 1–11*a* and 1–11*b*, may order discharge under this paragraph.

**5–3.  Discharge for immediate reenlistment**

   *a.  Immediate reenlistment.*  Enlisted Soldiers who immediately reenlist for continuing service in the ARNGUS in accordance with NGR 600–200, or in the USAR in accordance with AR 140–111, as appropriate, will be discharged effective the date preceding the date of the immediate reenlistment agreement.

   *b.  Discharge certificate.*  A formal discharge certificate will not be issued when a Soldier is discharged under this paragraph.

   *c.  Discharge order.*  Use Order Format 500. Under additional instructions insert the following: "Your enlistment in, or assignment to, the (ARNGUS or USAR) on (date) was terminated on the effective date of this order as a result of your immediate reenlistment in the (ARNGUS or USAR) on (date). No formal discharge certificate will be issued."

   *d.  Characterization of service.*  The service of a Soldier discharged in accordance with this paragraph will be characterized as honorable.

   *e.  Separation authority.*  The authorities cited in paragraph 1–11, may order discharge under this paragraph.

**5–4.  Discharge on enlistment in another component of the U.S. Armed Forces**

   *a.  Enlistment in a regular or Reserve Component.*  Except as cited in 5-4c, a Reserve of the Army Soldier will be discharged on enlistment or reenlistment in any regular or RC of the U.S. armed forces, other than—

   (1)  Enlistment in the ARNGUS. The Soldier will be transferred as a Reserve of the Army to the ARNGUS in accordance with AR 140–10.

   (2)  Appointment as a cadet or midshipman to one of the Service academies. An enlisted Soldier of the ARNGUS will be discharged from the ARNG in accordance with NGR 600–200 and transferred to the Service academy as a Reserve of the Army in accordance with AR 140–10.

   *b.  Enlistment in the Senior Reserve Officers' Training Corps.*  ARNGUS and USAR Soldiers who execute a USAR enlistment on enrollment in the SROTC with assignment to control group (ROTC) in accordance with AR 145–1 will be discharged from their current ARNGUS or USAR enlistment agreements effective the date preceding the date of enlistment as a cadet in the SROTC.

*c. Discharge limitation.* Discharge to enlist in a regular or RC of any of the U.S. Armed Forces, other than the Army, is not authorized for enlisted Soldiers within the 60–day period immediately preceding the effective date of order to active duty or active duty for training (ADT) other than AT or during the performance of active duty (except extended active duty, ADT, or AT). A Soldier serving on extended active duty in the Active Army may be discharged as a Reserve of the Army to enlist in the Regular Army under AR 601–280.

*d. Discharge certificate.* A formal discharge certificate will not be issued when a Soldier is discharged under this paragraph.

*e. Discharge order.* Use Order Format 500. The effective date of discharge will be the date preceding the date of enlistment in the U.S. Armed Force. Under additional instructions insert the following: "Your enlistment in, or assignment to, the (ARNGUS or USAR) on (date) was terminated on the effective date of this order, preceding the date of your enlistment in the (enter the name of the regular or Reserve Component). No formal discharge certificate will be issued."

*f. Characterization of service.* The service of a Soldier discharged in accordance with this paragraph will be characterized as honorable unless an uncharacterized description of service is authorized in accordance with paragraph 2–11.

*g. Separation authority.* The authorities cited in paragraphs 1–11*a* and 1–11*b*, may order discharge under this paragraph.

## 5–5.  Discharge on appointment as a commissioned or warrant officer

*a. Acceptance of appointment.* An enlisted Soldier (including a cadet) will be discharged on acceptance of an appointment as—

(1)  An officer or warrant officer in any regular or RC of the U.S. Armed Forces.

(2)  A commissioned officer in the Public Health Service.

(3)  A commissioned officer of the National Oceanic and Atmospheric Administration Corps.

*b. Discharge limitation.* Before such discharge, the separation authority must have documentary evidence proving that the Soldier will be appointed as a commissioned or warrant officer upon discharge from enlistment.

*c. Discharge order.* Use Order Format 500. The effective date of discharge will be the date preceding the date of appointment as an officer or warrant officer. Under additional instructions insert the following: "Your enlistment in, or assignment to, the (ARNGUS or USAR) on (date) was terminated on the effective date of this order, preceding the date of your appointment as an officer or warrant officer in the (enter the name of the regular or Reserve Component). No formal discharge certificate will be issued."

*d. Characterization of service.* The service of a Soldier discharged in accordance with this paragraph will be characterized as honorable unless an uncharacterized description of service is authorized in accordance with paragraph 2–11.

*e. Separation authority.*

(1)  The authorities cited in paragraphs 1–11*a* and 1–11*b*, may order discharge under this paragraph.

(2)  The authorities cited in paragraph 1–11*b*(4), may order the discharge of ROTC cadets on appointment as an officer.

(3)  The authorities cited in paragraph 1–11*b*(5), may order the discharge of a warrant officer candidate on appointment as a warrant officer.

## 5–6.  Separation of cadets on disenrollment from the Senior Reserve Officers' Training Corps or an Reserve Officers' Training Corps Scholarship Program

*a. Disenrollment.* ROTC cadets enrolled in the SROTC advanced course or an ROTC Scholarship Program are assigned members of (control group ROTC) (AR 140–1) of the IRR, unless they are participating in the ROTC/Simultaneous Membership Program (SMP) in accordance with AR 601–210 or NGR 600–200. The disposition of a cadet who is disenrolled from the ROTC Scholarship Program is prescribed by AR 145–1 and AR 135–91.

*b. Disposition.* The separation authority may order that a cadet be—

(1)  Discharged from the USAR citing this paragraph as the authority.

(2)  Retained in the IRR under the MATP in accordance with chapter 1, section V.

*c. Characterization of service.* The service of cadets discharged or retained under the provisions of this paragraph will be described as uncharacterized.

*d. Procedures.*

(1)  The procedures for separation of cadets under this paragraph will be governed by AR 135–91 and AR 145–1.

(2)  The notification procedures of chapter 3, are not applicable to separations under this paragraph.

(3)  The MATP policy prescribed by chapter 1, section V will govern whether the cadet is eligible to be retained in the IRR and assigned to control group (AT) or (reinforcement).

*e. Separation authority.* The authorities cited in paragraph 1–11*b*(4),  are authorized to order the separation of cadets under this paragraph.

**5–7.  Reserve Officers' Training Corps cadet early release**

The provisions of this paragraph, and separations hereunder, are applicable only where HQDA has authorized and announced a voluntary ROTC cadet release program.

*a.  Characterization of service.*  The service of cadets discharged under the provisions of this paragraph will be uncharacterized.

*b.  Procedures.*  The requirements for the early release of cadets will be provided in the HQDA announcement. If authorized by the HQDA announcement, eligible cadets may be retained in the IRR and reassigned to control group (AT) or (reinforcement) under the MATP in accordance with chapter 1, section V. However, the following is applicable to ROTC cadets assigned to USAR units who are SMP participants:

(1)  Cadets who enlisted in the ARNGUS prior to enrollment in the SROTC, and have a remaining statutory MSO will, after disenrollment from the SROTC, be retained in their ARNGUS unit in an enlisted grade determined under NGR 600–200 and serve under the terms of their ROTC/SMP agreement.

(2)  Cadets who enlisted in the USAR, completed required IET, were awarded an MOS prior to enrollment in the SROTC, and have a remaining statutory MSO will, after disenrollment from the SROTC, be retained in a USAR unit in an enlisted grade determined in accordance with AR 600–8–19 and serve under the terms of their ROTC/SMP agreement.

(3)  Except for cadets identified in paragraphs 5–7*b*(1) and (2), ROTC cadets will be offered an opportunity to remain assigned to their ARNGUS or USAR unit and serve under the terms of their ROTC/SMP agreement. However, cadets who decline continuing unit participation in an enlisted status will be discharged from the USAR by the appropriate separation authority.

*c.  Separation authority.*  The authorities cited in paragraph 1–11*b*(4), are authorized to order the separation of cadets under this paragraph.

**5–8.  Discharge of a potential Reserve Officers' Training Corps/Simultaneous Membership Program participant**

*a.  Criteria.*  A Soldier who enlisted as a potential participant in the ROTC/SMP in accordance with AR 601–210 with duty status coded 09R10, and who applies but is not accepted for enrollment in the ROTC advanced course will be discharged on their request.

*b.  Characterization of service.*  The service of Soldiers discharged under the provisions of this paragraph will be uncharacterized unless an honorable characterization is warranted in accordance with paragraph 2–11*a*.

*c.  Separation authority.*  The authorities cited in paragraphs 1–11*a* and 1–11*b*, may order discharge under this paragraph.

## Chapter 6
## Convenience of the Government

### 6–1.  Basis

A Soldier may be separated for the convenience of the Government on the basis of the reasons set forth in this chapter.

### 6–2.  Dependency or hardship

Upon the request of a Soldier and approval of the separation authority, separation may be directed when it is considered that membership and service on active duty, full-time National Guard duty (FTNGD), or ADT, would result in genuine dependency or undue hardship.

*a.  Criteria for separation.*  Separation may be approved when all of the following circumstances exist:

(1)  The hardship or dependency is not temporary;

(2)  Conditions have arisen or have been aggravated to an excessive degree since entry in the Army, and the Soldier has made every reasonable effort to remedy the situation;

(3)  The administrative separation will eliminate or materially alleviate the condition; and

(4)  There are no other means of alleviation reasonably available.

*b.  Limitation of criteria for separation.*  The following circumstances do not justify separation because of dependency or hardship. However, the existence of these circumstances does not preclude separation because of dependency or hardship provided the application meets the criteria in paragraph 6–2*a*.

(1)  Normal pregnancy of a Soldier's wife is not a condition for which separation is justified.

(2)  Undue hardship does not necessarily exist solely because of altered income, separation from Family, or the inconvenience normally incident to military service.

*c.  Conditions of dependency or hardship.*

(1) *Dependency.* Dependency exists when, because of death or disability of a member of a Soldier's (or spouse's) immediate Family, other members of a Soldier's (or spouse's) immediate Family become principally dependent on the Soldier for care or support to the extent that continued membership and service on active duty, FTNGD, or ADT, would result in undue hardship.

(a) *Hardship.* Hardship exists when, in circumstances not involving death or disability of a member of a Soldier's (or spouse's) immediate Family, separation from the Service would materially affect the care or support of the Family by materially alleviating undue hardship Parenthood. A married Soldier who becomes a parent by birth, adoption, or marriage (step parent) and whose child (or children) is (are) less than 18 years of age and reside(s) within the household, may apply for separation under hardship. The Soldier must submit evidence in accordance with paragraph 6–2*e* that the roles of parent and Soldier are incompatible and that they cannot fulfill their military obligation on active duty, FTNGD, or ADT, without neglecting the children.

(b) *Sole parents.* Soldiers who are sole parents and whose child (children) is (are) under 18 years of age and reside(s) within the household may apply for separation under hardship. A "sole parent" is a parent who is single by reason of never being married, or is divorced or legally separated and has been awarded child custody by judicial decree or court order, or is a widow or widower. Basis for separation is as prescribed in paragraph 6–2*c*(1)(*a*).

(c) *Intent.* It is not the intent of the Army to indiscriminately allow the separation of an enlisted Soldier who remained in the service during pregnancy and then requested release immediately after receiving the medical and monetary benefits related to prenatal and postnatal absence and delivery.

(d) *Supporting evidence.* Supporting evidence will be provided in accordance with paragraph 6–2*e*. Paragraph 6–2*e*(2) minimizes the supporting evidence when the basis is parenthood of either a sole parent or a married Soldier. However, Soldiers must meet the application criteria in paragraph 6–2*d*, in addition to the requirement that there be unexpected circumstances beyond the Soldier's control justifying separation. An example of these circumstances is the birth of a child with a serious birth defect requiring constant care. Inability to obtain an approved Family Care Plan (AR 600–20) does not qualify the Soldier for separation under this provision.

(e) *Surviving Spouse.* Soldiers may request separation for hardship when the death of military or civilian spouse occurs.

(2) *Members of the immediate Family.* For the purpose of separation under dependency or hardship conditions, the term "members of the immediate Family" includes only spouse, children, father, mother, brothers, sisters, and any person who stood in loco parentis to the Soldier (or spouse) before enlistment. (The term "in loco parentis," as used here, means "any person who has stood in the place of a parent to a Soldier (or spouse) for 5 continuous years when he or she was a child.")

d. *Application for separation.* A Soldier must submit a written application to be separated because of dependency or hardship. A request for separation will be submitted as follows:

(1) An ARNGUS Soldier, or USAR Soldier assigned to a TPU or IMA duty position, must submit a written application to the unit commander who will immediately forward it with recommendations and Soldier's records through channels to the separation authority (para 1–11) for final action.

(2) A Soldier assigned to the IRR, Standby Reserve, or Retired Reserve, must submit a written application to the Commander, U.S. Army Human Resources Command (AHRC–PAR), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5401. The Chief, Regional Personnel Actions Division, will immediately forward it with recommendations and Soldier's records through the Director, Personnel Actions and Services Directorate, and Director, Enlisted Personnel Management Directorate, to the CG, HRC (para 1–10*b*(1)) for final action.

e. *Evidence required.* The evidence required for dependency or hardship separation will normally be in affidavit form. The evidence must substantiate dependency or hardship conditions on which the application for separation is based.

(1) The evidence will include affidavits or statements submitted by or in behalf of the Soldier's Family members and by at least two disinterested persons or agencies having firsthand knowledge of the circumstances. If dependency or hardship is the result of disability of a member of the individual's Family, a physician's certificate should be furnished showing specifically when such disability occurred, the nature thereof, and prognosis for recovery. There also will be furnished the names, ages, occupations, home addresses, and monthly incomes of other members of the applicant's Family. The affidavits of disinterested individuals and agencies should include reasons within their knowledge that these members of the Family can or cannot aid in the financial or physical care of the Family members concerned for the period the Soldier is to continue membership or is ordered to active duty, FTNGD, or ADT. When the basis for the application is the death of a member of the Soldier's Family, a death certificate or other proof of death should be furnished.

(2) If the basis for the application is parenthood of either a sole parent or a married Soldier, the supporting evidence will be in affidavit form and will substantiate the applicant's claim that unexpected circumstances or circumstances beyond their control have occurred. These circumstances prevent fulfillment of military obligations without resultant neglect of the child. Affidavits from the Soldier's immediate commander and officer who is the job supervisor will be considered

sufficient. Evidence in 6-2e(1) is not required for these applications; however, sole parenthood resulting from divorce or legal separation will be substantiated by a judicial decree or court order awarding child custody to the Soldier.

*f. Procedures.* On receipt of a written application with required supporting evidence, the separation authority will—

(1) Consider carefully the facts on which the request is based.

(2) Obtain any other information that may be necessary to determine the validity of the request.

(3) Take final action to approve or disapprove the application.

## 6–3. Pregnancy

When it has been determined that a Soldier was pregnant at the time of enlistment, she will be processed in accordance with paragraph 6–6. When it has been determined that a Soldier became pregnant after enlistment, she will be allowed to elect one of the options under the provisions of AR 135–91, except as follows:

*a. Discharge for pregnancy.*

(1) Upon her request, a Soldier who meets all of the following criteria will be discharged from military service when it has been determined that the pregnancy occurred after she was processed for enlistment:

*(a)* She has not entered on initial active duty for training (IADT) or ever completed IET.

*(b)* She has not incurred an active duty obligation as a result of a federally subsidized program.

(2) Upon her request, a Soldier may be discharged when it has been determined that the pregnancy occurred after she was processed for enlistment and the separation authority determines she is eligible but possesses no potential to perform useful service if ordered to active duty to meet mobilization requirements in accordance with paragraph 1–26.

*b. Application for discharge.* A Soldier who meets the criteria in paragraph 6–3*a* may submit a written application to be discharged because of pregnancy.

(1) The Soldier may request a specific discharge date, which will not be later than 30 days prior to the expected date of delivery. This date may be accelerated by the separation authority if the applicant cannot fully meet the performance requirements of her duty MOS.

(2) A request for separation will be submitted as follows:

*(a)* An ARNGUS Soldier, or USAR Soldier assigned to a TPU or IMA duty position, may submit a written application to the unit commander who will immediately forward it with recommendations and the Soldier's records through channels to the separation authority (para 1–11) for final action.

*(b)* A Soldier assigned to the IRR or Standby Reserve may submit a written application to the Commander, U.S. Army Human Resources Command (AHRC–PAR), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5401. The Chief, Soldier Support Division, will immediately forward it with recommendations and the Soldier's records through the Director, Personnel Actions and Services Directorate, and Director, Enlisted Personnel Management Directorate, to the CG, HRC (para 1–11*b*(1)) for final action.

*c. Pregnancy terminated prior to discharge.* If, before discharge is accomplished, a medical doctor determines that the Soldier's pregnancy has terminated for any reason, discharge under this paragraph is no longer authorized.

## 6–4. Surviving sons or daughters

*a. Criteria.* A Soldier who becomes a surviving son or daughter after having enlisted or reenlisted, may apply for and promptly will be discharged. For the purpose of this paragraph, a surviving son or daughter is any son or daughter in a Family in which the father or mother or one or more of the sons or daughters:

(1) Have been killed in action or have died when serving in the U.S. Armed Forces from wounds, accident, or disease.

(2) Are in a captured or missing-in-action status.

(3) Have a permanent 100–percent service-related disability (including 100-percent mental disability), as determined by the Director of Veterans Affairs or one of the military services, and are not gainfully employed because of the disability.

*b. Ineligible.* A Soldier may not apply for discharge as a surviving son or daughter under any of the following circumstances:

(1) When the Soldier has court-martial charges pending against him or her.

(2) When the Soldier has been convicted by court-martial with appellate review in process.

(3) When the Soldier is serving a sentence to confinement, or is otherwise undergoing punishment, imposed by a court-martial.

(4) When the Soldier is being processed for involuntary administrative separation for cause.

(5) During a period of war or National emergency declared by the Congress.

*c. Waiver.* A Soldier who—

(1) After having been advised of the provisions in paragraph 6–4*a*, enlists, reenlists, or voluntarily extends their term of service after having been notified of the Family casualty on which the surviving status is based, will be considered as having waived their rights to request separation based on the determination that they are a surviving son or daughter.

(2) Has waived their right to discharge as a surviving son or daughter, in accordance with 6–4c(1), may request reinstatement of that status at any time. However, a request for reinstatement will not be granted automatically, but will be considered on the merits of the individual case. Approval for reinstatement rests with the separation authority in accordance with paragraph 1–11.

*d. Application.* A Soldier who meets the criteria in paragraph 6–4*a*, may submit a written application to be discharged as a surviving son or daughter.

(1) The application will include the following information:

*(a)* Name, grade, service number (when appropriate), social security number, branch of service (that is, Army), relationship, and date of death or disability of the Family member on which request is based.

*(b)* Department of Veterans Affairs claim number, if appropriate.

*(c)* Name, age, and sex of other Family members.

(2) The application will be submitted as follows:

*(a)* An ARNGUS Soldier, or USAR Soldier assigned to a TPU or IMA duty position, may submit a written application to the unit commander who will immediately forward it with recommendations and Soldier's records through channels to the separation authority (para 1–11) for final action.

*(b)* A Soldier assigned to the IRR or Standby Reserve may submit a written application to the Commander, U.S. Army Human Resources Command (AHRC–PAR), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5401. The Chief, Regional Personnel Actions Division, will immediately forward it with recommendations and Soldier's records through the Director, Personnel Actions and Services Directorate, and Director, Enlisted Personnel Management Directorate, to the CG, HRC (para 1–10*b*(1)) for final action.

*e. Verification.* Commanders authorized to approve discharge are also authorized to verify status of deceased or disabled Family members by forwarding a request, including name, grade, service number (when appropriate), social security number, approximate inclusive dates of service, and branch of the Armed Forces to the National Personnel Records Administration, National Personnel Records Center, 9700 Page Avenue, St. Louis, MO 63132–5200.

## 6–5. Involuntary separation due to parenthood

*a. General.* A Soldier may be separated by reason of parenthood if, as a result thereof, it is determined under the guidance set forth in chapter 2, section I, the Soldier is unable satisfactorily to perform their duties, or is unavailable for worldwide assignment or deployment if ordered to active duty, AT, FTNGD, or ADT.

*b. Counseling.* Commanders will ensure that, before recommending separation under this paragraph, the Soldier has been adequately counseled concerning deficiencies, and has been afforded the opportunity to overcome those deficiencies, as reflected in appropriate counseling or personnel records. See AR 600–20 concerning a Soldier's responsibilities for care of Family members as related to military responsibilities.

## 6–6. Not medically qualified under procurement medical fitness standards

*a.* Discharge will be accomplished on determination that a Soldier was not medically qualified under procurement medical fitness standards when accepted for enlistment, or who became medically disqualified under these standards prior to entry on IADT. A Soldier found to be not medically qualified under procurement medical fitness standards will be discharged on the earliest practicable date following such determination and prior to entry on IADT.

*b.* A basis for discharge exists when—

(1) A medical finding of the staff surgeon that the Soldier has a medical condition that—

*(a)* Would have permanently disqualified them from entry in the Army had it been detected or had it existed at the time of enlistment; and

*(b)* Does not disqualify them from retention under the provisions of AR 40–501.

(2) A Soldier is found positive for drugs as a result of accession testing on or after 1 June 1988.

(3) A Soldier is found to have been pregnant on enlistment. Pregnancy is a disqualifying medical condition for enlistment under AR 40–501, AR 601–210, and NGR 600–200. Women who are discharged under this paragraph for pregnancies that existed prior to entry service pregnancies are not entitled to maternity care, as provided in AR 40–400. The option of separation authorities provided elsewhere in the chapter to retain Soldiers recommended for discharge does not apply to existed prior to entry service pregnancies.

*c.* This paragraph is not to be used in personality disorder cases. Such cases will be processed under paragraph 6–7.

## 6–7. Other designated physical or mental conditions

*a.* The separation authority (para 1–11) may approve discharge under this paragraph on the basis of other physical or mental conditions not amounting to disability (AR 635–40) that potentially interfere with assignment to or performance of military duty. Such conditions may include, but are not limited to—

(1) Airsickness, motion, and/or travel sickness.

(2) Phobic fear of air, sea, and submarine modes of transportation.

(3) Attention-deficit/hyperactivity disorder.

(4) Sleeping walking.

(5) Enuresis.

(6) Adjustment disorder (except chronic adjustment disorder).

*(a)* Soldiers recommended for separation under this paragraph based upon a diagnosis of adjustment disorder must meet the following criteria – Soldier experiences one or more incident(s) of acute adjustment disorder and does not respond to treatment when one or more treatment modalities have been offered or attempted. Even after the attempted treatment, the condition must continue to interfere with assignment to or performance of duty.

*(b)* Duration must be less than 6 months when separation procedures are initiated. The provider must clearly document in the medical record how the condition interferes with assignment to or performance of duty.

*(c)* When an adjustment disorder has persisted for longer than 6 months, the Soldier must be referred to IDES.

(7) Personality disorder. A Soldier may be separated under this paragraph for personality disorder (not amounting to disability) that interferes with assignment to or performance of duty. A personality disorder is an enduring pattern of inner experience and behavior that deviates markedly from cultural expectations, is stable and of long duration, inflexible and pervasive across a broad range of situations, and leads to clinically significant distress or impairment in functioning. The onset of personality disorder is frequently manifested in the early adult years and may reflect an inability to adapt to the military environment as opposed to an inability to perform the requirements of specific jobs or tasks or both. As such, observed behavior of specific deficiencies should be documented in appropriate counseling or personnel records. Documentation will include history from supervisors, peers, and others, as necessary to establish that the behavior is persistent, interferes with assignment to or performance of duty, and has continued after the enlisted Servicemember was counseled and afforded an opportunity to overcome the deficiencies.

*b.* When a commander is concerned that a Soldier may have a physical or mental condition that interferes with assignment to or performance of duty, the commander will refer the Soldier for a medical examination and/or mental status evaluation in accordance with DODI 6490.04.

*c.* The evaluation will assess whether PTSD, TBI, depression, sexual assault, and other behavioral health conditions may be contributing factors to the basis for administrative separation.

*d.* The behavioral health provider will document in the electronic medical record the specific diagnostic criteria for the condition used as the basis for the Soldier's separation action in accordance with the most current edition of the Diagnostic and Statistical Manual of Mental Disorders. A statement indicating that the Soldier's disorder is of sufficient severity to interfere with the Soldier's ability to function in the military must be included. The diagnosis must be established by a privileged mental health provider as defined in DODI 6490.04. The installation director of psychological health, or designee, will corroborate the diagnosis and sign the DA Form 3822 (Report of Mental Status Evaluation).

(1) In accordance with paragraph 1–9, Soldiers will not be processed for administrative separation under this paragraph if PTSD, TBI, and/or other co-morbid behavioral health conditions are significant contributing factors to the basis for separation, but will instead be processed under the IDES in accordance with AR 635–40.

(2) In accordance with paragraph 1–10, Soldiers determined to have a medical condition that may not meet medical fitness standards for retention under AR 40–501 will be processed under IDES. Processing under IDES takes precedence over administrative separation.

(3) In accordance with AR 600–85, Soldiers who present with symptoms consistent with alcohol and/or drug use disorder must be referred for further evaluation and treatment.

(4) In accordance with AR 608–18, in cases where a mandated referral to the Family Advocacy Program is required based on the Soldier's clinical presentation, documentation must be submitted to confirm that a referral was made.

*e.* In the case of Soldiers who have served or are currently serving in an imminent danger pay area, the installation director of psychological health will corroborate the diagnosis of personality disorder or other mental disorder not constituting a physical disability and forward to the Office of the Surgeon General (DASG–HSZ), Behavioral Health Division for final review. The diagnosis will address PTSD, TBI, and other mental illness co-morbidity. Unless found fit for duty by the disability evaluation system, a separation for personality disorder, or other mental disorder not constituting a physical disability, is not authorized if service-related PTSD is also diagnosed. The Office of the Surgeon General will ensure healthcare provider compliance with the requirements in paragraphs 6–7*d*(1) through (4) and provide a memorandum to the installation director of psychological health. The Office of the Surgeon General review will be included in the separation packet. Soldiers who have never served in an imminent danger pay area do not require review by the Office of the Surgeon General.

*f.* Separation for personality disorder, or other mental disorder not constituting a physical disability, is not appropriate nor should it be pursued when separation is warranted on the basis of unsatisfactory performance or misconduct. Commanders will not take action prescribed in this chapter in lieu of disciplinary action solely to spare a Soldier who may have committed serious acts of misconduct for which harsher penalties may be imposed under the UCMJ.

*g.* Separation under this paragraph is authorized only if the condition is so severe that the Soldier's ability to function effectively in the military environment is significantly impaired. Separation under this paragraph is not appropriate when separation is warranted under any other reason authorized by this regulation; AR 380–67; or AR 635–40.

*h.* Separation processing may not be initiated under this paragraph until the Soldier has been counseled in writing formally concerning deficiencies and has been afforded ample opportunity to overcome those deficiencies as reflected in appropriate counseling or personnel records (see para 2–4). The Soldier will also be counseled in writing that the condition does not qualify as a disability. Additionally, applicable counseling statements that support separation under this paragraph will be included as part of the separation action and will be uploaded by the transition center into the Interactive Personnel Electronic Records Management System (iPERMS) prior to the administrative separation of the Soldier.

## 6–8. Characterization of service
The service of a Soldier separated under this chapter will be characterized as honorable, unless an uncharacterized description of service is required by paragraph 2–11, or a characterization of general (under honorable conditions) is warranted under chapter 2, section III.

## 6–9. Procedures
*a.* For separations under paragraphs 6–2, 6–3, and 6–4, prior to characterization of service of general (under honorable conditions), the Soldier will be notified of the specific factors in the service record that warrant such a characterization, and the notification procedure (chap 3, sec II) will be used.

*b.* For separations under paragraphs 6–5, 6–6, and 6–7, the notification procedure (chap 3, sec II) will be used.

*c.* For separation under paragraph 6–3, the MATP policy prescribed by chapter 1, section V, will govern whether the Soldier will be discharged from the Army, or retained in, or transferred/reassigned to the IRR.

## 6–10. Separation authority
*a.* The authorities cited in paragraph 1–11 may order separation under this chapter.

*b.* The involuntary separation (other than for physical disability) of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1–12).

# Chapter 7
# Defective Enlistments and Reenlistments

## 7–1. Minority enlistments
*a. Basis.*

(1) *Under age 17.* A minor under 17 years of age is barred from entering into a valid enlistment. The enlistment is void in the case of a minor who was under 17 years of age at date of enlistment and who has not attained the age of 17 on receipt of satisfactory evidence of the date of his or her birth.

(2) *Age 17.* Except when retained for the purpose of trial by court-martial, the Soldier will be separated in the following circumstances:

*(a)* There is satisfactory evidence that the Soldier is under 18 years of age.

*(b)* The Soldier enlisted without the written consent of his or her parent or guardian.

*(c)* An application for the Soldier's separation has been submitted to the Soldier's command by the parent or guardian within 90 days of the Soldier's enlistment.

*b. Description of separation.*

(1) A Soldier separated under paragraph 7–1*a*(1), will receive an order of release from the custody and control of the Army (by reason of void enlistment) (Order Format 505, AR 600–8–105).

(2) The separation of a Soldier under paragraph 7–1*a*(2), will be described as an entry level separation and the service will be uncharacterized.

*c. Procedure.* The notification procedure (chap 3, sec II) will be used.

*d. Separation authority.* The authorities cited in paragraph 1–11, may order separation under this paragraph.

**7–2. Erroneous enlistment, reenlistment, and extension**

*a. Basis.* A Soldier may be discharged on the basis of an erroneous enlistment, reenlistment, or extension of enlistment under the guidance set forth in chapter 2, section I. An enlistment, reenlistment, or an extension of enlistment is erroneous in the following circumstances, if:

(1) It would not have occurred had the relevant facts been known by the Government or had appropriate regulations been followed.

(2) It was not the result of fraudulent conduct on the part of the Soldier.

(3) The defect is unchanged in material respects.

*b. Actions on discovery.* When it is discovered that a Soldier's enlistment, reenlistment, or extension is erroneous because they failed to meet the qualifications for enlistment, reenlistment, or extension (AR 140–111, AR 601–210, AR 601–280, or NGR 600–200), as applicable, the unit commander (CG, HRC (AHRC–EP–S) for IRR, IMA, or Standby Reserve Soldiers) will initiate action to retain, discharge, or release the Soldier, as appropriate, under the provisions of this paragraph. The unit commander (CG, HRC (AHRC–EP–S), for IRR, IMA, or Standby Reserve Soldiers) will forward the case through channels to the appropriate separation authority (para 1–11) with the following information:

(1) Facts relating to and circumstances surrounding the erroneous enlistment or extension.

(2) The desire of the Soldier regarding retention or discharge.

(3) A statement by the immediate commander as to the Soldier's conduct, efficiency, and overall value to the Army.

(4) A specific recommendation for retention or discharge, and the reasons, by each commander in the chain of command.

*c. Actions by separation authority.* The separation authority will—

(1) Direct retention.

*(a)* In an exceptionally meritorious case involving a disqualification listed as nonwaivable in AR 140–111, AR 601–210, or AR 601–280, when, in the judgment of the separation authority, retention of the Soldier is in the best interest of the Army and retention is otherwise in accordance with law. The following statement will be entered in Item 27 of the Soldier's DA Form 2–1: "Separation action based on erroneous enlistment or extension is waived and retention is authorized by."

*(b)* In those cases in which the disqualification was waivable or the defect is no longer present and retention is deemed to be in the best interest of the Army and the Soldier. The Soldier's DA Form 2–1 will be annotated as in paragraph 7–2c(1)(a).

(2) Direct separation.

*(a)* In those cases in which the disqualification was waivable or the defect is no longer present and discharge is requested by the Soldier and deemed to be in the best interest of the Army. (Order Format 500, AR 600–8–105).

*(b)* In all cases in which the disqualification was nonwaivable, except in extremely meritorious cases as described in paragraph 7–2c(1)(a).

*(c)* When it has been established that an enlistment is erroneous because it was effected without the voluntary consent of a person who has the capacity to understand the significance of the enlistment (to include persons intoxicated or insane at enlistment) and a constructive enlistment did not arise within the same term of service, issue orders releasing the person from custody and control of the Army by reason of a void enlistment (Order Format 505, AR 600–8–105). The following entry will be made in Item 27 of DA Form 2–1: "Released from custody and control of the Army because of a void enlistment (cite order number and issuing headquarters)." A copy of the orders releasing the individual will be filed as a permanent document in their AMHRR.

*(d)* When it has been established that an enlistment is erroneous because the individual is a deserter from another military service, issue orders releasing the person from custody and control of the Army by reason of a void enlistment (Order Format 505, AR 600–8–105), regardless of any subsequent constructive enlistment.

*(e)* If before an enlistee's departure from a military entrance processing station, if it is discovered that they were erroneously enlisted in a circumstance, set forth in DODI 1332.14, enclosure 3, subparagraph E3.A1.1.5.2, the enlistment will be voided as follows. The military entrance processing station commander will revoke any orders already issued regarding the enlistee's assignment and training and will issue an order assigning the individual to the adjacent RBN. The RBN commander will issue orders releasing the person from custody and control of the Army by reason of a void enlistment (Order Format 505, AR 600–8–105).

*d. Characterization or description of service.*

(1) When discharged under paragraph 7–2c(2)(a), service will be characterized as honorable unless an uncharacterized description of service is required by paragraph 2–11a.

(2) When separated under paragraphs 7–2c(2)(b) through (e), the separation will be described as a release from custody and control of the Army and service will not be characterized.

*e. Procedure.*

(1) If the command recommends the Soldier be retained in military service, the initiation of separation proceedings is not required if the separation authority approves the recommendation.

(2) If separation processing is initiated, the notification procedure (chap 3, sec II) will be used.

*f. Separation authority.* The authorities cited in paragraph 1–11, may order separation under this paragraph.

## 7–3. Defective enlistments or reenlistments

*a. Basis.* A defective enlistment or reenlistment agreement exists in the following circumstances:

(1) As a result of a material misrepresentation by recruiting or retention personnel, upon which the Soldier reasonably relied, and the Soldier was induced to enlist or reenlist with a commitment for which the Soldier was not qualified.

(2) The Soldier received a written enlistment or reenlistment commitment from recruiting or retention personnel for which the Soldier was qualified, but which cannot be fulfilled by the Army.

(3) The enlistment or reenlistment was involuntary.

*b. Characterization or description.* Service will be characterized as honorable, unless an uncharacterized description of service, or an order of release from custody and control of the Army (by reason of void enlistment) is required under chapter 2, section III.

*c. Requirements.* This provision does not bar appropriate disciplinary action or other administrative separation proceedings regardless of when the defect is raised. Separation is appropriate under this provision only in the following circumstances:

(1) The Soldier did not knowingly participate in creation of the defective enlistment or reenlistment;

(2) The Soldier brings the defect to the attention of appropriate authorities within 30 days after the defect is discovered or reasonably should have been discovered by Soldier;

(3) The Soldier requests separation instead of other authorized corrective action; and

(4) The request otherwise meets such criteria as established by this regulation.

*d. Separation authority.* The authorities cited in paragraph 1–11, may order separation under this paragraph.

## 7–4. Fraudulent enlistments or reenlistments

*a. Basis.* A Soldier may be separated under the guidance set forth in chapter 2, section I, on the basis of procurement of a fraudulent enlistment or reenlistment through any deliberate material misrepresentation, omission, or concealment which, if known at the time of the enlistment or reenlistment might have resulted in rejection. This includes all disqualifying information requiring a waiver. However, the enlistment of a minor with false representation as to age without proper consent will not in itself be considered as fraudulent enlistment.

*b. Establishing fraud.* The following tests must be applied in each case of suspected fraudulent enlistment or reenlistment to establish that the enlistment or reenlistment was, in fact, fraudulent:

(1) *First test.* Commanders will determine if previously concealed information is in fact disqualifying. This information will be evaluated using the appropriate criteria for enlistment or reenlistment. Any waivable or nonwaivable disqualification concealed, omitted, or misrepresented constitutes fraudulent entry. This includes concealing information with alleged or actual recruiter connivance. If, however, the newly revealed information does not amount to a disqualification from enlistment or reenlistment under the appropriate regulation, then there is no fraudulent enlistment or reenlistment. Hence, the enlistment or reenlistment is valid and separation may not be directed.

(2) *Second test.* Commanders must verify the existence and true nature of the apparently disqualifying information. Verification of the actual offense may reveal that the enlistee was not disqualified and, therefore, is not a fraudulent enlistee. For example, if the Soldier alleged that they were convicted of burglary and placed on probation, inquiries must be made whether they were actually convicted of burglary. In fact, they may have initially been charged with burglary, but it may have been reduced to trespass, which is a minor nontraffic offense for enlistment purposes. If it is the only record that the Soldier has, they are not disqualified for enlistment or reenlistment. Hence, the enlistment or reenlistment is valid and separation may not be directed. To conduct an inquiry using these tests to establish existence of fraud, a delay of 30 days is considered reasonable.

*c. Fraudulent actions.* The following represent some, but not all, of the actions which, when verified, substantiate the existence of a fraudulent enlistment or reenlistments:

(1) Concealment of a prior separation from any of the Armed Forces of the United States under conditions barring enlistment or reenlistment in the ARNGUS or USAR.

(2) Concealment of true citizenship status by an alien at the time of enlistment or reenlistment.

(3) Concealment by a Soldier of a conviction by civil court for a criminal offense for which the Soldier was sentenced to imprisonment, probation, or parole, or given a suspended sentence.

(4) Concealment of a record as a juvenile offender.

(5) Concealment of medical defect or disability that would have precluded enlistment or reenlistment in the ARNGUS or USAR for the purpose of fraudulently obtaining veteran's benefits, hospitalization, disability retirement, monetary benefits, or a position to which the person would not otherwise be entitled.

(6) Concealment of absence without leave or desertion from an Armed Force of the United States.

(7) Misrepresentation of intent regarding legal custody of children. Wherein a Soldier without a spouse at the time of enlistment certified that children were not under their legal custody and then following enlistment, custody of the children is regained by court decree, as provided by State law, or as a result of the children resuming residency with the Soldier instead of the legal custodian.

(8) Concealment disqualification. Where a Soldier has procured entry into the ARNGUS or USAR by assuming the identity of another individual, or by concealment of any fact, circumstances, or condition that existed prior to enlistment or reenlistment which would have made the Soldier ineligible.

*d. Characterization or description.* Characterization of service or description of separation will be in accordance with chapter 2, section III. If the fraud involves concealment of a prior separation in which service was not characterized as honorable, characterization normally will be under other than honorable conditions.

*e. Requirements.* The notification procedure (chap 3, sec II) will be used except as follows:

(1) Characterization of service under other than honorable conditions may not be issued unless the administrative board procedure (chap 3, sec III) is used.

(2) When the sole reason for separation is fraudulent entry, suspension of separation (chap 2, sec II) is not authorized. When there are approved reasons for separation in addition to fraudulent entry, suspension of separation is authorized only in the following circumstances:

*(a)* A waiver of the fraudulent entry is approved by the proper authority; and

*(b)* The suspension pertains to reasons for separation other than fraudulent entry.

(3) If the command recommends that the Soldier be retained in the ARNGUS or USAR, the initiation of separation processing is unnecessary in the following circumstances:

*(a)* The defect is no longer present; or

*(b)* The defect is waivable and a waiver is obtained from appropriate authority.

*f. Separation authority.* The authorities cited in paragraph 1–11, may order separation under this paragraph.

# Chapter 8
# Entry Level Performance and Conduct

## 8–1. Basis

*a.* A Soldier may be separated under this chapter if they are notified of the initiation of separation proceedings while in an entry level status (see glossary) when it is determined under the guidance set forth in chapter 2, section I, that the Soldier is unqualified for further military service by reason of unsatisfactory performance or conduct (or both), as evidenced by inability, lack of reasonable effort, failure to adapt to the military environment or minor disciplinary infractions.

*b.* When separation of a Soldier in entry level status is warranted by unsatisfactory performance or minor disciplinary infractions (or both), the Soldier normally will be separated in accordance with this chapter. Nothing in this chapter prevents separation under another provision of this regulation when such is warranted.

## 8–2. Counseling and rehabilitation

Separation processing may not be initiated under this chapter until the Soldier has been formally counseled under the requirements prescribed by paragraph 2–4.

## 8–3. Characterization and description

The service of a Soldier who is separated under this chapter will be uncharacterized.

## 8–4. Procedures

*a.* The notification procedure (chap 3, sec II) will be used.

*b.* The MATP policy prescribed by chapter 1, section V, will govern whether the Soldier will be discharged, or transferred to the IRR.

## 8–5. Separation authority

The authorities cited in paragraph 1–11, may order separation under this paragraph.

## Chapter 9
## Unsatisfactory Performance

### 9–1. Basis
A Soldier may be discharged when it is determined under the guidance set forth in chapter 2, section I, the Soldier is unqualified for further military service by reason of unsatisfactory performance.

### 9–2. Criteria
 *a.* Commanders will take action to discharge a Soldier for unsatisfactory performance when it is clearly established that—

 (1) In the commander's judgment—

 *(a)* A Soldier will not develop sufficiently to participate satisfactorily in further training or become a satisfactory Soldier.

 *(b)* The seriousness of the circumstances forming the basis for initiation of discharge proceedings is such that the Soldier's retention would have an adverse impact on military discipline, good order, and morale.

 (2) There is a likelihood that the Soldier will be a disruptive influence in present or future duty assignments.

 (3) There is a likelihood that the circumstances forming the basis for initiation of separation proceedings will continue or recur.

 (4) The ability of the Soldier to perform duties effectively in the future, including potential for advancement or leadership, is unlikely.

 (5) The Soldier meets retention medical standards (AR 40–501). See paragraph 1–9.

 *b.* Commanders will initiate separation action only when the Soldier is under military control. As an exception, commanders may initiate this action when a Soldier is confined by civil authorities and their military record indicates that they should be processed for separation by reason of unsatisfactory performance.

 *c.* When a Soldier has committed serious acts of misconduct, commanders will not take action prescribed in this chapter in lieu of discharge for misconduct under chapter 11 solely to spare their penalties.

 *d.* This chapter applies also to Soldiers who are pregnant and whose substandard duty performance is not attributable solely to the condition of pregnancy, such as, failure to report to duty without medical or military authorization.

 *e.* Initiation of discharge proceedings is required for Soldiers without medical limitations who have two consecutive failures of the Army Physical Fitness Test, or who are eliminated for cause from Noncommissioned Officer Education System courses, unless the responsible commander chooses to impose a bar to continued service in accordance with AR 140–111 or NGR 600–200.

### 9–3. Counseling and rehabilitation
Discharge processing may not be initiated under this chapter until the Soldier has been formally counseled under the procedures prescribed by paragraph 2–4.

### 9–4. Suspension of favorable personnel action
Favorable personnel action will be suspended in accordance with AR 600–8–2 upon initiation of discharge proceedings under this chapter.

### 9–5. Medical processing and evaluation
Medical processing and evaluation guidance is listed in paragraph 1–9.

### 9–6. Characterization of service
The service of Soldiers discharged because of unsatisfactory performance will be characterized as honorable or general (under honorable conditions) in accordance with chapter 2, section III.

### 9–7. Procedures
 *a.* The notification procedure (chap 3, sec II) will be used, except under paragraph 9–7*b*.

 *b.* The administrative board procedure (chap 3, sec III) will be used if the Soldier has 18 but fewer than 20 years of qualifying service for retired pay.

### 9–8. Separation authority
 *a.* The authority cited in paragraph 1–11, may order discharge under this chapter.

*b.* The involuntary discharge (other than for physical disability) of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1–12).

# Chapter 10
# Substance Abuse Rehabilitation Failure

## 10–1. Basis

*a.* Initiation of discharge proceedings is required in the case of a Soldier who has been referred to a program of rehabilitation for alcohol or drug abuse under the provisions of AR 600–85, and who fails, through inability or refusal to participate in, cooperate in, or successfully complete the program in the following circumstances:

(1) There is a lack of potential for continued military service.

(2) Long-term rehabilitation in a civilian medical facility is determined necessary.

(3) Rehabilitation failure includes Soldiers with a subsequent alcohol or drug-related incident of misconduct at any time during the 12–month period following successful completion of the Army Substance Abuse Program or during the 12–month period following removal from the program.

*b.* A Soldier may be discharged when the commander, in consultation with an Army Substance Abuse Program official (AR 600–85), determines that further rehabilitation efforts are not practical, rendering the Soldier a rehabilitation failure, and discharge is in the best interest of the Army.

*c.* Nothing in this chapter precludes discharge of a Soldier who has been referred to such a program under any other provision in appropriate cases.

*d.* Soldiers with a subsequent alcohol or drug-related incident of misconduct at any time during the 12–month period following successful completion of the Army Substance Abuse Program, or during the 12–month period following removal from the program for any reason, will be processed for separation as an alcohol or drug abuse rehabilitation failure.

## 10–2. Characterization or description

When a Soldier is discharged under this chapter, characterization of service as honorable or general (under honorable conditions) is authorized, except when service is uncharacterized for Soldiers in entry level status.

*a.* The relationship between voluntary submission for treatment and the evidence that may be considered on the issue of characterization is set forth in paragraph 2–10*f.*

*b.* On the issue of whether mandatory urinalysis results may be considered on the issue of characterization of service, see paragraph 2–10*g* and AR 600–85.

## 10–3. Procedures

*a.* The notification procedure (chap 3, sec II) will be used, except under paragraph 10–3*b.*

*b.* The administrative board procedure (chap 3, sec III) will be used if the Soldier has 18 but fewer than 20 years of qualifying service for retired pay.

## 10–4. Separation authority

*a.* The authorities cited in paragraph 1–11 may order discharge under this chapter.

*b.* The discharge of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1–12).

# Chapter 11
# Misconduct

## 11–1. Basis

A Soldier may be discharged for misconduct when it is determined under the guidance set forth in chapter 2, section I, that the Soldier is unqualified for further military service by reason of one or more of the following circumstances:

*a. Minor disciplinary infractions.* A pattern of misconduct consisting solely of minor disciplinary infractions. If separation of a Soldier in entry level status is warranted solely by reason of minor disciplinary infractions, the action will be processed under chap 8.

*b. A pattern of misconduct.* A pattern of misconduct consisting of discreditable involvement with civil or military authorities or conduct prejudicial to good order and discipline. Discreditable conduct and conduct prejudicial to good order and discipline include conduct which violates the accepted standards of personal conduct found in the UCMJ, Army regulations, the civil law, and time-honored customs and traditions of the Army.

*c. Commission of a serious offense.*  Commission of a serious military or civilian offense, if the specific circumstances of the offense warrant discharge and a punitive discharge would be authorized for the same or a closely related offense under the UCMJ.

*d. Abuse of illegal drugs or alcohol.*  Illegal drug use is serious misconduct. Separation action normally will be based upon commission of a serious offense. However, relevant facts may mitigate the nature of the offense. Therefore, a single drug offense may be combined with one or more disciplinary infractions or incidents or other misconduct and processed for discharge under paragraph  11–1*a* or 11–1*b*, as appropriate.

(1)  Commanders will process for separation all Soldiers who—

*(a)*  Test positive for illegal drug use.

*(b)*  Are involved in two serious incidents of alcohol-related misconduct within a 12-month period, in accordance with AR 600–85.

*(c)*  Are involved in illegal trafficking, distribution, possession, use, or sale of illegal drugs.

*(d)*  Convicted of driving while intoxicated or driving under the influence a second time during their career.

*(e)*  Have not been referred to a court-martial authorized to impose a punitive discharge.

(2)  The term "process for separation" means that the separation action will be initiated and processed through the chain of command to the separation authority for appropriated action.

(3)  Voluntary (self) identification/referral in accordance with AR 600–85 does not require initiation of discharge proceedings under this paragraph.

*e. Civil conviction.*  See paragraph 11–2.

## 11–2.  Conviction by civil court

A Soldier may be discharged for misconduct when it is determined under the guidance set forth in chapter 2, section I, that the Soldier is unqualified for further military service by reason of a civil conviction.

*a. Conditions which subject Soldier to discharge.*

(1)  Discharge action may be initiated against Soldiers under the following circumstances:

*(a)*  When initially convicted by civil authorities. Conviction includes a plea or finding of guilty, a plea of nolo contendere (plea of no contest—a plea of guilty to the charge(s) without admitting guilt) and all other actions tantamount to a finding of guilty, including adjudication withheld, deferred prosecution, entry into adult or juvenile pretrial intervention programs, and any similar disposition of charges.

*(b)*  When a punitive discharge would be authorized for the same or a closely related offense under the UCMJ, or the sentence by civil authorities includes confinement for 6 months or more without regard to suspension or probation.

*(c)*  When specific circumstances of the offense warrant discharge.

(2)  The immediate commander will consider whether to initiate separation action against a Soldier when the criteria of paragraph 11–2*a* are satisfied.

(3)  Adjudication in juvenile proceedings includes adjudication as a juvenile delinquent, wayward minor, or youthful offender.

(4)  If no separation action is undertaken on a Soldier's final civil conviction after the passage of 2 years, it is presumed that the Soldier's commanding officer has determined that retention of the Soldier is in the best interest of the Army. However, this presumption may be rebutted and separation action initiated when it is established by a preponderance of the evidence that the Soldier's commanding officer did not make such a determination.

*b. Appeals.*  A Soldier will be considered as having been convicted or adjudged a juvenile offender even though an appeal is pending or is subsequently filed. A respondent subject to discharge under this regulation will be considered and processed for separation even though they have filed an appeal or have stated their intention to do so. However, execution of the approved discharge will be withheld until the Soldier has indicated in writing that they do not intend to appeal the conviction or adjudication as a juvenile offender, or until the time an appeal may be made has expired, whichever is earlier; or if an appeal has been made, until final action has been taken. On request of the Soldier or when the Soldier is present for duty and the commander believes their presence is detrimental to good order and discipline or the Soldier presents a threat to the safety and welfare of other members of the organization, it may be appropriate to discharge a Soldier prior to final action on an appeal. In such cases, the entire file will be forwarded to HQDA (para 1–13) for a final decision. The recommendation of the separation authority for immediate discharge as an exception will fully substantiate the circumstances on which the recommendation is based.

*c. Retention action.*  Cases often arise that warrant consideration with a view toward retention of the Soldier in the Army.

(1)  In determining whether retention should be recommended or approved, full consideration should be given to the gravity of the offense involved, the circumstances related to it and any matters in extenuation. Also, the military record of the Soldier prior to the commission of the offense should be considered as well as prospects for rehabilitation.

(2)  If retention in the Army is desired and a form of civil custody exists, such as parole or probation, the nature of which would interfere with the Soldier's normal performance of military duties, civil authorities will be requested to relinquish such custody during the Soldier's term of military service. If the civil authorities decline to relinquish custody or if the conditions placed on relinquishment of custody are unduly burdensome to the Army, as a general rule, the Soldier will not be considered for retention, but will be discharged under this regulation.

*d.  Action following disposition by civil courts.*

(1)  When discharge is contemplated, while a Soldier is under military control, the unit commander will take action as specified in the administrative board procedure (chap 3, sec III). Where the Soldier is confined, the provisions of paragraph 2–18 and chapter 3, section IV, are applicable.

(2)  If the sole basis for discharge is conviction of a civil offense, counseling, and rehabilitative efforts are not required prior to initiation of discharge action.

(3)  When a board hearing has been properly waived, the case will be processed under the notification procedure and the separation authority will take action under paragraph 3–9.

## 11–3.  Procedures for civil court cases in foreign countries

*a.*  Discharge of Soldiers convicted by a foreign tribunal may be approved by outside continental United States (OCONUS) area commanders except as provided in paragraph 11–3*c*. This authority may be delegated to an Army Reserve Command/general officer commander with a judge advocate on his or her staff. Every action taken in such delegation will state the authority. When a Soldier is convicted by a foreign tribunal, and the Soldier returns to the United States before the initiation or completion of discharge proceedings in accordance with this paragraph, discharge proceedings will be initiated or completed in accordance with paragraph 10–2. The proceedings will be completed as if the Soldier had been convicted by a court of the United States or its territorial possession. However, the recommendation for discharge will include the items specified in paragraphs 11–3*b*(1) through (4). In such cases, the authorities specified in paragraph 1–11, may approve and order discharge under this paragraph if the Soldier has been assigned to their command. However, HQDA (para 1–13) authorization is required before Soldiers who have completed 18 but fewer than 20 years of qualifying service for retired pay may be discharged. This provision is not intended to relieve OCONUS commanders of their responsibility to promptly initiate and process civil court cases on Soldiers of their command.

*b.*  The commander will forward the board proceedings, or waiver, through channels to the OCONUS area commander. Cases will be processed through the chain of command to the commander in the United States authorized to approve discharge. In both situations, the recommendation regarding discharge will include—

(1)  Information concerning the civil record and military service of the Soldier.

(2)  A statement from the court indicating that the Soldier has been initially convicted.

(3)  A statement as to the type of discharge and the character of service desired. This will include a statement as to whether paragraph 3–10, has been complied with.

(4)  A report of the trial proceedings submitted by the official U.S. observer, if any, attending the trial or a transcript of the record of trial, if obtainable.

*c.*  Soldiers confined in foreign prisons will not be discharged from military service until the term of imprisonment is completed and they return to the United States. Normally, Soldiers whose cases are disposed of by a foreign tribunal, but not confined, or who are confined but whose release from confinement is imminent, will be returned to the United States, or its territorial possessions for discharge. It is general policy that the Soldier will be returned to the continental United States (CONUS). Very unusual cases may be forwarded through command channels to HQDA (para 1–13), with supporting reasons as to why a Soldier should be authorized discharge in a foreign country. Only most unusual situations will be considered. If discharge in a foreign country is desired, either by the commander or the Soldier concerned, this paragraph will be complied with before such requests are submitted to HQDA.

*d.*  If HQDA authorizes discharge in a foreign country, the overseas commander accomplishing the discharge will inform the nearest U.S. diplomatic or consular mission of such action.

## 11–4.  Related separations

*a.*  Soldiers convicted in civilian or military court of the following will be processed for separation:

(1)  *Sex offense.* Any Soldier convicted of a sex offense, but whose sentence did not include a punitive discharge, will be processed for separation. This policy applies to all Soldiers currently in the Army, regardless of when the conviction for a sex offense occurred and regardless of component of membership and current status in that component. If the separation authority approves retention, he or she will initiate an action for the exercise of Secretarial plenary separation authority under paragraph 13–3. If a Soldier who has been convicted of a sex offense has previously been subject to an administrative separation action for that conviction and has been retained as a result of that proceeding, the separation authority will also initiate an action for exercise of Secretarial plenary separation authority under paragraph 13–3. The

processing of Secretarial plenary separation authority actions will comply with all current notification and processing guidance contained in this regulation.

(2) *Sexual assault.* Any Soldier convicted of rape, sexual assault, forcible sodomy, or an attempt to commit one of those offenses who is not punitively discharged, must be processed for administrative separation for Commission of a serious offense.

*b.* In all instances where administrative separation for an enlisted military sex offender is forwarded to the initial separation authority for final action, and the initial separation authority supports retention, the separation authority will forward the case to the Secretary of the Army for final decision pursuant to Secretarial Plenary Authority (para 13–3).

*c.* Any separation decision will be based on the full facts of the case, and due process will be provided to the enlisted Servicemember.

*d.* Soldiers currently serving in any non-permitted OCONUS locations who have been convicted of a sex offense are ineligible for continued duty at those locations. Accordingly, overseas commanders of Army commands, Army service component commands or direct reporting units will identify such Soldiers in their commands and coordinate with the applicable Headquarters, Department of the Army assignment authority (Commander, HRC; The Judge Advocate General; or Chief of Chaplains) for reassignment to CONUS,  Hawaii, Alaska, the Commonwealth of Puerto Rico, or Territories or possessions of the United States as soon as possible. Soldiers who are deployed to a non-permitted OCONUS location in any status (temporary duty/temporary change of station) will immediately be returned to their parent organization. Command responsibility to reassign or redeploy a Soldier under this policy takes precedence over initiation of separation. Accordingly, Soldiers convicted of a sex offense will first be reassigned or redeployed to a CONUS or permitted OCONUS location. The receiving commander will subsequently ensure the initiation of separation.

## 11–5.  Counseling and rehabilitation

*a.* Separation processing for minor disciplinary infractions or a pattern of misconduct (paras 11–1*a* and b) will not be initiated under this chapter until the Soldier has been formally counseled under the requirements prescribed by paragraph 2–4.

*b.* If the sole basis for discharge is a single offense (paras 11–1*c* and 11–1*d*) or a civilian conviction or a juvenile adjudication (para 11–2), the counseling and rehabilitation requirements of paragraph 2–4, are not applicable.

## 11–6.  Suspension of favorable personnel action

Favorable personnel action will be suspended in accordance with AR 600–8–2 upon initiation of separation processing under this chapter.

## 11–7.  Medical processing and evaluation

Medical processing and evaluation guidance is listed in paragraph 1–9.

## 11–8.  Characterization of service

*a.* Characterization of service normally will be under other than honorable conditions, but characterization as general (under honorable conditions) may be warranted under the guidelines in chapter 2, section III.

*b.* For Soldiers who have completed entry level status, characterization of service as honorable is not authorized, unless the Soldier's record is otherwise so meritorious that any other characterization clearly would be inappropriate. In such cases, separations for misconduct with an honorable characterization will be approved by the separation authority (para 1–11). As an exception, the separation authority will approve separations with service characterized as honorable when the sole evidence of misconduct is command-directed urinalysis results, which cannot be used for characterization of service, or when an administrative discharge board has recommended separation with an honorable characterization of service.

*c.* When characterization of service under other than honorable conditions is not warranted for a Soldier in entry level status under chapter 2, section III, the service will be described as uncharacterized.

## 11–9.  Procedures

*a.* The administrative board procedure (chap 3, sec III) will be used, except under paragraph 11–9*b*.

*b.* The use of the notification procedure is authorized provided characterization of service under other than honorable conditions is unwarranted.

## 11–10.  Separation authority

*a.* The authority cited in paragraph 1–11 may order discharge under this chapter.

*b.* The involuntary discharge (other than for physical disability) of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1–12).

# Chapter 12
# Unsatisfactory Participation in the Ready Reserve

## 12–1. Basis

*a.* A Soldier is subject to discharge for unsatisfactory participation when it is determined that the Soldier is unqualified for further military service because:

(1) The Soldier is an unsatisfactory participant as prescribed by AR 135–91.

(2) Attempts to have the Soldier respond or comply with orders or correspondence have resulted in—

*(a)* The Soldier's refusal to comply with orders or correspondence.

*(b)* A notice sent by certified mail was refused, unclaimed, or otherwise undeliverable.

*(c)* Verification that the Soldier has failed to notify the command of a change of address and reasonable attempts to contact the Soldier have failed.

*b.* Separation action may be taken when the Soldier cannot be located or is absent in the hands of civil authorities in accordance with the provisions of paragraph 2–18 and chapter 3, section IV.

*c.* Commanders will not take action prescribed in this chapter in lieu of disciplinary action solely to spare a Soldier who may have committed serious misconduct the harsher penalties that may be imposed under the UCMJ.

## 12–2. Suspension of favorable personnel action

Favorable personnel action will be suspended in accordance with AR 600–8–2 upon initiation of separation processing under this chapter.

## 12–3. Characterization of service

*a.* Characterization of service normally will be under other than honorable conditions, but characterization as general (under honorable conditions) may be warranted under the guidelines in chapter 2, section III.

*b.* For Soldiers who have completed entry level status, characterization of service as honorable is not authorized unless the Soldier's record is otherwise so meritorious that any other characterization clearly would be inappropriate. In such cases, separation for unsatisfactory participation with an honorable characterization will be approved by the separation authority (para 1–11). As an exception, the separation authority will approve separation with service characterized as honorable when an administrative separation board has recommended such characterization.

*c.* When characterization of service as under other than honorable conditions is not warranted for a Soldier in entry level status under chapter 2, section III, the service will be described as uncharacterized.

## 12–4. Procedures

*a.* The administrative board procedure (chap 3, sec III) will be used, except under paragraph 12–4*b*.

*b.* Except for a Soldier who has 18 but fewer than 20 years of qualifying service for retired pay, the use of the notification procedure (chap 3, sec II) is authorized if a characterization of service under other than honorable conditions is not warranted under chapter 2, section III.

*c.* The MATP policy prescribed by chapter 1, section V, will govern whether the Soldier will be discharged, or transferred to the IRR.

## 12–5. Separation authority

*a.* The authority cited in paragraph 1–11 may order separation under this chapter.

*b.* The involuntary separation (other than for physical disability) of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (paras 1–12 and 1–13).

# Chapter 13
# Secretarial Plenary Authority

## 13–1. Basis

*a.* Separation under this paragraph is the prerogative of the Secretary of the Army. Secretarial plenary separation authority is exercised sparingly and seldom delegated. Ordinarily, it is used when no other provision of this regulation applies,

and early separation is clearly in the best interests of the Army. Separations under this chapter are effective only if approved, in writing, by the Secretary of the Army or approved designee as announced in updated memoranda.

*b.* Secretarial separation authority is normally exercised on a case-by-case basis but may be used for a specific class or category of Soldiers. When used in the latter circumstance, it is announced by a special HQDA directive that may, if appropriate, delegate blanket separation authority to field commanders for the class or category of Soldiers concerned.

*c.* Individual cases that may be submitted to HQDA for consideration of separation under Secretarial plenary authority include those processed under paragraphs 2–3*a*, 3–18*e*, and 3–18f(2)(b). Other bases for separation under this paragraph include, but are not limited to, refusal to submit to medical care (AR 600–20), human immunodeficiency virus (HIV) infection (AR 600–110), and when religious practices cannot be accommodated (AR 600–20).

### 13–2. Characterization of service
The service of Soldiers separated under this chapter will be characterized as honorable or under honorable conditions as determined under chapter 2, section III,  unless an uncharacterized description of service is warranted under paragraph 2–11.

### 13–3. Procedures
*a.* Separation under this paragraph may be voluntary or involuntary. When involuntary separation proceedings are initiated, the notification procedure (chap 3, sec II) will be used; however, the provision for requesting an administrative board (para 3–5*a*(7)) is not applicable. Unless waived by HQDA, medical examinations are required for Soldiers being processed for involuntary separation (para 1–9*a*).

*b.* Blanket or individual requests for separation under this paragraph will be submitted to the authorities cited in paragraph 1–13. Chain of command forwarding endorsements must include rationale to support determination that early separation is in the best interest of the Army, as well as a statement whether the counseling requirements of paragraph 2–4, have been met. In addition, chain of command forwarding endorsements on individual cases must include recommendations concerning characterization or description of service and, when applicable, transfer or reassignment to the IRR (chap 1, sec V), recoupment of incentives or entitlements (AR 135–7), and award of separation pay.

## Chapter 14
## Separation for Other Reasons

### Section I

### Reasons for Separation

### 14–1. Basis
*a. Noncitizens.* Provided one of the following conditions exists, a noncitizen will be discharged:

(1) At the time of release from active duty, the Soldier fails or refuses to give a permanent mailing address within the United States or its territories but gives only an address in a foreign country.

(2) Leaves the United States for permanent residence in a foreign country.

(3) Visits a foreign country of which the Soldier is a national for a continuous period of 6 months or more.

*b. Ministers of religion and divinity students.* A Soldier will be discharged, upon request, if they have a regular or ordained minister of religion, or upon entering full-time training to become or to engage in full-time employment as a regular or duly ordained minister of religion.

(1) A minister of religion is classified as either a duly ordained minister of religion or a regular minister of religion as follows:

*(a) Duly ordained minister of religion.* A person who has been ordained in accordance with the ceremonial ritual or discipline of a church, religious sect, or organization, established on the basis of the community's doctrine and practices of a religious character, to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies in public worship, and who, as a regular customary vocation, teaches the principles of religion and administers the ordinances of worship as embodied in the creed or principles of such church, sect, or organization.

*(b) Regular minister of religion.* A person who as a customary vocation preaches and teaches the principles of the religion of a church, religious sect, or an organization of which the individual is a member without having been formally ordained as a minister of religion, but who is recognized by such church, sect, or organization as a regular minister.

(2) Requests for discharge will be supported by appropriate documentary evidence as follows:

*(a)* A statement from the appropriate authority of the church, religious sect, or organization that the Soldier has met the requirements for recognition and has been appointed a regular or duly ordained minister of religion and is employed full-time in a religious occupation paragraph 14–1*b*(1).

*(b)* A statement from an appropriate authority of the religious order that as a divinity student the Soldier is fully qualified and acceptable for further religious training; must be separated from military status for further theological education or processing into the religious order or organization; and if separated, will be eligible for ordination or recognition as a minister on or about a specified date.

*(c)* A statement from the seminary or other educational institution in which the religious training is now or will be received that the individual is now or will be, concurrent with discharge, a full-time divinity student preparing for the ministry.

*c. Attainment of maximum allowable age.* A Soldier who attains age 60 as set forth in AR 140–10, as appropriate, unless granted a waiver will be discharged or, if eligible and the Soldier applies, be transferred to the Retired Reserve. The discharge will be effective the last day of the month in which the Soldier attains age 60.

*d. Approved exemption from involuntary order to active duty.* A Soldier will be discharged when a determination is made in accordance with AR 601–25 that the Soldier be exempt from reporting for involuntary call to active duty under emergency or mobilization circumstances.

*e. U.S. Army Reserve dual status technician.* A contractually obligated Soldier who enlisted or reenlisted for permanent employment under the USAR dual status technician program will, on request, be discharged—

(1) On failure to be employed as a technician.

(2) On separation from employment as a technician.

*f. Early discharge of Soldier with a bar to continued service.* A Soldier may be voluntarily discharged before the expiration of their service obligation when the Soldier has received a locally imposed bar to continued service (AR 140–111) and the following provisions have been met:

(1) Except when serving under a statutory MSO, a Soldier who perceives that they will be unable to overcome a locally imposed bar to continued service may apply for immediate discharge.

(2) A Soldier with a statutory MSO will not be discharged early under this paragraph until completion of the statutory obligation.

(3) An ARNGUS Soldier with a statutory MSO who has been barred from continued service or extension in the ARNGUS and discharged early from the ARNGUS will be transferred to the appropriate IRR control group to serve the remaining term of the obligation.

(4) Reassignments or transfers to other units or to the IRR will be curtailed to the extent necessary to permit early discharge under this section.

*g. Nonavailability of member of Standby Reserve.* A Soldier of the Standby Reserve will be discharged when 12 months after mobilization the Soldier remains unavailable for active duty and the Soldier's case has been reviewed and discharge determined to be appropriate because of extended nonavailability in accordance with AR 601–25.

*h. For security reasons.* The Soldier will be processed in accordance with AR 380–67.

*i. Discharge from Retired Reserve.* A Soldier retired under the provision of 10 USC 3914 may be discharged from the USAR Retired Reserve at the Soldier's request and on completion of 30 years of active and inactive service. This discharge does not affect the Soldier's Army of the United States status on the retired list.

*j. Confirmed as infected with HIV.* As prescribed by AR 600–110, a Soldier who has been confirmed after a second Western Blot test as infected with HIV may request voluntary discharge under the plenary authority of the Secretary of the Army in accordance with chapter 13. Procedures for reassignment of USAR Soldiers to the Standby or Retired Reserve are prescribed by AR 140–10.

*k. Medically unfit for retention.*

(1) Discharge will be accomplished when it has been determined that a Soldier is no longer qualified for retention by reason of medical unfitness (AR 40–501, AR 40–3) unless the Soldier requests and is—

*(a)* Granted a waiver under AR 40–501, as applicable.

*(b)* Determined fit for duty under a non-duty related PEB fitness determination (AR 635–40).

*(c)* Eligible for transfer to the Retired Reserve (AR 140–10).

(2) Soldiers who do not meet the medical fitness standards for retention due to a condition incurred while on active duty, any type of active duty training, or inactive duty training (IDT) will be processed as specified in AR 635–40 if otherwise qualified.

*l. Conscientious objection.* The Soldier will be processed in accordance with AR 600–43.

*m. Reduction.* Soldiers who exceed maximum years of service as a result of reduction in grade must retire or separate no earlier than 90 days or later than 180 days after the effective date of the reduction in grade.

## 14–2. Characterization of service

The service of a Soldier separated under this section will be characterized as honorable, unless an uncharacterized description of service is required by paragraph 2–11, or a characterization of general (under honorable conditions) is warranted under chapter 2, section III.

## 14–3. Procedures

Prior to characterization of service of general (under honorable conditions), the Soldier will be notified of the specific factors in the service record that warrant such a characterization, and the notification procedure (chap 3, sec II) will be used.

## 14–4. Separation authority

The appropriate authority cited in paragraph 1–11 can order separations under this section.

## Section II

## Separation from the Delayed Entry Program

## 14–5. Basis

A Soldier who enlisted in the USAR under the DEP in accordance with AR 601–210 must be processed for separation if they satisfy the conditions in paragraphs 14–5a or b, and may be processed for separation if they satisfy the conditions in paragraphs 14–5c or d.

  a.  Upon enlistment in the regular Army (para 5–4a).

  b.  On discovery that the USAR enlistment is defective. The Soldier will be processed for separation under para 7–3.

  c.  The Soldier is found to be ineligible for enlistment in the regular Army.

  d.  The Soldier declines enlistment in the regular Army and is not being ordered to active duty as a Reserve of the Army (10 USC 12103(b)).

## 14–6. Characterization or description

  a.  The service of a Soldier discharged on the basis of paragraph 14–5a, is not characterized. (See DD Form 4 (Enlistment/Reenlistment Document Armed Forces of the United States), section G.)

  b.  The separation of a Soldier on the basis of paragraph 14–5c or paragraph 14–5d, will be described as an entry level separation and the service will be uncharacterized.

## 14–7. Procedures

When it is determined that a member of the DEP is unqualified for further military service or has requested separation, the Commander, U.S. Army RBN, will advise the Soldier, in writing, of the proposed separation and the reasons using the notification procedure (chap 3, sec II).

  a.  The notification memorandum (see fig 3–1) will be presented to the Soldier. If the Soldier cannot be personally notified, the certified mail procedures in paragraph 3–4b, will be applied or an equivalent procedure if such service is not available by the U.S. mail at an address outside the United States. The notice will inform the Soldier that they must respond by endorsement (see fig 3–2) within 30 days from the date of delivery.

  b.  Insert the following with the member's original DEP enlistment packet:

  (1)  A copy of the endorsement (see fig 3–2) completed by the Soldier;

  (2)  A copy of the notification memorandum (see fig 3–1) and post office receipt; or

  (3)  The original notification memorandum (see fig 3–1) and envelope marked "unclaimed" or other designation indicating it was not delivered, and the Affidavit of Service by Mail (see fig 1–1).

  c.  On receipt of the completed endorsement (see fig 3–2) from the Soldier, the Commander, U.S. Army RBN, will make the final determination for retention or separation from the USAR DEP. A careful consideration of the Soldier's statement or rebuttal is mandatory.

  d.  If the Soldier is not approved for retention or fails to respond within 30 days from the date of delivery, the authorities cited in paragraph 14–7a, will process the Soldier for discharge.

  e.  The discharge order (Format 500) will cite this paragraph and regulation as the authority.

  f.  On discharge, with the discharge order as the top document, the Soldier's USAR DEP enlistment packet will be sent to Director, National Personnel Records Center, Accession and Disposal Section, 9700 Page Avenue, St. Louis, MO 63132–5200.

### 14–8. Separation authority

The authorities cited in paragraph 1–11*b*(6), may order discharge under this section.

**Section III**

**Dropping from the Rolls**

### 14–9. Sentenced to imprisonment (10 USC 12684(3))

*a.* A Soldier who is sentenced to confinement in a Federal or State penitentiary or correctional institution after having been found guilty of an offense by a court other than a court-martial or other military court, and whose sentence has become final, may be dropped from the rolls of the Army. For purposes of this regulation, a conviction is final when the authorized time for an appeal has expired or final action on an appeal has been taken.

*b.* A Soldier who is convicted by a civil court, other than a Soldier who is sentenced as in paragraph 14–9*a*, may be processed for discharge for misconduct in accordance with chapter 11.

*c.* When a Soldier is to be dropped from the rolls of the Army, they will be reduced to private E–1 by the reduction authority in accordance with AR 600–8–19.

### 14–10. Characterization of service

No characterization or description of service is authorized (para 2–11*c*) and no discharge certificate will be issued.

### 14–11. Procedures

The appropriate separation authority will issue orders dropping the Soldier from the rolls of the Army using order Format 540 as prescribed in AR 600–8–105. Disposition of personnel records will be accomplished as set forth in AR 600–8–104.

### 14–12. Separation authority

The authority cited in paragraph 1–11, is authorized to drop a Soldier from the rolls of the Army under this section.

## Chapter 15
## Failure to Meet Army Body Composition Standards

### 15–1. Applicability

The applicability for separation processing under this chapter is determined by the following criteria:

*a.* An ARNGUS or USAR Soldier who has not completed IET, or been awarded an MOS, will be processed for separation under this chapter.

*b.* An ARNGUS or USAR Soldier who has completed IET and been awarded an MOS, and is not within 3 months of the date of expiration of a statutory or contractual obligation, whichever is the later, will be processed for separation under this chapter when such processing is required under paragraph 15–2, but will only be discharged when it has been determined by the separation authority that the Soldier has no potential to perform useful service if ordered to active duty to meet mobilization requirements in accordance with paragraph 1–26.

*c.* A Soldier who is within 3 months of the date of expiration of a statutory MSO will not be processed for separation under this chapter.

### 15–2. Basis

*a.* A Soldier is subject to separation for failure to meet the Army body composition standards in accordance with AR 600–9 when it is determined the Soldier is unqualified for further military service and meets all of the following conditions:

(1) The Soldier is not diagnosed with a medical condition that precludes participation in the Army weight control program. A Soldier with a medically diagnosed condition that precludes participation in the Army weight control program will be processed through medical channels, if appropriate, or under the guidance set forth in paragraph 6–6, 6–7, or 14–1*k*.

(2) The Soldier fails to meet the Army body composition standards in accordance with AR 600–9 and the sole reason for separation is failure to meet those standards.

*b.* Where no medical condition exists, initiation of separation proceedings is required for Soldiers who—

(1) Do not make satisfactory progress in the Army Body Composition Program after a period of 6 months, unless the responsible commander chooses to impose a bar to continued service in accordance with AR 140–111 or NGR 600–200.

(2) Fail to maintain Army body composition standards during the 12–month period following removal from the Army Body Composition Program.

*c.* Separation action under this chapter will not be initiated against a Soldier who meets the criteria for separation under other provisions of this regulation. For example, a Soldier who, apart from failure to meet body composition standards, is an unsatisfactory performer will be processed for separation under the provisions of chapter 9.

### 15–3. Counseling and rehabilitation
Separation processing may not be initiated under this chapter until the Soldier has been formally counseled under the requirements prescribed by paragraph 2–4.

### 15–4. Medical processing and evaluation
Medical processing and evaluation guidance is listed in paragraph 1–9.

### 15–5. Characterization or description
The service of Soldiers separated under this chapter will be characterized as honorable.

### 15–6. Separation authority
*a.* The authorities specified in paragraph 1–11, are authorized to order separation under this chapter.

*b.* The involuntary separation (other than for physical disability) of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1–12).

## Chapter 16
## Qualitative Retention Program

### Section I

### Introduction

### 16–1. Applicability
*a.* This chapter provides policy governing the selective retention of Soldiers in ARNGUS units and USAR TPUs. It also prescribes the composition and function of the Qualitative Retention Board.

*b.* The purpose of the QRP is to determine retention potential. In general, the QRP provides for a review every 2 years of RC Soldiers serving in ARNGUS units and USAR TPUs who have 20 or more years of qualifying service for non-regular retired pay, are within the zones of consideration prescribed by paragraph 16–3, and are not excluded from consideration by paragraph 16–4.

*c.* Soldiers serving on active duty within the Active Guard Reserve (AGR) Program (10 USC or 32 USC) are not subject to the QRP.

### 16–2. Objectives
A continuing program of qualitative retention is essential to provide for career progression of qualified enlisted personnel at proper intervals in their careers. The QRP—

*a.* Ensures only the best qualified Soldiers are retained beyond 20 years of qualifying service for non-regular retired pay. These Soldiers will be retained for continuing assignments to the comparatively few senior NCO positions.

*b.* Provides career incentives.

*c.* Ensures an opportunity for advancement to the higher grades during the peak years of a Soldier's effectiveness.

*d.* Satisfies the continuing requirement for senior NCOs by the appropriate commands.

*e.* Provides the command with a force-shaping tool to control enlisted personnel inventory and manage career progression. The QRP is not to be used in lieu of separation or removal procedures, for reasons such as unsatisfactory performance, unsatisfactory participation, failure to meet body composition standards, and so on.

### Section II

### Policy

### 16–3. Zones of consideration for qualitative retention
*a.* The Qualitative Retention Board will consider all unit Soldiers who meet the following criteria on the day before the board convene date (with the exception of those listed in para 16–4):

(1) At least 20 years of qualifying service for non-regular retired pay as determined under provisions of AR 135–180.

(2)  Previously selected for retention but the commander has referred them to the board for revalidation of their retained status.

(3)  Previously selected for retention but the board recommended that the Soldier's file be reviewed the following year.

*b.*  The Qualitative Retention Board will examine records of Soldiers in the zone of consideration no more than once every 2 years after they qualify for non-regular retired pay under provisions of AR 135–180, unless the board convening authority directs that a Soldier's record be reviewed the following year.

*c.*  Soldiers who should have been reviewed by a board but were not for any reason, other than those listed in paragraph 16–4, will be reviewed by the next scheduled board.

## 16–4.  Soldiers not to be considered

*a.*  The Qualitative Retention Board will not consider a Soldier who meets any of the following conditions:

(1)  Has not completed 20 qualifying years of service for non-regular retired pay by the day before the date the board convenes.

(2)  Is within 12 months of reaching age 60 on the date the board convenes; or

(3)  Was promoted to his or her current grade less than 2 years prior to the convening date of the board or is enrolled and making satisfactory progress in the United States Army Sergeants Major Course.

(4)  Is a command sergeant major (CSM) serving in the position of State CSM or senior enlisted advisor in the ARNGUS or serving as a CSM in a nominative general officer command in the USAR.

(5)  Is a ARNGUS military technician previously not selected by a QRP board but who was retained to serve in the current military technician assignment.

(6)  Is on active duty (other than for training) and has more than 18, but less than 20 years of active Federal Service and is eligible for sanctuary (10 USC 12686).

(7)  Is serving on active duty within the AGR program (10 USC or 32 USC).

(8)  Is otherwise subject to screening under the Qualitative Management Program prescribed by AR 635–200.

*b.*  The CNGB and CAR may authorize Qualitative Retention Board convening authorities to exempt from consideration Soldiers serving on (or in receipt of orders for) active duty pursuant to 10 USC 12302, 12304, or 12301(d) on the date the Qualitative Retention Board convenes. This exemption, if exercised, must apply to all Soldiers within the affected State (NGB), status (Title 10/Title 32) or general officer command (USAR).

## 16–5.  Scheduling of the Qualitative Retention Board

State Adjutants General (ARNGUS) and the USARC (USAR) may convene annual Qualitative Retention Boards consistent with the guidance promulgated by CNGB and CAR in accordance with paragraph 1–4 when the numbers and grades of enlisted Soldiers within the state or territory (ARNGUS), or specific general officer commands subordinate to the USARC (USAR), inhibit or deter the objectives of the QRP outlined in paragraph 16–1.

## Section III

## Composition and Conduct of the Qualitative Retention Board

## 16–6.  Support required

*a.*  The board will examine the record of each Soldier within the zone of consideration (para 16–3). The board will provide a report of personnel recommended and a report of personnel not recommended for continued unit service (para 16–13).

*b.*  Commanders specified in paragraph 16–5 will—

(1)  Announce the time and location of the annual Qualitative Retention Board to all subordinate commands no later than 90 days prior to the convene date of the board.

(2)  Select and appoint board members and publish orders.

(3)  Issue instructions to subordinate units for submitting required records and information.

(4)  Refer personnel records to the board.

(5)  Provide required administrative support.

(6)  Approve or disapprove the board report.

(7)  Issue selection or non-selection memorandums within 30 days following approval of the board report. These memorandums will be issued over the convening authority's signature (see fig 16–1 and fig 16–2).



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                                      *(Date)*

MEMORANDUM FOR *(Command channels)*

FOR *(Soldier concerned)*

SUBJECT:  Selection for Retention under AR 135–178

1.  I am pleased to inform you that the Qualitative Retention Board has recommended you as among the best qualified for continued retention in a unit of the *(Army National Guard of the United States) (U.S. Army Reserve)*.  I have approved the recommendation of the board.

2.  You should take particular pride in the confidence that has been evidenced by your selection. I urge you to continue performing your assigned duties to the best of your ability at all times and to take every opportunity to enhance your military education, skills, knowledge and abilities.

3.  The *((State) Army National Guard) (U.S. Army Reserve)* will continue to rely on you in meeting its objectives.

*(Signature block of convening authority)*

**Figure 16–1.  Sample selection for retention memorandum**



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                                     *(Date)*

**MEMORANDUM THRU** *(Command channels)*

**FOR** *(Soldier concerned)*

**SUBJECT:** Non-Selection for Continued Unit Participation

1. While you ae a fully qualified Soldier of the (Army National Guard of the United States) (U.S. Army Reserve), AR 135-178 provides that only the best qualified be retained in units. The best qualified Soldiers are selected by a Qualitative Retention Board. The regulation further provides that a Soldier who is not selected for retention will be removed from unit participation. You were considered for qualitative retention and were not selected. Accordingly, no later than *(enter date)* you will be

***(Enter one of the following as appropriate)***

(discharged from the *(State)* Army National Guard and transferred as a Reserve of the Army to Control Group (Reinforcement) in the Individual Ready Reserve, or transferred to the Retired Reserve, of the U.S. Army Reserve, according to the option you selected by endorsement.)

(released from your current Army Reserve troop program unit assignment and reassigned to Control Group (Reinforcement), or transferred to the Retired Reserve, according to the option you selected by endorsement.)

2. In determining the best qualified personnel for continued unit participation, I can assure you that the board discharged its duties in a thorough and impartial manner. The character of your service has been noted to be honorable and this is reflected in your records.

3. Since you are being separated as a result of your non-selection, there is no appeal process.

4. Your many personal sacrifices to the *(State)* Army National Guard) (U.S. Army Reserve) are sincerely appreciated. You may take pride in having contributed to the success of the Reserve Components as a viable force capable of meeting today's challenges.

*(Signature block of convening authority)*

**Figure 16–2. Sample non-selection for retention memorandum**

(8) Ensure that Soldiers that are not recommended for retention are transferred (ARNGUS) or reassigned (USAR), as appropriate (para 16–18).

*(a)* ARNGUS Soldiers are discharged from the ARNGUS and transferred as Reserve of the Army to the control group (Reinforcement) in the IRR or to the Retired Reserve of the USAR, as appropriate.

*(b)* USAR Soldiers are released from a current TPU assignment and reassigned to the control group (Reinforcement) in the IRR or to the Retired Reserve, as appropriate.

*c.* Unit commanders will—

(1)  Identify unit Soldiers in the zone of consideration for qualitative retention (para 16–3).

(2)  Ensure all Soldiers in the zone of consideration (para 16–3) are notified (see fig 16–3 for sample memorandum of notification).

(3)  Ensure all notified Soldiers receive an endorsement to complete and return to the unit (see fig 16–4 for sample response to memorandum of notification).



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                                                    *(Date)*

MEMORANDUM FOR *(Soldier scheduled for retention consideration)*

SUBJECT:  Notification of Qualitative Retention Board Review

1.  This memorandum is notification that your military records are scheduled for review by a Qualitative Retention Board.  The board will be convened on *(convening date of the board)* according to AR 135–178, chapter 16.  Only Soldiers who have at least 20 years of qualifying service for retired pay at age 60 and have been issued a notification of eligibility for retired pay will be considered by this board.  Records indicate that you are eligible for such retired pay.  By reviewing records, this board will select the best qualified personnel for continued unit membership.  As a full qualified unit Soldier you will be considered for retention.  Personal appearance before the board is not authorized.

2.  Your Army Military Human Resource Record (AMHRR) has been prepared for submission to the board.  You are encouraged to review your AMHRR and the attached comments (if any).  To review your records, complete the attached endorsement and bring this memorandum with you to the unit within 10 days.

3.  If you do not wish to review your records, complete the enclosed endorsement.  Mail the endorsement to this unit within 10 days in the envelope provided.

4.  Failure to reply by endorsement within 10 days after receipt will be reported to the unit commander and will not cause any delay in the board review of your records.  The board will be informed that your reply by endorsement was not received and, if not selected for retention, you will be reassigned or transferred to the Control Group (Reinforcement) in the Individual Ready Reserve of the U.S. Army Reserve, or, if eligible, to the Retired Reserve.

5. You will be notified in writing of your selection or nonselection for retention after adjournment of the board.

*(Signature block of unit commander)*

**Figure 16–3.  Sample memorandum of notification**

(4)  Ensure personnel records are current, correct, and audited by the Soldier.
(5)  Include with the records any comments or recommendations deemed pertinent to retention consideration.
(6)  Include a statement either justifying the retention or non-retention of a sergeant or below (ARNGUS only).

(7) Send the required information and personnel records to the convening authority (para 16–5).

*d.* The Soldier, when notified of pending board consideration, will—

(1) Indicate by endorsement to response memorandum (see fig 16–4) the option preferred, if not selected for retention. These options are as follows:

*(a)* Reassignment (USAR) or transfer (ARNGUS) to the Retired Reserve, if otherwise qualified.

*(b)* Reassignment (USAR) or transfer (ARNGUS) to the control group (Reinforcement) of the IRR.

---



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                 *(Date)*

MEMORANDUM FOR *(Appropriate unit commander)*

SUBJECT:  Notification of Qualitative Retention Board Review

1.  I have *(reviewed) (declined to review)* my Army Military Human Resources Record (AMHRR).

2.  If I am not selected for retention, I choose the following options:

       *(Soldier will circle and initial the chosen option)*

    a. Transfer/reassignment to Control Group (Reinforcement) of the Individual Ready Reserve.

    b. Transfer/reassignment to the Retired Reserve, if qualified.

3.  I have reviewed my unit commander's comments.  I have the following comments to make:

*(Soldier will enter the word NONE or enter the appropriate comments.)*

*(Signature block of enlisted Soldier and date)*

**Figure 16–4.  Sample response to memorandum of notification**

---

(2)  Complete the response to notification memorandum (see fig 16–4). Return the memorandum to the unit commander within 10 days after receipt. (Soldiers who refuse to complete the endorsement or fail to respond within 10 days will be reported to the unit commander.)

(3)  Audit the Soldier's military personnel records to ensure they are current, complete, and correct.

(4)  If desired, include with the records any comments regarding the pending board consideration. Such comments may include, but are not limited to, the unit commander's comments or recommendations.

## 16–7.  Appointing authority

Authority to appoint and convene the Qualitative Retention Board rests with the authorities specified in paragraph 16–5.

**16–8. Board composition**

  *a.* The board will be composed of three CSMs and two field grade officers as voting members. One officer, in the grade of colonel (or lieutenant colonel if a colonel is not available), will serve as president of the board.

  *b.* A commissioned officer, warrant officer, or NCO will be appointed as recorder without a vote.

  *c.* One of the board's voting members will be female, if females are considered. One member will be a minority, if reasonably available, if minorities are considered. Orders appointing the board will identify female and/or minority members.

  *d.* A person being considered by the board will not serve as a member of the board or as a recorder.

  *e.* Board members do not have to be from the same command, State, or Army component that convenes the board.

**16–9. Instructions to board members**

  *a.* A memorandum of instruction (MOI) will be issued to each board member by the convening authority following the sample in figure 16–5.

  *b.* The board will be briefed by a designated representative of the convening authority. This briefing will cover the entire MOI and direct board members to read and become familiar with this chapter before beginning their record vote. It will also give board members an opportunity to ask questions.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                                                   *(Date)*

SUBJECT:  Memorandum of Instruction for the Qualitative Retention Board

President and Members

Qualitative Retention Board

1.  The qualitative retention program is designed to—

    a. Provide maximum career progression and incentive.

    b. Provide recognition for sustained excellent performance.

    c. Provide highly motivated enlisted Soldiers the opportunity for retention in a troop program unit based on quality performance.

    d. Ensure that only the best-qualified enlisted Soldiers are retained in units of the U.S. Army National Guard and troop program units of the U.S. Army Reserve.

2.  This Qualitative Retention Board is convened under AR 135–178.  The board will recommend the best-qualified Soldiers, in the following zones of consideration, for continued troop program unit participation:

    a. Must have at least 20 years of qualifying service for retired pay at age 60 and been issued a notification of eligibility for retired pay.

    b. Have not been reviewed by a board in 2 or more years.

    c. Were previously selected for retention and the commander has referred their records to this board for revalidation of their retention status.  The unit commander has determined that the manner of performance has deteriorated to such an extent as to cause a recommendation for termination of retention status.

3. All Soldiers who will be considered by this board are fully qualified for continued participation with a troop program unit.

4.  Headquarters, Department of the Army, requires that only the best-qualified Soldiers be retained.  It does not prescribe specific qualifications necessary for best-qualified status and selective retention.  However, general guidance on the factors to be considered in determining best-qualified status and retention potential are outlined below.

**Figure 16–5.  Sample memorandum of instruction for the Qualitative Retention Board**

a. Best-qualified status is based on demonstrated performance and future potential. Evaluation of demonstrated performance or potential for future service cannot be complete or objective without a review of the entire record. The "total person" concept should govern. An isolated example of excellence or mediocrity should not be used as a basis for selection or non-selection. The analysis of individual records should include a careful review of—

(1) The degree of efficiency demonstrated in the assignments held; the degree of responsibility and the magnitude of the functions involved; and the leadership and managerial ability required.

(2) General physical fitness as prescribed in AR 350–1 and AR 600–9. The Soldiers should be able to perform without significant limitation in the event of mobilization.

(3) Demonstrated performance as attested by evaluation reports, letters of commendation, and other evaluations, which cite the Soldier's manner of performance.

b. The weight to be given derogatory information is a matter for the collective judgment of the board. The board should give the greatest weight to the most recent years of service and the significance of that information. Undue weight should not be given to unfavorable comments of a derogatory nature that are followed by a continuous outstanding performance of duty. Incidents of a disciplinary nature should be weighed against the Soldier's overall manner of performance. Bear in mind that it is not the function of the board to punish the Soldier by withholding selection.

5. Recommendations of the board will be marked FOR OFFICIAL USE ONLY and will be considered until approved by the convening authority. Details of the board proceedings, whether recorded or not, will not be disclosed except as authorized by proper authority.

*(Signature block of convening authority)*

**Figure 16–5. Sample memorandum of instruction for the Qualitative Retention Board—Continued**

## 16–10. The board oath

*a.* The following oath will be administered by the recorder to the members of the board: "Do you (identify each member by grade and name) solemnly swear (or affirm) that you will, without prejudice or partiality, and having in view both the special fitness of individual Soldiers and the efficiency of the (Army National Guard of the United States) (Army Reserve), perform the duties imposed on you, and further, that you will not divulge the proceedings or results of this board except to proper authority." Each member will respond, "I do."

*b.* The president of the board will administer the following oath to the recorder: "Do you (identify by grade and name), as a recorder of this board, solemnly swear (or affirm) that you will perform duties imposed on you by the president of the board, and further, that you will not divulge the proceedings or results of this board except to proper authority." The recorder of the board will respond, "I do."

## 16–11. Conduct of the board

*a.* The board will evaluate the future benefits that can be expected to accrue to the ARNGUS or USAR (as appropriate) from the continued service of each person. The board should consider the following factors:

(1) Performance and leadership potential as demonstrated by evaluation reports, review of the Soldier's personnel file, and other evidence contained in the official record presented to the board.

(2) Physical fitness.

(3) Any other factors having a bearing on a Soldier's future performance and contribution to a unit.

*b.* If the board vote is not unanimous, the dissenting member(s) may prepare a minority report to support the dissenting position. A copy of this report will be attached to each copy of the board report.

## 16–12. Board recommendations for retention

*a.* ARNGUS and USAR Qualitative Retention Boards may recommend Soldiers in the zone of consideration (para 16–3) for unit retention.

*b.* ARNGUS and USAR Soldiers, if retained, will again be considered by a Qualitative Retention Board when they become eligible in accordance with paragraph 16–3 and 16–4.

## 16–13. Board reports

*a.* Before adjournment, the board will complete a report of the board proceedings in the format shown in figure 16–6.

*b.* The recorder will complete a statistical report of the board deliberations indicating the number of Soldiers considered by race and gender by grade and the number of Soldiers retained by race and gender by grade. The statistical report will be in the format shown at table 16–1.

*c.* A copy of the board report with all enclosures will be routed through the agencies shown below to arrive Headquarters, Department of the Army, Deputy Chief of Staff, G–1 (DAPE–MPE), 300 Army Pentagon, Washington, DC 20310–0300, within 60 days after the board adjourns.

(1) For ARNGUS reports, send through Director, Army National Guard, National Guard Bureau (ARNG–HRZ–HRH–M), 111 South George Mason Drive, Arlington, VA 22204–1382.

(2) For USAR reports, send through the Commander, U.S. Army Reserve Command, 4710 Knox Street, Fort Bragg, NC 28310–5010 to Headquarters, Department of the Army, Deputy Chief of Staff, G–1 (DAPE–MPE), 300 Army Pentagon, Washington, DC 20310–0300.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

*(Office Symbol)*                                                                 *(Date)*

MEMORANDUM FOR *(Convening authority)*

SUBJECT:  Report of Qualitative Retention Board

1.  References.

    a.  Paragraph *(number)* Orders Number, *(number)* Headquarters, *(name)* Dated *(date)* (encl 1).

    b. Memorandum of Instructions to Qualitative Retention Board (encl 2).

2.  To comply with instructions contained in the above references, the Qualitative Retention Board convened at *(hours) (date)* at *(place)*.

3.  The following board members were present:

*(Grade, Name)* President.

*(Grade, Name)* Member.

*(Grade, Name)* Member.

*(Grade, Name)* Member.

*(Grade, Name)* Member.

*(Grade, Name)* Recorder (without vote).

\* Indicate which member was female and which member was minority.

4.  The board has carefully reviewed the records of those Soldiers in the zone of consideration for qualitative retention in units of the (Army National Guard of the United States) (U.S. Army Reserve).

**Figure 16–6.  Report of Qualitative Retention Board**

5.  The names of those Soldiers recommended as best qualified for continued retention are at the following enclosures:

   a. Command Sergeant Major and Sergeant Major (encl 3).

   b. First Sergeant and Master Sergeants (encl 4).

   c. Sergeant First Class (encl 5).

   d. Staff Sergeant and below (encl 6).

6.  The names of those Soldiers not recommended as best qualified for continued retention are listed by grade (encl 7).

7.  A statistical report of the number of Soldiers considered and retained by race and gender by grade (encl 8).

8.  The board adjourned at *(hours)* on *(date)*.

9.  Recommend the Soldiers listed on enclosures 3 through 6 be retained in units of the (Army National Guard of the United States) (U.S. Army reserve).

AUTHORITY LINE:

8 Encls                               *(Signature block, board president)*

**Figure 16–6.  Report of Qualitative Retention Board—Continued**

## 16–14.  Protective markings

All copies of board reports will be marked "FOR OFFICIAL USE ONLY" to prevent premature disclosure of board recommendations. These markings will be removed on approval of the board's report by the convening authority.

## Section IV

## Approval, Disapproval, and Disposition

## 16–15.  Approval or disapproval of board recommendations

   *a.* The convening authority will review the Qualitative Retention Board recommendations. Within 30 days following adjournment of the board, the convening authority will—

   (1)  Approve the report as submitted.

   (2)  Disapprove a part of or the whole report and require the board to reconsider some or all cases. This will occur if the board report contains substantial administrative errors or procedural deficiencies that adversely affect those considered. The convening authority will either provide supplemental guidance to the board to correct the deficiencies, or appoint a new board.

   (3)  Modify the board report to move a Soldier's name from the 'not recommended' list to the 'recommended' list. Justification for any such modification must be attached and made a part of the board report. The convening authority is prohibited from moving a Soldier from the 'recommended' list to the 'not recommended' list.

   (4)  Require board reconsideration of any individual case in which material error in the record (as reviewed by the board) is established. The convening authority may do this at any time during 60 days after the board adjourns.

(5) Administratively delete from the "recommended" list or the 'not recommended' list the name of any Soldier erroneously considered by the board. A Soldier will be determined to be erroneously considered if the Soldier was not within the zone of consideration (para 16–3) or was not to be considered by the board (para 16–4).

*b.* Reasons for disapproving the results of a board include, but are not limited to, the following:

(1) The board membership did not satisfy the board composition requirements of paragraph 16–8.

(2) The MOI to the board was different from the prescribed content and format in figure 16–5.

(3) The board oath was not properly administered.

(4) The board failed to comply with the MOI.

## 16–16.  Safeguard against premature separation from unit membership

*a.*  No Soldier will be considered by a Qualitative Retention Board or separated from unit membership under this chapter unless the Soldier has completed 20 qualifying years of Service for non-regular retired pay no later than the day before the date the board convened. Units shall maintain a written record of each Soldier's response to memorandum of notification as prescribed in paragraph 16–6 and shown in fig 16–4.

*b.*  Final disposition through the DES takes precedence over execution of Qualitative Retention Board results.

## 16–17.  Disposition of Soldiers not selected for retention

*a.*  Soldiers who were not selected for retention in ARNGUS units or USAR TPUs are considered fully qualified for continued participation in the USAR as assigned IRR Soldiers if they have not reached 60 years of age.

*b.*  Soldiers not selected for retention will be processed for transfer (ARNGUS), or reassignment (USAR), according to the option selected under paragraph 16–6*d*(1) and indicated by endorsement to response memorandum (see fig 16–4). However, a USAR military technician (dual status) or an ARNGUS military technician (dual status) may request continued retention in their current assignment per paragraph 16–17*d* or 16–17*e*.

*c.*  The convening authority in paragraph 16–5, will issue selection or non-selection letters within 30 days of approval of the board report. Transfer or reassignment must be completed not earlier than 90 days from the date of the non-selection letter for both ARNGUS and USAR Soldiers. The convening authority may adjust the removal date up to a maximum of 365 days when removal will have an adverse effect on mission accomplishment or is not in the best interest of the Service. If a convening authority adjusts the removal date, the date must be the same for all non-selects, regardless of Soldiers status.

*d.*  An ARNG military technician (dual status) not selected for retention may submit a request for retention in a current assignment provided the military technician (dual status) is not eligible for an immediate unreduced retirement annuity, will have at least 15 years creditable toward such an annuity on the date the military technician (dual status) would otherwise be removed from the unit, and will become eligible for such immediate unreduced retirement annuity on or before the last day of the month in which the military technician (dual status) reaches 64 (ARNG) years of age. Submit requests through the command to the State Adjutant General. The military status will not be changed while the request is pending final determination.

(1) If the request is not approved, the Soldier will be processed for transfer (ARNG) or reassignment (USAR) according to the option selected under paragraph 16–6*d*(1) and indicated by endorsement (see fig 16–4) to notification memorandum (see fig 16–3).

(2) If the request is approved, the Soldier will be retained in their current assignment, unless sooner removed under other provisions of this regulation (to include two consecutive Army Physical Fitness Test failures or failure to meet Army body composition standards) until the earlier of attaining eligibility for an immediate unreduced annuity or age 64 (ARNG). A later Qualitative Retention Board will not again consider the Soldier. However, since the Soldier was not found best qualified for military retention by a board, but retention was approved to provide for an immediate unreduced civil service annuity eligibility, the Soldier will not be eligible for later promotion consideration (AR 600–8–19).

*e.*  A Soldier may not appeal non-selection for retention by a Qualitative Retention Board other than for reason of ineligibility for consideration or material error in the Soldier's record reviewed by the board.

*f.*  Soldiers pending final medical determination from DES and who were selected for non-retention will be separated within 90 days upon notification of final medical disposition.

## 16–18.  Unit reaffiliation policy

A Soldier who has not been selected for retention by a Qualitative Retention Board will be transferred (ARNGUS) or reassigned (USAR) to the Retired Reserve or to the IRR depending on the Soldier's option selection (para 16–6*d*). A subsequent reaffiliation with, or reassignment to, a unit is prohibited. (See AR 140–10).

**Table 16–1**
**Sample format for the statistical report of Qualitative Retention Board deliberations to be filed as an enclosure to the board report**

| Grade | Considered | Selected for retention | Percent selected |
|---|---|---|---|
| **All ranks** | | | |
| Sergeant major | 4 | 4 | 4 |
| Master sergeant | 6 | 4 | 66.6 |
| Sergeant first class | 10 | 5 | 50.0 |
| Staff sergeant | 13 | 6 | 46.1 |
| Sergeant | 2 | 2 | 100.0 |
| **Total** | 35 | 19 | 54.2 |
| Male | 23 | 12 | 52.1 |
| Female | 12 | 7 | 58.3 |
| **Total** | 35 | 19 | 54.2 |
| White | 16 | 8 | 50.0 |
| Black | 12 | 7 | 58.3 |
| Hispanic | 2 | 1 | 50.0 |
| Asian/Pacific Islander | 4 | 2 | 50.0 |
| Native American | 1 | 1 | 100.0 |
| Other/unknown | 0 | 0 | 0.0 |
| Invalid | 0 | 0 | 0.0 |
| **Total** | 35 | 19 | 54.2 |
| **Sergeant major** | | | |
| **Sergeant major total** | 4 | 2 | 50.0 |
| Male | 2 | 1 | 50.0 |
| Female | 2 | 1 | 50.0 |
| **Total** | 4 | 2 | 50.0 |
| White | 2 | 1 | 50.0 |
| Black | 2 | 1 | 50.0 |
| Hispanic | 0 | 0 | 0.0 |
| Asian/Pacific Islander | 0 | 0 | 0.0 |
| Native American | 0 | 0 | 0.0 |
| Other/unknown | 0 | 0 | 0.0 |
| Invalid | 0 | 0 | 0.0 |
| **Total** | 4 | 2 | 50.0 |
| **Master sergeant** | | | |
| **Master sergeant total** | 6 | 4 | 66.6 |
| Male | 4 | 2 | 50.0 |
| Female | 2 | 2 | 100.0 |
| **Total** | 6 | 4 | 66.6 |
| White | 3 | 2 | 66.6 |
| Black | 2 | 1 | 50.0 |

**Table 16–1**
**Sample format for the statistical report of Qualitative Retention Board deliberations to be filed as an enclosure to the board report—Continued**

| Grade | Considered | Selected for retention | Percent selected |
|---|---|---|---|
| Hispanic | 0 | 0 | 0.0 |
| Asian/Pacific Islander | 1 | 1 | 100.0 |
| Native American | 0 | 0 | 0.0 |
| Other/unknown | 0 | 0 | 0.0 |
| Invalid | 0 | 0 | 0.0 |
| **Total** | 6 | 4 | 66.6 |
| | **Sergeant first class** | | |
| **Sergeant first class total** | 10 | 5 | 50.0 |
| Male | 7 | 4 | 57.1 |
| Female | 3 | 1 | 33.3 |
| **Total** | 10 | 5 | 50.0 |
| White | 3 | 1 | 33.3 |
| Black | 4 | 2 | 50.0 |
| Hispanic | 0 | 0 | 0.0 |
| Asian/Pacific Islander | 2 | 1 | 50.0 |
| Native American | 1 | 1 | 100.0 |
| Other/unknown | 0 | 0 | 0.0 |
| Invalid | 0 | 0 | 0.0 |
| **Total** | 10 | 5 | 50.0 |
| | **Staff sergeant** | | |
| **Staff sergeant and below total** | 15 | 8 | 53.3 |
| Male | 10 | 8 | 50.0 |
| Female | 5 | 5 | 57.1 |
| **Total** | 15 | 8 | 53.3 |
| White | 8 | 4 | 50.0 |
| Black | 4 | 3 | 75.0 |
| Hispanic | 2 | 1 | 50.0 |
| Asian/Pacific Islander | 1 | 0 | 0.0 |
| Native American | 0 | 0 | 0.0 |
| Other/unknown | 0 | 0 | 0.0 |
| Invalid | 0 | 0 | 0.0 |
| **Total** | 15 | 8 | 53.3 |

## Appendix A

## References

**Section I**

**Required Publications**

**AR 15–6**
Procedures for Investigating Officers and Boards of Officers (Cited in para 3–3$b$(1).)

**AR 27–3**
The Army Legal Assistance Program (Cited in para 3–3$b$(1)($a$).)

**AR 27–10**
Military Justice (Cited in paras 3–3$b$(1)($b$).)

**AR 40–3**
Medical, Dental, and Veterinary Care (Cited in para 14–1$k$(1).)

**AR 40–400**
Patient Administration (Cited in para 1–10$a$.)

**AR 40–501**
Standards of Medical Fitness (Cited in para 1–9$g$.)

**AR 135–91**
Service Obligations, Methods of Fulfillment, Participation Requirements, and Enforcement Procedures (Cited in para 1–19$b$.)

**AR 140–10**
Assignments, Attachments, Details, and Transfers (Cited in para 1–24$b$(1)($a$).)

**AR 140–111**
U.S. Army Reserve Reenlistment Program (Cited in para 1–11$b$(3).)

**AR 195–2**
Criminal Investigation Activities (Cited in para 1–14$b$.)

**AR 380–67**
Personnel Security Program (Cited in para 2–2$d$(6)($f$).)

**AR 600–8–2**
Suspension of Favorable Personnel Actions (Flag) (Cited in para 9–4.)

**AR 600–8–19**
Enlisted Promotions and Reductions (Cited in para 2–9$c$(5).)

**AR 600–8–105**
Military Orders (Cited in para 2–13$a$.)

**AR 600–9**
The Army Body Composition Program (Cited in para 15–2$a$).)

**AR 600–20**
Army Command Policy (Cited in para 1–9$b$.)

**AR 600–43**
Conscientious Objection (Cited in para 14–1$l$.)

**AR 600–85**
The Army Substance Abuse Program (Cited in para 2–10$a$.)

**AR 600–110**
Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (Cited in para 13–1$c$.)

**AR 601–25**
Delay in Reporting for and Exemption from Active Duty, Initial Active Duty for Training, and Reserve Forces Duty (Cited in para 14–1*d*.)

**AR 601–210**
Regular Army and Reserve Components Enlistment Program (Cited in para 4–2.)

**AR 601–280**
Army Retention Program (Cited in para 4–2.)

**AR 614–200**
Enlisted Assignments and Utilization Management (Cited para 4–4*a*(2).)

**AR 635–40**
Disability Evaluation for Retention, Retirement, or Separation (Cited in para 1–10*a*).)

**DODI 1332.14**
Enlisted Administrative Separations (Cited in title page.) (Available at http://www.dtic.mil/whs/directives/index.html.)

**DODI 6490.04**
Mental Health Evaluations of Members of the Military Services (Cited in para 1–9*b*.) (Available at http://www.dtic.mil/whs/directives/index.html.)

## Section II

## Related Publications

A related publication is a source of additional information. The user does not have to read a related publication to understand this regulation. USCs are available at http://uscode.house.gov.

**AR 11–2**
Managers Internal Control Program

**AR 15–180**
Army Discharge Review Board

**AR 15–185**
Army Board for Correction of Military Records

**AR 25–30**
Army Publishing Program

**AR 25–50**
Preparing and Managing Correspondence

**AR 25–400–2**
The Army Records Information Management System (ARIMS)

**AR 135–7**
Army National Guard and Army Reserve Incentive Programs

**AR 135–180**
Retirement for Non-Regular Service

**AR 140–1**
Mission, Organization, and Training

**AR 145–1**
Senior Reserve Officers' Training Corps Program: Organization, Administration, and Training

**AR 350–1**
Army Training and Leader Development

**AR 600–8–104**
Army Military Human Resource Records Management

**AR 608–18**
The Army Family Advocacy Program

**AR 630–10**
Absence Without Leave, Desertion, and Administration of Personnel Involved in Civilian Court Proceedings

**AR 635–200**
Active Duty Enlisted Administrative Separations
Diagnostic and Statistical Manual of Mental Disorders
Provide web site where available

**DODI 6495.02**
Sexual Assault Prevention and Response (SAPR) Program Procedures

**Federal Register Volume 73, 38030 (2 July 2008)**
U.S. Department of Justice, Office of the Attorney General, The National Guidelines for Sex Offender Registration and Notification (Available at https://www.federalregister.gov/.)

**NGR 40–3**
Medical Care for Army National Guard Members (Available at http://www.ngbpdc.ngb.army.mil.)

**NGR 600–200**
Enlisted Personnel Management (Available at http://www.ngbpdc.ngb.army.mil.)

**UCMJ Art. 27(b)(1)**
Detail of Trial Counsel and Defense Counsel  (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ, Art. 31(a)**
Compulsory self-incrimination prohibited  (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**10 USC 115**
Personnel strengths: requirement for annual authorization

**10 USC 641**
Applicability of chapter

**10 USC 651**
Members: required service

**10 USC 1176**
Enlisted members: retention after completion of 18 or more, but less than 20, years of service

**10 USC 1177**
Members diagnosed with or reasonably asserting post-traumatic stress disorder or traumatic brain injury: medical examination required before administrative separation

**10 USC 1214a**
Members determined fit for duty in Physical Evaluation Board: prohibition on involuntary separation or denial of reenlistment due to unsuitability based on medical conditions considered in evaluation

**10 USC 1552**
Boards for Correction of Military Records

**10 USC 1553**
Discharge Review Boards

**10 USC 2104**
Advanced training; eligibility for

**10 USC 2107**
Financial assistance program for specially selected members

**10 USC 3914**
Twenty to thirty years: enlisted members

**10 USC 10206**
Members: physical examinations

**10 USC 10301**
Reserve Forces Policy Board

**10 USC 12103**
Reserve components: terms

**10 USC 12106**
Army and Air Force Reserve: transfer to upon withdrawal as member of National Guard

**10 USC 12301**
Reserve components generally

**10 USC 12304**
Selected Reserve and certain Individual Ready Reserve members; order to active duty other than during war or national emergency

**10 USC 12641**
Standards and procedures: Secretary to prescribe

**10 USC 12644**
Members physically not qualified for active duty: discharge or transfer to retired status

**10 USC 12681**
Reserves: discharge authority

**10 USC 12682**
Reserves: discharge upon becoming ordained minister of religion

**10 USC 12684**
Reserves: separation for absence without authority or sentence to imprisonment

**10 USC 12685**
Reserves separated for cause: character of discharge

**10 USC 12732**
Entitlement to retired pay: computation of years of service

**32 USC 316**
Detail of members of Army National Guard for rifle instruction of civilian

**32 USC 502**
Required drills and field exercises

**32 USC 503**
Participation in field exercises

**32 USC 504**
National Guard schools and small arms competitions

**32 USC 505**
Army and Air Force schools and field exercises

**32 USC 708**
Property and fiscal officers

**42 USC 16911**
Relevant definitions, including Amy Zyla expansion of sex offender definition and expanded inclusion of child predators

**50 USC App. 460 (b)(2)**
Selective Service System

## Section III

## Prescribed Forms

Unless otherwise indicated, DA forms are available on the Army Publishing Directorate website (http://armypubs.army.mil/).

**DA Form 7423**
Consulting Counsel's Checklist (Cited in para 3–3*a*(1).)

**Section IV**

**Referenced Forms**

Unless otherwise indicated, DA forms are available on the Army Publishing Directorate website (http://armypubs.army.mil/). DD forms are available on the Office of the Secretary of Defense website (http://www.esd.whs.mil/directives/forms/).

**DA Form 2–1**
Personal Qualification Record

**DA Form 11–2**
Internal Control Evaluation Certification

**DA Form 2028**
Recommended Changes to Publications and Blank Forms

**DA Form 2166–9–1A**
NCO Evaluation Report Support Form (figure)

**DA Form 3349**
Physical Profile

**DA Form 3822**
Report of Mental Status Evaluation

**DA Form 5138**
Separation Action Control Sheet

**DD Form 4**
Enlistment/Reenlistment Document Armed Forces of the United States

**DD Form 256A**
Honorable Discharge Certificate (Available through the normal forms supply channels.)

**DD Form 293**
Application for the Review of Discharge from the Armed Forces of the United States

**PS Form 3800**
Receipt for Certified Mail (Available at United States Postal Service facilities (Available at https://about.usps.com/forms/all-forms.htm.)

# Appendix B

# Internal Control Evaluation Checklist

### B–1. Function

The function covered by this checklist is the accurate and orderly administrative separation of enlisted Soldiers in a variety of circumstances

### B–2. Purpose

The purpose of this checklist is to assist commanders in evaluating the key management controls listed below. It is not intended to cover all controls.

### B–3. Instructions

Answers must be based on the actual testing of key management controls (for example, document analysis direct observation, random sampling, and simulation). Answers that indicate deficiencies must be explained and corrective action indicated in supporting documentation. These management controls must be evaluated at least once every 2 years. Certification that this evaluation has been conducted must be accomplished on DA Form 11–2 (Internal Control Evaluation Certification).

### B–4. Test questions

   *a.* Has a managerial review been conducted using DA Form 5138 (Separation Action Control Sheet) to ensure compliance with regulatory guidance prior to forwarding to approval authority?

   *b.* Has the commander's report been completed accurately, as required under AR 135–178, paragraph 3–7?

   *c.* Have the administrative board procedures, as required under AR 135–178, paragraph 3–10, been conducted accurately?

   *d.* Have the hearing procedures, as required under AR 135–178, paragraph 3–17, been conducted as required by the regulation?

   *e.* Have those Soldiers identified for separation under chapter 15, complied with all of the requirements under AR 600–9?

### B–5. Comments

Help make this a better tool for evaluating management controls. Submit comments to Deputy Chief of Staff, G–1 (DAPE–MPE), 300 Army Pentagon, Washington, DC 20310–0300.

## Glossary

**Section I**

**Abbreviations**

**ABCMR**
Army Board for Correction of Military Records

**ADAPCP**
Alcohol and Drug Abuse Prevention and Control Program (figure)

**ADRB**
Army Discharge Review board

**ADT**
active duty for training

**AGR**
Active Guard Reserve

**AIT**
advanced individual training

**AMHRR**
Army Military Human Resource Record

**AMOS**
additional military occupational specialty (figure)

**AR**
Army regulation

**ARNG**
Army National Guard

**ARNGUS**
Army National Guard of the United States

**AT**
annual training

**CAR**
Chief, Army Reserve

**CG**
commanding general

**CNGB**
Chief, National Guard Bureau

**CONUS**
continental United States

**CSM**
command sergeant major

**CTT**
Common Task Test (figure)

**DA**
Department of the Army

**DAAR**
Department of the Army, Army Reserve

**DCS**
Deputy Chief of Staff

**DEP**
Delayed Entry Program

**DES**
Disability Evaluation System

**DMOS**
duty military occupational specialty (figure)

**DODI**
Department of Defense instruction

**FTNGD**
full-time national guard duty

**GCMCA**
General Court Martial Convening Authority

**GS**
general schedule

**HIV**
human immunodeficiency virus

**HQDA**
Headquarters, Department of the Army

**HRC**
U.S. Army Human Resources Command

**IADT**
initial active duty for training

**IDES**
Integrated Disability Evaluation System

**IDT**
inactive duty training

**IET**
initial entry training

**IMA**
individual mobilization augmentee

**IRR**
individual ready reserve

**MAR2**
MOS Administrative Retention Review

**MATP**
Mobilization Asset Transfer Program

**MEB**
medical evaluation board

**MOI**
memorandum of instruction

**MOS**
military occupational specialty

**MSO**
military service obligation

**MTF**
military treatment facility

**NCO**
noncommissioned officer

**NGR**
National Guard regulation

**OCAR**
Office of the Chief, Army Reserve

**OCONUS**
outside continental United States

**PEB**
physical evaluation board

**PMOS**
primary military occupational specialty (figure)

**PTSD**
post-traumatic stress disorder

**QRP**
Qualitative Retention Program

**RBN**
recruiting battalion

**RC**
Reserve Component

**ROTC**
Reserve Officers' Training Corps

**SMOS**
secondary military occupational specialty (figure)

**SMP**
Simultaneous Membership Program

**SROTC**
Senior Reserve Officers' Training Corps

**TBI**
traumatic brain injury

**TPU**
troop program unit

**UCMJ**
Uniform Code of Military Justice

**USAPDA**
United States Army Physical Disability Agency

**USAR**
U.S. Army Reserve

**USARC**
U.S. Army Reserve Command

**USC**
United States Code

**Section II**

**Terms**

**Active duty**
Full-time duty in the active military service of the United States. As used in this regulation, the term applies to all ARNGUS and USAR Soldiers ordered to duty under 10 USC, other than for training. It does not include AGR personnel in a FTNGD status under 32 USC.

**Active Guard and Reserve Duty**
Active duty performed by a member of a RC of the Army, or FTNGD performed by a member of the ARNG pursuant to an order to FTNGD, for a period of 180 consecutive days or more for the purpose of organizing, administering, recruiting, instructing, or training the RCs.  Such term does not include the following:
*a.* Duty performed as a member of the Reserve Forces Policy Board serving under 10 USC 10301.
*b.* Duty performed as United States Property and Fiscal Officers under 32 USC 708.
*c.* Duty performed for the purpose of interdiction and counter-drug activities for which funds have been provided under 32 USC 112.
*d.* Duty performed as a general officer.
*e.* Service as a State director of the Selective Service System under section 10(b)(2) of the Military Selective Service Act (50 USC 3809(b)(2)).

**Active Guard Reserve**
"Active Guard and Reserve" means a member of a RC who is on active duty pursuant to 10 USC 12301(d) or, if a member of the ARNG or Air National Guard, is on FTNGD pursuant to 32 USC 502(f), and who is performing Active Guard and Reserve duty.

**Active service**
Service on active duty or FTNGD.

**Active status**
The status of an ARNGUS or USAR commissioned officer, other than a commissioned warrant officer, who is not in the inactive ARNG, in the Standby Reserve (inactive list), or in the Retired Reserve.

**Administrative board procedure**
An administrative separation action wherein the respondent will have a right to a hearing before a board of commissioned, warrant, or NCOs. It is initiated in the same manner as the notification procedure.

**Administrative separation**
Discharge or release from expiration of enlistment or required period of service, or before, as prescribed by the DA or by law. Separation by sentence of a general or special court-martial is not an administrative separation.

**Administrative separation board**
A board of officers, or officers and NCOs, appointed to make findings and to recommend retention in or separation from the service. The board states the reason and recommends the type of separation or discharge certificate to be furnished.

**Area command**
A geographic area of command with RC functions and responsibilities.

**Area commanders**
Commanders of area commands.

**Area commands**
The following are defined as area commands:
*a.* U.S. Army Europe.
*b.* U.S. Army Pacific Command.
*c.* U.S. Army Southern Command.
*d.* U.S. Army Special Operations Command.
*e.* HRC.
*f.* USARC.

**Army**
The regular Army, Army of the United States, ARNGUS, and the USAR.

**Army National Guard**

That part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia, active and inactive, that—

*a.* Is a land force.

*b.* Is trained, and has its officers appointed, under the sixteenth clause of section 8, article I, of the Constitution.

*c.* Is organized, armed, and equipped wholly or partly at Federal expense.

*d.* Is federally recognized.

**Army National Guard of the United States**

The RC of the Army whose members also are members of the ARNG. The ARNGUS consists of—

*a.* Federally recognized units and organizations of the ARNG.

*b.* Members of the ARNG who are also Reserves of the Army.

**Army Reserve command**

A USAR TPU commanded by a general officer that reports directly to an area command.

**Basic training**

IET which provides non-prior-service-personnel instruction in basic skills common to all Soldiers and precedes advanced individual training (AIT).

**Cause**

Separation or denial of reenlistment for cause is based on a decision by an appropriate member of the Soldier's chain of command, supervisory chain, or higher authority that the Soldier's personal or professional conduct, behavior, or performance of duty warrants separation or denial of reenlistment in the best interest of the Army.

**Character of service for administrative separation**

A determination reflecting a Soldier's military behavior and performance of duty during a specific period of service. The three characters are: honorable; general (under honorable conditions); and under other than honorable conditions. The service of Soldiers in entry level status is normally described as uncharacterized.

**Contractual term of service**

The MSO incurred by completion of the oath of enlistment on an enlistment or reenlistment agreement. Contractual and statutory service may run concurrently. The Selected Reserve contractual term of service is that portion of a MSO which is to be served in a unit of the Selected Reserve. For example, the 6X2 enlistment option requires that 6 years be served in a unit of the Selected Reserve and the remaining 2 years be served in the IRR.

**Contractually obligated Soldier**

A Soldier who has completed their statutory service obligation and is serving on a contractual obligation or a Soldier enlisted or appointed under circumstances in which a statutory obligation was not incurred.

**Convening authority**

Can be defined as either—

*a.* The separation authority.

*b.* A commanding officer who is authorized by this regulation to process the case, except for final action, and who otherwise has the qualifications to act as a separation authority.

**Delayed Entry Program**

A program where Soldiers may enlist and are assigned to USAR control group (Delayed Entry) until they enlist in the regular Army.

**Discharge**

Complete severance from all military status gained by the enlistment concerned.

**Entry level status**

*a.* Upon enlistment, a Soldier qualifies for entry level status during—

(1) The first 180 days of continuous active military service.

(2) The first 180 days of continuous active service after a service break of more than 92 days of active service.

*b.* A member of a RC who is not on active duty or who is serving under a call or order to active duty for 180 days or less begins entry level status upon enlistment in a RC. Entry level status for such a member of a RC terminates as follows:

(1) 180 days after beginning training if the Soldier is ordered to ADT for one continuous period of 180 days or more.

(2) 90 days after the beginning of the second period of ADT if the Soldier is ordered to ADT under a program that splits the training into two or more separate periods of active duty.

*c.* For the purposes of characterization of service, the Soldier's status is determined by the date of notification as to the initiation of separation proceedings.

**Expiration of service obligation**
The scheduled date on which an individual's statutory or contractual (whichever is later) MSO will end.

**Extended active duty**
Active duty performed by a member of the ARNGUS or USAR when strength accountability passes from the ARNG or USAR to the Regular Army.

**Full–time National Guard duty**
Training or other duty, other than inactive duty, performed by a member of the ARNGUS or the Air National Guard of the United States in the member's status as a member of the National Guard of a State or territory, the Commonwealth of Puerto Rico, or the District of Columbia under 32 USC 316, 502, 503, 504, or 505, for which the member is entitled to pay from the United States or for which the member has waived pay from the United States.

**General officer command**
A USAR TPU, commanded by a general officer, at the level of a regional support command or higher, that reports directly to an area command or to U.S. Army Civil Affairs and Psychological Operations Command.

**Individual ready reserve**
Soldiers who are assigned to the following USAR Ready Reserve control groups: AT, reinforcement, officer active duty obligor, DEP, dual component, and ROTC.

**Initial entry training**
Mandatory training each Army Soldier must complete upon initial entry in the service to qualify in a military specialty or branch. This training is required by law for deployability on land outside the continental limits of the United States in accordance with 10 USC 671. IET encompasses the completion of basic training and specialty or branch qualification while serving on active duty or ADT. For ARNGUS and USAR Soldiers it includes completion of IADT, the officer basic course, and the warrant officer basic course.

**Juvenile offender**
A person judged guilty of an offense by a domestic court of the United States or its territorial possessions, or by a foreign court, without regard to whether a sentence has been imposed or suspended, or any other subsequent proceedings in the case. The law of the jurisdiction of the court will determine whether a given proceeding constitutes an adjudication of guilt. Adjudication as a juvenile offender includes adjudication as a juvenile delinquent, wayward minor, or youthful offender.

**Military record**
A Soldier's overall performance while a member of a military service, including personal conduct and performance of duty.

**Nonlocatee**
An enlisted Soldier who has failed to furnish an address through which personal contact is possible.

**Notification procedure**
The initiation of an administrative separation process in which the respondent is notified, in writing, of the proposed separation, the bases thereof, the results of separation, and their rights. This term is commonly used when the respondent does not have a right to a hearing before a board of officers.

**One station unit training**
IET in which elements of basic training and AIT are provided in the same unit, under one cadre throughout the total period of training. Elements of basic training and AIT are either integrated-provided simultaneously, or are nonintegrated-provided in distinct basic training/AIT phases.

**Preponderance of evidence**
Evidence, which after a consideration of all the evidence presented, points to a certain conclusion as being more credible and probable than any other conclusion. Where the evidence is equally consistent with two or more opposing propositions, it is insufficient.

**Ready Reserve**
The Ready Reserve of the Army is comprised of military members of the ARNGUS and USAR, organized in units or as individuals, and liable for order to active duty in time of war or national emergency. The Ready Reserve consists of three subcategories: The Selected Reserve, the IRR, and the Inactive National Guard.

**Reasonable commuting distance**
The maximum distance a member of a RC may be required to travel involuntarily between residence and IDT site. That distance may be in the following:
*a*. A 100-mile radius of the IDT site or a distance that may be traveled by automobile under average conditions of traffic, weather, and roads in 3 hours. That applies only to those units that normally do four IDT sessions on two consecutive days and where Government meals and quarters are provided at the unit IDT site.
*b*. A 50-mile radius of the IDT site or a distance that may be traveled by an automobile under average conditions of traffic, weather, roads in a 1 1/2–hour period, where Government meals and quarters are not provided at the unit IDT site.

**Regional support command**
A major subordinate command of the USARC that reports directly to an area command.

**Regional support group**
A USAR general officer command that is subordinate to a regional support command.

**Release from active duty**
Termination of active duty status and transfer or reversion to a RC not on active duty, including transfer to the IRR.

**Reserve Components of the Army**
The ARNGUS and the USAR.

**Reserve of the Army**
A member of the ARNGUS or the USAR.

**Reserve Officers' Training Corps cadet**
A student enrolled in the SROTC as a cadet under 10 USC 2104 or 10 USC 2107.

**Reserve Officers' Training Corps Program**
The SROTC of the Army.

**Respondent**
A Soldier who has been notified that action has been initiated to separate them from the Service.

**Satisfactory participation**
A level of performance where a Soldier avoids incurring the condition of unsatisfactory participation as defined in AR 135–91.

**Selected Reserve**
The Selected Reserve of the Army consists of those units and individuals in the Ready Reserve designated as so essential to initial wartime missions that they have priority over all other Reserves. The Selected Reserve includes officers, warrant officers, and enlisted Soldiers who are—
*a*. Members of the ARNGUS.
*b*. Assigned to TPUs of the USAR.
*c*. Serving on active duty (10 USC 12301(d)) or FTNGD (32 USC 502(f)) in an AGR status.
*d*. IMAs.

**Separation**
An all-inclusive term which is applied to personnel actions resulting from release from active duty, discharge, retirement, dropped from the rolls, release from military control of personnel without a military status, death, or discharge from the ARNGUS with concurrent transfer to the Individual Ready, Standby, or Retired Reserve. Reassignments between the various categories of the USAR (Selected, Ready, Standby, or Retired) are not considered as separations.

**Separation authority**
An official authorized by the Secretary of the Army, or his designated official, to take final action with respect to a specified type of separation.

**Sex offense**
An offense from any of the following categories, established by 42 USC 16911: (1) offenses involving a sexual act or sexual contact, as defined by the jurisdiction where the conviction occurred; (2) certain offenses against minors, as defined by 42 USC 16911(7); (3) federal offenses under 18 USC 1591, or 18 USC Chapters 109A or 117; (4) a military offense specified DODI 1325.07, enclosure 2, appendix 4; (5) attempts and conspiracies to commit one of the foregoing offenses; or a military offense specified in AR 27–10. For the purposes of this regulation, a conviction for a sex offense includes a plea or finding of guilty, a plea of nolo contendere, and all other actions tantamount to a finding of guilty. The conviction

qualifies if it occurred in any U.S. jurisdiction, or in a foreign jurisdiction in accordance with the guidance from the National Guidelines for Sex Offender Registration and Notification (Federal Register, Volume 73, Number 128, pages 38030–38070). A conviction includes a conviction at a general of special court-martial, but does not include results from a summary court-martial or nonjudicial punishment under the UCMJ, Article 15.

**Sexual offender**
Any Soldier, who either is registered as a sex offender or is required to register as a sex offender pursuant to any Department of Defense, Army, State, District of Columbia, Commonwealth of Puerto Rico, Guam, America Samoa, The Northern Mariana Islands, the United States Virgin Islands, federally recognized Indian tribe, law, regulation, or policy. This definition includes, but is not limited to, any Soldier with a State or Federal conviction for a felony crime of sexual assault or any general or special court-martial conviction for an offense under the UCMJ that otherwise meets the elements of a crime of sexual assault, even though not classified as a felony or misdemeanor. The requirement to initiate separation proceedings does not apply to a Soldier with a qualifying conviction who is pending execution of a punitive discharge (bad conduct discharge, dishonorable discharge, or dismissal) adjudged by a courts-martial. After referral of a charge, regardless of any action purporting to discharge or separate a Soldier, any issuance of a discharge certificate is void until the charge is dismissed, the Soldier is acquitted at trial by court-martial, or appellate review of a conviction is complete. Moreover, if a court-martial has adjudged an unsuspended punitive discharge, any issuance of a nonpunitive discharge certificate is void unless the GCMCA or an appellate court has disapproved the adjudged punitive discharge. The Assistant Secretary of the Army (Manpower and Reserve Affairs), the Assistant Secretary's delegate, or the officer exercising GCMCA over the Soldier at the time of the Soldier's request for exception, may approve an exception. This definition also applies to a Soldier who is convicted by a foreign government (for example, United Kingdom) of an equivalent or closely analogous covered offense as listed in AR 27–10. See 42 USC 16911(5)(B) and U.S. Department of Justice, Office of the Attorney General, The National Guidelines for Sex Offender Registration and Notification, Final Guidelines, 73 Federal Register. 38030, 38050–1 (2 July 2008) for guidelines and standards. Contact the servicing Office of the Staff Judge Advocate for assistance with this provision.

**Standby Reserve**
The Standby Reserve consists of personnel maintaining their military affiliation without being in the Ready Reserve, having been designated key civilian employees, or who have a temporary hardship or disability. These Soldiers are not required to perform training and are not part of units. It is a pool of trained Soldiers who may be mobilized as needed to fill manpower needs in specific skills. The Standby Reserve consists of two training categories: the active status list and the inactive status list.

**Statutorily obligated member**
A Soldier who is serving by reason of law.

**Statutory term of service**
The MSO incurred on initial entry into the Armed Forces under 10 USC 651.

**Troop program unit**
A table of organization and equipment or table of distribution and allowances unit of the USAR organization which serves as a unit on mobilization or one that is assigned a mobilization mission. The "unit" in this case is the largest separate unit prescribed by the table of organization and equipment or table of distribution and allowances.

**U.S. Army Reserve**
The Army Reserve includes all Reserves of the Army who are not members of the ARNGUS and who are in a Ready, Standby, or Retired Reserve category. It is a Federal force, consisting of individual reinforcements and combat, combat support, and training type units organized and maintained to provide military training in peacetime, and a reservoir of trained units and individual reservists to be ordered to active duty in the event of a national emergency.

**Unsatisfactory participant**
A member of the Selected or IRR who fails to participate as outlined in AR 135–91.

## Section III

## Special Abbreviations and Terms
This sections contains no entries.

**UNCLASSIFIED**

Personnel Procurement

# Regular Army and Reserve Components Enlistment Program

Headquarters
Department of the Army
Washington, DC
31 August 2016

**UNCLASSIFIED**

# *SUMMARY of CHANGE*

AR 601–210
Regular Army and Reserve Components Enlistment Program

This administrative revision, dated 8 December 2017—

o   Incorporated Army Directive 2011–02, Initial Entry Training for Prior Service Personnel, in the last revision (paras 3–18*b*(2) and 5–16*b*(1)(a)).

o   Incorporated Army Directive 2016–01, Expanding Positions and Changing the Army Policy for the Assignment of Female Soldiers, in the last revision (para 6–9).

This major revision, dated 31 August 2016—

o   Adds Secretary of the Army; Assistant Secretary of the Army (Manpower and Reserve Affairs); and Deputy Chief of Staff, G-2 responsibilities (paras 1–4*a*, *b*, and *f*, respectively).

o   Establishes the maximum enlistment age at 35 for all three Army components (para 2–3).

o   Adds the U.S. Passport Card to the documents that can be used to verify citizenship and age (paras 2–3*b*(9) and 2–4*c* (1)(d)).

o   Adds policy on the immigration status of the spouse or Family member of an applicant who is otherwise qualified for enlistment (para 2–4*a*(1)).

o   Updates policy on dual citizenship enlistments (para 2–4*f*).

o   Adds policy requiring new accessions to meet the security investigation standards of Homeland Security Presidential Directive 12 (paras 2–14 and 5–61).

o   Adds policy requiring National Intelligence Agency Checks and Federal Bureau of Investigation Foreign Terrorist Tracking Task Force checks for non-U.S. citizens per Army Directive 2013–09 (para 2–14*b*).

o   Adds policy on medical examination requirements when processing applicants with prior military service (para 3–7*j*).

o   Updates Regular Army retention control points for maximum years of active duty from grades E–1 through E–9 (para 3–10).

o   Replaces policy requiring prior Servicemembers to attend the Warrior Transition Course with policy requiring attendance at basic combat training (paras 3–18*b*(2) and 5–16*b*(1)(a)).

o   Removes policy that prohibited the assignment of female Soldiers into certain military occupational specialties (para 6–9).

o   Updates instructions and appropriate coding for completing DD Form 1966 (Record of Military Processing-Armed Forces of the United States) (table 6–1).

o   Incorporates Army Directive 2015-36, Review and Approval Authority for Army Accession Incentives and Programs (hereby superseded) (para 9–20 and app B).

o   Adds policy concerning the effective date for termination of incentives for Soldiers declared unsatisfactory participants (para 10–8*a*(1)).

o   Establishes a formula to determine recoupment amount for bonuses when recoupment is applicable (para 10–9b(1)).

o   Adds policy governing the Selected Reserves Incentives Program for the officer accession bonus and affiliation bonus, and the enlisted affiliation bonus (paras 10–15 and 10–16, respectively).

Headquarters
Department of the Army
Washington, DC
31 August 2016

*Army Regulation 601–210

Effective 30 September 2016

Personnel Procurement

# Regular Army and Reserve Components Enlistment Program

By Order of the Secretary of the Army:

**MARK A. MILLEY**
*General, United States Army*
*Chief of Staff*

Official:

*(signature)*

**GERALD B. O'KEEFE**
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is an administrative revision. The portions affected by this administrative revision are listed in the summary of change.

**Summary.** This regulation governs eligibility criteria, policies, and procedures for enlistment and processing of persons into the Regular Army, the U.S. Army Reserve, and Army National Guard for enlistment per DODI 1304.26. It also prescribes the appointment, reassignment, management, and mobilization of Reserve Officers' Training Corps cadets under the Simultaneous Membership Program.

**Applicability.** This regulation applies to the Regular Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve, unless otherwise stated. It also applies to Department of the Army civilians involved in recruiting activities or Reserve Officers'

Training Corps/Simultaneous Membership Program management functions. Also, in case of conflict between this and other regulations establishing enlistment eligibility criteria, this regulation will take precedence and upon direction of the Secretary of the Army, certain requirements of this regulation will not be enforced during mobilization.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–1. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army internal control process.** This regulation contains internal control provisions in accordance with AR 11–2 and identifies key internal controls that must be evaluated (see appendix C).

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Deputy Chief of Staff, G–1 (DAPE–MPA), 300 Army Pentagon, Washington DC 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Deputy Chief of Staff, G–1 (DAPE–MPA), 300 Army Pentagon, Washington DC 20310–0300.

**Committee management.** AR 15–39 requires the proponent to justify establishing/continuing committee(s), coordinate draft publications, and coordinate changes in committee status with the Office of the Administrative Assistant to the Secretary of the Army, Analysis and Integration Cell (AAAI–CL), 105 Army Pentagon, Washington DC, 20310–0105. Further, if it is determined that an established "group" identified within this regulation later takes on the characteristics of a committee as found in AR 15–39, then the proponent will follow AR 15–39 requirements for establishing and continuing the group as a committee.

**Distribution.** This publication is available in electronic media only and is intended for command levels B, C, D, and E for the Regular Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

---

*This regulation supersedes AR 601–210, dated 8 February 2011, and Army Directive 2015–36, dated 15 September 2015.

AR 601–210 • 31 August 2016                                                                 i

**UNCLASSIFIED**

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
U.S. Military Academy Preparatory School • 1–5, *page 2*
Secretarial authority • 1–6, *page 2*
Penalties for violating • 1–7, *page 2*
Eligibility • 1–8, *page 2*
Enlistment in any U.S. Armed Force by U.S. Army Reserve or Army National Guard members • 1–9, *page 3*
U.S. Army Reserve or Army National Guard membership • 1–10, *page 3*
Valid enlistment or reenlistment agreements • 1–11, *page 3*
Referral of applicants to higher headquarters • 1–12, *page 4*

**Chapter 2**
**Enlistment in the Regular Army, U.S. Army Reserve, or Army National Guard for Nonprior Service Applicants,** *page 4*

*Section I*
*Basic Eligibility Criteria, page 4*
General • 2–1, *page 4*
Basic eligibility criteria for all nonprior service applicants • 2–2, *page 4*
Age • 2–3, *page 5*
Citizenship • 2–4, *page 5*
Name • 2–5, *page 8*
Social security number • 2–6, *page 8*
Education • 2–7, *page 8*
Trainability • 2–8, *page 11*
Physical • 2–9, *page 12*
Dependents • 2–10, *page 12*
Conduct and administrative criteria • 2–11, *page 14*
Suggested civilian or military clothing list for glossary nonprior service and prior service • 2–12, *page 15*
Review of enlistment forms and documents • 2–13, *page 15*
Background Investigation and vetting requirements • 2–14, *page 16*
Educational assistance for Regular Army and U.S. Army Reserve • 2–15, *page 16*

*Section II*
*Enlistment Periods and Pay Grades, page 16*
Authorized enlistment periods • 2–16, *page 16*
Pay grade and date of rank • 2–17, *page 17*
Enlistment pay grades for personnel without prior service • 2–18, *page 17*
Verification requirements for enlistment in higher grade • 2–19, *page 18*

**Chapter 3**
**Enlistment in the Regular Army, U.S. Army Reserve, or Army National Guard for Prior Service Applicants,** *page 18*

*Section I*
*Basic Eligibility Criteria, page 18*
General • 3–1, *page 18*
Basic eligibility criteria for all prior service applicants • 3–2, *page 18*
Age • 3–3, *page 19*

**Contents—Continued**

Citizenship • 3–4, *page 19*
Education • 3–5, *page 19*
Trainability • 3–6, *page 19*
Physical • 3–7, *page 19*
Dependents • 3–8, *page 20*
Conduct and other administrative criteria • 3–9, *page 21*
Regular Army retention control point (not applicable to individuals enlisting into the Reserve Components) • 3–10, *page 21*
Armed Forces reentry eligibility codes • 3–11, *page 21*
Montgomery GI Bill • 3–12, *page 21*
Eligibility of former officers for enlistment • 3–13, *page 22*

*Section II*
*Enlistment Periods and Pay Grades, page 22*
Authorized enlistment periods • 3–14, *page 22*
Authorized enlistment pay grade determination • 3–15, *page 23*
Enlistment pay grade and terms of enlistment for Regular Army applicants with prior military service • 3–16, *page 24*
Enlistment pay grades for prior service for Reserve Component enlistment • 3–17, *page 25*

*Section III*
*Verification and Qualification for Prior Service Personnel, page 26*
General • 3–18, *page 26*
Verification of prior service • 3–19, *page 26*
U.S. Army reentry eligibility codes • 3–20, *page 28*
Reentry codes and separation program designator, any component • 3–21, *page 30*
Determination of enlistment and/or assignment eligibility • 3–22, *page 30*
Correction of Army reentry eligibility codes • 3–23, *page 30*

*Section IV*
*Prior Service Versus Nonprior Service Reconciliation Procedures, page 30*
General • 3–24, *page 30*
Policy • 3–25, *page 30*
Verification process • 3–26, *page 30*
Reconciliation procedures • 3–27, *page 31*
Enlistment incentives for prior service personnel • 3–28, *page 31*

**Chapter 4**
**Enlistment Waivers (Waiverable and Nonwaiverable Criteria and Administrative Instructions),** *page 31*

*Section I*
*Waiverable Disqualifications, page 31*
General • 4–1, *page 31*
Conduct and administrative disqualifications • 4–2, *page 31*
Submission of requests • 4–3, *page 32*
General guidelines for evaluating non-criminal and criminal convictions • 4–4, *page 33*
Waiver requirements for medical disqualifications • 4–5, *page 33*
Civil court convictions and/or dispositions conduct waivers (other than major misconduct) • 4–6, *page 33*
Major misconduct • 4–7, *page 34*
Traffic offenses • 4–8, *page 35*
Nontraffic offenses • 4–9, *page 36*
Misconduct offenses • 4–10, *page 38*
Major misconduct offenses • 4–11, *page 39*
Court disposition definitions • 4–12, *page 40*
Prior military service • 4–13, *page 40*
Absent without leave or lost time • 4–14, *page 41*

**Contents—Continued**

Conscientious objection • 4–15, *page 41*
Reserve Component separations or transfers • 4–16, *page 42*
Age • 4–17, *page 42*
Positive drug or alcohol test • 4–18, *page 42*
Dependents • 4–19, *page 42*
Surviving son or daughter • 4–20, *page 43*
Personnel Reliability Program • 4–21, *page 43*

*Section II*
*Nonwaiverable Disqualifications, page 43*
Administrative, conduct, and medical disqualifications • 4–22, *page 43*
Nonwaiverable disqualifying separations or discharges • 4–23, *page 44*
Prior service applicants • 4–24, *page 44*

*Section III*
*Administrative Instructions for Conduct and Administrative Waivers, page 45*
General • 4–25, *page 45*
Waiver disapproval authority • 4–26, *page 45*
Validity period • 4–27, *page 45*
Waiver approval procedures • 4–28, *page 45*
Conduct standards • 4–29, *page 46*
Rules governing processing of conduct waivers • 4–30, *page 46*
Waiver reporting • 4–31, *page 47*
Waiting period • 4–32, *page 47*
Required investigations • 4–33, *page 48*
Pending charges-civil restraint • 4–34, *page 48*
Headquarters, Department of the Army exceptions • 4–35, *page 48*
Unsupervised probation • 4–36, *page 48*
Waiver reporting • 4–37, *page 49*

**Chapter 5**
**Processing Applicants,** *page 49*

*Section I*
*General, page 49*
Importance of applicant processing • 5–1, *page 49*
Processing elements • 5–2, *page 50*
Prohibitions • 5–3, *page 50*
Shared functions • 5–4, *page 50*
Required forms for applicant processing • 5–5, *page 50*

*Section II*
*Administration of Armed Services Vocational Aptitude Battery, page 50*
General • 5–6, *page 50*
Testing • 5–7, *page 50*
Retesting • 5–8, *page 51*
Overseas Production Testing Program • 5–9, *page 52*
High school testing program • 5–10, *page 52*
Special purpose testing • 5–11, *page 52*

*Section III*
*Administration of Medical Examination, page 53*
General • 5–12, *page 53*
Medical examinations • 5–13, *page 53*
Transportation and subsistence • 5–14, *page 53*
Forwarding of enlistees • 5–15, *page 53*

**Contents—Continued**

Movement of personnel from place of enlistment • 5–16, *page 53*

*Section IV*
*Enlistment Processing, page 54*
Processing former Army prisoners of war • 5–17, *page 54*
Policy • 5–18, *page 55*
Request for discharge or clearance from a Reserve Component • 5–19, *page 55*
Applications for enlistment • 5–20, *page 55*
Notice of enlistment • 5–21, *page 56*

*Section V*
*Special Processing for Enlistment of an Army National Guard Soldier into an Army Reserve Troop Program Unit, page 56*
General • 5–22, *page 56*
Basic eligibility criteria • 5–23, *page 57*
Processing procedures • 5–24, *page 57*

*Section VI*
*Special Processing for Enlistments in Overseas Commands, page 58*
General • 5–25, *page 58*
Authority • 5–26, *page 58*
Processing • 5–27, *page 58*

*Section VII*
*Delayed Entry Program, page 59*
General • 5–28, *page 59*
Enlistment and separation authority • 5–29, *page 59*
Eligibility qualifications • 5–30, *page 59*
Terms of service and authorized pay grades • 5–31, *page 59*
Processing procedures • 5–32, *page 59*
Extensions in the Delayed Entry Program • 5–33, *page 60*
Special provisions of the Delayed Entry Program • 5–34, *page 60*
Promotion opportunity through referrals • 5–35, *page 60*

*Section VIII*
*Delayed Entry Program Mobilization Asset Transfer Program, page 61*
Policy • 5–36, *page 61*
Procedures • 5–37, *page 61*

*Section IX*
*Courtesy Enlistment, page 61*
General • 5–38, *page 61*
Procedures • 5–39, *page 61*

*Section X*
*Special Processing for Partially Disabled, Combat-Wounded Veterans, page 61*
General • 5–40, *page 61*
Requests for waivers • 5–41, *page 61*
Processing • 5–42, *page 62*
Training and assignments • 5–43, *page 62*
Record entries • 5–44, *page 62*

*Section XI*
*Special Processing for Persons Receiving Disability Pensions or Compensation from the Veterans Administration, page 62*
General • 5–45, *page 62*

**Contents—Continued**

Request for waiver • 5–46, *page 62*
Letter of waiver of compensation • 5–47, *page 62*

*Section XII*
*Special Processing for Members Removed from the Temporary Disability Retired List, page 62*
General • 5–48, *page 62*
Enlistment within 90 days of removal from the temporary disability retired list • 5–49, *page 63*
Enlistment beyond 90 days after removal from temporary disability retired list • 5–50, *page 63*
Information to applicants • 5–51, *page 63*
Information regarding persons who waive entitlement to disability retirement or severance pay • 5–52, *page 63*

*Section XIII*
*Special Processing for Enlistment of Immigrant Aliens, page 63*
General • 5–53, *page 63*
Processing • 5–54, *page 63*

*Section XIV*
*Applicants Injured or Ill During Processing, page 64*
General • 5–55, *page 64*
Determination of entitlements • 5–56, *page 64*
Casualty reports • 5–57, *page 64*
Instructions to recruiting battalion commanders • 5–58, *page 64*
Use of training pay categories • 5–59, *page 64*
Training pay categories and programs • 5–60, *page 64*

*Section XV*
*National Agency Check with Local Agency and Credit Check, page 66*
Policy • 5–61, *page 66*
Title • 5–62, *page 66*

*Section XVI*
*Processing Procedures for Applicants Found Positive for the Human Immunodeficiency Virus, page 66*
General • 5–63, *page 66*
Policy • 5–64, *page 66*
Procedures • 5–65, *page 66*

*Section XVII*
*Conducting Recruiting Activities in Foreign Countries and Transmission of Recruiting Information to Individuals in Foreign Countries, page 67*
General • 5–66, *page 67*
Replies to inquiries • 5–67, *page 67*
Aliens applying in person at recruiting stations in the United States or in locations overseas where recruiting stations operate • 5–68, *page 68*

*Section XVIII*
*Pre-Service Alcohol and Drug Testing, page 68*
General • 5–69, *page 68*
Policy • 5–70, *page 68*
Procedures • 5–71, *page 68*
Disposition of records • 5–72, *page 68*
Military occupational specialty considerations • 5–73, *page 68*
Notification procedures • 5–74, *page 68*
Notification of applicants found positive • 5–75, *page 68*
Separation procedures for members of the Delayed Entry Program • 5–76, *page 68*
Separation procedures for prior service and glossary nonprior service • 5–77, *page 69*
Reserve Component enlistees with positive results • 5–78, *page 69*

**Contents—Continued**

Invalid or unacceptable specimens • 5–79, *page 69*

**Chapter 6**
**Military Entrance Processing Station Processing Phase,** *page 69*

*Section I*
*General Information, page 69*
General • 6–1, *page 69*
Prior service individuals physically examined outside the military entrance processing station • 6–2, *page 69*
Actions required of U.S. Military Entrance Processing Command personnel before sending applicants to guidance
  counselor • 6–3, *page 69*

*Section II*
*Guidance Counselor Processing Phase, page 70*
General • 6–4, *page 70*
Procedures applicable to Regular Army, U.S. Army Reserve, and Army National Guard • 6–5, *page 70*
Procedures applicable to Regular Army only • 6–6, *page 71*
Procedures applicable to U.S. Army Reserve and Army National Guard only • 6–7, *page 71*
Vacancies and projected vacancies • 6–8, *page 71*
Vacancy requirements • 6–9, *page 72*

*Section III*
*Military Entrance Processing Station Administrative Processing Phase, page 72*
General • 6–10, *page 72*
Duties of U.S. Military Entrance Processing Command personnel • 6–11, *page 72*
DD Form 1966 • 6–12, *page 73*
Preparation of DD Form 4 • 6–13, *page 82*
Actions before signature on DD Form 4 • 6–14, *page 83*
Correction of errors on enlistment forms • 6–15, *page 83*
Claims of erroneous entries • 6–16, *page 83*
Orientation before administration of oath • 6–17, *page 83*
Administration of oath of enlistment • 6–18, *page 84*
Actions required after administration of the oath • 6–19, *page 84*
Predating an enlistment • 6–20, *page 84*

**Chapter 7**
**Regular Army and Reserve Components Civilian Acquired Skills Program,** *page 84*

*Section I*
*Introduction, page 84*
General • 7–1, *page 84*
Objectives • 7–2, *page 84*
Procedures • 7–3, *page 84*
Eligibility • 7–4, *page 85*
Enlistment periods • 7–5, *page 85*
Accelerated promotions • 7–6, *page 85*

*Section II*
*Training Requirements, page 85*
Basic training requirement • 7–7, *page 85*
Requirement for prerequisite training • 7–8, *page 85*
Requirement for proficiency training • 7–9, *page 85*

*Section III*
*Army Civilian Acquired Skills Program Personnel Management, page 86*
Determination of qualifications and enlistment grades • 7–10, *page 86*

**Contents—Continued**

Award of military occupational specialty, enlistment grade, and accelerated promotion • 7–11, *page 86*
Army Civilian Acquired Skills Program enlistment control • 7–12, *page 87*
Annual training • 7–13, *page 87*
Mobilization readiness and deployability • 7–14, *page 87*

*Section IV*
*Enlistment Processing Procedures, page 87*
Processing procedures • 7–15, *page 87*
Skills available for enlistment and unit vacancies • 7–16, *page 87*

**Chapter 8**
**Actions Required After Enlistment,** *page 88*
General • 8–1, *page 88*
Reporting procedures • 8–2, *page 88*
Waivers of enlistment commitments (not applicable to Reserve Components) • 8–3, *page 88*
Erroneous or unfulfilled enlistment commitments • 8–4, *page 89*
Processing claims of unfulfilled or erroneous enlistment commitments • 8–5, *page 89*
Correction of term of enlistment and other contract inquiries • 8–6, *page 90*
Correction of enlistment grade • 8–7, *page 90*
Extension of term of enlistment • 8–8, *page 91*
The U.S. Army Recruiting Command liaison role for processing Regular Army/U.S. Army Reserve Soldiers in the reception battalion • 8–9, *page 91*
Correction of contracts and annexes involving enlistment incentives • 8–10, *page 91*

**Chapter 9**
**Enlistment Programs, Options, and Incentives,** *page 91*

*Section I*
*Basic Eligibility Criteria, page 91*
General • 9–1, *page 91*
Qualifications • 9–2, *page 92*
Honoring enlistment commitments • 9–3, *page 92*
Counseling on waivers affecting options • 9–4, *page 92*
Selection of an additional option (for Regular Army only) • 9–5, *page 92*
Incentives and entitlements for Selected Reserve Service • 9–6, *page 93*

*Section II*
*Regular Army Enlistment Programs and Options, page 93*
Enlistment Program 9A, U.S. Army Training Enlistment Program • 9–7, *page 93*
Enlistment Program 9B, U.S. Army Station-Unit-Command-Area Enlistment Program • 9–8, *page 94*
Enlistment Program 9C, U.S. Army Incentive Enlistment Program (Enlistment Bonus, Army College Fund, Loan Repayment Program) • 9–9, *page 95*
Enlistment Program 9D, U.S. Army Officer/Warrant Officer Enlistment Program • 9–10, *page 97*

*Section III*
*United States Army Reserve Enlistment Programs, page 98*
Enlistment Program 9E, U.S. Army Reserve Bands Enlistment Program • 9–11, *page 98*
Enlistment Program 9F, U.S. Army Reserve Military Intelligence, Signals Intelligence, Electronic Warfare, and Signal Security Units Enlistment Program • 9–12, *page 99*
Enlistment Program 9G, U.S. Army Reserve Individual Ready Reserve Direct Enlistment Program • 9–13, *page 99*
Enlistment Program 9H, U.S. Army Reserve Officers' Training Corps/Simultaneous Membership Program • 9–14, *page 99*
Enlistment Program 9I, U.S. Army Reserve Officers' Candidate School Enlistment Program • 9–15, *page 107*
Enlistment Program 9J, U.S. Army Reserve Warrant Officer Flight Training Enlistment Program • 9–16, *page 107*
Enlistment Program 9K, U.S. Army Specialized Training for Army Reserve Readiness Enlistment Program • 9–17, *page 108*

**Contents—Continued**

Enlistment Program 9L, Selected Reserve Incentive Program, U.S. Army Reserve Component Incentive Enlistment Program (nonprior service enlistment bonus, prior service enlistment bonus, Montgomery GI Bill-Selected Reserve Kicker, Loan Repayment Program) • 9–18, *page 109*

Selected Reserve Incentives Program-Student Loan Repayment Program, Montgomery GI Bill-Kicker • 9–19, *page 110*

Review and approval of accession incentives and programs • 9–20, *page 110*

**Chapter 10**
**Selected Reserve Incentive Program (Enlisted and Officer Incentives),** *page 111*

General • 10–1, *page 111*

Program responsibilities • 10–2, *page 111*

Policies and procedures • 10–3, *page 113*

Personnel movement between Army National Guard of the United States and Army Reserve • 10–4, *page 113*

Continued receipt of incentives • 10–5, *page 114*

Suspension of incentives • 10–6, *page 116*

Reinstatement of incentives • 10–7, *page 116*

Termination of incentives • 10–8, *page 116*

Recoupment of incentives • 10–9, *page 117*

Bonus control numbers, reporting requirements, and Army Board for Correction of Military Records processing • 10–10, *page 118*

Incentive eligibility under the U.S. Army Reserve Drill Sergeant, Instructor, or Linguist Program • 10–11, *page 119*

Selected Reserve Incentives Program–nonprior service enlistment bonus • 10–12, *page 120*

Selected Reserve Incentives Program–prior service enlistment bonus • 10–13, *page 121*

Selected Reserve Incentives Program–Student Loan Repayment Program • 10–14, *page 122*

Selected Reserve Incentive Program–officer accession bonus and officer affiliation bonus • 10–15, *page 122*

Selected Reserve Incentive Program–enlisted affiliation bonus • 10–16, *page 124*

Selected Reserve Incentive Program–U.S. Army Reserve and Army National Guard reenlistment bonuses • 10–17, *page 125*

**Appendixes**

**A.**   References, *page 126*

**B.**   Format for Submitting Accession Incentives and Programs for Approval, *page 135*

**C.**   Internal Control Evaluation, *page 136*

**Table List**

Table 3–1: U.S. Army reentry eligibility codes, *page 28*

Table 3–2: U.S. Navy and U.S. Coast Guard reentry eligibility codes, *page 29*

Table 3–3: U.S. Air Force reentry eligibility codes, *page 29*

Table 3–4: U.S. Marine Corps reentry eligibility codes, *page 29*

Table 4–1: Traffic Offenses, *page 35*

Table 4–2: Nontraffic offenses, *page 36*

Table 4–3: Misconduct offenses, *page 38*

Table 4–4: Major misconduct offenses, *page 39*

Table 6–1: DD Form 1966 instructions, *page 73*

Table 10–1: Incentive participant codes, *page 119*

**Figure List**

Figure B–1: Sample for submitting accession incentives and programs for approval, *page 136*

**Glossary**

## Chapter 1
## Introduction

### 1–1. Purpose
This regulation prescribes eligibility criteria governing the enlistment of persons, with or without prior service (PS), into the Regular Army (RA), the U.S. Army Reserve (USAR), and the Army National Guard (ARNG). It provides policies and procedures to process applicants for enlistment in the RA Delayed Entry Program (DEP) and on delayed status, and the USAR Delayed Training Program (DTP).

*Note.* DTP and DEP are not applicable to the ARNG.

### 1–2. References
See appendix A.

### 1–3. Explanation of abbreviations and terms
See glossary.

### 1–4. Responsibilities
Specific program responsibilities are listed in each chapter.

*a.* The Secretary of the Army will—

(1) Except as specifically provided by law, establish enlistment qualifications for the RA, USAR, and ARNG.

(2) Be the denial authority for enlistment. See paragraph 1–6 for additional information and exceptions.

*b.* The Assistant Secretary of the Army (Manpower and Reserve Affairs) (ASA (M&RA) will serve as the review and approval authority for the continuation or implementation of new incentives, pilots, or programs.

*c.* The Deputy Chief of Staff (DCS), G–1 will develop and maintain policy and programs for RA, USAR, and ARNG enlistments, to include policy governing Reserve Officers' Training Corps (ROTC), ROTC Simultaneous Membership Program (SMP), and the Army Civilian Acquired Skills Program (ACASP).

(1) The Commanding General (CG), U.S. Army Human Resources Command (HRC) will—

*(a)* Control enlistments under the RA Enlistment Program.

*(b)* Have responsibility for personnel actions pertaining to RA enlistments.

(2) The CG, U.S. Army Recruiting Command (USAREC) will—

*(a)* Control enlistment under the RA DEP per paragraph 5–30.

*(b)* Have final responsibility for personnel actions pertaining to DEP, DTP, and delayed military service obligation (MSO) enlistments.

*(c)* Organize and administer the submission of National Agency Check with Local Agency and Credit Check (NACLC), single scope background investigation, National Intelligence Agency Checks (NIAC) and fingerprint checks for RA and USAR enlistments.

*(d)* Coordinate with DCS, G–2 for receipt of NIAC results.

*(e)* Submit requests for continuation or implementation of new incentives, pilots, or programs through the DCS, G–1 to ASA (M&RA) for consideration.

*d.* The Chief, Army Reserve (CAR) will—

(1) Have control of enlistments under the USAR Enlistment Program.

(2) Have responsibility for personnel actions pertaining to USAR enlistments.

(3) Exercise staff supervision and management of the SMP of the USAR as it pertains to ROTC cadets.

(4) Submit requests for continuation or implementation of new incentives, or programs through the DCS, G–1 to ASA (M&RA) for consideration.

*e.* The Director, Army National Guard (DARNG) will—

(1) Control enlistments under the Reserve Component (RC) Enlistment Program for ARNG enlistees.

(2) Have overall responsibility for developing and maintaining policy and programs for Army National Guard of the United States (ARNGUS) enlistments.

(3) Submit requests for continuation or implementation of new incentives, pilots, or programs through the DCS, G–1 to ASA (M&RA) for consideration.

(4) Exercise staff supervision and management of the SMP of the ARNG as it pertains to ROTC cadets.

(5) Organize and administer the submission of the NACLC, single scope background investigation, NIAC, and fingerprint checks for ARNG enlistments.

(6) Coordinate with DCS, G–2 for receipt of NIAC results.

*f.* The DCS, G–2 will coordinate with CG, USAREC; DARNG; and CAR for receipt of NIAC results.

*g.* The Commander, U.S. Military Entrance Processing Command (USMEPCOM) will process applicants and enlistees per chapters 5 and 6 and AR 601–270.

## 1–5. U.S. Military Academy Preparatory School

This regulation provides authority to enlist applicants into the USAR to attend the U.S. Military Academy Preparatory School. On enlistment, the person incurs an 8–year MSO under Section 651, Title 10, United States Code (10 USC 651), and immediately enters on active duty (AD) for the duration of the school period. Failure to complete the course will result in discharge from service with no service obligation. Persons interested in attending the U.S. Military Academy Preparatory School are advised to write to Commandant, U.S. Military Academy, West Point, NY 10996–1905. Applicants must meet the eligibility requirements for attendance at the U.S. Military Academy Preparatory School. Upon receipt of the approved applicant list, U.S. Military Academy retention officials will prepare and complete the USAR enlistment agreement using DD Form 4 (Enlistment/Reenlistment Document Armed Forces of the United States), as directed by Headquarters, Department of the Army (HQDA) (DAPE–MPA–RP). The original DD Form 4 for enlistees will be sent to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303. A copy will be provided to the personnel staff at the U.S. Military Academy Preparatory School for administrative purposes. A copy will also be retained by the U.S. Military Academy Retention Office for their use.

## 1–6. Secretarial authority

*a. Establishment of qualifications for enlistment.* Except as specifically provided by law, establishment of qualifications for enlistment in the RA, USAR, and ARNG is the prerogative of the Secretary of the Army.

*b. Denial of enlistment.* Except as delegated herein or by special Army directive, denial of enlistment will be at the discretion of the Secretary of the Army. Denial may be given either in an individual case or by an order applicable to all cases specified in that order. The Secretary of the Army may deny enlistment to any person who otherwise meets criteria in this regulation. However (for RA only), the Secretary of the Army may not deny the enlistment of the following:

(1) A former enlisted member of the RA who—

*(a)* Has served continuously on AD as a Reserve officer of the Army and was discharged as an RA enlisted member to immediately accept a temporary appointment as an officer of the Army;

*(b)* Is separated from AD as an Army of the United States, or Reserve commissioned officer, or warrant officer while serving as a commissioned or warrant officer;

*(c)* Was terminated by an honorable discharge or by relief from AD for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge; and

*(d)* Makes application for enlistment within 6 months after separation from AD as a Reserve or Army of the United States officer.

(2) Any RA enlisted member who—

*(a)* Has been placed on the temporary disability retired list (TDRL);

*(b)* Is later found to be physically fit under 10 USC 1211(a)(3); and

*(c)* Makes application for enlistment within 90 days after removal from the TDRL.

(3) ARNG applicants under 10 USC 312(a), provided they waive their exemption from militia duty.

## 1–7. Penalties for violating

*a.* Military personnel who violate or fail to comply with this regulation are subject to punishment under the Uniform Code of Military Justice (UCMJ), for violation of Article 92(1). Also, military members may be subject to punishment under the UCMJ for violation of Article 92(3) or Article 84. Particular attention should be given to UCMJ, Article 84, which states, "Any person subject to this chapter who effects an enlistment in or a separation from the Armed Forces of any person who is known to him to be ineligible for enlistment, or separation because it is prohibited by law, regulation, or order shall be punished as court-martial may direct."

*b.* Department of the Army (DA) civilians who violate or fail to comply with this regulation are subject to disciplinary action under the proper Office of Personnel Management regulation.

*c.* Commanders will consider initiating disciplinary action against military personnel and DA civilians when proper.

## 1–8. Eligibility

*a.* All persons who process applicants for enlistment in the RA, USAR, or ARNG will use the utmost care to procure qualified personnel. Eligibility of personnel will be based on their ability to meet all requirements, to include procurement of prescribed waivers. No applicant will be accepted for enlistment before approval of any required waiver. Processing will be immediately discontinued if an applicant for enlistment in the RA, USAR, or ARNG admits to a nonwaiverable disqualifying condition. This includes, but is not limited to, an applicant who is determined to be drug dependent, admits to a pending law violation or fine, or displays other nonwaiverable medical, conduct, or

administrative disqualifications in paragraph 4–22. For the purpose of this paragraph, military entrance processing station (MEPS) processing includes medical examination, special tests, or enlistment.

*b.* Applicants for enlistment in the USAR or ARNG will not be accepted unless reasonable assurance exists that they will be available and able to take part satisfactorily with the unit concerned; they also will be available for immediate order to AD in an emergency or partial or full mobilization. In this respect, careful thought will be given to the following:

(1) Normal commuting time and distance of day-to-day job.

(2) Possible conflicts with civilian occupation.

(3) Past performance as USAR or ARNG member.

(4) Frequency of past relocations of residence.

(5) Applicants with spouse and dependent children who apply for waiver of the dependency restriction must thoroughly understand that responsibility for dependent children in no way lessens their obligations for satisfactory participation in the USAR or ARNG and availability for mobilization.

## 1–9. Enlistment in any U.S. Armed Force by U.S. Army Reserve or Army National Guard members

*a.* Enlisted Soldiers of the USAR who desire to enlist in the RC of another U.S. Armed Force will be governed by AR 140–10 for enlistment in the USAR and NGR 600–200 for enlistment in the ARNG.

*b.* Enlisted Soldiers of troop program units (TPUs) of the USAR, ARNG, Individual Ready Reserve (IRR), Standby Reserve, or ROTC, to include SMP, who desire to enlist in the Regular Component, to include DEP or MSO delayed status, may enlist under paragraph 5–21.

*c.* RC enlisted Soldiers of the USAR and the ARNGUS who meet the criteria outlined in 10 USC 12686 (sanctuary period) will be processed by Commander, HRC, in accordance with paragraph 3–17*b*(4).

## 1–10. U.S. Army Reserve or Army National Guard membership

*a.* Personnel become enlisted members of the USAR (Selected Reserve or IRR) or ARNG by—

(1) Enlistment of RA Soldiers in the USAR or ARNG to complete the remainder of an MSO. On completion of the statutory obligation (expiration term of service), the member must continue in a military status by reenlistment or extension under AR 140–111 or NGR 600–200 or be discharged from the RC.

(2) Enlistment of ARNG members in the USAR. On discharge from the ARNG, a member may still retain Reserve of the Army status and be required to complete a remaining contractual or statutory MSO. On completion of the obligation, either statutory or contractual expiration term of service, the member must either reenlist immediately under AR 140–111 or be discharged from the USAR. Extensions are authorized under the policy contained in AR 140–111. Enlistment of ARNG personnel into the USAR will also be in accordance with AR 140–111 and NGR 600–200.

(3) Transfer from the Retired Reserve to the Ready Reserve under AR 140–10, with the approval of the Secretary of the Army, if the member is drawing retired pay. These personnel are not required to execute a Department of Defense (DOD) DD Form 4 or process for enlistment or reenlistment. They remain on an indefinite Ready Reserve status until age 60.

(4) Transfer from the Retired Reserve to the Ready Reserve under AR 140–10, with the approval of Commander, HRC, if the member is not drawing retired pay. These personnel must be reenlisted under AR 140–111.

(5) Enlistment in the USAR by completing a DD Form 4 and executing an oath of enlistment when applying from civilian status or from another military service of the United States. These enlistments are accomplished under policy in chapters 2, 3, and 5.

*b.* Service in the USAR or ARNG is either statutory or contractual.

(1) *Statutory service.* Under provisions of 10 USC 651, each person who becomes a member of a U.S. Armed Force, either by enlistment, appointment, or induction, will serve in the U.S. Armed Forces for a total initial period of 8 years. Any part of such service that is not AD will be performed in an RC. A person's statutory MSO runs concurrently with a contractual MSO.

(2) *Contractual service.* Each person who enlists or reenlists in a U.S. Armed Force executes a contractual agreement (DD Form 4) that establishes the terms of the service to be performed in that U.S. Armed Force. The contractual agreement runs concurrently with the statutory obligation incurred under 10 USC 651. Following fulfillment of this statutory obligation, any subsequent military service is served according to the terms of the contractual agreement governing the Soldier's current enlistment period.

## 1–11. Valid enlistment or reenlistment agreements

*a. DD Form 4.* DD Form 4, together with appropriate annexes, is the only valid agreement that exists between the person and DA for enlistment in the RA or the USAR; or between the person and the National Guard Bureau (NGB) for enlistment in the ARNG. For continued RA, USAR, or ARNG membership, when the term of service agreed to in such an agreement expires, one of the following applies:

(1) The agreement will be extended.

(2) A new DD Form 4 and oath of enlistment will be executed.

*b. Transfer order (reassignment order) (for U.S. Army Reserve or Army National Guard only).* A transfer order (reassignment order) is published to serve as the source document and authority to move members between the USAR, ARNG, or to the IRR. This order never alters terms of an enlistment agreement and never replaces an enlistment agreement.

**1–12. Referral of applicants to higher headquarters**
U.S. Army recruiting personnel have detailed knowledge about enlistment eligibility. They also have a general knowledge of normal conditions in the Army. The recruiter will resolve cases locally or request further assistance when needed through the chain of command.


# Chapter 2
# Enlistment in the Regular Army, U.S. Army Reserve, or Army National Guard for Nonprior Service Applicants

## Section I
## Basic Eligibility Criteria

### 2–1. General
*a. Enlistment considerations.* Enlistment of qualified persons will be the foremost goal of persons who take part in, or are connected with, processing applicants for enlistment in the RA, USAR, or ARNG.

*b. Meeting requirement.* Eligibility will be determined by the person's ability to meet all requirements of this regulation, to include obtaining waivers. Applicants will not be enlisted if any doubts about their qualifications cannot be resolved.

*c. Source documents.* Recruiting personnel must examine all source documents for discernible evidence of tampering or alteration. Documents used to substantiate basic eligibility criteria will be legible, written in English, or officially translated to English. If a bilingual Soldier (having language skill identifier) translates the document(s), then a written translation signed by the Soldier, with a commissioned officer's signature witnessing the signature, may be used. Recruiting battalions not having a Soldier with a skilled language identifier may designate recruiting personnel to translate foreign documents in a language common to Soldiers in the battalion. Designation of translator will be made in writing and kept on file at the recruiting battalion headquarters. All source documents must be original, or certified as an official copy of the original and included in the enlistment packet for enlistment into the RA and RC. These documents include transcripts for military occupational specialty (MOS) requirements or advance grade, high school diploma, or marriage license or certificate. They will be uploaded and forwarded with the enlistment packet or hand-carried by the applicant to the guidance counselor for compliance with instruction in chapter 6, section II.

*d. Obtaining documents.* The use of facsimile machines or email (via scanners) to provide an expeditious means of obtaining documents is authorized and may be used to prevent undue delays in shipment to training. The use of education transcripts, police checks, and court checks retrieved via agency Web sites is authorized. Documents used to verify dependents (except spouse) are not required for enlistment purposes into the DEP/delayed status/DTP, unless a dependent waiver is required as discussed in paragraph 4–19.

*e. Document certification.* Certification that a copy is of the original document may be made by the center commander, area noncommissioned officer in charge (NCOIC), first sergeant, company commander, operations sergeant, guidance counselor, commissioned officer, or equivalent contracted personnel assigned within USAREC. Prior to the applicant arriving at the MEPS for enlistment, the MEPS guidance counselor must examine all source documents for discernible evidence of tampering or alteration and to ensure the uploaded source documents are clear and legible. If the MEPS guidance counselor determines that a source document is questionable, the applicant will not be allowed to come to MEPS until a valid document is uploaded in the electronic management record for the MEPS guidance review and verification.

*Note.* Prior to uploading source documents for enlistment processing, one of the individuals in paragraph 2–1*e* must ensure that marriage certificates, divorce decrees, and birth certificates are certified originals, court-certified copies, or certified photocopies that reflect the file number (Vital Statistic) indicating filed at the county clerk office.

### 2–2. Basic eligibility criteria for all nonprior service applicants
Persons who apply for enlistment in the RA, USAR, or ARNG must meet eligibility criteria of this chapter and any other requirements for the MOS in which they are enlisting. Persons considered nonprior service (NPS), but previously separated from any component of the U.S. Armed Forces with fewer than 180 days and not awarded an MOS on AD are identified as "glossary NPS." All provisions applicable to NPS are also applicable to glossary NPS unless a specific exception exists. Rules or tables that do not apply to glossary NPS will be annotated to reflect applicability.

*Note.* All disqualifications that exist for PS applicants apply to glossary NPS as listed in chapter 4. The term 'glossary NPS' does

not change the fact an applicant has had military service. All provisions of this regulation that refer to basic active service date (BASD), previous military service, basic enlisted service date, and similar terms apply to NPS applicants.

## 2–3. Age

*a.* Applicant is eligible for enlistment if applicant is at least 17 years of age and has not passed his or her 35th birthday (waiver may be considered by the Director of Military Personnel Management). Applicants who are 17 years of age (have not reached their 18th birthday) require parental or guardian consent for enlistment through completion of appropriate sections of DD Form 1966 (Record of Military Processing-Armed Forces of the United States). All NPS RA applicants must ship to AD no later than their 35th birthday. All NPS RC applicants must be accessed into their respective RC no later than their 35th birthday. An enlistment into the DEP or accession into the RC is official after the applicant is administered the oath of enlistment per paragraph 6–14.

(1) Recruiters will obtain parental consent for any applicant who has not reached his or her 18th birthday. Parental consent may not be obtained more than 30 days prior to the 17th birthday; applicants must be 17 years of age at time of the test, physical, and contracting into the DEP/DTP or ARNG Recruit Force Pool. This consent of parents or legal guardians must be in writing before physical examination or enlistment. Enlistment is not authorized if either parent objects. However, if only one parent is entitled to legal custody of the applicant (for example, by reason of divorce decree), then only that parent's consent is required. The recruiter will identify any supporting document used and indicate its identifying marks, such as petition, file, or docket number in DD Form 1966, remarks section.

(2) If the applicant is married, legally separated, or divorced, a statement referencing the court document or marriage license will be entered in the remarks block of DD Form 1966 and the applicant may be enlisted without parental consent.

(3) Except as otherwise noted in this paragraph, both parents must sign the DD Form 1966. However, one parental signature is acceptable if the other parent is deemed incapacitated, or absent at an unknown location for an indefinite period. One parent's signature is also authorized if the other parent is incarcerated and will not be released prior to the applicant's 18th birthday. Parental consent may be obtained from an incarcerated parent, but it must be submitted through the institution's legal channels for notary. If only one parent signs, the reason will be explained in the remarks block of DD Form 1966. The recruiter will state in the verification block what documents were used to verify the single signature.

(4) The signature of the parents or guardian on DD Form 1966 will be witnessed by a commissioned officer, warrant officer, noncommissioned officer (NCO), or civilian recruiting specialist. Otherwise, the signature must be notarized. The recruiter will verify all entries, as well as supporting documents used to verify occasions when only one signature is authorized, and annotate this verification on the DD Form 1966. One parent is required to sign the DD Form 2807–2 (Accessions Medical Prescreen Report) for applicants under the age of 18 for medical examination.

(5) When an applicant has been made a ward of the court or under State or Federal law and the applicant has been placed in the control and custody of other than the natural parent(s), then the agency (normally a case worker) or the court appointed custodial agency will be required to complete the DD Form 1966 parental consent section and provide a certified copy of the court document awarding such custody.

(6) Emancipated applicants may enlist without parental consent, provided they have a certified court document declaring their emancipation. The recruiter will identify any supporting document used and indicate its identifying marks, such as the petition, file, or docket number, in DD Form 1966, remarks section.

*b.* Documents and procedures used to verify age include—

(1) Birth certificate.

(2) U.S. Citizenship and Immigration Services (USCIS) Form I–551 (Permanent Resident Card) or USCIS Form N–550/570 (Certificate of Naturalization).

(3) USCIS Form N–560/561 (Certificate of Citizenship).

(4) U.S. or foreign passport (expired or unexpired).

(5) DD Form 372 (Request for Verification of Birth).

*(a)* The only form authorized is the one issued by the Bureau of Vital Statistics.

*(b)* When a telephonic verification is done, block 12 will be signed by personnel receiving the information.

*(c)* If the form is faxed or taken to the vital statistics office, sections I and III will be completed by recruiting personnel.

*(d)* Section II will be completed by the Bureau of Vital Statistics Department personnel.

(6) Department of State (DS) Form 1350 (Certification of Birth).

(7) Foreign Service (FS) Form 545 (Certification of Birth Abroad).

(8) FS Form 240 (Consular Report of Birth Abroad).

(9) U.S. Passport Card.

## 2–4. Citizenship

*a.* Under 10 USC 504, an applicant is eligible for enlistment if he or she is—

(1) A citizen of the United States, which includes birth in a U.S. Territory (Puerto Rico, Guam, U.S. Virgin Islands,

and the Commonwealth of the Northern Mariana Islands, which consist of the islands of Saipan, Tinian, and Rota). The immigration status of an applicant's spouse, children, or immediate Family members (parents, in-laws, brother(s), or sister(s)) does not automatically disqualify an otherwise qualified applicant from enlisting into the RA or RCs. DA Pam 611–21, chapter 10 provides MOSs that require U.S. citizenship of immediate Family members as an MOS qualification.

(2) An alien who has been lawfully admitted to the United States for permanent residence (8 USC 1101(a)(20)). USCIS Form I–551 card holders are eligible for enlistment, provided their card is valid for 6 months after scheduled accession date onto AD for initial training. The requirement to obtain U.S. citizenship within 8 years of enlistment in order to continue serving has been rescinded for the all components of the Army.

(3) A national of the United States (8 USC 1101(a)(22)).

(4) A citizen (to include naturalized citizens) of the Federated States of Micronesia, Palau, Republic of the Marshall Islands, and the Commonwealth of the Northern Mariana Islands. The primary islands of the Marshall Islands are Kwajalein, Ebeye, and Majuro. The primary islands of the Federated States of Micronesia are Yap, Chuuk, Pohnpei, and Kosrae. These applicants are not authorized a clearance.

(5) The Secretary of the Army has statutory authority to allow the enlistment of other persons not described above if such an enlistment is vital to the national interest. If the Secretary of the Army has exercised this authority, guidance on requirements will be available from the DCS, G–1.

*b.* An alien who has been lawfully admitted to the United States for conditional permanent residence is also eligible for enlistment. However, if a Soldier should forfeit a conditional permanent residence status for any reason, the Soldier is subject to separation proceedings in accordance with AR 635–200 (see discharge of aliens not lawfully admitted to the United States) and any other requirements mandated by the Army for those Soldiers who are not lawfully admitted to reside in the United States.

*c.* Documents to verify eligibility include (return all documents to applicant after proper citizenship entries are made on the DD Form 1966)—

(1) *United States citizens.*

*(a)* Birth certificate showing birth within the United States.

*(b)* USCIS Form I–551 or USCIS Form N–550/570.

*(c)* USCIS Form N–560/561.

*(d)* U.S. Passport Book or U.S. Passport Card (unaltered and originally issued for 5 or more years to the applicant).

*1.* A statement is needed for verification of place of birth regardless of citizenship.

*2.* A U.S. Passport Book or U.S. Passport Card cannot be used to verify place of birth for naturalized citizens.

*(e)* DD Form 372.

*(f)* DS Form 1350 (Certification of Birth).

*(g)* FS Form 545.

*(h)* FS Form 240.

(2) *Permanent resident aliens.* Applicants must present their USCIS Form I–551 card showing that they have been admitted to the United States for permanent residence. USCIS Form I–551 cards issued after 1989 are only valid for 10 years and must be renewed. Applicants with expired cards keep their permanent residence status; however, they must apply for renewal of their permanent residence status and must obtain verification in the form of an original receipt from the USCIS indicating that the applicant has paid for an USCIS Form I–90 (Application to Replace Permanent Resident Card) renewal application prior to enlistment. Applicant must have a valid USCIS Form I–551 card prior to shipment to training. Any USCIS Form I–551 card with an expiration date within 6 months of accession date must be renewed and be valid for at least 6 months after the applicant's scheduled accession date onto AD for initial training.

(3) *Nationals of the United States.* Nationals of the United States include persons born in American Samoa or Swains Island. A native of American Samoa is issued a birth certificate that indicates the village of birth followed by the words, "American Samoa." A U.S. national may also have a U.S. passport with a black bar over the word "citizen" inside the passport, indicating that the bearer is a U.S. national but not a U.S. citizen.

(4) *Panamanians.* Under 8 USC 1403, any person born in the Panama Canal Zone on or after 26 February 1904 and before 1 October 1979, whose father or mother, or both, at time of birth of such person, was or is a citizen of the United States, is a citizen of the United States. Further, any person born in the Republic of Panama on or after 26 February 1904, whose father or mother, or both, at the time of the birth of such person was or is a citizen of the United States employed by the Government of the United States or by the Panama Railroad Company, or its successor in title, is a citizen of the United States. If the Panama Canal Zone birth certificate does not clearly establish citizenship, an applicant must verify his or her U.S. citizenship by presenting one of the documents listed in paragraph 2–4c(1). If applicant does not possess any of these documents, the applicant should apply for the proper document under paragraph 2–4c.

(5) *Foreign nationals.* Unless the Secretary of the Army has invoked the authority to create an exception to 10 USC 504, foreign nationals must have proof of permanent residence (including conditional permanent residence) in order to

enlist. However, statutory authority exists with respect to the enlistment of citizens from the island nations of the Federated States of Micronesia and the Republic of the Marshall Islands.

*(a)* Citizens, to include naturalized citizens, of the Federated States of Micronesia, Palau, Republic of the Marshall Islands, and the Commonwealth of the Northern Mariana Islands, may be enlisted into the U.S. Army.

*(b)* Federated States of Micronesia, Palau, Republic of the Marshall Islands, and the Commonwealth of the Northern Mariana Islands citizens do not require proof of permanent residence or other documents normally associated with legal resident verification.

*(c)* Applicants from the Federated States of Micronesia, Palau, and Republic of the Marshall Islands may enlist. However, according to Department of Defense Directive (DODD) 5200.2R, as non-U.S. citizens, they will not be enlisted for any option, unit, MOS, or program that requires a security clearance, unless pursuant to HQDA policy allowing these enlistments due to compelling reasons in furtherance of the DOD mission.

*(d)* Verification can be made by birth certificate; a Federated States of Micronesia, Palau, Republic of the Marshall Islands, or the Commonwealth of the Northern Mariana Islands passport; or Government identification (ID) card, naturalization certificate, or official letter of identity from local Government officials.

*(e)* Questionable cases must be checked through appropriate chain of command to Headquarters, USAREC (RCRO–PP) who will contact DCS, G–1 (DAPE–MPA), for clarification and final determination. For ARNG, questionable cases will be referred to ARNG–GSS–I.

*(f)* Persons from the Federated States of Micronesia, Palau, Republic of the Marshall Islands, and the Commonwealth of the Northern Mariana Islands currently residing in the United States or a territory of the United States may have a Trust Territory Passport. This document is acceptable, provided it clearly indicates the island of birth and the island is part of the Federated States of Micronesia, Palau, Republic of the Marshall Islands, or the Commonwealth of the Northern Mariana Islands.

*(g)* Authority to enlist foreign nationals of the Federated States of Micronesia, Palau, and the Republic of the Marshall Islands was granted according to the Compact of Free Association between both new nations and the Government of the United States.

(6) *American Indians born in Canada.* Under the Jay Treaty of 1794 and the 1814 Treaty of Ghent (8 USC 1359), American Indians born in Canada who can prove 50 percent American Indian blood quantum are entitled to obtain permanent residence in the United States. Conducting recruiting activities in foreign countries, including Canada, is prohibited, however, unless such activities are specifically authorized. If an American Indian born in Canada seeks to enlist, that individual should be directed to obtain proof of permanent residence in the United States and, once this proof has been obtained, may be processed for enlistment in accordance with the procedures for processing any other lawful permanent resident. Tribal cards and letters from tribal councils are insufficient proof that an applicant is eligible for enlistment.

*d.* Some persons born outside the continental United States but who have U.S. citizen parents or grandparents may be U.S. citizens and be unaware that they are U.S. citizens. U.S. law provides that under certain circumstances, some persons may automatically become U.S. citizens by derivation through their parents or grandparents. These laws can apply if the U.S. citizen parent is an adoptive parent or a natural parent. If an applicant has a U.S. citizen parent or grandparent but does not have proof that they are a U.S. citizen, they should be referred to an attorney who can determine whether the applicant is a U.S. citizen.

*e.* Applicants who have lost their documents may obtain new documents in the following ways:

(1) Applicant who are U.S. citizens or nationals may apply to the nearest U.S. passport agency or through the procedures described at http://www.state.gov (see passport application requirements). To obtain a replacement USCIS Form N–550/570 or USCIS Form N–560/561, an applicant should visit http://www.uscis.gov and file USCIS Form N–565 (Application for Replacement Naturalization/Citizenship Document). Birth certificates for persons born in Puerto Rico, the U.S. Virgin Islands, American Samoa, Guam, Swains Island, the Commonwealth of the Northern Mariana Islands, or the former U.S. Trust Territories of the Pacific Islands must be obtained from their respective offices of vital statistics. Panama Canal Zone birth certificates should be requested through the Vital Records Section of Passport Services as described on the State Department's Web site at http://www.state.gov.

(2) The alternate form to use for loss, theft, or non-receipt of original USCIS Form I–551 card is USCIS Form G–845 (Verification Request Department of Homeland Security U.S. Citizenship and Immigration Services). This form may be obtained by the applicant from the local USCIS office and will be used to obtain verification when documents listed above cannot be obtained. This form is a secondary verification form, and the following Army requirements must be met for use of this form. USCIS Form G–845 may be used for enlistment purposes only and applicant must present a valid USCIS Form I–551 card in order to ship. An official Department of Human Services stamp and initials are required in the status verifier block. All applicants using USCIS Form G–845 must also have a verifiable Government issued picture ID such as a driver's license, State issued ID, military dependent ID, high school or college ID, or foreign passport. In order to be valid for enlistment, the following response (no exceptions will be authorized) from a Department of Human Services official in USCIS Form G–845, section B will be accepted:

*(a)* This document appears valid and relates to the lawful permanent resident alien of the United States.

*(b)* This document appears valid and relates to the conditional resident alien of the United States.

*f.* Applicants enlisting into the RA, USAR, or ARNG holding dual citizenship with the United States and another country may enlist into an MOS that requires a security clearance, provided they meet the security standards outlined in AR 380–67 and all other applicable standards.

*g.* Documents that will be used to verify place of birth—

(1) Birth certificate.

(2) U.S. Passport Book or U.S. Passport Card.

(3) DD Form 372.

(4) FS Form 240.

(5) DS Form 1350 (Certification of Birth).

(6) FS Form 545.

(7) Foreign Passport (this does not have to be current to validate place of birth).

(8) Tribal card (not expired) letter from tribal council for American Indians born in Canada under the Jay Treaty.

## 2–5. Name

*a. Court order changing name.* Compare the document with applicant driver's license or social security card to ensure that individual is the same person. If names do not correspond, provide an explanation on DD Form 1966.

*b. Enlistment name.* The enlistment name under which an individual initially enlists in the U.S. Armed Forces will be the name on the individual's social security card.

*c. Glossary nonprior service and prior service.* Applicants will enlist using name on DD Form 214 (Certificate of Release or Discharge From Active Duty) or NGB Form 22 (Report of Separation and Record of Service) unless changed through marriage.

*d. Enlisted other name.* Applicants who enlist in another name must complete the appropriate block on DD Form 1966 and provide supporting document.

*e. DD Form 369.* In appropriate cases, complete DD Form 369 (Police Record Check) to show both names (maiden, if applicable, and assumed name) on one of the official documents indicated above.

*f. Aliens.* An alien must enlist with the name as indicated on the USCIS Form I–551 card or source document used to verify permanent resident status, unless married. If applicant wishes to use married name, the applicant's married name must match or be a derivative of the name on the social security card. Annotate name reflected on USCIS Form I–551 of DD Form 1966, remarks section.

## 2–6. Social security number

*a.* No person will be tested or processed for enlistment into the RA, USAR, or ARNG without a social security number or social security card.

*b.* The social security card will be the primary document used to verify the social security number. Social security printout commonly known as a Social Security Administration Number Identification Printout may also be used to verify the social security number.

*c.* The PS applicants may use DD Form 214, DD Form 215 (Correction to DD Form 214, Certification of Release or Discharge from Active Duty), or NGB Form 22.

## 2–7. Education

*a. Education requirements.* Applicant is eligible for enlistment if he or she meets trainability and education requirements outlined in paragraph 2–8 and requirements of specific MOS or option for which enlisting. The provisions of paragraph 2–20 apply for determination of clock, semester, and quarter hours. Education years code (ED YRS) is the highest grade completed. Education credentials will be accepted from any institution that is State or local Government approved, or accredited by one of the accrediting organizations recognized by the United States Department of Education. Questionable institutions will be submitted for verification to the USAREC battalion education specialist or ARNG education services personnel. Transcripts are required for verification of academic classes to qualify for specific MOS requirements. All Tier 1 education (high school diploma producing programs) must be verified using the force structure, address, and zip code realignment school database. If outside the battalion area, it must be verified with the battalion operations within that area. All education credentials must be verified using the force structure, address, and zip code realignment school database. If verification is not found within the force structure, address, and zip code realignment school database, verification must be conducted with the battalion operations or education services specialist within the location of the educational institution.

*b. Education verification.* The area NCOIC, first sergeant, company commander, senior operations sergeant, senior guidance counselor, commissioned officer, education specialist, equivalent contracted personnel assigned to USAREC, or ARNG education services personnel are authorized to perform telephonic or email verification for enlistment into DEP/DTP or ARNG. The telephonic or email verification for DEP/DTP or ARNG enlistment must include name of applicant, date of birth, name of school, school address, school phone number, date of graduation, name and title of individual providing verification, and the name and title of individual conducting verification. Verification of education

may be obtained from the applicant's principal, registrar, school guidance counselor, or the custodian of records for enlistment in the DEP/DTP or ARNG.

*c. High school diploma producing programs (Tier 1).*

(1) *High school diploma graduate via home school (ED LVL code H).* This diploma is issued to graduates of a home school program administered by a parent, teacher/school district, or umbrella association in accordance with State requirements.

*(a)* To qualify for enlistment as a home school graduate, an applicant must meet one of the following criteria.

*1.* In States that require parents to notify the school and/or local school district that they are home schooling their children, provide proof of enrollment from the State Department of Education or local school district.

*2.* In States that do not require parents to notify the school and/or school district that they are enrolling their children in home school, provide a home school certification or diploma from the parent, guardian, or national, State, or county home school association or organization.

*(b)* A copy of the applicant's transcript(s) for all school grades completed is also required. The transcripts will include enrollment date, graduation date, and type of curriculum. Additionally, the transcripts must show successful completion of the last 9 academic months of continuous schooling from the parent, guardian, or national, State, or county home school association or organization issuing the diploma.

*(c)* Further evaluation and additional verification are required for all applicants attempting to enlist with only a diploma and transcript from the parent or guardian instead of a diploma from a home school association or organization. These cases will be referred to the battalion educational services specialist or ARNG education services personnel for further evaluation. If a decision cannot be reached at battalion level, the educational services specialist will send the packet through brigade to Headquarters, USAREC, Education Division, Policy Branch or ARNG education services for final approval or disapproval.

*(d)* Enlistment of home-schooled seniors is authorized. Transcripts and a letter are required at DEP/DTP or ARNG enlistment. Diploma verification is the same process used for traditional high school seniors. Applicants currently enrolled must provide transcripts and letter to enlist as an 11H.

(2) *High school diploma graduate (ED LVL code L).* This is an individual with a diploma or official certified copy of the transcript who has attended and completed a traditional 12-year public or private attendance-based graded day program of classroom instruction. The diploma must be issued from the school where the individual completed the program requirements. This includes individuals who met all requirements for graduation, but failed to pass State mandated exit examinations. An applicant, who completed all the necessary credits for graduation but did not pass the State mandated exit examination(s), must be at least 6 months beyond their high school completion date, must have a letter from a school official verifying that they met all the high school graduation requirements but failed the exit examination(s), and did not receive a high school diploma. An official or certified school transcript or letter may be used for enlistment into the DEP/DTP/delayed status/RA/USAR/ARNG. The transcripts must indicate that the individual did graduate. If a diploma was not yet issued by the school, but all graduation requirements were met (that is, summer school or midterm graduate), an original letter from the applicant's principal, registrar, school guidance counselor, or custodian of records can be used for DEP/DTP or ARNG. The letter must state that the individual met all requirements for graduation and was not issued a diploma, along with the reason why, and give an approximate date the diploma will be issued. A diploma or transcript must be included in the enlistment packet prior to the applicant shipping to training.

(3) *High school senior (ED LVL code S).* A high school senior is an individual who is currently enrolled in an established high school as defined for a high school diploma graduate and is expected to graduate within the current authorized DEP/DTP period. Verification is required from a qualified school official (principal, vice principal, registrar, counselor, or custodian of school records, so designated by the principal). Telephonic record or email verification is authorized for enlistment into the DEP/DTP or ARNG. Verification must state the projected date that the individual will graduate from high school.

(4) *High school diploma graduate via virtual/distance school (ED LVL code 7).* This is a diploma awarded upon completion of an accredited home study, distance learning, independent study, self-study, correspondence school, cyber school, or virtual learning program. The diploma must be issued from an institution that is either State/local Government education agency approved, or accredited by the Distance Education Training Council, one of the accrediting associations recognized by the U.S. Department of Education, or the Council for Higher Education Accreditation.

(5) *Currently in high school (ED LVL code 9).* This applies to USAR DEP/DTP or ARNG enlistment only and to high school students (other than a senior) who have completed the 10th grade. Verification must show placement into the 11th grade. Enlistment will be into the USAR or ARNG Alternate Training Program entering initial AD for training (IADT) Phase I after completion of the 11th grade.

(6) *High school diploma graduate via adult/alternative diploma (ED LVL code B).* This is a diploma issued to a graduate of a public or private attendance-based nontraditional school using alternative methods of instruction to complete graduation credit requirements based on State law

(7) *High school diploma graduate via semester hours, quarter hours, or clock hours (ED LVL code 8). These individuals are those without a.* high school diploma, who attended and completed 15 semester hours of college credit,

22 quarter hours of college credit, or 675 clock hours of classroom instruction from an accredited postsecondary institution. This includes those applicants who have completed at least 675 clock hours of postsecondary vocational-technical training from the Job Corps, operated by the U.S. Department of Labor, and earned a GED or other Tier 2 education credential (defined in para 2–7*d*). Job Corps applicants must present a Job Corps certification of student graduation and proof of completion of vocational training signed by the Job Corps center director and training director for verification. Job Corps students must be enrolled in Job Corps for a minimum of 60 days prior to enlistment.

*(a)* Credits earned through testing, adult education, assessment, military training, or high school equivalency preparations are not applicable.

*(b)* Credits will be accepted from any institution accredited by one of the accrediting organizations recognized by the U.S. Department of Education or the Council for Higher Education Accreditation. All unaccredited programs will be submitted for verification to the USAREC battalion education specialist or ARNG education specialists. Foreign credentials must still be evaluated per paragraph 2–7*f*. Credits used to substantiate high school diploma graduate status are authorized for advance promotion under paragraph 2–19.

*(c)* Applicants who are currently enrolled in an accredited postsecondary vocational-technical institution that awards clock hour credits will not be processed for enlistment until they have successfully completed 675 clock hours of credit.

*(d)* Completion of any college course will be accepted for enlistment if the course is clearly identified as a college-level course and the college will recognize the credit toward graduation and degree completion requirements. The use of online college credits satisfies the requirement of a high school diploma graduate via semester hour or quarter hours from any degree granting institution recognized by the U.S. Department of Education or the Council for Higher Education Accreditation.

(8) *Degree credentials.*

*(a) Associate degree (ED LVL code D).* A certificate conferred upon completion of a 2-year program at a community college, university, or degree-producing technical institute.

*(b) Professional nursing diploma (ED LVL code G).* A certificate conferred upon completion of a 3-year hospital school of nursing program.

*(c) Baccalaureate degree (ED LVL code K).* A certificate conferred upon completion of a 4-year college program, other than a first professional degree.

*(d) First professional degree (ED LVL code W).* A certificate conferred upon completion of the academic requirement for the first degrees awarded in selected professions: architecture, accounting (certified public accountant), chiropody or podiatry, dentistry, medicine, optometry, osteopathy, pharmacy, veterinary medicine, law, theology, rabbinical studies, or other first professional degree.

*(e) Master degree (ED LVL code N).* A certificate conferred upon completion of additional academic requirements beyond the baccalaureate or first professional degree but below the doctorate level.

*(f) Post masters degree (ED LVL code R).* A certificate conferred upon completion of additional academic requirements beyond the master degree level but below the doctorate level.

*(g) Doctorate degree (ED LVL code U).* A certificate conferred in recognition of the highest academic achievement within an academic field, excluding honorary degrees and first professional degrees.

(9) *Currently enrolled other than high school diploma (ED LVL code M).* A non-high school graduate who is currently enrolled and attending class in a Tier 1 adult or alternative education or college program other than a high school diploma and who is expected to graduate or attain the required credits (15 semester, 22 quarter, or 675 clock hours of classroom instruction completed within the current term) may be enlisted. Credits will be accepted from any institution accredited by one of the accrediting organizations recognized by the U.S. Department of Education. Credits earned through testing (for example, College Level Examination Program (CLEP)), adult education, assessment, military training, and high school equivalency preparation are not applicable. Verification is required and must indicate the expected graduation or completion date. Applicants who complete these requirements will be coded per current regulatory guidance as Ed Code 12B or 127 or 128 prior to accession.

*d. Alternate high school credentials (Tier 2).* Tier 2 applicants must be at least 18 years of age to enlist. Each of the following has separate USMEPCOM Integrated Resource System and Recruit Quota System (REQUEST) codes:

(1) *Occupational program (ED LVL code C).* Certificate received for completing a 6-month vocational-technical program and a minimum of 11 years of secondary education.

(2) *High school graduate via National Guard Youth Challenge Program/GED (ED LVL code X).* A GED certificate or other test-based credential obtained by completing a 22-week National Guard Youth Challenge Program and passing the GED tests. This is an individual who has completed a National Guard Youth Challenge Program and received a GED.

(3) *High school certificate of attendance/completion or special education (ED LVL code J).* Any applicant who received an attendance-based high school diploma or certificate, issued to students based on an Individualized Education Program (IEP) standards, which differ from the traditional high school graduation requirements, and may involve community experiences, employment, training, or daily living skills.

(4) *Test-based equivalency diploma (ED LVL code E).* A certificate of GED or other test-based credential obtained solely by testing.

*e. Less than a high school diploma or credential (ED LVL code 1) (Tier 3).* An individual who is not currently in a secondary education program and has no diploma/credential.

*f. Foreign credentials.*

(1) Applicants completing high school or having college credits from foreign colleges or universities must have their documents evaluated and accredited by a State board of education, or by any degree granting college or university. Evaluations of foreign transcripts will be accepted from any degree granting institution accredited by any accrediting organization recognized by the U.S Department of Education or any member of the National Association of Credential Evaluation Services (NACES). As an exception to this guidance foreign credential evaluations from organizations not mentioned above may be forwarded by USAREC or ARNG personnel to DAPE–MPA for consideration.

(2) Evaluation under this rule will also be used to qualify applicants under paragraph 2–18, if otherwise qualified.

*g. Exemptions.* The following countries, territories, and nations are exempt from the evaluation requirement, and their education documents will be treated in the same manner as those from any U.S. school:

(1) Federated States of Micronesia.

(2) Republic of the Marshall Islands.

(3) Commonwealth of the Northern Mariana Islands.

(4) Guam.

(5) American Samoa.

(6) Canada.

(7) Puerto Rico.

(8) Virgin Islands.

(9) Palau.

(10) DOD Dependent School System.

(11) Overseas American-sponsored elementary and secondary schools assisted by the U.S. Department of State.

*h. Specific course requirements.* Some MOSs require verification of specific course completions. Verification may be accomplished with a letter or transcript. Verification must be presented prior to enlistment (DEP/DTP) into the RA, USAR, or ARNG.

*i. Current school year withdrawals.* If an applicant indicates that he or she withdrew from school during the current school year, he or she should be encouraged to return and complete high school. However, if the applicant does not intend to return to school, verify that the applicant has withdrawn, and notify the school of his or her intention to enlist. Under no circumstance will an applicant be encouraged or given any assistance in withdrawing from school. Coordination with parents, teachers, and counselors to keep students in school through graduation is desirable and consistent with the DA policy.

*j. Semester hour requirements.*

(1) Combining of semester hours with quarter hours or combining clock hours with either semester or quarter hours for enlistment purposes (see para 2–7c(7)) and advanced promotion (see para 2–18) is authorized.

(2) For nondegree granting education institutions listed in the Accredited Institutions of Postsecondary Education (AIPE) or NACES that award clock hours or quarter hours, the following will equate:

*(a)* Clock hours: 45=1 semester hour.

*(b)* Quarter hours: 1.5=1 semester hour.

(3) Classroom semester hours also include credits earned by college test programs (such as, the CLEP or Internet courses), as recognized by universities or colleges listed in the AIPE or NACES. Semester hours or quarter hours earned through college test programs may be used for advanced promotion, but may not be used for enlistment purposes.

(4) Classroom semester hours under paragraph 2–7 are for college-level courses only (100 series and above). Courses below the 100 series may be used if the college or university applies them to a degree-producing program.

## 2–8. Trainability

Waiver requests will not be considered if applicant does not meet requirements discussed below (or administration of tests and retests, see chap 5). To be eligible for enlistment, an applicant must meet the following criteria:

*a.* Applicant must meet the test score requirements listed in subparagraph d, below, and the specific test requirements of MOS or option for which enlisting.

*b.* Applicant must have the ability to read, write, and speak sufficient English to understand the oath of enlistment and the pre-enlistment interview.

*c.* Applicant must attain the required aptitude area score as required for MOS, in accordance with DA Pam 611–21, except for ACASP qualified applicants that require no prerequisite training.

*d.* Test score category (TSC) is used to determine enlistment in the RA, USAR, or ARNG.

(1) TSC–I (Armed Forces Qualification Test (AFQT) 93–99).

(2) TSC–II (AFQT 65–92).

(3) TSC–IIIA (AFQT 50–64).

(4) TSC–IIIB (AFQT 31–49).

(5) TSC–IVA (AFQT 16–30).

(6) TSC–IVB (AFQT 10–15) not currently accepted (except 09L).

(7) TSC–V (AFQT 0–9) not eligible to enlist (except 09L).

## 2–9. Physical

*a.* Applicant is eligible for enlistment if he or she meets procurement physical fitness standards of AR 40–501 and added requirements of specific option for which enlisting. Glossary NPS that have not been awarded an MOS must meet procurement physical fitness standards of AR 40–501.

*b.* Waivers may be requested for medical defects, provided applicant is not under the care of a physician or taking medication for the defect.

*c.* Waivers are not authorized for confirmed positive results for the presence of human immunodeficiency virus (HIV) or antibody (AR 40–501).

*d.* Applicant will be tested for the presence of alcohol and drugs. Applicants who refuse to submit to drug or alcohol testing will be denied further processing and enlistment (no waiver authorized).

(1) Applicant is eligible if drug and alcohol tests are negative.

(2) Applicant is authorized enlistment in the DEP/delayed status/DTP or ARNG pending drug test results, except that applicants who previously tested positive for drugs require a waiver.

(3) Applicants will be advised that they will be discharged if they test positive (laboratory confirmed) for drugs.

## 2–10. Dependents

*a.* An applicant meets dependency requirements if he or she is—

(1) Without a spouse and with no dependents.

(2) Married and, in addition to the spouse, has two or fewer dependents.

(3) Without a spouse and does not have custody of dependents.

(4) Without a spouse and required to pay child support for two or fewer dependents by court order.

*b.* An applicant does not meet dependency requirements if—

(1) The applicant is married and, in addition to the spouse, has three dependents under the age of 18. The recruiting battalion commander may consider waiver for RA/USAR applicants or The Adjutant General (TAG) for ARNG applicants.

(2) The applicant is married, has four or more dependents under the age of 18 or three or more dependents under the age of 18 and wife is expecting an additional dependent due to pregnancy. Waivers may be considered by the CG, USAREC for RA/USAR applicants and respective State TAG for ARNG applicants.

(3) The applicant is married and in addition to spouse has two dependents under the age of 18 and wife is expecting additional children. Waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants.

(4) Applicants are processing as a husband and wife team and have one, two, or three dependents under the age of 18. Waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants.

(5) Applicants are processing as a husband and wife team and have four or more dependents under the age of 18. Waivers may be considered by the CG, USAREC for RA/USAR applicants and respective State TAG for ARNG applicants.

(6) The applicant has a spouse who is currently on AD or a member of a RC (excluding IRR) of the U.S. Armed Forces and has a dependent less than the age of 18. One Servicemember must have completed IADT. Waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants.

(7) The applicant is without a spouse and has custody of at least one dependent under the age of 18. (Waiver will not be considered for RA.) For TC, waivers may be considered by CG, USAREC for USAR, and by respective State TAG for ARNG applicants.

(8) The applicant is without a spouse and is required by court order to pay child support for three dependents. Waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants.

(9) The applicant is without a spouse and is required by court order to pay child support for four or more dependents. Waivers may be considered by the CG, USAREC for RA/USAR applicants and respective State TAG for ARNG applicants.

(10) The applicant is married and required by court order to pay child support for one or more dependents from

previous marriage or relationship for a total of three dependents under the age of 18. Waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants.

(11) The applicant is married and required by court order to pay child support for one or more dependents from previous marriage or relationship and, when added to dependents of current marriage, in addition to the spouse, has four or more dependents. Waivers may be considered by the CG, USAREC for RA/USAR applicants and respective State TAG for ARNG applicants.

(12) The applicant is without a spouse and has custody of three or less dependents under the age of 18 and is accessing into a RC. Waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants.

(13) The applicant is without a spouse and has custody of four or more dependents under the age of 18 and is accessing into a RC. Waivers may be considered by the CG, USAREC for RA/USAR applicants and respective State TAG for ARNG applicants.

*c.* The definitions of dependent, spouse, and children are for qualifications and criteria to enlist. These definitions are not for the purpose of determination of pay or allowances, basic allowance for housing, medical, or other benefits. Appropriate authority for determination of benefits is contained in other applicable regulation pertaining to finance and accounting, issuance of ID cards, and privileges.

(1) An applicant is considered to be "without a spouse" if—

*(a)* A civil court has not recognized common law marriage.

*(b)* A spouse is incarcerated.

*(c)* A spouse is deceased.

*(d)* A spouse has deserted the applicant.

*(e)* A spouse is legally or by mutual consent separated from the applicant.

*(f)* The applicant or spouse has filed for divorce.

(2) For the purpose of this regulation and enlistment, the term "dependent" includes—

*(a)* A spouse.

*(b)* An unmarried, adopted, or stepchild under the age of 18 living with the applicant.

*(c)* An unmarried natural child of the applicant under the age of 18.

*(d)* Any person living with the applicant who is, by law or in fact, dependent upon the applicant for support; or not living with the applicant and dependent upon the applicant for over 1/2 of their support.

*(e)* Any person for whom the applicant is responsible for his or her financial or custodial care.

(3) Joint physical custody versus child support—

*(a)* When a joint custody agreement or order requires joint physical custody by an applicant without a spouse, the applicant is not eligible for enlistment. Visitation or joint decision rights with the respect to education, medical procedures, or other parental decisions, other than actual physical custody, are not considered as requiring joint physical custody. However, if a mandatory period of residence is required, then joint physical custody exists and the applicant is not eligible to enlist. Mandatory physical custody does not include negotiable periods of visitation or voluntary agreement to have custody for short periods that are negotiable and compatible with military service.

*(b)* If a court order allows modification of custody by written agreement of the parents, and if the other parent assumes full physical custody pursuant to written agreement, the applicant is qualified for enlistment.

*(c)* Questionable cases will be resolved by referral, with respect to RA/USAR enlistments, through the chain of command to a USAREC judge advocate, and with respect to the ARNG, to the respective State Judge Advocate.

*d.* The U.S. Army recognizes that some persons for personal reasons have given up custody of a child or children. For this reason, the following rules have been provided so a determination can be made for enlistment purposes. It is not the intent or desire of the U.S. Army to require any person to relinquish custody of his or her children to qualify for enlistment. Under no circumstances will any Army representative advise, imply, or assist an applicant with regard to surrender of custody for the purpose of enlistment. Applicants will be advised that they do not meet the dependent criteria of this regulation and that the Army's mission and unit readiness are not consistent with being a sole parent. Persons who are sole parents would be placed in positions, as any other Soldier, where they are required at times to work long or unusual hours, to be available for worldwide assignment, and to be prepared for mobilization, all of which would create conflicting duties between children and military requirements for the sole parent.

(1) If an applicant is without a spouse and, prior to application for enlistment, the child or children have been placed in the custody or guardianship of the other parent or another adult by court order or by written custody agreement between parents that is valid under State law, and the applicant is not required to pay support for more than three dependents, then the applicant is eligible to process for enlistment. The court order or custody agreement must clearly indicate that the applicant does not have physical custody of any child. In cases of court order or custody agreements that require "involvement" such as medical or education decisions but do not require physical custody of the child(ren), then the additional requirements or involvement should not be considered for eligibility unless such conditions require a mandatory custody period that cannot be fulfilled due to military service. Guardianship documents must very clearly indicate that the guardian has full physical custody and not just a guardianship right or oversight role. The bottom line

issue is actual physical custody of the child(ren). Questionable cases will be resolved by referral to a USAREC or ARNG staff judge advocate.

(2) Those applicants who at time of enlistment indicate they have a child or children in the custody of the other parent or another adult will be advised and required to acknowledge by certification that their intent at time of enlistment was not to enter into the Army, USAR, or ARNG with the express intention of regaining custody after enlistment. Applicants will be required to execute a DA Form 3286 (Statements for Enlistment). All applicants will be advised that if they regain custody during their term of enlistment, they are in violation of the stated intent of their DD Form 4 with annexes. They will (unless they can show cause, such as death or incapacity of the person who has custody) be processed for separation (involuntary) for fraudulent enlistment pursuant to AR 635–200.

(3) Applicants who are not married at the time of enlistment but have a child out of wedlock and, under State law, a mutually agreed upon contract between the two natural parents is sufficient to transfer custody and control of any children, then it will be acceptable for enlistment purposes. Applicants will be advised that they are being accepted for enlistment based on the eligibility status of being a single parent without custody. All applicants must complete a DA Form 3286 at time of entry into the DEP/DTP or ARNG. Consult with brigade judge advocate/USAREC Plans and Policies, or equivalent personnel in the ARNG, on questionable cases. In all cases where custody has not been clearly established, the burden of proof is with the applicant. The applicant will not be processed until the custody issue has been resolved.

*e.* Documents used to verify eligibility include the following:

(1) Marital status—

*(a)* Marriage certificate.

*(b)* Divorce decree.

*(c)* Legal separation decree.

*(d)* Annulment decree.

*(e)* Civil action document (divorce pending).

*(f)* Death certificate (widowed).

(2) Dependents under the age of 18—

*(a)* Birth certificate.

*(b)* FS Form 240.

*(c)* Certified or notarized copy of court order of adoption.

*(d)* Certified or notarized copy of court order proceeding equivalent to adoption that terminated all parental rights and obligations.

(3) To show if dependent has been placed in custody of other parent or another adult and whether or not applicant is required to pay (by court order) child support, one of the following is used:

*(a)* Divorce decree.

*(b)* Court order.

*(c)* Separation order.

*(d)* Written custody agreement between parents recognized by State law.

(4) For dependent parent, affidavits establishing dependency.

*f.* Questionable cases must be reviewed by a USAREC or ARNG judge advocate.

## 2–11. Conduct and administrative criteria

Applicants may be eligible for enlistment with or without waiver as indicated in each case. Applicants may have a waiting period, as cited in paragraph 4–32, if they have been subject to parole, probation, or incarceration (see chap 4).

*a. Applicant interview.* Recruiter will interview applicant on any records of arrest, charges, juvenile court adjudications, traffic violations, probation periods, and dismissed or pending charges or convictions, including those that have been expunged or sealed. No applicants will be allowed to enlist or ship without a signed DD Form 369 (Police Record Check) in their enlistment packet that authorizes police record checks, in case this action is required during processing at the MEPS or the reception battalion. Guidance counselors (USAREC/ARNG), upon receipt of a records check that lists a law violation(s) not previously disclosed, will initiate match proceedings in accordance with paragraph 4–2*f*. Recruiters will then be notified if they are required to run police record checks. If an applicant claims to have a charge of minor nontraffic or higher offense, then police record checks using DD Form 369 will be run for the city, county, and state where the applicant has lived, worked, and attended school for the past 3 years. Police record checks using DD Form 369 are also required to be run in the city, county, and state where the applicant claims to have been charged with a minor nontraffic or higher offense, regardless of how long ago the charge occurred.

(1) *Use of DD Form 369.* This form will be used to record information obtained in police records check. Recruiter will provide self-addressed official mail envelopes to minimize work for police authorities. Mailing police records checks to a foreign law enforcement agency is not authorized.

(2) *Pending charges.* If applicant is subject to pending charge(s) that would not require a waiver if found guilty, Armed Services Vocation Aptitude Battery (ASVAB) testing is authorized. If applicant is subject to pending charge(s)

that would require a waiver if found guilty or if placed on probation or parole, or if given a suspended sentence, all processing will be terminated (see para 4–34).

*b. Police record check and court check.* The police record checks will indicate the name on the applicant's social security card (USCIS Form I–551 card for those who are permanent resident aliens), the name the applicant is enlisting under, as well as the name on birth certificate, maiden name, or any other name the applicant is known as. In cases where the name is clearly derived from the originating name (i.e., Dick from Richard or Stephen from Estaban), all names will be listed. Criminal history information will be maintained with strict confidentiality. If reply from police authorities or court records clerk is not received within 7 working days, and every effort to obtain police/court clearance has been exhausted, then the recruiting battalion commander may authorize to process disclosed offenses as self-admitted offense and enlist applicant into RA/USAR or ARNG if a conduct waiver is not required.

(1) These checks may be mailed and are required to be completed at the MEPS prior to shipping to IADT, or within 30 days after enlistment in the DEP/delayed status/DTP/ARNG.

(2) Applicants who claim no law violations or claim only minor traffic offenses are not required to have police record checks or court checks. However, police record check or court check must be obtained to verify disposition if applicant claims reckless, careless, or imprudent driving.

(3) Police/court documents where the offense(s) occurred will be obtained from—

*(a)* City or municipal, military installation law enforcement.

*(b)* County law enforcement.

*(c)* State law enforcement.

*(d)* Court documents.

*(e)* Probation departments.

*(f)* Adult correctional facilities.

*(g)* Juvenile correctional facilities.

(4) Applicants requiring a conduct waiver for any misconduct or major misconduct-level offense, regardless of disposition, will have police record checks obtained from—

*(a)* City or municipal, military installation law enforcement.

*(b)* County law enforcement.

*(c)* State law enforcement.

*(d)* Court documents.

*(e)* Probation departments.

*(f)* Adult correctional facilities.

*(g)* Juvenile correctional facilities.

*c. Telephonic police records check.* Telephonic police checks are authorized by station commander, area noncommissioned officer in charge, commissioned officers, company commanders, recruiting first sergeants, guidance counselor, recruiting battalion operations personnel, or equivalent contracted personnel assigned to USAREC or the ARNG. The person obtaining telephonic police records check will sign a written report on DD Form 369. Forwarding a DD Form 369 to the Federal Bureau of Investigation, a foreign government, or foreign police agencies is not authorized.

*d. New police checks.* New police checks are required if new arrests or convictions occur since previous checks were conducted and will be run in accordance with paragraph 2–11*b.*

*e. Police records check not released or a fee is charged.* If law enforcement agency states, in writing that it will not provide information or that a fee is required and copy of that statement is maintained in recruiting battalions, police records check will not be required. The completed DD Form 369 will contain reference to that written statement. The DD Form 369 will be forwarded with the enlistment packet. USAREC and ARNG must update every 5 years those written documents used for references of agencies that do not release records checks.

*f. Sex offender check.* Each applicant will be specifically asked whether he or she is a registered sex offender and asked if he or she is required to register as a sex offender. Responses to this question will be captured in the remarks section of the DD Form 1966, page 4. Additionally, a query of the National Sex Offender Public Registry must be conducted on every applicant that processes for enlistment. If the applicant is a registered sex offender or required to register as a sex offender, enlistment is prohibited.

## 2–12. Suggested civilian or military clothing list for glossary nonprior service and prior service

*a.* Potential enlistees attending initial entry training or IADT will be provided the suggested civilian clothing list located at http://www.futuresoldiers.com/downloads/resources/mso1F4.pdf.

*b.* The PS (Army) personnel enlisting with a break in service of fewer than 90 days will be informed of the applicable provision of AR 700–84, which requires PS personnel to have their clothing issue in their possession when reporting to their first duty station (includes USAR/ARNG and glossary NPS, but excludes IRR).

## 2–13. Review of enlistment forms and documents

Each applicant's forms and original documents will be reviewed by an individual designated by the CG, USAREC or

ARNG for completeness and accuracy before uploading and forwarding the packet to MEPS. The designee will also ensure that a specific MOS or enlistment option will not be guaranteed to an applicant before processing by the Army guidance counselor or ARNG guidance counselor.

### 2–14. Background Investigation and vetting requirements

*a.* All accessions require submission of a NACLC or higher personnel security investigation, favorably adjudicated to Secret or higher level. Guidance counselors must ensure that all personnel security investigation submissions are for Secret or higher level at accession into the RCs or entry into the DEP. Fingerprint check results are required prior to entry onto AD or shipping to training or first duty assignment, unless results are present in Joint Personnel Adjudication System, for PS Soldiers.

(1) Documents required for NACLC include—

*(a)* Live-scan fingerprint or FD 258 (Applicant Fingerprint Card).

*(b)* Standard Form (SF) 86 data (Questionnaire for National Security Positions) and—

*1.* Authorization for release of information.

*2.* Authorization for release of medical information.

*3.* Applicant certification of information.

*4.* Signature release of credit check.

(2) Documents required for single scope background investigation include NACLC criteria and processing by the personnel security screening liaison.

(3) Exceptions to the guidance above may be provided by CG, USAREC or Chief, NGB on a case-by-case basis.

*b.* In addition to the favorable completion of a NACLC, all non-U.S. citizens processing for enlistment into the RA, USAR, or ARNG require a favorable completion of a NIAC, which includes the Federal Bureau of Investigation Foreign Terrorist Tracking Task Force check.

(1) NIACs will be submitted through the guidance counselor resource center to the Linguist Support Office.

(2) If results indicate a nexus to terrorism, the non-U.S. citizen is disqualified from further processing or continued service in the RA, USAR, or the ARNG.

(3) Polygraphs may be administered with the voluntary consent of the enlistee to mitigate derogative results from the NIAC.

(4) Refusal to undergo a counterintelligence-focused interview or an issue-specific polygraph may result in an inability to resolve adverse results.

(5) Unresolved results may lead to the disqualification of the non-U.S. citizen from further processing for enlistment or continued service in the RA, USAR, or the ARNG.

*c.* Homeland Security Presidential Directive (HSPD) 12 establishes a mandatory, Government-wide standard for secure and reliable forms of identification issued by the Federal Government.

(1) The DOD common access card is the DOD Federal credential. The submission of the NACLC and favorable fingerprint check results are required for initial common access card issuance.

(2) Favorably adjudicated NACLCs meet final HSPD 12 credentialing standards. Recruiting personnel will check DOD adjudication system of record for a previous investigation that meets HSPD 12 credentialing standards for common access card issuance (provided there has been no break in service of more than 2 years since the last background investigation) to determine if HSPD–12 adjudication requirements have been met.

### 2–15. Educational assistance for Regular Army and U.S. Army Reserve

AR 621–202 provides eligibility information for RA, USAR, and ARNG Soldiers concerning participation in the Montgomery GI Bill (MGIB).

## Section II
## Enlistment Periods and Pay Grades

### 2–16. Authorized enlistment periods

*a.* The NPS applicants enlisting in the RA (10 USC 651(a)) and RC (10 USC 12103(d)) incur no more than an 8-year MSO.

*b.* Enlistment in the RA is authorized for a term of at least 15 months but not more than 8 years. A specific MOS may require a minimum term of service.

*c.* Enlistment in the USAR or ARNG will be for a period of 8 years. The applicant may select the period of time to be assigned to the Selected Reserve, as authorized by chapter 5. NPS applicants with credible time served must enlist for a period of years, months, days equal to the unfulfilled portion of their original MSO or may select one of the authorized periods of enlistment not to exceed the original MSO.

**2–17. Pay grade and date of rank**

*a.* Persons enlisting in the RA, USAR, or ARNG without PS will be enlisted in pay grade private E–1. Exceptions are shown in paragraph 2–18 or when the applicant qualifies to enter in a higher entry pay grade as outlined under the ACASP.

*b.* Date of rank (DOR) for persons without PS will be as follows:

(1) RA — date of enlistment on AD.

(2) USAR — date of enlistment.

(3) ARNG — date of enlistment.

*c.* Enlistment pay grade determined using paragraph 2–18 does not exempt applicant from basic training requirement.

*d.* Authority for enlistment grade must be entered in the remarks section of DD Form 1966, to include a statement that the documents used to promote the Soldier have been verified (for example, pay grade E–3 authorized per para 2–18*c*, by guidance counselor name and rank).

**2–18. Enlistment pay grades for personnel without prior service**

This paragraph applies to DEP, DTP, or ARNG applicants.

*a.* The following explains who may enlist and when and at what pay grade. An applicant who—

(1) Has no qualifications for advancement to pay grade higher than E–1 may enlist at any time.

(2) Has completed 2 or more years of Junior ROTC, or a National Defense Cadet Corps Program, may enlist at any time at pay grade private E–2.

(3) Has completed 1 year of Senior ROTC (SROTC) may enlist at any time at pay grade E–2.

(4) Has attended any military service academy for at least 150 but not more than 179 days, may enlist at any time at pay grade E–2, or at grade determined by amount of college credit completed, as noted in the subparagraphs below, whichever is greater.

(5) Has successfully completed 24 or more classroom semester hours (36 or more quarter hours) at an accredited degree granting college or university listed in the AIPE or NACES (foreign transcripts must be evaluated according to paras 2–7*f* and 2–20), may enlist at any time at pay grade E–2.

(6) Has successfully completed 48 or more classroom semester hours (72 or more quarter hours) (without a 4-year degree) at an accredited degree granting college or university listed in the AIPE (foreign transcripts must be evaluated according to paras 2–7*f* and 2–20), may enlist at any time at pay grade E–3. Applicants with an associate degree will be enlisted at pay grade E–3 without regard to the number of semester or quarter hours completed.

(7) Has successfully completed 2 or more academic years of a postsecondary vocational-technical school, and has received a certificate of training attesting to successful completion of the course, may enlist at any time at pay grade E–3. The school must be listed in the AIPE (see para 2–20).

(8) Has successfully completed a degree-producing college program of 4–year duration, the college or university is listed in the AIPE, and has been awarded a bachelor degree or higher (foreign degrees and transcripts must be evaluated according to para 2–7*f*), may enlist at any time at pay grade E–4. Advanced promotion is authorized if college or university provides a letter stating the applicant has met all requirements for a degree, but it will not be awarded until commencement ceremony.

(9) Has completed all Phase II requirements of the Air Force Civil Air Patrol, and has been awarded the Billy Mitchell Award, may enlist at any time at pay grade E–2.

(10) Has taken part in the Naval Sea Cadet Corps, and has been awarded NSCADM 024 (Certificate of Advancement), may enlist at any time at pay grade E–2.

(11) Has been awarded the Boy Scout Eagle certificate as a member of the Boy Scouts of America or the Sea Scout Quartermaster Award Certificate or the Venturing Scout Silver Award may enlist at any time at pay grade E–2. A combination of these awards to enlist at pay grade E–3 is not authorized.

(12) Has earned the Girl Scout Gold award certificate as a member of the Girl Scouts of America may enlist at any time at pay grade E–2.

(13) Is qualified under the ACASP may enlist at any time at pay grade E–4.

(14) Lacks documentation required for advanced promotion under this paragraph at time of enlistment may submit supporting documents to the unit personnel officer at the initial entry training installation or at the first unit of assignment within 6 months of enlistment. Documents must be original, certified, or evaluated, as required.

*(a)* College credit or course completion (includes Junior ROTC and SROTC) must have occurred prior to the date of enlistment in the RA or entry in IADT for USAR or ARNG.

*(b)* Only colleges and universities listed in the AIPE, NACES, or foreign transcripts evaluated according to paragraph 2–7*f* may be used. This requirement is only used for advanced promotion under this paragraph and does not affect or change the guidance for promotion boards with respect to education points, which are given or verified via other publications. However, no other education evaluation publication will be used to qualify under this regulation.

*(c)* Effective date and DOR for Soldiers who lacked documentation at time of enlistment will be the effective date

of the promotion by the unit commander. No retroactive adjustment is authorized and each applicant will be advised that failure to produce documents before enlistment or after time frames above will cause them to forfeit entitlement to this incentive. The promotion will be for the grade the Soldier is qualified for at the time of enlistment.

*(d)* Applicants who have college credit, but owe the college or university money and the school will not release official transcripts until all debts are cleared, must have a letter from the school official stating number of credits earned and the reason official transcripts are unavailable. A letter from the recruiting company commander or ARNG State Education Office verifying with the registrar the number of credits earned, and stating that the transcripts are not available due to debt to the school, is authorized to award accelerated promotion.

*(e)* Each applicant who claims, but cannot substantiate, qualification for higher enlistment grade will be required to acknowledge that he or she has read and understand this rule and the time frames established. An applicant or enlistee will acknowledge this in the remarks section of DD Form 1966. Unit commanders for DTP or ARNG Recruit Sustainment Program, upon verification that a Soldier is authorized the advance promotion under this paragraph, will promote the Soldier, citing this paragraph as the authority. Effective date and DOR will be the date the commander authorizes the promotion.

*b.* The referral program provides incentive for increased pay. Verification will be the responsibility of Headquarters, USAREC for all referrals. Only referrals received and verified prior to the date of enlistment in the RA or USAR will affect the enlistment grade. Any applicant participating in the Army Referral Program who refers—

(1) One qualified NPS, glossary NPS, or PS applicant who enlists into the DEP, RA, ARNG, or USAR on or before the date the applicant enters the RA or IADT for USAR or ARNG, and completes the Future Soldier pre-execution checklist and passes an Army physical fitness test with a total score of 180, may enlist at any time at pay grade E–2.

(2) One qualified registered nurse who applies for the Army Nurse Corps AD or USAR, and Headquarters, USAREC accepts the application on or before the applicant enters the RA or IADT, may enlist at any time at pay grade E–2.

## 2–19. Verification requirements for enlistment in higher grade

Applicant must provide the documentation reflected in paragraphs 2–19a through 2–19d to support enlistment in higher pay grade. Guidance counselors will verify required documents to justify higher pay grade from one of the documents listed below. After verifying required documents for advanced promotion, guidance counselor must sign a DA Form 4187 (Personnel Action) that outlines the promotion authority and the pay grade authorized prior to shipping to IADT. This applies to those USAR or ARNG members who met an advanced promotion criteria after the initial date of enlistment and who are awaiting shipping to IADT. Additionally, after arrival at the reception battalion, if an error in entry grade is identified following review of a new Soldier's enlistment contract, the human resources specialists at all reception battalions are authorized to generate and/or authenticate a grade change in the applicable human resources system to provide the correct entry grade. DA Form 4187 completed by guidance counselor will be forwarded to State Headquarters for ARNG personnel.

*a.* Education documents used to grant advanced or accelerated promotions must be listed in the AIPE or NACES. A guidance counselor, education specialist, operations NCO, first sergeant, commissioned officer, or equivalent contracted personnel assigned to USAREC, or the ARNG must verify documents. Verification must be annotated, referencing authority for grade, on DD Form 1966, remarks section.

*b.* Official document awarding Billy Mitchell Award, Eagle Scout, Quartermaster Award, or Gold Award.

*c.* Document verifying ACASP qualifications. Recruiting company commander's (ARNG equivalent (Recruit Sustainment Program)) letter verifying completion of Future Soldier pre-execution checklist or ARNG Stripes for Buddies and referrals as identified by USAREC or NGB.

# Chapter 3
# Enlistment in the Regular Army, U.S. Army Reserve, or Army National Guard for Prior Service Applicants

## Section I
## Basic Eligibility Criteria

## 3–1. General
This chapter prescribes basic eligibility criteria for PS applicants for enlistment in the RA, USAR, or ARNG. Qualifications apply to RA, USAR, and ARNG unless otherwise specified, and eligibility requirements are the same as for NPS as prescribed in chapter 2. Refer to chapter 2 for name and social security verification procedures.

## 3–2. Basic eligibility criteria for all prior service applicants
*a.* Persons applying for enlistment in the RA, USAR, or ARNG must meet eligibility criteria outlined in this chapter. The PS applicants also must meet requirements of options for which they are enlisting.

*b.* The PS definitions for RA, USAR, and ARNG below indicate when an applicant is considered to have PS status by component:

(1) For persons enlisting in the RA, applicants must have 180 days or more of AD.

(2) For persons enlisting into a RC, applicants must have served 180 days or more on AD as a member of the U.S. Armed Forces. Applicants who are MOS qualified are considered as PS regardless of time on AD.

*c.* These rules are also applicable to glossary NPS applicants, unless otherwise specified.

*d.* These definitions do not change the fact that an applicant has served in the military. Any applicant with 1 or more days in any component of a military service has had prior military service.

*e.* Applicant is eligible for enlistment as a PS if applicant qualifies for exemption from enlistment requirements because of the following:

(1) Applicant has been awarded the Medal of Honor, Distinguished Service Cross, Navy Cross, or Silver Star Medal.

(2) Applicant is a partially disabled, combat-wounded Army veteran with fewer than 20 years of service as defined in 10 USC 3925.

## 3–3. Age

Applicant is eligible for enlistment if any of the following apply:

*a.* An applicant is eligible for RA enlistment if applicant's age, when subtracting prior honorable active service completed in any military service, is no more than 35, and the applicant can qualify for regular retirement with 20 or more years of active Federal service by age 62.

*b.* Applicant is eligible for enlistment in the USAR or ARNG if he or she is not less than 18 years of age and can qualify for retired pay by age 60. To be eligible for nonregular retired pay, an individual must meet eligibility criteria outlined in AR 135–180.

*c.* An applicant is exempt from age criteria outlined above if he or she can qualify for retirement by age 62, does not have 20 or more years of active service, and is a former Servicemember who was awarded the Medal of Honor, Distinguished Service Cross, Navy Cross, or Silver Star Medal.

## 3–4. Citizenship

Citizenship will be verified per chapter 2. Under 10 USC 504, an applicant is eligible for enlistment if the applicant is—

*a.* A citizen of the United States.

*b.* An alien who has been lawfully admitted to the United States for permanent residence, including a conditional lawful permanent resident.

*c.* A national of the United States (see para 2–4 for verification of citizenship).

*d.* A citizen of the Federated States of Micronesia, Palau, the Republic of Marshall Islands, or the Commonwealth of the Northern Mariana Islands (see para 2–4 for specific requirements).

*e.* Any other person if the Secretary of the Army has authorized the enlistment pursuant to the statutory authority under 10 USC 504 (see para 2–4).

## 3–5. Education

*a.* Applicant is eligible for enlistment if he or she is a GED holder or higher level of education credential.

*b.* If applicant completes college-level courses to justify remaining in or advancing to higher grade, he or she will be enlisted in accordance with paragraph 2–18. Foreign credentials must be evaluated in accordance with paragraph 2–7*f*.

*c.* Verification for PS may also be accomplished through use of the DD Form 214 or NGB Form 22. Required days of service for PS or glossary NPS status must meet chapter 2 requirements. For DD Forms 214 dated August 2009 or later, verification must be made utilizing the original education source documents listed in chapter 2.

## 3–6. Trainability

*a.* Applicant is eligible for enlistment if he or she has a qualifying aptitude score for MOS in which enlisting and specific test score requirements of the MOS or option for which enlisting. AFQT is not required for eligibility.

*b.* All applicants must have ASVAB scores to enlist. ASVAB results (most recent) obtained from Defense Manpower Data Center may be used regardless of test date, provided all line scores are present.

*c.* The MOS aptitude area test score does not apply if enlisting in former MOS.

*d.* When using previous test scores, counselors must follow MOS guidance listed in DA Pam 611–21, as the ASVAB test has been revised several times and test score requirements will vary according to test date.

## 3–7. Physical

*a.* No medical required (except inspect) if an applicant has completed Army basic combat training (BCT) or IADT and meets medical retention standards of AR 40–501 and enlists within 6 months of release from AD. Current members of the USAR and ARNG (including IRR) having a physical that is within 1 year of application for enlistment

onto AD may be processed and projected as "No Medical Required." Current active Servicemembers of other Services enlisting onto AD with a physical that is within 5 years of application for enlistment onto AD may be processed and projected as "No Medical Required." All other applicants must meet the procurement standards of AR 40–501. If the applicant is MOS qualified, he or she must meet height and weight standards in accordance with AR 600–9. If the applicant is not MOS qualified, he or she must meet height and weight standards in accordance with AR 40–501.

*b.* Pregnant applicants will not be enlisted, regardless of applicable standards of retention.

*c.* Applicant must meet all other requirements for specific option or MOS for which enlisting. Applicants currently serving in RC or discharged from any component must meet the entry-level physical profile serial code (numerical) and physical, upper, lower, hearing, eyes, psychiatric (PULHES) standards in accordance with DA Pam 611–21.

*d.* Applicant is medically qualified, if he or she—

(1) Has been removed from the TDRL.

(2) Is a partially disabled combat veteran wounded in Army service.

*e.* Medical information recorded on DD Form 2807–1 (Report of Medical History) and DD Form 2808 (Report of Medical Examination) or other official military record may be used for medical data and test scores if enlisting in the RA, USAR, or ARNG within 6 months of release from AD.

*f.* Waivers will not be considered for applicants not meeting the body fat standards of AR 600–9 or the medical retention physical fitness standards of AR 40–501.

*g.* Applicants who require a medical examination will be tested for the presence of alcohol and drugs. Applicants who refuse to submit to drug or alcohol testing will be denied further processing and enlistment (no waiver authorized). For ARNG, applicants with military status may conditionally enlist without regard to drug and alcohol test results; however they must be tested at their unit of assignment within 30 days of enlistment. If the results are positive, the Soldier will be discharged in accordance with applicable separation policy.

*h.* Applicant is not eligible for further processing and enlistment if drug or alcohol test is positive. Waivers may not be considered.

*i.* Applicant is authorized USAR enlistment pending drug test results, but will be advised that he or she will be discharged if found positive (laboratory confirmed) for drugs or HIV.

*j.* The following categories of PS personnel may be processed as indicated below—

(1) *Current drilling members and prior service applicants within 6 months of their separation date (including Individual Ready Reserve).*

(a) If MEPS medical examination (DD Form 2808) is 24 months old or less, present copy of this examination and DD Form 2807–1 along with current physical health assessment (PHA).

(b) If MEPS medical examination is older than 24 months, present copy of current PHA or current PHA and Medical Protection System Individual Medical Readiness record.

(c) Copies of DD Forms 2808 must be scanned into the applicant's electronic records management by the guidance counselor.

(2) *Former drilling members.* If these members are processing for enlistment within 6 months after separation, they must provide all documents reflected in paragraph 3–7*j*(1)(c). If they are processing for enlistment after 6 months from separation, they must meet the standards (less weight) of AR 40–501, chapter 2.

(3) *Prior service Regular Army applicants.* Those separated from any Regular Component of the U.S. Armed Forces within 6 months will process using DD Form 2807–1 and DD Form 2808. Those processing after 6 months must meet the standards of AR 40–501 (chap 2, see physical standards for enlistment, appointment, and induction). All MOS qualified PS and glossary NPS must meet the requirements of AR 600–9 regardless of medical standard used for qualification.

(4) *Required physical.* Required physicals must indicate that the applicant has a valid physical profile (physical, upper, lower, hearing, eyes, psychiatric) for retention. Applicants must meet height and weight standards as prescribed in AR 600–9, unless noted otherwise). Height and weight will be validated by the recruiting station commander. If applicant exceeds table weight per AR 600–9, a body fat screening is required. DA Form 5500 (Body Fat Content Worksheet (Male)) or DA Form 5501 (Body Fat Content Worksheet (Female)) will be executed and completed by any commissioned officer, placed into the applicant's enlistment packet by the recruiter, and scanned into the applicant's electronic records management by the guidance counselor.

(5) *Medical examination.* No portion of the medical examination will be completed by the MEPS for applicants scheduled under this process.

*k.* All PS applicants who are required to attend BCT will take a full physical at MEPS.

## 3–8. Dependents

*a.* See paragraph 2–10 for definition of dependents and verification requirements.

*b.* An applicant meets dependency requirements of this rule if he or she—

(1) Has no spouse and no dependents.

(2) Has no spouse and is required by court order to pay child support for two or fewer dependents, regardless of grade.

(3) Has an entry grade of E–2 or below, is married, and in addition to the spouse has two or fewer additional dependents.

(4) Has an entry grade of E–3, is married, and in addition to the spouse has three or fewer additional dependents.

(5) Has no spouse, and has an entry grade of E–3 or above, and is required by court order to pay child support for three or fewer dependents.

(6) Has an entry grade of E–4 or above and is married.

(7) Is an applicant whose spouse is a member of the Regular Component or RC of any Service (excluding IRR), has one or more dependents under the age of 18

*c.* An applicant does not meet dependency requirements if—

(1) The applicant has no spouse, but has custody of one or more dependents under the age of 18. RA waivers will not be considered. For RC, waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants

(2) The applicant is processing as part of a husband and wife team, both are required to attend training at the same time, and combined they have one or more dependents in their household under the age of 18. Waivers may be considered by the recruiting battalion commander for RA/USAR applicants and respective State TAG for ARNG applicants.

*d.* Any applicant for RC enlistment who previously served in the U.S. Armed Forces on AD and became a single parent while on AD, and was separated due to a hardship UP AR 635–200, will not be disqualified for enlistment based upon this fact if the person is otherwise qualified for enlistment.

## 3–9. Conduct and other administrative criteria
See chapters 2 and 4.

## 3–10. Regular Army retention control point (not applicable to individuals enlisting into the Reserve Components)
If applicant is eligible to enlist, their former active Federal service plus desired enlistment term, cannot exceed the criteria below, as indicated for each enlistment grade—

*a.* E–1 through E–3, no more than 5 years of active Federal service.

*b.* E–4, no more than 8 years of active Federal service.

*c.* Sergeant (E–5), no more than 14 years of active Federal service.

*d.* Staff sergeant (E–6), not more than 20 years of active Federal service.

*e.* Sergeant first class (E–7), no more than 24 years of active Federal service.

*f.* Master sergeant/first sergeant, no more than 26 years of active Federal service.

*g.* Sergeant major (SGM)/command sergeant major (CSM), no more than 30 years of active Federal service.

*Note.* A grade determination is conducted to ensure entry grade: 1) does not violate retention control point policy when combined with new term of enlistment; 2) is needed based on an assignment; 3) and that Noncommissioned Officer Education System requirements have been met for E–5s and above.

## 3–11. Armed Forces reentry eligibility codes
Regardless of reentry eligibility (RE) code, applicant may require a waiver for the reason and authority for separation release, discharge, or transfer (see chap 4 for waiver criteria and applicability).

## 3–12. Montgomery GI Bill
Any PS applicant who entered AD for the first time after 1 July 1985 in any Regular Component of the U.S. Armed Forces, and who has not declined MGIB during his or her initial term of service, is eligible to participate in the MGIB. Guidance counselors will ensure that these applicants understand their eligibility for enrollment in MGIB and ensure that these applicants initial in the appropriate column of DA Form 3286.

*a.* Individuals who have not declined MGIB upon initial entry to AD, but who separate early and do not fulfill the requirements for entitlements to the MGIB (such as hardship), can now earn such entitlement by fully and honorably completing a subsequent term of service.

*b.* Reservists activated under Title 10 (for example, 10 USC 12301, 12302, and 12303), and who stay on AD for at least 24 continuous months, are entitled to enroll in the MGIB. Such activated reservists must serve at least 24 continuous months to be eligible for MGIB benefits.

*c.* If a Servicemember is separated from service for reasons other than those within an individual's control (that is, void, erroneous enlistment because of an administrative error, hardship, release from Presidential Call-up, demobilization, and so forth), the USAREC (RCRO–PP) or equivalent personnel in the ARNG will be contacted to determine MGIB and other incentive eligibility for those applicants.

**3–13. Eligibility of former officers for enlistment**

*a.* For RA enlistment, the following apply:

(1) The Secretary of the Army may deny enlistment to anyone who otherwise meets the criteria specified in this regulation, except those who have a statutory entitlement (10 USC 3258).

(2) Any former enlisted member of the RA who has served on AD as an officer of the Army, or who was discharged as an enlisted member to accept an appointment as an officer of the Army, is entitled to be reenlisted in the RA in the enlisted grade that he or she held before his or her service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in his or her grade or of a physical disability incurred or having its inception in line of duty, if—

*(a)* His or her service as an officer is terminated by an honorable discharge or he or she is relieved from AD for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge.

*(b)* He or she applies for reenlistment within 6 months (or such other period as the Secretary of the Army prescribes for exceptional circumstances) after termination of that service.

(3) Under 10 USC 3258, a person is not entitled to reenlist if—

*(a)* They were discharged or released from active duty (REFRAD) as an officer on the basis of a determination of the following:

*1.* Misconduct.

*2.* Moral or professional dereliction.

*3.* Duty performance below prescribed standards for the grade held.

*4.* Retention being inconsistent with the interests of national security.

*(b)* The person's former enlisted status and grade were based solely on the participation by that person in a precommissioning program that resulted in the commission held by that person during AD from which the person was released or discharged.

(4) All applications for enlistment and exceptions will be sent to CG, USAREC.

(5) Former officers who were separated from the Navy, Air Force, Marine Corps, or Coast Guard are not eligible for enlistment. Waivers may be considered by the CG, USAREC.

(6) Minimum documentation required is in chapter 4.

*b.* For USAR or ARNG enlistment only, the following apply:

(1) Enlistment into the USAR or ARNG is authorized for current and former officers without regard to statutory entitlement as discussed for RA enlistment above.

(2) Officers applying for enlistment must meet eligibility criteria of chapter 3.

(3) All applicants must have ASVAB test results and a physical examination according to this regulation and AR 40–501.

(4) Current RC officers will resign their commission by submitting a letter of resignation to the Commander, HRC. The letter of resignation should request the effective date to be the day prior to the enlistment date of the officer. A guidance counselor will ensure that the letter of resignation is mailed on the day of enlistment. This will ensure that if the officer declines enlistment or is otherwise not enlisted, his or her resignation is not unintentionally submitted.

(5) Paragraph 3–18 provides grade determination rules for former or current officers who enlist. An officer will not be awarded an MOS based solely on unit vacancies, but also on the officer's past military training and experience and his or her ability to meet the prerequisites for the relevant MOS. In most instances, the Soldier will be placed in a "will train" position, regardless of the former branch of the former officer. Recruiting battalion commanders will take care to ensure that grade authorization up to E–5 is based on the whole person concept and does not interfere with or otherwise compromise the integrity of the unit's promotions of Soldiers with continuous service.

## Section II
## Enlistment Periods and Pay Grades

**3–14. Authorized enlistment periods**

*a.* Enlistment for PS applicants in the RA is authorized for a period of at least 3 years but not more than 6 years. A specific MOS may require a minimum term of service. Term of enlistment will be 3 years for personnel that require no training or 4 years with training. Exceptions will be considered when no vacancy exists in the former MOS or other Service occupation does not convert and retraining is required. When retraining is authorized, the term of enlistment, when added to previous active Federal service, will not exceed total years for enlistment grade retention control point. Waivers may be considered by CG, USAREC.

*b.* PS applicants enlisting in the USAR or ARNG with a remaining unfulfilled portion of a previously incurred MSO may select their term of service as follows:

(1) Enlistment for assignment to the Selected Reserve for at least 1 year for a term of service equal to, or greater than, the remaining unfulfilled portion of a previously incurred MSO. The enlistment must be in whole years.

(2) Enlistment in the USAR for assignment to USAR Control Group (Reinforcement) may be for 3 years, but no

more than 8 years. Term of service must be equal to, or greater than, the remaining unfulfilled portion of a previously incurred MSO, and the applicant must have completed basic training and have been awarded an MOS. The period of the enlistment will be served in the IRR, unless the member is voluntarily transferred to the Selected Reserve.

*c.* The PS applicants 57 through 59 years of age who can qualify for retired pay by age 62 (see AR 135–180) and who have been granted a waiver permitting enlistment over 55 years of age (see chap 4) may enlist in the Selected Reserve. Enlistment may be for at least 1 year but not to exceed the last day of the month in which the member attains age 62.

*d.* PS applicants 18 through 57 years of age who have fulfilled their MSO and who can qualify for retired pay by age 62 (see AR 135–180 for nonregular retired pay qualification) may enlist in the Selected Reserve for at least 1 year, but no more than 8 years; or they may enlist in the Selected Reserve for a period of 3 through 8 years. Exceptions may be considered. However, the enlistment period may not exceed the last day of the month in which the member attains age 62.

(1) Soldiers who are MOS qualified for the position in which they are enlisting must enlist in whole year increment for 1 but not more than 8 years. The entire period of the enlistment will be with the Selected Reserve (except as otherwise authorized by AR 140–10).

(2) Soldiers who are enlisting into a "will train" position are authorized to enlist for 3 but not more than 8 years. The entire period of the enlistment will be with the Selected Reserve (except as otherwise authorized by AR 140–10). This allows the Soldier the required time to obtain the MOS for which he or she enlisted.

## 3–15. Authorized enlistment pay grade determination

*a.* The pay grade on enlistment into the RA will be determined under paragraph 3–17. The pay grade on enlistment into the USAR will be determined under paragraph 3–18. For USAR and ARNG, the DOR will be determined per AR 600–20.

(1) When a request for grade determination is submitted to the CG, USAREC the packet must be pre-screened to ensure that the applicant first meets all other criteria for enlistment.

(2) As required, requests for grade determinations submitted to CG, USAREC will have all medical and any conduct waivers completed prior to submission.

(3) All requests for grade determination in the grade E–5 and above where applicant is not qualified for consideration under paragraph 3–16 will be submitted to CG, USAREC.

(4) An applicant who is in the grade of E–5, when no vacancy exists in the applicant's current MOS, may enlist as a E–5, provided the applicant accepts retraining in an MOS provided by CG, USAREC, and the applicant has completed the appropriate Noncommissioned Officer Education System leadership requirements or its equivalent. CG, USAREC will determine the MOS for retraining.

(5) Attempts will be made to enlist all PS applicants (regardless of component), to include glossary NPS applicants, in their former MOS. If a PS applicant requests retraining, he or she will be afforded the opportunity to retrain into a different MOS (new MOS will be based on the applicant's aptitude scores and the needs of the Army). This guidance will be followed until otherwise directed by the DCS, G–1 (DAPE–MPA).

(6) Years of active service must be verified from DD Form 214 and DD Form 215 (if applicable).

(7) All applicants who enlist in the grade E–5 or above must have an electronic verification approval for assignment from CG, USAREC. The DOR will be adjusted at the time of enlistment per AR 600–20. Guidance counselors will advise applicants that this entry will be reviewed for correct entry at the first duty station or reception battalion.

(8) All applicants will have the authority for pay grade clearly annotated on the DD Form 1966.

*(a)* If CG, USAREC determined grade, enter "Enlistment Grade Authorized by CG, USAREC, dated YYMMDD, Grade E-x verified by (name, guidance counselor)."

*(b)* If grade was determined by paragraph 3–17, enter "Enlistment Grade Authorized by AR 601–210, paragraph 3–17, dated YYMMDD, Grade E-x verified by (name, guidance counselor)."

(9) Grade for PS applicants, including glossary NPS applicants, will be determined at time of entry into delayed status. Grade authorized at time of delayed status will be the enlistment grade authorized at time of enlistment.

*b.* The PS and glossary NPS may not be enlisted into the DEP or ARNG recruit force pool.

*c.* Enlisted members on the TDRL, later found to be physically fit, have a statutory right to enlist in the enlisted rank, or the next higher regular enlisted rank, held at the time they were placed on the TDRL (10 USC 1211(a)(3)) (see chap 5, sec XIV). All Soldiers being removed from the TDRL must have a grade determination by CG, USAREC.

*d.* This regulation will not be relied upon to place a PS applicant in a more favorable enlistment grade than he or she otherwise would have been entitled to, if his or her service had been continuous.

*e.* The following documentation is required to submit a grade determination:

(1) *For RA.*

*(a)* A memorandum from the battalion commander.

*(b)* DD Form 214 and DD Form 215 (if applicable) from last enlisted and/or officer active service, DD Form 220 (Active Duty Report), or NGB Form 22.

*(c)* DD Form 1966 and SF 86.

*(d)* A copy of applicant's USMEPCOM authorized document that clearly displays applicant's ASVAB date and results.

*(e)* A copy of current MEPS physical examination, or other authorized document that clearly displays applicant's current height and weight; date of physical examination; and physical profile, if applicable.

(2) *For U.S. Army Reserve or Army National Guard.*

*(a)* DA Form 1696 (Enlistment/Reenlistment Qualifying Application).

*(b)* DD Form 214 and DD Form 215 (if applicable) from last enlisted and/or officer active service, DD Form 220, or NGB Form 22.

*(c)* A copy of applicant's USMEPCOM authorized document that clearly displays applicant's ASVAB date and results.

*(d)* Letter from Selected Reserve unit acknowledging break in service over 48 months. Letter must also state accepted grade, MOS, paragraph, line, and position number the applicant is being accepted into. If applicant is enlisting into an MOS that he or she has not previously held, Selected Reserve unit must also acknowledge their agreement that the applicant possesses the technical or administrative skills needed for the enlistment MOS.

*(e)* Letter from applicant stating why his or her grade should be maintained.

*(f)* For determinations in the grade of E–6 or higher, request must also include all Noncommissioned Officer Education System completion certificates and any other supporting documentation.

### 3–16. Enlistment pay grade and terms of enlistment for Regular Army applicants with prior military service

Higher grade is authorized using paragraph 2–18 (except para 2–18*a*), if it is more advantageous to the applicant. Term of enlistment will be a minimum of 3 years. Exceptions will be considered when no vacancy exists in the former MOS or other Service occupation does not convert and retraining is required. When retraining is authorized, the term of enlistment, when added to previous active Federal service, will not exceed a total of 8 years for E–4 and 5 years for E–1 through E–3. Waivers may be considered by the CG, USAREC. The following are criteria for eligibility:

*a. A current member of a Reserve Component.* If the applicant is a current member of an RC and has not been awarded an MOS, and enlists within 12 months from the date released from IADT, the enlistment pay grade will be the grade held at the time of release from IADT. This does not apply if approval authority for release has promoted or demoted the applicant to a higher or lower grade. Applicant must produce a DA Form 4187 approving the promotion to the higher grade.

*b. A former member of Regular Component and/or Reserve Component Service and current member of the Reserve Component.*

(1) If applicant was last separated from any component or is a current member of an RC in grade E–3, with no more than 5 years active Federal service, and enlists within 48 months from the date of separation, the enlistment grade will be the same grade held at time of separation. If enlisting more than 48 months from completion of MSO, reduce one grade.

(2) If applicant was last separated from any component or is a current member of an RC in grade E–4, with not more than 7 years active Federal service and enlists within 48 months from the date of separation, the enlistment grade will be the same grade held at time of separation. If enlisting more than 48 months from completion of MSO, reduce one grade.

(3) Applicants in grade E–5 and above must submit a formal request to CG, USAREC for grade determination assignment eligibility—

*(a)* If current MOS structure supports entry in former primary military occupational specialty (PMOS). If applicant was last separated from any component in the grade of E–5 and above and enlists within 48 months following separation, or is a current member of an RC; the enlistment grade will be E–5.

*(b)* If current MOS structure does not support entry in former PMOS (E–5/E–6). If applicant was last separated from any component in the grade of E–5 or E–6 and enlists within 48 months following separation, or is a current member of an RC, the enlistment grade will be the current grade held; however, applicant must accept retraining in the MOS provided

*(c)* If current MOS structure does not support entry in former PMOS (E–7 and above). If applicant was last separated from any component in the grade of E–7 or above and enlists within 48 months following separation, or is a current member of an RC, and still desires to obtain a new MOS, will be reduced in grade based on the business rules established by Retention Management Branch (AHRC–EPF). Applicant must accept retraining in the MOS provided

*(d)* Applicants in grade E–5 and above enlisting more than 48 months from the date of separation or MSO will be reduced based on business rules established by Retention Management Branch (AHRC–EPE). Additionally, applicant may be required to accept retraining in the MOS provided.

(4) RC enlisted Soldiers of the USAR and the ARNGUS who have attained 18 years active Federal service in accordance with 10 USC 12686 (sanctuary period), and desire to serve in the RA, may be accessed by CG, USAREC. Grade determinations will not be conducted on RC Soldiers retained on AD under the provisions of 10 USC 12686.

These Soldiers will be retained in the grade held at date of enlistment into the RA, unless properly promoted in accordance with applicable Army promotion board procedures.

*c. A former officer.*

(1) If applicant is a former officer and has a statutory entitlement to reenlist, and makes application for enlistment within 6 months after separation from AD, the enlistment grade will be the one held before becoming an officer, in accordance with paragraph 3–14.

(2) If applicant is a former officer without statutory entitlement to reenlist and is authorized to enlist under the provisions of paragraph 3–16, the enlistment eligibility and grade will be determined by the CG, USAREC or the DARNG for ARNG personnel.

*d. Regular Army prior service applicant with a military occupational specialty that authorizes a Broken Service Selective Reenlistment Bonus.*

(1) Applicants last separated from the RA with an MOS authorized under the Broken Service Selective Reenlistment Bonus program may enlist after 3 months and within 48 months from the date separated from the RA in the same grade held at time of separation if authorized by CG, USAREC.

(2) The CG, USAREC must authorize enlistment and provide the appropriate level of bonus for applicants qualifying under these criteria. Bonus authority and amounts will be announced by HQDA or the DARNG and will be provided to all USAREC or ARNG activities.

*e. U.S. Military Academy or U.S. Military Academy Preparatory School.* Applicants who have completed 1 or more years at a military service academy will have their grade determined based on the level of college credit attained under the provisions of paragraph 2–18.

## 3–17. Enlistment pay grades for prior service for Reserve Component enlistment

*a.* Applicants enlisting in the RC will have pay grade determined based on one of the following:

(1) An applicant who is a former member of the U.S. Armed Forces in grades E–1 through E–4, and who has completed IADT is authorized to enlist at pay grade held at last discharge. Higher grade is authorized using paragraphs 2–18*a*(6) through (9), if it is more advantageous to the applicant.

(2) An applicant who is a former enlisted member of the U.S. Armed Forces in the grade of E–5 or higher, who enlists within 48 months from last separation, will be enlisted in the grade held at time of last separation. PS applicants who enlist within 24 months of discharge will be given an adjusted DOR of the original DOR plus elapsed time since discharge. For example, if original DOR is 1 November 1998 and elapsed time since discharge is 14 months, adjusted DOR is 1 January 2000. Applicants who enlist more than 24 months after discharge will be given a DOR of the date of enlistment.

(3) An applicant who is a former enlisted member in the U.S. Armed Forces in the grade of E–5 through E–9, who enlists after 48 months from last separation, and has no remaining MSO, will be enlisted one grade lower than the grade held at time of last separation. CG, USAREC for RA/USAR Soldiers, or appropriate State TAG for ARNG Soldiers, may consider waivers to retain current grade for former Soldiers in the grades of E–6 through E–9. Commanders of recruiting battalions may consider waivers for former Soldiers in the grade of E–5.

(4) An applicant who is enlisted on the TDRL and has been found medically qualified to perform duties of the grade, and enlists within 90 days after removal of his or her name from TDRL will be enlisted in the same grade held when released from duty. The applicant's DD Form 214 will be used to determine date and grade at which the Soldier was placed on TDRL.

(5) The enlistment grade for an applicant who was last separated from any component of the U.S. Armed Forces as a commissioned officer or warrant officer will be determined by the authority listed in paragraph 3–16. The DOR will be date of enlistment.

(6) Applicants who previously enlisted under the ACASP will have their grade determined in accordance with paragraphs 2–18*a*(3).

(7) An applicant who is a current drilling member of any RC of the U.S. Armed Forces (to include IRR), who enlists into the USAR, will be enlisted in the current grade held.

*b.* Authorities for grade determination are shown below—

(1) Recruiting battalion commander or executive officer, or equivalent members of the ARNG: grade of E–5, when assignment is for a TPU or ARNG of the Selected Reserve and enlistment is within 48 months.

(2) CG, USAREC or TAG for ARNG: grades of E–6 through E–9, when assignment is for the Selected Reserve and enlistment is after 48 months of last separation.

(3) CG, USAREC or the DARNG: grades of E–6 through E–9, when assignment is to the U.S. Army Mobilization Support Detachment (RCs Personnel and Administration Center Augmentation).

(4) Recruiting battalion commander for RA/USAR enlistments, or TAG for ARNG enlistments: grades of E–5 through E–7, when assignment is to the IRR and the enlistment is accomplished within the continental United States.

(5) CG, USAREC or TAG for ARNG: grades of E–8 and E–9, when assignment is to the IRR and enlistment is accomplished within the continental United States.

(6)  CG, USAREC or TAG for ARNG: grades of E–5 through E–9, when assignment is to the IRR and enlistment is accomplished outside the continental United States.

*c.* The appropriate approving authority may authorize enlistment in same grade held by the applicant when last discharged if MOS held is the same MOS for which enlisting, or if it is determined that the applicant possesses the technical or administrative skills needed for the MOS vacancy in which enlisting. If enlisting for Selected Reserve, a vacancy must exist.

*d.* Applicants enlisted in the grade of E–5 or above must remain in the Selected Reserve for a period of 12 months before they may be considered for enlistment into any component.

*e.* Applicants must understand that a grade determination approved for assignment to an RC is not a guarantee they will retain this same grade when enlisting in the RA. Applicants enlisting into a RC of the Army in grades E–5 through E–9 will have a grade determination submitted to CG, USAREC, prior to enlistment into the RA.

## Section III
## Verification and Qualification for Prior Service Personnel

### 3–18. General
*a.* This section provides guidance to qualify and verify applicants with PS in a U.S. Armed Forces.

(1) *Evaluation of applicants.* Application for enlistment from former members of the U.S. Armed Forces will be evaluated thoroughly. Veterans qualified for possible RA or RC enlistment will be identified. Greater opportunity will not be provided to PS applicants enlisting from civilian status than given to RA or RC members reenlisting within their respective component.

(2) *Disqualification of applicants due to previous characterization of separation.*

(a) Inform applicant that a reenlistment eligibility (RE) code is not upgraded unless it was administratively incorrect when originally issued.

(b) Depending on the disqualification (RE code, separation program designator (SPD) code, lost time, narrative reason or character of service), a waiver may or may not be authorized.

(c) Depending on the needs of the Army, waivers may not be considered even though the disqualification could be waived. In these cases, applicants should be informed to contact recruiters periodically to see if waiver applications are being considered.

(d) Advise applicants whose previous separation may require a 2-year waiting period in accordance with chapter 4.

*b.* For USAR and ARNG only, the following requirements apply:

(1)  PS personnel must have successfully completed an Army BCT course, Warrior Transition Course, or U.S. Marine Corps BCT course during previous military service. These personnel will not be sent to BCT.

(2)  PS enlistees (including Officer Candidate School (OCS) and Warrant Officer OCS (WOCS)) who have not successfully completed an Army BCT, Warrior Transition Course, or U.S. Marine Corps BCT course; or have not completed training for Air Force or Navy Special Operations Forces, or Air Force Security Police during previous military service must enter on IADT within 180 days after enlistment in the USAR or ARNG and successfully complete BCT conducted by the Army. Soldiers who fail to attend BCT within 180 days after entry are required to return to MEPS to be rescheduled for this training. Members enlisting into the USAR or ARNG that require BCT must be processed through the MEPS. Members that are required to attend BCT and retraining into a new MOS will attend BCT first. After completion of BCT, the unit of assignment will schedule to attend appropriate MOS training.

### 3–19. Verification of prior service
Commanders at all levels in USAREC and in the ARNG will emphasize the need for early detection of possible erroneous or fraudulent enlistment of applicants. Applicants who are thought to have had, or who claim to have had, PS in any U.S. Armed Force will not be enlisted in the RA, USAR, or ARNG until their PS, if any, is verified.

*a.* Authorized personnel with access to the Defense Manpower Data Center via Recruiter Eligibility Data Display (REDD) may obtain RE code data (see para 3–21). If an inquiry is made and RE data is favorable, processing will continue. If the response is unfavorable, processing will be suspended until data can be verified. A DD Form 214 and DD Form 215 with RE code and SPD code can be obtained by writing to Commander, U.S. Army Human Resources Command, USAREC/ARNG Liaison Team (RCRC–PPS–RL), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

*b.* Prior military service can be verified as follows:

(1) For applicants who served in the RA, the following documents will verify PS:

(a) Original copy or certified copy of latest DD Form 214 (a certified copy from court or Veterans Administration may be used.)

(b) A review of Defense Manpower Data Center REDD level 2.

(c) Copy of the original or legible DD Form 214 may be used provided it agrees with USMEPCOM verification procedures or Defense Manpower Data Center REDD check to verify that the RE code and SPD code are the same.

(2) For applicants who served in RC, the following documents will verify PS:

*(a)* DD Form 214 or DD Form 215 will be used to verify all periods of active and inactive military service of the member before the date of his or her last separation from active military service; however, entries may appear in error to the recruiter, or the applicant may dispute the entries. Only the original form, the actual carbon copy, a certified copy of the original form, a legible copy verified by REDD from Defense Manpower Data Center, or a records depository copy furnished by the recruiting official under paragraph 3–19*c* is authorized for verification purposes. DD Form 214 or DD Form 215 will not be used to verify RC membership, or the nature of the RC service after the member's date of last release from active military service, unless recruiting officials obtain an accompanying discharge order.

*(b)* The recruiting battalion operations NCO or officer is authorized to use the HRC Assignment Orders and Resource Systems to verify RC service. This verification may be used when all other attempts to obtain documents have been exhausted.

(3) For both RA and RC applicants, if a DD Form 214 or DD Form 215 is not available, the documents below may be used to verify PS. Copies must be furnished to recruiting officials directly or through military channels by the records custodian for forms cited in paragraphs 3–19b(2)(a) through 3–19b(2)(d)—

*(a)* Certified, true copy of copy 2 of DD Form 214.

*(b)* DD Form 220. This form will serve to verify periods of active military service.

*(c)* NGB Form 22. This form may be used to verify periods of ARNG or Air National Guard service. Entries may appear to be in error or the applicant may dispute the entries. If so, previous ARNG or Air National Guard service may be obtained by writing TAG of the State where the last separation from the ARNG or the inactive Air National Guard was implemented.

*(d)* Defense Manpower Data Center REDD level 2.

*c.* An applicant may not be able to substantiate their PS under paragraph 3–19*b*. If so, a request for verification of PS will be submitted to the USAREC/ARNG Liaison Team located at HRC. Such requests will contain the following:

(1) The exact name under which the person served.

(2) Social security number.

(3) Organization from which last discharged.

(4) Type of discharge claimed.

(5) If exact dates of service are not known, approximate dates.

*d.* Request for PS verification or IRR membership of applicants with a Reserve obligation will be made by telephone. Requests for PS verification of applicant without a Reserve obligation from all Services will be sent to: Commander, U.S. Army Human Resources Command, USAREC/ARNG Liaison Team (RCRC–PPS–RL), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303, or directed to the proper agency below.

(1) *For prior U.S. Marine Corps service—*

*(a)* If separated for less than 1 year without a Reserve obligation, request is sent to: Commandant, Marine Corps (Code MMSB10), Headquarters, U.S. Marine Corps, 2008 Elliot Road, Quantico, VA 22134–5002.

*(b)* If separated with a Reserve obligation, request is sent to: Commanding General, Marine Corps Reserve Support Command, 10950 El Monte, Overland Park, KS 66211–1408.

*Note.* If the applicant is the member of an active U.S. Marine Corps Reserve unit, the member's Reserve unit maintains the DD Form 214. A certified, true copy of DD Form 214 may be used to verify prior U.S. Marine Corps service.

(2) *For prior U.S. Navy service—*

*(a)* For applicants separated with a Reserve obligation, request is sent to: Department of the Navy, Navy Reserve Personnel Center, New Orleans, LA 70149–7800.

*(b)* For applicants separated with a Reserve obligation, with less than 6 months since discharge or retirement, request is sent to: Chief of Naval Personnel (PERS–312), 9700 Page Boulevard, St. Louis, MO 63132–5200.

(3) *For prior U.S. Coast Guard service—*

*(a)* For applicants with a Reserve obligation, request is sent to: Commandant, U.S. Coast Guard (G–PE), Washington, DC 20593–0001.

*(b)* For applicants without a Reserve obligation with more than 6 months since separation, request is sent to: Director, National Personnel Records Center (Navy Reference Branch), 9700 Page Boulevard, St. Louis, MO 63132–5200.

(4) *For prior Regular Army, Army National Guard, or U.S. Army Reserve service—*

*(a)* For applicants separated from active military service for less than 4 months, with or without a Reserve obligation, request is sent to proper transfer point or separation activity.

*(b)* For applicants separated from active military service for more than 4 months and completely discharged from military service, request is sent to: Director, National Personnel Records Center (6NCPMA), 9700 Page Boulevard, St. Louis, MO 63132–5200.

*(c)* For applicants separated from active military service for more than 4 months with a Reserve obligation, request

is sent to: Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

*(d)* For applicants separated from active military service and currently a member of a TPU of the USAR or ARNG, request is sent to the applicant's ARNG or TPU commander. DD Form 368 (Request for Conditional Release) may be used to verify periods of service in the RC only.

*(e)* For applicants discharged from ARNG without previous active military service, request is sent to the proper State adjutant general.

*(f)* For applicants discharged from USAR without previous active military service, request is sent to the same address as in paragraph 3–19*e*(4)(b).

(5) *For prior U.S. Air Force service—*

*(a)* For applicants with a Reserve obligation, regardless of the length of time since separation, request is sent to: Commander (ARPC/DSMR), 18420 E. Silver Creek Avenue, Building 390, MS68, Buckley AFB, CO 80011–9502.

*(b)* For applicants without a Reserve obligation, request is sent to: Director, National Personnel Records Center (6NCPMF), 9700 Page Boulevard, St. Louis, MO 63132–5100.

*e.* For an applicant enlisted in the RA when his or her last DD Form 214 is presented, or for an applicant enlisted in the USAR when one or more of the documents listed in paragraph 3–19*b* are presented, but all PS claimed for computation of basic pay cannot be verified—

(1) The document that verified the last pervious military service will be annotated at the top of the document with date, place, and period of current enlistment. The document is returned to the enlistee after annotation and before his or her departure from the MEPS. A copy of the verifying documents is sent with each copy of the DD Form 4.

(2) After the person arrives at the first duty station, the custodian of his or her personnel records will attempt to verify the PS claimed, but not substantiated, from the USAREC/ARNG liaison. If verification is received, the custodian will place the corrected verification in the member's personnel file and update the member's personnel records, reflecting a revised pay entry basic date.

(3) Recruiting officials must ensure that personnel being processed for enlistment have been granted a conditional release from another RC, have been issued a discharge certificate, or will be issued a discharge certificate on the day before the date of enlistment in the USAR. An applicant for USAR enlistment may state that he or she was discharged recently from the RA when, in fact, he or she may have been separated and assigned to the IRR. Members of the IRR voluntarily enlist into units of the Selected Reserve (see AR 140–10 or NGR 600–200). They are never discharged from the IRR for immediate enlistment in the Selected Reserve. Provisions exist by which a member of the IRR, who is within 90 days of expiration term of service, may reenlist immediately with concurrent reassignment to a unit of the Selected Reserve (see AR 140–111 or NGR 600–200).

## 3–20. U.S. Army reentry eligibility codes

Verification of PS RE codes will be requested from agencies listed in paragraph 3–19. The following RE codes (see tables 3–1 through 3–4) are used for administrative purposes only. Applicants should be advised that these codes are not to be considered derogatory in nature; they simply are codes used for ID of an enlistment processing procedure.

**Table 3–1**
**U.S. Army reentry eligibility codes**

| Code | Definition |
|---|---|
| RE–1 | Applies to: Person completing his or her term of active service who is considered qualified to reenter the U.S. Army.<br>Eligibility: Qualified for enlistment if all other criteria are met. |
| RE–3 | Applies to: Person who is not considered fully qualified for reentry or continuous service at time of separation, but disqualification is waiverable.<br>Eligibility: Ineligible unless a waiver is granted. |
| RE–4 | Applies to: Person separated from last period of service with a nonwaiverable disqualification. This includes anyone with a DA imposed bar to reenlistment in effect at time of separation, or separated for any reason (except length of service retirement) with 18 or more years active Federal service.<br>Eligibility: Ineligible for enlistment.<br>*Note. RE4 and discharged as TDRL and fit for duty. Eligible to enlist within 90 days in accordance with paragraph 5–51.* |
| RE–4R | Applies to: A person who retired for length of service with 15 or more years active Federal service.<br>Eligibility: Ineligible for enlistment. |
| RE 1A, 1B, 1C, 2, 2B, 2C, and 4A | Applies to: Soldier separated prior to the effective date of this regulation. These codes will not be used.<br>Eligibility: Qualified for enlistment, provided reason and authority does not preclude enlistment or require a waiver. Applicant may not enlist until 93 days after separation if otherwise qualified. |

**Table 3–1**
**U.S. Army reentry eligibility codes—Continued**

| RE 2A, 3A, 3B, 3C, 3D, 3E, 3S, and 3V | Applies to: Soldiers separated prior to the effective date of this regulation but who did not meet reentry criteria at time of separation.<br>Eligibility: Ineligible unless a waiver is granted. |
| --- | --- |

**Table 3–2**
**U.S. Navy and U.S. Coast Guard reentry eligibility codes**

| Code | Definition |
| --- | --- |
| RE–1, 1E, 1R, 3J, 3M, 3X, 5, 6, and 7 | Applies to: Persons eligible for reenlistment.<br>Eligible: Qualified if all other applicable criteria are met. |
| RE–3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3K, 3L, 3N, 3P, 3Q, 3R, 3S, 3T, 3U, and 3Y | Applies to: Persons separated with disqualifications for retention.<br>Eligibility: Not eligible for enlistment unless a waiver is granted. |
| RE -3A, 3B, 3R, 3T, 3U, 3Y, and 3Z | Applies to: Persons separated with disqualifications for retention.<br>Eligibility: For RC fully eligible for enlistment. |
| RE–2, 3V, and 4 | Applies to: Persons ineligible for reenlistment.<br>Eligibility: Not eligible for enlistment. |

**Table 3–3**
**U.S. Air Force reentry eligibility codes**

| Code | Definition |
| --- | --- |
| RE–1, 1J, 1R, 1T, 2I, 3A, 3I, and 3J | Applies to: Persons eligible to reenlist.<br>Eligibility: Qualified if all other applicable criteria are met. |
| RE–1A, 1K, 1M, 1P, 2A, 2C, 2D, 2E, 2F, 2J, 2K, 2L, 2M, 2N, 2P, 2T, 2U, 2X, 2Y, 3B, 3C, 3D, 3E, 3K, 4, 4A, 4B, 4C, 4D, 4E, 4F, 4G, 4H, 4I, 4J, 4K, 4L, 4M, and 4N | Applies to: Persons ineligible to reenlist without waiver.<br>Eligibility: Not eligible for enlistment unless waiver is granted. |
| RE–2, 2B, 2G, 2H, 2Q, 2R, 2S, and 2W | Applies to: Persons not eligible to reenlist.<br>Eligibility: Not eligible for enlistment. |

**Table 3–4**
**U.S. Marine Corps reentry eligibility codes**

| Code | Definition |
| --- | --- |
| R–1, 1A, 2A, 3A, and 3U | Applies to: Persons eligible to reenlist.<br>Eligibility: Qualified to enlist provided all other criteria are met. |
| RE–1B, 1C, 2C,, 3C, 3D, 3E, 3F, 3H, 3J, 3N, 3O, 3P, 3R, 3S, 3T, 3V, and 3W | Applies to: Personnel separated with disqualifications.<br>Eligibility: Not eligible unless a waiver is granted. |
| RE–2, 2B, and 4B | Applies to: Persons not eligible to reenlistment.<br>Eligibility: Not qualified for enlistment. |

**3–21. Reentry codes and separation program designator, any component**

The PS personnel who were released early to attend school or received special separation benefits or voluntary separation incentive pay and received an SPD code of KCB, KCF, MCA, MCB, MCF, or KCA, as detailed in AR 635–5–1, may enlist without RE code waiver if separation authority did not preclude RC participation. Personnel who enlisted in the RC who never shipped to IADT that subsequently were discharged for being an unsatisfactory participant or failure to ship IADT may enlist without a waiver.

**3–22. Determination of enlistment and/or assignment eligibility**

  *a.* The RA enlistment eligibility will be based on last discharge or separation. If the last period of service was in a RC (excluding IRR) qualification will be based on that separation/discharge.

  *b.* The RC enlistment eligibility of a person who does not meet requirements shown in this paragraph, or whose last period of military service ended with a discharge from an AD status, must be determined before the enlistment agreement is completed. If the person was discharged from AD status, the RE code and SPD code will be obtained. If last period of service was in a RC (excluding IRR) qualification will be based on that separation/discharge. If an individual's last period of service was in the IRR or he or she was discharged from the IRR, then he or she will require the same processing procedures as a PS who was discharged and requires a waiver. However, if the applicant is currently in a TPU or a member of ARNG for 6 months or more, or served in the Selected Reserve after discharge from a Regular Component of any service, no waiver is required. If an applicant has been in the Selected Reserve less than 6 months, a waiver is required. Soldiers with the following RE codes are fully eligible for RC enlistment and/or assignment if last discharge was from the RA, or from other Services' Regular Component under equivalent authority:

  (1) RE–1, RE–1A, RE–1B, and RE–1C.

  (2) RE–2, RE–2A, RE–2C, 3A, and 3C.

  (3) RE–3, or other services equivalent, if DD Form 214 and DD Form 215 (if applicable) is annotated with separation authority, separation code, and narrative reason for separation as follows:

  *(a)* Separation authority: AR 635–200 or equivalent policy from other Service.

  *(b)* Separation code: BRA/JRA, BRB/JRB, BRC/JRC, JBK, JGH, KBK, KCC, KCF, KDM, LBK, LGH, MBK, MCC, MCF, or MDM.

**3–23. Correction of Army reentry eligibility codes**

Army PS personnel will be advised that RE codes may be changed only if they are determined to be administratively incorrect. Applicants who have corrected RE codes will be processed for a waiver at their request if otherwise qualified and waiver is authorized. No requirement to change RE code exists to qualify for enlistment. Only when there is evidence to support an incorrect RE code or when there is an administrative error will an applicant be advised to request a correction. Do not advise applicants to contact the Discharge Review Board or the Army Board for Correction of Military Records when applicant is eligible to request a waiver.

**Section IV**
**Prior Service Versus Nonprior Service Reconciliation Procedures**

**3–24. General**

This section provides policy, responsibilities, and procedures required to—

  *a.* Verify whether or not an applicant has had prior military service.

  *b.* Reconcile the USMEPCOM Integrated Resource System database to reflect the applicant's true status.

**3–25. Policy**

  *a.* The verification of PS for all PS applicants for enlistment, regardless of component, will be according to chapter 3, section III.

  *b.* The PS versus NPS reconciliation procedures attempt to identify whether a person being processed through a MEPS has had one or more days of prior military service.

  *c.* USMEPCOM has implemented a PS verification system into their daily USMEPCOM Integrated Resource System database. This verification takes place on all initial, reestablished, and accession records, as well as social security number corrections. The verification is performed regardless of whether or not the applicant claims PS.

**3–26. Verification process**

The following actions comprise the verification process:

  *a.* Files are transmitted by USMEPCOM to Defense Manpower Data Center and include social security number, first four letters of the applicant's last name (Name 4), MEPS ID, Service processed for, and PS indicator.

  *b.* Each processing day, MEPS receives a feedback report (sorted by Service) of the previous day's transactions where an applicant's social security number matched a social security number on the Defense Manpower Data Center historical file, whether the applicant claims PS on processing paperwork or not.

*c.* If data feedback reflects the applicant did not claim PS, the MEPS will review its files to ensure there was not a USMEPCOM Integrated Resource System database keystroke error. Keystroke errors will be corrected by the MEPS as soon as possible and the senior guidance counselor will be notified.

### 3–27. Reconciliation procedures

To reconcile the feedback report, the senior guidance counselor will take the following actions:

*a.* When the senior guidance counselor determines the applicant did have PS, the MEPS will be notified, in writing. The MEPS will then be advised whether the applicant qualifies for continued processing. If the reason for prior discharge is not waived (if waiver required), appropriate action will be initiated according to this regulation. If a waiver is required, a copy of the approved waiver action will be completed by the senior guidance counselor and provided to MEPS before the applicant will be allowed continued processing. If no waiver is required, the senior guidance counselor will notify the MEPS in writing, before processing resumes.

*b.* When it is determined that the applicant had no PS, the MEPS will be provided a written verification of the applicant's NPS status. The form will be filed in the applicant's processing record prior to DEP or accession.

*c.* Applicants identified as possible PS will be required to demonstrate they are NPS, with the assistance of the recruiter and the recruiting battalion. Aggressive action in this area will reduce administrative and investigative workloads in the future by precluding the fraudulent enlistment of an applicant due to concealment of PS.

*d.* No further action is required if the feedback reflecting PS matched the applicant's claim of PS on processing paperwork unless there is a conflict between the Defense Manpower Data Center verification and documentation. Certification of PS in this case will be according to this regulation.

### 3–28. Enlistment incentives for prior service personnel

Refer to paragraph 9–9 for eligibility criteria for PS incentives for individuals reentering the RA, and paragraph 9–18 for PS incentives for individuals entering the RC Selected Reserve Incentive Program (SRIP).

## Chapter 4
## Enlistment Waivers (Waiverable and Nonwaiverable Criteria and Administrative Instructions)

### Section I
### Waiverable Disqualifications

### 4–1. General

This section contains waiverable and nonwaiverable enlistment criteria and prescribes procedures to initiate and process a request for waiver to meet basic enlistment qualifications.

### 4–2. Conduct and administrative disqualifications

*a.* Commanders at all levels determine if waiver requests warrant favorable consideration through—

(1) Questioning.

(2) Investigating.

(3) Counseling.

(4) Gathering proper documents and waiver request information.

*b.* Recruiters must forward all waiver requests to the approval authority.

*c.* Applicants who do not meet established enlistment standards are not eligible for enlistment unless a waiver is authorized. Commanders cited in this regulation have the authority to approve waivers, as appropriate. The burden is on the applicant to prove to waiver authorities that he or she has overcome his or her disqualifications for enlistment and that his or her acceptance would be in the best interests of the Army. Waiver authorities will apply the "whole person" concept when considering waiver applications.

*d.* Applicants having tattoos will be screened in accordance with AR 670–1. Final determination authority on whether a tattoo complies with Army policy is reflected in AR 670–1.

*e.* Suitability for criminal offenses will be determined by the following:

(1) Applicants with a criminal history (regardless of disposition of charges) must have a suitability review for determination of enlistment. Recruiting center commanders or equivalent ARNG recruiters will forward requests for suitability reviews (through command channels) along with a recommendation to the reviewer for consideration. The commanders noted in paragraphs 4–2*e*(a)1 through (a)5, below are the reviewers and will determine if a personal interview with the applicant is required and, if so, whether such interview may be accomplished telephonically. Approval to process for enlistment will be annotated on the DD Form 1966 in the remarks section with a review. The suitability review must be accomplished prior to testing the applicant or projecting the applicant for any MEPS processing (for example, testing; physical and return; or to enlist). Additionally, for applicants who are at MEPS, when

it is determined that a suitability review is or was needed, attempts to complete the suitability review at the appropriate level may be conducted while the applicant is at MEPS, provided time permits. However, processing at the MEPS must be suspended (not terminated) until the review is complete. After the review is complete, processing while the applicant is still at the MEPS may continue.

*(a)* Suitability review will be conducted on the following offenses prior to any processing on all applicants (the appropriate review level is also noted):

*1.* Two or more misconduct offenses per table 4–3 (see para 4–10) (recruiting battalion commander or recruiting and retention commander of the ARNG).

*2.* Combination of four or more nontraffic and misconduct offenses per tables 4–2 and 4–3 (see paras 4–9 and 4–10) (recruiting battalion commander or recruiting and retention commander of the ARNG).

*3.* One or more major misconduct offenses per table 4–4 (see para 4–11) or charges considered felonies under the local law, regardless of disposition (recruiting battalion commander or recruiting and retention commander of the ARNG).

*4.* Domestic battery/violence offense, which include but are not limited to, charge(s) of domestic violence, assault, simple assault, assault and battery, battery, assault with the intent to commit bodily harm, assault on a person, or abuse by an applicant against his or her parent, step-parent, sister, or brother, regardless of disposition (recruiting battalion commander or recruiting and retention commander of the ARNG, unless otherwise noted).

*5.* Crime of domestic violence, which include any offense that involves the use or attempted use of physical force, or threatened use of a deadly weapon committed by a current or former spouse, parent, or guardian of the victim; by a person with whom the victim shares a child in common; by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian; or by a person who was similarly situated to a spouse, parent, or guardian of the victim. Persons who are similarly situated to a spouse include two persons who are residing at the same location in an intimate, relationship with the intent to make that place their home (CG, USAREC or Director of the ARNG approval).

*6.* Suitability review is required for any sexual assault charge by CG, USAREC or DARNG.

*7.* Carrying or possessing a weapon on school grounds. Any incident (whether charges were filed or handled informally by the school) related to carrying or possessing a weapon on school grounds, regardless of the disposition and type of weapon (knife, BB gun, box cutter, and so forth) will be treated as a serious offense. Suitability review is required prior to any processing. Prior to submission, all applicable court documents, police incident reports (if applicable), letter from school official describing the nature of the incident, applicant statement as well as company as battalion commander recommendation. Approval authority is CG, USAREC or DARNG. Commanders at any level may stop the processing if applicant is determined to have questionable conduct character.

*(b)* Court documents are required for misconduct and major misconducts offenses.

(2) Any applicant who is denied enlistment because of questionable moral character will have the denial information forwarded via email to: USAREC–G3, RO Waivers or Enlisted Policy Section for member of the ARNG.

*f.* Applicants enlisting in the DEP/DTP/delayed status/ARNG who conceal any offenses that require a waiver will be discharged. All DEP/DTP/delayed status/ARNG applicants discharged under this paragraph will incur a 6-month waiting period from date of separation orders and require a fraudulent enlistment waiver from the recruiting battalion commander, along with any additional waivers as noted in this chapter. The waiting period is for administrative and evaluation purposes. Any applicant enlisting in the DEP/DTP/delayed status/ARNG who conceals offenses not requiring a waiver will be reviewed in accordance with the following:

(1) Applicants enlisting in the DEP (RA, USAR, or ARNG)/delayed status who conceals an offense that does not require a waiver or USAREC review can be retained and authorized to ship by the recruiting brigade commander. TAG for each State will be the approval authority for ARNG applicants.

(2) Discharge authority for DTP or ARNG Soldiers who fraudulently enlist is reflected in AR 635–200.

(3) The brigade commander (may be delegated to an O–5 within the command) may grant an exception to retain a Soldier in the RA DEP who requires a waiver as a result of unintentionally concealed information. In the case of USAR Soldiers, the first O–6 in the Soldier's chain of command may grant the exception to retain the Soldier. For ARNG, the approval authority for retention is recruiting and retention commander. The brigade commander, or delegee, will determine if the applicant intentionally concealed information. If that determination is affirmative, then discharge must occur.

## 4–3. Submission of requests

Applicants applying for waiver of conviction or other adverse disposition will provide evidence of satisfactory rehabilitation and documents to support the waiver request.

*a.* Unless indicated otherwise in this regulation, requests for waiver and other actions that require an approval by the CG, USAREC (for RA and USAR) or Director, NGB will be submitted via guidance counselor resource center. Request for waivers and other actions that require approval by CG, USAREC or DARNG will be forwarded electronically. Every effort will be made to capture the electronic record of waiver requests, starting at the recruiting station level.

*b.* Waivers approved by CG, USAREC for enlistment may be used for enlistment in either the RA or USAR, provided the individual is otherwise qualified.

## 4–4. General guidelines for evaluating non-criminal and criminal convictions

*a.* When processing conduct waivers, all convictions must be listed. If multiple convictions or other adverse dispositions arise out of a single act, all charges or other adverse dispositions will be considered for enlistment eligibility purposes. Convictions will not be combined (stacked) in order to be viewed as one convictions. All convictions must be considered for waiver purposes.

*b.* General guidelines for evaluating offenses—

(1) If the maximum confinement under local law is 6 months or fewer, the offense should be treated as a nontraffic offense (see table 4–1). If the maximum confinement under local law exceeds 6 months, but does not exceed 1 year, treat the offense as a misconduct offense (see table 4–2). If the maximum confinement exceeds 1 year, treat the offense as a major misconduct offense (see table 4–3). If the local law considers the offense a felony, then treat as a major misconduct offense.

(2) The lists of typical offenses shown tables 4–1, 4–2, and 4–3, should be used as a guide. It is not practical to list all offenses. Treat offenses in each paragraph, and those of a similar nature, according to the category dictated by each table (nontraffic, misconduct, major misconduct), despite their classification under State law. The offenses named in paragraphs 4–8 through 4–11 will be considered to have the elements of those offenses under the common law or the UCMJ.

*c.* The following rules apply to conduct disqualifications.

(1) Persons released from custody or restraint of a court but are still pending final disposition of the charge are morally disqualified. Examples of such releases are—

*(a)* Release following plea of any type to the court (including plea of guilty or nolo contendere).

*(b)* Release on probation without verdict.

*(c)* Release on person's own recognizance.

*(d)* Release following charges that are placed on file.

*(e)* Any similar disposition, without regard to its technical name, that indicates the person may remain subject to further judicial proceedings in connection with the charges.

(2) In addition, persons who are granted release from charges at any stage of court proceedings if they will apply or be accepted for enlistment in any U.S. Armed Forces are not qualified for enlistment (see para 4–12*b*).

## 4–5. Waiver requirements for medical disqualifications

*a.* Any applicant with or without prior military service who the MEPS physician finds does not meet the medical standards for enlistment will require a waiver.

*b.* Any applicant for enlistment into the RA, USAR, or ARNG,who was last separated or discharged from any component of the U.S. Armed Forces for medical reasons, with or without disability, will require a waiver.

*c.* Documents required for waiver consideration are—

(1) Applicant's current MEPS DD Form 2808.

(2) DD Form 214 and DD Form 215, if applicable.

(3) USMEPCOM authorized document with test results reflected. (REDD scores if PS.)

(4) All reports of separation, discharge, or release from any component of the U.S. Armed Forces.

(5) Medical records if a current member of a TPU in the USAR or ARNG.

(6) If separated for medical reasons, must submit DA Form 4707 (Entrance Physical Standards Board (EPSBD) Proceedings), DA Form 3947 (Medical Evaluation Board Proceedings), and/or DA Form 199 (Physical Evaluation Board (PEB) Proceedings (EGA)).

(7) Evidence that the disqualifying condition no longer exists or justification for the waiver.

*d.* Approval authority for medical waivers is the CG, USAREC or Office of the Chief Surgeon for the ARNG for medical RE codes. The USAREC command surgeon will act on behalf of the CG, USAREC, for all medical waivers.

*e.* Height waivers must include the applicant's waist, shoe, and hat size.

*f.* Weight waivers will not be considered.

## 4–6. Civil court convictions and/or dispositions conduct waivers (other than major misconduct)

*a.* For disqualification, the approval authority is the recruiting battalion commander, acting commander, executive officer, or TAG (unless otherwise specified) for the ARNG. A waiver is required for any applicant who has—

(1) Received five or more civil convictions or other adverse dispositions for minor nontraffic offenses (see table 4–2).

(2) Received two and no more than five civil convictions or other adverse dispositions for a misconduct offense (see table 4–3).

(3) Received a total of five civil convictions or other adverse dispositions for a combination of minor nontraffic and misconduct offenses (one misconduct and four minor nontraffic offenses) (see tables 4–2 and 4–3).

(4) Received one conviction or other adverse disposition for one of the following offenses:

*(a)* Received one conviction or other adverse disposition for driving while intoxicated, driving under the influence, or driving while impaired because of substance abuse, alcohol, drugs, or any other condition that impaired judgment or driving ability. Waiver may be considered if charged with multiple driving under the influence offenses, provided they occurred in a single incident

*(b)* Possession of marijuana or drug paraphernalia, to include on school grounds. Waiver may be considered if charged with both offenses provided they occurred simultaneously. Negative development acceptance test results must be obtained prior to approval of waiver.

*(c)* Solicitation for prostitution or prostitution.

*(d)* Domestic violence/battery against a non-Lautenberg victim (see para 4–2*e*(1)(a)(4)). For ARNG applicants, the only approval authority is ARNG–GSS–I.

*b.* For applicants applying for enlistment in RA/USAR OCS, approval is required from CG, USAREC, for enlistment in WOFT. Approval authority is DCS, G1 (DAPE–MPO) on any cases involving the following:

(1) Any person adjudicated as a youthful offender.

(2) Any offense with a fine of $300 or more, excluding court cost.

(3) Any offense where confinement was ordered, regardless of suspended sentence or deferred disposition.

(4) Any offense resulting in a conviction or other adverse disposition that involves contributing to the delinquency of a minor, spousal or child abuse, any sex-related crime, or any offense under chapter 4 that is listed as a misconduct offense.

*c.* A waiver may not be considered for any person with a civil conviction of misconduct or other adverse dispositions for six or more misconduct offenses that occurred prior to an application for enlistment.

*Note.* Misconduct is a term used to identify misdemeanor level offenses as defined by local, State, or Federal law. Adverse disposition is action required by the court to satisfy a charge, but is not considered a "conviction" by the court.

## 4–7. Major misconduct
A waiver is required for any applicant who has received a conviction or other adverse disposition for a major misconduct offense, or any offense considered a felony under local law (see table 4–4).

*a.* The approval authority is the CG, USAREC or Chief, NGB. Applicants will incur a 24-month wait from the date of conviction prior to waiver processing

*b.* The approval authority for applicants with any two of the following offenses is the CG, USAREC or DARNG: driving under the influence/driving while impaired, possession of marijuana or paraphernalia, or positive drug and alcohol test. (Waiver will not be considered until 2 years from the date of the last offense or date of positive drug and alcohol test, unless other waiting periods throughout this regulation apply.

*c.* The Domestic Violence Amendment to the Gun Control Act of 1968 (18 USC 922) (The Lautenberg Amendment) makes it unlawful for any person to transfer, issue, sell, or otherwise dispose of firearms or ammunition to any person whom they know or have reasonable cause to believe has been convicted of a misdemeanor crime of domestic violence. It is also unlawful for any person who has been convicted of a misdemeanor crime of domestic violence to receive any firearm or ammunition that has been shipped or transported in interstate or foreign commerce. Enlistment of applicants with a qualifying conviction is prohibited and no waivers will be approved. Soldiers with a qualifying conviction will be barred from reenlistment and are not eligible for the indefinite reenlistment program. Soldiers in the indefinite reenlistment program will be given an expiration term of service not to exceed 12 months from the date HQDA is notified of the qualifying conviction. Applicants who have enlisted in the DEP who are found to have a qualifying conviction will be separated from the DEP. For the purpose of this paragraph only, the following definitions apply:

(1) *Crime of domestic violence.* An offense that involves the use or attempted use of physical force, or threatened use of a deadly weapon committed by a current or former spouse, parent, or guardian of the victim; by a person with whom the victim shares a child in common; by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian; or by a person who was similarly situated to a spouse, parent, or guardian of the victim. Persons who are similarly situated to a spouse include two persons who are residing at the same location in an intimate relationship with the intent to make that place their home.

(2) *Qualifying conviction.* A State or Federal conviction for a misdemeanor crime of domestic violence and any general or special court-martial for an offense that otherwise meets the elements of a crime of domestic violence, even though not classified as a misdemeanor or felony. A qualifying conviction does not include a summary court-martial conviction or the imposition of nonjudicial punishment under Article 15, UCMJ. By DOD policy, a State or Federal conviction for a felony crime of domestic violence adjudged on or after 27 November 2002 will be considered a qualifying conviction for purposes of this regulation and will be subject to all the restrictions and prohibitions of this regulation. A person will not be considered to have a qualifying conviction unless the convicted offender was represented by counsel or knowingly and intelligently waived the right to counsel and, if entitled to have the case tried

by a jury, the case was actually tried by a jury, or the person knowingly and intelligently waived the right to have the case tried by a jury; and the conviction has not been expunged or set aside, or the convicted offender has not been pardoned for the offense, or had civil rights restored; unless the pardon, expungement, or restoration of civil rights provides that the person may not ship, transport, possess, or receive firearms.

*d.* A waiver may not be considered for any person with a civil conviction of major misconduct for any of the conditions below.

(1) Three or more offenses (convictions or other adverse dispositions) other than traffic.

(2) Applicants with juvenile major misconduct offenses who have had no offenses within 5 years of application for enlistment may be considered for a waiver in meritorious cases

(3) Subject of initial court conviction or other adverse disposition for sale, distribution, or trafficking (including "intent to") of cannabis (marijuana), or any other controlled substance.

(4) Person with two or more convictions/other adverse disposition within the 3 years preceding application for enlistment for driving while intoxicated, drugged, or impaired.

(5) Person with PS who incurs a major misconduct conviction during or after military service.

(6) Person with conviction/other adverse disposition of two or more separate charges of possession of any illegal drugs/drug paraphernalia within 3 years preceding application for enlistment.

*Note.* Major misconduct is a term used in this regulation to identify felony level offenses as determined by local, State, or Federal law. A felony (or major misconduct) is any offense that is authorized to be punished by imprisonment for a term that exceeds 1 year.

## 4–8. Traffic offenses
See table 4–1 for the typical traffic offenses.

**Table 4–1**
**Traffic Offenses**

| Offense code | Offense title |
|---|---|
| 100 | Bicycle ordinance violation. |
| 101 | Blocking or retarding traffic. |
| 102 | Contempt of court for minor traffic offenses. |
| 103 | Crossing yellow line; driving left of center. |
| 104 | Disobeying traffic lights, signs, or signals. |
| 105 | Driving on shoulder. |
| 106 | Driving uninsured vehicle. |
| 107 | Driving with blocked vision and/or tinted window. |
| 108 | Driving with expired plates or without plates. |
| 109 | Driving with suspended or revoked license. |
| 110 | Driving without license. |
| 111 | Driving without registration or with improper registration. |
| 112 | Driving wrong way on one way street. |
| 113 | Failure to appear for traffic violations. |
| 114 | Failure to comply with officer's directive. |
| 115 | Failure to have vehicle under control. |
| 116 | Failure to signal. |
| 117 | Failure to stop or yield to pedestrian. |
| 118 | Failure to submit report after accident. |
| 119 | Failure to yield right-of-way. |
| 120 | Faulty equipment such as defective exhaust, horn, lights, mirror, muffler, signal device, steering device, tail pipe, or windshield wipers. |
| 121 | Following too closely. |
| 122 | Hitchhiking. |

**Table 4–1**
**Traffic Offenses—Continued**

| 123 | Improper backing such as backing into intersection or highway, backing onto expressway, or backing over crosswalk. |
| 124 | Improper blowing of horn. |
| 125 | Improper passing such as passing on right, passing in no-passing zone, passing stopped school bus, or passing pedestrian in crosswalk. |
| 126 | Improper turn. |
| 127 | Invalid or unofficial inspection sticker or failure to display inspection sticker. |
| 128 | Jaywalking. |
| 129 | Leaving key in ignition. |
| 130 | Leaving scene of accident (when not considered hit and run). |
| 131 | License plates improperly displayed or not displayed. |
| 132 | Operating overloaded vehicle. |
| 133 | Racing, dragging, or contest for speed. |
| 134 | Reckless, careless, or imprudent driving (considered a traffic offense when the fine is less than $300 and there is no confinement ordered). Court costs are not part of a fine. |
| 135 | Reserved for future use |
| 136 | Seat belt and/or child restraint violation. |
| 137 | Skateboard and/or roller skate violation. |
| 138 | Speeding. |
| 139 | Spilling load on highway. |
| 140 | Spinning wheels, improper start, zigzagging, or weaving in traffic. |
| 141 | Violation of noise control ordinance. |
| 142 | Other traffic offenses not specifically listed. |
| 143 | Reserved for future use. |
| 144 | Reserved for future use. |

## 4–9. Nontraffic offenses
See table 4–2 for the typical nontraffic offenses.

**Table 4–2**
**Nontraffic offenses**

| Offense code | Offense title |
| --- | --- |
| 200 | Altered driver's license or identification. |
| 201 | Assault (simple assault with fine or restitution of $500 or less and no confinement ordered. |
| 202 | Carrying concealed weapon (other than firearm); possession of brass knuckles. |
| 203 | Check, worthless, making or uttering, with intent to defraud or deceive (less than $500). |
| 204 | Committing a nuisance. |
| 205 | Conspiring to commit misdemeanor. |
| 206 | Curfew violation. |
| 207 | Damaging road signs. |
| 208 | Discharging firearm through carelessness or within municipal limits. |
| 209 | Disobeying summons; failure to appear other than traffic. |
| 210 | Disorderly conduct; creating disturbance; boisterous conduct. |
| 211 | Disturbing the peace. |
| 212 | Drinking alcoholic beverages on public transportation. |

**Table 4–2**
**Nontraffic offenses—Continued**

| | |
|---|---|
| 213 | Drunk in public. |
| 214 | Dumping refuse near highway. |
| 215 | Failure to appear, contempt of court. |
| 216 | Reserved for future use. |
| 217 | Failure to stop and render aid after accident. |
| 218 | Fare and/or toll evasion. |
| 219 | Harassment, menacing, or stalking. |
| 220 | Illegal betting or gambling; operating illegal handbook, raffle, lottery, or punchboard; cockfighting. |
| 221 | Indecent exposure. |
| 222 | Indecent, insulting, or obscene language communicated directly or by telephone to another person. |
| 223 | Jumping turnstile (to include those States that adjudicate jumping a turnstile as a petty larceny). |
| 224 | Juvenile adjudications such as beyond parental control, incorrigible, runaway, truant, or wayward. |
| 225 | Killing a domestic animal. |
| 226 | Littering. |
| 227 | Loitering. |
| 228 | Malicious mischief (fine or restitution of $500 or less and no confinement ordered). |
| 229 | Pandering. |
| 230 | Poaching. |
| 231 | Purchase, possession, or consumption of alcoholic beverages or tobacco products by minor. |
| 232 | Removing property from public grounds. |
| 233 | Removing property under lien. |
| 234 | Robbing an orchard. |
| 235 | Shooting from highway. |
| 236 | Throwing glass or other material in roadway. |
| 237 | Trespass (non-criminal or simple). |
| 238 | Unlawful assembly. |
| 239 | Unlawful manufacture, sale, possession, or consumption of liquor in public place. |
| 240 | Unlawful use of long-distance telephone calling card. |
| 241 | Using or wearing unlawful emblem and/or identification. |
| 242 | Vagrancy. |
| 243 | Vandalism (fine or restitution of $500 or less and no confinement ordered). |
| 244 | Violation of fireworks laws. |
| 245 | Violation of fish and game laws. |
| 246 | Violation of leash laws. |
| 247 | Violation of probation. |
| 248 | Other nontraffic offenses not specifically listed. |
| 249 | Reserved for future use. |
| 250 | Reserved for future use. |

## 4–10. Misconduct offenses

See table 4–3 for the typical misconduct offenses.

**Table 4–3**
**Misconduct offenses**

| Offense code | Offense title |
|---|---|
| 300 | Assault, fighting, or battery (more than $500 fine or restitution or confinement ordered). |
| 301 | Carrying of weapon on school grounds (non-firearm). |
| 302 | Concealment of or failure to report a felony. |
| 303 | Contributing to delinquency of minor. |
| 304 | Crimes against the Family (non-payment of court-oredered child support and/or alimony). |
| 305 | Criminal mischief (more than $500 fine or restitution or confinement ordered). |
| 306 | Criminal trespass. |
| 307 | Desecration of grave. |
| 308 | Domestic battery and/or violence not considered covered by 18 USC 922 (reference (d)), hereafter referred to as the "Lautenburg Amendment"). |
| 309 | Driving while drugged or intoxicated; driving while ability impaired; permitting driving under the influence. |
| 310 | Illegal or fraudulent use of a credit card or bankcard (value less than $500). |
| 311 | Larceny or conversion (value less than $500). |
| 312 | Leaving scene of an accident or hit and run. |
| 313 | Looting. |
| 314 | Mailbox destruction. |
| 315 | Mailing, to include email, of obscene or indecent matter. |
| 316 | Possession of marijuana or drug paraphernalia. |
| 317 | Prostitution or solicitation for prostitution. |
| 318 | Reckless, careless, or imprudent driving (considered a misdemeanor when the fine is $300 or more or when confinement is imposed; otherwise, considered a minor traffic offense). |
| 319 | Reckless endangerment. |
| 320 | Resisting arrest or eluding police. |
| 321 | Selling or leasing weapons. |
| 322 | Stolen property, knowingly received (value less than $500). |
| 323 | Throwing rocks on a highway; throwing missiles at sporting events; throwing objects at vehicles. |
| 324 | Unauthorized use or taking of a vehicle or conveyance from Family member; joy riding. |
| 325 | Unlawful carrying of firearms or carrying concealed firearm. |
| 326 | Unlawful entry. |
| 327 | Use of telephone, Internet, or other electronic means to abuse, annoy, harass, threaten, or torment another. |
| 328 | Vandalism (more than $500 fine or restitution or confinement ordered). |
| 329 | Willfully discharging firearm so as to endanger life; shooting in public. |
| 330 | Other misconduct offenses not specifically listed. |
| 331 | Reserved for future use. |
| 332 | Reserved for future use. |

## 4–11. Major misconduct offenses
See table 4–4 for the typical major misconduct offenses.

**Table 4–4**
**Major misconduct offenses**

| Offense code | Offense title |
| --- | --- |
| 400 | Aggravated assault; assault with dangerous weapon; maiming. |
| 401 | Arson. |
| 402 | Attempt to commit a felony. |
| 403 | Breaking and entering with intent to commit a felony. |
| 404 | Bribery. |
| 405 | Burglary. |
| 406 | Carjacking. |
| 407 | Carnal knowledge of a child. |
| 408 | Carrying of weapon on school grounds (firearm). |
| 409 | Check, worthless, making or uttering, with intent to defraud or deceive (over $500). |
| 410 | Child abuse. |
| 411 | Child pornography. |
| 412 | Conspiring to commit a felony. |
| 413 | Criminal libel. |
| 414 | Domestic battery and/or violence as defined in the Lautenburg Amendment. (Waiver not authorized if applicant was convicted of this offense.) |
| 415 | Embezzlement. |
| 416 | Extortion. |
| 417 | Forgery, knowingly uttering or passing forged instrument (except for altered identification cards). |
| 418 | Grand larceny or larceny (value of $500 or more). |
| 419 | Grand theft auto. |
| 420 | Hate crimes. |
| 421 | Illegal and/or fraudulent use of a credit card, bankcard, or automated card (value of $500 or more). |
| 422 | Indecent acts or liberties with a child; molestation. |
| 423 | Indecent assault. |
| 424 | Kidnapping or abduction. |
| 425 | Mail matter; abstracting, destroying, obstructing, opening, secreting, stealing, or taking (not including the destruction of mailboxes). |
| 426 | Manslaughter. |
| 427 | Murder. |
| 428 | Narcotics or habit-forming drugs, wrongful possession or use (marijuana not included). |
| 429 | Negligent or vehicular homicide. |
| 430 | Perjury or subornation of perjury. |
| 431 | Possession or intent to use materials in a manner to make a bomb or explosive device to cause bodily harm or destruction of property. |
| 432 | Public record; altering, concealing, destroying, mutilating, obligation, or removing. |
| 433 | Rape, sexual abuse, sexual assault, criminal sexual abuse, incest, or other sex crimes. |
| 434 | Riot. |
| 435 | Robbery, to include armed. |
| 436 | Sale, distribution, or trafficking of cannabis (marijuana) or any other controlled substance (including intent). |

**Table 4–4**
**Major misconduct offenses—Continued**

| 437 | Sodomy. |
|-----|---------|
| 438 | Stolen property, knowingly received (value of $500 or more). |
| 439 | Terrorist threats including bomb threats. |
| 440 | Violation of civil rights. |
| 441 | Other major misconduct offenses not specifically listed. |

## 4–12. Court disposition definitions

*a.* Applicants who have entered a plea of nolo contendere that was accepted by the court, despite later processing in the same case to permit expungement, amnesty, pardon, or clemency are considered to have a conviction. If later processing in the same case permit dismissal, the applicant will be considered without a conviction.

*b.* Applicant who, as a condition for any civil conviction or adverse disposition or any other reason through a civil or criminal court, is subject to a court order that requires enlistment into the U.S. Armed Forces of the United States, is not eligible for enlistment unless—

(1) The condition is removed by the same or higher authority imposing the sentence.

(2) The condition is removed by virtue of expired period of sentence.

(3) The condition is over 12 months from imposition, and the court, city, county, or State no longer requires the applicant to fulfill this condition.

*c.* Nonjudicial punishment under Article 15, UCMJ and military court-martial proceedings must be listed but will not count toward waiver thresholds; however, these will be considered toward the "whole person" concept.

## 4–13. Prior military service

Any PS applicant enlisting from any Service with an SPD or RE code requiring a waiver may not process until 90 days has elapsed from separation date.

*a.* If applicant was separated from any component of the U.S. Armed Forces for any reason listed in this paragraph, a waiver may not be submitted until 24 months after the date of separation. The waiver authority is the CG, USAREC for RA and USAR applicants, and the C, NGB for ARNG applicants.

(1) In lieu of trial by court-martial.

(2) Convenience of the Government.

(3) Misconduct.

(4) Qualitative Management Program.

(5) Personality disorder (CG, USAREC delegated to command surgeon or Chief, NGB).

(6) Unsatisfactory performance.

(7) Unfitness.

(8) Unsuitability.

(9) Alcohol or drug abuse rehabilitation failure.

(10) Security.

*b.* If applicant was separated from any component of the U.S. Armed Forces for any reason listed in this paragraph, a waiver may not be submitted a 6-month waiting period has elapsed since applicant was separated or discharged from any component of the U.S. Armed Forces for any of the following reasons. The waiver authority is the CG, USAREC for RA and USAR applicants and the Chief, NGB for ARNG applicants.

(1) Concealment of an arrest conviction.

(2) Fraudulent enlistment.

(3) Entry-level performance and conduct.

(4) Failure to meet weight standards.

(5) Uncharacterized separation.

(6) Unsatisfactory participant

*c.* If applicant was separated from any component of the U.S. Armed Forces for any reason listed in this paragraph 4–13*a* waiver may be submitted to the CG, USAREC for RA and USAR applicants and the Chief, NGB for ARNG applicants

(1) Alien not lawfully admitted to the United States (must currently meet citizenship criteria).

(2) Defective enlistment or reenlistment.

(3) Dependency (see para 4–13*f*(7)).

(4) Erroneous enlistment.

(5) Hardship (see para 4–13*f*(7)).

(6) Minority.

(7) Reduction in force.

(8) Unfulfilled enlistment agreement.

(9) Void service.

(10) Pregnancy.

*d.* A waiver is required for any applicant who is separated or discharged from the RA, ARNG, or USAR with a field bar to reenlistment issued per AR 140–111 or NGR 600–200, or who was denied extension or reenlistment by any other component of the U.S. Armed Forces at time of last separation or discharge. The approval authority for such waivers is the CG, USAREC for RA and USAR applicants, and the State TAG for ARNG applicants.

*e.* Applicants who were voluntarily separated for parenthood may be enlisted with a waiver approved by the recruiting battalion commander or equivalent member of the ARNG after a 6-month waiting period has elapsed. Involuntary parenthood separations may be enlisted after a 6-month waiting period with a waiver approved by CG, USAREC for RA and USAR applicants or State TAG for ARNG applicants.

*f.* The following documents are required for submission of a waiver:

(1) Request from recruiting battalion commander, including the results from interview with the applicant.

(2) Letter from applicant explaining circumstances surrounding reason for waiver. The PS applicant must address reason for separation or discharge.

(3) DD Form 214, DD Form 215, NGB Form 22, and DD Form 220.

(4) DD Form 368, if required.

(5) DD Form 1966, SF 86, and recruiting battalion conduct waiver worksheet or NGB Form 22–3 (Request for Waiver) for ARNG.

(6) A copy of applicant's USMEPCOM authorized document that clearly displays ASVAB results and PULHES results (or REDD scores).

(7) If separated for hardship, parenthood or dependency, the following additional documents are required:

*(a)* DA Form 3072–2 (Applicant's Monthly Financial Statement).

*(b)* Proof that prior condition upon which separation was approved no longer exists.

*(c)* Proof must be in the form of affidavits made by the person or organization on behalf of the applicant. Community members who are familiar with the home condition of the applicant's Family may also provide such substantiation. Any legal documents that support the conclusion that the condition no longer exists may also be used.

## 4–14.  Absent without leave or lost time

*a.* Any applicant who, during his or her last period of service, was absent without leave or had lost time, as defined by AR 635–200, paragraph 1–21, of 5 days or fewer, is required to obtain a waiver for enlistment. This requirement exists even for those who were otherwise fully eligible to reenlist at separation, as indicated by his or her RE code and SPD code. Recruiting battalion commander is the approval authority.

*b.* Any applicant who, during his or her last period of service, was absent without leave or had lost time of 6 days or more, even those who were otherwise fully eligible to reenlist at separation, as indicated by his or her RE code and SPD code, is required to have a waiver for enlistment. CG, USAREC or DARNG for ARNG is the approval authority.

*c.* Any applicant who, during his or her last period of service, was absent without leave or had lost time for more than 30 consecutive days, regardless of the type of separation or RE code, is considered to be dropped from rolls, and waiver is not authorized.

## 4–15.  Conscientious objection

*a.* The approval authority for enlistment in the RA or USAR is the DCS, G–1, Enlisted Accessions Division (DAPE–MPA) or DARNG for ARNG applicants.

*b.* Conscientious objectors are persons who profess conscientious objections or religious convictions at time of application for enlistment that would restrict assignments, and who desire to enlist as noncombatants.

*c.* The PS applicants with a history of conscientious objections, must not have been discharged by reason of conscientious objection under provisions of AR 600–43.

*d.* The following documents are required for submission of a waiver under this paragraph:

(1) A memorandum prepared per instructions in paragraph 4–28.

(2) DD Form 1966 and SF 86.

(3) For PS, DD Form 214, DD Form 215, DD Form 220, or NGB Form 22.

(4) Letters that substantiate a claim to this status; information as required by AR 600–43; and a personal letter expressing desire to enlist in the Army.

(5) Applicant's current MEPS physical examination.

(6) A copy of applicant's USMEPCOM authorized document that clearly displays applicant's ASVAB date and results.

*e.* The recruiting battalion will send the applicant's documents to Commander, U.S. Army Human Resources

Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303. After review and determination, an advisory opinion will be given to CG, HRC for final approval or disapproval.

## 4–16. Reserve Component separations or transfers

*a.* A waiver is required for any applicant who is a current member of an RC who is pending adverse or administrative actions considered disqualifying under chapter 4. These applicants may not be processed until the adverse action is completed. Waivers will be submitted following final action in these cases.

*b.* A waiver is required for any applicant who has been transferred to the IRR of any Service of the Armed Forces for being an unsatisfactory participant, or who is not currently serving satisfactorily in a Selected Reserve unit. Waiver may be submitted for all components after 6 months have elapsed from date of transfer to the IRR. For applicants who were not transferred to the IRR, a waiver may be submitted 12 months after date of discharge.

*c.* The approval authority is the CG, USAREC for RA and USAR, or TAG for ARNG.

## 4–17. Age

Waivers for applicants who exceed the age criteria for enlistment into the RA may be considered by the Director of Military Personnel Management (see para 2–3).

## 4–18. Positive drug or alcohol test

*a.* Any applicant or enlistee who was or is confirmed positive for the presence of drugs or alcohol at time of original physical examination is not eligible for enlistment into DEP/DTP or ARNG unless a waiver is granted. The TPU commander will be notified of RC Soldiers who test positive for drugs so the Soldiers can be processed for separation in accordance with appropriate regulatory guidance.

*b.* Waiting periods are required under the following circumstances:

(1) *Positive for marijuana and alcohol.*

*(a)* If applicant's first test is positive, he or she must wait 6 months from previous test date for retest. Recruiting battalion commander or recruiting and retention commander (0–5 level) of the ARNG)

*(b)* If applicant's second test is positive, he or she must wait 24 months from previous test date for a retest. (CG, USAREC or DARNG is the approval authority.) For ARNG only, if second test is positive, applicant is permanently disqualified and no waivers or exceptions to policy will be considered.

*(c)* For RA/USAR only, if applicant's third test is positive he or she is permanently disqualified.

(2) *Positive for cocaine or any other drug tested for (excluding marijuana).*

*(a)* If applicant's first test is positive, he or she must wait 1 year from previous test date for a retest. Recruiting battalion commander or recruiting and retention commander of the ARNG)

*(b)* If applicant's second test is positive, he or she is permanently disqualified from enlisting in all Army components.

*c.* The following documents are required for the submission of a waiver under this paragraph:

(1) A memorandum prepared according to instructions in paragraph 4–28.

(2) DD Form 1966 and SF 86.

(3) A copy of current MEPS physical examination or USMEPCOM authorized document showing drug test results.

(4) Other documents the recruiting battalion commander or executive officer may require.

*d.* All applicants who test positive will be required to have police records check accomplished as part of the waiver process regardless of any admission or record of civil offenses.

*e.* Applicants with an approved drug alcohol test waiver are prohibited from enlisting in any MOS or option that requires a security clearance.

*f.* A waiver may not be considered for a person with PS who has tested positive at MEPS for any drug use.

## 4–19. Dependents

*a.* Any applicant who does not meet the dependent criteria of this regulation, requires a waiver, if applicable.

*b.* The approval authority for dependent waivers is the CG, USAREC for RA and USAR, unless otherwise noted, or TAG for ARNG.

*c.* The following documents are required for submission of a waiver under this paragraph:

(1) A memorandum prepared according to instructions in paragraph 4–28.

(2) DD Form 214, DD Form 215, NGB Form 22, and DD Form 220.

(3) DD Form 1966 and SF 86.

(4) DA Form 3072–2.

(5) If applicable, divorce decree and changes to it.

(6) If applicable, documentation showing that dependents will not suffer hardship as a result of applicant's enlistment (obtain statement from spouse).

(7) Documentation to support advanced pay grade as prescribed in paragraphs 2–18, 3–17, or 3–18.

*d.* Single parent (RC only).

(1) Prior to the dependency waiver being approved, the applicant must have an approved Family care plan and DA Form 5305 (Family Care Plan) as required by AR 600–20.

(2) The Family care plan packet must be validated and approved by the unit commander of the RC to which the applicant will be assigned prior to enlistment.

(3) Waiver code will be "dependent waiver."

## 4–20. Surviving son or daughter

*a.* Any applicant who was previously separated from any component of the U.S. Armed Forces as a surviving son or daughter requires a waiver for enlistment. A surviving son or daughter refers to the only remaining son or daughter in a Family where the father or mother (or one or more of the sons or daughters) served in the Armed Forces of the United States and, because of the hazards with such military service—

(1) Was killed in action or died as a result of wounds, accident, or disease.

(2) Is in a captured or missing-in-action status.

(3) Is permanently 100 percent physically disabled (including 100 percent mental disability), as determined by the Veterans Administration or one of the military Services.

*b.* The approval authority is the CG, USAREC or DARNG for ARNG.

*c.* The following documents are required for submission of a waiver under this paragraph:

(1) A memorandum prepared according to the instructions in paragraph 4–28.

(2) DD Form 214, DD Form 215, NGB Form 22, and DD Form 220.

(3) DD Form 1966 and SF 86.

(4) Statement, signed by applicant, requesting that the surviving person designation be withdrawn. This statement also will acknowledge that—

*(a)* Applicant is available for worldwide assignment, including combat zone assignment.

*(b)* Future requests for separation based on survivor status may or may not be honored.

*(c)* Future requests for reassignment based on survivor status will not be honored.

(5) A copy of applicant's USMEPCOM authorized document that clearly displays applicant's ASVAB date and results.

## 4–21. Personnel Reliability Program

*a.* Any applicant enlisting for any MOS or assignment that requires that he or she be qualified under the Personnel Reliability Program will be disqualified if the applicant has used cannabis during the 120–day period before application for enlistment.

*b.* The approval authority for Personnel Reliability Program qualification is DCS, G–1 (delegated to USAREC, Enlistment Eligibility Policy and Suitability Division) and Chief, NGB for ARNG.

*c.* No formal documentation is required to be submitted; however, the USAREC security interviewer will request waivers from the DCS, G–1 (delegated to USAREC, EEP and Suitability Division) and Chief, NGB for ARNG. This applies to Personnel Reliability Program qualifications and initial screen for security clearances only and has no effect on the overall qualifications for the MOS, which may require additional exceptions or waivers.

## Section II
## Nonwaiverable Disqualifications

## 4–22. Administrative, conduct, and medical disqualifications

The following disqualifications cannot be waived:

*a.* Intoxicated or under influence of alcohol or drugs at time of application, or at any stage of processing for enlistment.

*b.* Alcoholism. Person not in sustained remission (less than 12 months since last occurrence of any diagnostic criterion or determined unfit by the Service surgeon or after examination by the chief medical officer at the MEPS; alcohol rehabilitation failure; or currently enrolled in an alcohol recovery program.

*c.* Drug dependence. Person not in sustained remission (less than 12 months since last occurrence of any diagnostic criterion or determined unfit by the Service surgeon or after examination by the chief medical officer at the MEPS; drug rehabilitation failure; or currently enrolled in a drug recovery program.

*d.* Person unable to present evidence of PS claimed, until such service has been verified.

*e.* Person whose enlistment is not clearly consistent with interests of national security under AR 601–280.

*f.* Person retained on AD under AR 601–280 with annotation "not eligible for security clearance or assignment to sensitive duties, AR 601–280."

*g.* Person with criminal or juvenile court charges filed or pending against him or her by civil authorities.

*Note.* Pending charges include unpaid traffic violations. Authorized reception battalion commanders and initial entry training

commanders may consider that, in certain meritorious cases, unpaid minor traffic tickets that are subsequently paid after entry did not constitute fraudulent entry. In those limited circumstances, separation processing under AR 635–200 is not required. All other cases meeting the provisions of fraudulent entry criteria must be processed in accordance with AR 635–200.

*h.* Person under civil restraint, such as confinement, parole, or probation.

*i.* Subject of civilian court conviction or adverse disposition for more than one major misconduct (felony level) offense.

*j.* All applicants (non-PS personnel or PS officer and enlisted personnel) who received a conviction for a sex offense are not eligible for enlistment or appointment. No waivers are authorized. Further, personnel separated as a result of the convicted sex offender policy are not eligible to enter or reenter the three components of the Army. There is no grandfather clause to this policy. Additionally, applicants who are currently or have been listed on any Federal or State Sex Offender Registry are not eligible to enlist. No waivers are authorized. Below is a list of typical sex offenses:

(1) Rape.

(2) Carnal knowledge.

(3) Forcible sodomy.

(4) Sodomy of a minor.

(5) Conduct unbecoming an officer (involving any sexually violent offense, a criminal offense of a sexual nature against a minor, or kidnapping a minor).

(6) Prostitution involving a minor.

(7) Indecent assault.

(8) Assault with the intent to commit rape or sodomy.

(9) Indecent act with a minor.

(10) Indecent language to a minor.

(11) Kidnapping of a minor (not by a parent).

(12) Pornography involving a minor.

(13) Conduct prejudicial to good order and discipline or assimilative crime conviction (involving any sexually violent offense or a criminal offense of a sexual nature against a minor or kidnapping of a minor).

(14) Attempt to commit, conspiracy to commit, or solicitation to commit any of the offenses in paragraphs 4–22*j*(1) through (13).

*k.* Persons with a conviction of murder.

## 4–23. Nonwaiverable disqualifying separations or discharges

The following are nonwaiverable separations and/or discharges:

*a.* Physically disqualified.

*b.* Military Personnel Security Program.

*c.* Release from entry on AD by reason of physical disability and reversion to inactive status for the purpose of retirement under 10 USC 12731 through 12738, instead of discharge with entitlement to receive disability retirement pay.

*d.* Physical disability resulting from intentional misconduct or willful neglect, or incurred during period of unauthorized absence. No entitlement to severance pay.

*e.* Desertion or dropped from rolls.

*f.* Permanently retired by reason of physical disability.

*g.* Retirement after 20 years of active Federal service.

*h.* Officers removed from active or inactive service by reason of having attained maximum age or service (AR 140–10).

*i.* Discharged by reason of conscientious objection (AR 600–43).

*j.* Previous separation for unfitness, unsuitability, unsatisfactory performance, misconduct, or bar to reenlistment, with 18 or more years of active Federal service completed.

*k.* Applicant for retirement and persons receiving retired, retirement, or retainer pay, except for combat-wounded personnel (see chap 5, sec XIII). This prohibition is not applicable to reservists who are members of the Retired Reserve and who are not receiving retired, retirement, or retainer pay.

*l.* Person with an other than honorable, bad conduct, or dishonorable discharge.

*m.* Person with PS last discharged from any component of the U.S. Armed Forces for drug or alcohol abuse, or as rehabilitation failure during last period of service.

*n.* Person barred from reenlistment by a qualitative management board by HQDA or ARNG and coded RE–4.

## 4–24. Prior service applicants

*a.* The PS applicants must reveal all medical, conduct, and administrative disqualifications.

*b.* RA applicants currently serving in a RC of the Army, and who had a medical and/or administrative waiver

approved for enlistment into that RC, may enlist into the RA without processing another waiver (appropriate waiting periods outlined in para 4–13 apply in all cases). The RC waiver approval documentation must be provided for enlistment. However, if an applicant received an RE–4 from the U.S. Army, or an RE–4 or equivalent from another Service, then applicant is ineligible to enter the RA (waivers are not authorized for the RA or RC of the Army for such codes). If an applicant received an RE–4 or its equivalent from another Service that would have been ruled an RE–3 by the U.S. Army, treat the code as an RE–3. Questionable cases may be forwarded to DCS, G–1 (DAPE–MPA) for consideration. Further, RA applicants currently in an RC of another Service, who had a waiver approved for that RC, must process a waiver for RA or RC enlistment.

*c.* The PS must reveal all law violations and list all Article 15, UCMJ, courts-martial convictions, and lost time.

(1) Violations, convictions, and lost time that occurred during and after the last period of service in any component of the U.S. Armed Forces are considered current.

(2) Violations, convictions, and lost time that were not previously revealed during enlistment or reenlistment processing are also considered current.

(3) When charges meet waiver thresholds or when charges (when added to charges that occurred prior to military service) would raise the approval authority of the waiver, all charges will be considered current.

(4) Applicants that are PS from another Service that revealed charges on their enlistment application that did not require a waiver, will not require a waiver when applying for enlistment into the Army.

*d.* The RC personnel with waiver offenses that occurred before Reserve enlistment that were neither revealed nor waived by the USAR are considered to have enlisted fraudulently. RC enlistees must be processed for retention and/or separation under the provisions of AR 135–178. In cases where major misconduct-level offenses or RE code is adverse a waiver is required for RA enlistment to the proper authority.

## Section III
## Administrative Instructions for Conduct and Administrative Waivers

### 4–25. General
This section prescribes procedures for processing requests for waivers to meet basic enlistment qualifications.

### 4–26. Waiver disapproval authority
*a.* All levels will determine if a waiver request warrants favorable consideration. Commanders at levels below the approving authority, including the Recruiting Company Leadership Team or equivalent members of the ARNG, may disapprove waivers for applicants who do not meet prescribed standards and who do not substantiate a meritorious case, except for medical waivers (excludes dual waivers where nonmedical waiver was disapproved). Request for waiver may not be resubmitted for 6 months from date of disapproval.

*b.* Medical waivers may not be resubmitted unless original condition has changed.

*c.* Recruiting battalion commanders or recruiting retention managers for ARNG may reevaluate a battalion-level waiver within 6 months if, in their opinion, new information or information previously submitted warrants reconsideration. Indicate this description in the memorandum of waiver.

### 4–27. Validity period
Unless otherwise stated on waiver cover sheet or document, waivers granted under this chapter are valid for 6 months from approval date unless a change in status occurs (exceptions are DEP/delayed status personnel whose waivers are valid until RA enlistment if no change occurs in qualifications). Applicants who acquire additional offenses or disqualifications after waiver approval must resubmit waiver for reconsideration before enlistment. Waivers may be updated according to instructions from CG, USAREC or DARNG for ARNG. Medical waivers are valid for the duration of the physical examination. For ARNG, medical waivers are valid for the duration of the physical examination, not to exceed 1 year from medical waiver approval date. Applicants who received a conduct waiver for enlistment into any component, and were subsequently taken as a future Soldier loss, must process a new waiver prior to enlisting.

### 4–28. Waiver approval procedures
*a.* Each enlistment standard that may be waived lists waiver approval authority for basic eligibility criteria, documents, and required waiting periods.

*b.* Paragraph 4–32 shows required waiting periods following civil restraint.

*c.* Waivers of multiple disqualifications involving approval by separate levels of authority will be approved by the highest approval authority. Intermediate commanders will make proper recommendations for each disqualification. For dual waivers requiring a conduct and medical waiver, the conduct waiver must be approved by the battalion commander before submission of medical waiver.

*d.* Only the commander, acting commander (on orders), or executive officer may approve waiver requests. In their absence, the adjutant or assistant adjutant may forward an approval recommendation for further consideration of waiver requests (except in cases involving conviction of a major misconduct offense). Only the recruiting battalion commander

or acting commander (on orders) may forward administrative or conduct waivers for consideration of convictions for major misconduct offenses. The CG or Deputy Commander of USAREC or Chief, NGB may approve or disapprove USAREC or ARNG equivalent level waiver requests. The CG, USAREC or DARNG may delegate to the Director or Deputy Director of Recruiting Operations the authority to act on administrative, dependency, and other than major misconduct-level conduct waivers.

*e.* The following documents are required for submission of a conduct waiver under this paragraph:

(1) Police checks and court documents, as required. Police record checks are not required for traffic offenses.

(2) Documents from probation or parole officer that show applicant has satisfactorily completed probation or parole.

(3) Documents from correctional facility at which detained. Police record checks are not required for traffic offenses.

(4) Reference letter from employers for 1 year preceding application and schools attended in 3 years preceding application (to include transcripts if currently attending college). If the applicant states that seeking a reference letter from an employer will jeopardize employment, a reference letter is not required. Each waiver request must explain all periods of unemployment of 3 months or more during the preceding year (not required for battalion-level waivers, unless the battalion commander requires it).

(5) Applicant's current MEPS DD Form 2808 for major misconduct-level waivers.

(6) DD Form 214, DD Form 215, NGB Form 22, and DD Form 220, as applicable.

(7) DD Form 1966 and SF 86, section III, civil offenses.

(8) For ARNG, NGB Form 22–3.

## 4–29. Conduct standards

Acceptability for enlistment of persons who have records of court convictions or other adverse dispositions is based on conduct standards given in this section.

*a.* These standards screen out—

(1) Applicant who is legally precluded from serving in the U.S. Armed Forces.

(2) Applicant whose background poses serious questions about fitness for service.

(3) Applicant who is unsuitable for participation in special programs.

(4) Applicant who is likely to pose serious disciplinary problems.

*b.* Such cases divert manpower resources from performing military missions. Applicants will be advised that all arrests, convictions, or other adverse dispositions must be revealed. Recruiting personnel will obtain the criminal history of all applicants.

## 4–30. Rules governing processing of conduct waivers

*a.* All offenses, regardless of their outcome or place of offense (includes crimes committed outside the United States) will be listed on SF 86. A person arrested, cited, charged, or held for an offense or offenses and allowed to plead guilty to a lesser offense will list the original charges, and also the lesser offense to which a plea of guilty was entered. For example, a person arrested for grand larceny and two counts of criminal possession of stolen property pled guilty to two counts of criminal possession of stolen property, value of less than $500. In this example, the applicant requires a conduct waiver. However, waiver is not needed if an arrest or questioning does not result in referral of charges, or if charges are dismissed without a conviction or other adverse disposition. Incident must be listed on SF 86. Waiver is not authorized if a criminal or juvenile court charge is pending or if such a charge was dismissed or dropped at any stage of the court proceedings on condition that the offender enlists in a military service.

*b.* To ensure equal treatment to all persons applying for enlistment, despite the variance in State statutes, the rules below are guides to those responsible for processing waivers.

(1) *Civil court conviction.* This term means a judgment of guilty or an accepted plea of nolo contendere is entered in a court's records for persons tried as adults regardless of—

*(a)* Whether or not sentence then was imposed, withheld, or suspended.

*(b)* Later proceedings that deleted an initial determination of guilt from court records, based on evidence or rehabilitation or completion of a satisfactory probationary period. Examples of later proceedings in adult offender cases include pardon, expungement, amnesty, setting aside the conviction, and reopening of the case to change the original finding of guilty and dismissal of all of the charges, unless new findings in the case would have resulted in an original verdict of not guilty.

(2) *Other adverse dispositions.* This term includes all law violations that are not civil court convictions, but which resulted in an arrest or citation for criminal misconduct, followed by the formal imposition of penalties or any other requirements upon the offender by any governmental agency or court.

(3) *Examples of other adverse dispositions.* Some examples of other adverse dispositions include—

*(a)* Admission into diversionary or similar programs.

*(b)* Admission into an adult first-offender program.

*(c)* Deferred acceptance of guilty plea programs or probated sentence.

*(d)* Tried as a youthful offender.

*(e)* Enrollment in supervision programs.

*(f)* Orders to pay restitution, pay a fine, serve community service, attend classes, or serve probationary periods that do not constitute civil court convictions.

*(g)* Adjudication withheld and suspended imposition of sentence.

*(h)* Unconditional suspended sentence and unsupervised unconditional probation. These terms are defined as a court-imposed suspended sentence or probationary status.

(4) *Later proceedings.* Later proceedings delete an initial determination of guilty or commission of alleged misconduct from court or agency records. Examples of later proceedings used in Federal and State courts include—

*(a)* Expungement.

*(b)* Record sealing.

*(c)* Setting aside the adjudication or reopening cases to change the original findings/pleas of admission of guilt to not guilty.

*(d)* Dismissal of the original petition.

(5) *Juvenile delinquent.* This term includes disposition as a juvenile delinquent, wayward minor, youthful offender, delinquent child, or juvenile offender, and declaration of the juvenile as a ward of the court. The term does not include disposition of the juvenile as dependent, neglected, or abandoned.

*(a)* A conviction exists if a juvenile (applicant under age 18) is tried and convicted as an adult. DD Form 369 may be modified to include a statement in the remarks section that asks the following: Applicant was under the age of 18 at the time of adjudication and records do not clearly indicate that he or she was tried as an adult. Unless court records indicate otherwise, applicants who were juveniles at the time of the offense have an adverse disposition.

*(b)* Because all States have varied laws with regard to juveniles being tried as adults, recruiters, through their chain of command, should consult with their supporting judge advocate when questionable cases arise.

*c.* Some States have procedures for a later "expunging of the record," dismissal of charges, or pardon (on evidence of rehabilitation of the offender). Such action removes the "initial conviction" or "other adverse disposition" so that, under State law, the applicant has no record of conviction or adverse juvenile adjudication. Despite the legal effect of this action, a waiver authorizing RA, USAR, or ARNG enlistment of such an applicant is required, and the underlying facts must be revealed.

## 4–31. Waiver reporting

A report on each category of accession waivers provided by each Army component will be forwarded to DCS, G–1 (DAPE–MPA) no later than the 7th work day of each new calendar month.

*a.* Waiver categories include: medical, administrative (NPS dependency and all RE code waivers), development acceptance test (drug and alcohol), conduct (nontraffic, misconduct (misdemeanor level offense), and major misconduct).

*b.* The waivers report will be structured according to guidance provided by the DCS, G–1 (DAPE–MPA).

## 4–32. Waiting period

*a.* The waiting period provides the reviewing authority the ability to evaluate the extent of the applicant's rehabilitation. For PS personnel, waiting periods listed in paragraph 4–32*b*, below apply only to offenses and periods of confinement since date of last separation from active military service. Waiting periods do not apply to minor traffic or nontraffic offenses, unless a waiver is required. The CG, USAREC or Chief, NGB may lengthen minimum waiting periods.

*b.* Waiting periods for waiver submission following civil restraint are as follows:

(1) If an applicant was on parole, probation, or suspended sentence after period of civil restraint has been concluded, applicant may process or submit a waiver once all court ordered requirements are completed.

(2) If an applicant had confinement as a juvenile or an adult of less than 15 days, a 3-month waiting period is required before an applicant can process or submit a waiver. As an exception, the recruiting battalion commander may waive up to 45 days of the waiting period if the applicant was sentenced only to a fine and, as an alternative, elected to serve a confinement period. Written verification from the court imposing the sentence is required. Any waiting time reduced by the recruiting battalion commander, when applicable, will be annotated on a separate memorandum or waiver document.

(3) If an applicant had confinement as a juvenile or adult for 15 days or more, a 6-month waiting period is required before they can process or submit a waiver. As an exception, the recruiting battalion commander may waive up to 3 months of the 6-month waiting period if the applicant is sentenced to a fine and, as an alternative, elected to serve a confinement period. Written verification is required from the court imposing the confinement. Any exception granted by the recruiting battalion commander must be annotated in the remarks section of DD Form 1966 and noted on the waiver memorandum if a waiver was required.

(4) A waiting period is not required for applicants who are in the DEP/DTP and all civil restraint has been completed. Approval must be granted by the recruiting battalion commander.

(5) The above waiting periods do not apply to minor traffic violations when State law or court practices imposed periods of restrictions, supervision, or informal probation periods until fine is paid. They also do not apply to unsupervised traffic probation for minor traffic offenses.

## 4–33. Required investigations

*a.* Enlistment will be suspended pending an investigation of the case (for example, completion of police records check, copies of court documents, discussion with probation officer, or review of correctional facility records, as applicable). Processing may continue if the applicant—

(1) Admits to a record (including arrests, charges, other adverse dispositions, and convictions); or

(2) Does not admit to a record, but the enlisting agency has reason to believe such a record exists.

*b.* For persons admitting to an arrest record—

(1) Who state that later conviction or other adverse dispositions occurred, a waiver is required as a self-admitted or alleged record (if such offenses require a waiver) when one of the following applies:

*(a)* Civil authorities refuse to furnish the information.

*(b)* No record of the information exists.

*(c)* Applicant is unable to obtain the records.

*(d)* Offense occurred outside the United States, its territories, or possessions and obtaining a police record check is prohibited.

(2) Who state that no conviction or other adverse dispositions occurred, a waiver to permit enlistment is not required when one of the following applies:

*(a)* Civil authorities refuse to furnish the information.

*(b)* Applicant is unable to obtain the records.

*(c)* Offense occurred outside the United States, its territories, or possessions and obtaining a police record check is prohibited.

*c.* The investigation will include—

(1) All documents required for enlistment and all documents required under paragraph 4–28.

(2) Police record checks as required by this regulation.

## 4–34. Pending charges-civil restraint

Recruiting personnel will not—

*a.* Take part directly or indirectly in release of a person from pending charges so that they may enlist in the Army as an alternative to future prosecution, or further adverse juvenile or adult proceedings. Equally important, recruiting personnel will in no way contribute, either directly or indirectly, to the false notion that the Army condones such a practice. Persons subject to a pending charge are not eligible for enlistment; therefore, they are not eligible for pre-enlistment processing to determine mental or medical eligibility.

*b.* Take part in any way in obtaining release of a person from any type of civil restraint so that he or she may enlist or complete enlistment processing to determine enlistment eligibility. The term civil restraint includes confinement, probation, parole, and suspended sentence. Accordingly, persons under the type of civil restraint that makes them ineligible for enlistment are not eligible for processing to determine mental and medical eligibility for enlistment, except for those individuals authorized to take the ASVAB in accordance with paragraph 2–11*a*(2).

*c.* Process any person who has a doubtful criminal status. For example, while not classified as a specific "pending charge," an applicant may have a possible indictment or arrest pending; further, the recruiter may have obtained information that indicates the applicant's character may be questionable. These situations cannot be defined as an absolute in the qualification or disqualification process. When doubt exists as to the possible pending arrest, indictment, or pending nature of an offense, clarification must be obtained through the chain of command. For example, clarify, via the chain of command, an applicant's eligibility and "questionable moral character" if the applicant claims no arrest record and no pending charge, but local law enforcement officials indicate that the applicant is a suspect and it is possible that charges are about to be filed. Document any decision on such matters on DD Form 1966, remarks section, or attach a memorandum for record to the residual file indicating the result and the decision on the matter.

## 4–35. Headquarters, Department of the Army exceptions

Recruiting battalion commanders or Chief, NGB for members of the ARNG may request, through their chain of command to DCS, G–1 (DAPE–MPA) exceptions for applicants who fail to meet conduct qualifications outlined in chapter 4. If an exception is approved for applicants with exceptionally meritorious cases, DAPE–MPA will authorize (in writing) USAREC or ARNG to process these waivers.

## 4–36. Unsupervised probation

*a.* Applicant may enlist if currently on unsupervised probation for offenses listed in paragraph 4–36*b*, below and

provided the individual has no restriction of movement, has paid all fines, and has completed all other conditions (such as community service or restitution), and no further court action is pending or contemplated.

*b.* The offenses that apply to this rule are the following:

(1) All minor traffic offenses as listed in paragraph 4–8.

(2) Certain typical minor nontraffic offenses, as listed in paragraph 4–9. These offenses are limited to the following:

*(a)* Curfew violation.

*(b)* Damaging road signs.

*(c)* Disorderly conduct (original charge); creating a disturbance; boisterous conduct.

*(d)* Dumping refuse near a highway.

*(e)* Jumping a turnstile (to include those States that adjudicate jumping a turnstile as petty larceny).

*(f)* Juvenile adjudications (beyond parental control), incorrigible, runaway, truant, or wayward.

*(g)* Littering.

*(h)* Loitering.

*(i)* Purchase, possession, or consumption of alcoholic beverages or tobacco products by a minor.

*(j)* Robbing an orchard.

*(k)* Vagrancy.

*(l)* Violation of fireworks law.

*(m)* Violation of fish and game laws.

*(n)* Violation of leash laws.

## 4–37. Waiver reporting

A report on each category of accession waivers provided by each Army component will be forwarded to DCS, G–1 (DAPE–MPA) not later than the 7th work day of each new calendar month.

*a.* Waiver categories include: medical, administrative (NPS dependency and all RE code waivers), development acceptance test (drug and alcohol), and conduct (minor nontraffic, conduct, and major misconduct).

*b.* The waivers report will be structured according to guidance provided by DCS, G–1 (DAPE–MPA).

# Chapter 5
# Processing Applicants

## Section I
## General

An applicant is a person who applies voluntarily for enlistment in the RA, USAR, or ARNG and is found eligible for further processing after completing and signing DD Form 1966 and SF 86.

## 5–1. Importance of applicant processing

*a.* Processing is usually an applicant's first personal introduction to the Army. If courtesy, tact, efficiency, and integrity prevail in this first contact, the applicant will have reason to believe that their decision to enlist in the Army is a wise one. Applicant processing will—

(1) Ensure that records are prepared accurately. These records are a matter of major importance during the person's military service, in later civilian life, and even after death.

(2) Be a smooth transition from civilian to military life for those accepted for enlistment.

(3) Provide appropriate advice and assistance to all applicants.

(4) Ensure that personal documents are returned to all applicants for enlistment.

(5) Identify all applicants who have difficulty speaking or understanding English (including permanent resident aliens residing in the United States less than 1 year, whose native tongue is not English, and all NPS applicants from Puerto Rico).

*(a)* Inform identified applicants that they will be taking an English Comprehension Level Test (ECLT) at MEPS.

*(b)* Advise all identified applicants that those who score 74 or below on the ECLT will be required to take English language training prior to initial entry training.

(6) Use the Army Recruiting Information Support System segment applicable to the Army pay and entitlements to inform applicants of the requirement to establish and maintain a financial account.

*b.* Persons who prepare, control, and transmit applicant enlistment records and forms will—

(1) Complete and assemble all required forms.

(2) Compare similar entries and verify discrepancies with the applicant.

(3) Establish that entries on forms are correct before signatures are obtained.

**5–2. Processing elements**

Processing generally consists of—

*a.* Preliminary determination of qualifications.

*b.* Administration of mental and medical examinations.

*c.* Preparation of records and forms.

*d.* Administration of oath of enlistment.

*e.* Movement of personnel.

**5–3. Prohibitions**

*a.* During all phases of applicant processing, particular care will be taken to prevent erroneous and fraudulent enlistments. An applicant will be rejected on clear evidence that he or she does not meet enlistment criteria.

*b.* In no case will an individual be processed or enlisted into the Army before discharge, separation, or conditional release from another branch of the U.S. military.

**5–4. Shared functions**

The CG, USAREC, DARNG, CG, USMEPCOM, and commanders of major overseas commands complete an applicant's enlistment processing.

*a.* The CG, USAREC or DARNG will—

(1) Determine final acceptability of applicants for enlistment (except for USAR units outlined in para 6–9*d*).

(2) Process applicants to the extent possible; this processing will determine their tentative acceptance at the recruiting station before sending them to the MEPS.

(3) Fund applicant transportation, meals, and lodging in conjunction with moving to and processing at the MEPS.

(4) Coordinate meal and lodging arrangements with the MEPS.

(5) Through the USAREC or ARNG guidance counselor located at the MEPS, administratively process all PS applicants for enlistment in the USAR or ARNG before administering the oath of enlistment.

(6) Process PS applicants when they are not qualified by grade or MOS for enlistment into a specific unit vacancy, if approved by the Selected Reserve unit commander. The recruiting activity may obtain telephone approval before the enlistment is accomplished.

(7) Inform USAREC or ARNG recruiting officials that they may enlist PS applicants who are qualified to be trained into positions designated by the unit commander in REQUEST as "will train."

*b.* The USMEPCOM commander processes applicants and enlistees as prescribed in AR 601–270 and this regulation.

**5–5. Required forms for applicant processing**

Particular care must be taken in completion of required forms prior to entry of applicant data into the Army Recruiting Information Support System database. Recruiters must brief all applicants that the data provided will start and follow their records throughout their career in the RA, USAR, or ARNG. The recruiter must ensure that the applicant reads the privacy act statement and reads, completes, and signs the authority for release of information and records. Forms that are required for initial enlistment application are as follows:

*a.* DD Form 1966.

*b.* SF 86.

*c.* USMEPCOM authorized document.

*d.* DD Form 2807–2.

*e.* DD Form 369.

**Section II**
**Administration of Armed Services Vocational Aptitude Battery**

**5–6. General**

The ASVAB is an enlistment test for recruiting purposes, and a student test for career and vocational counseling purposes.

*a.* In the enlistment process, the ASVAB measures general trainability. It serves to determine eligibility for enlistment and to establish qualifications for assignment to specific skills.

*b.* ASVAB testing policy is applicable to NPS, PS, and glossary NPS applicants. PS personnel will follow testing (trainability) requirements as stated in paragraph 3–6*b*.

**5–7. Testing**

*a.* The recruiter should not sponsor an applicant for testing who is not eligible to enlist. Applicants who have not

reached their 17th birthday will not be tested for enlistment purposes. MEPS will not test an applicant who appears to be under the influence of alcohol or drugs.

*b.* Under no circumstances will any person who is assigned or attached to USAREC assist or become involved in any way with the testing process, beyond applicant processing procedures required by the MEPS. No member of USAREC or the ARNG may administer or score tests

*c.* Recruiter may advise applicants that commercial study guides are available, as well as the Army-sponsored, DOD approved Web site: http://www.March2Success.com.

*d.* An ASVAB information pamphlet is designed to familiarize applicants with the types of questions found on the actual ASVAB tests. The recruiter is authorized and encouraged to furnish this pamphlet to the applicant for familiarization with the kinds of questions on the test and an answer sheet for practice.

*e.* To prepare for administration of the ASVAB, the recruiter is responsible for ensuring that each applicant recommended for testing has fully and accurately completed and signed USMEPCOM authorized document. The recruiter must certify that information on the applicable form is correct. With respect to ASVAB testing, item 14 must be accurately and completely filled in to give the true testing history of an applicant, if applicable. There are two common errors made in this section—

(1) Incomplete test history (that is, initial or retest).

(2) No report or erroneously reported previous tests (that is, ID, test version, and date). When this information is not accurately reported, an applicant may be tested too early, or tested with the wrong test version. Incorrect or incomplete information on the USMEPCOM authorized document is recruiter error. ASVABs erroneously given to applicants based on wrong information result in an invalidated test score. Consequently, a waiver request to the retest policy for an immediate retest will not be approved. However, if the recruiter has accurately reported the official information on the USMEPCOM authorized document and USMEPCOM is in error, requests for an immediate retest will be considered. Requests will be submitted through Headquarters, USAREC to DCS, G–1 (DAPE–MPA).

*f.* The ASVAB production tests are given at either MEPS or their affiliated military entrance test sites. Scores received on tests at locations other than MEPS or military entrance test sites will not be accepted for enlistment.

*g.* The first ASVAB administered is the initial test of an applicant. This policy applies regardless of the following:

(1) Testing in either the enlistment or student testing program.

(2) Service sponsor.

*h.* The ASVAB scores are valid for enlistment purposes for 2 years from the date of test administration for potential applicants. Test scores remain valid beyond the 2-year period for members currently contracted into the DEP/DTP/delayed status/ARNG and waiting shipment to IADT.

*i.* The most recent valid ASVAB score from either the enlistment or student-test program is the score of record for enlistment purposes. Defense Manpower Data Center and REDD Reports are authorized for PS enlistments.

*j.* Recruiter should advise applicants not to use crib sheets, talk during the test, leave a test room without authorization, use calculators or slide rules, glance onto tests of neighbors, or work on a portion of the test other than the one being administered. Further, the use of cell phones, digital cameras, and any other electronic devices are not permitted during ASVAB testing. Such behavior will result in the applicant's removal from the test session and/or invalidation of test results.

*k.* Applicants for the enlistment ASVAB will be required to provide photographic ID, such as driver's license, student ID card, passport, and so forth, to the test administrator before testing. Individuals without ID will be required to have their right thumbprint imprinted on the USMEPCOM authorized document. Applicants without photo ID who refuse to be thumb printed will not be permitted to test. During processing, applicant signatures will be compared to ensure proper applicant ID.

*l.* Test scores will be invalidated for any individual found to be a "ringer" for an applicant. A ringer is an individual who takes the ASVAB in place of the true applicant. Both the ringer and the applicant will be barred from retesting for a period of not less than 2 years

*m.* The scores of an invalidated ASVAB cannot be used for enlistment.

*n.* Applicants tested at military entrance test sites should not be sent to the MEPS for further processing until official scores are available from the MEPS. Applicants who do not meet minimum score requirements to enlist will not be sent to the MEPS for further processing.

*o.* An applicant who has answered at least one question on the ASVAB is considered to have tested in terms of eligibility for retest.

## 5–8. Retesting

*a.* A retest is any ASVAB administered after the initial ASVAB.

*b.* A complete ASVAB will always be administered.

*c.* Applicants may be given the first retest no earlier than 1 calendar month after the initial test. For example, if the initial test is administered 16 October, the first retest is authorized on or after 16 November.

*d.* Applicants may be given the second retest no earlier than 1 calendar month after the first retest.

*e.* Subsequent retests may be given no earlier than at 6-month intervals. For example, if a retest is administered on 16 December, then any further retesting is prohibited until on or after 16 June of the following year.

*f.* To request to validate test scores for individuals inadvertently tested early, submit a waiver request to DCS, G–1 (DAPE–MPA) or Chief, NGB for ARNG.

*g.* The MEPS commander has authority to immediately retest applicants tested under adverse conditions when—

(1) An entire testing session is disrupted (for example, a fire drill, power failure, undue noise, and so forth).

(2) An applicant, through no fault of his or her own, is unable to complete the test (for example, an applicant is called away from test because of an emergency). This does not include the requirement for an applicant to leave a test session because of an illness that existed before the beginning of the session because applicants are routinely cautioned not to take the test if ill.

*h.* Recruiters are not authorized to have applicants retested for the sole purpose of increasing aptitude area scores to meet standards prescribed for enlistment options or programs.

*i.* The MEPS commander may require an applicant to take a confirmation test when previous test was not administered at MEPS and—

(1) There is a score difference of plus 20 or more percentile points between the AFQT score on a retest and the previous AFQT.

(2) There is reasonable cause to suspect improper means were used to influence or inflate ASVAB test scores.

*j.* The confirmation test will be administered at a MEPS.

*k.* The confirmation test is used to validate previous AFQT score results in question and will not be used for enlistment purposes.

## 5–9. Overseas Production Testing Program

*a.* ASVAB testing outside the continental United States and its territories or commonwealth is a Service responsibility. The Army must conduct testing in close coordination with HQDA, USMEPCOM, and the Army test control officer (or the test control officer of another Service, if an Army test control officer is not available).

*b.* When making arrangements to have an individual tested, a recruiter must consider the testing schedule of the testing center and the test control officer and establish a testing time satisfactory to all concerned.

*c.* The recruiter and test control officer will work together to ensure that the USMEPCOM authorized document is accurately completed and signed before administration of the ASVAB. If the recruiter travel distance to a test site is greater than 25 miles, the recruiter may coordinate in advance for the test control officer to complete and sign the USMEPCOM authorized document. However, in the event of any error in the completion of the form (incorrect test version, previous test date, missing signature, and so forth), the recruiter, not the test control officer, is responsible.

*d.* The enlistment ASVAB will be administered by a Service test control officer.

*e.* The Service test control officer will furnish an unofficial score. Exceptions may be granted by USAREC Plans and Policy or DARNG to use unofficial scores to temporarily reserve a training seat pending receipt of official scores.

*f.* Official scores will be entered into REQUEST prior to shipment.

*g.* The Service test control officer is responsible to mail the answer sheet to the testing section of a continental United States MEPS designated by Headquarters, USMEPCOM.

*h.* Headquarters, USMEPCOM will assure the continental United States MEPS, that are designated to review scores answer sheets from overseas areas, are reviewed expeditiously and will furnish the official ASVAB score to the Army in a timely manner.

*i.* The recruiter will not be involved at any time or in any way with handling test materials, testing the applicant, scoring the answer sheet, or mailing test papers related to an ASVAB or test session.

## 5–10. High school testing program

*a.* The student ASVAB is administered in high schools in support of the DOD Student Testing Program.

*b.* Recruiters may recommend students 17 years of age and older to take the ASVAB in high school. The results of a student ASVAB given to a 16-year-old high school junior may be used for enlistment after the 17th birthday.

*c.* Some high schools have mandatory student testing. For enlistment purposes, mandatory tests count toward the waiting period for retests. This does not restrict repeated testing while in high school; it may restrict the use of these scores for enlistment purposes if an applicant is concurrently testing for enlistment at MEPS or military entrance test site. If a recruiter is working with an applicant for enlistment who is in high school, the following applies:

(1) The waiting period between tests (enlistment or student) must be honored.

(2) Only the last valid test score (enlistment or student) qualifies for enlistment.

*d.* Tenth grade student tests count as the first ASVAB test.

## 5–11. Special purpose testing

*a.* Special purpose tests are authorized for use by MEPS and are listed in AR 601–270.

*b.* Enlistment and student testing has priority over special purpose testing.

*c.* If a MEPS schedule does not permit timely scheduling to give special tests, test control officer, assistant test control officer, or education specialists may administer them.

## Section III
## Administration of Medical Examination

### 5–12. General
Consent of parents or guardians is required before execution of any medical examination of an applicant under 18 years of age. Medical examinations in accordance with AR 40–501 are required for all persons, except those outlined in AR 601–270 and in AR 40–501 for USAR applicants, when applicable.

### 5–13. Medical examinations
*a.* AR 601–270 will govern medical examinations conducted at MEPS. Each applicant will prepare a DD Form 2807–1 and DD Form 2808 in his or her own handwriting.

*b.* DD Form 2807–2 will also be prepared and forwarded to the examining facility with the applicant's enlistment packet.

*c.* For applicants enlisting in the DEP/DTP/delayed status/ARNG, physical examinations will be valid for 2 years from the date of administration.

*d.* For applicants currently serving in any component (excluding IRR), physical examinations are valid for 5 years from the date of administration.

### 5–14. Transportation and subsistence
*a.* Transportation and subsistence will be furnished to an applicant only when either of the following applies:

(1) Applicant is tentatively accepted for enlistment.

(2) Applicant is recalled for enlistment after his or her name is reached on a waiting list.

*b.* Return transportation and subsistence from MEPS to point of initial acceptance (such as, recruiting station or residence, as appropriate) will be furnished to rejected applicants and acceptable applicants who cannot be enlisted at the time.

*c.* Applicants who signify their intention to enlist in the RA or USAR may be retained at Government expense. They may be retained for the time needed to complete their processing at MEPS or other enlisting activity. In the continental United States, the period of retention at Government expense will not exceed 7 days without specific authority from the CG, USAREC or Chief, NGB.

*d.* PS personnel may be authorized an advance leave prior to shipping to a U.S. Army reception battalion or designated unit. The following statements will be included on the orders issued by MEPS: "You are authorized (number) days chargeable leave en route. DA Form 31 (Request and Authority for Leave) will be initiated at Army liaison office within MEPS by the guidance counselor." The approval authority for leave is the senior guidance counselor or designated representative.

### 5–15. Forwarding of enlistees
Normally, persons will be scheduled to arrive at destinations as indicated below:

*a. From recruiting stations to military entrance processing stations.* Persons should arrive at MEPS during normal duty hours. When this is not possible, recruiting personnel will coordinate meals and lodging needs with MEPS.

*b. From military entrance processing stations to reception battalion or designated unit.* Persons will be sent from MEPS to the reception battalion or designated unit under AR 601–270.

### 5–16. Movement of personnel from place of enlistment
*a.* NPS personnel will be assigned and sent to a U.S. Army reception battalion. Enlistees requiring English language training will be sent to reception battalion located at Fort Sill, OK, by the enlisting MEPS to obtain official files and uniform before proceeding to Lackland Air Force Base for training.

*b.* For RA only, PS personnel—

(1) Will be required to attend BCT (initial entry training) if not exempt based on a period of PS.

*(a)* Applicants with PS in the Air Force, Navy, or Coast Guard, including their RCs, who have not completed an Army BCT or U.S. Marine Corps BCT, or completed training for Air Force or Navy Special Operations Forces, or Air Force Security Police during previous military service will attend U.S. Army BCT.

*(b)* All SROTC applicants who have been released from the program will be required to attend BCT and advanced individual training (AIT) or one station unit training required for their MOS.

*(c)* Cadets separated from the U.S. Military Academy who completed fewer than 180 days as a cadet must attend BCT. Attendance time as a cadet may be found in the remarks section of DD Form 214. Cadets who have been separated for 3 years or more must attend BCT. All other cadets from other branches of Service, regardless of

separation period, must attend Army BCT. Questionable cases regarding cadets separated from the U.S. Military Academy should be forwarded to DCS, G–1 (DAPE–MPA).

*(d)* All PS applicants who have had a break in service of over 3 years will attend Army BCT. PS applicants with a break in service of 3 or more years will be retrained regardless of enlisting with old MOS. Break in service is defined as last period of service, to include IRR, regardless of component. For the purpose of this section, for Soldiers who separate, break in service starts after MSO under 10 USC 651 is completed, or when a Soldier (regardless of Service) is no longer a member of an RC (including the IRR).

*(e)* All PS applicants enlisting OCS or WOCS, regardless of component who have not completed an Army BCT or U.S. Marine Corps BCT, or completed training for U.S. Air Force or U.S. Navy Special Operations Forces, or U.S. Air Force Security Police during previous military service are required to attend Army BCT.

*(f)* All PS applicants who were separated from the RA or U.S. Marine Corps with over a 36 month break in Service at time of enlistment into a Selected Reserve of the Army, will be required to attend BCT. However, BCT is not required if the member is currently serving and has served 36 months in the Selected Reserve on the current enlistment.

(2) Who enlist for an MOS held during their previous enlistment, with less than a 3-year break in service, will be assigned directly to field units. Unit commanders will provide necessary transition or refresher training (not applicable to prior U.S. Air Force, U.S. Navy, or U.S. Coast Guard).

(3) Who reenlist for an MOS not previously held, with less than a 3-year break in service, will receive AIT training in the new MOS. If the new MOS is taught in the one station unit training mode, the person may be required to complete the entire one station unit training program (not applicable to prior members of the U.S. Air Force, U.S. Navy, or U.S. Coast Guard).

(4) Who are required to complete AIT will be sent directly to the proper AIT location. As an exception if, AIT is not conducted at an Army installation, personnel will be sent to the nearest reception battalion by the enlisting MEPS to obtain official files and uniforms before proceeding to AIT.

(5) Who have completed the IADT phase in a Reserve Enlistment Program will be processed under paragraph 5–21.

(6) Who enlist at MEPS for an overseas area will be processed under chapter 9. Such persons may be granted leave as delay en route to a reception battalion or other proper installation for overseas shipment.

(7) Who are assigned to an overseas area and do not require BCT or AIT will be moved as follows:

*(a)* If assignment is to the Far East (Korea, Japan, and so forth), Hawaii, or Alaska, the enlistee will be sent to the reception battalion at Fort Leonard Wood, MO. If assignment is to Europe, Middle East, Africa, Central America, or South America, the enlistee will be sent to Fort Jackson, SC.

*(b)* Concurrent travel will be deferred for overseas assignments. Concurrent travel is authorized for continental United States to continental United States assignments only (this does not include continental United States assignments to reception battalion, BCT, AIT, or one station unit training locations).

(8) Who enlist in the RA, regardless of grade or years of service completed, are authorized movement of household goods and transportation of Family members at Government expense (in accordance with the Joint Travel Regulation) from the point of entry or home of record to the first permanent duty station. If enlistment is for an overseas location, approval must be obtained from commander; concurrent travel will be deferred. Movement of Family members and household goods to reception battalion, BCT, or AIT is not authorized. If enlistee is assigned to a school for instruction of 20 weeks or more, enlistee may qualify for movement of dependents and household goods.

*c.* To ensure compliance with the Child Soldiers Protocol to the United Nations Convention on the Rights of the Child on the Involvement of Children in Armed Conflict, enlisted Soldiers under age 18 will not be assigned on a permanent change of station or deployed on temporary duty or temporary change of station to duty stations outside of the continental United States, except Alaska, Hawaii, the Commonwealth of Puerto Rico, or territories or possessions of the United States. Commanders must take all feasible measures to ensure that Soldiers do not take a direct part in hostilities. Nothing in this policy limits the Soldier's inherent right of self-defense.

## Section IV
## Enlistment Processing

## 5–17. Processing former Army prisoners of war

Persons who, while serving as enlisted members of the Army, were held as prisoners of war by governments or other authorities opposing U.S. Forces in the conflict may be eligible to reenter. Release date from prisoner of war status is immaterial in terms of the above definition. Applications for enlistment of former prisoners of war in the RA will be processed as follows:

*a.* A former prisoner of war may be qualified to return in his or her former pay grade and MOS, if so, applicant will be processed and enlisted under chapter 3. Process and enlist such persons as a maximum priority by providing quick and thorough treatment.

*b.* Forward the enlistment application as quickly as possible to the Commander, HRC, where action will be given priority if:

(1) The former prisoner of war is not qualified for enlistment.

(2) The former prisoner of war is not qualified to enlist in his or her former pay grade and MOS.

(3) Applicant requests consideration not covered in this section.

## 5–18. Policy

Integrity of the Selected Reserve will be preserved as far as practical. Members of Selected Reserve will not be solicited to enlist in the RA; ARNG members will not be solicited for the USAR, nor will USAR members be solicited for ARNG. However, data and assistance will be given on a member's request. Recruiters will advise RC applicants for RA or USAR enlistment of the policies below.

*a.* A member of the RC of an Armed Force of the United States who is in an active status will not be processed for enlistment in another component without first having been released from the RC. This policy includes those who are currently in the DEP of another Service. These RC personnel may not be MEPS processed (given a physical) before obtaining RC conditional release. Applicants for USAR enlistments who are members of the RC of another U.S. Armed Force must be processed under AR 140–10, chapter 9, and this regulation (see para 1–11*a*).

*b.* An officer, commissioned or warrant, who is otherwise qualified, may enlist in the RA or USAR. However, as a condition of enlistment, the officer must resign his or her commission. This policy affects all Soldiers initially enlisting into the RA or USAR, or reenlisting with a break in service of 24 hours or more. The statutory entitlement for enlistment under 10 USC 3258 still applies, but the enlistee must resign any existing commission. As a condition of enlistment, a Reserve officer will complete a letter of resignation that will be effective a day prior to his or her enlistment date into the RA. This letter will include a current mailing address as listed on DD Form 1966, so that discharge orders can be mailed from HRC. It is the Soldier's responsibility to have these orders forwarded to him or her. A copy of the resignation letter will be retained in the Soldier's residual packet at the recruiting battalion concerned. Within 5 working days, guidance counselors will mail a copy of the Soldier's DD Form 4 and letter of resignation to: Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303. Recruiters will ensure that officers are made aware of this policy prior to any processing for enlistment into the RA. Under no circumstances will officers be led to believe that they may retain their commission or warrant under the Reserve Dual Component Program.

## 5–19. Request for discharge or clearance from a Reserve Component

When a participating RC member applies for enlistment, DD Form 368 is used to request RC discharge or clearance. This form is valid for 6 months from date signed by unit commander or designated representative for enlistment in MOS, unless the approval authority designates otherwise on DD Form 368. The RC must be notified promptly of a member's intent to enlist in the RA or USAR/ARNG (if a member of another RC). Clearance must be received from proper Reserve authorities before enlistment (see para 5–21).

*a.* For members of units, DD Form 368 is sent to the member's unit commander. DD Form 368 is required for non-unit members. Send to appropriate Control Group. Headquarters, USAREC, or Chief, NGB will publish procedures for non-unit members.

*b.* Enlistment may be accomplished when the approved clearance is returned. If the RC declines to release or discharge the member, he or she will not be processed for RA enlistment. USAR enlistments must comply with AR 140–10.

*c.* If DD Form 368 validity period is less than 6 months, an extension of the limited validity period may be requested by station commander or above within the recruiting battalion if delay was caused by waiver action (includes processing time for OCS/WOFT/band applicants). Telephonic extensions are authorized and must be annotated on the initially approved DD Form 368.

*d.* A member of the ARNG or the Air National Guard may be released for enlistment into the RA or USAR only with the consent of the governor or other authority of the State, commonwealth, territory, or District of Columbia. Such consent must be recorded on DD Form 368.

## 5–20. Applications for enlistment

An application for RA enlistment may be accepted from RC members if applicant meets criteria below by component. In addition to the criteria below, IRR or PS applicants who enlist for membership in a Selected Reserve unit must remain in their unit for a period of at least 6 months before they will be authorized to enlist into the RA.

*a.* Selected Reserve member. An enlisted member of the RC who desires to enlist in the RA, to include the MSO delayed status, may enlist if he or she—

(1) Has successfully completed required IADT, been awarded an MOS, and has returned to his or her RC unit.

(2) Has received clearance from the appropriate approval authority for release.

(3) Has not been alerted for mobilization.

(4) Has not been notified of orders directing involuntary order to AD.

(5) Is currently serving in the RC under a Bonus Program and the commander has initiated recoupment procedures as required.

(6) Is not currently serving on AD (includes IADT, AD for training (ADT), annual training (AT), AD support, AD

for operational support, temporary tour of AD, or Active Guard Reserve (AGR)). Processing of a member, including submission of DD Form 368, will not begin until the member has been released from AD and returns to the parent unit.

(7) Is not within the 60-day period preceding effective date of orders to extend AD for reasons other than AT.

*b.* Members of the IRR who wish to enlist in the RA, including those in an MSO delayed status, must meet criteria in paragraphs 5–21*a*(1), (3), (6), and (7). Approval authority is Army guidance counselor for enlistment of an Army IRR member to RA.

*c.* An ROTC cadet assigned to Control Group (ROTC) or participating in the SMP who desires to enlist in the RA, to include the MSO delayed status, may enlist if he or she—

(1) Has received clearance from the appropriate professor of military science (PMS) or ROTC region commander. DD Form 368 is used for this purpose and it must be in possession of the recruiting officials before processing the cadet for enlistment.

(2) Has obtained a DD Form 368 from the ARNG or USAR unit commander, as well as the appropriate PMS or ROTC region commander, if the cadet is a participant in the SMP.

(3) Has not been alerted for order to AD under a Presidential call-up or a partial or full mobilization.

(4) Has not been notified of orders directing involuntary order to AD.

(5) Is not an ROTC scholarship recipient.

*d.* All other IRR applicants must receive approval from the commander of the appropriate Service components listed, below—

(1) U.S. Navy Reserve: Commander of the Naval District where the person is assigned or to the Chief of Naval Personnel (PERS–3), 1200 Navy Pentagon, Washington, DC 20350–1200.

(2) U.S. Air Force Reserve—

(*a*) Unit members: commander of the enlistee's Reserve unit of assignment.

(*b*) Members of the nonaffiliated Reserve section, the ineligible status, and the inactive status list Reserve section: Air Reserve Personnel Center, 3800 York Street, Denver, CO 80205–3540.

(3) U.S. Marine Corps Reserve: Through the Director, Marine Corps Reserve and Recruitment District, to the commanding officer of the organized Marine Corps unit where the member is assigned.

(4) U.S. Coast Guard Reserve: Commandant, U.S. Coast Guard, 2100 2nd Street, S.W., Stop 7000, Washington, DC 20593–7000.

## 5–21. Notice of enlistment

When a Soldier released under paragraph 5–20 enlists in the RA or USAR/ARNG, the guidance counselor handling the enlistment will notify the proper agency in paragraph 5–22*b*, by forwarding a copy of enlistment orders and a copy of the completed DD Form 4. The notice will permit one of the following:

*a.* The issuance of a discharge of the officer or enlisted Soldier from the losing component.

*b.* The provision of follow-up data for reservists discharged from an RC specifically to permit enlistment in the RA. Forward enlistment orders and a reproduced copy of the DD Form 4 as follows:

(1) For USAR—

(*a*) For unit members, to the Reserve unit where person was assigned. USAR enlistment must comply with AR 140–10, chapter 9.

(*b*) For non-unit members, to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

(2) For U.S. Navy Reserve, to the commander of the Naval District where the person is assigned or to the Chief of Naval Personnel (PERS–312), 9700 Page Boulevard, St. Louis, MO 63132–5200.

(3) For U.S. Air Force Reserve—

(*a*) For unit members, to the commander of the enlistee's Reserve unit of assignment.

(*b*) For members of the nonaffiliated Reserve section, the ineligible section, and the inactive status list Reserve section, to Commander (ARPC/DSMR),18420 E. Silver Creek Avenue, Building 390, MS68, Buckley AFB, CO 80011–9502.

(4) For U.S. Marine Corps Reserve, through the Director, Marine Corps Reserve and Recruitment District, to the commanding officer of the organized Marine Corps unit where the member is assigned.

(5) For U.S. Coast Guard Reserve, to the Commandant, U.S. Coast Guard (G–PE), Washington, DC 20593–0001.

(6) For Army and Air National Guard, to the commander of the unit where the member is assigned.

## Section V
## Special Processing for Enlistment of an Army National Guard Soldier into an Army Reserve Troop Program Unit

## 5–22. General
An ARNG Soldier applying for enlistment into a USAR TPU is considered a PS applicant, but is processed for

enlistment in the USAR under the special procedures outlined in this section. These procedures apply only to an ARNG Soldier enlisting into a USAR unit and are not applicable to ARNG Soldiers transferring to the Individual Ready, the Standby, or the Retired Reserve.

*a.* The purpose of these special enlistment procedures is to implement uniform accessioning procedures for Soldiers moving from an ARNG status to a USAR TPU status without a break in military service, and to ensure the continuity and accountability of the Soldier's official military personnel records.

*b.* Processing under this section will be accomplished through MEPS, or by the recruiting battalion operations section, as appropriate.

## 5–23. Basic eligibility criteria

This paragraph applies only to an ARNG Soldier granted a conditional release, who will remain assigned to the ARNG until the USAR enlistment has been accomplished and verified. Basic eligibility criteria will be in accordance with chapter 3, with the following exceptions:

*a. Medical.* A medical examination will not be required, provided an examination has been conducted within the last 5 years (AR 40–501) that verifies the Soldier met the retention medical fitness standards of AR 40–501 and any additional medical requirements that may have been prescribed for the Soldier's current MOS. Medical examinations and medical history will be verified from the Soldier's military personnel records maintained by the ARNG. If an applicant's retention medical fitness standards cannot be verified, or if the last medical examination is more than 5 years old, then the Soldier must undergo a medical examination under the provisions of AR 40–501.

*b. Body composition and weight control.* The applicant must meet the body fat composition and weight control standards per AR 600–9. No waiver is authorized. Documentation will be provided in packet.

*c. Army physical fitness test.* The ARNG personnel records verify the Soldier has successfully completed a current Army physical fitness test within the last 18 months, or is exempt from administration of the Army physical fitness test, per AR 40–501, because of valid temporary or permanent profile, or has successfully completed the last Army physical fitness test within the limitations of a valid temporary or permanent profile. No waiver is authorized.

*d. Grade.* The enlistment grade determination requirements of chapter 3 are not applicable, as the Soldier's pay grade, rank, and DOR will be the same as that held when the conditional release was approved by the ARNG command.

*e. Years of service.* A Soldier who has attained 20 years of qualifying service for retired pay at age 60 and has been issued a Notification of Eligibility for Retired Pay at Age 60 Memorandum is disqualified for USAR enlistment under this section if the Soldier's total years of all military service (Regular and/or Reserve) exceeds the maximum authorized for the Soldier's grade. No waiver is authorized. Prior to enlistment, an applicant should be counseled that after qualifying for retired pay at age 60, he or she will be removed from USAR TPU participation on attaining the maximum years of total military service per AR 140–10.

*f. Administrative criteria.*

(1) The Soldier's characterization of ARNG service must be honorable, the ARNG discharge must be voluntary, and the Soldier—

*(a)* Is not subject to, or being processed for, involuntary separation from the ARNG for cause under AR 135–178 or NGR 600–200.

*(b)* Has not been barred from reenlisting or extending in the ARNG per NGR 600–200.

*(c)* Upon separation, does not receive a code of RE–3, RE–4A, or RE–4 by the ARNG, per NGR 600–200, chapter 6, section IX.

(2) Has successfully completed initial entry training and has been awarded an MOS.

## 5–24. Processing procedures

Processing procedures for an ARNG Soldier enlisted under this section are dependent on the availability of the applicant's official ARNG file to the recruiting activity and the USAR for accessing data. Where an ARNG Soldier applies for membership in a TPU of the USAR, the following procedures will apply:

*a.* Recruiting officials will request a conditional release (DD Form 368) from the applicant's ARNG command. The request will specify that the purpose of the request is to accomplish a complete discharge from the ARNG (and as a Reserve of the Army) upon enlistment in the USAR, and is not a request for a transfer action. The recruiting activity will obtain the complete official file from the ARNG.

*b.* The following documents will be obtained from the ARNG as certified copies and will constitute a complete official file:

(1) Enlisted record brief.

(2) DD Form 214.

(3) Most recent DD Form 4 or extension.

(4) DA Form 5500 or DA Form 5501, required if Soldier exceeds weight standards.

(5) Soldier's last promotion orders.

(6) Current physical that meets retention standards under provisions of AR 40–501.

(7) Citizenship as verified under paragraph 3–4.

*c.* Where the recruiting activity has access to the applicant's official file, or where the ARNG provides copies of all the documents, then—

(1) The recruiting activity will scan the applicant's entire official ARNG file into electronic records management. DD Form 1966 and the pre-accession interview/pre-enlistment interview (SF 86) will be electronically generated and signed in guidance counselor resource center at time of USAR enlistment. The USAR enlistment agreement will be completed using the DD Form 4 and the guidance counselor resource center Automated Annex and Addendums. After execution, the DD Form 4 will be scanned into electronic records management.

(2) Distribution will be as follows:

*(a)* A paper enlistment packet will not be mailed to Commander, HRC. The electronic record will automatically be transmitted to interactive Personnel Electronic Records Management System and will constitute the official Soldier file. HRC, as well as the USAR unit, will access the Soldier record in interactive Personnel Electronic Records Management System.

*(b)* All copies of the original DD Form 4 and the guidance counselor resource center Automated Annex and Addendums, pre-accession interview/pre-enlistment interview, and copies of MEPS physical (if required) will be provided to the Soldier.

*d.* Where the recruiting activity cannot gain access to the applicant's official file, the Soldier has not completed IADT, or the ARNG cannot provide copies of all of the documents, the applicant must be fully processed through MEPS. In this case the Soldier will be processed in accordance with sections I through VI of this chapter (to include a pre-accession interview/pre-enlistment interview (SF 86)).

*e.* It is mandatory that the losing ARNG command be provided proof of the USAR enlistment as soon as possible to effect timely discharge from the ARNG.

(1) Where a DD Form 368 has been issued, send the original copy, with a copy of the DD Form 4 attached, to the appropriate TAG and send an information copy of the DD Form 368 to the losing ARNG command indicated in item 1.

(2) Where a DD Form 368 has not been issued, send a reproduced copy of the DD Form 4 to the losing ARNG command.

## Section VI
## Special Processing for Enlistments in Overseas Commands

### 5–25. General

This section prescribes policy for processing and determining enlistment eligibility for applicants who apply in overseas commands. Major overseas commanders exercise supervision and control of processing of applicants within their commands. Mental and medical examinations will be administered at military activities or at MEPS. Send further enlistment inquiries to Deputy Chief of Staff G–1 (DAPE–MPA), 300 Army Pentagon, Washington, DC 20310–0300. Processing of applicants where USAREC maintains recruiting stations or conducts recruiting activity will be in accordance with this regulation.

### 5–26. Authority

Overseas commanders are authorized to enlist applicants, with or without PS, who are residing in area of overseas command, if applicants do not have concurrent status as nationals of the country where enlistment is being made and that country has no law that prohibits such enlistments.

### 5–27. Processing

*a.* Overseas commanders may assign enlistees to their command who—

(1) Are U.S. citizens.

(2) Do not require BCT, AIT, or one station unit training.

(3) Are eligible for assignment within the command under AR 614–30.

(4) Can be used in the command in which they are enlisted.

*b.* Persons ineligible to remain in the command will be processed under AR 614–200.

*c.* If reassignment of enlistees to the continental United States for training is necessary, overseas commanders will ensure that enlistment is completed in time to allow processing, travel, and entry into BCT by the required date to fulfill any option for which applicant enlisted. Allow at least 3 days for reception battalion processing after arrival in the continental United States.

**Section VII**
**Delayed Entry Program**

**5–28. General**

*a.* The CG, USAREC, is authorized under this section to—

(1) Organize and administer the Army Reserve Control Group (DEP) to which enlistees will be assigned.

(2) Enlist NPS applicants in the DEP for periods determined by the CG, USAREC, not to exceed 365 days.

*b.* Enlistment in the DEP is authorized—

(1) For qualified applicants who have agreed to enlist in the RA or into the Selected Reserve for one of the enlistment programs given in chapter 9.

(2) If a vacancy is obtained through REQUEST before DEP enlistment.

(3) For applicants without military status. This includes those members of an RC who did not attend any portion of IADT and are being released by the RC to process for the RA.

*c.* An applicant with a prior MSO may have a REQUEST reservation made and be considered in a delayed status. However, PS applicants will not be enlisted in the DEP. The CG, USAREC, will have a delayed military status program to allow advance REQUEST reservation for these individuals. All qualifications for RA enlistment, including all MEPS processing, must be completed prior to reservation being made. Applicant must be processed in the same manner as if they were entering the DEP.

*d.* Applicants with PS will have DD Form 4 completed on accession date.

*e.* DA Form 4187 will be completed according to instructions by USAREC for PS applicants.

**5–29. Enlistment and separation authority**

*a.* DEP and MEPS commanders are delegated authority under AR 601–270 to—

(1) Implement DEP enlistments.

(2) Issue RA/USAR orders.

*b.* The recruiting battalion commander is delegated the authority to separate DEP enlistees as directed by the CG, USAREC, or DCS, G–1. In addition, recruiting battalion commanders may void enlistments according to AR 635–200 or AR 135–178, when appropriate.

**5–30. Eligibility qualifications**

Before enlistment in the DEP, applicants must—

*a.* Meet basic eligibility requirements in chapter 2.

*b.* Be processed under requirements of chapters 4 and 5.

*c.* Meet specific eligibility and processing requirements for enlistment program for which they are applying (see chap 9 for enlistment programs).

**5–31. Terms of service and authorized pay grades**

*a.* Upon initial DEP enlistment, applicant incurs an 8-year MSO.

*b.* RA enlistment agreements authorized will be for terms discussed in chapters 2 and 3. Variable enlistment length is authorized for each term except an 8–year enlistment agreement. Variable enlistment length is the total weeks and days of BCT plus AIT that is completed prior to the start of an enlistee's term of service, that is, 3 years plus training. USAR enlistment will be for a period authorized by the USAR enlistment option.

*c.* According to a Soldier's enlistment agreement, memorialized by DD Form 4, DEP enlistees, as members of the Ready Reserve, who refuse to meet their enlistment obligation, may be ordered to AD at any time, without consent, to complete a total of 24 months of AD service. RA under the enlistment agreement may be ordered to AD in their Reserve status for a period of 2 years.

*d.* The NPS enlistment in the DEP will be under chapter 2.

*e.* The PS entry grade will be determined by chapter 3, based on delayed status reservation date.

**5–32. Processing procedures**

*a.* The DEP applicants will be processed under chapter 5, sections I through VI.

*b.* Applicants requiring waiver of any disqualification for RA/USAR enlistment will not be enlisted until a waiver is processed and approved, as specified in chapter 4.

*c.* The Statement for Enlistment-Delayed Entry Program (annex to DD Form 4) will be completed.

*d.* The NACLC will be initiated on all NPS and PS applicants. PS applicants currently holding clearance eligibility are not required to undergo NACLC.

*e.* If the DEP member is to be extended in the DEP, they must consent in writing.

*f.* The DEP enlistee who erroneously or fraudulently enlisted by reason of misconduct that occurred prior to DEP

enlistment and requires a waiver per paragraphs 4–13b(2) or 4–13c(4), respectively. If a waiver is not approved under the aforementioned policy, process for separation under AR 135–178.

*g.* As directed by the CG, USAREC, any DEP enlistee who reports for AD and declines enlistment will be referred to the guidance counselor.

*h.* DEP enlistees who report for shipment to AD, and who no longer qualify for their enlistment option, will be offered another option for which they qualify. Enlistees who select an MOS that is a priority MOS will be offered the current incentive at time of renegotiation of their contract. If no priority MOS is available for the DEP, a waiver may be requested through DAPE–MPA to retain the incentive from the enlistee's original contract.

## 5–33. Extensions in the Delayed Entry Program

*a.* The recruiting battalion commander, in coordination with Recruiting Operations, G–3 at Headquarters, USAREC, may authorize extensions in the DEP. Extensions may be approved for a period not greater than a DEP period of 365 days. These extensions are authorized only for the following situations—

(1) Processing separation actions, as authorized by paragraph 5–36.

(2) Disqualifying temporary medical conditions occurring after DEP enlistment.

(3) Awaiting results of civil court action for offenses occurring after DEP enlistment.

(4) Processing waivers of civil court convictions or adverse dispositions occurring after DEP enlistment.

(5) Awaiting results of an action started by an enlistee to obtain release from the DEP. When enlistee starts such action, advise them that they forfeit rights to the original option. Also, they must acknowledge, in writing, that they have been advised of such forfeiture.

(6) For other valid reasons determined by the recruiting battalion or CG, USAREC.

*b.* The DEP enlistees who become disqualified for RA/USAR enlistment must be processed for waiver before enlistment. If waiver was granted for applicant to enlist in the DEP and later convictions or disqualifications occur, waiver must be resubmitted and approved before RA/USAR enlistment.

*c.* Additionally, the CG, USAREC, may authorize a categorical extension program and approve individual extensions of not more than 90 days to persons enlisted under the DEP who require time, in addition to the 365-day delayed entry period, to complete requirements for high school graduation. This approval authority may be re-delegated to a level no lower than a recruiting battalion commander.

## 5–34. Special provisions of the Delayed Entry Program

*a.* The recruiting battalion commander or the CG, USAREC, may direct separation of DEP enlistees who meet separation criteria of AR 135–178.

*b.* The DEP enlistees who were high school seniors when they enlisted in the DEP, and who receive a college scholarship after DEP enlistment, may apply for separation to accept such scholarship (see AR 135–178, paragraph 4–4, as the applicable authority for such separation).

*c.* The DEP enlistees who become disqualified may be extended in the DEP and a waiver processed if authorized by chapter 2 or 3. Request for waiver will be submitted and entry into the RA or Selected Reserve will be held pending decision on waiver request. Persons must agree to extension in the DEP for waiver processing.

*d.* Send notification of DEP enlistees who, before RA/USAR enlistment, are found to have enlisted erroneously or fraudulently, to the recruiting battalion commander for disposition as established by the CG, USAREC.

*e.* In any other instance when a separation appears warranted, send notification to the recruiting battalion commander for disposition as established by the CG, USAREC.

*f.* The DEP enlistee who previously requested separation from the DEP may withdraw the request and voluntarily agree to enlist in the RA.

## 5–35. Promotion opportunity through referrals

*a.* Each DEP enlistee or RA/USAR applicant will be advised that he or she—

(1) Has the chance to be promoted to E–2 by providing applicant referrals.

(2) May receive credit for the referrals.

(3) Will receive credit for the referrals once the applicants referred have enlisted in the DEP, RA, ARNG, or USAR.

*b.* Recruiters will forward referral sheets to the Army guidance counselor, together with the referred applicant's information.

*c.* The Army guidance counselor, after confirming the referrals, will—

(1) Refer to AR 601–210, paragraph 2–18, in the DD Form 1966, remarks section, if applicant is qualified for promotion.

(2) Place referral sheets in enlistment packet being forwarded to the reception battalion.

## Section VIII
## Delayed Entry Program Mobilization Asset Transfer Program

### 5–36. Policy
*a.* No applicant with prior military service may be enlisted into the DEP.

*b.* If a Soldier in the DEP is ordered under mobilization to report for AD, or if circumstances require the transfer to another Control Group within the USAR, then the CG, USAREC, will comply with instructions issued by DCS, G–1.

### 5–37. Procedures
When a Soldier of the DEP is to be reassigned to another Control Group instead of separated, the CG, USAREC, will issue a reassignment order. The Soldier will be provided copies of the order. USAREC will send the following items to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303:
*a.* Reassignment order.

*b.* Original DEP enlistment packet.

*c.* Member's official file, if available.

## Section IX
## Courtesy Enlistment

### 5–38. General
*a.* Courtesy enlistments for RA or USAR within the continental United States may be authorized only in exceptional cases. Recruiting battalion commanders may authorize such enlistments when either of the following applies:

(1) It is in the best interest of the U.S. Army.

(2) It will prevent severe personal hardship to applicant or applicant's Family.

*b.* Overseas courtesy enlistments are authorized only in extreme cases. Approval from the recruiting battalion commander responsible for the country is required before applicant's departure.

*Note.* A courtesy enlistment occurs when the enlistment packet is completed by one recruiter and transmitted to the MEPS for processing, but due to exceptional circumstance, the applicant relocated to another area where the enlistment process was completed as a courtesy to the original recruiter.

### 5–39. Procedures
*a.* Recruiting battalions must coordinate at least 15 days before the applicant's scheduled AD date.

*b.* Guidance counselors and other recruiting personnel must ensure that applicants accepting assignment reservations or entering the DEP understand that they must return to the same MEPS for AD processing unless a courtesy enlistment is authorized.

## Section X
## Special Processing for Partially Disabled, Combat-Wounded Veterans

### 5–40. General
Waiver requests to determine if veteran with physical limitations can serve in any available specialty will be approved or disapproved by the CG, HRC, for RA and USAR applicants, for a combat-wounded veteran who was partially disabled as a result of wounds received in action while a member of the Army.

*a.* Requests will be submitted only for veterans who—

(1) Meet all other enlistment requirements.

(2) Are physically qualified for general military service except for their specific combat-incurred disability.

*b.* Applicants must be capable of caring for their own needs in an unaided manner. They must be physically capable of performing useful service and cannot be expected to require hospitalization or incur lost time due to their disability.

*c.* Persons permanently medically retired will not be processed for enlistment. Applicants who were separated from AD (not medically retired) without compensation, and were granted veterans disability compensation for their disability, may waive this compensation through VA, if determined medically fit per AR 40–501.

### 5–41. Requests for waivers
Submit waiver requests on a memorandum prepared in accordance with chapter 4. Such requests will be accompanied by—

*a.* A MEPS physical examination.

*b.* A report of any subsequent and present treatment.

*c.* A report of X-ray, orthopedic, surgical, medical, or other consultations.

*d.* A statement of opinion by a medical officer of the degree of the disability's incapacitation. The statement will include whether or not a prosthesis being used is satisfactory.

## 5–42. Processing

On receipt of the decision on the waiver request and instructions from the approving authority, notify applicant to report to the proper MEPS for further processing.

*a.* For RA, send applicant from the MEPS to the training activity at Government expense. Applicant will be classified at the training activity in an MOS in which he or she can reasonably be expected to perform satisfactory service with full consideration of the physical handicap. For USAR, send applicant to the unit of assignment, if no further school training is required.

*b.* To give the medical officer enough data to make a judgment, classification officer will analyze each primary or potential MOS proper for the applicant. The classification officer will then send the recommendation and applicant to the medical officer. A medical officer will make the final decision. The medical officer and the applicant then will select an MOS which they consider the applicant can capably perform. Special consultation reports directed by the CG, USAREC, or DARNG, will be made at this time.

*c.* Applicants physically and otherwise qualified for enlistment will be enlisted at the training activity. Applicants found ineligible to perform in an MOS will be rejected and returned at Government expense to the applicant's home.

(1) After obtaining disability waiver from the approving authority, the applicant will sign a waiver of compensation. The waiver will be endorsed by the enlisting activity and sent to the commander of the Veterans Administration regional office or to Director, Retired Pay Operation, Defense Finance and Accounting Service, 8899 East 56th Street, Indianapolis, IN 46249–0002.

(2) A notation will be made in the DD Form 1966, remarks section, that such a letter has been sent to the Veterans Administration or Retired Pay Operation, Defense Finance and Accounting Service.

(3) The enlistee will be told that, on separation from military service, he or she may submit a claim for such compensation.

## 5–43. Training and assignments

Persons enlisting as partially disabled veterans will be trained in the MOS for which enlisted. If already trained, veterans will be assigned to duty in that MOS.

## 5–44. Record entries

*a. Enlisted record brief.* Proper assignment limitations will be recorded on enlisted record brief, as prescribed in AR 600–8–104.

*b. DD Form 1966.* The DD Form 1966 Remarks section will reflect assignment limitations.

## Section XI
## Special Processing for Persons Receiving Disability Pensions or Compensation from the Veterans Administration

## 5–45. General

Persons receiving disability pensions or compensation from the Veterans Administration for any reason will be required to waive the pension or compensation for any period of military service. Veterans Administration compensation will be waived on date of enlistment into the RA or the USAR. For the USAR, this period of military service is IDT, AD, or ADT.

## 5–46. Request for waiver

Persons requesting waivers under this section must have all medical history and compensation annotated on DD Form 2807–1 or DD Form 2807–2.

## 5–47. Letter of waiver of compensation

The person will execute a waiver of compensation in letter format, which states they understand they will not receive any further compensation from the U.S. Army. This waiver will be endorsed by a commissioned officer to the Veterans Administration regional office having jurisdiction over the person's claim. A note will be made in DD Form 1966, remarks section that such letter has been forwarded to the Veterans Administration.

## Section XII
## Special Processing for Members Removed from the Temporary Disability Retired List

## 5–48. General

As the result of a periodic physical examination, a former Army enlisted member on the TDRL may be determined physically fit for return to duty. If so, the member may be enlisted in the RA or USAR when his or her name has been

properly removed from the TDRL, and if requirements of this section are met. Regardless of RE Code, Soldiers being removed from TDRL will be processed in accordance with paragraph 5–51.

## 5–49. Enlistment within 90 days of removal from the temporary disability retired list

Enlistments within 90 days of removal from the TDRL after being found fit for duty will be made without regard to basic enlistment qualifications for PS persons described in chapter 3 or disqualifications described in chapter 4, except as provided below:

*a.* Waiver is required if applicant is subject to any of the waiverable disqualifications in chapter 4, but this is not applicable if all convictions or adjudications occurred, or pleas were entered, before applicant's placement on the TDRL.

*b.* Such persons will be enlisted in the permanent pay grade held on the day before the date their names were placed on the TDRL.

*c.* Enlistment of such persons will be made without medical examination if—

(1) No intervening illness or injury since the examination resulted in removal from the TDRL.

(2) The person signs a statement to that effect on DA Form 3283 (Statements of Member Removed from the Temporary Disability Retired List).

*d.* Persons who have incurred an illness or injury since the examination resulting in their removal from the TDRL must undergo a complete medical examination. They must qualify for enlistment under medical standards given in AR 40–501. A person does not have to meet medical standards for the specific disability that caused his or her name to be placed on the TDRL.

*e.* Persons will be enlisted for 3 years in the RA. Enlistment must be in the same component from which the Soldier was placed on TDRL. MEPS will complete DD Form 4 and publish enlistment orders. Assignment for MOS qualified applicants, regardless of rank, will be obtained from HRC. Enlistment will be accomplished in the same manner as all other PS enlistments. DD Form 1966 is required and a REQUEST reservation will be made. For those applicants not MOS qualified or who require BCT or AIT (if placed on TDRL before completion), BCT and AIT may be obtained via normal REQUEST reservation. For USAR, assignment to a Selected Reserve unit is required.

## 5–50. Enlistment beyond 90 days after removal from temporary disability retired list

Former enlisted members who do not reenlist in their respective component within 90 days of removal from the TDRL must meet all PS standards and qualifications at time of enlistment.

## 5–51. Information to applicants

*a.* Applicants will be told that enlistment under this section is not an exemption from retention standards in effect at the time the person applies for reenlistment. Enlistment may be accomplished according to 10 USC 1211a.

*b.* Applicant records will be screened carefully so that—

(1) Applicants will be aware of conditions under which their enlistments are made.

(2) No undue hardship will be imposed at a later date as a result of their decision to enlist.

*c.* Applicant will be advised that they may request consideration to next higher grade if they were so entitled or eligible while on TDRL.

## 5–52. Information regarding persons who waive entitlement to disability retirement or severance pay

Persons enlisted under this section will be required, before enlistment, to waive present entitlement to disability retirement or severance pay. These persons will not be denied severance or disability retirement compensation when ultimately separated or retired from service. At that time, the disqualifying defect will be reevaluated under physical standards in effect when the defect was first determined and standards in effect at the time of final evaluation. The Soldier will be separated or retired under the standards most advantageous to him or her. The waiver procedures in paragraph 5–47 also applies to persons identified section.

## Section XIII
## Special Processing for Enlistment of Immigrant Aliens

## 5–53. General

Aliens who are lawfully admitted into the United States for permanent residence under 8 USC 1101(a)(20) are eligible to enlist in the RA or USAR if they meet criteria in chapter 2 or 3. However, these applicants may not enlist for any MOS, assignment, or option that requires a security clearance of Secret or above, except as provided in AR 380–67. Guidance counselors will place special emphasis on the SF 86 to ensure all questions, not just conduct questions, are reviewed with each applicant.

## 5–54. Processing

Procedures to process immigrant aliens for enlistment are the same as for U.S. citizens. For aliens enlisting for an MOS

not requiring a security clearance, initiate a request for NACLC, the same as a U.S. citizen. Recruiters and guidance counselors should advise all non-U.S. citizen applicants to bring a completed USCIS Form N–400 (Application for Naturalization) when they ship to BCT if they would like to apply for expedited U.S. citizenship processing. The USCIS Form N–426 (Request for Certification of Military or Naval Service) will be signed at the reception battalion. Each BCT location has USCIS officers present to assist in the naturalization process.

## Section XIV
## Applicants Injured or Ill During Processing

### 5–55. General

*a.* Applicants may suffer illness or injury at an Army or USAR facility or MEPS while conducting enlistment processing. If so, applicant may be given emergency medical care as authorized by AR 40–3.

*b.* Applicants may suffer illness, injury, or death while at any Army or USAR facility or MEPS for enlistment processing. If so, they or their survivors may be entitled to—

(1) Government benefits, such as death gratuity (10 USC 1475(a)(5)) and burial expenses (10 USC 1481 and 1482) that are administered by the Army.

(2) Servicemen's Group Life Insurance (38 USC 106(b)), which is administered by the Veterans Administration.

### 5–56. Determination of entitlements

The Government agency designated by law or regulation determines entitlements to benefits. A decision is made based on review of all available information on applicant's location and status at time of injury, illness, or death. No assurance can be given to applicants or their survivors that they are entitled to benefits. They should be advised to contact the agencies listed below to ascertain entitlement benefits.

*a.* Entitlement to death gratuity is determined by Commander, Defense Finance and Accounting Service (FIN–CY–AB), 8899 East 56th Street, Indianapolis, IN 46249–0002.

*b.* Entitlement to payment of funeral and burial expenses is determined by the CG, HRC. Submit requests to Commander, U.S. Army Human Resources Command, Casualty and Memorial Affairs Directorate, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

*c.* Application for decision on entitlement to veteran benefits may be made to any Veterans Administration assistance or regional office.

*d.* AR 40–400 provides that applicants for enlistment who suffer acute illness and injuries while awaiting or undergoing enlistment processing at MEPS, or while at Army or USAR facilities, may be furnished emergency medical care at Government expense. Emergency hospitalization is included. Commanders of medical facilities will process bills for civilian medical care provided by civilian medical facilities.

*e.* Application for determination of benefits available to survivors of deceased applicants from the Social Security Administration should be made to the nearest Social Security Administration Office.

### 5–57. Casualty reports

The Army Casualty System (see AR 600–8–1) applies to applicants who die while en route to, from, or at a place for final acceptance or entry on AD or ADT with the ARNG or USAR.

### 5–58. Instructions to recruiting battalion commanders

The CG, USAREC, issues instructions to recruiting battalion commanders on their responsibilities concerning injured, ill, or deceased applicants.

### 5–59. Use of training pay categories

*a. General.* A complete listing and description of training pay categories (TPCs) can be found in AR 140–1. This paragraph relates only to TPCs of applicants initially enlisting in the USAR. It should assist recruiting activities by clarifying policies outlined in these references. The prime use of TPCs by recruiting activities is to establish applicant's eligibility to attend paid training assemblies while awaiting entry on IADT. Subparagraphs below reflect current policy and define eligibility criteria for either pay or nonpay status while awaiting entry on IADT.

*b. Training pay determination.* Pay category P (without pay) option, when IADT is not within 270 days of accession, will not be used without prior approval from Chief, Army Reserve (DAAR–OP), 2400 Army Pentagon, Washington, DC 20310–2400, as required by AR 140–1.

### 5–60. Training pay categories and programs

Applicants may enlist in any one of the following TPCs listed below:

*a. Training pay category P (with pay).* Members enlisted or transferred into TPC P (with pay) are authorized pay and required to attend regularly scheduled individual drill training periods while awaiting entry on IADT. On enlistment, the persons below will be placed in pay category P—

(1) Currently in high school, high school seniors, and graduates must enlist within 270 days prior to entry on IADT, are authorized up to 36 paid individual drill training periods (9 months).

(2) Currently in high school, high school seniors and graduates, and ROTC- or SMP- potential participants must enlist within 180 days prior to entry on IADT, are authorized up to 24 paid individual drill training periods (6 months).

(3) Non-high school graduate; including those with GED and students currently in high school enlisted within 90 days prior to entry on IADT, are authorized up to 12 paid individual drill training periods (3 months).

*b. Training pay category P (without pay).* Members who are enlisted in TPC P (without pay) are not initially authorized to receive pay for attendance at individual drill training periods. However, they may be voluntarily transferred into TPC P (with pay) when they are within a specified period of entry on IADT and on approval of the unit commander.

(1) With approval of the unit commander, a high school senior or graduate, 17 through 25 years of age who enlists within 270 days prior to entry on IADT, may be placed in TPC P (without pay). This option may be used when the member will be unable to attend scheduled individual drill training periods before entry on IADT. The member may be voluntarily transferred into TPC P (with pay) on approval of the unit commander. If transferred to TPC P (with pay), up to 36 paid individual drill training periods are authorized (9 months).

(2) With approval of the unit commander, an ROTC or SMP potential participant, through 25 years of age, must enlist within 180 days prior to entry on IADT. They may be placed in TPC P (without pay). This option may be used when the member will be unable to attend scheduled individual drill training periods before entry on IADT. The member may be voluntarily transferred into TPC P (with pay) on approval of the unit commander. If transferred into TPC P (with pay), up to 24 paid individual drill training periods are authorized (6 months).

(3) Currently in high school, high school seniors, and graduates, 17 through 25 years of age, enlisting more than 270 days before entry on IADT, will be placed in TPC P (without pay). When the applicant is within 270 days of entry on IADT, the member may be voluntarily transferred into TPC P (with pay) on approval of the unit commander. If transferred into TPC P (with pay), up to 36 paid individual drill training periods are authorized (9 months).

(4) High school seniors and graduates, 26 through 34 years of age, enlisting more than 180 days before entry on IADT, will be placed in TPC P (without pay). When within 180 days of entry on IADT, the member may voluntarily transfer to TPC P (with pay) on approval of the unit commander. If transferred to TPC P (with pay), up to 24 paid individual drill training periods are authorized (6 months).

(5) The non-high school graduates, including those with GED diplomas and students currently in high school, may be enlisted into the Alternate Training Program up to 270 days before entry on IADT. Those enlisting more than 90 days before entry on IADT will be placed in TPC P (without pay). When within 90 days of entry on IADT, the member may be voluntarily transferred into TPC P (with pay) on approval of the unit commander. If transferred into TPC P (with pay), up to 12 paid individual drill training periods are authorized (3 months).

(6) All NPS applicants enlisting in the USAR with concurrent assignments to Control Group (AT) of the IRR will be placed in TPC P (without pay). They will remain in TPC P (without pay) until entry on IADT when they will be transferred to TPC F.

*c. Standard Training Program.*

(1) To enlist initially in the USAR under the Standard Training Program an NPS applicant must—

*(a)* Enter on IADT.

*(b)* Successfully complete a BCT and AIT Program.

*(c)* Qualify in an MOS.

(2) Length of time that the person is required to remain on ADT depends on the MOS in which he or she is to be trained. However, minimum period of time required on IADT is 12 weeks (10 USC 12103(*d*)).

*d. Alternate Training Program.*

(1) To enlist under the Alternate Training Program, applicant must enter on IADT to undergo the common BCT program. On successful completion of BCT, the member will be released from IADT. He or she will return home and commence training with the unit of assignment in a paid drill status. Within 1 year of the last day of separation from IADT (BCT), the member again will enter on IADT to complete AIT for MOS qualification.

(2) The length of time the person must spend on IADT while undergoing AIT depends on the MOS in which he or she is to be trained. The minimum period of time on IADT (BCT and AIT) must total at least 12 weeks for the person to be considered deployable.

(3) Unit status reports will reflect exact deployability status.

(4) The program is limited to applicants who—

*(a)* Cannot complete BCT and AIT during one continuous IADT period because of school or seasonal employment.

*(b)* Enlist for 6 or 8 years in a Selected Reserve (8 x 0 or 6 x 2 option). The 4 x 4 and 3 x 5 options are not authorized with the Alternate Training Program.

*(c)* Meet basic eligibility requirements for enlistment under chapter 2.

(5) Applicants will be enlisted in either TPC (with or without pay) under paragraph 5–64. On return from first IADT

(BCT), the member will be placed in TPC Q. The TPC for the second IADT period (AIT) is U. On completion of the second IADT period (AIT), the member will be placed in TPC A.

(6) BCT reservations will be made through REQUEST at the time of enlistment. REQUEST will identify MOSs available for this program.

(7) Both periods, BCT and AIT, are considered IADT. Time in grade for promotion to pay grade E–2 begins on entry on to first ADT period (BCT). Enlistees may not be promoted to pay grade E–2 until 180 days after entry into BCT. Pay grade on initial enlistment will be prescribed in chapter 2.

(8) Between the two periods of ADT, the person will receive training in the intended MOS through supervised on-the-job training, exportable training packets, or USAR schools. This training will not qualify the person for the MOS, but is intended to reduce AIT attrition on his or her return to the AD training base.

(9) AIT reservations for enlistees under this program will be requested from the guidance counselor by the unit commander as soon as possible but not later than 6 months after persons complete BCT.

(10) Enlistees for this program may not take part in AT before completing BCT. At the discretion of the unit commander, enlistee may attend AT between the period of BCT and AIT, provided it does not conflict with high school class attendance.

*Note.* a) 8 x 0 is an 8 year enlistment in a Selected Reserve unit with no remaining service the IRR. b) 6 x 2 is a 6 year enlistment in a Selected Reserve unit with a 2 year obligation in the IRR. c) 4 x 4 is a 4 year enlistment in a Selected Reserve unit with a 4 year obligation in the IRR. d) 3 x 5 is a 3 year enlistment in a Selected Reserve unit with a 5 year obligation in the IRR.

## Section XV
## National Agency Check with Local Agency and Credit Check

### 5–61. Policy
DOD 5200.2–R and HSPD 12 requires all accessions entering the RA, USAR, or ARNG to undergo a NACLC investigation. Additional discussion of this requirement is found in paragraph 2–14.

### 5–62. Title
DOD 5200.2–R requires that all applicants for appointment, enlistment, and induction of each member of the Armed Forces or their RCs be subject to the favorable completion of a personnel security investigation.

## Section XVI
## Processing Procedures for Applicants Found Positive for the Human Immunodeficiency Virus

### 5–63. General
This section provides policy and procedures related to the ID, processing, and disposition for RA, USAR, and ARNG applicants for enlistment confirmed to be HIV positive.

### 5–64. Policy
DA medical, manpower, and personnel policies related to HIV are intended to reflect current knowledge of the natural history of HIV, the risk to the infected person incident to military service, the risk of transmission of the disease, the effect of infected personnel on the Army units, and the safety of military blood supplies.

### 5–65. Procedures
During medical processing at MEPS, a blood sample is taken. A portion of the blood sample will be sent to a civilian laboratory under contract to the Government for testing. First, the lab will use a screening test called "ELISA," sometimes referred to as "EIA." This test is overly sensitive to ensure actual HIV infections are detected. Therefore, those detected as positive on the screening test will be administered a confirmatory test called the "Western Blot." This test is highly reliable but too expensive to use as a screening test. The lab will notify the MEPS with test results electronically or by telephone. The MEPS will notify the recruiting battalion commander of only those positive confirmed by the Western Blot Test.

*a.* Upon notification from the lab of a positive Western Blot Test, MEPS will forward a registered letter to the individual telling him or her that the MEPS physician wants to consult with him or her on the results of the medical examination administered at the MEPS, and requesting him or her to contact the recruiter within 10 days. The recruiter will schedule a consult with the MEPS and arrange transportation. At the same time, a letter will be forwarded to the recruiting battalion commander addressed "EXCLUSIVE FOR" and marked "FOR OFFICIAL USE ONLY." The exact wording of the letter may vary depending on the individual's status (for example, enlisted, previously disqualified but subsequently detected as HIV positive, qualified not enlisted, and so forth). Regardless of the individual's status, the recruiting battalion commander must ensure the following actions are taken:

(1) Notify the individual's recruiter or, if unavailable, the station commander (or designated individual such as,

company commander of first sergeant) that a letter has been mailed and that the individual will be calling to arrange transportation to the MEPS.

(2) Ensure that recruiter is aware of proper procedures.

(3) If the recruiter is unavailable to escort the individual or, if in the judgment of the battalion commander the recruiter should not be the escort, then the battalion commander will designate another responsible NCO or officer to be the escort. The battalion commander must use prudent judgment when selecting the individual for what could be very sensitive duty. If at all practical, the trip should be timed to preclude an overnight stay or long delay at MEPS. The MEPS will be ready at the scheduled time.

(4) After the individual has seen the MEPS physician, the guidance counselor will cancel the reservation for training. The recruiting battalion operations section will initiate DEP separation action. For USAR members, the MEPS will provide a letter to the guidance counselor explaining that the individual has a disqualifying medical condition that existed prior to service and must be discharged. This letter and the individual's records will be forwarded to the TPU commander. The envelope will be marked in the lower left hand corner "EXCLUSIVE FOR."

(5) If the individual fails to respond and the MEPS can verify by return receipt the individual had received the letter, or the individual refuses to go to the MEPS, MEPS will send a second letter to the individual. This letter, with a fact sheet on HIV, will tell the individual he or she is HIV infected, disqualified for military service, and encouraged to seek professional medical assistance from a physician or clinic. At the time the individual's letter is mailed, MEPS will send the recruiting battalion commander a letter requesting the individual be discharged. For DEP enlistees, a DEP separation will be initiated and the training reservation will be cancelled; for USAR and ARNG members, the training reservation will be cancelled and the MEPS letter of notification and the enlistee's records will be forwarded to the TPU and ARNG unit commander.

(6) If the individual does not acknowledge receipt of the initial letter, the MEPS will request assistance in locating the individual from the recruiting battalion commander. The recruiter and/or station commander or first sergeant will attempt to obtain a current address or, in the event the individual cannot be located, the last known address.

(7) Guidance counselors will be advised that the MEPS medical section will retain the original MEPS physical examination until laboratory results have been received. The medical section will provide a photocopy for contracting purposes. Upon receipt of results from the lab, the medical section will enter the "negative" results in DD Form 2808 and return it to the guidance counselor. For "positive" results, the MEPS will annotate DD Form 2808 with the results and deliver a reproduced copy to the guidance counselor upon completion of the chief medical officer's consultation with the individual or upon the MEPS mailing the second letter to the individual. Once the DEP enlistee has been separated from the DEP, a copy of the separation order will be given back to the MEPS. The original MEPS letter will be forwarded with the packet to the TPU commander.

*b.* The procedures described above apply to all persons processed by USAREC. Policy and procedures relative to in-service retention and civilians are prescribed by HQDA under separate regulations.

*c.* Because of the sensitivity of this disease and the impact on individuals, total confidentiality is mandatory.

*d.* Questions or request for information relating to the Army policy on HIV will be directed to Deputy Chief of Staff, G–1 (DAPE–HR–PR), 300 Army Pentagon, Washington, DC 20310–0300 (through appropriate chain of command).

*e.* Under no circumstance will recruiters annotate or otherwise code any documentation that is maintained at the recruiting station level that reflects HIV results. Appropriate annotation for referring to disqualification for HIV is the same as for any other medical condition. Example of appropriate entry is "Permanent medical disqualification" or "Permanent medical disqualification-no medical waiver authorized." No mention of reason is authorized.

## Section XVII
## Conducting Recruiting Activities in Foreign Countries and Transmission of Recruiting Information to Individuals in Foreign Countries

### 5–66. General
This section prohibits conducting recruiting activities in foreign countries unless authorized by Status of Forces agreements, or international agreements or treaties. Also prohibited is the transmission of recruiting information to individuals in foreign countries who are not entitled to enlist.

### 5–67. Replies to inquiries
When inquiries are received from an ineligible foreign individual, the individual will be advised as follows: "Sending recruitment information into a foreign country to other than American citizens, members of the Department of Defense, and diplomats without the consent of the Government of the country concerned, is strictly prohibited. In view of the above policy, I regret that I cannot give you any further information regarding service in the U.S. Army."

**5–68. Aliens applying in person at recruiting stations in the United States or in locations overseas where recruiting stations operate**

Paragraph 5–71 does not prohibit providing information to applicants who are authorized to enlist and meet the citizenship criteria of this regulation. Care should be taken not to allow information to be transmitted to anyone in countries that prohibit enlistment contracts to be executed within their borders. Furthermore, no unsolicited recruiting material or applications for enlistment may be sent to persons in foreign countries.

**Section XVIII**
**Pre-Service Alcohol and Drug Testing**

**5–69. General**

This section provides the administrative policy for the pre-service alcohol and drug-testing program (see 10 USC 978).

**5–70. Policy**

Each applicant for enlistment will be tested for the presence of alcohol and drugs at the time of physical examination. Any applicant who refuses to submit to this test will not be allowed to continue processing or to enlist (no exceptions).

**5–71. Procedures**

*a.* Applicants will be tested for the presence of alcohol and drugs as part of their physical examination. The initial analysis of each specimen requires at a minimum 72 hours for a result to be available. No further action is required for those applicants whose specimen is reported negative. Applicants whose specimen is positive during the initial analysis will have their specimens verified positive or negative. This process takes approximately 21 days. It is important to note that not all specimens found positive by the initial drug analysis are always confirmed positive. Various lawful substances and foods sometimes provide a positive indication; therefore, no conclusion should be reached until laboratory results have been received.

*b.* Applicants may be enlisted into the DEP/DTP/delayed status/ARNG pending the result of drug tests; however, they will be informed prior to enlistment that if their test is confirmed positive they will be discharged. The PS applicants enlisting into the RA who have been separated from AD for 6 months or fewer are not required to be tested for the presence of alcohol or drugs; however, these applicants may eventually be tested by their gaining units per AR 600–85 and AR 635–200.

*c.* Applicants who have a confirmed positive lab result will be discharged (separated) from the DEP or USAR if already enlisted (see AR 135–178). Recruiting battalion commanders will ensure DEP enlistees are informed of their separation. Members of the USAR will be discharged due to conditions existing prior to service according to AR 135–178.

**5–72. Disposition of records**

Residual files on DEP, USAR, or ARNG members will be maintained in accordance with USAREC or ARNG regulations; however, cases involving separation for drug use will be maintained for not fewer than 3 years.

**5–73. Military occupational specialty considerations**

Any applicant who had a confirmed positive lab result and is subsequently qualified after the waiting period will not be authorized to enlist for any MOS, unit, or assignment that restricts enlistment because of documented misuse of drugs or alcohol.

**5–74. Notification procedures**

The MEPS will notify the Army liaison daily through the USMEPCOM Integrated Resource System database. The Army liaison will query the USMEPCOM Integrated Resource System database daily for the Drug and Alcohol Processing Eligibility Roster, which lists the test results and eligibility status of individuals processing for the RA and USAR.

**5–75. Notification of applicants found positive**

*a.* Applicants who test positive for drugs must be notified of their test results. MEPS will send a letter of notification directly to the applicant or enlistee according to appropriate USMEPCOM regulations.

*b.* Applicants and enlistees may also be sent a list of civilian drug and alcohol abuse treatment centers in their local area.

**5–76. Separation procedures for members of the Delayed Entry Program**

*a.* Upon notification (see para 5–78), the guidance counselor will cancel the DEP reservation and attach a copy of the MEPS notification together with the enlistment packet. The counselor will forward the packet to the recruiting battalion, which will take action to separate the individual from the DEP. The separation code will be ZZY. The

recruiter will be notified and the applicant advised of separation (provide a copy of the order to the separated individual). The separation order will be published within 10 working days of the cancel date.

*b.* The recruiter must inform the applicant of his or her disqualification and advise that a memorandum is being sent from the chief medical officer. The applicant will be counseled on Army drug and alcohol policy, as well as advised as to the reapplication criteria.

## 5–77. Separation procedures for prior service and glossary nonprior service

*a.* Applicants who have PS and are pending RA enlistment are not in delayed status. Therefore, no discharge by the recruiting battalion is required; however, notification procedures are required and cancellation of reservation is mandatory.

*b.* If the applicant is a current member of any Service or a Selected Reserve unit, a memorandum notifying the commander is required.

## 5–78. Reserve Component enlistees with positive results

*a.* Upon notification that a person who has enlisted in the DTP or an ARNG unit has a positive drug result, the guidance counselor will cancel any existing reservation and forward notification to the recruiting battalion or ARNG unit for action.

*b.* The recruiting battalion or regional readiness command will notify the TPU commander of the results and advise that the individual must be discharged. A copy of the discharge order must be sent to the recruiting battalion or ARNG unit for enclosure with the residual enlistment file. Headquarters, USAREC, or Chief, NGB, will issue appropriate guidance on administrative procedures for quality assurance.

## 5–79. Invalid or unacceptable specimens

The specimens provided by applicants and/or enlistees will be protected by strict chain-of-custody procedures. As a result, the laboratory may on occasion reject damaged, spilled, or otherwise unacceptable urine samples. When this occurs, the guidance counselor will be notified by the MEPS. It is the responsibility of the Army liaison office to ensure prompt receipt of invalid or unacceptable urine specimens. The applicant and/or enlistee will be required to provide a replacement specimen as soon as possible, but not more than 3 working days from receipt of the notification. Resubmission of such sample may be accomplished at other MEPS, if necessary.

# Chapter 6
# Military Entrance Processing Station Processing Phase

## Section I
## General Information

## 6–1. General

This chapter provides policy and guidance for those functions that are administered at MEPS by USMEPCOM personnel and guidance counselors.

## 6–2. Prior service individuals physically examined outside the military entrance processing station

Physical examination outside of the MEPS system is not authorized (except in authorized overseas locations).

## 6–3. Actions required of U.S. Military Entrance Processing Command personnel before sending applicants to guidance counselor

*a.* Applicants will receive orientation on processing to be done at the MEPS.

*b.* The ASVAB will be administered. Persons giving tests and recording test scores will be cautioned to compute and record test designations, test scores, and aptitude area scores with the utmost care. Specific directions to give and score tests are in manuals that accompany the tests. Instructions on administering tests are in AR 611–5 and will be strictly followed.

*c.* Required medical examinations will be provided.

*d.* Medically and mentally tested applicants will be directed to the guidance counselor for final counseling and interview. The following MEPS records will be available to the guidance counselor:

(1) MEPS medical examination documents.

(2) Latest USMEPCOM authorized document.

(3) Other documents or records for final decision on acceptability.

**Section II**
**Guidance Counselor Processing Phase**

**6–4. General**
This section prescribes—
   *a.* Duties of the guidance counselor.
   *b.* Procedures to be followed in the enlistment process.

**6–5. Procedures applicable to Regular Army, U.S. Army Reserve, and Army National Guard**
Procedures below apply to the RA, USAR, and ARNG. The guidance counselor will—
   *a.* Notify the recruiting company concerned via Army Recruiting Information Support System of results of medical and mental tests and any other pertinent data on all applicants processing.
   *b.* Review with applicant DD Form 1966, SF 86, and supporting documents for errors or missing data, and making corrections where applicable. On the DD Form 1966, ensure that all applicants complete block 13, indicating whether they speak up to two foreign languages. Those applicants who speak more than two languages should list the additional languages in the remarks section.
   *c.* Verify applicant's eligibility for enlistment per chapters 2, 3, and 4.
   *d.* Advise rejected applicant of reemployment rights as outlined in chapters 2 and 5.
   *e.* Access REQUEST to determine options available.
   *f.* Use MOS video segments applicable to MOS and option for counseling all applicants on their enlistment options. The use of MOS video is mandatory.
   *g.* Counsel applicants who failed to meet specific qualifications for MOS, options, and assignments for which they applied; advise them of all other available options that would still meet the applicant's needs and desires, as well as the needs of the U.S. Army.
   *h.* Verify, by school transcript, successful high school course completion when it is required for entry into a specific MOS. For example, check to see whether applicant has completed and scored the appropriate grade in algebra, biology, or chemistry or other required courses. Applicant must provide proof of grade in course required by MOS and grade must meet appropriate requirements.
   *i.* Advise all applicants that enlistment automatically requires them to qualify with basic weapons.
   *j.* Ensure resident aliens are not processed for any MOS, training, or assignment requiring a security clearance, except as provided for in AR 380–67.
   *k.* Review the enlistment annex for RA, USAR, and ARNG. Initiate and review forms with applicant. This review is an important part of the enlistment process. The statements, completed correctly, prevent the possibility of erroneous enlistment, broken enlistment commitments, and misunderstanding on entitlements, assignments, and other matters relating to the enlistment agreement. The counselor ensures that statements for enlistment entered in the enlistment annexes to DD Form 4 and in the DD Form 1966, remarks section, when applicable, accurately reflect enlistment commitment. For USAR, the counselor will determine that an applicant is qualified for original USAR unit and MOS selected or, if proper, an alternate option.
   *l.* Question applicants to be sure they understand their enlistment commitments. Applicants will be advised that no provision exists to request or accept voluntary discharge before normal completion of their enlistment commitment, other than for hardship, dependency, or compassionate reasons.
   *m.* Counsel applicants that—
   (1) The Army does not tolerate the use of marijuana or harmful or habit-forming chemicals or drugs.
   (2) In-service use may be punished under the UCMJ.
   *n.* Advise applicants that some MOSs will require completion of a specified course of instruction as a prerequisite before entering training for the MOS for which they are enlisting.
   *o.* Give all applicants a final and thorough counseling. This counseling should eliminate any misunderstanding of enlistment promises.
   *p.* The MEPS guidance counselor must examine all source documents for discernible evidence of tampering or alteration and to ensure the documents are legible. If the document in electronic record management is not legible, the guidance counselor must ensure a legible copy of the document is uploaded into electronic records management prior to enlistment into the DEP or Selected Reserve.
   *q.* Ensure that applicants enlisting for any MOS, option, or assignment that requires security clearance, as outlined in the MOS SMART Book at https://smartbook.army1.pentagon.mil/default.aspx, are processed by the USAREC security interviewer. USAREC security interviewer must verify PS applicants hold the required security clearance for the desired enlistment MOS.
   *r.* For applicants requiring special extensive processing after MEPS mental or physical examination (for example, OCS or WOFT board, flight physical, band audition, or waivers)—
   (1) Determine MEPS test and physical results and inform applicant of these results.

(2) Refer applicant back to recruiter and dismiss them from the MEPS.

*s.* Notify RC units when former members are discharged or released for enlistment into the RA or USAR per paragraph 5–24.

*t.* Ensure that DD Form 1966 is validated during DEP in/DEP out for RA/USAR only; for ARNG, at enlistment and prior to ship.

*u.* If an applicant enlists for an MOS that is annotated on REQUEST as a Force Modernization MOS, ensure that the following statement is added to the applicant's DD Form 1966, remarks section: "I am aware that the MOS for which I am enlisting requires training on equipment currently in the developmental stage, which may not be available. If this situation arises at completion of basic training, I understand that I will receive training in an alternate MOS within the same career management field."

*v.* Counsel applicant on the benefits of the Veteran's Educational Assistance Act of 1984 (MGIB). Ensure applicant completes statement on enlistment annex for Educational Incentive Programs for which contracting. Ensure applicant's higher education loan(s) qualify for loan repayment if selecting the Loan Repayment Program option.

*w.* Ensure all applicants who speak English as a second language and who still experience difficulty in conversing in and understanding English are properly identified and take the ECLT. The American Language Comprehension Placement Test may be substituted when the ECLT is not available. Scores outlined for ECLT will apply for the American Language Comprehension Placement Test.

(1) The guidance counselor will inform those applicants who score 74 or below on ECLT that they will receive English training at the Defense Language Institute, English Language Center. Those scoring 40–74 will have no additional requirements beyond those normally placed upon any other applicant in the same TSC.

(2) The guidance counselor will inform applicants that they must achieve a minimum ECLT score of 75 (applicants scoring below 75 must be scheduled for English as a second language training prior to BCT). Chief, mission support commander, or designated representative at the Defense Language Institute English Language Center, Lackland Air Force Base, may grant exceptions as appropriate for Soldiers that score 70 to 74 and score a 1 plus in comprehension and 1 in speaking on the oral presentation interview.

*x.* Advise all enlistees of the importance of wearing eyeglasses to and during training. Counselor will discourage enlistees from the use of contact lenses, because the training environment is not conducive to the use of contact lenses.

*y.* Advise applicants that it is their duty to establish and maintain an account with a U.S. financial institution (such as a bank, savings, and loan institution, or credit union) for the direct receipt of their net pay and allowances while serving in the Army. Further, the guidance counselor will explain that applicants must establish such account in order to execute the appropriate forms at the servicing finance office upon arrival at the reception battalion.

*z.* Review all enlistment forms with the applicant to ensure they are signed by the applicant. The guidance counselor will sign the forms as the witnessing official.

## 6–6. Procedures applicable to Regular Army only

The procedures below apply to the RA only. The guidance counselor will—

*a.* Explain to applicants who enlist for an overseas area the specific normal tour length and involuntary extension policy, as defined in AR 614–30. The enlistment annex will show applicant understands tour lengths.

*b.* Counsel married couples to prevent any misunderstanding of Army policy on assignment of married Army couples. Use of DA Pam 600–8 (see Married Army Couples Program and assignment) is recommended for this counseling, regardless of the married couple's enlistment options or programs. Counselor will question married Army couples on Army policy, eligibility criteria, and assignment conditions. Married couples will be fully aware that applying for joint assignment under the Married Army Couples Program, does not guarantee that they will be able to establish a joint domicile after completion of their initial entry training.

*c.* Ensure DD Form 1966 is completed.

## 6–7. Procedures applicable to U.S. Army Reserve and Army National Guard only

PS applicants who have not satisfactorily completed a basic training course or AIT will enter on IADT within 180 days. IADT funds and orders will be used to train these personnel (to include glossary NPS). Phase III of the Specialized Training for Army Reserve Readiness Program is also considered a part of IADT. See accessions options criteria for ARNG specific programs.

## 6–8. Vacancies and projected vacancies

*a.* Enlistments and assignments to Selected Reserve units are authorized for vacancies on REQUEST according to the following priority of fill:

(1) Vacant positions within the unit as displayed on the unit manning report.

(2) Known pending losses.

(3) Permitted overstrength.

(4) Attrition.

*b.* Projected vacancies will be under the policies below—

(1) PS and NPS personnel may be enlisted up to 12 months before a projected vacancy. If IADT exceeds 36 weeks, the 12-month period may be exceeded by the IADT period (including BCT).

(2) Commanders may submit assignment requests against vacancies occurring in approved modification table of organization and equipment or tables of distribution and allowances authorization documents that have projected effective dates of reorganization.

*c.* Guidance counselors will not assign any applicant(s) to a USAR TPU beyond reasonable commuting distance without written consent of the applicant and approval by the USAR TPU commander. Reasonable commuting distance is the distance from home to the USAR TPU location within a 50-mile radius and does not exceed 1.5 hours of travel time by automobile one way under average traffic, road and weather conditions.

*d.* Vacancy requirements are not needed for enlistment or reenlistment in the IRR.

## 6–9. Vacancy requirements

*a. Obligated personnel.* Enlistment of persons in the USAR who incur an 8-year statutory service obligation enlistment due to initial entry in the Armed Forces will be made only—

(1) For assignment to a TPU vacancy on REQUEST (see para 6–8).

(2) After receipt of a confirmed training space for entry on IADT to undergo basic training.

*b. Nonobligated persons.* Enlistment of nonobligated persons will be as follows:

(1) For TPU vacancy on REQUEST, if—

*(a)* The applicant has had PS and has no remaining statutory obligation.

*(b)* The applicant is a qualified member of the USAR and is immediately reenlisting under AR 140–111 (see extending enlistment or reenlistment agreements).

(2) For enlistment or reenlistment in the IRR with assignment to the USAR Control Group (Reinforcement) without regard to position vacancies in the IRR, if—

*(a)* The applicant has had prior military service, has no remaining statutory obligation, and enlists under this regulation or reenlists under AR 140–111 (see extending enlistment or reenlistment agreements).

*(b)* The applicant is a qualified member of the IRR or Standby Reserve and is immediately reenlisting under AR 140–111 (see extending enlistment or reenlistment agreements).

(3) CG, HRC, may authorize enlistment or reenlistment of PS personnel who have no remaining statutory obligation for assignment to USAR Control Group (Reinforcement) and attachment to a TPU or reinforcement training unit. Overseas commanders may authorize enlistment or reenlistment of such persons on request of the unit commander. Applicant must be otherwise qualified. The person will be informed that, during the period of unit attachment, all individual drill training will be in a nonpay status, but retirement point credit will accrue. Applicant must have served honorably on AD or taken part satisfactorily in Reserve training during period of prior enlistment or obligated service.

(4) Persons currently employed, or who seek employment in the U.S. Army Reserve Technician Program, may be enlisted for assignment to a unit vacancy. They must otherwise qualify and be authorized by the area commander. If applicant has no prior military service, then enlistment requires prior receipt of a confirmed training space for entry on IADT. If a unit vacancy is not available, then the person will be assigned as overstrength to the unit in which he or she is performing the majority of assigned duties. Assigned technicians are required to participate successfully in the assigned TPU throughout their enlistment period.

*c. Military intelligence, signals intelligence, electronic warfare, signal security units, military police detachments, and Special Forces enlistments.* If persons enlisted for the assignments below are later found not fully qualified, they may be reassigned, with or without their consent, to another branch of the USAR for which they are qualified. Enlistment eligibility and processing procedures for enlistment of PS and NPS applicants for unit vacancies in units or branches specified below are established by the reference shown.

(1) Military intelligence, signals intelligence, electronic warfare, and signal security units (AR 135–382).

(2) Military police detachments (criminal investigation) (AR 195–3).

(3) Special Forces (AR 614–200).

## Section III
## Military Entrance Processing Station Administrative Processing Phase

## 6–10. General

This section outlines administrative responsibilities and required actions of USMEPCOM personnel before and after administering the oath of enlistment.

## 6–11. Duties of U.S. Military Entrance Processing Command personnel

USMEPCOM personnel will—

*a.* Ensure that applicants who qualify have proper documents before they are enlisted and sent to their first station.

*b.* Complete preparation and disposition of required forms and records (see chap 5 and AR 601–270). To establish

enlistment eligibility, applicants often must present personal documents. These will be returned along with discharge certificates, separation reports, and other documents. Copies will be made of those documents needed for processing by the guidance counselor.

*c.* Prepare DD Form 93 (Record of Emergency Data) in final form. The MEPS will process DD Form 93 under policies and procedures set by USMEPCOM.

*d.* Conduct pre-enlistment interview fingerprint submission on all accession under policies and procedures set by USMEPCOM.

*e.* Administer oath of enlistment (see chap 6).

*f.* Obtain signature on confirmation of oath of enlistment on DD Form 4.

*g.* Make transportation arrangements (see chap 5, sec V).

*h.* Send enlistees to proper station. Return rejected applicants to place of tentative acceptance (DD Form 1966, section V).

## 6–12. DD Form 1966

The guidance counselor will review and ensure that DD Form 1966 is properly completed and compare all entries to verification documents and SF 86. The final completed DD Form 1966 should be free of errors and must be legible. Counselor will print all entries. See table 6–1 for DD Form 1966 instructions.

**Table 6–1**
**DD Form 1966 instructions**

| | |
|---|---|
| | SECTION I -PERSONAL DATA |
| 1 | Social Security Number — Self-explanatory. |
| 2 | Name — Self-explanatory. |
| 3 | Current Address — Enter street, city, county, State, country, and ZIP code. |
| 4 | Home of Record Address — Enter street, city, county, State, country, and ZIP code. Do not enter a temporary address. Address must be in United States or U.S. territory. |
| 5 | Citizenship — Select the appropriate box(s) and provide Alien Registration Number, if applicable. |
| 6 | Sex — Select male or female. |
| 7a | Racial Category — Select one or more. |
| 7b | Ethnic Category — Select the appropriate box. |
| 8 | Marital Status — Select one of the following: Annulled, Divorced, Legally Separated, Married, Single, or Widowed. |
| 9 | Number of Dependents — Self-explanatory. |
| 10 | Date of Birth — Enter YYYYMMDD. |
| 11 | Religious Preference — Optional. Enter complete formal name of religious preference or no religious preference. |
| 12 | Education — Enter highest grade of formal education completed (for example, 11, 12, or 13), followed by the appropriate education code from chapter 2. |
| 13 | Proficient in Foreign Language — If applicant claims foreign language proficiency (read, write, or speak) enter language and proficiency. If no language proficiency enter "NONE". |
| 14 | Valid Driver's License — Select yes or no. If yes, list State, number, and expiration date. |
| 15 | Place of Birth — Enter city, State, and country of birth. |
| | SECTION II - EXAMINATION AND ENTRANCE DATA PROCESSING CODES |
| 16 | Aptitude Test Results — Enter results provided by MEPS personnel, system, or Defense Manpower Data Center. |
| 17 | DEP Enlistment Data — This block contains nine boxes (a through i). |
| 17a | Date of Enlistment-DEP — Enter date of entry into the DEP (YYYYMMDD). |
| 17b | Proj Active Duty Date — Enter date projected to enter AD (YYYYMMDD). |
| 17c | ES — For entry status, enter 3. |
| 17d | Recruiter Identification — Enter the nine-character recruiting command unique identifier. |
| 17e | STN ID — Enter station ID (for example, 3T2C). |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| 17f | PEF — Enter program enlisted for as five-digit code from the following list: |
|---|---|
| | Position 1. Education incentive:<br>A — Army College Fund.<br>B — Loan Repayment Program.<br>C — Enrolled in MGIB (use for all NPS/days of service who have not served in any Active Component of the Armed Forces).<br>D — Not eligible for MGIB enrollment (use for all applicants who have prior military service in an Active Component of the Armed Forces). |
| | Position 2. Enlistment bonus:<br>A — Skill (MOS) bonus.<br>B — Unit bonus.<br>C — Affiliation bonus.<br>D — Selective reenlistment bonus.<br>E — Broken Service Selective Reenlistment Bonus.<br>F — No enlistment bonus. |
| | Position 3. Contract term years:<br>A — RA, NPS (Regular Army-2, TPU–0, IRR–6).<br>B — Regular Army, NPS (Regular Army -3, TPU–0, IRR–5).<br>C — Regular Army, NPS (Regular Army -4, TPU–0, IRR–4).<br>D — Regular Army, NPS (Regular Army -5, TPU–0, IRR–3).<br>E — Regular Army, NPS (Regular Army -6, TPU–0, IRR–2).<br>F — Regular Army, PS (Regular Army -2, TPU–0, IRR–0).<br>G — Regular Army, PS (Regular Army -3, TPU–0, IRR–0).<br>H — Regular Army, PS (Regular Army -4, TPU–0, IRR–0).<br>I — Regular Army, PS (Regular Army -5, TPU–0, IRR–0).<br>J — Regular Army, PS (Regular Army -6, TPU–0, IRR–0).<br>K — Regular Army, NPS (Regular Army -2, TPU–2, IRR–4).<br>L — Regular Army, NPS (Regular Army -3, TPU–2, IRR–3).<br>M — Regular Army, NPS (Regular Army -4, TPU–2, IRR–2).<br>N — Regular Army, NPS (Regular Army -5, TPU–2, IRR–1).<br>O — Regular Army, NPS (Regular Army -6, TPU–2, IRR–0).<br>U — USAR. |
| | Position 4. Enlistment Program:<br>T — RA Training Enlistment Program (9A).<br>S — RA Station/Unit/Area/Command Enlistment Program (9B).<br>C — RA Officer Enlistment Program (9D). |
| | Position 5. ACASP:<br>A — Yes.<br>B — No. |
| 17g | T–E MOS/AFS — Enter five-digit training-enlistment MOS/AFS in which applicant will be trained as obtained from the REQUEST System. If applicant is entering in former MOS or ACASP MOS enter "00000". |
| 17h | Waiver — Three-position code. Up to six waiver codes may be entered. (See Directive Type Memorandum 08–018.) |
| 17i | Pay Grade — Enter three-digit code.<br>First position: Enter "E".<br>Second position: Enter "0".<br>Third position: Enter appropriate number based on entry pay grade. For example, for applicants entering as E–1, enter "E01". |
| 17j | SVC Annex Codes — Enter code A, DEP Annex to enlistment contract. |
| 17k | MSO — Enter date (YYWW). |
| 17l | AD Obligation — Enter date (YYWW). |
| 18 | Accession Data — This block contains 19 boxes (a through u). |
| 18a | Date of Enlistment — Enter date entered AD or assessed into the USAR or IRR (YYYYMMDD). |
| 18b | Active Duty Service Date — Enter date (YYYYMMDD).<br>For AD applicants, enter date from 17a; USAR applicants, enter date scheduled for entry on IADT.<br>ROTC/SMP applicants not scheduled for entry on IADT for BCT enter "00 000 0."<br>RA and USAR applicants with PS will have AD service date calculated from DD Form 214. |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| | |
|---|---|
| 18c | Pay Entry Date — Enter date (YYYYMMDD).<br>For applicants with no previous military service, enter date as recorded in 17a.<br>For applicants with previous military service, date will be computed by personnel and finance at first duty station. Date will be based on documents provided. Burden of proof is on applicant. |
| 18d | MSO — Enter date (YYWW). |
| 18e | AD/RC Obligation — Enter AD and RC obligation (YYMMWWDD). |
| 18f | Waiver — Same as 17h.<br>For NPS RA, only waivers that were approved since the enlistment date will be entered in this block. If none since the date of enlistment, enter "YYY". |
| 18g | Pay Grade — Enter three-digit code.<br>First position: Enter E.<br>Second position: Enter 0.<br>Third position: Enter appropriate number based on entry pay grade. For example, for applicants entering as E–1, enter "E01". |
| 18h | Date Of Grade — Enter date (YYYYMMDD) as entered on AD for NPS. PS will have date adjusted at first duty station, as appropriate. |
| 18i | ES — For RA, enter 1. For USAR, enter 0. |
| 18j | YRS/Highest ED GR Compl — First enter actual number of years successfully completed in two digits (for example, 08, 09, 10, 11, and so on). Then enter certification level code in accordance with paragraph 2–7 |
| 18k | Recruiter Identification — Enter the nine-character recruiting command unique identifier. |
| 18l | STN ID — Enter station identification (for example, 3T2C). |
| 18m | PEF — Enter the program enlisted for. For RA, enter five-digit code from the following list:<br><br>Position 1. Education incentive:<br>A — Army College Fund.<br>B — Loan Repayment Program.<br>C — Enrolled in MGIB (use for all NPS/days of service who have not served in any Active Component of the Armed Forces).<br>D —Not eligible for MGIB enrollment (use for all applicants who have prior military service in an Active Component of the Armed Forces).<br><br>Position 2. Enlistment bonus:<br>A — Skill (MOS) bonus.<br>B — Unit bonus.<br>C — Affiliation bonus.<br>D — Selective reenlistment bonus.<br>E — Broken Service Selective Reenlistment Bonus.<br>F — No enlistment bonus.<br><br>Position 3. Contract term years:<br>A — Regular Army, NPS (Regular Army-2, TPU–0, IRR–6).<br>B — Regular Army, NPS (Regular Army-3, TPU–0, IRR–5).<br>C — Regular Army, NPS (Regular Army-4, TPU–0, IRR–4).<br>D — Regular Army, NPS (Regular Army-5, TPU–0, IRR–3).<br>E — Regular Army, NPS (Regular Army-6, TPU–0, IRR–2).<br>F — Regular Army, PS (Regular Army-2, TPU–0, IRR–0).<br>G — Regular Army, PS (Regular Army-3, TPU–0, IRR–0).<br>H — Regular Army, PS (Regular Army-4, TPU–0, IRR–0)<br>I — Regular Army, PS (Regular Army-5, TPU–0, IRR–0).<br>J — Regular Army, PS (Regular Army-6, TPU–0, IRR–0).<br>K — Regular Army, NPS (Regular Army-2, TPU–2, IRR–4).<br>L — Regular Army, NPS (Regular Army-3, TPU–2, IRR–3).<br>M — Regular Army, NPS (Regular Army-4, TPU–2, IRR–2).<br>N — Regular Army, NPS (Regular Army-5, TPU–2, IRR–1).<br>O — Regular Army, NPS (Regular Army-6, TPU–2, IRR–0).<br>U — USAR.<br><br>Position 4. Enlistment Program:<br>T — Regular Army Training Enlistment Program (9A).<br>S — Regular Army Station/Unit/Area/Command Enlistment Program (9B).<br>C — Regular Army Officer Enlistment Program (9D).<br><br>Position 5. ACASP:<br>A — Yes.<br>B — No. |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| | |
|---|---|
| | For USAR, use the following table to determine procurement program number entries for this block:<br><br>A. NPS:<br>Training Program<br>Standard Training — Code 1, Enlistment option 8 x 0, Code 8<br>Alternate Training — Code 2, Enlistment option 6 x 2, Code 6<br>ACASP — Code 5, Enlistment option 4 x 4, Code 4<br>ROTC/SMP Potential — Code 7, Enlistment option 3 x 5, Code 3<br><br>B. PS:<br>Applicants with PS who enlist for—<br>1. Assignment to a TPU:<br>— Specific training on ADT is required as a prerequisite for the award of an ACASP MOS.<br>Procurement program number is 85.<br>— If basic training on ADT is required due to previous discharge under provision of the Trainee Discharge Program.<br>Procurement program number is 86.<br>— If basic training on ADT is required for reasons other than a previous discharge under provisions of the Trainee Discharge Program.<br>Procurement program number is 87.<br>— If no training on ADT is required as a condition of enlistment.<br>Procurement program number is 88.<br>— If ROTC/SMP Potential participant who will seek enrollment in ROTC after enlistment, is a high school graduate or GED equivalent, and enlists for a minimum of 4 years, TPC is A.<br>Procurement program number is A7.<br>— If individual is currently enrolled in ROTC and transferring from Control Group (ROTC) to a TPU of the Selected Reserve to become an SMP participant, and currently completing a statutory or contractual obligation, TPC is A.<br>Procurement program number is A8.<br><br>2. Other options:<br>— If enlistment agreement guarantees attendance at an active military school or institution in an ADT status.<br>Procurement program number is 89.<br>— If basic training on ADT is required due to previous discharge under provision of the Trainee Discharge Program.<br>Procurement program number is 90.<br>— If basic training on ADT is required for reasons other than a previous discharge under provisions of the Trainee Discharge Program.<br>Procurement program number is 91.<br>— If no training on ADT is required as a condition of enlistment.<br>Procurement program number is 92.<br><br>3. For assignment to the IRR:<br>No training on ADT is required as condition of IRR PS enlistment option. Applicants requiring completion of basic training or AIT programs are ineligible for enlistment under the option.<br>Procurement program number is 95. |
| 18n | T–E MOS/AFS — Enter five-digit MOS in which applicant will be trained as obtained from the REQUEST System. If applicant is entering in former MOS or ASCASP MOS enter 00000. |
| 18o | PMOS/AFS — Enter five-digit primary MOS code as follows: first enter five-digit primary MOS for PS, ACASP, ROTC/SMP enlistees that require no AIT. The fifth position must be an alpha character. |
| 18p | Youth - Enter:<br>For the first position:<br>A — Junior ROTC 3 years.<br>B — Junior ROTC 1 year.<br>C — ROTC 1 year.<br>D — ROTC 2 years.<br>E — ROTC 3 years.<br>F — ROTC 4 years.<br>X — Other.<br>Y — None/not applicable.<br><br>For the second position:<br>A — Army.<br>F — Air Force.<br>N — Navy.<br>M — Marine Corps.<br>P — Coast Guard.<br>Y — None/not applicable.<br><br>For the third position: Number of years completed (0 to 9). |
| 18q | OA — For option analyst, enter "00". |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| 18r | State Guard — Enter two-digit alpha character for State abbreviation. |
|---|---|
| 18s | SVC Annex Codes — Enter Code B, Accession Annex to enlistment contract. |
| 18t | Replaces Annexes — Enter Code A, DEP annex to enlistment contract. |
| 18u | Transfer To (UIC) — Enter six-digit unit identification code (UIC) for reception battalion where NPS enlistee is transferred on enlistment for AD. For USAR, enter UIC. |
| 19 | Service Required Codes — See appropriate component section below. |

RA Service Codes

| 19–1 through 19–4 | Pay Grade — Code<br>E–1 — PV11<br>E–2 — PV22<br>E–3 — PFC3<br>E–4 — SPCM<br>E–5 — SGT5<br>E–6 — SSG6 |
|---|---|
| 19–5 | Enter one-digit code to indicate break in active PS, as follows:<br>0 — No PS.<br>1 — Less than 1 month break in active service PS.<br>3 — At least 1 month and up to and including 3 month break in active PS.<br>6 — Over 3 months and up to and including 6 month break in active PS.<br>7 — Over 6 month break in active PS. |
| 19–6 | Enter one-digit numeric code. Identify all personnel who enlisted in the RA in pay grade E–2 as follows:<br>0 — Did not enlist as an E–2.<br>1 — Pay grade E–2 authorized based on the referral on or after 1 April 2013 of one applicant who enlist in the RA or USAR prior to the applicant access onto AD, completes the Training Cycle Training, and passes an Army physical fitness test with a total score of 180, in accordance with paragraph 2–18b. |
| 19–7 | Enter "T". |
| 19–8 | If NACLC submitted, enter "E". If NACLC not submitted, enter "D". |
| 19–9 | If NACLC results are:<br>Not received, enter "B".<br>Unfavorable, enter "D".<br>Favorable, enter "C".<br>Match, enter "I".<br>Cancelled, enter "J". |
| 19–10 through 19–11 | G0 — Reenlistment gain (less than a 91-day break). Soldiers with a break in service of more than 24 hours but less than 91 days who have reenlisted.<br>G1 — Nonprior service gain.<br>G3 — Prior service gain from civilian life.<br>G4 — Prior service gain from AD.<br>G5 — Prior service gain from another RC.<br>G8 — Prior service gain for change of military personnel class.<br>H1 — Gain from civilian life having prior Regular or Reserve service.<br>H2 — Gain from civilian life and does not have prior Regular or Reserve service.<br>HA — Enlisted within 2 to 90 days of separation from RA.<br>HB — Enlisted within 6 months after date of separation as commissioned officer.<br>HC — Enlisted within 2 to 90 days after date of separation from RA in USAR status.<br>HD — Enlisted within 2 to 90 days after date of separation from RA in ARNG Status.<br>HF — Enlisted with no previous active military service.<br>HG — Enlisted within 2 to 90 days after date of separation from RA in Army of the United States status.<br>HG — Reenlistment of person who has a break in USAR Selected Reserve service of more than 24 hours, but less than 91 days.<br>HH — Reenlisted after break in  USAR Selected Reserve service of  91 days or more.<br>HJ — Enlisted more than 90 days after date of separation from RA.<br>HK — Enlisted within 6 months after date of separation as warrant officer.<br>HL — Enlisted more than 90 days after date of separation from RA in USAR status.<br>HM — Enlisted more than 90 dates after date of separation from AD in ARNG status.<br>HP — Enlisted more than 90 days after date of separation from RA in Army of the United States status.<br>HQ — Enlisted last previous active military service in Air Force or Marine Corps.<br>HR — Enlisted last previous active military service in Navy or Coast Guard. |
| 19–12 | Always enter "V" (variable enlistment) for RA. |
| 19–13 through 19–14 | Term of Enlistment — Enter enlistment term in weeks. |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| | |
|---|---|
| 19–15 | Service Value Codes — Enter code per applicable definition below:<br><br>A — Never served or have served less than 180 days as a member of the U.S. Armed Forces.<br>B — Enlisted illegally while underage, and who separated due to voided enlistment before attaining age 17.<br>C — Former member of an Armed Forces Academy and did not graduate.<br>D — Completed ROTC and served only ADT as officer.<br>E — Served 180 days or more on AD as member of the U.S. Armed Forces. |
| 19–16 through 19 17 | ECLT Score — Display the score if it exists. If score does not exist, then enter "00". |
| 19–18 through 19–21 | Enter the Recruiting Station ID. |
| 19–54 through 19–55 | Enter the Recruiting Test Program Code. If more than one Recruiting Test Program Code exists for the record, display the code that comes first in the   order of precedence in the lookup table. Do not display a value of "PA" in this field, even if it is the only value in the table. |
| 19–56 through 19–58 | Enter the Assessment of Individual Motivation test score, if it exists. |
| 19–59 through 19–66 | Enter the Assessment of Individual Motivation test date in format CCYYMMDD. |
| 19–67 through 19–68 | If the Partnership for Youth Success Recruiting Test Program exists for the record, display the code in this field. Do not display any other Recruiting Test Program in this field. |
| USAR Service Codes | |
| 19–1 through 19–6 | Enter six-character USAR UIC. |
| 19–7 | Enter "P". |
| 19–8 through 19–9 | G0 — Reenlistment gain (less than a 91-day break). Soldiers with a break in service of more than 24 hours but less than 91 days who have reenlisted.<br>G1 — Nonprior service gain.<br>G3 — Prior service gain from civilian life.<br>G4 — Prior service gain from AD.<br>G5 — Prior service gain from another RC.<br>G8 — Prior service gain for change of military personnel class.<br>H1 — Gain from civilian life having prior Regular or Reserve service.<br>H2 — Gain from civilian life and does not have prior Regular or Reserve service.<br>HA — Enlisted within 2 to 90 days of separation from RA.<br>HB — Enlisted within 6 months after date of separation as commissioned officer.<br>HC — Enlisted within 2 to 90 days after date of separation from RA in USAR status.<br>HD — Enlisted within 2 to 90 days after date of separation from RA in ARNG status.<br>HF — Enlisted with no previous active military service.<br>HG — Enlisted within 2 to 90 days after date of separation from RA in the Army of the United States status.<br>HG — Reenlistment of person who has a break in USAR Selected Reserve service of more than 24 hours, but less than 91 days.<br>HH — Reenlisted after break in USAR Selected Reserve service of 91 days or more.<br>HJ — Enlisted more than 90 days after date of separation from RA.<br>HK — Enlisted within 6 months after date of separation as warrant officer.<br>HL — Enlisted more than 90 days after date of separation from RA in USAR status.<br>HM — Enlisted more than 90 dates after date of separation from AD in ARNG status.<br>HP — Enlisted more than 90 days after date of separation from RA in Army of the United States status.<br>HQ — Enlisted last previous active military service in Air Force or Marine Corps.<br>HR — Enlisted last previous active military service in Navy or Coast Guard. |
| 19–10 through 19–13 | Enter the recruiting station ID. |
| 19–14 through 19–17 | Enter the date of last physical (YYMM). |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| | |
|---|---|
| 19–18 through 19–19 | ECLT Score: Display the score if it exists. If score does not exist, then print "00". |
| 19–20 through 19–23 | Enter the abbreviated grade:<br><br>Grade — Abbreviated Grade<br>E01 — PV11<br>E02 — PV22<br>E03 — PFC3<br>E04 — SPCM<br>E05 — SGT5<br>E06 — SSG6<br>E07 — SFC7<br>E08 — MSG8<br>E09 — SGM9 |
| 19–54 through 19–55 | If more than one Recruiting Test Program Code exists for the record, display the code that comes first in the   order of precedence in the lookup table. Do not display a value of "PA" in this field, even if it is the only value in the table. |
| 19–56 through 19–58 | Enter the assessment of individual motivation test score, if it exists. |
| 19–59 through 19–66 | Enter the assessment of individual motivation test date (CCYYMMDD). |
| 19–67 through 19–68 | If   the Partnership for Youth Success Recruiting Test Program exists for the record, display the code in this field. Do not display any other Recruiting Test Program in this field. |
| | ARNG Service Codes |
| 19–1 through 19–6 | Enter six-character ARNG UIC. |
| 19–7 through 19–9 | Display the two-character State ID code. |
| 19–10 through 19–12 | Enter "DAG" for Department of the Army-Guard. |
| 19–13 through 19–15 | "GT" Composite Score.<br>Enter the ASVAB general technical score. |
| 19–16 through 19–18 | "GM" Composite Score.<br>Enter the ASVAB general maintenance score. |
| 19–19 through 19–21 | "EL" Composite Score.<br>Enter the ASVAB electronics score. |
| 19–22 through 19–24 | "CL" Composite Score.<br>Enter the ASVAB clerical score. |
| 19–25 through 19–27 | "MM" Composite Score.<br>Enter the ASVAB mechanical maintenance score. |
| 19–28 through 19–30 | "SC" Composite Score.<br>Enter the ASVAB surveillance and communications score. |
| 19–31 through 19–33 | "CO" Composite Score.<br>Enter the ASVAB combat score. |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| | |
|---|---|
| 19–34 through 19–36 | "FA" Composite Score.<br>Enter the ASVAB field artillery score. |
| 19–37 through 19–39 | "OF" Composite Score.<br>Enter the ASVAB operators and food score. |
| 19–49 | Training Pay — Enter applicable TPC as follows:<br>Code — Definition<br>A — All other TPCs not listed below.<br>F — NPS applicant who, on enlistment, will immediately enter on IADT.<br>L — NPS members awaiting IADT without pay; IRR.<br>P — NPS who are high school senior or high school diploma graduate (not ROTC/SMP potential), 17 to 25 years of age, greater than 270 days from IADT entry.<br>Q — NPS members awaiting the second part of their IADT (Army Split Training).<br>X — NPS members assigned to an ARNG unit in a pay status for 12 drills or 90 days. (Non-high school graduate, GED, or high school junior.) |
| 19–50 | Enter applicable bonus program code as follows:<br><br>Code — Definition<br>A — Enlisted cash bonus.<br>C — Retention Bonus Program for 3 years.<br>D — Retention Bonus Program for 6 years.<br>Q — Not receiving incentive (no previous incentive).<br>R — Affiliation bonus for 18 months or less.<br>S — Affiliation bonus for more than 18 months. |
| 19–51 through 19–54 | Enter paragraph designator as applicable. |
| 19–55 through 19–58 | Enter line designator as applicable. |
| 19–59 through 19–63 | Enter duty MOS as applicable. |
| 19–64 | Enter duty MOS qualification as applicable. |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| | |
|---|---|
| 19–65 through 19–66 | Enter Procurement Program<br><br>Code — Definition<br>A3 — Standard enlistment.<br>A4 — Reenlistment.<br>A6 — Interstate transfer or USAR TPU.<br>AB — Split training option.<br>AO — ARNG State OCS.<br>AX — 10 USC 511D (ARNG NPS GAINS).<br>BI —Try one.<br>BM —Enlisted/appointed/other.<br>AA — 3 weeks basic with 24 hour IDT required.<br>AB — Alternate Training Program - Split Training Option.<br>AC — Militia Career Program.<br>AD — 2 weeks basic with 32 hours IDT required.<br>AF — U.S. Military Academy.<br>AG — 10 USC 511B (2 x 6).<br>AH — Inducted.<br>AI — Direct appointment other than professional.<br>AK — U.S. Naval Academy.<br>AL — U.S. Air Force Academy.<br>AM — U.S. Merchant Marine Academy.<br>AN — OCS RC - Special.<br>AO — OCS State - ARNG.<br>AP — Direct appointment professional (Army Medical Department, Judge Advocate General, Chaplain).<br>AQ — OCS (College Student ARNG Officers Program).<br>AT — Warrant officer appointed from commissioned officer.<br>AU — Warrant officer Aviation Training Program.<br>AV —Warrant officer direct appointment.<br>AW — Warrant officer direct appointment from enlisted.<br>BA — 91C Civilian Contract Training Program.<br>BB — Civilian Acquired Skills.<br>BC — ROTC Scholarship Program (Guaranteed Reserve Force Duty).<br>BD — ROTC Nonscholarship Early Commissioning Program.<br>BE — ROTC Nonscholarship Reserve Force Duty.<br>BF — In-service Recruiting.<br>BG — Demobilized Unit from AD.<br>BH — Extended AD.<br>BI — TRY ONE - ARNG ONLY.<br>BJ — Standard Enlistment Option - Regular Component only.<br>BK — Civilian Aviator Procurement Program.<br>BL — Direct appointment Medical Service Corps, Early Commissioning Program. |
| 19–67 through 19–70 | Enter date of last physical date (YYMM). |
| 19–71 through 19–74 | Enter location of AIT. |
| 19–75 through 19–78 | Enter AIT graduation date (YYMM). |
| 19–79 through 19–82 | Enter the abbreviated grade as follows:<br><br>Grade — Abbreviated Grade<br>E01 — PV11<br>E02 — PV22<br>E03 — PFC3<br>E04 — SPCM<br>E05 — SGT5<br>E06 — SSG6<br>E07 — SFC7<br>E08 — MSG8<br>E09 — SGM9<br>E09 — CSM9 |

**Table 6–1**
**DD Form 1966 instructions—Continued**

| 19–83 through 19–84 | Enter gain transaction code. Code recorded in these blocks will be used to identify applicant's gain transaction type at time of enlistment. Codes are as follows:<br>H1 — Gain from civilian life and has prior Regular or Reserve service.<br>H2 — Gain from civilian life and does not have prior Regular or Reserve service.<br>HG — Reenlistment of person who has a break in USAR Selective Reserve service of more than 24 hours but less than 91 days.<br>HH — Reenlisted after a break in USAR Selective Reserve service of 91 days or more. |
|---|---|
| 20 | Name — Self-explanatory. |
| 21 | Social Security Number — Self-explanatory. |
| 22 | Education — Consists of two blocks (a and b). Complete as required. |
| 22a | List all high schools and colleges attended. Consists of blocks (1) through (5). |
| 22a(1) | Enter from date (YYYYMM). |
| 22a(2) | Enter to date (YYYYMM). |
| 22a(3) | Enter name of school. |
| 22a(4) | Enter location of school. |
| 22a(5) | If individual graduated, check "Yes". If not, check "No". |
| 22b | Check "Yes" if individual ever enrolled in ROTC, Junior ROTC, Sea Cadet Program, or Civil Air Patrol. Check "No" if not. |
| 23 | Marital/Dependency Status And Family Data - Consists of four blocks (a through d). Answer as appropriate. All "YES" answers require explanation in Section VI "Remarks." |
| 24 | Previous Military Service Or Employment With The U.S. Government — Consists of five blocks (a through e). Answer as appropriate. All "YES" answers require explanation in Section VI "Remarks." |
| 25 | Ability To Perform Military Duties — Consists of three blocks (a through c). Answer as appropriate. All "YES" answers require explanation in Section VI "Remarks." |
| 26 | Drug Use And Abuse — Answer as appropriate. All "YES" answers require explanation in Section VI "Remarks." |
| 27 | Name — Self-explanatory. |
| 28 | Social Security Number — Self-explanatory. |
| 29 | Certification Of Applicant — Consists of four blocks (a through d). Complete as required. |
| 30 | Data Verification By Recruiter — Consists of six blocks (a through f). Complete as required. |
| 31 | Certification Of Witness — Consists of six blocks (a through f). Complete as required. |
| 32 | Specific Option/Program Enlisted For, Military Skill, Or Assignment To A Geographical Area Guarantees — Consists of two blocks (a and b). Complete as required. |
| 33 | Certification Of Recruiter Or Acceptor — Consists of six blocks (a through f). Complete as required by guidance counselor. |
| 34 | Recertification By Applicant And Correction Of Data At The Time Of Active Duty Entry — Consists of five blocks (a through e). Complete as required. |
| 35 | Name — Self-explanatory. |
| 36 | Social Security Number — Self-explanatory. |
| 37 | Name Change — Consists of five blocks (a through e). Complete as required. |
| 38 | Name — Self-explanatory. |
| 39 | Social Security Number — Self-explanatory. |
| 40 | Parent/Guardian Statement(s) — Consists of six blocks (a through f). Complete as required. |
| 41 | Verification Of Single Signature Consent — Complete as required. |

## 6–13. Preparation of DD Form 4

DD Form 4 establishes a legal relationship between the U.S. Government and the enlisted member. Special care will be taken to see that all items are correct, without strikeover.

*a.* After MEPS personnel complete appropriate section, applicant will be returned to guidance counselor with DD Form 4 for review and signature.

*b.* After guidance counselor signs and certifies accuracy of all actions taken, and accepts applicant for DEP, RA, USAR, or ARNG enlistment, applicant returns to MEPS for completion of processing and enlistment.

*c.* After taking oath of enlistment, applicant and enlisting officer sign DD Form 4. A copy is given to the enlistee for personal records.

*d.* For applicants entering on AD from the DEP, MEPS types in all required data and sends applicant to the guidance counselor.

*e.* Guidance counselor reviews all forms, verifies eligibility for AD, ensures that any changes in applicant's status are properly documented, witnesses applicant's signature, and then signs and accepts applicant for RA enlistment.

*f.* After taking oath, applicant signs and the enlisting officer signs.

## 6–14. Actions before signature on DD Form 4
Before an applicant signs the confirmation of oath of enlistment on DD Form 4, the enlisting officer will—

*a.* Provide an orientation as required by AR 601–270.

*b.* Ensure applicants who have questions about their 8-year military obligation have all questions answered by the Army liaison before enlistment.

*c.* Ensure that no promises have been made to applicants, either direct or implied, that cannot be substantiated by proper regulations. Applicants who have any misunderstanding about the extent of their full enlistment commitment, specific options, or Army unique benefits will have them explained by the Army counselor, supported by this regulation.

*d.* Administer the oath of enlistment.

## 6–15. Correction of errors on enlistment forms
To correct errors found after applicant has enlisted and forms are distributed, the following procedures apply:

*a.* An immediate commander or designee may correct minor administrative and typographical errors found after distribution of forms. DA Form 4187 will be completed and DD Form 4 or DD Form 1966 will be corrected for RA and ARNG. A copy of the approved DA Form 4187 will be forwarded to Commander, U.S. Army Human Resources Command, (HRC–PDR–R), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303. A new DD Form 4 will be prepared for USAR. The revised page of DD Form 4 or its entirety will be completed, to include confirmation of enlistment. The date entered in item 16c by the enlisting officer will reflect the actual date that the oath on the revised DD Form 4 was administered. "CORRECTED COPY" will be printed in block letters at the top and bottom of each corrected page of the revised DD Form 4. The corrected pages of the DD Form 4 will be attached to the original DD Form 4. Corrections made to ARNG enlistment documents will be submitted to TAG's office.

*b.* To correct the DD Form 4 on length of service, see paragraph 8–6.

*c.* If a Soldier or the officer who has administered the oath of enlistment failed to sign DD Form 4 and distribution has been made, the official personal military file copy will be signed and a memorandum or DA Form 4187 explaining the circumstance will be attached. In addition, a new page of the DD Form 4 will be prepared and completed and appropriate signatures obtained; this copy will be annotated as a "CORRECTED COPY" for RA, USAR, or ARNG and appropriate distribution made. Assistance from USAREC, the U.S. Army Training and Doctrine Command, or U.S. Army Forces Command liaison will be obtained, as necessary.

## 6–16. Claims of erroneous entries
Authority to act on claims of erroneous entries on enlistment documents that are not delegated elsewhere in this chapter or in AR 600–8–104 is delegated to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303, for RA and USAR or Chief, National Guard Bureau, 1411 Jefferson Davis Highway, Arlington, VA 22202–4127, for ARNG. Requests relating to claims of erroneous entries must include a statement signed by the person; attach copies of substantiating documents that will assist in making a decision.

## 6–17. Orientation before administration of oath
Before giving the oath of enlistment to an applicant, the enlisting officer will—

*a.* Explain UCMJ, Article 83, to applicant and emphasize the importance of UCMJ with respect to truthful answers to questions on the enlistment forms.

*b.* Explain to all enlistees the substance of UCMJ, Articles 85 and 86.

*c.* Explain to applicants that anything in their record that may prohibit enlistment must be disclosed before the oath is administered. Explain to applicant that if disclosure is made at this time (before the oath of enlistment) the worst that can happen is rejection for enlistment.

*d.* Warn applicants that their fingerprints will be forwarded to the Federal Bureau of Investigation. Warn applicants that even though a person may conceal a criminal or juvenile record or PS at time of enlistment, such a record will be discovered later. The applicant will be subject to trial by court-martial for fraudulent enlistment or possible discharge under less-than-honorable conditions.

**6–18. Administration of oath of enlistment**

A commissioned officer of any Service will administer the oath of enlistment in DD Form 4 orally, in English, to each applicant. Make a suitable arrangement to ensure that the oath is administered in a dignified manner and in proper surroundings. Display the U.S. flag prominently near the officer giving the oath. The words "So help me God" may be omitted for persons who desire to affirm rather than to swear to the oath.

**6–19. Actions required after administration of the oath**

Immediately after the oath of enlistment, the enlisting officer will—

*a.* Require each enlistee to sign DD Form 4.

*b.* Provide each enlistee with a legible copy of enlistment forms.

**6–20. Predating an enlistment**

Except as indicated below, date of enlistment is the actual date the oath of enlistment is given. This date must be shown on the enlistment record above the signature of the officer who administered the oath. No enlistment will be predated without prior approval. A person's enlistment may be delayed through no fault of his or her own, but for the convenience of the Government. Requests to predate the enlistment will be sent to Deputy Chief of Staff, G–1 (DAPE–MPA), 300 Army Pentagon, Washington, DC 20310–0300 for RA, USAR, and ARNG.

# Chapter 7
# Regular Army and Reserve Components Civilian Acquired Skills Program

**Section I**
**Introduction**

**7–1. General**

This chapter provides policy and guidance for implementing the ACASP. ACASP attracts and uses persons with civilian-acquired skills required by the Army. Persons qualified for ACASP may be given an advance in grade upon enlistment.

**7–2. Objectives**

Objectives of ACASP are as follows:

*a.* Enlistment of qualified personnel with civilian-acquired skills needed by the Army.

*b.* Increased job satisfaction.

*c.* Improved personnel classification and use while MOS performance standards are maintained.

*d.* Reduced training loads and costs.

*e.* Added means for rapid mobilization.

**7–3. Procedures**

*a.* The DCS, G–1, develops policy for the ACASP.

*b.* The Commander, HRC, in coordination with the CAR will—

(1) Conduct periodic reviews and submit recommendations to DCS, G–1, 300 Army Pentagon, Washington, DC 20310–0300, for addition or deletion of skills to be updated in DA Pam 611–21, located at https://smartbook.armyg1.pentagon.mil/default.aspx.

(2) Develop criteria for skills to be added to the program and review and comment on recommendations submitted by other agencies.

(3) Coordinate with DCS, G–1, in developing annual procurement programs for each ACASP skill.

*c.* The CG, USAREC, and Chief, NGB, will—

(1) Implement processing procedures contained in this chapter.

(2) Develop and implement advertising and procurement plans and procedures to attract qualified applicants for the program.

*d.* ACASP enlistee commanders will ensure that ACASP enlistees are proficient at time of award of MOS as prescribed in DA Pam 611–21.

*e.* For enlistees assigned to special bands, ACASP enlistee commanders will—

(1) Assist USAREC in interview process of ACASP applicants.

(2) Assist USAREC with the selection process for assignment to one of the special bands listed—

*(a)* The U.S. Army Band.

*(b)* The U.S. Army Field Band.

*(c)* The U.S. Military Academy Band.

*(d)* The 3rd Infantry Regiment (The Old Guard) (Fife and Drum Corps).

(3) Administer accelerated promotion under provisions of AR 600–8–19.

*f.* Training center commanders will—

(1) Provide reception battalion processing and required training for ACASP Soldiers.

(2) For RA only, prepare and process ACASP Soldiers for overseas movement under AR 600–8–101 if Soldiers are to be assigned overseas after completing training.

## 7–4. Eligibility

*a.* The ACASP is available to qualified applicants with or without PS. Persons with skills acquired through military service will not be enlisted under this program. Members of the RC who were awarded an MOS based upon civilian-acquired skills and are applying for enlistment into the RA will be authorized to enlist under this program provided they are otherwise qualified. All PS applicants who have had a break in RA or RC service of 3 or more years, and who are qualified under this chapter, may enlist for ACASP regardless of former MOS. These applicants must meet all requirements, including basic eligibility. Applicants must—

(1) Meet basic eligibility criteria for enlistment (see chaps 2 or 3, as appropriate), skill training, and work experience, MOS prerequisites, and prerequisites of DA Pam 611–21. MOS prerequisites are available on a computer output display by using the Report of Qualification Program of REQUEST. When a person has unusual training or experience relevant to an MOS, requests for determination of equivalency may be submitted for consideration to DCS, G–1.

(2) Have had either training or experience in their civilian-acquired skills within 24 months of enlisting.

*b.* Exceptions for applicants qualified for ACASP but who do not meet or possess applicable ASVAB score and when no prerequisite MOS training is required may request through appropriate chain of command an exception to policy from DCS, G–1.

## 7–5. Enlistment periods

Minimum terms of enlistment for ACASP will be established by REQUEST and as announced by DCS, G–1 for special categories of persons and for selected MOSs.

## 7–6. Accelerated promotions

The ACASP enlistees assigned to one of the four special bands listed in paragraph 7–3 are authorized accelerated promotion under the provisions of AR 600–8–19.

## Section II
## Training Requirements

## 7–7. Basic training requirement

*a.* PS applicants who did not complete Army or Marine Corps BCT, or complete training for Air Force or Navy Special Operations Forces, or Air Force Security Police must attend Army BCT.

*b.* For RC only, applicants with no prior military service must complete at least 12 weeks of IADT and orders must reflect 12 weeks or until completion of training (10 USC 12103).

## 7–8. Requirement for prerequisite training

*a.* Some MOSs available under ACASP may require completion of a specified course as a prerequisite for awarding the MOS in accordance with DA Pam 611–21. Award of the ACASP MOS will not be considered until successful completion of all required training, including prerequisite training if required.

*b.* For RC personnel, prerequisite training may be accomplished during IADT or ADT at a later date, or through completion of correspondence courses or USAR schools, if available. However, other than training listed in DA Pam 611–21, MOS training during IADT will not be offered to ACASP applicants.

## 7–9. Requirement for proficiency training

*a.* The ACASP enlistment training options require completion of specified periods of proficiency training as a prerequisite for awarding of the MOS (for USAR, see para 7–8; for RA, this period is 8 weeks). Proficiency training is specified period or periods of time during which the enlistee functions in the MOS for which he or she enlisted. For RC, IADT proficiency training will be performed within 12 months of graduation from BCT. RC band enlistees must complete proficiency training as prescribed by Commandant, U.S. Army Element School of Music (see para 9–11e(2)).

*b.* The training is a transition period in which enlistees learn to apply civilian-acquired skills to the military. Commanders will use proficiency training and applicable IDT preparatory training time to evaluate each enlistee's

ability to function in the specific MOS. Before award of MOS and promotion to accelerated pay grade, the enlistees must be able to perform duty requirements of the MOS as described in DA Pam 611–21.

## Section III
## Army Civilian Acquired Skills Program Personnel Management

### 7–10. Determination of qualifications and enlistment grades

*a.* The ACASP applicants must present valid evidence of completion of required civilian training to enlistment authorities. This evidence may include certificates, transcripts, diplomas, union cards, or employment records showing the period of actual work experience, training received, degree of proficiency attained, and a summary of duties and training in a civilian-acquired skill. Training may include successful completion of union, industry, or Government-recognized training or apprenticeship programs. Certificates and diplomas submitted by applicants must bear the original seal of the institution awarding the document or be documented as true copies.

*b.* Persons who meet training and work experience requirements in accordance with DA Pam 611–21, and satisfy all other enlistment criteria, will be enlisted in pay grade E–4.

*c.* Classification interviewers at reception battalions will continue to review individual qualifications. They will identify Soldiers not recruited under the ACASP, but who should be processed under AR 612–201, as it applies to Soldiers with civilian-acquired skills. Soldiers found qualified under ACASP will be referred to the USAREC liaison.

### 7–11. Award of military occupational specialty, enlistment grade, and accelerated promotion

*a.* Applicants enlisting under the ACASP will be enlisted in pay grade E–4 if they meet the criteria in DA Pam 611–21. No additional accelerated promotion is authorized unless enlisting in the U.S. Army special bands.

*b.* Award of the ACASP MOS authorized by the enlistment agreement will be made either with approval of the unit commander or by the training commander for RA personnel, after successful completion of all training required by the enlistment program. For RA applicants, this includes 8 weeks of successful performance in the skill. Requests for award of ACASP MOS will be submitted to the appropriate MOS proponent office by the unit or training commander. After having been awarded the ACASP MOS, promotions will be governed by AR 600–8–19.

*c.* For RC band enlistees, PMOS 42R with applicable additional skill identifier will be awarded by Commandant, U.S. Army School of Music upon completion of all prescribed training and certification by the enlistee's band commander.

*d.* ACASP enlistees will be promoted to the next higher grade in accordance with AR 600–8–19 for RA, and AR 135–205 for USAR.

*e.* The commander with authority to promote may take action to deny award of the MOS for which the applicant enlisted. The commander will be guided in this determination by duty requirements of the Soldier's MOS as described in DA Pam 611–21. Reasons for denial of MOS may be any misconduct during the proficiency-training period or failure to demonstrate minimum required level of performance for the MOS. The Soldier must be advised in writing by the commander of the reason for denying the award of the MOS. A record of this counseling, including basis and results (for example, audition scores for band persons), will be entered in the Soldier's official record as a permanent document. The Soldier will indicate on the counseling statement that he or she has read the statement and has or has not submitted a statement in his or her own behalf.

*f.* For U.S. Army special band personnel, the accelerated grade will be awarded to qualified Soldiers without regard to time in grade, time in service, or promotion allocation. On denial of accelerated promotion to the applicable grade, the commander may retain the Soldier at the current grade. However, the Soldier must not already be serving in that grade. The commander may defer promotion for up to 4 more weeks for RA. If so, the Soldier may be promoted to the higher grade or denied promotion at any time after completion of the initial proficiency period and the deferred period as indicated above. Interim promotions pending final decision are not authorized. A final decision must be made by the end of the deferred period. Persons failing to perform successfully in the skill and who are not provided accelerated promotion will be considered for future promotions along with their contemporaries under AR 600–8–19, as appropriate.

*g.* Denial of award of MOS to ACASP Soldiers for reasons cited in paragraph 7–12*e* will not constitute a breach of enlistment contract or agreement, nor result in an unfulfilled enlistment commitment. Commander will generate reclassification action on the affected Soldier according to his or her aptitude scores coupled with the needs of the Army.

*h.* PS applicants, authorized to be promoted to pay grade E–5 under paragraph 3–17 (RA) or paragraph 3–18 (for USAR) can still be enlisted under this program. However, enlistment grade will be determined by CG, HRC, Eligibility Inquiry Section. Enlistment grade for USAR PS applicants will be determined by the recruiting battalion commander or executive officer or military personnel office for members of the ARNG.

## 7–12. Army Civilian Acquired Skills Program enlistment control

The ACASP enlistments will be controlled by HRC through the REQUEST System. If a skill is not available, applicant will be advised of other enlistment opportunities available.

## 7–13. Annual training

For RC only, NPS applicants who enlist under the ACASP may not be ordered to AT until successful completion of BCT.

## 7–14. Mobilization readiness and deployability

*a.* Enlistees under ACASP will be reported as MOS qualified for mobilization readiness when all of the following actions are accomplished:

(1) Successful completion of BCT.

(2) Satisfaction of prerequisite training if required by the MOS for which enlisted.

(3) Award of ACASP MOS as PMOS based on satisfactory completion of proficiency training (to be determined by unit commander using DA Pam 611–21 as a guide).

(4) Promotion to accelerated grade shown on enlistment agreement (for U.S. Army Special Bands only).

*b.* 10 USC 671 requires a minimum of 12 weeks of BCT, or equivalent, before a member of the military service may be deployed overseas. The DCS, G–1, has determined that completion of training programs and options outlined in paragraph 7–8 equals the 12–week BCT requirement of the statute.

## Section IV
## Enlistment Processing Procedures

## 7–15. Processing procedures

*a.* Processing procedures as outlined in an applicant's selected enlistment option will apply. Also, procedures outlined below will be followed for all ACASP applicants.

*b.* Recruiters will review and verify each applicant's qualifications before sending him or her to a guidance counselor. Guidance counselor will verify qualifications and complete necessary enlistment forms and processing.

(1) Each applicant will submit documents that verify intent to enter civilian schooling, length and successful completion of education, training, and experience for the applicable skill. These documents must bear the original seal of the issuing agency or be certified as a true copy. Documents will include, but are not limited to the following: school transcripts; certificates of completion of training; certificates of registration with a Board of Registry or professional society; diplomas; employment records; union membership cards; certification as civil service apprentice or journeyman; and letter or document attesting to acceptance in a civilian postsecondary training program. SF 50 (Notification of Personnel Action) may be used as well as a certification of applicant's typing or dictation, when required.

(2) Applicants must present documentary evidence described in DA Pam 611–21.

(3) For RA and RC, if applicant is currently enrolled in an approved course with satisfactory academic standing, and is enlisting in the DEP, applicant is eligible for ACASP. Applicant must present proof of enrollment, academic standing, course graduation date, and a letter from the school signed by the school administrator, prior to DEP enlistment. If the applicant fails to graduate or receive course certification, applicant becomes ineligible for ACASP and enlistment contract must be renegotiated at pay grade for nonACASP, or the applicant will be discharged from the DEP.

## 7–16. Skills available for enlistment and unit vacancies

Skills available for enlistment and unit vacancies will be ascertained by REQUEST before completion of ACASP enlistments. Unit vacancies will be verified with the proper unit if required by REQUEST. If REQUEST does not provide a requirement, applicant will not be enlisted under this chapter. They will be offered other enlistment opportunities without entitlement to ACASP and accelerated promotion under this chapter. Guidance counselor will include a statement to this effect in the remarks section of DD Form 1966.

*a.* All requested training spaces for PS applicants enlisting under ACASP will be coordinated through USAREC.

*b.* For RC only, PS personnel with a remaining statutory obligation will—

(1) Enlist for the number of years required to fulfill remaining statutory obligation period, or as prescribed in chapter 3.

(2) If prerequisite MOS training is required, enlist in the pay grade authorized by chapter 3, but not less than pay grade E–4.

*c.* For RC only, PS personnel with no remaining statutory obligation will enlist or reenlist for a period as prescribed

in chapter 3. All personal documents used to verify applicant's qualifications will be copied and included in the enlistment packet. Original documents will be returned to applicant.

# Chapter 8
# Actions Required After Enlistment

## 8–1. General
This chapter covers procedures that apply to the final processing phase of the new Soldier. Processing a new Soldier is not complete until he or she finishes training. During this time, processing errors or misunderstandings may occur. They must be resolved because accurate records are vital to a Soldier's military career, civilian life, and Family, before and after his or her death.

*a.* The USAREC liaison is the primary source for ensuring that records are corrected expeditiously. The liaison will provide a memorandum that addresses all changes made along with support for the changes. The liaison will forward the memorandum to the Soldier along with the enlisted record brief and the finance record.

*b.* Soldiers who have reported to their first duty assignment will see their personnel office for assistance. Retention liaisons are responsible to correct enlistment records and will execute the memorandum as noted in paragraph 8–1*a*.

## 8–2. Reporting procedures
*a. Reception battalion.* The reception battalion will establish finance, medical, and personnel records on each Soldier. Reception personnel will ensure that the enlistment commitment, if extended, is entered on the enlisted record brief.

*b. Installation.* The installation where the Soldier received initial training will report the Soldier to HRC as a training arrival, in accordance with reporting procedures contained in AR 612–201.

*c. Training center.* As part of in-processing, the training center will—

(1) Screen records and orders for special category personnel. Report persons with enlistment commitments by name and commitment to the CG, HRC.

(2) Compare assignment instructions with enlistment records to see that enlistment commitments have been honored. Report inconsistencies immediately to the CG, HRC for resolution. Affected Soldiers will not proceed to permanent duty stations until the CG, HRC has made corrected assignments. Procedures for processing assignment instructions for initial entry training Soldiers are in AR 612–201.

## 8–3. Waivers of enlistment commitments (not applicable to Reserve Components)
*a.* After a person enters the Army, any portion of the enlistment commitment may be waived. However, such waivers should be used sparingly and only when reasons are valid (for example, compassionate or hardship reasons, or when the Army is unable to fulfill an enlistment commitment). Prepare the waiver in writing. A waiver is not automatic and it is not designed for Soldiers to change their enlistment unless unusual or Government-directed circumstances exist. The procedures below apply—

(1) RA enlistees with commitments for training and duty in a specific MOS or career management field, assignment to a specific unit, and an enlistment incentive may not waive the training without waiving the incentive.

(2) RA enlistees who waive the unit assignment commitment, but not the incentive, may be assigned to an installation or unit authorized personnel with the incentive skill.

(3) RA enlistees with an incentive commitment who have a contractual agreement for training, or for training and a specific unit assignment, may waive the incentive commitment to apply for some other training or assignment.

(4) Enlistment commitment waivers will—

*(a)* Be prepared in an applicable human resources system.

*(b)* Be electronically signed in the applicable human resources system self-service application by the enlistee.

*(c)* Be verified electronically in the applicable human resources system self-service application by a commissioned officer, warrant officer, or a DA civilian designated as a military personnel officer or USAREC liaison NCO.

*(d)* Contain wording substantially as follows: "I voluntarily waive my enlistment commitment for (blank) made at the time of my enlistment. I fully understand that, as a result of doing so, I will be assigned in accordance with any remaining portion of my enlistment commitment and the needs of the Service, and will be required to complete the full term of service for which I enlisted."

*b.* The original of the above certificate of enlistment commitment waiver will be forwarded to Commander, U.S. Army Human Resources Command, (HRC–PDR–R), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303. Place the original copy in the Soldier's official military personnel file. Attach a duplicate to the DD Form 4 copy of the Soldier's enlisted record brief. Retain both copies for the first term of the Soldier's enlistment.

*c.* When an enlistment commitment for an authorized assignment is waived before reporting date, the waived commitment will be reported to the office that authorized the assignment.

*d.* An entry will be made on DA Form 2–1 (Personnel Qualification Record), item 4, and enlisted record brief, indicating the waived enlistment commitment.

*e.* Commanders at all levels will set up procedures and policies to review enlistment commitments at the time the enlisted members arrive at the unit. Commanders will take necessary action to ensure that commitments made to enlistees are fulfilled.

## 8–4. Erroneous or unfulfilled enlistment commitments

When a Servicemember feels a breach of enlistment commitment by the Government has occurred, the Servicemember has a reasonable time, normally 30 days, to present a claim against the Government. The time starts from the date the Servicemember is informed that his or her commitment will not be honored, or the Servicemember discovers that the commitment has been breached.

*a.* Above time limits will be applied with discretion in each case.

*b.* Per paragraph 8–6, claims will be forwarded that—

(1) Cannot be resolved at the local level.

(2) Should be honored by the Government for contractual commitment to the enlistee or alleged verbal commitment that was made to the enlistee.

*c.* If it is discovered that an enlistee was erroneously enlisted in accordance with AR 635–200 or if the enlistee reveals information that, if known, could have resulted in rejection for enlistment before departure from the MEPS, then procedures for voiding erroneous enlistment in AR 635–200 will be followed.

## 8–5. Processing claims of unfulfilled or erroneous enlistment commitments

*a. Unfulfilled enlistment commitments.* An unfulfilled enlistment commitment exists when the Soldier receives a written enlistment commitment from recruiting personnel for which the Soldier is qualified but which cannot be fulfilled by the Army through no fault of the Soldier. Refer claims to the recruiting command liaison NCO for resolution. For claims of persons who have departed the reception battalion, the unit commander will—

(1) Review the person's enlisted record brief to determine validity of the claims. Authorize the Soldier to fulfill the enlistment commitment if he or she desires to satisfy the enlistment according to procedures outlined in AR 635–200.

(2) Help prepare memorandum request for Soldiers for unfulfilled enlistment commitments that cannot be resolved and forward to CDR, HRC. Subject of memorandum will be "Correction of Unfulfilled Enlistment Commitment."

*(a)* The request with enclosures below will be forwarded to Commander, U.S. Human Resources Command (AHRC–EPR–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

*1.* DD Form 4.

*2.* DD Form 1966.

*3.* DA Form 3286 and annexes completed for the claimant.

*4.* Enlisted record brief.

*5.* SF 86.

*6.* MEPS physical examination, if required, and related documents (for example, consultation reports).

*7.* Waiver of enlistment commitment or statement that the official military record does not show that the enlistment commitment was waived.

*8.* Sworn or notarized statement from claimant affirming the facts.

*9.* Other statements or documents to help evaluate the claim.

*(b)* The third copy of the request (including copies of enclosures in para 8–5*b*(1)) will be forwarded to Commander, U.S. Army Recruiting Command (RCES–RI), 1307 Third Avenue, Fort Knox, KY 40121–2725. Also, a DA Form 209 (Delay, Referral or Follow-up Notice) addressed to claimant will be sent with request.

(3) Submit request to help establish correct enlistment grade, with substantiating evidence and statements, to Commander, U.S. Army Human Resources Command (AHRC–EPF–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

(4) Process claims on erroneous home of record, or other entries not covered above, in accordance with paragraph 8–5.

(5) HRC will return unresolved claims of unfulfilled enlistment commitments to the unit commander for processing according to procedures outlined in AR 635–200.

*b. Erroneous enlistments.* When it is discovered that a Soldier's enlistment is erroneous because he or she failed to meet the qualifications for enlistment of this regulation, the unit commander will initiate action to obtain authority to retain, discharge, or release the Soldier from AD or ADT. Refer claims to the recruiting command liaison NCO for resolution. For claims of persons who have departed the reception battalion, the unit commander will forward correspondence containing the information below through channels to the appropriate separation authority according to AR 635–200.

(1) Facts relating to and circumstances surrounding the erroneous enlistment or extension.

(2) The desire of the Soldier regarding retention or separation.

(3) A specific recommendation for retention or separation, and the reasons, by each commander in the chain of command.

(4) After the appropriate separation authority has reviewed the facts surrounding the Soldier's erroneous enlistment, he or she will take action to retain or separate the Soldier according to the administrative procedures outlined in AR 635–200.

## 8–6. Correction of term of enlistment and other contract inquiries

*a.* It may be discovered that an error has been made in-processing an enlistment so that the term of enlistment shown on DD Form 4 is for a longer term than intended. If so, unit commanders will submit a request for correction through military channels to Commander, U.S. Army Human Resources Command (AHRC–EPF–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303 for RA Soldiers, or to Commander, U.S. Army Reserve, (AFRC–PRP–E), 4710 Knox Street, Fort Bragg, NC 28310–5010 for USAR Soldiers (whose DD Form 4 is in question) that enlisted through USAREC. ARNG Soldiers will submit requests through channels to the respective State TAG. The request will contain the following data:

(1) Sworn statement by member and other involved persons. The statement will give circumstances of enlistment.

(2) Evidence to support claim of error in period of enlistment shown on—

*(a)* DD Form 4.

*(b)* DD Form 1966.

*(c)* DA Form 3286.

*(d)* Other documents that support claim.

(3) Statement from person that he or she consents to the correction of term of enlistment shown on the DD Form 4.

*b.* If the change to term of enlistment or other contract issues are a result of a DA directive, provide any and all correspondence or messages that apply. The CG, HRC (AHRC–EPF–P) must determine whether an error has been made in the term of enlistment shown on the DD Form 4 (for example, term of enlistment may be other than that intended by both the member and the Army). If so, DD Form 4 will not be amended by "pen and ink" correction. Instead, a memorandum will be added to the member's file reflecting the correct term. The CG, HRC, will make a decision on all cases where Soldiers allege an error occurred. Consult DCS, G–1 (DAPE–MPA), on questionable cases.

(1) Every effort will be made to correct the error in an applicable human resources system self-service application upon approval by the appropriate authority. For example, if an individual was enlisted at pay grade E–1, but provides bachelor's degree, the current commander has the authority to promote to E–4 under chapter 2 of this regulation and adjust DOR to date of enlistment if degree was earned prior to BASD. Document must be provided within 6 months of BASD. Cite policy and forward to finance office for action.

(2) Doubtful cases that cannot be resolved elsewhere in this chapter regarding a Soldier's status or how to correct any of the following can be addressed by contacting DCS, G–1 (DAPE–MPA):

*(a)* Rank.

*(b)* Incentive (see para 8–10).

*(c)* Enlistment option.

*(d)* ACASP.

*c.* Claims from personnel at reception battalions will be referred to the USAREC liaison NCO for resolution. Claims for personnel in training, or for Soldiers who have completed formal training, will be processed by the installation personnel in accordance with paras 8–6*a* through *d.*

*d.* The USAREC liaison NCO will provide assistance to accomplish the following:

(1) Obtain and review documents in support of the claim.

(2) Generate a memorandum to correct the error. Forward memorandum to reception battalion commander or designated representative for approval (forward questionable cases to DCS, G–1 (DAPE–MPA) for resolution).

(3) A copy of the memorandum reflecting the correction(s) will be placed in the Soldier's records next to the DD Form 4

*e.* Under no circumstances will a contract be amended when a Soldier objects or claims entries are incorrect until appropriate resolution or inquiry is completed.

*Note.* DD Form 4 will be maintained in its original state should it ever be needed in a legal proceeding.

## 8–7. Correction of enlistment grade

Correction of enlistment grade, after enlistment documents have been executed, is accomplished by a promotion or reduction action via an applicable human resources system self-service application. Enlistment documents will not be altered to reflect the different grade. Comply with appropriate provisions of AR 600–8–19. Assistance in establishing an individual's eligibility for a different grade based on enlistment contract and supporting documents may be requested from the DCS, G–1 (DAPE–MPA). Requests must include copies of substantiating documents or statements.

The Servicemember will be advised of the right to apply to the Army Board for Correction of Military Records, when all other administrative remedies have been exhausted.

## 8–8. Extension of term of enlistment

Extension to term of enlistment is authorized. If term is to be lengthened, a DA Form 1695 (Oath of Extension of Enlistment) must be administered for payment of an incentive. Extension document will be evidence of eligibility if all other documents support a bonus. Distribute DA Form 1695 as follows:

*a.* Original to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

*b.* Copy to enlisted record brief.

*c.* Copy to personnel finance record folder.

*d.* Copy to the USAREC liaison.

*e.* Copy to the Soldier.

## 8–9. The U.S. Army Recruiting Command liaison role for processing Regular Army/U.S. Army Reserve Soldiers in the reception battalion

The primary mission of the USAREC liaison is to save enlistments that might be endangered as a result of breaches or administrative error in the enlistment process and/or contract. The USAREC liaison will renegotiate erroneous, defective, or unfulfilled enlistment contracts per USAREC instructions.

*a.* USAREC liaison will process RA/USAR problems at the reception battalion only.

*b.* USAREC liaison will provide technical assistance when requested.

*c.* Upon departure from the reception battalion, processing becomes the responsibility of the U.S. Army Training and Doctrine Command RA/USAR liaison, who will handle cases according to guidance issued by Headquarters, U.S. Army Training and Doctrine Command.

*d.* A U.S. Army Training and Doctrine Command liaison is required to report any recruiting errors or contractual problems not previously detected by the USAREC liaison to the recruiting battalion and to Headquarters, USAREC, for action.

## 8–10. Correction of contracts and annexes involving enlistment incentives

In instances where the USAREC liaison or U.S. Army Training and Doctrine Command liaison NCO cannot solve contract errors regarding enlistment bonus amounts, Army College Fund, MGIB Kicker amounts, or student loan repayment through USAREC channels, the following agencies will be contacted for guidance and have the authority to correct incentives-related actions via an applicable human resources system self-service application:

*a.* RA contracts: Refer to Commander, U.S. Army Human Resources Command (AHRC–EPF–R), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

*b.* USAR contracts (recruited by USAREC): Refer to Commander, U.S. Army Reserve Command (AFRC–PRP), 4710 Knox Street, Fort Bragg, NC 28310–5000.

*c.* ARNG contracts: Refer to Chief, U.S. Army National Guard (ARNG–GSE–I), 111 South George Mason Drive, Arlington, VA 22204–1382. Refer questionable cases to Deputy Chief of Staff, G–1 (DAPE–MPA–CB), 300 Army Pentagon, Washington, DC 20310–0300.

# Chapter 9
# Enlistment Programs, Options, and Incentives

## Section I
## Basic Eligibility Criteria

## 9–1. General

*a.* Enlistment programs/options are designed to merge valid Army requirements with personal desires. To best serve these two purposes, recruiting personnel must ensure that—

(1) Persons applying for specific options are informed of—

*(a)* The precise nature of commitment.

*(b)* The extent to which specific options will satisfy applicant's personal desires.

(2) Persons accepted for specific options possess prescribed prerequisites to meet performance standards of the Army.

*b.* This chapter provides the general description of all authorized enlistment programs and options. For RA, statements for enlistment will be entered in DA Form 3286. Applicants enlisting in the USAR will acknowledge Service requirements based on options and enlistment statements in DA Forms 4824 (Addendum to Certificate and

Acknowledgement of Service Requirements (DA Form 3540) for All Personnel Applying for Participation in the Reserve Officers Training Corps (ROTC)/Simultaneous Membership Program (SMP)), DA Form 4826 (Addendum to Certificate and Acknowledgement of Service Requirements (DA Form 3540) for Enlistment Under the Alternate Training Program), DA Form 5585 (Addendum to Certificate of Acknowledgement of Service Requirements (DA Form 3540) for Enlistment into the U.S. Army Reserve Troop Program Unit Warrant Officer Flight Program), or DA Form 5586 (Addendum to Certificate of Acknowledgement of Service Requirement for Enlistment into the United States Army Reserve Officer Candidate School Enlistment Option).

*c.* The Enlistment Incentives Review Board and Multi-component Enlisted Incentives Review, for both the RA and RC, chaired by DCS, G–1 (DAPE–MPA), will meet quarterly. Representatives from USAREC, HRC, DAPE–PR, USAR, and ARNG will attend.

(1) The RA Enlistment Incentives Review Board will analyze and adjust the application and amounts of enlistment incentives in order to meet manpower requirements and recruiting objectives.

(2) The Multi-component Enlisted Incentives Review will review incentives across all Army components and ensure incentives policy is consistent, within statutory restraints, and meets manpower requirements and recruiting objectives.

(3) The USAR and ARNG will hold quarterly incentives reviews prior to the Multi-component Enlisted Incentives Review as determined by the respective component to formulate internal incentives programs consistent with the SRIP, as defined in chapter 10.

## 9–2. Qualifications

All applicants must be qualified for enlistment under basic eligibility criteria established in this regulation and the following:

*a.* AR 40–501.

*b.* DA Pam 611–21.

*c.* Current HQDA messages for RA and the approved SRIP for RC programs.

*d.* Current area of concentration and operational messages for ARNG.

## 9–3. Honoring enlistment commitments

Every effort will be made to honor all promises made at time of enlistment or reenlistment. To meet commitments, recruiting personnel will—

*a.* Comply with specific option procedures.

*b.* Promise only what is authorized.

*c.* Follow procedures to report and assign persons enlisted for an option.

*d.* Detect errors promptly so that the person may be assigned under his or her enlistment commitment.

*e.* Submit requests for exception to policy or waiver involving individual bonuses, loan repayment, and MGIB Kicker (Army College Fund) to the DCS, G–1 (DAPE–MPA) for consideration.

## 9–4. Counseling on waivers affecting options

Applicants who receive a waiver for enlistment will be advised of the following:

*a.* Applicants who require waivers under chapter 4 for limitations that may apply to their selection of enlistment options will be specifically counseled. Options that require security clearance may require that persons have no record of civil offenses or records reflecting adversely on the person's character. Applicants for such options will be advised that their final eligibility cannot be determined until after their enlistment.

*b.* Applicants will be advised that waiver of disqualification does not imply an eventual favorable decision on option eligibility. If applicant elects such an option after counseling, advise that the Army may void the option if he or she is later determined to be ineligible. The person then may be required to complete the term of service for which he or she enlisted. Further advise the applicant that omissions of any information he or she was required to disclose, including expunged records, may later be a basis for an unfavorable decision on option eligibility.

*c.* Applicants will be advised that most options have other conditions that cannot be determined until after the person enlists. If these conditions are not met, the Army may void the option without giving rise to an unfulfilled enlistment commitment. The "Information for Applicants" section of each option requires that such information be explained to all applicants prior to enlistment.

## 9–5. Selection of an additional option (for Regular Army only)

Qualified applicants who enlist for options given in this chapter may select other options in connection with the chosen primary option. If the chosen option combinations are to be effective, requirements for each option must be met. Failure to qualify for one of the options does not void remaining options if applicant remains qualified for those options.

## 9–6. Incentives and entitlements for Selected Reserve Service

Qualified applicants who enlist for the USAR or ARNG may be entitled to one or more of the following incentives or entitlements, prescribed by chapter 10:

*a.* SRIP NPS enlistment bonus.

*b.* SRIP PS enlistment bonus.

*c.* Student Loan Repayment Program (SLRP) (10 USC 16301).

*d.* Health Professionals Loan Repayment Program (10 USC 16302).

*e.* Chaplain Loan Repayment Program (10 USC 16303).

*f.* MGIB for Selected Reserve Service (10 USC 16131).

*g.* MGIB 2 x 4 Program (38 USC 3012).

*h.* MGIB for AD Service (concerning AGR entitlements) (38 USC 3015).

*i.* MGIB for Selected Reserve Kicker.

*Note.* The SRIP reenlistment bonus and the SRIP affiliation bonuses are described in AR 601–280. RC SLRP and MGIB are described in AR 601–280 for retention related options, and full procedures and eligibility are described in AR 621–202. Health professional incentives are described and managed in AR 601–141. SRIP officer incentives are described in chapter 10.

## Section II
## Regular Army Enlistment Programs and Options

## 9–7. Enlistment Program 9A, U.S. Army Training Enlistment Program

This program is available to qualified NPS, PS, and glossary NPS applicants enlisting for the minimum term of enlistment authorized by REQUEST. PS applicants must be authorized to retrain in order to enlist under this program.

*a.* Under this program the enlistee is guaranteed—

(1) A specific MOS or career management field.

(2) Airborne training if REQUEST option four with an uncommitted assignment is selected.

(3) Language and intelligence MOS/training, if selected, and qualifications are met for the selected MOS.

*b.* All enlistees must meet the prerequisites and qualifications before and after enlistment, per DA Pam 611–21.

*c.* Primary enlistment options available for enlistment are—

(1) REQUEST Option 3: U.S. Army Training of Choice.

(2) REQUEST Option 4: U.S. Army Airborne.

(3) REQUEST Option 6: U.S. Army English as a Second Language.

(4) REQUEST Option 10: U.S. Army Foreign Language Recruiting Initiative.

(5) REQUEST Option 18: U.S. Army First Assignment Only.

(6) REQUEST Option 40: U.S. Army Airborne Ranger.

*d.* All applicants will be—

(1) Provided orientation on the nature of training and duties in the MOS/ career management field selected.

(2) Informed that the training selected is based on current training requirements existing at the time of applicant's enlistment. Also, one of the following may occur: training selected may be discontinued before attendance; Soldier later may become medically disqualified for training selected; or Soldier may fail to receive required security clearance. If any one of these events occurs, the Soldier will be given the chance to select related training or any other training for which qualified and a training requirement (quota) exists. An alternate selection will be honored. Soldier will be required to complete the term of service for which enlisted. If Soldier does not desire alternate training, the Solider may initiate a request for unfulfilled enlistment commitment according to AR 635–200.

(3) Advised that the course length for training is not guaranteed and that the Army may change the course length or numeric designation of an MOS (enlistment remains valid provided that the MOS does not change content substantially.)

(4) Advised that this program does not guarantee, imply, or promise any assignment upon completion of AIT. Further, no guarantee that the Soldier will or will not be assigned to an overseas location will be made. Recruiters and guidance counselors cannot make speculations or verbal commitments with regard to any provisions of this program.

(5) Advised that if relieved from training for academic deficiency, disciplinary reasons, or failure to receive required security clearance because of information withheld by applicant at time of enlistment, then the Soldier will be assigned according to the needs of the Army and required to complete the term of service for which enlisted.

(6) Advised that this program may be combined with an incentive program if the applicant meets the requirements of the incentive program and then enlists for an MOS under such program.

(7) Advised of the following specific provisions when enlisting for an MOS that requires language training:

*(a)* Relief from school course for academic deficiency, disciplinary reasons, or failure to obtain required security clearance is basis for reassignment under needs of the Army. Soldier will be required to complete the term of service for which enlisted.

*(b)* DA makes every effort to use language-qualified personnel. Language school graduates may be assigned duties

in an appropriate country or area, or be given training in another MOS based on the needs of the Army before first duty assignment.

*(c)* For persons who possess proficiency in the language for which enlisting, the course length may be reduced by authority of the Director, Defense Language Institute. (If proficiency meets criteria of RA and USAR Civilian Acquired Skills Program (chap 7), this program will not be used for enlistment.)

(8) Informed of the following when enlisting under the U.S. Army Trainee English Second Language Option:

*(a)* Soldier will not initially be guaranteed training in any specific MOS/career management field, or assignment to any specific station, command, unit, or area.

*(b)* Soldier will be required to attend the English Language Training Program.

*(c)* Soldier will be administered the ECLT upon completion of training. If score is 75 or greater, Soldier will be required to retake the ASVAB.

*(d)* The resulting scores from the ASVAB retest will become the scores of record from which qualifications for training and enlistment programs will be determined. If a score of at least 21 is not obtained on the ASVAB retest, with at least one qualifying aptitude area score, the Soldier will be assigned an MOS and enlistment program based upon his or her initial ASVAB scores.

*(e)* If neither the ASVAB retest nor the initial ASVAB scores qualifies the Soldier for an MOS and enlistment program(s), then the Soldier will be separated from the Army.

*(f)* If the Soldier fails to attain the required score of 75 or better on the ECLT, then he or she will be separated from the Army regardless of AFQT and aptitude area scores. English Language Comprehension Enlistment Option is open to all applicants who do not speak or write the English language proficiently. The English Language Comprehension Enlistment Option will allow applicants, who do not possess basic English proficiency skills, to enlist in the RA unassigned and attend an English Language Training Program. Upon completion of the English Language Comprehension Enlistment Option program, Soldiers will be administered the ECLT. Soldiers scoring 75 or greater will be required to take the ASVAB and score a 21 or greater AFQT to qualify for a MOS according to appropriate aptitude area scores.

## 9–8. Enlistment Program 9B, U.S. Army Station-Unit-Command-Area Enlistment Program

This program is available to qualified NPS, PS, glossary NPS, and ACASP applicants enlisting for the minimum term of enlistment authorized by REQUEST. Applicants under the age of 18 will not be considered for, nor assigned to overseas locations.

*a.* Under this program, enlistee is guaranteed—

(1) For NPS, PS with training, or glossary NPS with training—

*(a)* A specific MOS or career management field.

*(b)* A first assignment to a station, unit, command, or area.

*(c)* Airborne training if REQUEST option four with a committed assignment is selected.

*(d)* A minimum of 12 months from arrival date at the first duty assignment.

(2) For ACASP, PS, or glossary NPS (which may require prerequisite training)—

*(a)* A first assignment to a station, unit, command, or area.

*(b)* Airborne training if REQUEST option four with a committed assignment is selected.

*(c)* A minimum of 12 months from arrival date at the first duty assignment.

*b.* All enlistees must meet prerequisites before and after enlistment, per DA Pam 611–21.

*c.* Primary enlistment options available for enlistment include—

(1) REQUEST Option 4: U.S. Army Airborne with First Assignment.

(2) REQUEST Option 7: U.S. Army Buddy Team.

(3) REQUEST Option 18: U.S. Army First Assignment Only.

(4) REQUEST Option 19: U.S. Army Station of Choice.

(5) REQUEST Option 20: U.S. Army Select Station of Choice.

(6) REQUEST Option 21: U.S. Army Select Unit/Station of Choice 2 Year Stabilization.

(7) REQUEST Option 23: U.S. Army Cohesion Operational Readiness Training (COHORT).

(8) REQUEST Option 24: U.S. Army 2 Year Category IIIB with First Assignment.

(9) REQUEST Option 25: U.S. Army Security Assignment.

(10) REQUEST Option 26: U.S. Army 2 Year NPS.

(11) REQUEST Option 30: U.S. Army 2 Year PS.

(12) REQUEST Option 34: U.S. Army Select Unit.

(13) REQUEST Option 40: U.S. Army Airborne Ranger.

*d.* Applicants will be informed of the following:

(1) Persons enlisting under this program who fail to meet prerequisites or become medically or otherwise disqualified for training or duty in the chosen or enlistment MOS will be trained or used according to the needs of the Army. They will be required to complete the term of service for which enlisted.

(2) Applicant may elect to waive enlistment program at any time. If so, he or she will be used according to the needs of the Army and be required to complete the term of service for which enlisted.

(3) Advise applicants enlisting for Fort Hamilton, NY, that they may be assigned duties within the New York City metropolitan area.

(4) If the station, unit, command, or area to which a person is assigned or attached under the provisions of this program is deployed, relocated, reorganized, or redesignated, the person will remain with the unit of assignment. No guarantee of "location" is made when enlisting for a specific area, unit, or command.

(5) If the station, unit, command, or area is inactivated, disbanded, or discontinued, the person will be subject to reassignment according to the needs of the Army.

(6) Person may be subject to periods of temporary duty on an individual basis away from the station of choice for which enlisting. Such periods of temporary duty will not count against guaranteed stabilization period.

(7) Persons may receive initial assignment at interim location to unit undergoing training. That unit will deploy to the station of choice upon successful completion of training. Stabilization starts upon arrival at station.

(8) If a Soldier is enlisting for a COHORT designated unit, the following information will be provided:

(a) COHORT units have rotation schedules between the continental United States and outside the continental United States locations.

(b) Although it is the intent to train and assign members of the same COHORT training package as a group, there are instances where a group that has trained together is split up in the COHORT unit and, as a result, does not violate or otherwise breach the contract. Enlistees for COHORT, however, will be assigned to the unit (division) for which enlisting. No guarantee of specific company, battalion, or brigade is implied.

(c) Because COHORT units have rotation to overseas areas and units that are located in overseas areas have additional inter-theater rotations, applicants will meet the overseas tour length requirement for the area in order to have a with dependents tour. This sometimes requires an extension of the enlistment period to meet the requirements of AR 614–30. This requirement includes Alaska and Hawaii.

(9) Applicants enlisting under the U.S. Army Buddy Team Enlistment Option will be guaranteed—

(a) To start training and complete training at the same unit provided all prerequisites are met.

(b) The same unit of assignment upon completion of training.

## 9–9. Enlistment Program 9C, U.S. Army Incentive Enlistment Program (Enlistment Bonus, Army College Fund, Loan Repayment Program)

This program is available to qualified NPS, PS, and ACASP applicants enlisting for the minimum term of enlistment, when authorized by HQDA enlistment incentives message. Previously disenrolled SROTC cadets who were scholarship recipients are not entitled to incentives under this paragraph. Incentives will be offered using REQUEST and message will be updated quarterly or as required. All enlistees must meet the prerequisites before and after enlistment per DA Pam 611–21. Primary Incentive Enlistment Options available for enlistment are available in REQUEST as offered and determined by the DCS, G–1 (Directorate of Military Personnel Management). When a member enlists under the DEP, with a concurrent commitment to serve in an RC, the award level of the enlistment incentive is fixed on the date of enlistment in the DEP, rather than on the date of entry on AD, unless otherwise directed by DCS, G–1 (DAPE–MPA).

*a.* Under this program, enlistees may be eligible for—

(1) Enlistment bonus enlistment bonus.

(2) Army College Fund.

(3) Loan Repayment Program.

*b.* Applicants will be informed of the following:

(1) *Enlistment bonus.*

(a) Enlistees who voluntarily or because of any misconduct, fail to satisfactorily complete AIT or one station unit training, will be trained in another MOS. They will complete their term of enlistment based upon the needs of the Army, unless separated for administrative or disciplinary reasons. In the above instances, the bonus will not be paid. Refer to the latest HQDA incentives message to determine which incentives may not be impacted by failure to complete MOS training.

(b) Persons who have been paid an enlistment bonus and who become disqualified to perform duties in the selected skill because of injury, illness, or other impairment (not the result of any misconduct by the person) will be retrained, if necessary, and used according to the needs of the Army. Such persons will be required to complete the term of their enlistment. In the above instance, the person will not have to repay the unearned portion of the enlistment bonus.

(c) Persons who become medically or otherwise disqualified for duty in the MOS awarded and have been paid a bonus will be retrained, if necessary, and used according to the needs of the Army. Such persons will be required to complete their term of enlistment and may keep the bonus.

*(d)* Soldiers paid the enlistment bonus must (unless otherwise directed by HQDA) serve in the designated MOS for the period of enlistment (including changes in MOS due to normal skill progression).

*(e)* Persons who do not complete their term of enlistment for which the enlistment bonus was paid, or persons who are not technically qualified in the skill for which the enlistment bonus was paid, may be required to refund the unearned portion of such enlistment bonus (refer to the most recent HQDA incentives guidance and AR 601–280 for RA; and chapter 10 of this regulation for RC or former RC entering the RA).

*(f)* Soldiers must meet security clearance requirements for the MOS or skill selected. Enlistment incentives are authorized upon MOS and/or skill qualification, which may be prior to final security clearance approval by outside agencies. Soldiers must be counseled that non-approval of such clearance may result in reclassification or recoupment in accordance with paragraph 10–9.

*(g)* The bonus is—

*1.* Payable in accordance with the current HQDA enlistment incentive message as published by Enlisted Accessions Division, DAPE–MPA.

*2.* Payable at first duty station after being awarded their MOS.

(2) *Army College Fund.* This program provides additional education assistance in addition to that earned under the MGIB.

*(a)* The money earned is deposited in the Soldier's Veterans Administration account. Normally, the funds will be dispersed to the participant in 36 equal monthly installments while the person is enrolled in an approved program of education. A Soldier who fails to qualify for MGIB (for example, if he or she separates with a less than an honorable discharge) or who fails to complete his or her initial term of enlistment in the MOS which offered the Army College Fund, forfeits entitlement to all benefits provided by the Army College Fund unless discharged for service connected disability, hardship, or convenience of the Government. If discharged for the convenience of the Government, the following minimum time must have been served: 20 months for 2-year enlistees, and 30 months for all other terms (3 years or longer). Although an individual who separates early for certain qualifying reasons may earn partial (for example, hardship or disability) or even full MGIB (for example, in instance of convenience of the Government discharge with 20/30 month rule). The Army College Fund is earned on a prorated basis for up to 36 months. Individuals who contract for the Army College Fund for 3 or more years, who do not complete at least 36 months, but who may be eligible for partial or even full "basic" MGIB, will have a reduced/prorated Army College Fund.

*(b)* Army College Fund participants must enroll in the basic MGIB. Applicants will have $100 per month reduced from their pay during their first year on AD. Once a decision to enroll in the MGIB has been made, this decision cannot be withdrawn, monthly pay deduction cannot be stopped (until $1200 has been collected), and deductions are nonrefundable.

*(c)* Soldiers must remain qualified and in the incentive MOS for the duration of the initial enlistment, unless otherwise directed by HQDA. Change of MOS because of normal career progression is authorized.

(3) *Loan Repayment Plan Incentive Option.*

*(a)* Open to NPS applicants only. Not authorized for days of service applicants, except as described in HQDA–MPA–CB incentives message.

*(b)* Soldier must disenroll from the MGIB or the Post 9–11 GI Bill.

*(c)* The Army is authorized to repay—

*1.* Any loan made, insured, or guaranteed under the Federal Family Education Loan Program (20 USC 1071);

*2.* Any loan made, insured, or guaranteed under the William D. Ford Federal Direct Loan Program (20 USC 1087a);

*3.* Any loan made, insured, or guaranteed under the Federal Perkins Loans (20 USC 1087aa); or

*4.* Any loan incurred for educational purposes made by a lender that is—

*a.* An agency or instrumentality of a State.

*b.* A financial or credit institution (including an insurance company) that is subject to examination and supervision by an agency of the United States or any State.

*c.* From a pension fund or a nonprofit private entity (subject to case-by-case review and approval by HQDA–MPA–CB).

*(d)* Provided the applicant meets and maintains the prescribed prerequisites and has qualifying loans in good standing, accepting the Loan Repayment Program ensures that the portion or amount of loan that may be repaid is $1500 or 1/3 of the amount of the qualifying loans, whichever is greater for every year of service. The Army does not pay interest or fees or reimburse Soldiers for payments already made on loans.

*(e)* Repayment is made only after each successful year of AD performed commencing on the date of RA enlistment or commissioning.

*(f)* The Soldier must be advised that repayment amounts paid by the Government are subject to Federal and State income taxes as taxable income each year that payment is made.

*(g)* Soldiers must remain qualified and in the incentive MOS for the duration of the initial enlistment, unless otherwise directed by HQDA. Change of MOS because of normal career progression is authorized.

**9–10. Enlistment Program 9D, U.S. Army Officer/Warrant Officer Enlistment Program**
This program is available to qualified NPS, PS, and glossary NPS applicants enlisting for the minimum term of enlistment authorized by REQUEST. If enlisting for OCS, applicant must have received a baccalaureate or higher degree. If enlisting for WOFT, applicant must be a high school graduate or equivalent. Applicants in their senior year of either high school or of a 4-year college program may be enlisted into the DEP contingent upon successful completion of high school (for WOFT) or receipt of a Bachelor of Arts or Bachelor of Science (for OCS). HRC and USAREC will establish additional documents and processing procedures for applicants interested in applying for this program. OCS and WOFT applicants must have a general technical score of 110 or greater.

*a.* Under this program—

(1) An NPS qualified applicant is guaranteed enrollment in OCS or WOFT upon successful completion of BCT.

(2) PS and glossary NPS applicants are guaranteed enrollment in OCS or WOFT.

(3) Prerequisites that must be met before enlistment—

*(a)* If enlisting for OCS, the applicant must—

*1.* Meet the basic eligibility criteria for enlistment as modified by this enlistment program.

*2.* Possess documentary proof of a baccalaureate or higher degree from accredited college or university. Foreign transcripts must be evaluated according to paragraph 2–7*f.* Applicants in their senior year of a college program leading to the award of a baccalaureate degree may be enlisted in the DEP if a letter or transcript is provided indicating the expected graduation date.

*3.* Be a U.S. citizen.

*4.* No have more than 10 accumulative years of active Federal service at time of appointment as a commissioned officer. Applicants with 9 years of active Federal service at time of application should be carefully processed to ensure that expected graduation date allow commissioning before reaching the 10th year of service

*5.* Be at least 19 years of age and not have passed his or her 33rd birth date at time of shipment to training, and must accept commission prior to age 34 (waivers considered).

*6.* Meet medical standards prescribed for officer candidates, according to AR 40–501.

*7.* Meet the weight and body fat standards of AR 600–9, regardless of category (NPS, glossary NPS, or PS).

*8.* Must have been screened for Secret clearance eligibility and attain a Secret clearance to continue to serve as an officer or warrant officer. Further, the applicant must not have served as a commissioned officer, not to include a commissioned warrant officer. Further, the applicant must not have served as a commissioned officer or warrant officer. Per 10 USC 571(b), warrant officer ones (W01s) are appointed by warrant, while appointments to chief warrant officer two and higher are made by commission. Further, per 10 USC 101(b)(2), for the purposes of 10 USC, the term "commissioned officer" includes a commissioned warrant officer.

*9.* OCS applicants will be informed of the following:

*(b)* Army OCS is conducted at Fort Benning, GA, and is 14 weeks long. Branches in which officers are trained vary according to the needs of the Army. These needs are greater in Combat Arms than in other branches.

*(c)* Applicants must fully understand that the OCS preference statement does not make or imply a guarantee of OCS assignment or commissioning branch.

*(d)* Graduates normally are commissioned in one of the following branches: Infantry, Armor, Medical Service Corps, Signal, Engineers, Field Artillery, Transportation, Quartermaster, Finance, Chemical, Ordnance, Military Intelligence, Adjutant General, Military Police, and Air Defense Artillery. This list is subject to change without notice.

*(e)* Training for OCS is designed to place the Soldier in and under physical, mental, and emotional pressure to simulate the stress and fatigue of combat. From the date of entry into the Army, the Soldier will undergo extensive and intense training until graduating from OCS.

*(f)* OCS candidates are administratively promoted to the grade of E–5 while attending OCS. OCS candidates that are administratively eliminated or medically disqualified from OCS will be reduced in grade as determined by the Commandant, OCS.

*(g)* OCS candidates are not eligible for the Army College Fund.

*(h)* OCS selection boards will be conducted by HQDA, USAREC for all OCS applicants.

*b.* WOFT applicants will be informed of the following:

(1) Meet the basic eligibility criteria for enlistment as modified by this enlistment program.

(2) Possess documentary proof of a high school diploma or higher education degree. A high school senior may apply if he or she is currently enrolled in an established high school as defined for a high school diploma graduate and is expected to graduate within 365 days. It is preferred that applicants have at least 2 years of college.

(3) Be at least 18 years of age prior to shipping to IADT and no more than 32 years of age at the start of flight training.

(4) Meet the weight and body fat standards of AR 600–9, regardless of category (NPS, glossary NPS, or PS).

(5) Be not taller than 76 inches or shorter than 64 inches in height.

(6) Agree to accept appointment or commission as a warrant officer for an indefinite term in the USAR and serve on AD for not less than 72 months after successful completion of flight training.

(7) Undergo a complete type "A" medical examination for class "1" flight, prescribed by AR 40–501. Report of such examination will include electrocardiographic tracing and ophthalmology consultation. Class "1" physicals must be approved by the Aeromedical Center, Fort Rucker, AL, before accession.

(8) Not have attended or have been eliminated or graduated from a previous course of military-sponsored flight or preflight instruction program.

(9) Be a U.S. citizen.

(10) Possess a favorable NACLC.

(11) Meet all prerequisites and processing requirements established under this program.

*c.* All enlistees must meet the prerequisites before and after enlistment, per DA Pam 611–21.

*d.* Primary enlistment options available for enlistment include—

(1) REQUEST Option 11. U.S. Army Officer Candidate School.

(2) REQUEST Option 12. U.S. Army Warrant Officer Flight Training.

(3) Enlistment for OCS.

(4) Enlistment for WOFT.

*(a)* To be eligible for primary flight training, enlistees must successfully complete the 6-week WOCS (described in the Army Training Requirements and Resources System Course Catalog) at the Warrant Officer Career Center, Fort Rucker, AL.

*(b)* Applicants will be informed of the nature of flight training and the assumed duties and responsibilities of an aviation warrant officer.

*(c)* Those who fail to meet the prerequisites or who voluntarily withdraw from the WOFT Program will be required to serve the remainder of their enlistment as an enlisted member.

*(d)* Warrant officer candidates are administratively promoted to the grade of E–5 upon entry into WOCS. Candidates who are administratively eliminated or medically disqualified from WOCS will be reduced in grade as determined by the Commandant, Warrant Officer Career Center.

*(e)* The WOCS and WOFT start dates for training are tentative and subject to change by HQDA.

*(f)* Applicant will be advised that his or her flight physical must remain valid in accordance with AR 40–501. Changes in medical condition or expiration of his or her flight physical prior to completion of WOCS will require a subsequent flight physical in accordance with AR 40–501.

*(g)* Upon successful completion and graduation of WOCS, applicant will be appointed to the grade of WO1. Newly appointed warrant officers are then directed to 145th Aviation Regiment, U.S. Army Aviation Center, Fort Rucker, AL, for their initial entry rotary wing flight training.

*(h)* The WOCS and WOFT candidates are not eligible for Army College Fund.

*(i)* All applicants applying for the WOFT Enlistment Option Program will be boarded at Headquarters, USAREC.

## Section III
## United States Army Reserve Enlistment Programs

### 9–11. Enlistment Program 9E, U.S. Army Reserve Bands Enlistment Program

This program is available to qualified NPS and PS applicants for enlistment in the USAR who meet criteria for ACASP as modified by this chapter. The Office of the Chief, USAR and USAREC will assist in the interview and process coordination of applicants interested in applying for this program.

*a.* Under this program, qualified applicants are guaranteed—

(1) Assignment to a USAR Band.

(2) Accelerated appointment to an advanced pay grade without regard to time in grade or time in-service requirements.

(3) Enlistment pay grade E–4.

*b.* All enlistees must meet the prerequisites before and after enlistment, per DA Pam 611–21 and chapter 7 of this regulation, as applicable.

*c.* Available enlistment options for this program are listed in chapter 7.

*d.* Applicants must be—

(1) Oriented on duties associated with MOS in which person is to be enlisted, as outlined in DA Pam 611–21.

(2) Advised that failure to complete BCT may result in separation from USAR under AR 635–200 or AR 135–178, accordingly.

(3) Advised that failure to demonstrate technical competence or perform satisfactorily during applicable IDT preparatory training or proficiency training period could result in delay or denial of appointment to accelerated pay grade and MOS reclassification or reassignment.

*e.* Record entries and orders apply as follows:

(1) For applicants required to enter IADT, orders will be prepared using proper format, as prescribed by AR 601–270, and will contain "U.S. Army Reserve Enlistment Program 9E, USAR Bands Program, AR 601–210."

(2) One of the following statements will be entered on DD Form 1966—

*(a)* Enlisted for USAR Bands Program for ACASP MOS (specify) with appointment to pay grade (specify) and completion of BCT and proficiency training on initial entry training (minimum 12 weeks) and return to unit.

*(b)* Enlisted for USAR Bands Program for ACASP MOS (specify) with appointment to pay grade (specify) and completion of BCT and return to unit to complete 48 hours proficiency training during IDT.

## 9–12. Enlistment Program 9F, U.S. Army Reserve Military Intelligence, Signals Intelligence, Electronic Warfare, and Signal Security Units Enlistment Program

This program is available to qualified NPS and PS ACASP applicants enlisting for the minimum term of enlistment authorized by REQUEST.

*a.* Under this program, qualified applicants will be guaranteed—

(1) Assignment to a USAR Military Intelligence, Signals Intelligence, Electronic Warfare, or Signal Security Unit.

(2) Training prior to unit assignment.

*b.* All enlistees must meet the prerequisites before and after enlistment in DA Pam 611–21, as applicable.

*c.* This is a special USAR Enlistment Program that will be identified on REQUEST and will not contain any REQUEST options.

*d.* Applicants will be informed of the following:

(1) Some training may require a 4-year enlistment.

(2) Applicants will be subject to proper personnel security investigation. Continued assignment or attachment will depend on a continuing favorable security determination.

(3) If applicant fails to meet any required prerequisite after enlistment, another unit may be selected if vacancy exists and for which applicant is qualified.

(4) Failure to complete BCT may result in separation from the USAR under AR 635–200 or AR 135–175.

(5) Withholding or denial of information required for security clearance processing will be just cause for release from this program.

(6) Applicants not initially approved for access to special intelligence information through no fault of their own will be counseled and may be given the chance to select another unit for which qualified and vacancy exists.

## 9–13. Enlistment Program 9G, U.S. Army Reserve Individual Ready Reserve Direct Enlistment Program

This program is available to qualified NPS and PS applicants enlisting in the USAR under chapter 3. Applicants must have no remaining MSO and be MOS qualified to enlist under this program.

*a.* Under this program, qualified applicants are guaranteed—

(1) Enlistment in the USAR.

(2) A concurrent assignment to the USAR Control Group (Reinforcement).

*b.* All enlistees must meet the prerequisites before and after enlistment, per DA Pam 611–21.

*c.* Applicants will be informed of the following:

(1) Time spent in the IRR will count toward computation of time in grade and time in service for promotion consideration and longevity for pay purposes.

(2) A member of the IRR is not entitled to receive pay unless serving on AD or ADT.

(3) Promotion consideration will be under policy currently in effect for members of the IRR (see AR 600–8–19).

(4) Fifteen points are awarded for each year for membership in the Ready Reserve. Member must accrue 50 points per year for 20 years to qualify for retired pay on reaching age 60.

(5) Members of the IRR may be involuntarily ordered to AD in time of war or national emergency declared by the President, Congress, or under any other conditions authorized by law.

(6) All military correspondence will be completed and promptly returned.

(7) Changes of address will be report to Commander, U.S Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

## 9–14. Enlistment Program 9H, U.S. Army Reserve Officers' Training Corps/Simultaneous Membership Program

This program is available to qualified NPS and PS applicants qualified for enlistment in the USAR who can meet criteria for enrollment in the ROTC Military Science (MS) curriculum (MS II, III, or IV).

*a. Program description.*

(1) Guarantees assignment to a Selected Reserve unit in a paid drill status.

(2) Guarantees simultaneous training as an ROTC cadet and a member of a USAR TPU after enrollment in the ROTC program.

(3) Accelerated appointment to pay grade E–5 on enrollment in the ROTC.

*b. Prerequisites.* All enlistees must meet the prerequisites in AR 145–1 before and after enlistment.

*c. Reserve Officers' Training Corps/Simultaneous Membership Program.* Is a voluntary officer training program that requires USAR enlisted status for eligibility.

*d. Limitations.*

(1) *Longevity credit.* In computing length of service for any purpose, per 10 USC 2106, only the officer's former service executed in their capacity as an enlisted member in a Selected Reserve unit, during ROTC as part of the SMP, qualifies as creditable service.

(2) *Reserve Officers' Training Corps scholarship recipients.* Except for recipients of the Reserve Forces Duty Scholarship Program, who are required to participate in the ROTC/SMP, cadets receiving financial assistance under the Army ROTC Scholarship Program are not eligible to participate in the ROTC/SMP. A cadet in the ROTC/SMP may apply for an ROTC scholarship; however, the cadet will be transferred from the TPU to Control Group (ROTC) prior to acceptance of such scholarship, except as stipulated.

(3) *Maximum participants.* The total number of ROTC/SMP participants assigned to an regional readiness command at any one time will not exceed 4 percent of the authorized total (officer and enlisted) strength of the command. Cadets assigned to one TPU may be attached to another TPU located close to an ROTC detachment. However, the total number of cadets drilling with any one TPU may not exceed three per commissioned officer supervisor.

(4) *Basis for direct enlistment or selection for assignment to officer-trainee positions.* A Soldier may be enlisted as a potential participant, or a cadet may be selected as a participant, for assignment to an officer-trainee position in a TPU on the basis of three officer-trainee positions for each assigned officer in an authorized position. The Soldier or cadet will be assigned as overstrength against that officer position. Soldiers will be assigned to position 9991 on the unit manning report as officer candidates and not against specific paragraph and line positions.

(5) *Priority for direct enlistment or selection for assignment to officer-trainee positions.* The number of Soldiers or cadets applying to participate in the ROTC/SMP with a given TPU may exceed the number of officer-trainee spaces available. Should this occur, the specific order of priority below will be used for selection.

*(a)* First priority is for a current USAR TPU Soldier not enrolled in the ROTC (MS II, MS III, or MS IV); however, the applicant must be eligible for enrollment and must complete, or have completed, basic training.

*(b)* Second priority is for a Soldier assigned to a Control Group of the IRR, other than Control Group (ROTC). The applicant must be reassigned to the TPU, not currently enrolled but eligible for enrollment in the ROTC (MS II, MS III, or MS IV), and must have completed basic training.

*(c)* Third priority is for the enlistment of a PS applicant. The applicant must be eligible for enrollment in the ROTC (MS II, MS III, or MS IV).

*(d)* Fourth priority is for the enlistment of an NPS applicant who has completed 3 or 4 years of Junior ROTC and has been granted placement credit by the PMS for entry into MS II or MS III.

*(e)* Fifth priority is for the enlistment of an NPS or PS applicant who is not enrolled in the ROTC (MS II, MS III, or MS IV), but has completed the ROTC Basic camp.

*(f)* Sixth priority is for the enlistment of an NPS or PS applicant who is not enrolled in the ROTC (MS II, MS III, or MS IV), but has completed MS I.

*(g)* Seventh priority is for the enlistment of a NPS applicant required to complete basic training to qualify for enrollment in the ROTC (MS II, MS III, or MS IV).

*(h)* Eighth priority is for the reassignment of a cadet enrolled in the ROTC (MS II, MS III, or MS IV) from Control Group (ROTC) to the USAR TPU.

(6) *Bonus incentives and loan repayment programs.*

*(a)* An NPS or PS applicant enlisted under Option 9–H is not eligible for an SRIP enlistment bonus or participation in the loan repayment programs (see chap 5).

*(b)* A Soldier reassigned from the IRR to a USAR TPU as a potential participant in the ROTC/SMP is not eligible for the SRIP affiliation bonus (see para 10–15).

(7) *Montgomery GI Bill entitlement.*

*(a) Montgomery GI Bill for service on active duty (38 USC Chapter 30 and Section 3011).* A Soldier entitled to educational assistance under the MGIB for service on AD (38 USC 3011) retains such entitlement on enrollment in the ROTC (MS II, MS III, or MS IV) and participation in the ROTC/SMP.

*(b) Montgomery GI Bill for Selected Reserve Service (10 USC 106).*

*1.* A Soldier enlisted as a potential participant is entitled to enrollment in the MGIB if he or she completes or has completed initial entry training, has been awarded an MOS, and meets the eligibility criteria of chapters 5 and 8 prior to enrollment in the ROTC Advanced Course (10 USC 1606). ROTC/SMP participants who have completed BCT and have been coded as 09R are not eligible for USAR MGIB.

*2.* A Soldier currently entitled to educational assistance under the MGIB will retain such entitlement on enrollment in the ROTC (MS II, MS III, or MS IV) and retention in a TPU as a cadet participating in the ROTC/SMP.

*3.* A cadet reassigned from Control Group (ROTC) to a USAR TPU to participate in the ROTC/SMP is not eligible for MGIB entitlement.

*4.* Termination of MGIB entitlement is prescribed by this regulation.

*e. Applicant's requirements.*

(1) Agree, on successful completion of ROTC Advanced Course, to include ROTC Leader Development and Assessment Course (LDAC), to volunteer for commissioning.

(2) Agree to enroll in ROTC (MS II, MS III, or MS IV) within 1 year after enlistment in USAR.

(3) Be of good moral character as evidenced by record in home community.

(4) Be a citizen of the United States.

(5) Scholarship applicants must be at least 17 years of age within the first semester in which the scholarship is to begin benefits. Students cannot contract until they have reached their 17th birthday. Additionally, 10 USC 2107 requires applicants to be under 31 years of age on 31 December of the year in which they are to be commissioned. Age requirement for scholarship cadets is governed by 10 USC 2107 (waiver not considered).

(6) Nonscholarship applicants must be at least 17 years old to contract in the Basic Course/Advanced Course (MS II, MS III, or MS IV). Applicants under 18 years old, and those who are minors for the purpose of executing contracts under the laws of the State which has jurisdiction where the school is located (even if older than 18), require parental consent for contracting in the advanced course. Applicants must not be 35 years old or older at the projected time of commissioning. Waivers will be considered between 35 and 39 years of age at the projected time of commission for uniquely qualified individuals that are guaranteed Reserve Forces Duty only.

(7) Meet medical fitness standards prescribed in AR 40–501, chapter 2, for enrollment in ROTC Basic Course/ Advanced Course (MS II, MS III, or MS IV).

(8) Have qualifications for becoming an effective Army officer as evidenced by appearance, record, personality, scholarship, extracurricular activities, and aptitude for military training.

(9) Achieve minimum qualifying total score of 850 on the College Entrance Examination Scholastic Aptitude Test, composite score of 19 on the American College Test, or minimum total score of 85 on the Preliminary Scholastic Aptitude Test. If these scores are not available, or, if the person does not qualify on Scholastic Aptitude Test, American College Test, or Preliminary Scholastic Aptitude Test, recruiting brigade commanders may approve waivers for enlistments in cases where applicant achieved a general technical score of 110 or higher. All applicants must have an ASVAB score of record to enlist.

(10) Agree to enroll for a minimum of 2 years in a full-time regular course of instruction leading to a baccalaureate or advanced degree at an eligible institution hosting, or having a cross-enrollment agreement with another institution hosting, an Army ROTC program. To be eligible, institution must be a civilian institution accredited to award baccalaureate degrees, or any military junior college that does not confer baccalaureate degrees.

(11) Meet requirements of AR 145–1 (see placement credit table) for entry into ROTC Basic Course/Advanced Course (MS II, MS III, or MS IV), or agree to meet this requirement within 229 days following enlistment.

(12) For PS applicants, must agree to minimum term of service of 4 years on enlistment. NPS applicants must enlist for an 8-year term of service.

(13) Present a completed PMS Certification to the station commander or Army guidance counselor.

(14) Complete DA Form 4824.

(15) Participate satisfactorily with the TPU at all scheduled training assemblies and AT periods. Member will be excused on request from AT during the year he or she is required to attend ROTC LDAC.

(16) If the member has no prior military service, enter on IADT within 270 days after enlistment to successfully complete an 8-week BCT.

(17) If member has prior military service and has accomplished a basic training course on AD or ADT conducted by a U.S. Armed Force, entry on IADT to complete 8-week BCT is not required.

(18) Enroll into ROTC (MS II, MS III, or MS IV) within 1 year.

(19) BCT requirement: This option does not apply to persons already enrolled in ROTC (MS II, MS III, or MS IV); these individuals are transferred from ROTC (Control Group) to the TPU. They have already executed the DD Form 4 when enlisting for ROTC, under 10 USC 511a. Applicants eligible under this option enlist under 10 USC 511d and, if they previously have not completed BCT, they must be scheduled within 270 days.

(20) The ROTC/SMP participants may apply for ROTC scholarships; however, they will be transferred from TPU assignment and reassigned to Control Group (ROTC).

(21) Failure to apply for and enroll in the ROTC (MS II, MS III, or MS IV) within 1 year after enlistment will cause the member to be dropped as a potential ROTC/SMP participant. Member then will be retained in the unit in an enlisted status until completion of the statutory or contractual MSO. Member also will be required to undergo any IADT not previously completed, to include AIT for MOS qualification if required.

(22) Should potential ROTC/SMP participant not be accepted for enrollment in ROTC Advanced Course, request discharge from current enlistment agreement or retention in the TPU in enlisted status.

(23) Should member become disenrolled from ROTC (MS II, MS III, or MS IV); fail to volunteer for the Early

Commissioning Program; fail to accept a commission; or fail to be tendered a commission, if otherwise qualified, they will be retained in the unit in an enlisted status until completion of the statutory or contractual MSO. Member would be required to undergo any IADT not previously completed, to include AIT for MOS qualification, if required. After being dropped as an ROTC/SMP participant, enlisted pay grade will be determined under AR 600–8–19.

(24)  Applicants enlisting for this option are not entitled to enlistment incentives under current DA policies prescribing the SRIP or similar Federal directives governing incentive programs.

(25)  If applicant is otherwise eligible for USAR enlistment in a TPU, interview applicant to determine probable eligibility for enlistment under this option.

(26)  Obtain from guidance counselor verification that an officer vacancy exists in the TPU to which applicant will be assigned on enlistment. Provide applicant with PMS Certification; request applicant have certification completed by PMS and returned before enlistment processing.

(27)  On receipt of completed PMS Certification that shows applicant has a reasonable chance for acceptance on application for enrollment in ROTC (MS II, MS III, or MS IV), complete enlistment processing as required by chapter 6.

*f. Record entries and orders.*

(1)  Copies of the PMS Certification will be included in all distributed enlistment packets.

(2)  For applicants required to enter on IADT, orders prepared using AR 600–8–105 will contain "ROTC/SMP Program, Program 9–H, AR 601–210" as the response to the "Auth" lead line, and will stipulate that period of training is to be 8 weeks to complete BCT.

*g. Reserve Officers' Training Corps Advanced Course enrollment eligibility.* To enroll in the ROTC Advanced Course nonscholarship program under this chapter, a Soldier must—

(1)  Be assigned to a Selected Reserve unit.

(2)  Have a remaining statutory or contractual service obligation of 4 or more years at time of enrollment.

(3)  Meet the eligibility standards in AR 145–1 (see enlistment in the United States Military Academy and USAR ROTC/SMP) and not be ineligible per AR 145–1 (see eligibility of members of the U.S. Armed Forces).

(4)  Agree that on successful completion of the ROTC Advanced Course (to include the Advanced Camp), he or she will volunteer for commissioning in the ROTC Early Commissioning Program if—

(5)  He or she was not enlisted in the TPU under Option 9–H.

(6)  He or she is not scheduled to receive a baccalaureate degree within 8 months of completion.

*h. Cadet Reserve Officers' Training Corps/Simultaneous Membership Program participation eligibility.* For reassignment from Control Group (ROTC) to a Selected Reserve TPU to participate in the ROTC/SMP, a cadet must meet the following eligibility criteria. Waivers are not authorized. The cadet must—

(1)  Be enrolled in the ROTC (MS III or MS IV) nonscholarship program.

(2)  Be assigned to a verified officer-trainee position in a TPU.

(3)  Meet the body composition/weight control standards per AR 600–9.

(4)  Agree to volunteer for commissioning under the provisions of the ROTC Early Commissioning Program on successful completion of the ROTC Advanced Course (to include ROTC Advanced Camp) if, on completion, the cadet is not scheduled to receive a baccalaureate degree within 8 months.

(5)  Be processed under the provisions of this paragraph.

*i. Policy applicable to a potential participant (09R10).* The following policy and procedures are applicable to a Soldier not enrolled in the ROTC Advanced Course, but has enlisted, or been reassigned, as a potential participant in the ROTC/SMP.

(1)  *Potential participant.* A "potential participant" is a Soldier who is not enrolled in the ROTC (MS III or MS IV), has been enlisted under Option 9–H, or is assigned to a TPU, and executes a DA Form 4824 in conjunction with a DA Form 3540 (Certificate and Acknowledgement of U.S. Army Reserve Service Requirements and Methods of Fulfillment).

(2)  *Reserve Component status.* The Soldier will serve in the enlisted rank and pay grade he or she attained.

(3)  *Identification.* A potential participant will be identified by using reporting code 09R10 for the primary and duty MOS on enlistment documents (DA Pam 611–21). TPU vacancy must be reserved on REQUEST as reporting code 09R20. The Commander, HRC will report potential participants to the Office of the Secretary of Defense through the RCs Common Personnel Data System using RC category designators "S" or "U," as appropriate, and training retirement category designators "A" or "P," as appropriate.

(4)  *Pay.* A potential participant is paid in the pay grade and years of service attained by the Joint Uniform Military Pay System-Reserve Components under training retirement category "P" or "A." Effective the date of enrollment in the ROTC Advanced Course, the Soldier's rank is cadet and he or she will be advanced to pay grade E–5 for pay purposes while in the officer-trainee position, if in a pay grade less than E–5.

(5)  *Duty.* A potential participant will perform duty in an MOS in which qualified. If not MOS qualified, the Soldier will train in a duty MOS as determined by the TPU commander.

(6) *Satisfactory performance.* The Soldier serving as a potential participant is subject to the same standards for satisfactory performance as all other enlisted Soldiers assigned to the TPU.

(7) *Status on mobilization or call to active duty.* Although the potential participant is an assigned enlisted member of a Selected Reserve TPU, contracted ROTC cadets are to be considered non-deployable until they either receive their commission and complete their officer basic course, or they are disenrolled from the program. Therefore, contracted cadets will not be mobilized, called, or ordered to AD in an enlisted grade or rank, unless they are disenrolled from the program.

(8) *Failure to enroll in the Reserve Officers' Training Corps Advanced Course.*

(a) *Soldier does not apply for enrollment.* A Soldier who enlists under Option 9–H and does not apply for enrollment in the ROTC Advanced Course within 1 year following enlistment will be dropped as a potential participant. The Soldier will be retained in a TPU in an enlisted status until completion of his or her contractual service obligation. If the Soldier has not previously completed initial entry training and been awarded an MOS, or if the Soldier is not qualified for TPU duty MOS, then the Soldier must complete any required initial entry training or MOS qualification training.

(b) *Soldier is not accepted for enrollment.*

*1.* A Soldier who enlists under Option 9–H and is not accepted for enrollment in the ROTC Advanced Course within 1 year following enlistment will, at his or her request, either be discharged from the USAR (AR 135–178), or retained in a TPU in an enlisted status until completion of contractual service obligation. If the Soldier requests retention and has not previously completed initial entry training and been awarded an MOS, or if the Soldier is not qualified for a TPU duty MOS, then the Soldier must complete any required initial entry training or MOS qualification training.

*2.* A Soldier who enlisted under another USAR enlistment option and subsequently was selected as a potential participant, must apply for enrollment in the ROTC Advanced Course within 1 year following selection. If the Soldier is not enrolled or is not accepted for enrollment in the ROTC Advanced Course within 1 year following selection, the Soldier will be dropped as a potential participant. The Soldier will be retained in the USAR and continue to serve under the terms of the enlistment agreement or statutory MSO that existed prior to selection as a potential participant.

*3.* Policy applicable to a participating cadet (09R20). The following policy and procedures are applicable to a cadet enrolled in the ROTC Basic/LDAC (MS III or MS IV) and participating in the ROTC/SMP.

(9) *Participant.* A "participant" is a cadet enrolled in the ROTC Basic/LDAC (MS III or MS IV) who is simultaneously assigned to a TPU of the Selected Reserve as an officer-trainee.

(10) *Reserve Component status.* The rank of an ROTC/SMP participant is cadet (AR 600–20). While enrolled in the ROTC (MS III or MS IV), a participant will wear the insignia of an ROTC cadet, and orders issued for any purpose will cite the participant's rank as cadet.

*Note.* A cadet is not a NCO or member of the NCO Corps and is not authorized to wear the insignia of an NCO. A lateral appointment from cadet to a NCO rank is not authorized while the cadet is enrolled in the ROTC (MS III or MS IV).

(11) *Identification.* A cadet participating in the ROTC/SMP will be identified using reporting code 09R20 as the primary and duty MOS on personnel records and data systems (DA Pam 611–21), HRC, reports ROTC/SMP participants to the Office of the Secretary of Defense through the RCs Common Personnel Data System using RC category designator "U" and training retirement category designator "T." Cadets will be assigned to position 9991 on a TPU unit manning report and not to a specific paragraph and line.

(12) *Pay.* A cadet is paid in the pay grade and years of service attained, but not less than pay grade E–5 (para 10–6d), by Joint Uniform Military Pay System-Reserve Components under training retirement category "T." While participating as a cadet in the ROTC/SMP until the date of commissioning, adjustments to pay will include basic pay table increases, basic allowance for subsistence, basic allowance for quarters, and drill pay based on years of service and longevity for creditable service in the computation of base pay. The subsistence allowance entitled a cadet enrolled in the ROTC (MS III or MS IV) is not affected by the cadet's participation in the ROTC/SMP.

(13) *Duty.* A cadet is an officer trainee and will be assigned duties commensurate with the grade of second lieutenant, but such duties will be performed under the close supervision of a commissioned officer.

(14) *Satisfactory performance.* A cadet participating in the ROTC/SMP is subject to the same standards for satisfactory performance and participation as all contractually obligated officers and enlisted Soldiers assigned to the TPU. Failure to meet these performance and participation standards may result in cancellation of the ROTC/SMP agreement (DA Form 4824) and reassignment from the TPU to Control Group (ROTC), or disenrollment from the ROTC (MS III or MS IV).

(15) *Status on mobilization or call to active duty.* On a partial or full mobilization, by a declaration of war or national emergency by Congress, or call to AD of the Selected Reserve by the President under emergency powers, a cadet (officer-trainee) will be treated as an officer or potential officer. The cadet may be commissioned immediately or be provided further precommissioning training as determined by the Secretary of the Army. A cadet, after commissioning, may be mobilized or called to AD with his or her assigned TPU to fill officer unit vacancies at the time of mobilization or call to AD but is not eligible for deployment until completion of officer basic course branch training. An assigned or attached cadet does not affect the mobilization readiness condition of the TPU and will not be included

in the TPU's readiness reporting. Unless disenrolled from the ROTC Advanced Course per AR 145–1, a cadet will not be mobilized, called, or ordered to AD in an enlisted grade or rank.

(16) *Annual training.* Cadets will be excused on their request from AT during the year they are required to attend ROTC LDAC. They will not be required to attend both, unless they choose to do so, but they must attend LDAC. However, should the cadet be commissioned, or disenrolled from ROTC, and remain assigned to a TPU, he or she must adhere to the AT requirement. The awarding of credit for AT by virtue of any form of ROTC training is not authorized.

(17) *Failure to complete Reserve Officers' Training Course Leader Development and Assessment Course.* A cadet who is disenrolled from ROTC Basic/LDAC (MS III or MS IV) will be dropped from the ROTC/SMP. If otherwise qualified, he or she will be retained in the TPU until completion of the Soldier's contractual or statutory service obligation. Immediate adjustment to rank and pay grade will be made per AR 600–8–19, and the Soldier must complete required IADT if not previously completed.

(18) *Cadet troop leader training.* A cadet participating in the ROTC/SMP is not eligible to participate in the ROTC Cadet Troop Leader Training (formerly the Army Orientation Training Program).

*j. Policy applicable to Reserve Officers' Training Corps/Simultaneous Membership Program cadets on completion of the Reserve Officers' Training Corps Leader Development and Assessment Course.* On completion of the ROTC Advanced Course, the discharge, commissioning, and assignment of a cadet participating in the ROTC/SMP will be in accordance with AR 145–1.

*k. Processing a Soldier assigned to a troop program unit (first priority).*

(1) A Soldier assigned to a TPU becomes a potential participant in ROTC/SMP when he or she executes the SMP agreement using DA Form 4824, and the agreement has been authenticated by the TPU commander. The DA Form 4824 will be prepared with an original and three copies, and distributed as follows:

*(a)* The original, together with a cover memorandum requesting it be filed in the Soldier's official military personnel file, will be sent to: Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303.

*(b)* A copy will be attached as an addendum to the Soldier's current DA Form 3540 and retained in the Soldier's personnel file.

*(c)* A copy will be provided to the Soldier.

*(d)* A copy will be provided to the appropriate USAR command/general officer command.

(2) A Soldier assigned to a TPU becomes a participant in ROTC/SMP when he or she enrolls in the ROTC (MS III or MS IV) and remains assigned to a TPU in an officer-trainee position. If not previously accomplished, the cadet must execute the DA Form 4824. The agreement will be distributed in the same manner as paragraph 9–14*a.*

(3) When a Soldier assigned to a TPU applies for enrollment in the ROTC (MS III or MS IV) to participate in the ROTC/SMP, the TPU commander will provide the appropriate PMS with a reproduced copy of the Soldier's current enlistment agreement (DD Form 4).

*l. Processing a Soldier assigned to the Individual Ready Reserve (second priority).*

(1) When a Soldier assigned to an IRR Control Group desires to become a participant or potential participant in the ROTC/SMP and has been accepted by the TPU commander for an officer-trainee position, the Soldier will be processed for reassignment from the IRR to the TPU per AR 140–10. If the Soldier is within 3 months of expiration term of service, he or she will be processed for an immediate reenlistment per AR 140–111 (see continued USAR membership when assigned to a unit of the Selected Reserve), concurrent with the TPU assignment.

(2) After the Soldier has been assigned to the TPU, the provisions regarding processing first priorities apply.

*m. Processing prior service and nonprior service applicants (third through seventh priority).* Applicants for enlistment as potential participants in the ROTC/SMP, with or without pervious military service, will be processed as prescribed by Option 9–H.

*n. Processing a cadet assigned to Control Group (ROTC) (eighth priority).* To participate in the ROTC/SMP, a cadet assigned to Control Group (ROTC) will be processed for reassignment to an officer-trainee position in a TPU as follows:

(1) The PMS confirms through the TPU commander or guidance counselor that an officer-trainee position exists and the TPU commander will accept the cadet for assignment to the position.

*(a)* Requests the ROTC region commander issue an order reassigning cadet from Control Group (ROTC) to the TPU as a cadet (ES), reporting code 09R20.

*(b)* Sends a packet consisting of the following documents to the appropriate guidance counselor:

*1.* All copies of the DD Form 1966.

*2.* The original and one copy of the DD Form 4 used on enrollment of the cadet in the ROTC (MS III or MS IV).

*3.* Two copies of the latest medical examination and medical history (DD Form 2807–2 and DD Form 2808).

*4.* Five copies of the order reassigning the cadet from Control Group (ROTC) to a TPU.

(2) The recruiter will—

*(a)* Build the cadet's complete record in Army Recruiting Information Support System and scan in appropriate source documents into guidance counselor redesign.

*(b)* Project the cadet as a prior service "ENLIST ONLY" and place in the comments "SMP."

*(c)* The cadet, under the guidance of a recruiter or counselor, will complete required portions of the DD Form 1966. The recruiter, guidance counselor, and MEPS officials will complete the appropriate entries on the form based on verifying documents provided by the cadet.

(3) The guidance counselor will—

*(a)* Review the documents to determine the cadet's qualification for unit assignment in the same way as if the cadet was being processed for enlistment.

*(b)* If the cadet meets the basic eligibility requirements of chapter 3, the applicant must take the ASVAB and meet trainability scores in paragraph 3–6. The guidance counselor will notify the PMS and reassignment processing will continue.

*(c)* If the cadet does not meet the requirements of chapter 2 or 3, the counselor will return the packet to the PMS. The PMS will have the reassignment order issued by the ROTC region commander revoked and advise the cadet that he or she is not eligible for participation in the ROTC/SMP

(4) If the cadet is qualified for TPU membership, the PMS will—

*(a)* Execute DA Form 4824 by obtaining the cadet's signature and the TPU commander's authentication.

*(b)* Execute a DA Form 3540 by obtaining the cadet's signature.

*(c)* Send the completed DA Form 4824 and DA Form 3540 to the appropriate guidance counselor.

(5) The guidance counselor will prepare and distribute the documents received from the PMS as follows:

*(a)* Prepare a packet containing the following documents and send to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303, to establish the cadet's Official Military Personnel File:

*1.* Original DD Form 4, if possible (see para 9–14*n*(5)(a)5).

*2.* Original DA Form 3540 with original DA Form 4824 securely attached.

*3.* Original DD Form 1966.

*4.* Copy of latest DD Form 2807–2 and DD Form 2808.

*5.* Copy of the TPU reassignment order.

*(b)* Prepare a packet containing the number 2 copies of the documents outlined in paragraph (1), above, and send it to the appropriate USAR command/general officer command commander. This packet will be used to bring the cadet into the strength accountability of the Selected Reserve as a gain transaction. The USAR command/general officer command will then send this packet to the appropriate TPU to establish the cadet's personnel file.

*(c)* Give the cadet the number 3 copies of the DA Form 3540 with DA Form 4824 attached, DD Form 1966, and the TPU reassignment order.

*(d)* At the discretion of USAREC officials, retain or destroy the number 4 copies of the DD Form 1966 and the other documents used in effecting this transaction.

*(e)* Make every effort to obtain the original DD Form 4 executed at the time of the cadet's enrollment in the ROTC (MS II only). However, if the original cannot be obtained, a readable reproduced copy may be used in lieu of the original.

*o. Processing a disenrollment from the Reserve Officers' Training Course Leadership Development and Assessment Course.*

(1) A Soldier disenrolled from the ROTC (MS III or MS IV) is dropped from ROTC/SMP participation, retained as an assigned member of the TPU, and serves in an enlisted rank (AR 600–8–19) until expiration term of service of his or her current contractual or statutory service obligation. This is, provided the Soldier is not otherwise processed for discharged per AR 135–178.

(2) On notification that a cadet has been disenrolled from the ROTC (MS III or MS IV) and processing under AR 135–178 is not being initiated, the TPU commander will complete the notice of removal from ROTC/SMP (see fig 10–1), and distribute the copies as shown below.

*(a)* The original will be sent to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303, with a memorandum requesting the notice be inserted in the Soldier's personnel file.

*(b)* A copy will be placed in the Soldier's official personnel records.

*(c)* A copy will be given to the Soldier.

*(d)* A copy will be sent to the appropriate USAR command/general officer command commander.

*(e)* A copy and a memorandum of transmittal will be sent to the Joint Uniform Military Pay System-Reserve Components input station.

(3) The TPU commander will coordinate with the appropriate MEPS guidance counselor and obtain training reservations for entry of the Soldier ADT to complete basic/advanced initial entry training, if required.

*p. Processing cadets applying for the Army Reserve Officers' Training Course Scholarship Program.*

(1) Except for recipients of the Reserve Forces Duty Scholarship Program who are required to participate in the ROTC/SMP, recipients of Army ROTC scholarships are not eligible to participate in the ROTC/SMP. However, this does not preclude an ROTC/SMP cadet from applying for an ROTC scholarship.

(2) An ROTC/SMP cadet must inform the TPU commander that application has been made for an Army ROTC scholarship. If the cadet is awarded and accepts an ROTC scholarship, the PMS will notify the TPU commander who will initiate the reassignment procedures.

*q. Processing release from Reserve Officers' Training Course/Simultaneous Membership Program and reassignment to Control Group (ROTC).*

(1) Unless disenrolled from the ROTC LDAC or commissioned, a cadet will not be reassigned from a TPU to a Control Group administered by Commander, HRC (for example AT, Reinforcement, and so forth). The voluntary or involuntary release of a cadet from the ROTC/SMP will require reassignment to Control Group (ROTC) administered by an ROTC region commander, or discharge concurrent with disenrollment.

(2) A cadet may be voluntarily released from the ROTC/SMP and reassigned to Control Group (ROTC) provided the reassignment is not solely for the purpose of discharge from the ROTC to avoid a statutory or contractual service obligation. Release from the ROTC/SMP may be based on—

*(a)* Personal reasons.

*(b)* A change of address and the cadet lives beyond a reasonable distance from the training center.

*(c)* Surviving son or daughter status.

*(d)* Dependency or hardship.

*(e)* Pregnancy.

(3) A cadet will be involuntarily released from the ROTC/SMP and reassigned to Control Group (ROTC) when the cadet—

*(a)* Accepts an ROTC scholarship.

*(b)* Is not within reasonable commuting distance of another officer-trainee position as a result of TPU inactivation or relocation.

*(c)* Is an unsatisfactory participant per AR 135–91.

*(d)* Fails to maintain Army weight control standards per AR 600–9.

*(e)* Fails to pass the Army physical fitness test.

*(f)* Is unable to perform duties due to parenthood.

*(g)* Is removed from the ROTC/SMP for cause based on performance or conduct.

(4) A request for voluntary or involuntary reassignment of a cadet to Control Group (ROTC) will be processed as follows:

*(a) Voluntary reassignment.* Citing the reasons on DA Form 4187, a cadet may request reassignment to Control Group (ROTC). The TPU commander will endorse the request through command channels to the appropriate USAR command/general officer command commander.

*(b) Involuntary reassignment.* The TPU commander will submit a memorandum through command channels to the appropriate USAR command/general officer command commander requesting reassignment of the cadet to Control Group (ROTC). The memorandum will contain full justification for the request.

(5) On receipt of a request submitted under paragraph 9–14*d*, the USAR command/general officer command commander—

*(a)* Disapproves the request and returns the DA Form 4187 or memorandum to the sender without further action.

*(b)* Approves the request and—

*1.* Issues orders reassigning the cadet to Control Group (ROTC) under the appropriate ROTC region commander.

*2.* Sends copies of the reassignment orders and the cadet's personnel file to the appropriate ROTC region commander.

*3.* Uses transaction type code "MP."

*4.* Instructs the TPU commander to take appropriate action to remove the cadet from the Joint Uniform Military Pay System-Reserve Components Master Pay File.

*5.* Sends a memorandum with a copy of the orders enclosed to Commander, U.S. Army Human Resources Command, 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5303. The memorandum will request a copy of the orders be inserted in the cadet's official military personnel file and the official military personnel file be retired under the National Archives and Records Administration.

*r. Processing a cadet for discharge to accept a commission per AR 135–178.* The appropriate PMS will issue orders discharging an ROTC/SMP cadet from enlisted status and TPU membership. A copy of this discharge order must be furnished to the losing USAR TPU as soon as possible so the TPU can initiate procedures necessary to effect a loss transaction to Standard Installation/Division Personnel System-USAR.

**9–15. Enlistment Program 9I, U.S. Army Reserve Officers' Candidate School Enlistment Program**
This program is available to qualified NPS and PS with a baccalaureate or higher degree from an accredited college or university. NPS applicants enlisting under this program must enlist for a minimum term of 6 years in the Selected Reserve and 2 years in the IRR (6 x 2) and PS applicants must enlist for a 3-year term. The Office of the CAR and USAREC will assist in the interview and processing of applicants interested in applying for this program.

*a.* This program guarantees enrollment in the OCS Program.

*b.* All enlistees must meet the prerequisites before and after enlistment.

*c.* OCS Enlistment Program is a special recruiting program that will be processed via chapters 5, 6, and this paragraph.

*d.* Applicants must—

(1) Possess documentary proof of having received a baccalaureate or higher degree as listed in Education Directory, Higher Education, published by the Department of Education (foreign transcripts must be evaluated according to paragraph 2–7f). Individuals in their senior year of a college program leading to the award of a baccalaureate degree may be enlisted with a letter or transcript from the college indicating the expected graduation date, provided the graduation date is prior to the date individual is scheduled to ship to OCS training.

(2) Be at least 18 years of age and not have passed their 33rd birth date at the time of shipment to training and must graduate and accept commission prior to age 34.

(3) Successfully complete BCT, if required.

(4) Successfully complete advanced physical fitness examination at Fort Benning, GA, before OCS enrollment.

(5) Successfully qualify for personal security clearance before OCS graduation.

(6) Maintain high standard of conduct and efficiency before and during OCS enrollment. Persons failing to maintain high standard may be subject to elimination from the OCS Program.

*e.* Army OCS is conducted at Fort Benning, GA, and is 14 weeks long. Branches in which officers are trained are determined by the TPU vacancy for which enlisting.

*f.* OCS applicants must understand the following challenges that face them:

(1) From the date of entry until graduation from OCS, applicants will undergo about 6 months of intensive training (if BCT is required).

(2) This training is designed to impose physical, mental, and emotional pressure to simulate stresses and fatigue of combat.

(3) Applicants who fail to meet the requirements of this program or who voluntarily withdraw from the OCS Program will be required to serve the remainder of their enlistment as an enlisted member.

**9–16. Enlistment Program 9J, U.S. Army Reserve Warrant Officer Flight Training Enlistment Program**
This program is available to qualified NPS and PS applicants. The Office of the CAR and USAREC will assist in the interview and processing of applicants interested in applying for this program. Members of the DEP or DTP may not process for OCS or WOFT. General technical score for OCS or WOFT applicants cannot be waived (no exceptions).

*a.* Under this program—

(1) Qualified NPS applicants are guaranteed enlistment for a minimum term of service of 6 years and enrollment in the WOFT Program.

(2) Qualified PS applicants are guaranteed enlistment for a minimum term of enlistment of 3 years and enrollment in the WOFT Program.

(3) Qualified applicants are guaranteed advancement to pay grade E–5 while attending WOFT (at entry into the WOCS).

*b.* All enlistees must meet the prerequisites before and after enlistment. Applicants must pass a Type I, Class I flight physical.

*c.* The OCS Enlistment Program is a special recruiting program that will be coordinated by HRC, the Office of the CAR, and Headquarters, USAREC and processed via chapters 5 and 6.

*d.* Applicants must—

(1) Successfully complete BCT, WOCS, and flight officer indoctrination. Persons not required to attend basic training will be sent directly to WOCS.

(2) Qualify for security clearance prior to entering the WOCS.

(3) Complete the 6-week WOCS course to be eligible for primary flight training.

(4) Be made aware of the nature of flight training and responsibilities that warrant officers assume.

(5) Be required to serve the remainder of their enlistment as an enlisted member if they fail to meet requirements of paragraphs 9–16*d*(1) and (2), or voluntarily withdraw from the WOFT Program. Warrant officer candidates are promoted to grade E–5 while attending WOFT (at entry into the WOCS). Individuals who fail to meet the requirements of paragraphs 9–16*d*(1) and (2) will be reduced in grade as determined by the Commander, HRC.

*e.* Class dates are tentative and may be changed by HQDA.

*f.* Applicants will be informed of service obligation as a member of Selected Reserve in a TPU (see AR 135–91).

## 9–17. Enlistment Program 9K, U.S. Army Specialized Training for Army Reserve Readiness Enlistment Program

The Specialized Training for Army Reserve Readiness Program is available to qualified NPS applicants enlisting for a minimum term of enlistment of 6 x 2. The PS applicants who are authorized to enlist under this program must enlist for a minimum term of enlistment of 4 years and have never been a previous participant in this program.

*a.* Under this program—

(1) Qualified NPS applicants are guaranteed enrollment in a civilian training program for select medical skills and advancement to authorized pay grades, per DA Pam 611–21, upon completion.

(2) Qualified PS applicants are guaranteed enrollment in a civilian training program for select medical skills and advancement to authorized pay grades, per DA Pam 611–21, upon completion. PS applicants authorized a higher enlistment grade in paragraph 3–18 will be given the higher pay grade than the advance pay grade given in the selected medical skill, per DA Pam 611–21.

(3) Qualified NPS and PS applicants must complete DA Form 7004 (Addendum to Certificate of Acknowledgement of Service Requirements (DA Form 3540) for Enrollment into the U.S. Army Reserve Specialized Training for Army Readiness (STAR) Enlistment Program).

*b.* This is not an educational incentive or scholarship program. This is an Army Reserve Training Program. Persons applying for enlistment under this program must meet the following prerequisites before enlistment:

(1) Be a high school graduate (or equivalent) or high school senior with reasonable assurance of graduation.

(2) Not be qualified for a select medical MOS under ACASP that is authorized under this program.

(3) For PS applicants, not have an MOS with a skills qualification identifier of 2.

(4) Possess a letter of acceptance from an accredited school in a course of study authorized under this program.

*c.* The Specialized Training for Army Reserve Readiness Program is a special recruiting program that will be coordinated by HRC, the Office of the CAR, and Headquarters, USAREC, and processed via chapters 5 and 6.

*d.* Applicants must—

(1) Successfully complete BCT within 365 days of enlistment. This is considered Phase I for this program (NPS applicants only).

(2) In Phase II for NPS applicants, start military-sponsored training in a civilian school within 180 days of acceptance or upon completion of Phase I and make satisfactory progress toward completion of academic standards.

(3) In Phase II for PS applicants, start military-sponsored training in a civilian school within 180 days of acceptance.

(4) In Phase III for NPS applicants, successfully complete 4 weeks of AD training at an Army medical treatment facility.

(5) In Phase III for PS applicants, complete 48 hours of proficiency training conducted in IDT at their home unit.

(6) Meet and maintain applicable Army standards for weight and body fat and physical fitness.

(7) Upon enrollment for Phase II, complete a SF 182 (Authorization, Agreement, and Certification of Training) at their home unit and forward to the school.

(8) Attend authorized school as a full-time student and in the specific program for the MOS in which enlisting. Soldier is expected to maintain academic standards established by the school and complete Phase II within 2 academic years. All requisite licensure and certification is included.

(9) Satisfactorily participate in required unit training assemblies unless properly excused by the TPU commander.

(10) Successfully complete all licensure or certification, and successfully complete all required examinations given by the appropriate national or State accreditation agency. Soldier will take the first available test period. If the Soldier fails, he or she must take subsequent examinations consecutively. The Soldier will be allowed two attempts to successfully complete required examinations before reclassification/reassignment to another MOS or ordered to complete initial entry training for an MOS.

(11) Complete required service in the TPU and obligated service specified in the enlistment agreement.

*e.* Under this program, the Army will provide AIT in an approved/authorized civilian institution as opposed to a military facility. The Army will not provide financial benefits. The Army is responsible only for the expenses incurred for the Soldier to receive training for the purpose of being awarded a selected MOS authorized by this program.

*f.* Training by the Army under this program may not exceed 2 years (academic) and will be completed in the minimum amount of time feasible for the selected MOS.

*g.* The Army will pay for tuition, books, fees, and equipment, in an amount that is normally charged for such a program, but not to exceed $6,000 per year ($6,000 cap is inclusive of all associated costs). Room and board, transportation to the school, transportation from domicile to lab, transportation to school functions, or other nonschool related activity will not be authorized payment or reimbursement. No exceptions to the $6,000 limit is authorized.

*h.* The Army will pay on a one-time basis—

(1) Pre-admission fees.

(2) Examination charges.

(3) Matriculation fee.

(4) State/National Board or license fees.

(5) Malpractice insurance fee (not health insurance).

(6) The Director of the National Augmentation Detachment will authorize additional payments on a case-by-case basis when the school or other agency requires reenrollment fees for subsequent semesters.

*i.* All schools participating in this program must be approved before enrollment.

*j.* The CG, U.S. Army Reserve Command, will terminate a Soldier's participation in this program if the following occurs—

(1) Disenrollment from the program (training) by the Soldier.

(2) Failure to meet and maintain eligibility. (3 Unsatisfactory TPU participation or performance.

(3) Failure to maintain acceptable academic standards, attendance, or other reasons which are not consistent with completion requirements of the course of study as determined by the school attending.

(4) Unsatisfactory completion of necessary training that fulfills the school curriculum leading to certification or licensure in the MOS for which enlisted.

(5) Orders to terminate the program by HQDA.

*k.* At the discretion of the CG, U.S. Army Reserve Command, a Soldier's participation in Phase II of this program may be suspended, in lieu of termination, for a period not to exceed 6 months.

*l.* Applicants may enlist in the following Specialized Training for Army Reserve Readiness medical skills and be awarded an MOS under the provisions of DA Pam 611–21:

(1) 68D (Operating Room Specialist).

(2) 68E (Dental Specialist).

(3) 68G (Patient Administration Specialist).

(4) 68H (Optical Laboratory Specialist).

(5) 68J (Medical Logistics Specialist).

(6) 68K (Medical Laboratory Specialist).

(7) 68M (Hospital Food Service Specialist).

(8) 68P (Radiology Specialist).

(9) 68Q (Pharmacy Specialist).

(10) 68R (Veterinary Food Inspection Specialist).

(11) 68S (Preventative Medicine Specialist).

(12) 68T (Animal Care Specialist).

(13) 68V (Respiratory Specialist).

(14) 68W (Health Care Specialist).

(15) 68X (Mental Health Specialist).

## 9–18. Enlistment Program 9L, Selected Reserve Incentive Program, U.S. Army Reserve Component Incentive Enlistment Program (nonprior service enlistment bonus, prior service enlistment bonus, Montgomery GI Bill-Selected Reserve Kicker, Loan Repayment Program)

This program is available to qualified NPS, PS, glossary NPS, and ACASP applicants enlisting for the minimum term of enlistment, when authorized under the SRIP as described in chapter 10 or in AR 621–202. The current year approved SRIP will describe all approved RC incentives. This regulation provides basic eligibility and administrative procedures for RC incentives under the SRIP. Actual incentive amounts, units, and skills included in the SRIP and special programs under the SRIP such as seasonal bonuses, high school graduate, and other variations to the program will be announced semi-annually or as needed under the approved SRIP by the DCS, G–1.

*a.* Under this program, enlistees may be eligible for—

(1) NPS enlistment bonus (see para 10–12).

(2) PS enlistment bonus (PSEB) (see para 10–13).

(3) MGIB Kicker.

(4) Loan Repayment Program.

*b.* NPS enlistment bonus or PSEB applicants will be informed of the following:

(1) Enlistees who, voluntarily or because of any misconduct, fail to satisfactorily complete AIT or one station unit training will be trained in another MOS. They will complete their term of enlistment based upon the needs of the respective RC, unless separated for administrative or disciplinary reasons. In the above instances, the bonus will not be paid.

(2) Persons who have been paid an enlistment bonus and who become disqualified to perform duties in the selected skill because of injury, illness, or other impairment (not the result of any misconduct by the person) will be retrained, if necessary, and used according to the needs of the USAR or ARNG. Such persons will be required to complete the term

of their enlistment. In the above instance, the person will not have to repay the unearned portion of the enlistment bonus.

(3) Persons who become medically or otherwise disqualified for duty in the MOS awarded and have been paid a bonus will be retrained, if necessary, and used according to the needs of the respective RC. Such persons will be required to complete their term of enlistment and may keep the bonus.

(4) Soldiers paid the enlistment bonus must (unless otherwise directed by the appropriate RC) serve in the designated MOS for the period of enlistment (including change of MOS due to normal skill progression).

(5) Persons who do not complete their term of enlistment for which the enlistment bonus was paid, who are not technically qualified in the skill for which the enlistment bonus was paid, or who fail to obtain a security clearance through omission of information or derogatory data may be required to refund the unearned portion of such enlistment bonus (refer to most recent HQDA incentives guidance and chap 10).

(6) Applicant will be advised that attendance at AIT requires successful completion of BCT, if required, and qualification for security clearance, if required. See paragraph 10–3*f*.

(7) The bonus is payable in accordance with the current SRIP as published by Enlisted Accession Division (DAPE–MPA) or the Office of the Assistant Secretary of the Army (Manpower and Reserve Affairs), as applicable.

(8) Previously disenrolled SROTC cadets who were scholarship recipients are not entitled to incentives under this paragraph.

## 9–19. Selected Reserve Incentives Program-Student Loan Repayment Program, Montgomery GI Bill-Kicker

Full eligibility and procedural guidance for education programs are contained in chapters 9 and 10 and in AR 621–202. These programs must be listed in the approved SRIP. The SRIP is not a permanent program under 37 USC 308. The DCS, G–1, will issue policy revisions and update the SRIP semi-annually as described in paragraph 9–18.

## 9–20. Review and approval of accession incentives and programs

*a. Process.* This paragraph establishes a process that provides Secretariat-level oversight and approval of all proposed or existing accession incentives, bonuses, pilots or programs that use any Federal funds. New accession incentives, bonuses, pilots, or programs must meet the requirements reflected below before implementation. Further, to ensure that accession incentives and programs continue to meet statutory requirements, the ASA (M&RA) must approve all new programs before their initiation. In addition, by 30 June of each year, initiators will submit current programs for review and approval to continue. This guidance does not apply to marketing and advertising programs that applicable statues have authorized Army components to implement. Accession incentives, pilots, and programs will be submitted according to the requirements below.

(1) *Staffing process.* Army components (RA, USAR, and ARNG) will staff accession pilots, programs, incentives, or bonuses for implementation or continuation through the DCS, G–1 to the ASA (M&RA) for approval. Components will use the same staffing process through the DCS, G–1 to notify the ASA (M&RA) when they suspend or terminate an approved program.

(2) *Guidelines.* At a minimum, all requests for proposed accession incentives, bonuses, pilots, or programs must provide a "business case" that addresses the following items in the format shown at appendix B. Requests for continuation of existing programs only need to provide the information in paragraphs 9–20*a*(2)(e), (g), (i), and (j) and update other items, as needed.

*(a) Program name.* Provide a brief name for the incentive, bonus, pilot or program to distinguish it from others.

*(b) Program description.* Describe the program, including the target Soldier, component(s), terms of service, payment method (if a monetary incentive), proposed payment schedule, and recoupment policy.

*(c) Justification.* Describe why the Army needs the pilot or program. Explain why the existing incentives, bonuses, pilots, or programs are insufficient. Describe the issue or problem the proposed accession incentive, bonus, pilot, or program addresses and how the program will resolve the issue.

*(d) Projected "Lift."* Provide an estimate of the projected number of incremental accessions expected from the program or other benefits expected to result. Describe how numeric estimates were derived.

*(e) Actual "Lift."* For programs submitted for continuation, show the actual lift achieved. Explain any disparity between projected and actual lift.

*(f) Projected cost.* Include an estimate of the projected cost of the program over the Future Years Defense Program. Describe how this estimate was derived.

*(g) Actual cost.* For programs submitted for continuation, provide actual costs incurred. Explain any disparity between projected and actual cost.

*(h) Proposed performance measures.* Indicate what measures the Army will use to demonstrate the effectiveness of the program. A performance metric must accompany the proposed incentive, bonus, pilot, or program that demonstrates how the Army will measure their effectiveness. Include the expected improvement to strength, assignment and deployments, and/or accession rates. Provide outcomes expected if the Army approves the program for implementation. One of the measures must be cost versus benefit.

*(i) Performance outcomes.* For programs submitted for continuation, provide data for the performance measures identified the previous year. Provide an explanation if actual outcomes deviate from the expected outcomes outlined the previous year.

*(j) Legal review.* A legal review by the servicing legal office must determine whether the proposal (or program continuation) violates any statute or policy. Identify the authority under which the Army may offer this program.

*(k) Internal controls.* Identify the areas of risk in the business process and describe the steps taken to limit the potential for fraud, waste, or abuse. Describe other internal controls in place. Identify a point of contact by name and with contact information (email and phone) who is trained to look for indicators of fraud, waste or abuse; understands to whom the components should report any incidents; and understands that components must report all such incidents to the ASA (M&RA) immediately. Programs submitted for continuation must note any incidents of fraud, waste, or abuse that occurred in the previous year (although the components already should have reported the incidents to the ASA (M&RA)), and the steps taken to further reduce opportunities for fraud, waste, or abuse.

*b. Routing.* After the component packages the proposal and it meets the requirements in paragraphs 9–20*a*(a) through (k), the component will forward the proposal through command channels and the DCS, G–1 to the ASA (M&RA) for consideration. The ASA (M&RA) will approve, disapprove, or return the request to the submitter for further justification.

*c. Termination of an existing incentive, bonus, pilot, or program.* The Army agency for which the Army has approved an accession incentive, bonus, pilot, or program will notify the ASA (M&RA) through command channels of the intent to suspend or terminate the program. The notification must include the reasons and projected date of the suspension or termination. Reasons for termination or suspension may be that the program—

(1) Has resolved the issue and is no longer needed.

(2) Has been ineffective in meeting its desired goals. Is cost-prohibitive because the program's costs outweigh the benefits.

# Chapter 10
# Selected Reserve Incentive Program (Enlisted and Officer Incentives)

## 10–1. General
The SRIP is approved annually by the DCS, G–1 (DAPE–MP). The SRIP programs are subject to changes in law and policy. As such, DCS, G–1 (DAPE–MPA–CB), will manage the program to ensure compliance with established standards.

*a.* Selection for incentive coverage is based on critical skill reviews performed under DCS, G–1 guidance. Changes to skills (additions or deletions) are published by the DCS, G–1 (DAPE–MPA).

(1) DCS, G–1 will conduct a midyear review and analysis to evaluate changes, as appropriate.

*(a)* CAR will review the critical skills for the enlistment and reenlistment/extension and officer incentives for the USAR.

*(b)* HRC will review the critical skills for the IRR incentives for the USAR.

*(c)* NGB will review the critical skills for the enlistment, reenlistment/extension, and officer incentives for the ARNG.

(2) The incentive skill list will be updated by DCS, G–1 (DAPE–MPA), annually before the start of each fiscal year.

*b.* Incentives will be used to support early deploying units, critical skill shortages, and shortages in the IRR. The DCS, G–1, will announce the effective date of program adjustments.

(1) Unit mission changes may necessitate changes in a unit's eligibility for incentives.

(2) Dual mission units that fall in multiple priority groups may receive incentives based on the highest category assigned.

(3) The affiliation bonus may be available to any unit and skill in the ARNG and USAR.

## 10–2. Program responsibilities
*a.* The DCS, G–1 (DAPE–MP), exercises Army Staff responsibility for policy governing the ARNG and USAR incentives. This is accomplished by—

(1) Developing policy or making changes to policy, in coordination with the NGB, CAR, U.S. Army Reserve Command, USAREC, and the Office of The Surgeon General.

(2) Approving/disapproving exceptions to HQDA SRIP policies within statutory and DOD guidance.

(3) Coordinating with and forwarding program guidance and goals to the NGB, CAR, the Office of The Surgeon General, for approving, modifying, and submitting to the Secretary of the Army recommended changes to the various incentive programs.

(4) Maintaining liaison with other Services.

(5) Monitoring management indicators developed by NGB, CAR, the Office of The Surgeon General, U.S. Army Reserve Command, USAREC, and HRC (AHRC–PAP–RE) to measure the effectiveness of the various programs.

(6) Providing coordinated responses to inquiries from the field, the Congress, the White House, and the Army Review Board Agency, concerning the incentive programs.

(7) Reviewing NGB and CAR budget requests for the incentive program before budget submission. Submitting reports required by the Office of the Secretary of Defense, the Office of Management and Budget, and the Congress.

(8) Providing guidance concerning program report preparation to NGB, CAR, U.S. Army Reserve Command, USAREC, HRC (AHRC–PAP–RE), and Defense Finance and Accounting Service.

(9) Conducting an Enlistment Incentives Review Board and/or Multi-component Enlisted Incentives Review for both the RA and RC, chaired by DCS, G–1 (DAPE–MPA), that will meet quarterly or as announced by DCS, G–1. Representatives from USAREC, HRC, DCS, G–1 DAPE–PR, USAR, and ARNG will attend. The RA Enlistment Incentives Review Board will analyze and adjust the application and amounts of enlistment incentives. The Multi-component Enlisted Incentives Review will review incentives across all Army components and ensure incentives policy is consistent, within statutory restraints, and meets manpower requirements and recruiting objectives.

(10) Monitoring and evaluating the effectiveness of the programs in achieving overall objectives.

*b.* The DCS, G–1, has Army Staff responsibility in coordination with NGB and CAR for establishing mobilization priority categories used to identify units for incentive eligibility.

*c.* The DARNG exercises staff supervision and management of the incentive programs as they pertain to ARNG Soldiers. The DARNG will—

(1) Develop detailed budget submissions.

(2) Develop policies, procedures, and management initiatives for the ARNG and recommend to DCS, G–1 changes in program policies and procedures.

(3) Coordinate fiscal operation of ARNG incentive programs within appropriation limits.

(4) Maintain current incentive eligibility status of units.

(5) Collect personnel data, as required.

(6) Prepare reports, as required.

(7) Provide input to DCS, G–3/5/7, concerning unit priorities.

(8) Exchange program related information with Defense Finance and Accounting Service.

(9) Develop and use appropriate advertising for the ARNG incentive programs.

(10) Evaluate the effectiveness of the ARNG incentive programs.

(11) Assign requests for exception to policy or waiver involving past and future individual cases regarding bonuses, loan repayment, and MGIB Kicker cases to the respective ARNG office most directly responsible for recruiting and retention and incentives policy (pay grade O–6 or higher or civilian equivalent). Such office may approve or act upon requests for waiver or exception in cases involving payment and management of incentives which would be contrary to personnel policy or management objectives; against equity or good conscience or contrary to the best interests of the United States; and clearly in the best interest of the Army.

*d.* The CAR is the appropriations director for the USAR incentive program. The CAR exercises staff supervision and management of the incentive programs as they pertain to USAR Soldiers. The CAR will—

(1) Prepare detailed budget submissions.

(2) Coordinate the fiscal operation of the USAR incentive program within appropriation limits.

(3) Develop and recommend to DCS, G–1, changes in incentive program policies and procedures.

(4) Provide input to DCS, G–3/5/7, concerning selection of units for incentive eligibility.

(5) Maintain the current incentive eligibility status of units.

(6) Manage the USAR Enlistment Incentives Review Board and insure representation from the USAR and/or CAR in addition to Defense Finance and Accounting Service, USAREC, HRC, and DCS, G–1 (DAPE–MPA).

(7) Assign requests for exception to policy or waiver involving past and future individual case bonuses, loan repayment, and MGIB Kicker cases to the respective USAR office most directly responsible for recruiting and retention (pay grade O–6 or higher or civilian equivalent). Such office may approve or act upon requests for waiver or exception in cases involving payment and management of incentives which would be contrary to personnel policy or other management objectives; against equity or good conscience or contrary to the best interests of the United States; and clearly in the best interest of the Army.

*e.* Commander, U.S. Army Reserve Command, and CG, HRC will—

(1) Collect personnel data as directed by DCS, G–1.

(2) Prepare program reports required by DCS, G–1.

(3) Recommend to DCS, G–1 changes in program policies and procedures.

(4) Exchange information related to the program with Defense Finance and Accounting Service.

(5) Supervise the operation of the incentive program pertaining to USAR IRR Soldiers.

*f.* The CG, USAREC, will—

(1) Recommend to DCS, G–1, changes in incentive program policies and procedures.

(2) Prepare reports required by DCS, G–1, related to the USAR enlistment incentive program.

(3) Develop appropriate advertising for USAR incentives in coordination with DCS, G–1.

(4) Evaluate the effectiveness of the incentive program as an enlistment incentive for the USAR.

(5) Coordinate with DCS, G–1, on the operation of the incentives program pertaining to enlistment in the USAR.

## 10–3. Policies and procedures

*a. Personnel status for incentives.* Incentives prescribed by this regulation may specify that an applicant be in an NPS, PS, or in-service status. They may also mandate the completion of specified initial entry training or award of MOS upon MOS reclassification. To ensure compliance with public law and DOD directives that have been incorporated into this regulation, these terms have been defined in the glossary.

*b. Authorized number of participants.* The number of participants, who may receive an incentive, at any one time, will be contingent upon the level of funding available in any given fiscal year and HQDA or DOD guidance provided.

*c. Retroactive provision.* This regulation updates certain provisions in effect from earlier fiscal years' incentive programs. Soldiers who entered into agreements under an earlier incentive program will continue to participate in that program. This regulation does not change the basic benefits contracted for under earlier incentive programs. Total incentive amounts and anniversary payment schedules specified in the incentive agreement and executed at the time of enlistment, reenlistment, extension, affiliation, or accession is unchanged. An incentive agreement cannot exceed the limits of the law or authorized limits of the Secretary of the Army. Retroactive entitlement or reinstatement based on the revised or amended policy contained in this regulation is not authorized.

*d. Position vacancy requirements.*

(1) Selected Reserve incentives are offered to designated units and selected skills only when a valid position vacancy exists. Valid position vacancies are either current or projected from the unit's organization tables. These tables include—

*(a)* Tables of organization and equipment.

*(b)* Tables of distribution and allowances.

*(c)* Modification table of organization and equipment.

*(d)* Modification table of distribution and allowances.

(2) Valid position vacancies may also be either current or projected from a unit's approved wartime required shortage list. For the purpose of this regulation, the term "wartime required shortage" is used instead of the term "authorized overstrength" referenced in other Army publications. The authorizations approved are based on component wartime required shortages.

*e. Educational requirements.* The enlistment bonus, MGIB Kicker, and the SLRP may be granted to a Soldier who meets the required eligibility criteria and who has the credentials of a secondary school graduate (see glossary term for education levels).

(1) Applicants/individuals who elect the enlistment bonus, education, or the SLRP incentives and are attending school at the time of enlistment must have the credentials of a secondary school graduate within the timeframe shown in paragraphs 10–3e(1)(a) or (b)—

*(a)* Alternate Training Program enlistment option: prior to entry on the second phase (Phase II) of IADT (see chap 5).

*(b)* Other than Alternate Training Program enlistment option: prior to entry on IADT (see chap 5).

(2) Soldiers who do not have the credentials of a secondary school graduate within the established timeframe will be subject to termination of the enlistment bonus, education incentive, or SLRP.

*f. Security clearance requirements.* Soldiers must meet security clearance requirements for the MOS or skill selected. Enlistment incentives are authorized upon MOS/skill qualification, which may be prior to final security clearance approval by outside agencies. Soldiers must be counseled that non-approval of such clearance may result in reclassification or recoupment in accordance with paragraph 10–9.

## 10–4. Personnel movement between Army National Guard of the United States and Army Reserve

*a. Eligibility.* A Soldier's eligibility for continued bonus and/or loan repayment incentives when transferring between the ARNG and USAR is prescribed later in this chapter, beginning at paragraph 10–5 and subsequent paragraphs.

*b. Personnel gains from other U.S. Armed Forces.* Applicants for ARNG or USAR enlistment who are currently Selected Reserve members of other Armed Services should be counseled before enlistment processing. They should note that eligibility for an incentive authorized by other U.S. Armed Forces will not be continued after enlistment in the ARNG or USAR.

*c. Obligation.* Eligibility for any incentive governed by this regulation requires that an enlisted Soldier must enter into a contractual obligation. The Soldier must serve satisfactorily for the full term of service specified for an incentive program.

*d. Required documents.*

(1) Applicants for programs administered by this regulation will be required to sign documents before or at time of contracting that specify the eligibility criteria and the term of service for the incentive. Furthermore, the document will contain an acknowledgement that the applicant has been advised of, and understands, the benefits of the program and the conditions that can cause termination and recoupment. These documents must be authenticated by a proper witnessing official and will include the preparation date.

(2) Each incentive program in this regulation specifies the document(s) required for program eligibility.

(3) Distribution of these documents or forms will be per the instructions contained on the forms or as otherwise specified in the appropriate text.

*e. Processing instructions.*

(1) The appropriate incentive addendum must be completed and a copy made a permanent part of each enlistment, reenlistment, extension, accession, or affiliation packet.

(2) This must be done prior to distribution per the regulatory requirements.

*f. Incentive payments.*

(1) All incentive payments are subject to Federal and State tax. However, payments made directly to financial institutions (SLRP and the Health Professional Loan Repayment) do not have amounts withheld for tax. SLRP or Health Professional Loan Repayment recipients should consider additional withholding from other income to compensate for the absence of tax withholding.

(2) Payment of incentives is not immediate under these programs. Verification of eligibility is required before any payment processing can begin.

## 10–5. Continued receipt of incentives

*a. A Soldier may be eligible for continued receipt of incentives under the following conditions:*

(1) For normal career progression (DA Pam 611–21).

(2) When involuntary transfer between Army RCs is due to unit transition per this regulation.

(3) When the transfer is at the convenience of the Government and authorized by the Chief, NGB or CAR. In this case, the Soldier must become MOS qualified in the new skill within 24 months, or incentives will be terminated.

(4) Involuntarily transferred ACASP Soldiers will continue to receive payments, as scheduled.

(5) When returning from an authorized period of nonavailability. Soldier must meet all requirements per paragraph 10–7*a*.

(6) Mobilized RC Soldiers will be allowed to retain all SRIP incentives which they had qualified to receive prior to mobilization, regardless of position and MOS assigned to fill during mobilization. Following mobilization, the Soldier must return to the original contracted Selected Reserve MOS and position, or another bonus MOS, where the position is annotated on the current SRIP at the time of REFRAD, and return to Selected Reserve duty, to be able to continue to receive any remaining incentive payments.

(7) During a period of suspension of favorable personnel actions, receipt of incentives is suspended except for certain Army physical fitness test failures or failures to meet body fat standards as prescribed in paragraph 10–6*b*. When the suspension has been favorably lifted, continued receipt of incentives is authorized.

(8) For SLRP incentives, enlisted Soldiers who enter a commissioning program and/or accept an appointment or commission as an officer or warrant officer in a Selected Reserve (any area of concentration) may continue to receive SLRP payments as stipulated in their original contract so long as they remain otherwise qualified.

*b. Continued receipt of the SLRP or MGIB–Selected Reserve on transfer from the USAR to the ARNGUS.*

(1) A USAR Soldier eligible for loan repayment in a critical MOS will retain eligibility upon transfer to the ARNG in a designated ARNG critical vacancy or MOS at the originally contracted USAR designated amount. If the transfer is based on unit transition as prescribed in paragraph 10–5*d*, in circumstances not requiring termination, or otherwise authorized by DARNG, the Soldier will retain entitlement under the SLRP at the ARNG designated amount.

(2) A USAR Soldier eligible for loan repayment in a higher designated amount than the ARNG will retain eligibility upon transfer to the ARNG at the USAR designated amount.

(3) If the Soldier is authorized to continue under the SLRP, a new NGB Form 600–7–5–R–E (Bonus Addendums (Annex L to DD Form 4 ARNG)) must be prepared; however, this act does not create a new entitlement, but continues the Soldier in the existing entitlement amount as listed on the original USAR contract. The new SLRP addendum will be prepared in the gaining unit and witnessed by the unit's designated Service representative.

(4) A Soldier does not gain incentive eligibility simply because of a transfer from one RC to another who is offering an incentive. The transfer process does not represent a REFRAD, enlistment, affiliation, reenlistment, or extension requirement for incentive eligibility.

(5) A Soldier may be eligible for entitlement under the MGIB–Selected Reserve with continued eligibility to a SRIP incentive.

*c. Continued receipt of the SLRP or MGIB–Selected Reserve on transfer from ARNG to the USAR.*

(1) An ARNG Soldier eligible for loan repayment at the same designated amount as the USAR will retain eligibility

on transfer to the USAR. This is provided the Soldier continues to serve in the contracted MOS, or the transfer is based on unit transition (see para 10–5d) in circumstances not requiring termination, or otherwise authorized by the CAR.

(2) An ARNG Soldier eligible for loan repayment, who is transferred to a USAR critical MOS (higher designated amount position), will retain SLRP eligibility at the ARNG designated amount. This is provided the transfer is based on unit transition in circumstances not requiring termination, or otherwise authorized by the CAR.

(3) If the Soldier is authorized to continue under the SLRP, a new DA Form 5261–4 (Student Loan Repayment Program Addendum) must be prepared; however, this act does not create a new entitlement, but continues the Soldier in the existing entitlement amount as listed on the original ARNG contract. The new DA Form 5261–4 will be prepared in the gaining unit and witnessed by a Service representative in the grade of E–7 or higher.

(4) A Soldier does not gain incentive eligibility simply because of a transfer from one RC to another who is offering an incentive. The transfer process does not represent a release from AD (REFRAD), enlistment, affiliation, reenlistment, or extension requirement for incentive eligibility.

(5) A Soldier may be eligible for entitlement under the MGIB–Selected Reserves with continued eligibility to an SRIP incentive.

*d. Status of incentives on unit transition.*

(1) This paragraph provides guidelines for the disposition of incentives paid or pending payment to Selected Reserve unit Soldiers. For ease of reading and simplicity, reduction of overstrength, reduction in force, and relocation or inactivation of a unit shall be referred to as unit transition. Unit transition occurs when a Soldier is voluntarily or involuntarily transferred or reassigned within, or between the ARNG and the USAR. Relocation refers to a Soldier's unit of assignment moving to a site that is beyond commuting distance. For the purpose of this regulation, commuting distance is defined as the maximum distance a member of an RC may be required to travel involuntarily between residence and IDT site.

(2) That distance may be—

*(a)* A 100-mile radius of the IDT site or a distance that may be traveled by an automobile under average conditions of traffic, weather, and roads in 3 hours. That applies only to those units that normally do 4 IDT sessions on 2 consecutive days (multiple unit training assembly 4) and where Government meals and quarters are provided at the unit IDT site.

*(b)* A 50–mile radius of the IDT site or a distance that may be traveled by an automobile under average conditions of traffic, weather, and roads in a 1½-hour period, where Government meals and quarters are not provided at the unit IDT site.

*e. Successful implementation and use of the procedures described herein are dependent on command coordination and responsibility.*

(1) Incentives are used to induce individuals to contract for service in a specified MOS, area of concentration, or Selected Reserve unit.

(2) When a unit is scheduled for transition, the command is responsible for retaining incentive recipients in the Selected Reserve. If possible, in keeping with the terms of the Soldier's contract, the Soldier should be reassigned or transferred to a position requiring his or her MOS or area of concentration.

(3) Commands should ensure assignment or transfer of Soldiers to the IRR or Inactive National Guard (ING) occurs only when no ARNG/USAR units are within commuting distance.

*f. The status or disposition of an incentive that has been paid or is pending payment is predicated on the following:*

(1) A Soldier may continue to receive full incentive payment, if otherwise eligible, when the Soldier is transferred or reassigned to—

*(a)* Another Selected Reserve unit of the ARNG/USAR. Assignment will be in a bonus MOS or area of concentration, or to a bonus-designated unit, where possible.

*(b)* Another unit of the ARNG/USAR outside of commuting distance. Assignment in a bonus MOS or area of concentration, or to a bonus-designated unit, is preferred, but not necessary. This is provided there are no assignments available in the Soldier's bonus MOS or area of concentration, or type unit within commuting distance.

(2) Transfer between RCs of the Army should be the priority and used instead of reassignment to the IRR or ING.

*(a)* As specified in paragraph 10–4f(2), every effort should be made to retain Soldiers who have been contracted for an incentive in the Selected Reserve. Assignment to other units within the same RC should have priority. As a second priority, commanders must consider transfers between RCs of the Army instead of reassignment or transfer to the IRR or ING.

*(b)* The term transfer as used in this paragraph refers to the personnel actions necessary to affect the change in strength accountability between the ARNG and the USAR. Enlisted Soldiers require discharge and enlistment actions, while officers require appointment and Federal recognition actions.

*(c)* When an ARNG/USAR unit is in transition and the Soldier cannot be reassigned or utilized in another unit of the same component—

*1.* The USAR Soldier will be offered an opportunity to transfer to an ARNG unit if otherwise eligible and approved by the gaining ARNG command, prior to reassignment to the IRR.

*2.* The ARNG Soldier will be offered an opportunity to transfer to a USAR TPU if otherwise eligible and approved by the gaining USAR commander prior to discharge from the ARNG and transfer to the IRR or ING.

(3) For all NPS and PS enlistment.

*(a) On transfer from the U.S. Army Reserve to the Army National Guard of the United States.* The entitlement of a USAR Soldier to receive subsequent incentive payments will continue upon enlistment, transfer, and/or affiliation with the ARNG provided the ARNG offers the same bonus. Recoupment of these bonuses is not authorized.

*(b) On transfer from the Army National Guard of the United States to the U.S. Army Reserve.* The entitlement of an ARNG Soldier to receive subsequent incentive payments will continue upon enlistment, transfer, and/or affiliation with the USAR provided the USAR offers the same bonus. Recoupment of these bonuses is not authorized.

(4) For SLRP and MGIB-Selected Reserve procedures refer to paragraphs 9–18, 10–5, and 10–16 and AR 621–202.

## 10–6. Suspension of incentives

*a.* Recipients of an incentive will be suspended from the program during authorized periods of nonavailability. Incentive pay is not authorized for periods of nonavailability, such as—

(1) Approved transfer to the IRR or Standby Reserve per AR 135–91 (see temporary overseas residency, employment, or missionary obligation), or transfer to the ING per NGR 614–1.

(2) Participation in other DOD approved programs.

(3) Approved transfer to the ING or IRR for personal reasons.

(4) Suspension under paragraphs 10–6*a*(1) and (2) will be for a maximum period of 3 years. Suspension under paragraph 10–6*a*(3) is for up to 1 year. Nonavailability in excess of the maximum period authorized will be cause for termination of incentive eligibility.

(5) Except under extraordinary circumstances, only one suspension of nonavailability may be granted or imposed during the term the incentive was entitled.

(6) Requests for suspension must be justified to the incentives manager, in writing.

(7) In order to regain incentive eligibility see paragraph 10–7.

*b.* A Soldier who has a suspension of favorable personnel action, initiated per AR 600–8–2, will not be processed for an initial or anniversary payment. Bonus payment(s) will be processed effective on the date the suspension is lifted for those Soldiers who have continued eligibility. This excludes suspension of favorable personnel actions for the Army physical fitness test failure or failure to meet body fat standards. Repeat Army physical fitness test failure or failure to meet body fat standard within a 1-year period will result in the suspension of an incentive. Two consecutive Army physical fitness test or body fat standard failures will result in the termination of an incentive.

(1) As an exception, Soldiers affected by unit transition and required to change MOS or area of concentration, but who remain eligible for an incentive, may receive subsequent payments before qualifying in the new specialty. The Soldier is required to become qualified in the new MOS or area of concentration within 24 months.

(2) When authorized, entitlement to subsequent payment will resume on the adjusted anniversary date of satisfactory creditable Selected Reserve service.

## 10–7. Reinstatement of incentives

*a.* Reinstatement and resumption of subsequent incentive payments following a period of authorized nonavailability is not guaranteed. Soldiers who complete a period of nonavailability and request reinstatement of eligibility for incentives and resumption of subsequent payments must—

(1) Complete the period of authorized nonavailability within the required time limit in paragraph 10–6.

(2) Rejoin an existing vacancy in the Selected Reserve authorized the Soldier's grade within—

*(a)* The incentive-authorized unit or specialty in which the Soldier was originally assigned; or

*(b)* An incentive-authorized unit or specialty offered in the currently approved SRIP, upon return from authorized nonavailablity.

(3) Extend their contract, enlistment, or reenlistment agreement within 90 days after completing the period of nonavailability, in order to serve out the full incentive contract period in the Selected Reserve. This is provided the unit reenlistment officials have access to the Soldier's personnel records and are able to verify the Soldier's eligibility to extend.

*b.* A Soldier who complies with all requirements listed in paragraph a, above, will be entitled to payments resumed on the adjusted anniversary date of satisfactory creditable Selected Reserve service, provided funding is available.

## 10–8. Termination of incentives

*a.* Entitlement to an incentive will be terminated when any of the following termination reasons apply before the fulfillment of the service described in the member's written agreement. That member will not be eligible to receive any further incentive payments, except for service performed before the termination date. Once declared ineligible, termination of an incentive will not affect a Soldier's responsibility to serve his or her current statutory or contractual service commitment. Termination of eligibility to an incentive will occur if a Soldier—

(1) Becomes an unsatisfactory participant per AR 135–91. The effective date for termination entered into the personnel data reporting systems for Soldiers declared unsatisfactory participants is the date of the first unexcused absence.

(2) Is an enlisted Soldier attending high school at time of enlistment and does not become a secondary school graduate within the required time limit.

(3) Fails to become MOS qualified or certified in the health professional specialty for which contracting.

(4) Accepts an AGR position, a permanent military technician position, or a temporary military technician position of more than 179 days, where membership in the Selected Reserve is a condition of employment.

(5) Voluntarily moves to a non-bonus unit or MOS.

(6) Exceeds the maximum authorized period of nonavailability.

(7) Fails to meet the requirements listed in paragraph 10–7a upon return from an authorized period of non-availability. Termination is effective the date the Soldier entered the period of nonavailability.

(8) Separates from a Selected Reserve unit or the IRR of the USAR or ARNG for any reason. Separation includes, but is not limited to—

(a) Discharge or transfer to the IRR, ING, Standby, or Retired Reserve. Soldiers executing an indefinite reenlistment with concurrent assignment to the IRR will retain up to 12 months of their enlistment bonus or PSEB if applicable. Assignment date to the IRR in this situation is effective on the first day after the original expiration term of service date.

(b) Enlistment or appointment in any component of the Armed Forces.

(9) Has received the maximum benefit authorized.

(10) Fails to participate satisfactorily in required training during the entire period of service agreed to in accordance with the written agreement, unless the failure to participate satisfactorily was due to reasons beyond the control of the member (that is, death, injury, illness, or other impairments).

b. Disposition of incentives for deceased members of the Army RCs, or for RC members being separated for disability described under 37 USC 373 that was incurred in the line of duty in a designated combat zone or in a combat related operation designated by the Secretary of Defense will be made as follows:

(1) For deceased members of the Army RCs, payment of incentives due will be made on determination of beneficiary eligibility of the decedent's incentives; for disabled Soldiers payment of incentives due will be directly to the Soldier upon separation.

(2) Payment will only include unpaid balance payable during the settlement of decedent's or member's final military pay account.

(3) Loan Repayment Program incentives will be prorated and paid directly to the lending institution.

c. Concerning relief from termination, persons who move from one location to another may continue incentive eligibility if they remain in the Selected Reserve of the Army (USAR or ARNG) and are assigned to an incentive-eligible unit or incentive-eligible critical skill, as appropriate. Each Army command will endeavor to transfer an incentive recipient who moves to a new location into a similar Selected Reserve unit or one that can make use of the skill. For health specialists in the Selected Reserve, incentive recipients will fill an existing vacancy. Failure to join another unit or find a position in the Selected Reserve within 6 months will terminate the member from program eligibility. In the case of a member who is assigned to an incentive-qualifying position within 6 months or less, that period must be added to the member's original incentive obligation.

## 10–9. Recoupment of incentives

a. With the exceptions of paragraphs 10–9a(1) and (2), recoupment conditions in this paragraph cover all incentives. Members who are not granted relief through the waiver process for incentives received must refund a pro-rata amount to the Government when termination is due to reasons outlined in paragraph 10–8. The only exceptions are cases in which prorated recoupment is not authorized in paragraph 10–9c. Commanders will refer to the respective Army component (USAR/NGB) G–1 office most directly responsible for recruiting and retention (pay grade O–6 or civilian equivalent or higher) for resolution and consideration for waiver or exception. Cases considered for waiver or exception are those in which recoupment would be contrary to personnel policy or other management objectives, against equity or good conscience or contrary to the best interests of the United States, and clearly in the best interest of the Army.

(1) The SLRP and Health Professional Loan Repayment are normally not recouped because time is served prior to receipt of the incentive. However, when overpayment or payment in error is made, recoupment may occur when a waiver of indebtedness is not obtained.

(2) RC Soldiers who enlist into the Regular Component and receive a bonus from the gaining component (RA, Navy, U.S. Marine Corps, U.S. Air Force, or U.S. Coast Guard) will have their RC bonus terminated. The already paid "unearned" portion of the RC bonus, to include lump sums, will be recouped unless the Soldier receives an exception to policy.

b. All debts to the U.S. Government will be submitted from Selected Reserve and Ready Reserve members for collection.

(1) The recoupment amount is based on the following formula:

*(a)* The number of months served satisfactorily during the term for which an incentive was paid will be multiplied by the monthly rate authorized by the particular incentive. The monthly rate is calculated by dividing the total incentive amount by the number of months of service the member has agreed to serve. Partial month credit will be calculated by dividing number of days served by 30. This calculation results in the Servicemember's "earned incentive."This calculation results in the Servicemember's "earned incentive."

*(b)* That "earned incentive" must be subtracted from the total incentive amount paid to the individual to date (initial and any subsequent payments).

*(c)* If the "earned incentive" is less than the total incentive amount paid, the overpayment to the individual must be recouped. If the "earned incentive" is more than the payments received to date (total of initial and any subsequent payments), the excess amount will be paid in the final installment.

(2) Commanders are responsible for initiating recoupment procedures whenever a member's eligibility to an incentive is terminated and recoupment is required by this regulation or applicable policy. When a commander is not in the Soldier's chain of command, the incentives program manager will initiate recoupment procedures.

(3) For cases in which a Soldier fails to maintain eligibility for an incentive, and recoupment procedures are initiated, any refund made by a Soldier under recoupment procedures will not affect that Soldier's MSO. A member in the ARNG or USAR must serve the balance of the term of service entered into contractually or by statutory requirements.

*c.* Commanders will not recoup for any of the following reasons:

(1) When the Soldier's unit is in transition per paragraph 10–5. However, termination with recoupment action is required when a Soldier who loses his or her position due to unit transition per paragraph 10–5 refuses a reassignment in the Selected Reserve.

(2) Acceptance of an immediate appointment as a commissioned officer or warrant officer in any component of the Army excluding the IRR or ING. An enlisted Soldier accepting an appointment as a commissioned officer or warrant officer is not subject to recoupment of any enlistment or reenlistment bonus, including lump sums.

(3) Soldiers who become simultaneous members of an authorized officer commissioning program, to include those drawing a stipend, will remain in the SLRP and other incentive programs while in an advanced training status provided he or she continues to perform military duties as specified in his or her SLRP or incentives agreement. Upon commissioning or appointment as an officer in an RC, the SLRP or incentive will remain in effect until the terms of the original agreement are fulfilled. Soldiers who commission into the RA will have the SLRP terminated without recoupment on the date of commissioning.

(4) Separation from the Selected Reserve or transfer from the designated bonus position because of death, injury, illness, or other impairment that is not the result of any misconduct by the Soldier.

(5) Ordered to extended AD (voluntarily or involuntarily) and accessed in the RA end strength. Additionally, those on extended AD can still be a TPU Soldier.

(6) Enters into an authorized period of nonavailability. As an exception, recoupment is authorized when a Soldier fails to meet the requirements listed in paragraph 10–7*a* upon return from an authorized period of nonavailability.

(7) Accepts an AGR position, a permanent military technician position, or temporary military technician position of more than 179 days, where membership in the Selected Reserve is a condition of employment. These Soldiers will have their enlistment, reenlistment, and/or affiliation bonus terminated without recoupment as long as they serve one or more days in the losing Selected Reserve (for example, 1 or more days on or after the effective date of the contract).

(8) A member paid a bonus, education incentive or special pay for a period of enlistment and/or affiliation (or reenlistment and/or extension) in a component of the Army (Regular, USAR, or ARNG) who is discharged for immediate reenlistment or affiliation in any other component of the Army (Regular, USAR, or ARNG) or any other U.S. military Service (Regular Component or RC) for which no bonus, education incentive or special pay is paid, may be considered to have completed the full term of service specified in the former enlistment or officer contract, provided the term of the latter service contract includes the remaining period of service from the former contract (this does not pertain to the MSO). In such cases, no recoupment of incentive paid will occur. Paragraph 10–5 governs cases for movement between the ARNG and USAR. Enlistment and officer bonuses normally terminate without recoupment when moving from one component to another. Doubtful cases will be referred to the approval authority in paragraph 10–9*a*.

(9) The member is being discharged for hardship reasons in accordance with applicable separation policy.

## 10–10. Bonus control numbers, reporting requirements, and Army Board for Correction of Military Records processing

*a. Bonus control numbers.* USAR, G–1, has operational control of bonus control numbers, and the Office of the CAR, Army Reserve Careers Division, has administrative control of the bonus control numbers.

*b. Reporting requirements.*

(1) Proper component directives will govern reporting requirements for subordinate elements of the ARNG and the USAR.

(2) Soldiers participating in or terminated from an incentive program governed by this regulation will be reported. Use the appropriate incentive participant codes listed below in table 10–1.

**Table 10–1**
**Incentive participant codes**

| I. Incentive type |
| --- |
| A–Enlisted with cash enlistment bonus |
| B–Enlisted with educational assistance |
| C–Reenlisted |
| D–Reenlisted/extended with bonus for 6 years |
| N–Previous incentive recipient (contract completed) present term without incentive |
| Q–Not receiving incentive (no previous incentive) |
| R–Affiliated with bonus |
| S–Deleted |
| V–Converted |
| W–Converted from enlistment bonus to educational assistance |
| |
| II. Incentive termination reason |
| E–Terminated: Unsatisfactory participation |
| F–Terminated: Transferred to another RC |
| G–Terminated: Transferred or enlisted in the Regular Component |
| H–Terminated: Transferred to the officer corps (see para 10–8a(8)(b)) |
| I–Terminated: Unauthorized change in MOS |
| K–Terminated: Accepted civilian position where Reserve membership is a condition of employment |
| L–Terminated: Assigned to AD or ADT in excess of 90 days in support of the Reserve program |
| M–Terminated: Other |
| |
| III. Loan repayment |
| T–Loan repayment for authorized loans under paragraph 10–14 |

*c. Claims requiring determination by the Army Board for Correction of Military Records.* Authority to act on claims of erroneous entries on enlistment documents or incentives not delegated elsewhere in this regulation is DCS, G–1 (DAPE–MPA–CB). Requests or claims involving the correction or amendment of dates of enlistment, reenlistment, or extension agreements will be processed under paragraph 8–6. Cases that cannot be resolved by the agencies described in paragraph 8–6, or by other provisions of this regulation, will be submitted on a DD Form 149 (Application for Correction of Military Records) per AR 15–185. The appropriate address for the Army Board for Correction of Military Records is listed in DD Form 149 instructions. Prior to sending any case or referring a Soldier to the Army Board for Correction of Military Records, recruiting or personnel officials must first attempt to rectify the error through appropriate command channels.

## 10–11. Incentive eligibility under the U.S. Army Reserve Drill Sergeant, Instructor, or Linguist Program

*a.* A Soldier assigned to a drill sergeant (special qualifications identifier (SQI) "X"), instructor (SQI "8"), or linguist (SQI "L" with Defense Language Proficiency Test (DLPT) "2" in reading and listening) duty position may be eligible for an incentive under the following conditions:

(1) SQI X, SQI 8, or SQI L with DLPT 2 in reading and listening, qualified and assigned to duty in a drill sergeant, instructor, or linguist duty position. If otherwise eligible, the Soldier may enlist, reenlist, or affiliate for the PSEB,

reenlistment bonus, affiliation bonus, or the SLRP incentives. A match of the Soldier's MOS and the duty position MOS is not required for SQI X.

(2) SQI X, SQI 8, or SQI L with DLPT 2 in reading and listening, unqualified and assigned to a drill sergeant, instructor, or linguist duty position.

(3) The duty position MOS or unit is authorized an incentive and the Soldier is qualified in the MOS. If eligible, the Soldier may enlist, reenlist, or affiliate for the specified incentive. With the exception of the PSEB, a match of the Soldier's MOS and the duty position MOS is not required for SQI X.

(4) The unit or duty position MOS is not authorized an incentive or the Soldier's MOS does not match the duty position. The Soldier is not eligible for the PSEB but if otherwise qualified, the Soldier may enlist, reenlist, or affiliate for the reenlistment bonus, affiliation bonus, or the SLRP incentives. The Soldier must agree to successfully complete the drill sergeant, instructor, or Language Proficiency Service School and qualify in SQI X, 8, or L with DLPT 2 within 24 months of assignment to the drill sergeant, instructor, or linguist position. Eligibility to an incentive is gained on execution of the enlistment, reenlistment, or affiliation documents and is contingent upon SQI X, 8, or L with DLPT 2 qualification.

(5) Continuing incentive eligibility is authorized upon reassignment to a drill sergeant, instructor, or linguist duty position. This policy is contingent on the following requirements. A Soldier is—

(a) SQI X, 8, or L with DLPT 2, qualified and reassigned to a drill sergeant, instructor, or linguist position. Except for the PSEB (see chap 3), a match of the Soldier's MOS and the duty position MOS is not required and incentive eligibility continues. For the PS enlistment incentive, the Soldier must have been awarded SQI X and served on AD as a drill sergeant; awarded SQI 8 and served on AD as an instructor; or awarded SQI L with DLPT 2 in reading and listening and served on AD as a linguist.

(b) SQI X, 8, or L with DLPT 2 in reading and listening unqualified and is reassigned to a drill sergeant, instructor, or linguist duty position.

1. The duty position MOS is authorized an incentive and the Soldier is qualified in the MOS. A match of the Soldier's MOS and the duty position MOS is required and the incentive continues.

2. The unit is an incentive-authorized unit and the duty position is not authorized for an incentive, or the Soldier's MOS does not match the duty position. PS enlistment incentive eligibility is terminated. Reenlistment, affiliation, or SLRP incentive eligibility may continue, provided the Soldier agrees to successfully complete the drill sergeant, instructor, or Language Proficiency Service School, and qualifies in SQI X, 8, or L with DLPT 2 within 24 months of assignment to the drill sergeant, instructor, or linguist duty position. Reenlistment, affiliation, or SLRP incentive eligibility is continued and is contingent upon SQI X, 8, or L with DLPT 2 qualification.

3. The unit is not an incentive-authorized unit and the duty position is not authorized for an incentive, or the Soldier's MOS does not match the duty position. The PS enlistment incentive eligibility is terminated. Reenlistment; affiliation; or SLRP incentive eligibility may continue, provided the Soldier agrees to successfully complete the drill sergeant, instructor, or Language Proficiency Service School, and qualifies in SQI X, 8, or L with DLPT 2 within 24 months of assignment to the drill sergeant, instructor, or linguist duty position.

(6) Reenlistment, affiliation, PS enlistment, or SLRP incentive eligibility is continued and is contingent upon SQI X, 8, or L (with DLPT 2 in reading and listening) duty positions.

(7) Unit transition rules specified in paragraph 10–5 apply to those Soldiers assigned or reassigned to drill sergeant, instructor, or linguist duty positions requiring DLPT 2 in reading and listening.

(8) Termination and recoupment rules specified in this chapter apply to those Soldiers assigned or reassigned to drill sergeant, instructor, or linguist duty positions requiring with DLPT 2 in reading and listening.

b. Exception to policy during contingency operations for reenlistment incentives (see AR 601–280).

(1) Eligibility for an Army RC reenlistment bonus incentive requires Soldiers to have no more than 12 months of their statutory or contractual MSO remaining to reenlist or extend for incentives.

(2) Mobilized Soldiers may reenlist for incentives within the current RC reenlistment window as established by the DCS, G–1. The mobilized Soldier must execute a reenlistment during mobilization or within 90 days following REFRAD within the current RC reenlistment window whether the Soldier's expiration term of service occurs during or after the period of mobilization.

c. Counseling by commanders will ensure Soldiers that contract for an incentive have been counseled by a Service representative regarding the Soldier's obligations and responsibilities.

## 10–12. Selected Reserve Incentives Program–nonprior service enlistment bonus

This paragraph provides policy and guidance for the administration of the SRIP–NPS enlistment bonus.

a. Eligibility. A cash bonus is offered to eligible applicants enlisting in the Selected Reserve and complying with all of the following eligibility requirements:

(1) Has not previously served in the U.S. Armed Forces, or has served in the U.S. Armed Forces, but was released from such service before completing basic training requirements required for initial award of an MOS, and the service was characterized as either honorable or uncharacterized.

(2) Enlists in the ARNG or USAR for 8 years. The Soldier may enlist for a period of 3 to 6 years in the Selected Reserve for varying incentives as announced in periodic HQDA, CAR, and NGB incentives messages.

(3) Enlists for a position vacancy in a Selected Reserve bonus unit and/or bonus MOS, as designated by HQDA or per respective RC annual SRIP. By the time the enlistee completes IADT the position must be vacant.

(4) Qualify as a secondary school graduate.

(5) Has completed IADT or received sufficient training to be deployable.

(6) Is classified in Mental Category I, II, or III (AFQT) score of 31 or higher.

(7) Is not enlisting to qualify for a military technician or AGR position where membership in the Selected Reserve is a condition of employment (temporary assignment as a military technician of 179 days or less is excluded).

(8) Is not enlisting for voluntary assignment to full-time AD or ADT beyond 90 days in support of the Reserve program.

(9) Completes an enlistment bonus annex to DD Form 4 for ARNG and USAR as part of the enlistment agreement.

(10) Enlistment through the ACASP, in accordance with chapter 7, in an MOS authorized by HQDA for the bonus under the SRIP.

*b. Entitlement.*

(1) This incentive offers a cash bonus to eligible applicants with no prior military service who enlist in the Selected Reserve and contract to serve in a designated bonus skill or unit announced by HQDA in accordance with paragraph 10–1.

(2) Soldiers will not receive any enlistment bonus payments, initial or subsequent, until they have complied with all of the eligibility criteria in this chapter.

(3) Except for the ACASP enlistment bonus, the following payment schedule applies:

*(a)* The initial payment may not exceed one-half of the total bonus amount for which the Soldier is entitled, unless a lump sum payment is specifically approved by the respective RC under the annual SRIP program.

*(b)* The remainder of the bonus may be paid in periodic installments or in a lump sum, as announced by HQDA or per respective RC annual SRIP.

(4) The ACASP enlistment bonus is payable as follows: for enlistments in the ARNG or USAR, each component will manage their respective budgets by directing how and when payments will be made, so long as the initial payment does not exceed one-half of the total authorized amount.

## 10–13. Selected Reserve Incentives Program–prior service enlistment bonus

This paragraph provides policy and guidance for the administration of the SRIP–PSEB.

*a. Eligibility.* A cash bonus is offered to eligible applicants enlisting in the Selected Reserve and complying with all of the following eligibility requirements:

(1) Received an honorable discharge or honorable release at the conclusion of all prior periods of military service. A general under honorable discharge from any period of service does not meet these criteria and is ineligible for the PSEB.

(2) Has completed no more than 16 years of total military service. The "total military service criteria" includes inactive Reserve time in the IRR or ING.

(3) Is not being released from active service for the purpose of enlistment in the Selected Reserve. Soldiers also may not be released from one selected RC for the purpose of enlistment into a different selected RC for the PSEB. Soldiers who are separated within 90 days of their contracted expiration term of service are exempt from this restriction and are considered to have completed their prior obligation.

(4) Possesses a bonus MOS or accepts training into an MOS as announced by HQDA that is the same required by the Selected Reserve unit position vacancy. The Soldier must have successfully served in the MOS and attained a level or qualification commensurate with the Soldier's grade and years of Service while serving on AD. In the case of PS in the USAR or ARNG, Soldier must have previously qualified in the MOS (see para 10–4). Soldiers enlisted as "will train" have 24 months to acquire the critical MOS.

(5) Meets the eligibility criteria for enlistment in the USAR as a PS applicant as prescribed by this regulation.

(6) Completes a PSEB annex to DD Form 4 for ARNG and USAR as part of the enlistment agreement and is classified in Mental Category I, II, or III (AFQT) score of 31 or higher.

(7) Upon enlistment, will qualify for the Selected Reserve unit position vacancy for assignment to one of the following:

*(a)* Must be duty MOS qualified for the position for which enlisting, or agree to retrain in a critical MOS vacancy announced by HQDA or per respective RC annual SRIP that is the same required by the position vacancy for which enlisting.

*(b)* Assigned to a qualified drill sergeant "X," instructor "8," or linguist "L" positions that require DLPT 2 in reading and listening. Soldiers must have been awarded the SQI and successfully served on AD, or in the case of PS in the USAR or ARNG, must have been previously qualified in the MOS. Soldiers with drill sergeant SQI of "X" are exempt from the MOS qualification requirement.

*b. Entitlement.*

(1) This incentive offers a cash bonus to eligible applicants with prior military service who enlist in the Selected Reserve and contract to serve in a designated bonus skill announced by HQDA, or as a drill sergeant, instructor, or linguist. The incentive offers—

*(a)* Up to the full amount provided by law for an enlistment to serve 6 years in a Selected Reserve unit.

*(b)* Up to the full amount provided by law for an enlistment to serve 3 years in a Selected Reserve unit.

*(c)* Up to full amount provided by law for the second 3–year option in a Selected Reserve unit.

(2) The bonus is payable on the following schedule:

*(a)* An initial lump sum payment that will not exceed one-half the amount of the total bonus for a 3–year contract, or a second 3-year bonus, unless a lump sum payment is specifically approved by the respective RC under the annual SRIP program.

*(b)* An initial lump sum payment that will not exceed one-half the amount of the total bonus for a 6–year contract, unless a lump sum payment is specifically approved by the respective RC under the annual SRIP program.

*(c)* The remainder of the two authorized 3–year or the 6–year reenlistment or extension bonus payments are paid as determined by the incentive skill list updated by DCS, G–1 (DAPE–MPA), and reviewed by the Assistant Secretary of the Army (Manpower and Reserve Affairs) annually before the start of each fiscal year.

(3) Entitlement to the initial payment of a PSEB is effective on the date of enlistment.

(4) The initial payment is made when the Soldier—

*(a)* Fills a Selected Reserve unit position vacancy for which he or she is MOS qualified.

*(b)* Fills a drill sergeant, instructor, or linguist position vacancy that he or she is qualified for per paragraph 10–11.

*(c)* Becomes MOS qualified as a "will train."

## 10–14. Selected Reserve Incentives Program–Student Loan Repayment Program

The SLRP procedures and guidance are contained in AR 621–202. The following clarifies which loans are eligible for repayment under the SRIP and is intended as a guide to recruiting and retention personnel. Refer to the annual SRIP (ARNG and USAR) for further guidance and restrictions.

*a.* Any loan made, insured, or guaranteed under part B of title IV of the Higher Education Act of 1965 (20 USC 1071);

*b.* Any loan made under part D of such title (the William D. Ford Federal Direct Loan Program, 20 USC 1087a);

*c.* Any loan made under part E of such title (20 USC1087aa); or

*d.* Any loan incurred for educational purposes made by a lender that is—

(1) An agency or instrumentality of a State;

(2) A financial or credit institution (including an insurance company) that is subject to examination and supervision by an agency of the United States or any State.

(3) From a pension fund or a nonprofit private entity (subject to case-by-case review by the appropriate component as described in para 10–2).

## 10–15. Selected Reserve Incentive Program–officer accession bonus and officer affiliation bonus

This paragraph provides policy and guidance for the administration of the Selected Reserve officer accession bonus (OAB) and officer affiliation bonus (OAFB). The OAB and OAFB will be used to attract and retain qualified commissioned and warrant officers possessing or qualifying for training in critical skills, grades, and/or units designated by the Secretary of the Army as critical to meet manpower shortages in the ARNG and USAR. DARNG and CAR may approve more restrictive eligibility criteria for ARNG and USAR, respectively, to effectively apply and manage the OAB and OAFB in their component. Individual mobilization augmentees are not eligible for the OAB or OAFB.

*a. Officer accession bonus.* The OAB applies to newly appointed commissioned and warrant officers (2LT or WO1) who agree to serve in a Selected Reserve unit of the component in which appointed. DA Form 5261–7 (Selected Reserve Incentive Program - Officer Accession Bonus) will be completed on individuals who qualify for and agree to receive the OAB. As an exception, newly appointed officers in the Chaplain Corps or the Judge Advocate Generals Corps may be in any grade, but must not have previously been a commissioned or warrant officer. To be eligible for the bonus individual must—

(1) Agree to accept an appointment as an officer in the ARNG or USAR and serve in a designated critical area of concentration/MOS in a Selected Reserve unit of the component in which appointed, for a period of not less than 6 years from date of appointment.

(2) Not be accepting an appointment as an officer serving in the Selected Reserve for the purpose of qualifying for a military technician position where membership in an RC is a condition of employment (a one-time temporary assignment as a military technician is excluded), or be accepting an appointment to fulfill either an AGR position or an assignment as an individual mobilization augmentee.

(3) Possess an area of concentration/MOS designated by the Secretary of the Army for bonus entitlement, or agree

to accomplish the necessary training prescribed by the Secretary of the Army to achieve the designated critical area of concentration/MOS.

(4) Not currently be receiving financial assistance under 10 USC Chapters 1608, 1609, or 1611, or special pay under 37 USC 302g, and will not receive such assistance or serve any related service obligation during the period of this agreement. Soldiers who have previously received loan repayments under Chapter 1609 may request termination of SLRP/College Loan Repayment Program and contract to receive the OAB, provided they do not apply for or receive SLRP/College Loan Repayment Program payments for service performed after their appointment.

(5) Fill a critical skill in the Selected Reserve. ARNG and USAR will forward a critical skills list with justification for payment of the OAB to DCS, G–1, on a semi-annual basis for approval as part of their SRIP. A critical skill is defined as one of the following:

 *(a)* A technical skill requiring notably above average training and/or replacement costs.

 *(b)* A skill that is in high demand in the civilian sector; one that is challenging to recruit into.

 *(c)* A skill that is crucial to combat readiness.

 *(d)* A skill that is a low density, high-demand skill.

(6) Successfully complete an officer basic course or warrant officer basic course in his or her designated area of concentration/MOS within 36 months of the date of appointment.

 *b. Officer affiliation bonus.* The OAFB will apply to officers of all grades who agree to serve in a Selected Reserve unit of the ARNG or USAR. DA Form 5261–6 (Selected Reserve Incentive Program - Officer Affiliation Bonus) will be completed on individuals who qualify for and agree to receive of the OAFB. To be eligible for the bonus officers must—

(1) Agree to serve in a critical officer skill, unit, or pay grade that is designated for bonus entitlement.

(2) Agree to complete area of concentration/MOS training, if affiliating for service in a designated critical area of concentration/MOS other than that which they currently hold, within 36 months of affiliation date.

(3) Be currently serving on AD for more than 30 days (the affiliation will occur at completion of the AD tour), or be a current member of a Selected Reserve not on AD. If the officer previously served on AD, they must have been released from that duty under honorable conditions.

(4) Have not previously served in the Selected Reserve.

(5) Not be entitled to retired or retainer pay.

(6) Not be affiliating to qualify for a military technician position where membership in an RC is a condition of employment (a one-time temporary assignment as a military technician is excluded) or for an AGR position, or for assignment to an individual mobilization augmentee position.

(7) Not have previously received an affiliation bonus for service in the Selected Reserve.

(8) Not currently be receiving financial assistance under 10 USC Chapters 1608, 1609, or 1611, or special pay under 37 USC 302g, and will not receive such assistance or serve any related service obligation during the period of this agreement. Soldiers who have previously received loan repayments under Chapter 1609 may request termination of SLRP/College Loan Repayment Program and contract to receive the OAFB, provided they do not apply for or receive SLRP/College Loan Repayment Program payments for service performed after their appointment.

(9) Agree to serve in the ARNG or USAR for a period not less than 3 years.

 *c. Officer accession bonus and officer affiliation bonus amounts and payment schedule.*

(1) The OAB amount will be paid in accordance with the annual SRIP after completion of officer basic course or warrant officer basic course.

(2) The OAFB will be paid in accordance with the annual SRIP upon the officer's assignment to the designated position, unit, or pay grade pursuant to the agreement.

 *d. Officer accession bonus and officer affiliation bonus agreements.* Officers accessed or affiliating with the ARNG or USAR must meet the eligibility criteria and sign an agreement applicable to the type of bonus to be received. The signed agreement will be attached to the NGB Form 62E (Application for Federal Recognition as an Army National Guard Officer or Warrant Officer and Appointment as a Reserve Commissioned Officer or Warrant Officer of the Army in the Army National Guard of the United States) or DA Form 61 (Application for Appointment), as applicable, and filed in the interactive Personnel Electronic Records Management System in the General Administration Section of the official military personnel file next to the NGB Form 62E or DA Form 61.

 *e. Suspension of officer accession bonus and officer affiliation bonus.* Recipients who fail to accept a commission or appointment as an officer, do not commence to participate, or do not satisfactorily complete the service obligation incurred under the agreement for any of the reasons listed below, will be subject to recoupment or loss of entitlement to a portion of the bonus amount:

(1) Fail to participate satisfactorily in training or duty with the Selected Reserve, including failure to maintain medical and dental readiness, during the entire period of the service obligation, unless the failure to participate satisfactorily was due to reasons beyond the officer's control (for example, death, injury, illness, or other impairment not the result of misconduct).

(2) Fail or fail to complete officer basic course or warrant officer basic course within 36 months of the date of

appointment (for the OAB); or to complete area of concentration/MOS training within 36 months of affiliation date, if required when affiliating for service in an area of concentration/MOS other than that currently held by the officer (for the OAFB).

(3) Involuntarily separated from the Selected Reserve, unless as a result of unit inactivation, unit relocation, unit reorganization, or a DOD-directed reduction in the Selected Reserve force.

(4) Voluntarily move to a non-bonus skill, unless the move is required by the RC.

(5) Fail to extend the contracted term of service for a period of authorized nonavailability.

(6) Accept either a military technician position, where membership in an RC is a condition of employment, (a one-time temporary assignment as a military technician for 6 months or less is excluded), an AGR position, or assignment to an individual mobilization augmentee position.

## 10–16. Selected Reserve Incentive Program–enlisted affiliation bonus

This paragraph provides policy and guidance for the administration of the SRIP enlisted affiliation bonus (EAB).

*a. Eligibility.* Member of a U.S. Armed Force with no more than 20 years of time in service, who has executed a written agreement to serve in a Selected Reserve unit for a period of not less than 3 years, in a skill, unit, or pay grade designated on written agreement, after being discharged or released from AD under honorable conditions, and who meets the following criteria in paragraphs 10–16a(1) through (8):

(1) Is currently serving on AD in the RA, or AD term of service incurred by an order.

(a) Is otherwise eligible to remain on AD by reenlistment or voluntary extension in the component to which he or she is currently assigned, or

(b) Is a mobilized IRR or Standby Reserve Soldier completing the AD term of service and separating from AD with the appropriate SPD and RE codes annotated on the DD Form 214.

(2) Has satisfactorily completed a term of service in one of the following:

(a) A Regular Component enlistment contract in one of the U.S. Armed Forces.

(b) A period of obligated AD service in a Regular Component of a U.S. Armed Force. This includes AD service under AR 135–210, chapter 2, or an AD term of service incurred by an order, or

(c) A tour of AD in a Title 10 AGR status for the term specified in the AGR orders, normally 3 years. This does not include an ARNG tour of AGR service under 32 USC.

(3) Has been—

(a) REFRAD from the RA or Title 10 AGR Status; or

(b) Transferred from the IRR or Standby Reserve; or

(c) Enlisted in the USAR after REFRAD/discharged from another U.S. Armed Force; and

(4) When last REFRAD/discharged, must have been eligible to remain on AD by reenlistment or voluntary extension in the component to which the Soldier was assigned; or

(5) If last period of AD was as a mobilized IRR or Standby Reserve Soldier, was separated from AD with the appropriate SPD and RE codes annotated on the DD Form 214.

(6) Is not affiliating to qualify for full-time military technician or AGR.

(7) Possesses the military grade and skill qualification commensurate with the vacancy and the skill is designated as critical in the current SRIP list. Soldiers enlisted as "will train" have 24 months to acquire the critical MOS.

(8) Enters into a written service agreement sufficient to cover the affiliation period selected. Soldier must also execute an EAB annex to DD Form 4 as part of the agreement.

*b. Entitlement.*

(1) Bonus amount and payment method (lump sum consisting of the entire bonus amount or installments) will be in accordance with ARNG and USAR annual SRIP policy.

(2) Entitlement and period of service is computed from the effective date of assignment to the Selected Reserve unit as follows:

(a) The day following REFRAD for transitioning RA Soldiers.

(b) Effective date of assignment order for Soldiers transferring from IRR to USAR units, or the enlistment date for IRR Soldiers enlisting into ARNG units.

(c) For "will train" Soldiers, no bonus will be paid before the completion of MOS training and award of MOS.

*c. Enlisted Accession Bonus processing for Regular Army Soldiers.*

(1) RA Soldiers will be processed at RA installations by an RC category counselor. Soldiers who affiliate with a Selected Reserve unit will execute an enlistment agreement (DD Form 4) or transfer in accordance with AR 601–280.

(2) RA Soldiers applying for the USAR EAB who, upon REFRAD, have a remaining service obligation but do not have sufficient time to cover the affiliation bonus period of 3 or 6 years, must execute an enlistment agreement (DD Form 4) with the RC category counselor for a period of whole years, in accordance with AR 601–280 prior to REFRAD. RA Soldiers applying for the USAR EAB with sufficient time remaining on current contract to cover the EAB period selected will execute only the EAB written agreement and transfer documents in accordance with AR 601–280 before REFRAD. A copy of the EAB written agreement will be attached to the transfer documents.

*d. Other U.S. Armed Forces.* EAB applicants from other U.S. Armed Forces will be processed at a MEPS by the USAR or ARNG guidance counselor, in accordance with AR 601–280.

*e. Enlisted Accession Bonus processing for Individual Ready Reserve Soldiers (U.S. Army Reserve only).*

(1) Upon enlistment into a Selected Reserve unit, an IRR RC EAB applicant who does not have the time remaining on a current written service agreement sufficient to cover the affiliation period selected may, as an exception to the applicable provisions of AR 140–111—

*(a)* Execute a reenlistment agreement for the number of whole years (1, 2, 3, 4, 5, 6, or indefinite) to cover the affiliation term of service, and reenlist outside the 12-month reenlistment window. The DD Form 4 and DA Form 3540 are used for this purpose. This service agreement will be executed prior to processing the USAR EAB for payment. A copy of the EAB annex to DD Form 4 will be attached to each copy of the DA Form 4187, DD Form 4, and DA Form 3540 before distribution. The following remark will be entered on the DA Form 3540, Section XII, 2. Remarks, prepared by the Army Reserve career counselor:

*(b)* "As an exception to policy, in accordance with DCS, G–1, memorandum dated (use date of this memorandum), I am authorized to reenlist outside the 12-month reenlistment window for 1, 2, 3, 4, 5, or 6 years, or an indefinite period (as required) to satisfy the service term of the USAR Enlisted Affiliation Bonus written agreement." _____Soldier's initials.

*Note.* Ensure Soldiers are counseled that signing the "Written Agreement - Enlisted Affiliation Bonus Addendum" does not entitle them to the EAB. The EAB will not be processed for payment until they subsequently meet reenlistment eligibility requirements and reenlist to cover the term of service selected.

(2) An IRR EAB applicant who has the time remaining on a current written service agreement sufficient to cover the affiliation period selected, will execute only an EAB annex to DD Form 4. A copy of the DA Form 4187 and a copy of the transfer order will be attached to each copy of the written agreement before distribution.

*f. Enlisted Accession Bonus processing for Individual Ready Reserve Soldiers (Army National Guard only).* Execute an enlistment agreement along with EAB addendum. Refer to current fiscal year SRIP policy for applicability.

## 10–17. Selected Reserve Incentive Program–U.S. Army Reserve and Army National Guard reenlistment bonuses

Reenlistment bonus amounts, skills, and eligibility for members of the Selected Reserve of the USAR and ARNG are set annually under the SRIP. General reenlistment policy is managed under AR 140–111 for USAR, and NGR 600–20 for ARNG. Policy governing the suspension, termination, reinstatement, and recoupment of RC reenlistment bonuses is managed under chapter 10.

**Appendix A**
**References**

**Section I**
**Required Publications**
Unless otherwise stated, all publications are available at http://www.apd.army.mil.

**AR 40–501**
Standards of Medical Fitness (Cited in para 2–9.)

**AR 140–10**
Assignments, Attachments, Details, and Transfers (Cited in para 1–9.)

**AR 140–111**
U.S. Army Reserve Reenlistment Program (Cited in para 1–10.)

**AR 600–8–19**
Enlisted Promotions and Reductions (Cited in para 7–3*e*(3).)

**AR 600–8–101**
Personnel Processing (In-, Out-, Soldier Readiness, and Deployment Cycle) (Cited in para 7–3.)

**AR 600–9**
The Army Body Composition Program (Cited in para 3–7*a*.)

**AR 601–141**
U.S. Army Health Professions Scholarship, Financial Assistance, and Active Duty Health Professions Loan Repayment
Programs (Cited in para 9–6.)

**AR 614–30**
Overseas Service (Cited in para 5–27*a*(3).)

**AR 614–200**
Enlisted Assignments and Utilization Management (Cited in para 5–27*b*.)

**Section II**
**Related Publications**
A related publication is a source of additional information. The user does not have to read it to understand this
publication. United States Code is available at http://www.gpoaccess.gov/uscode/index.html. Uniform Code of Military
Justice is available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.

**Accredited Institutions of Postsecondary Education (AIPE)**
(Available for purchase at http://www.acenet.edu/bookstore.)

**AR 11–6**
Army Foreign Language Program

**AR 15–185**
Army Board for Correction of Military Records

**AR 27–10**
Military Justice

**AR 40–3**
Medical, Dental, and Veterinary Care

**AR 40–400**
Patient Administration

**AR 56–9**
Watercraft

**AR 135–7**
Incentive Programs

**AR 135–91**
Service Obligations, Methods of Fulfillment, Participation Requirements, and Enforcement Procedures

**AR 135–100**
Appointment of Commissioned and Warrant Officers of the Army

**AR 135–175**
Separation of Officers

**AR 135–178**
Enlisted Administrative Separations

**AR 135–180**
Retirement for Non-Regular Service

**AR 135–205**
Enlisted Personnel Management

**AR 140–1**
Mission, Organization, and Training

**AR 140–30**
Active Duty in Support of the United States Army Reserve (USAR) and Active Guard Reserve (AGR) Management Program

**AR 145–1**
Senior Reserve Officers' Training Corps Program: Organization, Administration, and Training

**AR 195–3**
Acceptance, Accreditation, and Release of United States Army Criminal Investigation Command Personnel

**AR 380–67**
Personnel Security Program

**AR 600–8–1**
Army Casualty Program

**AR 600–8–10**
Leave and Passes

**AR 600–8–104**
Army Military Human Resource Records Management

**AR 600–8–105**
Military Orders

**AR 600–13**
Army Policy for the Assignment of Female Soldiers

**AR 600–20**
Army Command Policy

**AR 600–37**
Unfavorable Information

**AR 600–43**
Conscientious Objection

**AR 600–85**
The Army Substance Abuse Program

**AR 601–222**
Armed Services Military Personnel Accession Testing Programs

**AR 601–270**
Military Entrance Processing Stations (MEPS)

**AR 601–280**
Army Retention Program

**AR 611–5**
Personnel Classification Testing

**AR 612–201**
Initial Entry/Prior Service Trainee Support

**AR 621–202**
Army Educational Incentives and Entitlements

**AR 635–10**
Processing Personnel for Separation

**AR 635–40**
Physical Evaluation for Retention, Retirement, or Separation

**AR 635–200**
Active Duty Enlisted Administrative Separations

**AR 640–30**
Photographs for Military Human Resources Records

**AR 670–1**
Wear and Appearance of Army Uniforms and Insignia

**AR 700–84**
Issue and Sale of Personal Clothing

**DA Circular 11–89–1 (obsolete)**
Internal Control Review Checklists

**DA Pam 600–8**
Management and Administrative Procedures

**DA Pam 611–21**
Military Occupational Classification and Structure

**Army Training Requirements and Resources System Course Catalog**
(Available at http://www.attrs.army.mil.)

**Directive Type Memorandum 08–018**
Enlistment Waivers (Available at http://dtic.mil/whs/directives/.)

**DOD 5200.2–R**
Physical Security Program

**DODI 1304.26**
Qualification Standards for Enlistment, Appointment, and Induction

**HSPD 12**
Policy for a Common Identification Standard for Federal Employees and Contractors
(Available at http://www.dhs.gov/.)

**Joint Travel Regulation, Volume 2**
(Available at http://www.defensetravel.dod.mil/site/travelreg.cfm.)

**NGR 600–200**
Enlistment Personnel Management (Available at http://www.ngbpdc.ngb.army.mil.)

**NGR 614–1**
Inactive Army National Guard (Available at http://www.ngbpdc.ngb.army.mil.)

**UCMJ, Article 83**
Fraudulent enlistment, appointment, or separation

**UCMJ, Article 84**
Unlawful enlistment, appointment, or separation

**UCMJ, Article 85**
Desertion

**UCMJ, Article 86**
Absence without leave

**UCMJ, Article 92(1)**
Violates or fails to obey any lawful general order or regulation

**8 USC 1101(a)(20)**
Lawfully admitted for permanent residence

**8 USC 1101(a)(22)**
National of the United States

**8 USC 1359**
Application to American Indians born in Canada

**8 USC 1403**
Persons born in the Canal Zone or Republic of Panama on or after February 26, 1904

**10 USC**
Armed Forces

**10 USC 61**
Retirement or Separation for Physical Disability

**10 USC 101(b)(2)**
Definitions

**10 USC 106**
Education assistance for members of the selected reserve

**10 USC 312**
Militia duty: exemptions

**10 USC 504**
Persons not qualified

**10 USC 511**
College First Program

**10 USC 571(b)**
Warrant officers: grades

**10 USC 651**
Members: required service

**10 USC 671**
Members not be assigned outside United States before completing training

**10 USC 978**
Drug and alcohol abuse and dependency: testing of new entrants

**10 USC 1211**
Members on temporary disability retired list: return to active duty; promotion

**10 USC 1475**
Death gratuity: death of members on active duty or inactive duty and of certain other persons

**10 USC 1481**
Recovery, care, and disposition of remains: descedents covered

**10 USC 1482**
Expenses incident to death

**10 USC 1552**
Correction of military records: claims incident thereto

**10 USC 1606**
Defense Intelligence Senior Executive Service

**10 USC 1608**
Time-limited appointments

**10 USC 1609**
Termination of defense intelligence employees

**10 USC 1611**
Postemployment assistance: certain terminated intelligence employees

**10 USC 2005**
Advanced education assistance: active duty agreement; reimbursement requirements

**10 USC 2106**
Advanced training; commission on completion

**10 USC 2107**
Financial assistance program for specially selected members

**10 USC 3258**
Regular Army: reenlistment after service as an officer

**10 USC 3925**
Computation of years of service: voluntary retirement; enlisted members

**10 USC 12103**
Reserve components: terms

**10 USC 12301**
Reserve components generally

**10 USC 12302**
Ready Reserve

**10 USC 12303**
Ready Reserve: members not assigned to, or participating satisfactorily in, units

**10 USC 12686**
Reserve on active duty within two years of retirement eligibility: limitation on release from active duty

**10 USC 12731**
Age and service requirements

**10 USC 12732**
Entitlement to retired pay: computation of years of service

**10 USC 12733**
Computation of retired pay: computation of years of service

**10 USC 12734**
Time not creditable towards years of service

**10 USC 12735**
Inactive status list

**10 USC 12736**
Service credited for retired pay benefits not excluded for other benefits

**10 USC 12737**
Limitation on active duty

**10 USC 12738**
Limitations on revocation of retired pay

**10 USC 16131**
Educational assistance program: establishment; amount

**18 USC 922**
Unlawful acts

**20 USC 1071**
Statement of purpose; nondiscrimination; and appropriations authorized

**20 USC 1087(a)**
Repayment in full for death and disability

**37 USC 302g**
Special pay: Selected Reserve health care professionals in critically short wartime

**37 USC 308**
Special pay: reenlistment bonus

**37 USC 373**
Repayment of unearned portion of bonus, incentive pay, or similar benefit, and termination of remaining payments, when conditions of payment not met

**38 USC 106**
Certain service deemed to be active service

**38 USC 3011**
Basic educational assistance entitlement for service on active duty

**38 USC 3012**
Basic educational assistance entitlement for service in the Selected Reserve

**38 USC 3015**
Amount of basic educational assistance

## Section III
## Prescribed Forms
Unless otherwise indicated, DA forms are available on the Army Publishing Directorate Web site (http://www.apd.army.mil) and DD forms are available on the Office of the Secretary of Defense Web site http://www.dtic.mil/whs/directives/forms/index.htm.

**DA Form 1696**
Enlistment/Reenlistment Qualifying Application (Prescribed in para 3–15.)

**DA Form 3072–2**
Applicant's Monthly Financial Statement (Prescribed in para 4–13.)

**DA Form 3283**
Statements of Member Removed from the Temporary Disability Retired List (Prescribed in para 5–49.)

**DA Form 3286**
Statements for Enlistment (Prescribed in paras 2–10, 3–12, 8–5, 8–6, and 9–1.)

**DA Form 4824**
Addendum to Certificate and Acknowledgement of Service Requirements (DA Form 3540) for All Personnel Applying for Participation in the Reserve Officers Training Corps (ROTC)/Simultaneous Membership Program (SMP) (Prescribed in para 9–1.)

**DA Form 4826**
Addendum to Certificate and Acknowledgement of Service Requirements (DA Form 3540) for Enlistment Under the Alternate Training Program (Prescribed in para 9–1.)

**DA Form 5261–6**
Selected Reserve Incentive Program - Officer Affiliation Bonus (Prescribed in para 10–15*b*.)

**DA Form 5261–7**
Selected Reserve Incentive Program - Officer Accession Bonus (Prescribed in para 10–15*a*.)

**DA Form 5585**
Addendum to Certificate of Acknowledgement of Service Requirements (DA Form 3540) for Enlistment into the U.S. Army Reserve Troop Program Unit Warrant Officer Flight Program (Prescribed in para 9–1.)

**DA Form 5586**
Addendum to Certificate of Acknowledgement of Service Requirement for Enlistment into the United States Army Reserve Officer Candidate School Enlistment Option (Prescribed in para 9–1.)

**DA Form 7004–R**
Addendum to Certificate of Acknowledgement of Service Requirements (DA Form 3540) for Enrollment into the U.S. Army Reserve Specialized Training for Army Readiness (STAR) Program (Prescribed in para 9–17.)

**DD Form 368**
Request for Conditional Release (Prescribed in paras 3–19, 4–13, 5–19, 5–20, and 5–24.)

## Section IV
## Referenced Forms
Unless otherwise indicated, DA forms are available on the Army Publishing Directorate Web site (http://www.apd.

army.mil) and DD forms are available on the Office of the Secretary of Defense Web site (http://www.dtic.mil/whs/directives/forms/index.htm).

**DA Form 2–1**
Personnel Qualification Record

**DA Form 11–2**
Internal Control Evaluation Certification

**DA Form 31**
Request and Authority for Leave

**DA Form 61**
Application for Appointment

**DA Form 199**
Informal Physical Evaluation Board (PEB) Proceedings (EGA) (Available at https://ecms.army.mil/pebwebapp.)

**DA Form 209**
Delay, Referral, or Follow-up Notice (Available through normal supply channels.)

**DA Form 1695**
Oath of Extension of Enlistment

**DA Form 2028**
Recommended Changes to Publications and Blank Forms

**DA Form 3540**
Certificate and Acknowledgement of U.S. Army Reserve Service Requirements and Methods of Fulfillment

**DA Form 3947**
Medical Evaluation Board Proceedings

**DA Form 4187**
Personnel Action

**DA Form 4707**
Entrance Physical Standards Board (EPSBD) Proceedings

**DA Form 5261–4**
Student Loan Repayment Program Addendum

**DA Form 5305**
Family Care Plan

**DA Form 5500**
Body Fat Content Worksheet (Male)

**DA Form 5501**
Body Fat Content Worksheet (Female)

**DD Form 4**
Enlistment/Reenlistment Document Armed Forces of the United States

**DD Form 93**
Record of Emergency Data

**DD Form 149**
Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552

**DD Form 214**
Certificate of Release or Discharge from Active Duty (Available at http://www.archives.gov/locations/index.html.)

**DD Form 215**
Correction to DD Form 214, Certificate of Release or Discharge from Active Duty (Available at http://www.archives.gov/locations/index.html.)

**DD Form 220**
Active Duty Report

**DD Form 368**
Request for Conditional Release

**DD Form 369**
Police Record Check

**DD Form 372**
Request for Verification of Birth

**DD Form 1966**
Record of Military Processing-Armed Forces of the United States

**DD Form 2807–1**
Report of Medical History

**DD Form 2807–2**
Accessions Medical Prescreen Report

**DD Form 2808**
Report of Medical Examination

**DS Form 1350**
Certification of Report of Birth (Available at Vital Records Section, Passport Services, 1111 19th Street NW, Suite 510, Washington, DC 20522–1705.)

**FD 258**
Applicant Fingerprint Card (Available at U.S. consulates and embassies.)

**FS Form 240**
Consular Report of Birth Abroad (Available at U.S. consulates and embassies.)

**FS Form 545**
Certification of Birth Abroad (Available at Passport Correspondence Branch, 1111 19th Street NW, Suite 510, Washington, DC 20522–1705.)

**NGB Form 22**
Report of Separation and Record of Service (Available at http://www.ngbpdc.ngb.army.mil/.)

**NGB 22–3**
Request for Waiver (ARNG) (Available at http://www.ngbpdc.ngb.army.mil/.)

**NGB Form 62E**
Application for Federal Recognition as an Army National Guard Officer or Warrant Officer and Appointment as a Reserve Commissioned Officer or Warrant Officer of the Army in the Army National Guard of the United States (Available at http://www.ngbpdc.ngb.army.mil/.)

**NGB Form 600–7–5–R–E**
Bonus Addendums (Available at http://www.ngbpdc.ngb.army.mil/.)

**SF 50**
Notification of Personnel Action (Available at http://www.gsa.gov/.)

**SF 86**
Questionnaire for National Security Positions (Available at http://www.gsa.gov/.)

**SF 182**
Authorization, Agreement and Certification of Training (Available at http://www.gsa.gov/.)

**USCIS Form G–845**
Verification Request Department of Homeland Security U.S. Citizenship and Immigration Services (Available at http://uscis.gov/portal/site/uscis.)

**USCIS Form I–90**
Application to Replace Permanent Resident Card (Available at http://uscis.gov/portal/site/uscis.)

**USCIS I–551**
Permanent Resident Card (Available at https://uscis.gov/portal/site/uscis.)

**USCIS N–400**
Application for Naturalization

**USCIS Form N–426**
Request for Certification of Military or Naval Service

**USCIS Form N–550/570**
Certificate of Naturalization (Available at U.S. consulates and embassies.)

**USCIS Form N–560/561**
Certificate of Citizenship (Available at U.S. consulates and embassies.)

**USCIS Form N–565**
Application for Replacement Naturalization/Citizenship Document


## Appendix B
## Format for Submitting Accession Incentives and Programs for Approval

### B–1. Program proposal
The program proposal must be enclosed (second to last column) and must include—
   *a.* A lengthier description of the program and any items that require further explanation.
   *b.* A justification.
   *c.* Performance measures.
   *d.* Performance outcomes (for resubmissions).
   *e.* A legal review.
   *f.* Routing to show the chain of command approval.
   *g.* The internal controls and other measures in place to limit potential for fraud, waste, or abuse.
   *h.* The name(s) and contact information of the person(s) responsible for tracking such fraud, waste, or abuse.

*Note.* Incidents of fraud, waste or abuse must be reported to the Assistant Secretary of the Army (Manpower and Reserve Affairs), or his or her designee, immediately.

### B–2. Program renewal
In addition, documents for programs being renewed must include—
   *a.* The items listed in paragraph B–1.
   *b.* Information on the number of incidents of fraud, waste, or abuse during the previous year.
   *c.* The measures taken to limit further opportunities for fraud, waste, or abuse.
   *d.* Summaries of internal controls.

| Program name | Type<br>*I=incentive*<br>*B=bonus*<br>*P=program* | New program | Projected Lift a Year | Actual Lift a Year | Projected annual cost | Actual annual cost | Brief description | Component | Proposal Enclosure? | POC |
|---|---|---|---|---|---|---|---|---|---|---|
| | *I/BJP* | *YES/NO* | | | | | | *RA/ARNG/ USAR* | *YES/NO* | |

**Figure B–1. Sample for submitting accession incentives and programs for approval**

# Appendix C
# Internal Control Evaluation

## C–1. Function
The function covered by this checklist is the enlistment into the RA and RCs.

## C–2. Purpose
The purpose of this checklist is to assist unit managers and internal control administrators located at recruiting battalions and brigades in evaluating the key internal controls for providing enlistment and officer incentives to eligible new recruits. It is not intended to cover all controls.

## C–3. Instructions
Answers must be based on the actual testing of key internal controls (for example, document analysis, direct observation, sampling, simulation, other). Answers that indicate deficiencies must be explained and corrective action indicated in supporting documentation. These key internal controls must be formally evaluated at least once every 5 years. Certification that this evaluation has been conducted must be accomplished on DA Form 11–2 (Internal Control Evaluation Certification).

## C–4. Test questions
  *a.* Is there local internal control guidance that defines responsibilities and required actions?

  *b.* Are managers and internal control administrators trained in, and do they understand, their internal control responsibilities?

  *c.* Are explicit statements of internal control responsibility included in performance agreements for commanders and managers down to accessible unit manager level?

  *d.* Is a internal control plan established and maintained to describe how key internal controls will be evaluated over a 5–year period?

  *e.* Are internal control evaluations conducted in accordance with the internal control plan and prompt action taken to correct any internal control weaknesses detected?

  *f.* Is the senior responsible official advised of potential material weaknesses detected through internal control evaluations or from other sources?

  *g.* Are new recruits that enlist for a monetary incentive being systematically tracked by recruiting battalions or brigades during the period leading up to their ship date?

  *h.* Is eligibility for enlistment incentives verified through the DA incentives messages prior to providing monetary incentive obligations to new recruits in the annexes to the DD Form 4?

  *i.* Are the responsible accessioning agencies systematically tracking new recruits or candidates for appointment who benefit from pilot, program, incentive or bonus during the effective period of the pilot, program, incentive, or bonus?

## C–5. Supersession
This checklist replaces the checklist for "Financial Management/Internal Controls—Section 2" previously published in DA Circular 11–89–1.

## C–6. Comments
Help to make this a better tool for evaluating internal controls. Submit comments to Deputy Chief of Staff, G–1 (DAPE–MPA), 300 Army Pentagon, Washington, DC 20310–0300.

## Glossary

### Section I
### Abbreviations

**ACASP**
Army Civilian Acquired Skills Program

**AD**
active duty

**ADT**
active duty for training

**AFQT**
Armed Forces Qualification Test

**AGR**
Active Guard Reserve

**AIPE**
Accredited Institutions of Postsecondary Education

**AIT**
advanced individual training

**AR**
Army regulation

**ARNG**
Army National Guard

**ARNGUS**
Army National Guard of the United States

**ASVAB**
Armed Services Vocational Aptitude Battery

**AT**
annual training

**BASD**
basic active service date

**BCT**
basic combat training

**CAR**
Chief, Army Reserve

**CG**
commanding general

**CLEP**
College Level Examination Program

**COHORT**
cohesion operational readiness training

**Compl (table 6–1)**
completed

**CSM**
command sergeant major

**DA**
Department of the Army

**DA Pam**
Department of the Army pamphlet

**DARNG**
Director, Army National Guard

**DCS**
Deputy Chief of Staff

**DD (form)**
Department of Defense

**DEP**
Delayed Entry Program

**DLPT**
Defense Language Proficiency Test

**DOD**
Department of Defense

**DODD**
Department of Defense directive

**DOR**
date of rank

**DS**
Department of State

**DTP**
Delayed Training Program

**EAB**
enlisted affiliation bonus

**ECLT**
English Comprehension Level Test

**ED GR (table 6–1)**
educational grade

**EDV LVL (code)**
education level

**ED YRS (code)**
education years

**ES (table 6–1)**
entry status

**GED**
general education diploma

**HIV**
human immunodeficiency virus

**HQDA**
Headquarters, Department of the Army

**HRC**
Human Resources Command

**HSPD**
Homeland Security Presidential directive

**IADT**
initial active duty training

**ID**
identification

**IDT**
inactive duty training

**ING**
Inactive National Guard

**INS**
Immigration and Naturalization Service

**IRR**
Individual Ready Reserve

**LDAC**
Leader Development and Assessment Course

**MEPS**
military entrance processing station

**MGIB**
Montgomery GI Bill

**MOS**
military occupational specialty

**MS**
Military Science

**MSO**
military service obligation

**NACES**
National Association for Credential Evaluation Service

**NACLC**
National Agency Check with Local Agency and Credit Check

**NIAC**
National Intelligence Agency Checks

**NCO**
noncommissioned officer

**NGB**
National Guard Bureau

**NGR**
National Guard regulation

**NPS**
nonprior service

**OAB**
officer accession bonus

**OAFB**
officer affiliation bonus

**OCS**
Officer Candidate School

**PEF (table 6–1)**
program enlisted for

**PFC**
private first class

**PHA**
physical health assessment

**PMOS**
primary military occupational specialty

**PMS**
professor of military science

**Proj (table 6–1)**
projected

**PS**
prior service

**PSEB**
prior service enlistment bonus

**PV1**
private E–1

**PV2**
private E–2

**RC**
Reserve Component

**RE**
reentry eligibility

**REDD**
Recruiter Eligibility Data Display

**REFRAD**
release from active duty

**REQUEST**
Recruit Quota Enlistment System

**ROTC**
Reserve Officers' Training Corps

**SF**
standard form

**SFC**
sergeant first class

**SGM**
sergeant major

**SGT**
sergeant

**SLRP**
Student Loan Repayment Program

**SMP**
Simultaneous Membership Program

**SPC**
specialist

**SPD**
separation program designator

**SQI**
special qualifications identifier

**SRB**
selective reenlistment bonus

**SRIP**
Selected Reserve Incentive Program

**SROTC**
Senior Reserve Officers' Training Corps

**SSG**
staff sergeant

**STN (table 6–1)**
Station

**TAG**
The Adjutant General

**TDRL**
temporary disability retired list

**TPC**
training pay category

**TPU**
troop program unit

**TSC**
test score category

**UCMJ**
Uniform Code of Military Justice

**UIC (table 6–1)**
unit identification code

**USAR**
U.S. Army Reserve

**USAREC**
U.S. Army Recruiting Command

**USC**
United States Code

**USCIS**
U.S. Citizenship and Immigration Services

**USMEPCOM**
U.S. Military Entrance Processing Command

**WO1**
warrant officer one

**WOCS**
Warrant Officer Candidate School

**WOFT**
Warrant Officer Flight Training

**YRS (table 6–1)**
years

**Section II**
**Terms**

**Accession incentives**
Any monetary offer available to new recruits or candidates for appointment to assist in filling specialties that are critical to the Army's needs.

**Accession pilots**
Initiatives designed to enhance the achievement of accession goals across the Army's three component. If determined successful after practical assessments, accession or pilots may become programs that the Army subsequently incorporates into Army policy.

**Applicant and enlistee**
An applicant applies voluntarily for enlistment in the RA or USAR and is found eligible for further processing after completing and signing the DD Form 1966. An enlistee has enlisted in the DEP, RA, USAR, or ARNG. An applicant becomes an enlistee after the oath of enlistment is taken and applicable portions of the DD Form 4 are signed.

**Area commands**
Commands that include U.S. Army Europe, U.S. Army Pacific Command, U.S. Army Southern Command, U.S. Army Special Operations Command, and U.S. Army Reserve Command.

**Army**
The Army consists of the RA and the RC which includes the Ready Reserve (Selected Reserve and IRR) and the Standby Reserve.

**Army commands**
Commands that include the following: U.S. Army Forces Command, U.S. Army Training and Doctrine Command, U.S. Army Military District of Washington, U.S. Army Materiel Development and Readiness Command, U. S. Army Intelligence and Security Command, U.S. Army Communications Command, U.S. Army Criminal Investigation Command, U.S. Army Health Services Command, Military Traffic Management Command, U.S. Army, Europe and Seventh Army, Eighth U.S. Army, U.S. Army, Japan, and U.S. Army, Western Command.

**Bonus**
Any other monetary offer available under certain circumstances, such as a referral fee to individuals who refer an applicant to an Army recruiter or an affiliation bonus for a Soldier departing the active component to serve in the Selected Reserve.

**Dependent**
A spouse; an unmarried, adopted, or stepchild under the age of 18 living with the applicant; an unmarried natural child of the applicant under the age of 18; any person living with the applicant who is, by law or in fact, dependent upon the applicant for support; or not living with the applicant and dependent upon the applicant for over 1/2 of their support; or any person for whom the applicant is responsible for his or her financial or custodial care.

**Defense Manpower Data Center**
Centralized system set up and managed by DOD to give all branches of the U.S. Armed Forces enlistment eligibility information on PS personnel.

**Enlistment**
The enlistment occurs after the oath has been taken. Voluntary contract (DD Form 4) for military service establishing military status as an enlisted member of the Active Army, USAR, or ARNG. This includes enlistment of both NPS and PS personnel. The latter group includes prior Army and RC personnel and any persons with PS in any other Armed Force of the United States. The enlistment agreement is legally binding after the oath has been taken, notwithstanding the applicant's failure to sign.

**Enlistment categories**
Initial-term (Active Army): person serving an initial term of active service. (Persons who are on IADT only are not included in this category.) First-term (USAR): person serving in first term of service in the USAR. For statistical purposes, a first-term is defined as a member whose initial entry into the U.S. Armed Forces incurred a statutory obligation of 8 years and who has not, as yet, completed that obligation.

**Extended active duty**
AD performed by a member of the ARNG or USAR when strength accountability passes from the ARNG or USAR to the Active Army.

**Expiration of term of service**
The scheduled date on which a Soldier's statutory or contractual (whichever is the later) term of military service will end.

**Glossary nonprior service**
Applicant previously separated from any component of the U.S. Armed Forces with fewer than 180 days on AD.

**Grade**
Refers to pay grade unless otherwise specified.

**Initial entry training**
A term used to identify mandatory training each member of the U.S. Army must complete upon initial entry in the Service to qualify in a military specialty or branch, and which is required by law for deployability on land outside the continental limits of the United States, per 10 USC 671. The term encompasses the completion of basic training and specialty or branch qualification while serving on AD or ADT. For ARNG and USAR Soldiers it includes completion of IADT, the officer basic course, and warrant officer basic course.

**Kicker amount**
Monetary amount that is added to the MGIB.

**Lawfully admitted for permanent residence**

The status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed (8 USC 1101(a)(20)).

**Military entrance processing station**

Station where physical examinations and mental tests are administered to applicants and administrative processing and enlistment are completed.

**Military occupational specialty**

Group of military jobs so closely related that the highest degree of interchangeable skills exists among persons so qualified.

**Military service obligation**

Service obligation as defined by 10 USC 651 and DODI 1304.25: Each person who becomes a member of a U.S. Armed Force will serve in the U.S. Armed Forces for a total of 8 years, unless he or she is sooner discharged because of personal hardship under regulations prescribed by the Secretary of Defense. Any part of such service that is not AD or is ADT will be performed in an RC. Each person covered by subsection (a) who is not a Reserve, and who is qualified, will, upon his or her release from AD, be transferred to an RC of his or her Armed Force to complete the service required by 10 USC 651(a).

**National of the United States**

Means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States (8 USC 1101(a)(22)).

**Nonprior service personnel**

Those who have never served in any component of the U.S. Armed Forces or who have served less than 180 days of AD as a member of any component of the U.S. Armed Forces. USAR and ARNG applicants must not have been awarded an MOS. NPS includes those who:

    *a.* Enlisted illegally while underage and separated by reason of voided enlistment before attaining age 17.

    *b.* Former member of a U.S. Armed Forces academy who did not graduate and served less than 180 days.

    *c.* Completed ROTC and served only ADT as an officer if enlisting in the RA.

**Prior service personnel**

For applicants enlisting in the RA, those having 180 days or more AD in any component. For applicants enlisting in the USAR, those having 180 days or more AD in any component and been awarded an MOS. PS also includes former members of a U.S. Armed Forces academy who did not graduate and served 180 days or more, and those, if enlisting in the USAR, who completed ROTC and served only ADT.

**Program procurement numbers**

Numbers that have been established to provide information on the number of enlisted personnel in various programs will be used to identify a person's program source at time of enlistment.

**Reentry eligibility codes**

Codes assigned to Soldiers who do not immediately reenlist at the last duty station to which assigned. The purpose of these codes is to inform the U.S. Army recruiter of the Soldier's eligibility to reenter the Service.

**Regular Army**

Comprises RA Soldiers on AD; ARNGUS and AR Soldiers on AD (except as excluded below); ARNG Soldiers called into Federal service; and all persons appointed, enlisted, or inducted into the Army without a component. Excluded are Soldiers serving on ADT; those on AGR status; those on AD for special work; those on temporary tours of AD; and those on AD pursuant to the call of the President (10 USC 12302).

**Sole surviving son or daughter**

Only remaining son and/or daughter in a Family where the father or mother (or one or more sons or daughters), served in the Armed Forces of the United States, and because of hazards with such military service was killed or died in the as a result wounds, accident, or disease; or is in a captured or missing-in-action status; or is 100 percent disabled (including 100 percent mental disability) as determined by the Veterans Administration or one of the military Services.

**U. S. Army Reserve**

A Federal force consisting of individual reinforcements and combat, combat support, support, and training type units.

This force is organized and maintained to provide military training in peacetime and a reservoir of trained units and individual reservists to be ordered to AD in case of a national emergency.

**Section III**
**Special Abbreviations and Terms**
This section contains no entries.

**UNCLASSIFIED**

PIN 004373–000