**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ) | |
| ) | |
| LUCAS CALIXTO, *et al.*, ) | |
| ) | |
| PLAINTIFFS, ) | **Case No. 1:18-cv-01551-ESH** |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF THE ) | |
| ARMY, *et al.*, ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

**PLAINTIFFS' NOTICE CONCERNING**
**DEFENDANTS' JUNE 17, 2019 RESPONSE AND OTHER UPDATES**

Plaintiffs are providing this information in writing because they believe it may facilitate

this afternoon's hearing to do so.  Certain of the information only came to Plaintiffs' attention late

last week and over the weekend.  Plaintiffs understand that the Court may not have the opportunity

to review this filing in detail before this afternoon's hearing, and, if so, Plaintiffs are prepared to

walk through these points in detail during the hearing.[1]

Plaintiffs respectfully submit this Notice concerning Defendants' June 17, 2019 Response

(Dkt. 103) in order to apprise the Court of material inaccuracies in Defendants' recent reporting to

the Court.  Further, Plaintiffs provide the Court with recent updates concerning (1) the third

iteration of Defendants' Adverse MSSR Notice – which again cites to DoD Manual 5200.02

notwithstanding Defendants' litigation position that it and similar instructions do not apply to pre-

basic MAVNIs – which still does not furnish MAVNIs with necessary unclassified information

---

[1]     Plaintiffs are prepared to file declarations and other evidence, in redacted form, to support
the statements contained herein.  In the interest of reducing the pages provided to the Court,
Plaintiffs have not included that evidence with this filing.

supporting the adverse MSSR, (2) the fact that the Army continues to write on pending-MSSD MAVNI N-426s that derogatory information has been discovered that "will require separation," showing that the October 26 Policy does not afford MAVNIs a meaningful opportunity to challenge the MSSD, and (3) the fact that MAVNIs and even the Army still do not know who has been discharged (purportedly) and who has been "reinstated," which is causing great injury to the soldiers, including unwarranted naturalization denials and even a criminal arrest and indictment of a MAVNI for allegedly lying about her discharge status.

I.   **MISSTATEMENTS IN DEFENDANTS' JUNE 17, 2019 RESPONSE/REPORTING**

Defendants' claim there is no concerted Army effort based on the results of their "inquiry" into the Army's attempts to have MAVNIs waive their MSSR rights.  And, Defendants defend the actions and motives of recruiters and chastise Plaintiffs for suggesting that recruiters are doing anything other than trying to retain MAVNI soldiers in the Army.  Yet, the results of the Army inquiry are inaccurate and misleading, meaning that either the investigation was inadequate or that the Army is not being forthcoming about its actions.

Plaintiffs' attempts to resolve these matters with Defendants have largely been unsuccessful, with Defendants discounting the problems identified and seeking to excuse the Army's actions.  Yet, the Army's actions are well documented, and Defendants' "shoot-the-messenger" approach is preventing necessary remedial measures.

Plaintiffs' main concern here is to ensure that no MAVNI soldier (Plaintiff or putative class member) is seen and treated by the Army as having "waived" rights when that soldier was not properly advised of the rights and implications of any such "waiver," including the impact on any pending or anticipated naturalization application.

### A. **"Unauthorized" Distribution of the MSSR Waiver Memo: Defendants' Inadequate Inquiry Does Not Reveal True Breadth of Distribution**

Defendants represent to the Court that the "unauthorized" version of the memo (a) was distributed by only one Army recruiter (based in New England) to only 13 recruits, and (b) separately handed to Plaintiff Djohi "during an in-person meeting."    Thus, according to Defendants, only 14 MAVNIs were contacted with the "unauthorized" version of the Waiver Memo.

That representation simply is not true.  Plaintiffs are aware of other MAVNIs receiving the Waiver Memo, including MAVNIs in Connecticut and Pennsylvania, who did not request it or otherwise indicate a desire to "waive" their rights.  It seems as though the Army only made "inquiry" based on the two named Plaintiffs that were identified by name during the telephonic conference with the Court.

Moreover, it does not seem as if the Army even did a good job "inquiring" around those two names.  It is not credible that Plaintiff Djohi's recruiter decided, on his own and in isolation from the rest of the Army, to summon Plaintiff Djohi (who serves in Virginia) to the recruiter's office for the purpose of signing the MSSR Waiver memo.  For example, how did Plaintiff Djohi's recruiter obtain a copy of the "unauthorized" MSSR Waiver Memo?  And, did the Army determine if other MAVNIs are a part of that recruiting command, and, if so, whether they were contacted?

