**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LUCAS CALIXTO, *et al.*, <br><br> PLAINTIFFS, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE ARMY, *et al.*, <br><br> DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  **Case No. 1:18-cv-01551-ESH** |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**
**IN SUPPORT OF CLASS CERTIFICATION**

Pursuant to the Court's June 25, 2019 Order, Plaintiffs respectfully submit this supplemental brief on the applicability of Army Regulation 135-178 ("AR 135-178") to U.S. Army MAVNI soldiers in the Delayed Entry Program ("DEP"). In their Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification, Defendants raised for the first time the argument that the process and protections of AR 135-178 do not apply to DEP soldiers discharged for reasons other than an unfavorable MSSD. Defendants now contend that U.S. Army Recruiting Command Regulation 601-210 ("USAREC 601-210") supersedes AR 135-178 when processing discharges of DEP soldiers. Defendants' newly-minted argument lacks merit for several independent reasons, as discussed below.

**I.    AR 135-178 EXPRESSLY APPLIES TO DEP SOLDIERS**

By its own terms, AR 135-178 applies to separations of soldiers in the DEP. Indeed, AR 135-178 contains a section specifically applicable to DEP soldiers and only DEP soldiers:

1

> **Section II**
> **Separation from the Delayed Entry Program**
>
> **14–5. Basis**
> A Soldier who enlisted in the USAR under the DEP in accordance with AR 601–210 must be processed for separation if they satisfy the conditions in paragraphs 14–5a or b, and may be processed for separation if they satisfy the conditions in paragraphs 14–5c or d.
>   a. Upon enlistment in the regular Army (para 5–4a).
>   b. On discovery that the USAR enlistment is defective. The Soldier will be processed for separation under para 7–3.
>   c. The Soldier is found to be ineligible for enlistment in the regular Army.
>   d. The Soldier declines enlistment in the regular Army and is not being ordered to active duty as a Reserve of the Army (10 USC 12103(b)).
>
> **14–6. Characterization or description**
>   a. The service of a Soldier discharged on the basis of paragraph 14–5a, is not characterized. (See DD Form 4 (Enlistment/Reenlistment Document Armed Forces of the United States), section G.)
>   b. The separation of a Soldier on the basis of paragraph 14–5c or paragraph 14–5d, will be described as an entry level separation and the service will be uncharacterized.
>
> **14–7. Procedures**
> When it is determined that a member of the DEP is unqualified for further military service or has requested separation, the Commander, U.S. Army RBN, will advise the Soldier, in writing, of the proposed separation and the reasons using the notification procedure (chap 3, sec II).

AR 135-178, Chapter 14, § II, ¶¶ 14-5, 14-6, 14-7 (Dkt. 101-3 at 75).

On its face, this section expressly applies to cases of "Separation from the Delayed Entry Program" and requires that the "notification procedure" of Chapter 3, Section II be used for DEP discharges (the "Chapter 3 Notification Procedure"). The Chapter 3 Notification Procedure provides the soldier with certain due process rights prior to discharge, including, among other things, the right to be informed of the basis and reasons for discharge, the right to obtain copies of any documents that will be provided to the separation authority, the right to consult with military counsel, and the right to submit a responsive statement. These procedures are not some paperwork exercise or mere formality. Rather, this DEP-specific section of AR 135-178 explicitly provides as follows: "On receipt of the completed endorsements (see fig. 3-2) from the Soldier, the Commander, U.S. Army RBN [Recruiting Battalion], will make a final determination for retention or separation from the USAR DEP. *A careful consideration of the Soldier's statement or rebuttal is mandatory*." AR 135-178, Chapter 14, § II, ¶14-7 *c* (Dkt. 101-3 at 75) (emphasis added).

AR 135-178 contains no exceptions that would allow the Army Recruiting Command or any other command, unit, or officer to disregard or dispense with these "mandatory" requirements. The plain language of AR 135-178 is clear and unambiguous. The Chapter 3 Notification Procedure expressly applies to the separation and discharge of DEP soldiers from the U.S. Army.

