**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LUCAS CALIXTO, et al.

*Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
THE ARMY, et al.,

*Defendant*s.

Civil Action No.18-1551 (ESH)

**DEFENDANTS' REPLY TO PLAINTIFFS'
SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION**

In Army Regulation (AR) 601-210, ¶¶ 5-28 and 5-29, the Deputy Chief of Staff, G-1[1] (personnel) provides a clear and unambiguous grant of authority to the Commanding General, United States Army Recruiting Command (USAREC) to administer the Delayed Entry Program (DEP), to include enlistment in and discharge from the DEP.  This unambiguous grant means that the USAREC Commanding General has the authority to issue regulations, policies, or directives that direct how DEP enlistees are separated from his command, notwithstanding the provisions of AR 135-178.  Even if the Court were to find the grant of authority is ambiguous, the Army's interpretation is entitled to deference under recent Supreme Court precedent because the Army's interpretation of its own regulation is reasonable.

In their Supplemental Brief (ECF No. 109), Plaintiffs imply that USAREC Regulation 601-210 does not provide DEP enlistees with notice and an opportunity to be heard during separation proceedings.  Contrary to Plaintiffs' implication, USAREC Regulation 601-210

---

[1] The Deputy Chief of Staff, G-1 (DCS G-1) is the proponent of AR 601-210.  ECF No. 101-4.

requires notice and gives the DEP enlistee an opportunity to respond to the notice of intent to discharge.

Plaintiffs further argue that USAREC Reg. 601-210 applies only to **voluntary** separations from the DEP.  ECF No. 109 at 3-4.  Plaintiffs' erroneous argument is based on citing those portions of AR 135-178 that support their argument, but a failure to consider those regulations (most importantly USAREC Reg. 601-210) that are in opposition and ultimately fatal to their position that AR 135-178 is the controlling regulation for DEP separations.  To the detriment of their argument, Plaintiffs' brief focuses on AR 135-178[2] as authority, and when they do finally turn to USAREC Regulation 601-210, they failed to account for the specific provisions of that regulation that directly apply to *involuntary separations* from the DEP.  Plaintiffs fundamentally misread USAREC Regulation 601-210 as applying only to "voluntary separations" or DEP member-initiated discharges.  To the contrary, USAREC Regulation 601-210 applies to involuntary discharges as well, including for reasons such as erroneous enlistment (defined as an enlistment that later proves to be invalid because the individual failed to meet the qualifications [to serve in the Army] prior to enlistment),[3] fraudulent enlistment, and medical disqualification.  USAREC Reg. 601-210 at ¶I-2.  These general categories of discharges encompass all of the reasons for DEP discharges set forth in ECF No. 27-2.

Plaintiffs further read notification requirements into USAREC Regulation 601-210 that simply are not there, no matter how much Plaintiffs invert the language of the regulation.

---

[2] AR 135-178 applies to U.S. Army Reserve soldiers who are not serving on active duty.  DEPs are enlisted in the U.S. Army Reserve, but are not assigned to USARC.  DEPs are only assigned to USAREC.

[3] *See* USAREC Regulation 601-210, Glossary, Section II, "Terms"

AR 601-210's unambiguous grant of authority to the Commanding General, USAREC and the notice and opportunity to be heard requirements in USAREC Regulation 601-210 clearly demonstrate that it is USAREC Regulation 601-210 (and not AR 135-178) that applies to involuntary discharges from the DEP, notwithstanding AR 135-178.

