IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LUCAS CALIXTO, *et al.*,

        Plaintiffs,

v.

UNITED STATES DEPARTMENT OF THE ARMY, *et al.*,

        Defendants.

**Case No. 1:18-cv-01551-PLF**

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1
ARGUMENT ....................................................................................................................... 4
    I.    The Proposed Amendment Is Not Futile ................................................... 4
          A.    This Court Has Rejected Defendants' Justiciability Argument ................. 5
          B.    Defendants' Purported Administrative Remedies Are Illusory ................. 8
    II.    Defendants Will Not Be Prejudiced By Amendment .......................................... 11
CONCLUSION .................................................................................................................... 16

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adair v. England*,
  183 F. Supp. 2d 31 (D.D.C. 2002) .................................................................................... 9

*Allen v. Carmen*,
  578 F. Supp. 951 (D.D.C. 1983) ....................................................................................... 8

*Aref v. Holder*,
  953 F. Supp. 2d 133 (D.D.C. 2013) .................................................................................. 5

*Chappel v. Wallace*,
  462 U.S. 296 (1983) ........................................................................................................... 6

*Comm. for GI Rights v. Callaway*,
  518 F.2d 466 (D.C. Cir. 1975) ........................................................................... 8, 9, 10, 11

*Dilley v. Alexander*,
  603 F.2d 914 (D.C. Cir. 1979) ....................................................................................... 6, 7

*Emory v. Sec. of Navy*,
  819 F.2d 291 (D.C. Cir. 1987) ........................................................................................... 7

*Fleck v. Cablevision VII, Inc.*,
  799 F. Supp. 187 (D.D.C. 1992) ................................................................................ 13, 14

*Hartford Ins. Co. v. Socialist People's Libyan Arab Jamahirya*,
  422 F. Supp. 2d 203 (D.D.C. 2006) .......................................................................... 13, 14

*In re Thornburgh*,
  869 F.2d 1503 (D.D.C. 1989) .......................................................................................... 14

*Kira v. U.S. Dep't of Def.*,
  D.D.C. Case No. 17-1793(ESH), Dkt. 13 ........................................................................ 3

*Kreis v. Sec'y of Air Force*,
  866 F.2d 1508 (D.C. Cir. 1989) ......................................................................................... 6

*Lilly v. Schwartz*,
  713 F. Supp. 2d 15 (D.D.C. 2010) .................................................................................... 6

*Martin v. Stone*,
  759 F. Supp. 19 (D.D.C. 1991) ......................................................................... 9, 10, 11, 12

*McKart v. United States*,
   395 U.S. 185 (1969) ..................................................................................................8

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*,
   301 F.R.D. 5 (D.D.C. 2013) ................................................................................12, 14

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 15 ...........................................................2, 4, 12

iii

**INTRODUCTION**

Defendants not only expected, but recently called for, the filing of a third amended complaint, even claiming that the Court already "directed" Plaintiffs to file it: "We always said that the plaintiffs should file an amended complaint, as [the Court] directed back in October." Dkt. 171 (07/29/20 Status Hr. Tr.) at 27:5–6. Defendants were being candid with the Court when making that statement in July 2020. The Court and the parties have been planning to proceed with the action under a third amended complaint, in order to have a "clean" pleading that (1) removed the plaintiffs who Defendants attempted to disqualify as class representatives by providing only the individual proposed representative with the requested relief, (2) added putative class members as named plaintiffs/class representatives to moot Defendants' purported concern that a Delayed Training Program ("DTP") Military Accessions Vital to the National Interest ("MAVNI") soldier was not similarly situated to a Delayed Entry Program ("DEP") MAVNI and that a pre-basic training MAVNI was not similarly situated to a MAVNI who attended one day of basic training, and (3) updated the allegations concerning the Army's October 2018 Policy given the Army's failure to implement that Policy by the time the Second Amended Complaint was filed in January 2019.

