UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LUCAS CALIXTO, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-1551 (PLF) |
| UNITED STATES DEPARTMENT OF THE ARMY, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

OPINION

    This matter is before the Court on plaintiffs' Motion [Dkt. No. 179] for Leave to File a Third Amended Complaint. The United States Department of the Army ("Army") opposes the motion. Upon consideration of the parties' written submissions, the relevant legal authorities, and the entire record in this case, the Court will grant plaintiffs' motion for leave to file a third amended complaint.[1]

---

[1] The documents reviewed in connection with plaintiffs' motion include: Complaint ("Compl.") [Dkt. No. 1]; Amended Complaint ("Am. Compl.") [Dkt. No. 19]; Defendants' Status Report ("Status Report 1") [Dkt. No. 22]; Declaration of Lin H. St. Clair ("Clair Decl.") [Dkt. No. 22-1]; Defendants' Status Report ("Status Report 2") [Dkt. No. 50]; Memorandum to Resume Separation Actions Pertaining to Members of the Delayed Entry Program (DEP) and Delayed Training Program (DTP) Recruited Through the Military Accessions Vital to National Interest (MAVNI) Pilot Program ("Oct. 26 Memo") [Dkt. No. 50-1]; November 15, 2018 Order ("Nov. 15, 2018 Order") [Dkt. No. 55]; November 14, 2018 Status Hearing Transcript ("Nov. 14, 2018 Tr.") [Dkt. No. 60]; Second Amended Complaint ("Second Am. Compl.") [Dkt. No. 61]; Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Mot. to Dismiss") [Dkt. No. 68-1]; July 31, 2019 Order [Dkt. No. 123]; Transcript of July 31, 2019 Status Conference ("July 31, 2019 Tr.") [Dkt. No. 137]; October 22, 2019 Order ("Oct. 22, 2019 Order") [Dkt. No. 145]; Transcript of January 21, 2020 Status Hearing ("Jan. 21, 2020 Tr.") [Dkt. No. 157]; Plaintiffs' Motion for Leave to File Third Amended Complaint ("Mot.") [Dkt. No. 179]; Third Amended Class Action

## I. BACKGROUND

Plaintiffs in this case are current and former members of the United States Army who enlisted under the Military Accessions Vital to the National Interest ("MAVNI") program prior to September 2016. Second Am. Compl. ¶¶ 1-3. The MAVNI program enables non-United States citizens, with skills considered "vital to the national interest," to enlist and serve in the Armed Forces. Id. ¶ 43. Each plaintiff has been a member of the Army's Delayed Training Program ("DTP") for Selected Reserve soldiers or the Delayed Entry Program ("DEP") for Regular Army soldiers. Id. ¶ 3.

In late 2016, the Army began involuntarily discharging MAVNI Selected Reservists and Regular Army soldiers while those soldiers were still at entry-level status. Second Am. Compl. ¶¶ 3, 5, 45-47.[2] Plaintiffs assert that they were "summarily discharged by the Army without notice or process" in contravention of Army and Department of Defense regulations and the due process clause of the Fifth Amendment to the United States Constitution. Id. ¶¶ 136-158; see also Calixto v. U.S. Dep't of the Army, Civil Action No. 18-1551, 2019 WL 2139755, at *1 (D.D.C. May 16, 2019). Plaintiffs also assert that the Army's actions "unconstitutionally discriminate against Plaintiffs based on their national origin" in violation of the equal protection principles of the Fifth Amendment. Second Am. Compl. ¶ 158.

---

Complaint ("Third Am. Compl.") [Dkt. No. 179-1]; Defendants' Opposition to Plaintiffs' Motion for Leave to File the Third Amended Complaint ("Opp.") [Dkt. No. 190]; and Plaintiffs' Reply Memorandum in Support of Their Motion for Leave to File Third Amended Complaint ("Reply") [Dkt. No. 194].

[2]   "[E]ntry-level status" means "before [those soldiers] had served 180 days in active duty status." Mot. at 1.