Further, on May 31, 2019, which is after Defendants' counsel had been notified of the MSSR Waiver problem, Plaintiff Djohi's recruiter called Plaintiff Djohi and told him about the Waiver Memo and insisted that he come in and sign it by the following Tuesday based on a tight deadline the recruiter had from a "higher-up" to get the document submitted.  Notably, this was not just some happenstance, regularly-scheduled meeting for Plaintiff Djohi as Defendants suggest.  Moreover, the details of this phone conversation raise additional questions.  Was this

contact recorded on a log that Defendants claim show recruiters only encouraging MAVNIs to stay in the Army?  And why would the recruiter reference a "higher-up" if no such direction had been given?

Finally, even though Defendants were aware no later than May 25, 2019, that the designated "point of contact" on the Waiver Memo – Capt. Alicia Glanz – purportedly denied having such responsibility, Defendants apparently did not inquire with Capt. Glanz as to the MAVNIs who had attempted to contact her with questions.

In sum, Defendants' efforts to determine who received the MSSR Waiver memo have been inadequate, and the reporting is neither reliable nor credible.

### B. So-Called "Authorized" Distribution of the MSSR Waiver Memo: Defendants Have Been Seeking "Waivers" Since March 2019 and Leave the Door Open for Their On-Going and Future Distribution of the Memo

In Lin St. Clair's declaration (Dkt. 103-1), Defendants reveal that in addition to the 14 MAVNI soldiers who Defendants admit received the Waiver Memo in an unauthorized manner, "fewer than 10 individuals" received the so-called "authorized" Waiver Memo.  Defendants do not explain why they cannot provide an exact number as the Court requested, but it is equally significant that Defendants now admit to having sought such waivers since March 2019, without any notice to the Court (through reporting or other updates) or to Plaintiffs.

Finally, Defendants leave the door open for further distribution of the Waiver Memo, by noting that they only ordered that the "unauthorized" use be stopped.  But, Plaintiffs have concerns with the memo beyond the fact that MAVNIs are not initiating any "waiver" discussion,[2] including that it does not advise a MAVNI of the serious negative implications of the supposed "waiver"

---

[2]     Plaintiffs believe that Defendants are calling MAVNI soldiers or ordering MAVNI soldiers to their offices and then asking MAVNIs if they want to drop out of the program, as described in more detail in Section E below, in order to be able to claim that the soldier "solicited" the "waiver."

including adverse consequences for his/her ability to naturalize as a military service member under 8 U.S.C. § 1440.

**C.** **Responses to the MSSR Waiver Memo: Defendants' Misleading Reporting and Plaintiffs' Concerns for Any MAVNI Who Allegedly "Waived"**

It should come as no surprise that MAVNI soldiers responded to the Memos they received. They could not assume that the Memos were not authorized when they were on Army letterhead, included a senior Pentagon official's ("Aswell") signature block, and were coming from their Army recruiters. MAVNIs received these Memos from persons in positions of military authority, and they were instructed by the Memos to respond in 15 days and, in some instances, were told by recruiters to respond in a shorter period of time, including on-the-spot, in-person when they were called into the recruiter's office and first provided the Memo.

Perhaps it is technically true that, with respect to soldiers declining to waive their rights, "[n]o memos have been returned to USAREC HQ, signed or unsigned," (Dkt. 103-1) but that is not the question this Court posed. MAVNI soldiers were not told to return the Memos to "HQ," but were told to return them to the recruiter who had issued the Memo. Plaintiff Calixto returned his signed Memo declining to waive on June 3. Another soldier who declined to waive was told on June 12, 2019 that the document "has been received and has been submitted to the [    ] Recruiting Battalion for further processing." And, these are not the only two: Plaintiffs are aware of other MAVNI soldiers returning their signed "no waiver" forms to the Army.

More concerning to Plaintiffs, of course, is the Army's claim that one MAVNI soldier "who received an unfavorable MSSD elected to waive receipt of the specific information that led to the unfavorable MSSD." First, how did this MAVNI receive an unfavorable "MSSD" during this post-March 2019 period? The Army claims that all MSSDs are "pending." But, if there are purportedly completed MSSDs, or if the Army is incorrectly informing soldiers that MSSDs are

complete and unfavorable, those circumstances should be revealed to the Court in this case and the related cases.  Second, did this soldier understand his/her rights and the implications of the alleged "waiver"?  Since reading Defendants' June 17 filing, Plaintiffs' counsel requested that Defendants either provide Plaintiffs' counsel with the soldier's contact information or provide the soldier with Plaintiffs' counsel's contact information, but Defendants declined to do either.