## II. USAREC 601-210 DOES NOT SUPERSEDE OR SUPPLANT THE AR 135-178 REQUIREMENTS

Seeking to bypass the mandates of AR 135-178, the Army advances the counter-intuitive proposition that DEP soldiers may be discharged pursuant to USAREC 601-210 through the completion of a simple one-page form known as Form UF 601-210.21,[1] without complying with the Chapter 3 Notification Procedure.[2] But USAREC 601-210 in no way supersedes or supplants the AR 135-178 separation procedures for DEP soldiers.

To begin, by its own terms, the USAREC 601-210 procedure applies only when a soldier *requests* separation from the service. Specifically, USAREC 601-210 Appendix I-4, entitled "Separation Procedures," provides as follows: "Process FS separation by: (1) *FS initiate*

---

[1] Plaintiffs' counsel have seen no evidence that the Army provided this form to MAVNI soldiers discharged after September 2016.

[2] That Defendants did not raise this argument until their Sur-Reply is telling. Notably, Defendants included the Chapter 3 Notification Procedure in the October 26, 2018 Policy. Dkt. 50-1. Only thereafter, as this litigation continued, did Defendants claim that the October 26 Policy as to DEP soldiers was the product of unexplained Army generosity and that DEP soldiers actually were not entitled to those procedures. In doing so, Defendants initially attempted to distinguish between DEP and DTP soldiers by claiming that DEPs "have not yet taken the oath of enlistment to join the Army" and by claiming that DEPs simply are "recruits" who, "for all intents and purposes, are not serving in the Army." Dkt. 89 at 7. These statements were untrue, as shown in Plaintiffs' briefing. Dkt. 92 at 22-24; Dkt. 104 at 2. Moreover, AR 135-178 expressly provides that "[a]n applicant orally subscribing to the oath and executing the DD Form 4 series becomes a member of the Armed Forces." AR 135-178, Definitions (Dkt. 101-3 at 123). And AR 135-178 refers to the situation where a DEP soldier is "unqualified for *further* military service." AR 135-178, Chapter 14, § II, ¶ 14-7 (Dkt. 101-3 at 75) (emphasis added). Notwithstanding Defendants' evolving arguments, they still fail to provide any justification for denying these soldiers the same minimum procedural protections due other soldiers subject to involuntary discharge actions.

3

*separation request* on UF 601-210.21 ….'" USAREC 601-210, Appendix I, I-4 a(1) (Dkt. 101-2 at 46) (emphasis added).  Filling out a one-page form may be adequate when the soldier knowingly and voluntarily requests separation – a circumstance that has no bearing in this litigation – but nothing in USAREC 601-210 provides that the regulation supersedes, supplants, or replaces AR 135-178, or otherwise states that AR 135-178 need not be complied with when a soldier is being involuntarily separated.

To the contrary, USAREC 601-210 expressly recognizes that AR 135-178 procedural requirements apply to DEP separations.  For example, USAREC 601-210, Appendix I-4 states: "When the AR FS requests separation by signing a UF 601-210.21, *the notification process identified in AR 135-178 is considered to have been completed*."  USAREC 601-210, Appendix I, I-4 d(1) (Dkt. 101-2 at 46) (emphasis added).  Thus, USAREC 601-210 acknowledges that the Chapter 3 Notification Procedures of AR 135-178 must be satisfied.  The regulation provides that in one specific case (*i.e.*, where the soldier *requests* separation), completing Form UF 601-210.21 is considered as satisfying the AR 135-178 requirements.  However, when a soldier does not request separation, then USAREC 601-210, by inverse, establishes that completing Form UF 601-210.21 is not sufficient to satisfy the AR 135-178 requirements.