### A. AR 601-210 GIVES A CLEAR GRANT OF AUTHORITY TO THE COMMANDING GENERAL, USAREC TO ISSUE REGULATIONS, POLICIES, OR DIRECTIVES RELATIVE TO HOW ENLISTEES ARE DISCHARGED FROM THE DEP

In AR 601-210, the Deputy Chief of Staff G-1 (personnel) ("DCS G-1") makes a clear and unambiguous grant of authority to the USAREC Commanding General to "organize and administer" the DEP, delegate authority to separate DEP enlistees, and direct how DEPs are separated from USAREC.[4]  ECF No. 101-4.  Pursuant to AR 601-210, paragraph 5-28, the Commanding General USAREC receives authority from the DCS G-1 to "organize and administer the Army Reserve Control Group (DEP) to which enlistees will be assigned." *Id*. Further, the DCS G-1, through paragraph 5-29, delegates authority to recruiting battalion commanders to separate DEP enlistees **as directed by the CG, USAREC**." *Id*. (emphasis added).  Through the "as directed by" language, the DCS G-1 authorizes the USAREC Commanding General to issue USAREC Regulation 601-210 and to prescribe how DEPs will be separated from USAREC and, as a result, separated from the Army.

This unambiguous grant means that the USAREC Commanding General has the authority to issue regulations, directives, or policies that direct how DEP enlistees are separated from his command, notwithstanding the provisions of AR 135-178.

### B. USAREC REGULATION 601-210 PROVIDES NOTICE AND OPPORTUNITY TO RESPOND

---

[4] DEPs are assigned to USAREC only.

Contrary to Plaintiffs' suggestions, USAREC Regulation 601-210 provides notice to the DEP recruit of the basis for her discharge and an opportunity to respond to that notice. *Id.* at I-4a. This notice informs the enlistee that their training reservations have been cancelled and that they will be discharged from the Army in 14 days. *Id.* The USAREC Commanding General prescribes a 14-day period to respond to the notice of separation to ensure that, should the DEP enlistee be discharged, another enlistee can quickly and efficiently move into the training slot vacated by the separated DEP enlistee. *See, e.g.* ECF No. 101-4, ¶ I-4a(2) ("When the [Future Soldier] is medically disqualified, *cancel the reservation as soon as possible to mitigate losses of training base reservations inside of 30 days*.") (emphasis added).

The need to separate unqualified DEP enlistees quickly and efficiently is directly related to readiness, the Army's number one priority and policy consideration. According to Army Chief of Staff, General Mark Milley, "readiness is #1, and there is no other #1." Exh. A (39th Chief of Staff of the Army Initial Message). The Army's mission is unlike any other agency's mission. The Army is tasked with winning "in the unforgivable crucible of ground combat." *Id.* General Milley directs that every soldier and every component in the Army (active Army, Reserve, even Recruiting Command) must be "ready to fight today." *Id.*

In the context of DEPs assigned to USAREC and the separation procedures afforded to them, readiness means that the enlistees who are not qualified to serve cannot be allowed to occupy a training seat that could be taken by another enlistee who is qualified and willing to serve and "fight today." As a result, the USAREC Commanding General, in accordance with the grant of authority in AR 601-210, issued a regulation that appropriately balances the enlistee's right to notice and an opportunity to be heard with the Army's legitimate interest in having soldiers and components ready to fight today.

**C. EVEN IF THE COURT FINDS AR 601-210'S GRANT OF AUTHORITY IS AMBIGUOUS, THE ARMY'S INTERPRETATION OF ITS OWN REGULATION IS ENTITLED TO DEFERENCE BECAUSE IT IS REASONABLE**

The Supreme Court recently took up the issue of whether *Auer* deference, set forth in *Auer v. Robbins*, 519 U.S. 452 (1996), by which Courts are to afford deference to an agency's interpretation of its own regulations, should be overruled. The Supreme Court refused to overrule *Auer* and instead imposed a new test for when Courts should defer to an agency's interpretation of its own regulations.

Justice Kagan, writing for the majority, articulated the test, which includes that Courts should not reflexively defer to an agency's interpretation of its own regulations and that deference should be given only when the regulation is genuinely ambiguous. If not ambiguous, the regulation "means what it means." *Kisor v. Wilkie*, 204 L.Ed. 2d 841, 858 (2019). If the regulation is genuinely ambiguous, the agency's interpretation must be reasonable for the Court to afford deference. *Kisor v. Wilkie*, 204 L.Ed. 2d 841, 859 (2019).