In fact, this understanding was recognized by the Court in July 2019 with the statement "you're going to amend anyways." Dkt. 137 at 46:25. Plaintiffs would have amended their complaint sooner, but for an ultimately unsuccessful months-long mediation process with Magistrate Judge Harvey and more recent multi-month settlement negotiations, which also proved unsuccessful.[1] Now, Defendants largely ignore the accurate history of this case and the relief

---

[1] Had the parties not delayed the amendment in order to engage in those attempts to resolve the case, the Third Amended Complaint would not have been as up to date as it is, given that it captures additional no-process discharges—a practice that Defendants assured this Court had ceased with the October 2018 Policy—issued by Defendants as recently as November 2020.

1

Plaintiffs are requesting in the Motion, which is simply leave to file an amended complaint—relief that Rule 15 says should be freely granted.

Beyond that, the fact of the matter is that Plaintiffs' Second Amended Complaint already has survived a motion to dismiss.  Dkt. 95.  Thus, any denial of the amendment request here will result in the judicial inefficiencies of two suits—with this suit continuing with the plaintiffs and allegations in the Second Amended Complaint and a separate suit that the additional plaintiffs (newly named in the proposed Third Amended Complaint) will file, likely seeking related action status in this Court.  Given the simplicity of the relief requested by Plaintiffs' Motion—relief which Defendants previously "always" endorsed—Defendants' about-face in their Opposition is an unwarranted attempt to forestall the legal consequences of their ongoing improper "uncharacterized" discharge actions against United States Army soldiers who enlisted under the MAVNI program.[2]  But, Defendants will face judicial scrutiny into whether their policy and practice of issuing orders to "discharge" MAVNI soldiers without providing those soldiers with adequate notice and an opportunity to respond in advance of such discharge activity, much less the rigorous procedures required given that these "uncharacterized" discharges are being treated as

---

[2] Even though the Court need not at this stage consider extra-complaint material, because Defendants attached three purported "revocation" orders to the Opposition, Plaintiffs provide the Court a flavor of Defendants' conduct during the six-plus weeks that they took to oppose a motion for leave to amend: (1) they have revealed yet another discriminatory policy—that despite what the regulations provide, MAVNI soldiers (and only MAVNI soldiers) are never entitled to a characterized "Honorable" discharge while in entry level status; (2) likewise, they have revealed that MAVNI soldiers in an entry-level status are not entitled to conditional release; (3) they are once again trying to obtain "waivers" from MAVNI soldiers of their rights under the October 2018 Policy; (4) they have issued another "uncharacterized" discharge order for one of the Third Amended Complaint named plaintiffs—without notice, without description of any basis for the discharge, and with a backdated "effective date" to 2017;  (5) they have issued facial "revocation" orders for certain Third Amended Complaint named plaintiffs but have not truly reinstated these soldiers who are still coded as "discharged" in Army systems of records that impact pay, health insurance, and ability to drill with their units; and (6) they purport to cite a nonexistent Army Regulation as "authority" for a MAVNI discharge action.

"other than honorable," is unlawful. The only question before this Court now is whether the judicial review will be addressed efficiently in one proceeding or be split into two.[3]

Plaintiffs believe one proceeding is appropriate here, but Defendants *now* purport to be of a different opinion. However, when one finally gets past the misleading and irrelevant (for purposes of this Motion) history described by Defendants,[4] Defendants' Opposition rests on just two grounds: futility and prejudice. Both arguments lack merit. As to futility, this Court already has found Plaintiffs' claims justiciable (as Defendants are forced to concede in a footnote, Dkt. 190 at 14 n.1), and Defendants cannot hide behind a barrier of illusory administrative remedies that are part of the systemic failures this action seeks to redress. As to prejudice, Defendants state that "the most important factor in relation to a motion to amend is whether the nonmoving party will be prejudiced if the movant is permitted to amend," *id.* at 12, but fail to articulate any actual prejudice that they would suffer if Plaintiffs are permitted to file the Third Amended Complaint and acknowledge that the additional named plaintiffs would have the right to commence a separate action, *id.* at 24.

---

[3] At one point in the related *Kirwa* action, the United States Department of Defense ("DoD") protested that plaintiffs and class representatives there had filed a separate complaint rather than adding the plaintiffs and claims to the related *Nio* action through another amendment. *See Kira v. U.S. Dep't of Def.*, D.D.C. Case No. 17-1793(ESH), Dkt. 13.