## II.  PROCEDURAL HISTORY

Lucas Calixto filed suit on June 28, 2018, alleging that the Army discharged him without providing notice, specific grounds for the discharge, or "facts or circumstances that purported to justify or explain the discharge."  Compl. ¶ 1.  The case was assigned to Judge Ellen Segal Huvelle.[3]  On August 3, 2018, Mr. Calixto amended his complaint to add seven additional plaintiffs and class action allegations.  See Am. Compl. ¶¶ 15-22, 138-153.  On August 13, 2018, the Army informed Judge Huvelle that it had suspended the separation of seven of the eight named plaintiffs.  Clair Decl. ¶¶ 5-7; 9-12; see also Status Report 1.  The Army further stated that it had suspended processing all involuntary discharges of MAVNIs as of July 20, 2018, pending "the Army's review of applicable separation procedures."  Clair Decl. ¶¶ 3, 13.

On October 26, 2018, the Army issued a memorandum lifting the suspension of MAVNI discharges and implementing new policies and procedures for making Military Service Suitability Determinations ("MSSDs") and initiating involuntary discharges of MAVNI soldiers.  See Status Report 2 at 1; Oct. 26 Memo ¶¶ 2-6.  The October 26 Memorandum provided that MAVNI soldiers discharged before July 20, 2018 on the basis of an unfavorable MSSD would be reinstated "for purposes of receiving the administrative due process described in this memorandum."  Oct. 26 Memo ¶ 5.

Following the issuance of the October 26 Memorandum, Judge Huvelle set deadlines for the Army to produce certain discovery and for plaintiffs to file a second amended complaint.  Nov. 15, 2018 Order at 3; see also Nov. 14, 2018 Tr. at 86-87 (acknowledging that plaintiffs "need[ed] more information back from the other side" in order to file an amended complaint).  On January 2, 2019, plaintiffs filed a second amended complaint.  See Second Am.

---

[3]  The case was reassigned to this Court on September 23, 2020, following Judge Huvelle's retirement.

3

Compl. The second amended complaint added additional plaintiffs and new allegations stemming from the Army's issuance of the October 26 Memorandum. Id. ¶¶ 18-25, 29-39. The Army subsequently filed a motion to dismiss. See Calixto v. U.S. Dep't of the Army, 2019 WL 2139755, at *2. It argued, in part, that "because one of the remedies that plaintiffs seek, reinstatement, is non-justiciable, plaintiffs' claims should be dismissed." Id. at *4. Judge Huvelle disagreed:

> Claims arguing that deficiencies in *process* used to reach military personnel decisions violated the Constitution, statutes, or regulations are appropriate for judicial review. Plaintiffs' Second Amended Complaint argues that the procedures by which plaintiffs were discharged were unlawful because the Army failed to comply with applicable law. Such a claim is justiciable.

Id. at *5 (citations omitted). She therefore denied the Army's motion to dismiss.

In July 2019, Judge Huvelle recognized that further amendment to the complaint would be necessary because "anybody who is being afforded October [26] procedures it's too premature for me to be trying to figure out whether they have been deprived of some due process." July 31, 2019 Tr. at 47. She further concluded that some discovery would be necessary with respect to class allegations. See id. at 42 ("[W]e have to add to our discovery."); id. at 46 ("So what do you want to know about this group? For class cert purposes."). Judge Huvelle therefore ordered discovery and set deadlines for the exchange of information between the parties. See July 31, 2019 Order; see also Oct. 22, 2019 Order. After conducting some discovery, the parties engaged in mediation and settlement discussions for several months. See Dec. 13, 2019 Minute Order Referring Case for Mediation; Jan. 21, 2020 Tr. at 8 ("[W]e are negotiating the parameters of a possible mediation."). Settlement discussions were unsuccessful, however, so Judge Huvelle ordered plaintiffs to file their third amended complaint by

September 8, 2020, "either with defendants' consent or accompanied by a motion pursuant to Federal Rule of Civil Procedure 15(a)(2)." See July 29, 2020 Order.