**D.**   **Open Question About the MSSR Waiver: What Is Allegedly Being Waived and How Does It Relate to the October 26 Policy?**

In Lin St. Clair's declaration (Dkt. 103-1), Defendants claim that "[e]ven if the individual were to request to waive the MSSR notification procedures, such waiver does not result in a waiver of due process procedures afforded under the October 26, 2018 memo."  This statement does not make a lot of sense given Plaintiffs' reading of the October 26 Policy, and if the MSSR notification procedures are not part of the due process procedures of the October 26, 2018 memo, Plaintiffs and the Court need to understand this.

**E.**   **Defendants Appear to be Modifying Their Waiver Solicitation Approach In an Effort to Avoid Reporting**

Following Plaintiffs' notification to Defendants' counsel of the inappripritate MSSR Waiver Memos and the Court's order that Defendants report on the Waiver Memo distribution, it appears that the Army attempted to bypass reporting obligations to the Court by first contacting MAVNI soldiers through verbal (rather than easily traceable written) communication.  Plaintiffs' counsel have been notified of a number of such communications in Maryland, and are aware of a named *Calixto* Plaintiff, a named *Nio* plaintiff (and putative *Calixto* class member), and a *Nio* class member (and putative *Calixto* class member) receiving such a phone call.

Plaintiffs notified Defendants of these inappropriate communications, including through email communication with Defendnats' counsel and email communication with DoD's counsel in

the *Nio* action, who said that they were passing along the message to the Army and DoD. Given that Defendants already were ordered by the Court to investigate and report on the Army's MSSR Waiver efforts and had been warned by the Court about communications with the named Plaintiffs concerning "waiving" the very rights sought in this action, Plaintiffs were alarmed by this blatant effort. In fact, one of the MAVNI soldiers contacted was told by the recruiter that the contact was happening verbally since the Army had determined that sending soldiers the MSSR Waiver Memos was "illegal."[3]

Plaintiffs did not initially provide the named *Calixto* Plaintiff's name to counsel, in part, to avoid a recurrence of Defendants refusing to conduct any investigation or take corrective action beyond the person identified. Plaintiffs repeatedly have informed Defendants – and have been proven right many times – that the problem is more widespread than the examples provided.

### F. Damaging SPC Udeigwe's Relationships with Military Personnel and Endangering His Chance of Becoming an Officer

Defendants claim that Plaintiffs' counsel "mischaracterized the communication between the recruiter and the MAVNI." Defendants are wrong and need to retract that claim. In fact, Defendants jumped to a conclusion that even they admit is "illogical," and never checked with Plaintiffs' counsel before taking steps that could severely damage SPC Udeigwe's military career.

Defendants' counsel informed Plaintiffs on June 11 that "unsolicited" contact with named Plaintiffs would cease until after the June 24 status conference. Yet, Defendants still ordered that military personnel could not continue the *solicited* discussions they were having with SPC

---

[3]     These types of verbal communications are ripe for abuse and misstatements. It is well-documented that recruiters made mistakes when filling out SF-86s based on oral discussions with MAVNIs and misstated MAVNIs' responses to the DEP "opt-in/opt-out" procedure, claiming that soldiers opted-out when they in fact said the opposite, leading to soldiers' discharges (which is what occurred with Plaintiff Xing Lu).

Udeigwe about addressing his fast-approaching ship date and current enlistment to allow SPC Udeigwe to reach his potential (as a naturalized citizen with a Masters degree who is on the path to a Ph.D. and who recently passed the equivalent of a Top Secret security clearance) as an officer.

Although Plaintiffs tried to resolve this problem in advance of today's hearing, Defendants last reported that they would not be able to confirm before the hearing that the appropriate personnel had been notified of Defendants' mistake and ordered to continue communications with SPC Udeigwe immediately so as not to harm his ability to pursue a career as an officer.

## G. Defendants' Request for Clarification is an Attempt to Divert Attention from Defendants' Bad Behavior

Defendants' claims that they need clarification from the Court about whether anyone from the Army may contact a named Plaintiff for any reason is an unfounded attempt to divert the Court from the real issues here.  Plaintiffs and the Court did not tell Defendants that there could be no contact of any sort.  Defendants surely must understand the difference between (a) regular contact, initiated by the soldier, concerning the soldier's military career advancement and (b) unethical contact where defendants in a lawsuit, who are in a position of authority over a plaintiff, are asking the plaintiff to waive his/her rights concerning the very claims at issue in the suit.  And, if Defendants truly did not understand that (although their "unsolicited" comment certainly suggested they did), they should have reached out to Plaintiffs' counsel and/or the Court earlier (and before causing unnecessary and unwarranted harm to SPC Udeigwe).