In any event, as a more general matter, USAREC 601-210 applies only to three categories of separations: "a. The result of a request from a member of the DEP/DTP/DS"; "b. The discovery of an erroneous or fraudulent enlistment"; and "c. Medical Disqualifications."  USAREC 601-210, Appendix I, I-2 (Dkt. 101-2 at 45).  None of these categories appears to be relevant to the vast majority of MAVNI discharges at issue in this case.  But, even if one of these categories were relevant, as noted above, the regulation makes clear that the Form UF 601-210.21 process can be used to satisfy the AR 135-178 Chapter 3 Notification Procedure requirements only for those

4

separations initiated at the request of the soldier. All other types of separations must otherwise comply with the Chapter 3 Notification Procedure.[3]

Finally, even if the procedures set forth in USAREC 601-210 were not expressly limited in applicability to soldier-initiated requests for discharge, the mere existence of the USAREC 601-210 procedures would not suggest that the AR 135-178 procedures do not also apply. Procedural requirements and protections can be cumulative. There is nothing in USAREC 601-210 that states that the procedures set forth therein *replace* the procedures contained in AR 135-178 for DEP soldiers. Absent such a statement, the procedures contained in AR 135-178 and USAREC 601-210 co-exist without any difficulty.

The Court should not read into this silence an intent on the part of Commanding General, U.S. Army Recruiting Command ("CG USAREC") to cancel the AR 135-178 procedures. The Form UF 601-210.21 procedure contained in USAREC 601-210 provides DEP soldiers with virtually no due process at all. Nor can one lightly assume that the Army intended to allow USAREC to strip DEP soldiers of all of their due process rights through mere silence. Indeed, why would the DEP section of AR 135-178 remain in the regulations at all if it is not applicable (and, according to Defendants, has not been applicable for a lengthy period of time)?[4]

---

[3] Defendants also claim that USAREC 601-210 purportedly contemplates at least 16 additional specific bases for separation as well as an "other" basis, with each one allegedly requiring specific documentation and "sometimes" requiring different separation procedures. Dkt. 101 at 5. This assertion is irrelevant to the present question because nowhere does USAREC 601-210 provide that the minimum separation procedures explicitly set forth for DEP soldiers in AR 135-178 do not apply to these bases for separation.

[4] As previously noted, Defendants' contention that the Army has failed to provide the Chapter 3 Notification Procedure to MAVNI and non-MAVNI DEPs for some time may reveal additional misconduct by Defendants but does not implicate the typicality and commonality questions necessary for class certification. *See* Dkt. 104 at 6 n.4.

### III. U.S. ARMY RECRUITING COMMAND HAS NO AUTHORITY TO ISSUE REGULATIONS THAT SUPERSEDE OR SUPPLANT THE AR 135-178 REQUIREMENTS

Even if USAREC 601-210 purported to supersede or supplant the requirements of AR 135-178 with respect to separations of DEP soldiers (and it does not), the regulation would carry no force or effect. This is because the CG USAREC has no authority to issue regulations that cancel or countermand the requirements of AR 135-178. Defendants contend as follows:

> Pursuant to the authority of Army Regulation 135-178, ¶ 1-11, the Commanding General of USAREC may order DEP and DTP separations prior to the expiration of their service obligations. *Id.* ¶ 1-11.b.(6). Under the same authority, the Commanding General of USAREC may delegate to the commander of a U.S. Army recruiting battalion separation authority for DEP, Reserve DEP, and DTP members.…
>
> ***In accordance with these authorities***, ***USAREC Headquarters issued USAREC Regulation 601-210, Appendix I***, which "outlines procedures for processing DEP/DTP/DS [Delayed Status] separations after the initial Oath or Enlistment." *Id.* Appx I ¶ 1-1. USAREC Regulation 601-210 is thus the controlling regulation and authority governing processing of all DEP and DTP discharges from USAREC for non-MSSD reasons ….

Dkt. 101 at 4 (emphasis added).