Relative to the reasonableness of the agency's interpretation, Justice Kagan wrote that an agency's reading of a rule must reflect "fair and considered judgment" to receive *Auer* deference. *Christopher v. SmithKlineBeacham Corp.*, 567 U.S. 142, 155 (2012). Courts should decline to defer to a "convenient litigating position or "post hoc rationalization[n] advanced" to "defend past agency action against attack." *Id.* at 155.

In this case, there is no ambiguity and AR 601-210 "means what it means" –that the USAREC Commanding General may direct, through regulations, policies, or directives, how DEPs are discharged from USAREC, notwithstanding the provisions of AR 135-178. Even if the Court were to find AR 601-210's grant of authority is ambiguous, the Army's interpretation is reasonable. The Commanding General, USAREC is authorized to "organize and administer" the

5

DEP.  ECF No. 101-4, ¶ 5-28.  DEP enlistees may be separated "as directed by" the "USAREC

CG or DCS G-1."  *Id*. at 5-29.  The Army's interpretation that this is a grant of authority to the

USAREC Commanding General to issue regulations directing how DEPs are discharged from

USAREC is reasonable and should be afforded deference.

Furthermore, the Army's interpretation of AR 601-210 is "fair and considered judgment"

and is not a mere "convenient litigating position" or "post hoc rationalization" to "defend past

agency action against attack."  As Defendants' counsel explained at the hearing on June 24,

2019, "[t]he Army does it this way [uses USAREC Regulation 601-210 to discharge DEPs rather

than AR 135-178].  We are not interpreting the regulations.  This is the way [DEPs] have been

discharged for years."  June 24, 2019 Transcript at 45, lines 7-10.  Defendants further explained

in the Sur-Reply that ***all DEPs*** (including MAVNIs) are processed for separation from USAREC

in accordance with USAREC Regulation 601-210, Appendix I.  ECF No. 101 at 4-5.  This

separation process for DEPs existed long before the MAVNI program was implemented.  *Id*.

For these reasons, should the Court find that AR 601-210's grant of authority to the

Commanding General, USAREC is ambiguous, the Court should find that the Army's

interpretation of the regulation is reasonable and afford deference to that interpretation in

accordance with the Supreme Court's ruling in *Kisor*.

### D.  BY ITS OWN TERMS, USAREC REGULATION 601-210 APPLIES TO VOLUNTARY AND INVOLUNTARY SEPARATIONS FROM THE DEP

Plaintiffs erroneously (and misleadingly) argue that USAREC Regulation 601-210 "by its

own terms . . . applies only when a soldier ***requests*** separation from the service.  Specifically,

USAREC 601-210 Appendix I-4, entitled "Separation Procedures," provides as follows:

"Process FS separation by: (1) ***FS initiate separation request*** on UF 601-210.21 . . .."  ECF No.

101-2 at 46.

Plaintiffs fail to cite to the rest of the paragraph, which indicates that Appendix I, ¶ I-4 includes **both** soldier-initiated requests **and** involuntary separations.  This section provides, "[i]f the [DEP enlistee] is unavailable or refuses to sign write 'unavailable for signature' or 'refuses to sign' in the remarks section of the form."  ECF No. 101-4.  There is no logical reason why a DEP enlistee would **refuse** to sign a voluntary request for separation.  This language is present because some separations under USAREC Reg. 601-210 are involuntary, including erroneous and fraudulent enlistments and medical disqualifications.  Plaintiffs' failure to fully analyze the controlling regulation (USAREC Reg. 601-210) is misleading to the Court and fatal to their argument that it applies only to voluntary DEP separations.