[4] Because the bulk of Defendants' Opposition is irrelevant to their futility and prejudice assertions, Plaintiffs do not attempt to address in this Reply every misleading or incorrect statement in the Opposition. However, this Court should be aware that certain of Defendants' statements are just wrong. For example, Defendants have cherry-picked certain regulations but failed to acknowledge ones that are directly on point, including the regulation that dictates the process required in advance of DEP discharges. Likewise, with respect to DEP MAVNIs, Defendants claim that they have not yet "served" in the Army (Dkt. 190 at 16 n.2), a statement that easily is disproven just by even a quick glance at the DEP enlistment contract that is riddled with references to their service beginning upon signing of that contract/taking the enlistment oath, which also subjects them to the Uniform Code of Military Justice.

This case is about the Army's policy and practice of discharging MAVNI soldiers without adequate process in advance of the "uncharacterized" discharge. This action remains ripe for judicial resolution, with the benefit of amendments that shed further light on the widespread injustices suffered by hundreds of MAVNI soldiers who are otherwise without a means for redress.

## ARGUMENT

Defendants oppose amendment on the grounds that it is futile and prejudicial. In so arguing, Defendants attempt to re-write the history of this case, improperly claiming that the proposed amendments are part of an effort to reinvent and resuscitate defeated claims. But this is far from reality. For example, while Defendants claim that Plaintiffs "twice failed to obtain injunctive relief," Dkt. 190 at 14, Defendants *tacitly conceded* the merits of Plaintiffs' claims by representing to the Court that they were implementing the requested relief. *See, e.g.*, 07/20/18 Minute Order (finding injunctive relief moot after the Army voluntarily revoked the discharge at issue in response to litigation). At every turn, Defendants have attempted to evade this lawsuit by granting relief on an individual basis and promising systemic relief—such as through the October 2018 Policy—that never has materialized.

After months of empty promises, it became clear—even to the Court—that Defendants "have had little luck" in ensuring that soldiers are afforded the proper procedures at issue in this case. *See* Dkt. 137 (07/31/19 Status Hr. Tr.) at 42:14–24. Plaintiffs therefore seek to amend their complaint in response to Defendants' latest half-measures and to shed further light on the ongoing deficiencies in the Army's discharge process. Amendment should be permitted, as directed by Rule 15.

**I.    The Proposed Amendment Is Not Futile**

Defendants attempt to turn a simple amendment request into the opportunity to re-litigate their failed motion to dismiss. But, Defendants do not identify anything in the proposed

4

amendment that changes Plaintiffs' fundamental challenge, which is to Defendants' policy/practice regarding the *process* associated with all MAVNI "uncharacterized" discharge actions—a challenge that this Court already has found to be justiciable and for which there is no applicable administrative proceeding.

### A. This Court Has Rejected Defendants' Justiciability Argument

Defendants attempt to insulate their actions from judicial review by once again arguing that Plaintiffs' claims are not justiciable. Dkt. 190 at 14–21. But this argument retreads old ground as the Court already has stated that this action does not interfere with the military's exercise of its discretion over internal management matters. In denying Defendants' earlier motion to dismiss for lack of subject matter jurisdiction, the Court could not have been clearer: "Plaintiffs' Second Amended Complaint argues that the procedures by which plaintiffs were discharged were unlawful because the Army failed to comply with applicable law. ***Such a claim is justiciable***." *See* Dkt. 95 at 9–10 (emphasis added). This is not only the law, but also is the law of the case. *See Aref v. Holder*, 953 F. Supp. 2d 133, 144 (D.D.C. 2013) ("[T]he same issue presented a second time in the same case in the same court should lead to the same result." (internal quotation omitted)).