After multiple joint motions for extensions of time to file the amended complaint, plaintiffs moved for leave to file their proffered third amended complaint. See Mot. at 1. The third amended complaint adds thirteen new named plaintiffs, removes seven formerly-named plaintiffs, and maintains four named plaintiffs from the previous complaint. Compare Third Am. Compl. ¶¶ 41-57, with Second Am. Compl. ¶¶ 29-39. As in the second amended complaint, the third amended complaint alleges violations of the Administrative Procedure Act, procedural and substantive due process, equal protection, and the First Amendment. See Third Am. Compl. ¶¶ 358-79. The third amended complaint includes a more detailed request for declaratory and injunctive relief, in part because it requests different relief for different categories of plaintiffs. See id. ¶¶ 345-67.

### III. LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure governs motions for leave to amend a complaint. Subsection (a) of that rule states that a "party may amend its pleading once as a matter of course" and thereafter "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)-(2). Under subsection (d) of Rule 15, a "court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d).

Motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard. Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008). Under either, the decision is within the discretion of the district court: Leave to

amend should be "freely give[n] . . . when justice so requires."  FED. R. CIV. P. 15(a)(2); accord Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d at 23.  "[I]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive, . . . [or] futility of amendment.'"  Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  If granting a motion to amend "will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of" the other party, the motion should be granted.  Hall v. CIA, 437 F.3d 94, 101 (D.C. Cir. 2006).

Because courts liberally apply Rule 15 when deciding whether to allow amendments, the nonmoving party generally "carries the burden in persuading the court to deny leave to amend."  Jackson v. Teamsters Loc. Union 922, 991 F. Supp. 2d 64, 67 (D.D.C. 2013) (quoting Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004)).

## IV. DISCUSSION

Plaintiffs argue that they should be permitted to file their proposed third amended complaint because it (1) adds new allegations based on facts and circumstances that occurred after the filing of the second amended complaint and (2) adds new plaintiffs identified during the course of court-ordered discovery regarding class certification.  Mot. at 9-10.  The Army opposes the motion, arguing that plaintiffs' amendments are futile and that it would be prejudiced if amendment were permitted.  Opp. at 14, 24.  The burden of persuasion is on the Army.  The Court will consider each of its arguments in turn.

### A. *Futility of Amendment*

#### 1. Justiciability

The Army contends that plaintiffs' claims are nonjusticiable, and thus inappropriate for judicial review, because they concern "actions which represent military judgment and decision-making." Opp. at 18. Plaintiffs respond that Judge Huvelle has already rejected defendants' justiciability arguments. Reply at 5. They argue that it is within the purview of the federal courts to adjudicate claims of constitutional or statutory violations. Id. at 5-6.

"Recognizing that it is not the business of the courts to run the military establishments, courts have shown extreme reluctance to interfere with the military's lawful exercise of its discretion over internal management matters." Dilley v. Alexander ("Dilley I"), 603 F.2d 914, 919-20 (D.C. Cir. 1979). "[A] Court's review of military personnel decisions accords those decisions the 'highest' deference . . . ." Lilly v. Schwartz, 713 F. Supp. 2d 15, 17 (D.D.C. 2010). Courts, however, have shown "no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged." Dilley I, 603 F.2d at 919-920; see also Larsen v. U.S. Navy, 486 F. Supp. 2d 11, 18 (D.D.C. 2007) (constitutional claims concerning termination of military personnel are "precisely within the ambit of the federal judiciary"). "As Chief Justice Marshall said long ago: 'It is emphatically the power and duty of the judicial department to say what the law is.'" Mudd v. Caldera, 134 F. Supp. 2d 138, 144 (D.D.C. 2001) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803)).

This Court is the appropriate forum to adjudicate plaintiffs' claims. Plaintiffs argue that the procedures by which they were discharged did not comply with the Constitution or applicable statutes and regulations. Calixto v. U.S. Dep't of the Army, 2019 WL 2139755, at *5.