Defendants seem to be trying to "flip the script" here.  But, the Court should not be distracted.  The information Defendants have not addressed includes the following:

- On May 30, 3019, Defendants' counsel wrote to Plaintiffs' counsel that unauthorized use of the Waiver Memos would be "recruiter misconduct."

Defendants admit that recruiters were sending out unauthorized Waiver Memos. Dkt. 103.

- Defendants do not discuss the "loss forgiveness" email identified by the Plaintiffs (Dkt. 98). Which recruiting offices were told about this loss forgiveness? Who authorized such a message? If the "loss forgiveness" was not authorized, where was the breakdown in protocol that resulted in yet another unauthorized action that disadvantages MAVNIs?

- Some of the MSSR Waiver Memos sent to MAVNIs who did not solicit them were pre-filled with the "waive" option selected.

- One of the named Plaintiffs asked the recruiter about the implication of waiving in terms of naturalization, and the recruiter said that, to his knowledge, a waiver and the resulting discharge should not prevent the MAVNI soldier from getting citizenship.[4]

- As Plaintiffs noted (Dkt. 98), one of the recruiters told a MAVNI that he *received orders* to send the Waiver Memo to all of his MAVNIs.

Defendants cannot explain these actions by pointing the finger at one rogue recruiter and denying a larger, wider-spread initiative. Nor can Defendants credibly maintain that recruiters only have tried to "retain the MAVNIs in the Army, as good recruiters would do" (Dkt. 103 at 6 n.3). And, supposedly seeking "clarification" about allowable contact with MAVNI soldiers should not distract the Court from what really has happened here.

---

[4] As the Court is aware, while the military understands that an "uncharacterized" discharge is to be treated as an "under honorable conditions" discharge under law and regulation, USCIS has adopted a policy and practice that ignores this and denies naturalization applications on the basis of an uncharacterized discharge.

II.   **OTHER UPDATES**

As noted above, there are several other updates of which the Court should be aware.

A.   **Inadequacy of Third Iteration of Adverse MSSR Notice**

Over the weekend, Plaintiffs' counsel reviewed what appears to be the third iteration of Defendants' Adverse MSSR Notice under the October 26 Policy.  As the Court is aware, the first version of the Notice only cited the adjudicative guideline at issue.  The second version of the Notice provided one or two lines of individualized information and then cited pages in the underlying CI report, but did not provide the MAVNI with those pages.  This third iteration of the MSSR Notice now *removes* the page citations to the underlying CI report.  Notably, even though Defendants' litigation position is that DoD Manual 5200.02 and similar instructions to not apply to pre-basic MAVNIs, once again the Notice cites that manual.  But, the Army is not providing MAVNI soldiers with the unclassified information supporting the underlying MSSR as required by that manual and similar military regulations.  This due process violation should be apparent to Defendants.  Indeed, in the *Nio* action, defendants represented to the Court just last week that USCIS needs to review the de-classified CI report precisely because the MSSR summary is *not* adequate to assess the information.  Clearly, a MAVNI seeking to challenge, rebut, or mitigate an adverse MSSR is entitled to the same underlying information.

B.   **The Army's N-426 Certifications Indicate Discharge Decisions Already Have Been Made and the October 26 Policy Is Just a Litigation Tactic**

Since the October 26 Policy, the Army regularly, and to this day, has written this comment in MAVNI soldiers' N-426 forms: "Derogatory information found to require separation."  This military "certification" on an official government form is directly inconsistent with the October 26 Policy.  Indeed, if – as the certification indicates – the Army already has made the decision that

separation is "required," then the notice and opportunity to respond that supposedly is a part of the October 26 Policy is an exercise in futility for the soldiers.

### C. MAVNIs, the Army, and USCIS Remain Confused About Who Is Currently Serving and Who Purportedly Has Been Discharged

In addition to MAVNIs not receiving the requisite pre-discharge due process, the Army has refused to provide them with documentation of their discharge and reinstatement status. This is creating serious problems for MAVNI soldiers, including cancellation of TRICARE insurance for soldiers and their families, the inability to attend drill, improper DFAS invoices, and similar uncertainties and benefits denials. In fact, one MAVNI soldier was denied naturalization, arrested, and criminally indicted for allegedly lying about her discharge status, even though the Army since has admitted, in a written email to the soldier and the soldier's counsel, that the soldier in fact has not received a Reserve Command discharge order and has not been discharged. There is no evidence that Defendants are taking any action to correct these and other problems created by their unlawful discharge actions.

Dated: June 24, 2019

Respectfully submitted,

_____/s/ Douglas W. Baruch_____
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*