Nothing in the regulations cited by Defendants transfers authority to the CG USAREC to promulgate regulations concerning separation, let alone regulations that cancel and countermand the separation requirements set forth in AR 135-178. Defendants rely on AR 135-178, Chapter 1, § II, ¶ 1-11 and ¶ 1-11.b(6) for such supposed authority. Yet, these provisions merely delegate authority to "order" separations as follows:

> **1-11. Authority to order separation prior to expiration of service obligation**
>
> Except where approval by Headquarters, Department of the Army (HQDA) is required, the following officials are authorized to convene administrative separation boards as required, and to order separation under this regulation. The separation authority delegated to commanders by this regulation will not include the authority to discharge a Soldier under court-martial sentence that includes a

6

>dishonorable or bad conduct discharge, prior to completion of appellate review, unless the discharge is directed by HQDA. …
>
>[b] (6)   The CG, U.S. Army Recruiting Command, for Soldiers in the Delayed Entry program (DEP) (chap 14, sec 11), the Reserve DEP, and the Delayed Training Program.  CG, U.S. Army Recruiting Command, may delegate to the commander of a U.S. Army recruiting battalion (RBN) separation authority for DEP, Reserve DEP, and Delayed Training Program.

AR 135-178, Chapter 1, § II, ¶ 1-11 (Dkt. 101-3 at 7) (emphasis added).  Similarly, with respect to the specific chapter governing DEPs, AR 135-178 simply states as follows: "**14-8. Separation authority.**  The authorities cited in paragraph 1-11*b*(6) may order discharge under this section." AR 135-178, Chapter 14, § II, ¶ 14-8 (Dkt. 101-3 at 76).

These provisions merely designate the CG USAREC as a "separation authority" for DEP soldiers.  However, "separation authority" is nothing more than the power to adjudicate and order separations.  For example, the term is defined in the regulations to mean "[a]n official authorized by the Secretary of the Army, or his designated official, to take final action with respect to a specified type of separation." AR 135-178, Definitions (Dkt. 101-3 at 105).  The regulations cited by Defendants in no way authorize the CG USAREC to rewrite the regulations that govern the process for separation.  On the contrary, as the cited provision makes clear, this delegation only authorizes the CG USAREC "to order separation *under this regulation*." AR 135-178, ¶ 1-11 (emphasis added).  To issue such an order, the CG USAREC necessarily must comply with "this regulation," *i.e.*, AR 135-178, not make up its own regulations that countermand AR 135-178.

Delegating "separation authority" to only a limited number of specifically-designated senior officers and commanders, as listed in AR 135-178 ¶ 1-11, is done for good reason.  It prevents junior officers from effectuating the discharge of soldiers without the supervision and concurrence of senior commanders.  Accordingly, in addition to the due process protections

7

afforded to soldiers discussed above, AR 135-178 also prescribes the required adjudication process for separations as follows:

> **3-8. The initiating commander's report to the separation authority**
>
> The commander initiating the separation proceedings will forward a full report of the recommended proceedings through immediate commanders, if any, to the appropriate *separation authority (para 1-11)* using the commanding officer's report in the format shown in figure 3-4.
>
> **3-9. Action by intermediate commanders**
>
> Intermediate commanders may take the following action:
>     *a*. Disapprove the recommendation and direct reassignment of the Soldier to another organization, if applicable, or direct disposition by other means. In case of reassignment, the commanding officer's report will be forwarded to the new organization commander for information.
>     *b*. Approve the commanding officer's recommendation and forward the report to *the separation authority*.
>
> **3-10. Action by separating authority**
>
>     *a*. ***The separation authority for actions initiated under this notification procedure will be the authority cited in paragraph 1-11***.
>     *b*. The action of the separation authority will be recorded.
>     *c*. On receipt of the commander's report (para 3-8 or para 3-11), the separation authority will determine if there is sufficient evidence to verify the allegations *set forth in the notification* of the basis for separation. If an allegation is not supported by a preponderance of the evidence, it may not be used as a basis for separation. If there is not sufficient basis for separation, the separation authority will disapprove the recommendation and return the case to the originator for disposition by other means or take other appropriate action under this regulation. If the recommendation is disapproved, the returned endorsement will cite reasons for disapproval.
>     *d*. If there is sufficient factual basis for separation for the reason *set forth in the notification*, the separation authority will determine whether separation is warranted under the guidance of chapter 2, sections I and II. On the basis of that guidance, the separation authority will direct one of the following actions:
>         (1) Retention . . .
>         (2) Separation . . .
>         (3) Suspended separation . . .