A further flaw in Plaintiffs' argument is, at the outset, Plaintiffs simply skip over Appendix I, ¶ I-2, which was specifically cited in Defendants' Sur-Reply (ECF No. 101 at 4-5). Appendix I-2 unequivocally states that separations from the DEP/DTP/DS "fall into **three categories**." ECF No. 101-4.  (emphasis added).  These three categories include requests from a member of the DEP/DTP/DS (as Plaintiffs cite); the discovery of an erroneous or fraudulent enlistment, and medical disqualifications (both of which Plaintiffs ignore or refuse to cite).  *Id.*

To be fair, Plaintiffs do belatedly get around to citing Appendix I-2, but only to dismiss the provisions therein out-of-hand: "[n]one of these categories appears to be relevant to the vast majority of MAVNI discharges at issue in this case."  ECF No. 109 at 4.  The categories Plaintiffs fail to cite are indeed relevant.  Plaintiffs need only look at the reasons for DEP discharges listed in ECF No. 27-2 to see that they "appear to be relevant to the MAVNI discharges at issue."  The reasons listed in ECF No. 27-2 include reasons that would fall under erroneous enlistment (failure to qualify for enlistment)/fraudulent enlistment and medical

disqualification.[5]  These types of discharges are clearly the discharges at issue for MAVNI

DEPs.

In sum, USAREC Reg. 601-210 applies to involuntary separations from the DEP, in

addition to enlistee-initiated separations.  Plaintiffs' attempts to argue otherwise fail.

Respectfully, the Court should find that USAREC Reg. 601-210 is the controlling regulation for

DEP separations from USAREC.

### E.  PLAINTIFFS READ NON-EXISTENT NOTIFICATION REQUIREMENTS INTO USAREC REGULATION 601-210

With no support other than their own logical contortions, Plaintiffs read into USAREC

Regulation 601-210 a requirement to use the notification procedures found in AR 135-178,

Chapter 3, Section II.  Plaintiffs erroneously argue "[USAREC Reg. 601-210] makes clear that

the Form UF 601-210.21 process can be used to satisfy the AR 135-178 Chapter 3 Notification

Procedure requirements only for those separations initiated at the request of the soldier.  All

other types of separations must otherwise comply with the Chapter 3 Notification Procedure."

ECF No. 109 at 4-5.  Plaintiffs further argue "when a soldier does not request separation [i.e. it is

---

[5] The "reasons for discharge" as listed in ECF No. 27-2 (and the category of USAREC Reg. 601-210, ¶ I-2 they fall into are:
       <u>Erroneous/Fraudulent enlistment</u>
       Apathy/Personal Problem
       Declined to Ship
       Refused to Enlist
       Entry Level Performance and Conduct
       Education
       Police Record/Charge after DEP enlistment
       Moral/Legal Reason
       Fraudulent Enlistment

       <u>Medical Disqualification</u>
       Failed medical/physical procurement standards
       Pregnancy

an involuntary separation], then USAREC 601-210, by inverse, establishes that completing Form UF 601-210.21 is not sufficient to satisfy the AR 135-178 requirements." *Id.* at 4. Plaintiffs go even further by suggesting that the USAREC Regulation should specifically state that the provisions of AR 135-178 do not apply, otherwise they apply: "nowhere does USAREC 601-210 provide that the minimum separation procedures explicitly set forth for DEP soldiers in AR 135-178 do not apply to these bases for separation." ECF No 109 at 5, fn. 3. Notwithstanding the fact that Plaintiffs here admit that USAREC Reg. 601-210 does indeed apply to involuntary separations (which is inconsistent with Plaintiffs' earlier argument that USAREC Reg. 601-210 only applies to voluntary discharges), and Plaintiffs make the unsupported presumption that the AR 135-178 notification procedures are "the minimum separation procedures" required, USAREC Reg. 601-210, by its own terms, does not support their novel approach.