Plaintiffs do not seek to "second-guess" military decision-making to ensure a "disciplined and orderly force" or to address so-called "national security" concerns. Dkt. 190 at 15–16. Frankly, it is alarming that Defendants now would try to characterize a clear retaliatory policy – which targeted only MAVNI soldiers and where the "WHY" provided was "***MAVNIs are currently suing the federal government claiming they were wrongfully discharged from the Army***" (*see generally* Dkt. 61; Dkt. 179-1) and which Defendants quickly tried to distance themselves from when it became public and known to the Court—as appropriate.

But, beyond that, Defendants' reliance on a litany of cases that discuss the importance of military discipline and the unique nature of the military is misplaced. First, Defendants' cases

5

confirm that military decisions "are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappel v. Wallace*, 462 U.S. 296, 303 (1983). Second, none of the cases stands for the proposition that Defendants' lack-of-due-process discharge actions at issue here are shielded from judicial review. As the Court already has recognized, Plaintiffs challenge the ***process*** not the ultimate discharge decision for any individual or the grounds for discharge of any individual. Dkt. 95 at 1; Dkt. 137 (07/31/19 Status Hr. Tr.) at 41:17–42:19 ("it's a procedural due process argument . . . they weren't afforded the process due under a[n] Army DoD regulation . . . . [, including] notice, opportunity to respond, and the consideration of the soldier's response"); *id.* at 41:22–23 ("Nobody says you can't discharge somebody, but you can't do it without proper procedures.").

Defendants concede that "'[i]t is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency.'" Dkt. 190 at 15 (quoting *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979)); *see also Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (finding claims that argue the military's "decision making process was deficient" are justiciable). *Dilley* explains that, given the special circumstances in which the military operates, deference should be given ***except*** when a case presents an issue that is amenable to judicial resolution. 603 F.2d at 920. "Specifically, courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged." *Id.*; *see also Lilly v. Schwartz*, 713 F. Supp. 2d 15, 17 (D.D.C. 2010) ("[J]udicial review of personnel decisions is appropriate when a plaintiff alleges a constitutional violation or a violation of applicable statues or regulations."). To be clear, the military is not immune from the "basic tenet of our legal system

that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful." *Dilley*, 603 F.2d at 920.[5]

Finally, while Defendants assert that this case is non-justiciable because the requested relief is unavailable, they also concede that this Court already has determined that very issue in Plaintiffs' favor: "'reinstatement can be a form of judicially-ordered relief in appropriate cases.'" Dkt. 190 at 16 (quoting Dkt. 95 at 10). In any event, Defendants again mischaracterize the crux of this lawsuit, which arises out of discharge actions taken without the due process required by the Constitution and the military's own regulations.[6] To the extent the Court finds that reinstatement is an adequate remedy, the Court has the ability to order such relief. *See* Dkt. 95 at 10 (finding that a request for reinstatement "does not somehow divest this Court of jurisdiction over plaintiffs' claims").

---

[5] While Defendants attempt to distinguish *Dilley* on the grounds that the illegally discharged servicemen there, as commissioned officers who served on active duty for years before their involuntary release, were factually distinct from these MAVNIs, Dkt. 190 at 16 n.2, they do not provide any legal import of that factual distinction. And even if there were some legal import, it would be bizarre to credit that factual distinction here, given that DoD's now-enjoined policies in the related *Nio* and *Kirwa* case*s,* which were unlawfully preventing MAVNI soldiers from becoming naturalized citizens, prevented MAVNI soldiers from being commissioned officers because U.S. citizenship is a prerequisite to commissioning.

[6] Defendants similarly miss the mark in claiming that Plaintiffs seek a "constitutionally-protected property interest in continued military service." Dkt. 190 at 17 (internal quotations omitted). The proposed Third Amended Complaint does not say that. Instead, the Second Amended Complaint and the Third Amended Complaint do include allegations regarding soldiers' property and/or liberty interests, including with respect to the stigmatizing reputational harm of an "uncharacterized" discharge, which for MAVNIs is being treated as an "other than honorable" discharge without providing the MAVNIs with the procedures required in advance of an "other than honorable" discharge. *See, e.g.*, Dkt. 61 ¶¶ 6, 157, 199–200; Dkt. 179-1 ¶¶ 6, 14, 80, 311, 363–64. As discussed above, and as the Court already has acknowledged, ***due process*** is the right at issue in this action. Dkt. 137 (07/31/19 Status Hr. Tr.) at 41:16–42:19. The Army certainly "has not been exempted from constitutional provisions that protect the rights of individuals." *Emory v. Sec. of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987).