This is a claim about process, and courts in this circuit have long recognized their obligation to review cases regarding military process. See, e.g., Dilley I, 603 F.2d at 916 (reviewing the involuntary release of officers in the Army Reserve for alleged violations of statutes and regulations); Lilly v. Schwartz, 713 F. Supp. 2d at 17-18 (reviewing an Army discharge decision for alleged constitutional violations); Larsen v. U.S. Navy, 486 F. Supp. 2d at 18 (reviewing the Navy's chaplain accession policies for alleged constitutional violations).  The Army is not "exempted from constitutional provisions that protect the rights of individuals." Emory v. Sec'y of Navy, 819 F.2d 291, 294 (D.C. Cir. 1987).  The cases cited by the Army are not to the contrary.  See Saint-Fleur v. McHugh, 83 F. Supp. 3d 149, 154 (D.D.C. 2015) (concluding that a federal court may consider plaintiff's claim that a military promotion decision violated the APA); Daniels v. United States, 947 F. Supp. 2d 11, 20 (D.D.C. 2013) (finding nonjusticiable a challenge to the merits of a discharge decision).  The fact that a challenged action concerns military discipline is not dispositive.  The question is whether plaintiffs challenge the substance of the action or the process by which the action was taken.  Here, is it clearly the latter.

Furthermore, Judge Huvelle already addressed the issue of justiciability and over two years ago concluded that issues relating to process are justiciable. See Calixto v. U.S. Dep't of the Army, 2019 WL 2139755, at *5 ("Plaintiffs' Second Amended Complaint argues that the procedures by which plaintiffs were discharged were unlawful because the Army failed to comply with applicable law.  Such a claim is justiciable.").  Because the legal claims in the proposed third amended complaint are the same as those in the second amended complaint, this Court sees no reason to reach a different conclusion.

The Army also argues that plaintiffs request relief – reinstatement – that this Court cannot provide. Opp. at 15.  The Army is mistaken.  The D.C. Circuit has clearly

recognized a "general rule requiring retroactive reinstatement for illegally discharged service[members]." Dilley v. Alexander ("Dilley II"), 627 F.2d 407, 415 (D.C. Cir. 1980). Such a remedy is appropriate because those servicemembers "have never been lawfully discharged, so in the eyes of the law, they remain in service." Id. at 411. Upon a finding of illegal discharge – that is, a discharge that violates the Constitution or governing statutes or regulations – servicemembers are entitled to be "reinstated to the positions they held on their respective dates of separation." Id.; see also Dilley I, 603 F.2d at 920 (stating that courts may "review cases in which a violation of the Constitution, statutes, or regulations is alleged").

Judge Huvelle has already held as much. See Calixto v. U.S. Dep't of the Army, 2019 WL 2139755, at *5 ("[P]laintiffs' request for reinstatement . . . does not somehow divest this Court of jurisdiction over plaintiffs' claims."). When parties present "the same issue [for] a second time in the same case in the same court," that court should come to the same conclusion. Al Bahlul v. United States, 967 F.3d 858, 875 (D.C. Cir. 2020). Parties may not re-litigate a decided issue "in the absence of extraordinary circumstances," which the Army does not argue exist here. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). Plaintiffs' claims are justiciable.

2. Exhaustion of Administrative Remedies

The Army argues that plaintiffs' claims are futile because they involve "pending administrative matters and separations that are not final" and thus there is no discrete and final agency action. Opp. at 19. It also argues that plaintiffs have not exhausted their administrative remedies with the Army Board for Correction of Military Records ("ABCMR"). Id. at 20-21.

Parties that seek to challenge agency action generally are required to exhaust available administrative remedies before bringing their case to court. See Avocados Plus Inc. v.

9

Veneman, 370 F.3d 1243, 1247 (D.C. Cir. 2004); see also Comm. for GI Rts. v. Callaway, 518 F.2d 466, 473 (D.C. Cir. 1975) ("As a general rule, the exhaustion of administrative remedies provided by the military service is a required predicate to relief in the civil courts." ).  This exhaustion requirement serves three functions:  "(1) 'giving agencies the opportunity to correct their own errors,' (2) 'affording parties and courts the benefits of agencies' expertise,' and (3) 'compiling a record adequate for judicial review[.]'" Adamski v. McHugh, 304 F. Supp. 3d 227, 238 (D.D.C. 2015) (quoting Avocados Plus Inc. v. Veneman, 370 F.3d at 1247); see also Reilly v. Sec'y of Navy, 12 F. Supp. 3d 125, 135 (D.D.C. 2014) ("This doctrine 'serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency,' and is governed by 'sound judicial discretion.'") (quoting McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992)).  "[T]he exhaustion requirement does not apply if exhaustion would be 'futile' or lead to 'irreparable harm.'" Fourte v. Spencer, No. CV 18-2023, 2019 WL 340713, at *7 (D.D.C. Jan. 28, 2019) (quoting Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986)).