AR 135-178, Chapter 3, § II, ¶¶ 3-8, 3-9, 3-10 (Dkt. 101-3 at 31-36) (emphasis added).

These provisions make clear that the "separation authority" delegations set forth in ¶ 1-11 of AR 135-178 simply delegate authority to *adjudicate* separations based on the recommendations

8

of more junior officers. There is no delegation, in ¶ 1-11 or anywhere else in AR 135-178, of any power to rewrite the regulations relating to the separation process.

Indeed, these provisions make clear that the separation authority must perform the adjudication in accordance with the Chapter 3 Notification Procedure. AR 135-178, Chapter 3, § II, ¶ 3-10*a* (Dkt. 101-3 at 35) ("The separation authority for actions initiated under *this notification procedure* will be the authority cited in paragraph 1-11.") (emphasis added); *id.* ¶ 3-10*c* (Dkt. 101-3 at 35-36) ("[T]he separation authority will determine if there is sufficient evidence to verify the allegations *set forth in the notification* of the basis for separation ….") (emphasis added); *id.* ¶ 3-10*d* (Dkt. 101-3 at 36) ("If there is sufficient factual basis for separation for the reason *set forth in the notification*, the separation authority will determine ….") (emphasis added).

This fact is further confirmed by the "initiating commander's report," which must be provided to the "separation authority" and which must follow "the format shown in figure 3-4" of AR 135-178. AR 135-178, Chapter 3, § II, ¶ 3-8 (Dkt. 101-3 at 31). Figure 3-4 is entitled "Format for commanding officer's report to the separation authority." AR 135-178, Fig. 3-4 (Dkt. 101-3 at 32). In paragraph 6 of the required report, the initiating commander must state that "[t]he memorandum of notification and Soldier's response" are attached as enclosures to the report. AR 135-178, Fig. 3-4, ¶ 6 (Dkt. 101-3 at 35). The memorandum of notification in turn sets out the soldier's Chapter 3 Notification Procedure rights, such as the right to notice of the reasons for separation, the right to consult with counsel, the right to obtain documents, and the right to provide a written statement in response. AR 135-178, Fig. 3-2, ¶¶ 1 & 5 a, b, f. (Dkt. 101-3 at 24-25).

All these procedures are completed before the "initiating commander's report" is sent to the "separation authority" for final adjudication of the separation. And, of course, the DEP-specific section of AR 135-178 works hand-in-hand with these other aspects of the regulation

and with USAREC 601-210 because AR 135-178 states that "the Commander, U.S. Army *RBN* [Recruiting Battalion]" will make a final retention/separation decision for a DEP only after a "careful consideration of the Soldier's statement or rebuttal," AR 135-178, Chapter 14, § II, ¶ 14-7*c* (Dkt. 101-3 at 75) (emphasis added), thus recognizing the recruiting battalion's (limited) role as it relates to the process to be provided to DEP soldiers.

Nothing in AR 135-178 or otherwise plausibly can be construed to give CG USAREC the authority to issue regulations to shortcut and supersede these procedures simply because CG USAREC is designated by ¶ 1-11.b(6) of AR 135-178 to act as a "separation authority" to adjudicate and order separations.

∗∗∗

For these reasons and the reasons provided in Plaintiffs' prior briefing on this subject, the Chapter 3 Notification Procedure set forth in AR 135-178 applies to the separation of MAVNI soldiers in the DEP.

Dated: July 8, 2019                              Respectfully submitted,

       */s/ Douglas W. Baruch*
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Kayla Stachniak Kaplan (D.C. Bar No. 996635)
Neaha P. Raol (D.C. Bar No. 1005816)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*