As noted in Defendants' Sur-Reply (ECF No. 101 at 5), "USAREC Regulation 601-210 contemplates at least sixteen specific bases for separation and an additional 'other' basis," citing Appendix I, Table I-1. Table I-1 lists the "required documentation" for separations listed there. Nowhere in Table I-1 is the notification memorandum from AR 135-178 listed as part of the required documentation. ECF No. 101-1. Further AR 135-178 is cited three times in Appendix I, but none of these references mention any requirement to use the notification procedures from that regulation. These provisions demonstrate that the USAREC Commanding General did not intend to impose the AR 135-178 notification requirements on DEP separations.

In sum, Plaintiffs read non-existent notification requirements into USAREC Reg. 601-210. As a result, the Court should not impose these requirements on DEP separations when the Army never intended them to be a part of the DEP separation process. Respectfully, the Court

should find that USAREC Reg. 601-210 is the controlling regulation for DEP separations from USAREC and the procedures found therein should be followed, not those in AR 135-178.

<strong><u>CONCLUSION</u></strong>

The Commanding General, USAREC has unambiguous authority to administer how enlistees are discharged from the DEP, including the authority to issue regulations, policies, or directives, to effectuate DEP discharges, notwithstanding the provisions of AR 135-178.  Even if the Court finds the grant to be ambiguous, the Army's interpretation is entitled to deference under recent Supreme Court precedent because the Army's interpretation of its own regulation is reasonable.  Plaintiffs' attempts to demonstrate that the Army's interpretation of its own regulations is unreasonable clearly fail.

For these reasons, and the reasons set forth in Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 89) and Defendants' Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification (ECF No. 101), Defendants respectfully request the Court deny Plaintiffs' Motion for Class Certification.

Dated:  July 22, 2019

Respectfully submitted,

JESSIE K. LIU
D.C. Bar # 472845
United States Attorney

DANIEL F. VAN HORN
D.C. Bar # 924092
Chief, Civil Division

By:      /s/
JEREMY A. HAUGH
Special Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2574
Jeremy.Haugh@usdoj.gov
*Attorneys for Defendants*



## 39th Chief of Staff of the Army
## Initial Message to the Army

We have the most skilled, ethical, and combat hardened Army in our Nation's history.  No matter where we are around the world, America's Soldiers are displaying courage, commitment and character.  We are demonstrating unparalleled competence and agility.  And no matter the challenge, no matter how complex the environment, or how dangerous the situation, our Soldiers fight and win.

I am honored to lead this remarkable team.

I have three priorities:

**#1.  Readiness:** (Current Fight) Our fundamental task is like no other – it is to win in the unforgiving crucible of ground combat.  We must ensure the Army remains ready as the world's premier combat force.  Readiness for ground combat is – and will remain – the U.S. Army's #1 priority.  We will always be ready to fight today, and we will always prepare to fight tomorrow.  Our most valued assets, indeed, the Nation's most valued assets, are our Soldiers and our solemn commitment must always be to never send them into harm's way untrained, poorly led, undermanned, or with less than the best equipment we can provide.  Readiness is #1, and there is no other #1.

**#2.  Future Army:** (Future Fight) We will do what it takes to build an agile, adaptive Army of the future.  We need to listen and learn – first from the Army itself, from other services, from our interagency partners, but also from the private sector, and even from our critics.  Developing a lethal, professional and technically competent force requires an openness to new ideas and new ways of doing things in an increasingly complex world.  We will change and adapt.

**#3.  Take Care of the Troops:** (Always) Every day we must keep foremost in our minds our Soldiers, Civilians, and their Families.  Our collective strength depends on our people - their mental and physical resilience is at our core.  We must always treat each other with respect and lead with integrity.  Our Soldiers are the crown jewels of the Nation; we must love them, protect them, and always keep faith with them.

I am honored and proud to serve with you.  Thank you for your service and commitment to a cause larger than yourselves.

Army Strong!

MARK A. MILLEY
General, United States Army
39th Chief of Staff of the Army