7

**B.     Defendants' Purported Administrative Remedies Are Illusory**

Defendants previously conceded in this litigation that a discharge determination was a "discrete and final agency action" that was "ripe for federal court review." Dkt. 190 at 21 n.8. Defendants also conceded that a policy, such as the October 2018 Policy, is a final agency action. Dkt. 75 at 14. Yet, now Defendants argue that Plaintiffs' claims universally fail as a matter of law because "Plaintiffs have failed to exhaust intraservice administrative remedies prior to filing suit." Dkt. 190 at 14. Not so. The typical reasons supporting the doctrine of exhausting administrative remedies are inapplicable here, and leave to amend should therefore not be denied on this basis.

The doctrine of exhaustion is "not inflexible." *Comm. for GI Rights v. Callaway*, 518 F.2d 466, 474 (D.C. Cir. 1975). When the reasons supporting the doctrine are found inapplicable, courts in this circuit routinely recognize that the "the doctrine should not be blindly applied." *Id.* Courts recognize an exception to the general rule requiring exhaustion of administrative remedies "when resort to the nonjudicial remedy would clearly and unambiguously violate statutory or constitutional rights." *Allen v. Carmen*, 578 F. Supp. 951, 965 (D.D.C. 1983) (internal quotations omitted).

Application of the exhaustion doctrine "requires an understanding of its purposes and of the particular administrative scheme involved." *McKart v. United States*, 395 U.S. 185, 193 (1969). The exhaustion doctrine was designed primarily to prevent "premature interruption of the administrative process." *See, e.g.*, *id.* In that regard, it serves at least four main purposes:

> (1) to prevent interference by the courts in matters which in the first instance require the exercise of either agency discretion or expertise; (2) to maintain the autonomy and assure the proper functioning of the administrative system Congress has structured; (3) to avoid unnecessary interference with on-going administrative processes; and (4) to assure judicial efficiency, i.e., successful vindication of rights in administrative process may negate need for judicial review.

*Callaway*, 518 F.2d at 474.  These purposes will not be advanced by postponing consideration of the dispositive issue in this case.

Defendants identify no significant interest in their Opposition that is served by forcing Plaintiffs to fully exhaust all military channels (assuming those channels exist, which they do not, as discussed below).  As in *Callaway*, the issues involved here "are purely legal, requiring no exercise of military discretion or expertise."  *Id.* at 474 (noting that "[t]he federal courts are in a better position to consider the constitutional issues presented than are the various military bodies referred to by the appellants").  On this point, the Opposition cites to *Adair v. England*, 183 F. Supp. 2d 31 (D.D.C. 2002), where the court rejected the defendants' argument that the plaintiffs' claims were barred by the exhaustion doctrine.  The *Adair* court held that the exhaustion doctrine was particularly inapplicable because "the gravamen of the plaintiffs' claims revolves around constitutional challenges based on the First Amendment's Establishment and Free Exercise Clauses and the Fifth Amendment's Due Process Clause."  *Id.* at 55 ("[r]esolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board" (internal quotations omitted)).  Just like *Adair*, the gravamen of Plaintiffs' proposed Third Amended Complaint is the constitutional challenge to Defendants' conduct.  In a situation like this, the exhaustion doctrine cannot be used to bar Plaintiffs' claims.