As an initial matter, the Army has already "conce[ded] that each discharge order represents a discrete and final agency action" that is ripe for federal court review.  Calixto v. U.S. Dep't of the Army, 2019 WL 2139755, at *4.  Plaintiffs therefore may challenge individual discharge actions that were carried out contrary to the Constitution or applicable laws and regulations.  Moreover, plaintiffs allege that the procedures in the October 26 Memorandum "do not provide sufficient notice or process." See Third Am. Compl. ¶¶ 77, 79-80.  This Court may adjudicate challenges to final agency policies like the policy described in the October 26 Memorandum.  See Jafarzadeh v. Nielsen, 321 F. Supp. 3d 19, 43 n.14 (D.D.C. 2018) (finding a memorandum instituting a new policy to be a final agency action); cf. Bark v. U.S. Forest Serv.,

10

37 F. Supp. 3d 41, 50 (D.D.C. 2014) (finding no final agency action where plaintiffs could point to "no written rules, orders, or even guidance documents" setting forth the supposed policies).

The Court also concludes that the purposes of the exhaustion requirement would not be served by denying plaintiffs' motion. First, the Army has already had a number of opportunities to correct its own errors. See Avocados Plus Inc. v. Veneman, 370 F.3d at 1247. Since the original complaint in this case was filed in 2018, the Army has attempted to implement separation policies and procedures that do not contravene the Constitution or applicable statutes and regulations. But, as Judge Huvelle observed, the Army "has had little luck" ensuring that plaintiffs are provided with proper separation procedures. See July 31, 2019 Tr. at 42; id. at 41 ("Turns out that every time you say everybody got what they are suppose[d] to get, they didn't get it.").

Second, this Court – not the Army or ACBMR – possesses the expertise to assess allegations of constitutional and statutory violations. See Adair v. England, 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (holding that Navy chaplains asserting constitutional claims need not exhaust administrative remedies because "the gravamen of the plaintiffs' claims revolves around constitutional challenges" which are "singularly suited to a judicial forum and clearly inappropriate to an administrative board"); Comm. for GI Rts. v. Callaway, 518 F.2d at 474 ("[T]he federal courts are in a better position [than the ABCMR] to consider the constitutional issues presented." ).

Third, efficiency would not be served by requiring plaintiffs to resort to administrative remedies. See McCarthy v. Madigan, 503 U.S. at 145. Plaintiffs' third amended complaint alleges that a class of hundreds of MAVNIs have been subject to the Army's unconstitutional procedures. "[M]ilitary tribunals are not designed to handle actions involving

11

so large a class and seeking declaratory and injunctive relief." Comm. for GI Rts. v. Callaway, 518 F.2d at 474. Moreover, denying plaintiffs' motion would result in two cases: this case and a related case with the additional plaintiffs named in the third amended complaint. Such a result is inefficient for the parties and this Court. "The interests of judicial economy and convenience would be served where, as here, the plaintiffs' motion to supplement their complaint raises similar legal issues to those already before the court, thereby averting a separate, redundant lawsuit." The Fund for Animals v. Hall, 246 F.R.D. 53, 55 (D.D.C. 2007).

Finally, for some plaintiffs, exhaustion would be futile. See Fourte v. Spencer, 2019 WL 340713, at *7. At least eight plaintiffs have already been informed that the ABCMR cannot provide them with relief. Reply at 10-11. For these plaintiffs, there is no available administrative remedy. Plaintiffs also allege that the Army has failed to remedy previously acknowledged due process violations and that the procedures in the October 26 Memorandum have been inadequately implemented. Third Am. Compl. ¶¶ 78, 210-12. It is not at all clear, therefore, that any available administrative process would actually provide relief to plaintiffs. See Bois v. Marsh, 801 F.2d at 468.