The Opposition primarily relies on *Martin v. Stone*, 759 F. Supp. 19 (D.D.C. 1991), to argue that Plaintiffs' claims are barred by the exhaustion doctrine.  *Martin*, however, is distinguishable.  The *Martin* plaintiff was a single West Point cadet unhappy with the academy's decision to remove her from school for lying and cheating.  In advance of the decision, she received a Full Honor Investigative Hearing ("FHIH"), the Staff Judge Advocate of the Military Academy conducted a legal review of the FHIH proceedings and forwarded the findings of the FHIH panel

9

to the Superintendent of the Academy, the Superintendent approved the findings and forwarded them on to Army Headquarters, and the Army notified the plaintiff of its approval of her separation from the Academy. 759 F. Supp. at 20. The *Martin* plaintiff then filed suit complaining of several evidentiary and procedural flaws in the hearing she received. And, the *Martin* plaintiff "conceded that the BCMR has the authority to grant the relief she seeks." *Id.* at 21. Here, there is not one plaintiff fighting his or her individual discharge decision, but instead there is a class of hundreds of MAVNIs complaining that the Army's policy/practices with regard to MAVNI "uncharacterized" discharges are unconstitutional and otherwise unlawful because the Army does not provide MAVNI soldiers anything near the process that the *Martin* student received. Courts within this circuit have recognized that "the military tribunals are not designed to handle actions involving so large a class and seeking declaratory and injunctive relief. Rather, actions before the Inspector General as well as court martials and other military proceedings are designed primarily to deal with cases involving some specific misconduct by or complaint on the part of an individual GI." *Callaway*, 518 F.2d at 474. For that reason, Plaintiffs here do not concede that any military board can address their claims.

In addition, Defendants themselves note that eight Plaintiffs "have failed to even reach the point where they could seek redress before the Board." Dkt. 190 at 22 n.9. Plus, if Defendants were to pursue this defense, the evidence, including a March 2018 letter from the Army Board for Correction of Military Records ("ABCMR"), would show that putative class members were told that the Board cannot address their claims:

> The ABCMR operates under the procedures set forth in Army Regulation 15-185 and corrects records on behalf of the Secretary of the Army. Unfortunately, in your case, the Department of Defense (MAVNI) program under which you enlisted is no longer accepting applicants. You were discharged at the end of the period of time allotted by law for you to remain in the Delayed Entry

> Program, and as you may no longer meet eligibility requirements for accession in to the Armed Forces, the ABCMR is unable to provide your requested relief. … Your application is returned to you without action. This does not constitute a denial of your request, but rather reflects that considering the current status of the MAVNI program there is no relief the ABCMR is able to provide.

The fact that the Army manipulated the ABCMR's response to a named plaintiff's petition on one occasion (likely in an effort to "moot" out the only proposed DEP class representative at the time), Dkt. 190 at 22 n.9, does not mean that such administrative relief is available to each of the Plaintiffs (much less the putative class) or that the ABCMR could ever find unlawful and set aside Army policies concerning MAVNI "uncharacterized" discharges or grant the other relief sought in the Third Amended Complaint.[7] Finally, in view of the fact that Defendants prepared the October 2018 Policy in direct response to this litigation, *see* Dkt. 179-1, ¶ 22, exhaustion would in all likelihood be futile. *See Callaway*, 518 F.2d at 474 n.20 (noting that exhaustion would be futile and was unnecessary because the Army prepared the challenged directive in response to an order from the court).

Plaintiffs' claims are justiciable, and Plaintiffs should be given leave to file the Third Amended Complaint

## II. Defendants Will Not Be Prejudiced By Amendment

Defendants contend that prejudice to the nonmoving party is "the most important factor in relation to a motion to amend." Dkt. 190 at 12. Yet, they fail to make any showing of prejudice and instead rely on the vague and false statements that the proposed amendments would "reshape this litigation" and "alter the scope and nature of this case." *Id.* at 24, 25. As discussed above and in the Motion, however, the proposed amendments do no such thing. The basics of this litigation

---

[7] It is notable, however, that the one ABCMR reversal occurred prior to the Second Amended Complaint motion to dismiss briefing and decision and was raised by Defendants in the motion to dismiss itself, yet this Court did not determine that Plaintiffs' claims were non-justiciable.

11

have remained constant throughout: Plaintiffs seek to remedy the Army's policy and practice concerning involuntary administrative "uncharacterized" discharge actions against MAVNIs, which do not provide appropriate process in advance of the discharge action.