The Court concludes that plaintiffs' amendments to their complaint are not futile.

### B. Prejudice

The Army argues that it is "highly prejudiced by Plaintiffs' endless efforts to reshape this litigation" and argues that plaintiffs are trying to "*expand* the claims presented and relief sought." Opp. at 24. Plaintiffs respond that the Army "fail[s] to make any showing of prejudice and instead rel[ies] on vague and false statements." Reply at 11. The Court agrees with plaintiffs that granting the motion for leave to amend does not result in undue prejudice to

the Army principally because, as is explained below, this is precisely the course of action that Judge Huvelle directed the plaintiffs to take in 2019.

"The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." Djourabchi v. Self, 240 F.R.D. 5, 13 (D.D.C. 2006) (citing 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990)). "[G]arden-variety prejudice," such as "a party sharpening the allegations of the complaint," is to be expected. United States v. Honeywell Int'l, Inc., 318 F.R.D. 202, 207 (D.D.C. 2016). Courts must, however, determine if prejudice is "undue" by considering "the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." Id. at 206.

The Army concedes that plaintiffs will experience hardship if leave to amend is denied. Opp. at 24. The Court agrees. If their motion is denied, plaintiffs will be forced to file a "new and separate complaint" giving rise to an entirely new, but related, case. See Mot. at 10.

The Court also concludes that plaintiffs' failure to include the newly alleged facts and named plaintiffs in their second amended complaint was not a result of their own lack of diligence. Rather, it was a result of the Army's changing policies. For example, it would have been "premature" to include facts concerning the implementation of the October 26 Memorandum in the second amended complaint because the memorandum had not yet been fully implemented. See July 31, 2019 Tr. at 47. Judge Huvelle recognized this, and that is why she ordered further discovery. See July 31, 2019 Tr. at 47 ("They may be getting [due process], we

just don't know yet."); July 31, 2019 Order (ordering further discovery after the filing of a second amended complaint); Oct. 22, 2019 Order (same).

Further, the Army fails to identify the injustice it would suffer if the Court grants plaintiffs' motion. The legal claims presented in the third amended complaint are the same as those in the second amended complaint. Compare Third Am. Compl. ¶¶ 5, 345-79, with Second Am. Compl. ¶¶ 5, 187-213. Moreover, the Court and the parties have long anticipated that plaintiffs would add additional named plaintiffs and further factual allegations, and Judge Huvelle explicitly authorized the filing of a third amended complaint. See July 31, 2019 Tr. at 46-47 (Judge Huvelle acknowledging that plaintiffs were "going to amend [their complaint] anyways"); July 29, 2020 Order. The Army cannot now argue that the amendments to the complaint come as a surprise. The Court is likewise not persuaded that additional expense and burden prejudices the Army. "If a court were to employ a policy of denying plaintiffs leave to amend in every situation where an amended complaint may result in additional discovery or expense, then the court would fail to abide by the legal standard of granting leave freely when justice so requires." United States v. Honeywell Int'l, Inc., 318 F.R.D. at 206 (cleaned up).

Finally, plaintiffs' do not bear sole responsibility for delays in this case. Both parties spent many months in mediation and in settlement discussions. See Dec. 13, 2019 Minute Order Referring Case for Mediation; Jan. 21, 2020 Tr. at 8; cf. July 29, 2020 Order. Following the filing of a second amended complaint, the Army filed a motion to dismiss, causing further delay. In addition, plaintiffs have only sought to amend their complaint in response to the Army's changing representations and policies concerning the discharge of MAVNI soldiers. See Reply at 15 (summarizing the Army's responses at each new stage of litigation). And Judge Huvelle repeatedly ordered further discovery and the filing of amended complaints. See July 31,

14

2019 Order; Oct. 22, 2019 Order; Nov. 15, 2018 Order; Nov. 14, 2018 Tr. at 86-87.  Granting plaintiffs' motion for leave to amend does not prejudice the Army.

## V.  CONCLUSION

For the foregoing reasons, the Court will grant plaintiffs' Motion [Dkt. No. 179] for Leave to File Third Amended Complaint.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE:  June 3, 2021