Defendants identify three factors that courts consider in determining whether leave to amend is prejudicial: (i) the hardship to the moving party if leave to amend is denied; (ii) the reasons the moving party failed to include the material in the original pleading; and (iii) injustice resulting to the opposing party.  *Id.* at 24 (citing *Steele v. United States*, No. 14-1523, 2020 WL 7123100, at *4 (D.D.C. Dec. 4, 2020)).  All three factors weigh against a finding of prejudice here.

***First***, Defendants admit that "Plaintiffs will experience hardship if this motion is denied." Dkt. 190 at 24.  This first factor, by Defendants' own admission, weighs in favor of Plaintiffs and this Court granting leave to amend.

***Second***, the proposed amendments to the Second Amended Complaint could not have been included in earlier pleadings.  At a hearing on July 31, 2019—months after the Second Amended Complaint was filed on January 2, 2019—the Court recognized that it was "premature" at that time to determine whether the October 2018 Policy provided due process as Defendants claimed they would.  Dkt. 137 (07/31/19 Status Hr. Tr.) at 47:1–4.  It was at that same hearing that the Court acknowledged that Plaintiffs were "going to amend anyways." *Id.* at 46:25.  Now that Defendants finally have begun implementing the October 2018 Policy, it is apparent that they continue to fail to provide MAVNI soldiers with due process.  Further, some of the Army discharge actions described in the Third Amended Complaint did not come to the attention of the soldiers until days before the Motion was filed (or that same day).  *See, e.g.*, Dkt. 179-1, ¶¶ 152–53, 164, 205–07.

Amendment is appropriate pursuant to Rule 15 to conform the allegations to the current facts and circumstances.

***Third***, there is simply no substance to Defendants' conclusory claims that they will be "highly prejudiced" by the proposed amendments. Dkt. 190 at 24. Indeed, Defendants' Opposition articulates no prejudice whatsoever. While they argue that the addition of plaintiffs is "improper," courts recognize that where the "defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself ***will not be prejudicially affected if a new plaintiff is added***." *Fleck v. Cablevision VII, Inc.*, 799 F. Supp. 187, 192 (D.D.C. 1992) (emphasis added, citation omitted); *see also Hartford Ins. Co. v. Socialist People's Libyan Arab Jamahirya*, 422 F. Supp. 2d 203, 206 (D.D.C. 2006) (finding that defendants would not be unfairly disadvantaged by the addition of new plaintiffs who could file a separate action against defendants).

Here, the new Plaintiffs challenge the same actions asserted by the original Plaintiffs, *i.e.*, improper "uncharacterized" discharge actions by the Army in violation of military regulations and the law which require due process. *See* Dkt. 179-1, ¶¶ 127–39, 159–209, 213–20, 224–79. Defendants have been on notice of the improper conduct giving rise to these new Plaintiffs' claims. The Second Amended Complaint specifically alleged that the circumstances described therein "with respect to the individually-named Plaintiffs are consistent with known discharge actions taken against other MAVNI enlistees." Dkt. 61, ¶ 135. Further, because Defendants previously raised a concern (albeit one that Plaintiffs do not believe to be valid) that DTP soldiers were not similarly-situated to DEP soldiers and pre-basic soldiers are not similarly-situated to a soldier who attended one day or more of basic training, rather than deal with those questions of representativeness for class certification purposes, the parties and the Court understood that

13

Plaintiffs would add additional named plaintiffs/class representatives to the action. That is exactly what Plaintiffs have done, and that does not expand the scope of the case nor does it prejudice Defendants in any way. *See In re Thornburgh*, 869 F.2d 1503, 1509 (D.D.C. 1989) (noting that substitution of new named plaintiffs is a routine feature of class actions).

Defendants argue that none of the plaintiffs in the previous complaints had been discharged while attending basic training, Dkt. 190 at 24–25, but they do not explain how this is outside of the original class definition that included all individuals who enlisted via DTP or DEP through the MAVNI program and were subject to an involuntary administrative "uncharacterized" discharge by the Army. Dkt. 19 ¶ 139. The Court previously recognized that these individuals were always a part of the class definition. *See, e.g.*, Dkt. 137 (07/31/19 Status Hr. Tr.) at 39:2–25; 41:16–42:24. Thus, each named Plaintiff being added to the Third Amended Complaint already was a putative class member in the Second Amended Complaint.[8]  Even if their addition results in "some additional time and labor for [D]efendants, . . . that does not constitute prejudice." *See Fleck*, 799 F. Supp. at 192 (citation omitted); *see also United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013) ("an amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources").

Defendants likewise cannot rest their prejudice claim on purported delay. Dkt. 190 at 25 ("mere delay is not a reason in and of itself to deny leave to amend"); *see also Hartford Ins. Co.*, 422 F. Supp. 2d at 206 (to establish prejudice, Defendants must show that they would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have

---

[8] While Defendants complain that certain facts in the proposed amended complaint pertaining to three Plaintiffs occurred prior to the filing of the Second Amended Complaint in January 2019, Dkt. 190 at 25, they do not explain how this could be deemed prejudicial when the class already included those individuals.

14

offered had the amendments been timely"). Defendants do not explain how any delay resulting from the filing of the Third Amended Complaint would cause them to suffer prejudice in the circumstances of this case, where discovery has been limited to date, the amendment was anticipated by Defendants and the Court, and the proposed amendments are necessitated by the Defendants' actions taken in response to this litigation. As set forth in the Motion, Defendants' shifting positions and half-measures have resulted in the following cascade of events:

- After admitting that the original plaintiff had been denied due process and arranging for the revocation of his discharge as well as his so-called reinstatement, *see* Dkt. 17-1, Defendants refused to take action regarding anyone beyond the original plaintiff despite being made aware of problems beyond the original plaintiff's situation.

- After Plaintiffs amended their complaint adding seven similarly-situated MAVNIs as plaintiffs on behalf of themselves and a proposed class, the Court stayed the action upon Defendants' representation that they would reinstate six of the seven newly named Plaintiffs and suspend the involuntary discharges of all MAVNIs pending the implementation of a new discharge policy. *See* Dkt. 22.

- The Army issued the October 26 Memo (its new discharge policy), which provided only a partial solution for affected MAVNI soldiers. The Court subsequently set a deadline for Plaintiffs to file a further amended complaint, Dkt. 55, prompting Plaintiffs to file the Second Amended Complaint naming additional plaintiffs and adding allegations acknowledging the issuance of the October 26 Memo, Dkt. 61.

- After the October 26 Memo was issued, the Court recognized that further amendment would be needed because it was too early at that juncture to determine whether the October 26 Memo procedures provided the necessary due process. *See, e.g.*, Dkt. 137 (07/31/19 Status Hr. Tr.) at 46:23–47:4.

- Defendants failed to implement the October 26 Memo procedures despite having the time to do so.

Further, the many months that, at **Defendants'** behest, were spent in mediation with Magistrate Judge Harvey and then the additional months that were more recently spent on settlement discussions cannot now be labeled as "delay" that prejudices the Defendants.

15

Defendants will suffer no prejudice, undue or otherwise, as a result of the filing of the Third Amended Complaint. Thus, the "most important factor" in deciding whether amendment should be permitted weighs in favor of granting leave to amend.

## CONCLUSION

For the reasons stated above and in the Motion, Plaintiffs' request for leave to file the Third Amended Complaint should be granted.

Dated: January 29, 2021

Respectfully submitted,

*/s/ Jennifer M. Wollenberg*
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Douglas W. Baruch (D.C. Bar No. 414354)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202.739.5313
Fax: 202.739.3001
Email: jennifer.wollenberg@morganlewis.com
Email: douglas.baruch@morganlewis.com

John M. Vassos (*admitted pro hac vice*)
Bernard J. Garbutt III (*admitted pro hac vice*)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
Email: john.vassos@morganlewis.com
Email: bernard.garbutt@morganlewis.com

Taylor C. Day (*admitted pro hac vice*)
Megan A. Suehiro (*admitted pro hac vice*)
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2501
Email: taylor.day@morganlewis.com
Email: megan.suehiro@morganlewis.com

*Counsel for Plaintiffs*